BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: 702.382.7300
Facsimile: 702.382.2755
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
SIGRID S. MCCAWLEY (*pro hac vice* pending)
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: 954.356.0011
smccawley@bsfllp.com

SABINA MARIELLA (*pro hac vice* pending)
LINDSEY RUFF (*pro hac vice* pending)
55 Hudson Yards
New York, NY 10001
Telephone: 212.446.2300
smariella@bsfllp.com
lruff@bsfllp.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SAGE HUMPHRIES and GINA MENICHINO,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>MITCHELL TAYLOR BUTTON,<br><br>　　　　　　Defendant. | Case Number:<br><br>**COMPLAINT**<br>**JURY DEMAND** |

Plaintiffs Sage Humphries and Gina Menichino (together, "Plaintiffs"), for their Complaint against Defendant Mitchell Taylor Button ("Taylor Button"), allege as follows:

### INTRODUCTION

1.　　This case is about a man who has exploited his position of power and influence in the dance world to sexually abuse young dancers across the country.

2.　　Young dancers are uniquely susceptible to sexual abuse. Dance training is characterized by physical intimacy and unequal power dynamics between students and teachers, which helps contribute to a pattern of exploitation and silence.

3.     A culture of harassment and abuse permeates the dance world at all levels, including the most prestigious dance institutions.  Wendy Whelan, a former ballerina for the New York City Ballet, has observed, "[i]t can feel particularly risky — both emotionally and career wise — to be a whistle-blower within our field . . . We aren't encouraged to use our voice to expose the dark side of what is also truly a magical industry for the sake of hurting our father-figure teachers."

4.     Another former ballerina, Alexander Waterbury, told the New York Times, "[e]very time I see a little girl in a tutu or with her hair in a bun on her way to ballet class, all I can think is that she should run in the other direction, because no one will protect her, like no one protected me."

5.     Taylor Button and his wife, Dusty Button (together, "the Buttons"), are well-known members of the dance community who have been perpetuating this legacy of exploitation by inflicting an intentional combination of emotional control, financial manipulation, and sexual abuse against young dancers across the country since as early as 2007, when Taylor Button began abusing underage dancers as a dance instructor in Florida.

6.     As alleged further herein, the Buttons abuse their positions of power and prestige in the dance community to garner the loyalty and trust of young dancers.  The Buttons then exploit those relationships to coerce sexual acts by means of force and fraud.

7.     The Buttons continue to enjoy fame and success in the dance community and regularly interact with young children through their positions as choreographers, instructors, and/or photographers.

## **PARTIES**

8.     Sage Humphries is an individual who resides and is domiciled in Melrose, Massachusetts.  During the events described below, Sage resided in Somerville, Massachusetts.

9.     Gina Menichino is an individual who resides and is domiciled in Union City, New Jersey.  During the events described below, Gina resided in Tampa, Florida.

10.     Defendant Taylor Button is an individual who resides and is domiciled in Las Vegas, Nevada.  During the events described below, Taylor resided in Tampa, Florida and Somerville,

Massachusetts.  Taylor Button goes by several aliases, including "Mitchell Moore," "Taylor Moore," and "Mitchell Button."

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiffs' rights under 18 U.S.C. § 1591, 1595, *et seq.*

12.     The Court has supplemental jurisdiction over Plaintiff Gina Menichino's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

13.     This Court also has diversity jurisdiction over this dispute pursuant to 28 U.S.C. §1332, as there is complete diversity among Plaintiffs, citizens of Massachusetts and New Jersey, and Defendant, a citizen of Nevada, and the amount in controversy exceeds the sum or value of $75,000.00 excluding interests and costs.

14.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because the Defendant resides in this district.

15.     The Court has general personal jurisdiction over Defendant as he is a resident of this State.

## FACTUAL BACKGROUND

### I.     Taylor Button Exploited his Position of Power at Centerstage Dance Academy to Groom and Abuse his Students, including Gina Menichino.

16.     Taylor Button became a dance teacher at Centerstage Dance Academy ("Centerstage") in Tampa, Florida in approximately 2006.  At this time, Taylor was 21 years old and went by the name Taylor Moore.

17.     At Centerstage, Taylor taught dance to girls as young as ten years old.

18.     Taylor sexually abused at least five of his students.  Taylor's abuse involved, among other things, forcefully performing oral sex and requiring it to be performed on him.

19.     For example, Taylor sexually abused one minor child who was a student in his class for a period of three years, beginning when she was 13 years old.  In addition to other

actions undertaken to groom the minor child, Taylor wrote this child a love letter.  In pertinent part the letter says,

"God sent you to make to make up for my lack of family."

"I could never love again so much as I love you, where you end and I begin is like a river flowing through.  Take my heart, take my soul, I need them no more, if never again they fall upon the one I so adore."

"You're beautiful inside and out, and are going to be so great as you grow.  Never forget that no matter what, I'll never love you less than I do today."

20.     Taylor forcefully performed oral sex on that minor child and forced her to perform oral sex on him.  Among other tactics, Taylor used his position of power and authority over that child to force her to comply with his sexual demands.  For instance, Taylor would reward that child with special professional opportunities—including traveling to out-of-state dance conventions—to reward her obedience.  Conversely, Taylor would retaliate against that child and threaten to hurt her dance career if she refused his advances.

21.     Gina Menichino took dance lessons from Taylor.

22.     Gina and other Centerstage students looked up to Taylor because he was a talented dance instructor and well-connected in the dance industry.

23.     Taylor took a special interest in Gina and would single her out for special attention and opportunities in dance class, such as allowing her to assistant teach his dance classes.

24.     Taylor required all students to wear only sports bras and "booty shorts" to his dance classes.  Taylor would compliment Gina's body and appearance.  Taylor also became physically affectionate with Gina.

25.     Gina aspired to dance professionally, and she was flattered that Taylor took an interest and saw potential in her.  Taylor promised that if she trusted him and followed his direction, he would help her become a successful dancer.

26.     Taylor made special efforts to isolate Gina and confine her in spaces which he controlled.  For example, Taylor scheduled rehearsals for Gina's dance solos to be late at night when no one else was in the dance studio.

27.     During one such rehearsal, Taylor cornered Gina in a private dance studio and kissed her.

28.     Taylor socialized with many of his students outside of dance class.

29.     On one such occasion in 2010, when Gina was 13 years old and Taylor was 25, Taylor was watching a movie with several of his dance students, including Gina.

30.     Gina and Taylor sat on the couch sharing a blanket.  Taylor then touched Gina's leg and eventually began rubbing her vagina without her consent.

31.     Later that evening, in a further effort to groom Gina for abuse, Taylor and Gina exchanged text messages.  Taylor told Gina that when he touched her he could feel she was "wet" and that he wanted to touch her again.

32.     On a second occasion in 2010, when Gina was 13 years old, Gina and Taylor were again watching a movie with other girls from the dance studio and sharing a blanket. Taylor again began rubbing Gina's vagina and penetrated her with his hand.  Taylor then grabbed Gina's hand and forced her to touch his penis.

33.     On another occasion, Taylor texted Gina a photo of himself with no shirt on, flexing his muscles in the mirror.  Taylor coerced Gina into sending him photos of herself without clothes on.

34.     Taylor soon began regularly "sexting" Gina.  Taylor would send Gina photos and videos of himself masturbating.  Taylor instructed Gina to do the same, thus soliciting visual depictions of Gina engaging in sexually explicit conduct as defined by federal child pornography laws.

35.     In these texts, Taylor would tell Gina, in great detail, about sexual acts he wanted to perform on her, including wanting to "tie her up."  Taylor instructed Gina to do the same.

36.     Taylor instructed Gina to change his contact in her phone to a fake name and to delete all of their text exchanges every night.

37.     Taylor regularly traveled out-of-state for dance conventions, classes, and competitions, including to Virginia and North Carolina.  When Taylor traveled out-of-state,

Taylor would continue to communicate with Gina, including by sending and soliciting sexually explicit photos and videos.

38.     Taylor used his position of power and authority over Gina to force her to comply with his sexual demands.  For example, Taylor would reward Gina's compliance by singling her out for professional opportunities, such as free, special solo practices and an assistant teaching position at a dance convention.  These opportunities were invaluable to Gina because she aspired to be a professional dancer.

39.     Taylor would also give Gina gifts to reward her for submitting to his demands. For example, on Gina's 14th birthday, Taylor gave Gina a teddy bear, which he sprayed with his cologne so that Gina could feel like she was "sleeping" with Taylor.  On another occasion, Taylor gave Gina a clothing gift that he purchased from an out-of-state dance convention.

40.     Conversely, if Gina resisted Taylor's advances, Taylor would retaliate against Gina with emotional abuse and/or by threatening to hurt her dance career.

41.     Over time, Taylor became increasingly controlling.  For example, Taylor instructed Gina to isolate herself from her family and from certain friends, he exerted control over Gina's text messages and social media posts, and he instructed Gina how to dress and style her hair outside of dance class.

42.     Gina has expended significant costs on therapy and suffers mental anguish, severe emotional distress, and loss of enjoyment of life as a direct and proximate result of Taylor's abuse.

43.     Gina turned 18 years old July 29, 2014.

**II.      Taylor and Non-Party Co-Conspirator, Dusty Button, Work Together to Carry out a Campaign of Harassment and Abuse.**

44.     In December 2010, Centerstage dancers and their parents began to discuss Taylor's behavior and the rumors that he had physically abused students and engaged in sexual relationships with minors.

45.     Taylor fled to London, England.

46.     Taylor told his former students that he was moving because he wanted to marry his former girlfriend, Dusty Button, who was a student at the Royal Ballet School in London at the time.

47.     Shortly thereafter, Taylor married Dusty and took her last name.

48.     Dusty is a prominent figure in the dance community.  Dusty has over 300,000 followers on Instagram, and she has been featured in Glamour Magazine, Pointe Magazine, Dance Europe, Dance Spirit Magazine, Dance Magazine, Dance Informa, and other dance publications.  She is sponsored by Red Bull, Bloch Dancewear, and Discount Dance.

49.     Taylor holds himself out to be Dusty's manager.

50.     The Buttons work together providing, *inter alia*, career management, choreography, photography, and dance instruction services.  They have created a brand for themselves called "Button Built" and sell branded merchandise online.

51.     A substantial portion of this work involves interacting with minors.  For instance, the Buttons have been affiliated with the Showstopper, BellaMoxi, and Radix dance conventions and competitions.

52.     The Buttons exploit their proximity to and authority over minors to groom and abuse young dancers.

53.     For example, in 2015 the Buttons began a so-called "mentorship" relationship with an 11-year-old child under the pretense that they would help further her dance career.  Over the course of approximately three years, the Buttons became emotionally manipulative and controlling over the minor child's life.  For instance, the Buttons pressured the child to travel and share a bed with them, insisted on exercising control over her social media accounts, instructed her to dress and behave in a manner similar to Dusty, and, on one occasion, Dusty insisted on performing a lengthy touching session on the child, which she called a "massage." The Buttons also attempted to isolate the child from her family, including by telling the child that her mother is unable to advance her dance career, and that she should live with the Buttons as their adopted daughter instead.  If the child or her mother defied the Buttons' wishes, the

Buttons would emotionally abuse the child and threaten to cease assisting her in pursuing her professional dance aspirations.

54.     As another example, the Buttons drugged and molested another young dancer at a dance gala in Panama.

**III.     The Buttons Manipulated and Brutalized Sage Humphries.**

55.     Sage met Dusty in 2016 when they were both dancing for the Boston Ballet.  At the time, Sage was a dancer for Boston Ballet II, which is an apprenticeship program.  Dusty was a principal ballerina, which is the highest position for a dancer in the Boston Ballet.

56.     Sage also met Taylor through the Boston Ballet.  Taylor would regularly spend time at the dance studio to watch Dusty and the other dancers rehearse.

57.     Sage met the Buttons at a vulnerable period in her life.  Sage was new to Boston and did not have family or friends in the area.  Unlike many other dancers in the Boston Ballet, she did not come from a prominent ballet school and did not have any personal connections to the professional dance community.

58.     Around February 2017, Dusty initiated a friendship with Sage and invited her to come to the Buttons' apartment after rehearsal.  Sage was eager to develop a friendship with the Buttons given their status in the Boston Ballet and in the dance world, and especially given Sage's lack of other friends in Boston.

59.     Sage soon began regularly spending time with the Buttons.

60.     The Buttons' behavior became increasingly controlling.  For instance, the Buttons would insist that Sage drink heavily when she was with them.

61.     The Buttons also began to insist that Sage sleep at their apartment on a regular basis.

62.     The Buttons instructed Sage to wear their clothes and style her hair to match Dusty's hair.

63.     Taylor told Sage that if she allowed him to control her social media, he could make her famous like Dusty.  Taylor insisted on having Sage's passwords, including access to her text messages and emails.

64.     Taylor helped grow Sage's social media following. Taylor told Sage that he would be able to continue to help her career only if he had full control over her accounts.  Taylor took over Sage's posts, text messages, and emails.

65.     One evening, Taylor placed a mattress in the living room and insisted that Sage and the Buttons all lay on it and watch a movie, with Taylor laying in the middle.  At some point, Dusty fell asleep.  Taylor then rolled over and began to sexually assault Sage.

66.     Taylor threatened Sage that the only way Sage could develop her dancing, singing, and acting career was if she continued to be affiliated with the Buttons.  Taylor told Sage if she did not obey the Buttons' demands, she would never succeed professionally.

67.     Taylor required that Sage regularly sleep at the Buttons' apartment, and Taylor continued to sexually assault Sage.

68.     Any time Sage attempted to develop other friendships and spend time apart from the Buttons, the Buttons would become enraged.  On one occasion, Sage went to lunch with a group of women.  When Sage returned to the Buttons' apartment, Taylor began screaming at her.  Sage feared for her safety.  Taylor then forced Sage to perform oral sex on him.  Sage was terrified.

69.     Taylor continued to forbid Sage from developing other friendships, and he forbid Sage from speaking with her family.

70.     At one point, Sage had plans to travel to California to spend time with her family. The Buttons became extremely angry at the prospect of Sage spending time away from them. The Buttons told Sage that she must prioritize them over her family, otherwise they would ruin her dance career.  The Buttons then went with Sage to California so she could not be alone with her family.

71.     One day in California, the Buttons insisted that they leave Sage's parent's house to go to Sage's family beach house.  Sage's parents protested because they had not seen Sage in a long time and wanted to spend time with her.  The Buttons then verbally abused Sage and threatened her career success.

72.   Sage took the Buttons to the beach house.  There, Dusty began kissing Sage, and Taylor soon joined.  They told Sage, "this is what you want, we can finally be together."  Sage felt terrified and like the Buttons had complete control over her life.

73.   When they returned to Boston, the abuse intensified.  One evening, Sage went to the Buttons' apartment after rehearsal, and the apartment was completely dark.  Dusty and Taylor demanded that Sage put on a spandex suit that covered her entire body, including her mouth and eyes, and left only her nose and ears exposed.  Dusty led Sage into a room of the Buttons' apartment that had an arsenal of guns hanging on the wall.

74.   Sage told the Buttons she was scared.  They instructed her to lie down on a table, and they tied up her arms and legs so she was unable to move.  The Buttons then sexually assaulted Sage.

75.   Sage began sobbing and screaming, begging the Buttons to untie her.  The Buttons told her she was being weak and stupid.

76.   Soon thereafter, Dusty and Taylor forced Sage to have sexual intercourse with Taylor.  Dusty watched, and Sage cried the entire time.

77.   After that, Taylor began having sex with Sage whenever he pleased.  Sometimes Taylor would penetrate Sage while she was sleeping.

78.   Taylor regularly shoved Sage to the ground or on the bed and violently penetrated her without her consent.

79.   On several occasions, Dusty held Sage down while Taylor penetrated her so that Sage could not move.

80.   During sex, Taylor would choke, slap, and pull Sage's hair.  Sage was often left covered in bruises.

81.   The Buttons also regularly used painful sex toys on Sage and would tie Sage up in order to have sex with her.

82.   Sage never consented to these violent sex acts.

83.   By May 2017, the Buttons forced Sage to live with them full time, and she became financially dependent on them.  The Buttons did not charge Sage for rent, and they paid

for her meals and other personal expenses in exchange for her compliance with their abuse. They continued to control her social media accounts and conversations with others.

84.   Taylor told Dusty she was not allowed to sexually abuse Sage unless he were also present.

85.   On one occasion, Taylor discovered Dusty committed sexual acts with Sage without him present, and he began to scream.   Dusty and Taylor engaged in a physical altercation, ending with Taylor striking Dusty across the face.

86.   This experience intensified Sage's fear of Taylor.

87.   If Sage ever attempted to distance herself or disobey the Buttons, they would threaten to revoke their financial support and sabotage her career.

88.   The Buttons told Sage she was not allowed to speak to her parents without their permission.

89.   Sage's family became concerned with the lack of communication and thought that Sage was in a dangerous situation.  Sage's family flew to Boston and forced Sage to return with them to California.

90.   Once in California, the Buttons continued to contact Sage.  On one occasion, Taylor told Sage via Snapchat that he wanted to throw her in his van, tie her hands and feet, blindfold her, rent a warehouse, hang her from the ceiling, rape Sage, "and leave [her] there to die."

91.   Taylor also threatened to break into Sage's family's home, slit her dad and ex-boyfriend's throats, and beat up her mother.

92.   At the end of July 2017, Taylor and Dusty traveled to California, causing Sage extreme fear.

93.   In August 2017, Sage sought and received abuse protection orders against both Taylor and Dusty.

94.   Sage and her family expended significant costs on psychological treatment and attorneys' fees.

95.     Sage suffered and continues to suffer physical pain, mental anguish, and severe emotional distress as a direct and proximate result of the Buttons' abuse.

## FIRST CAUSE OF ACTION

### Violation of 18 U.S.C. § 1595(a)
### *(Sage Humphries Against Taylor Button)*

96.     Plaintiff Sage Humphries incorporates each and every allegation contained above as though fully set forth herein.

97.     Taylor recruited and enticed Sage to begin a sexual and/or professional relationship with him based on the false promise that he would aid her career and professional development.

98.     Taylor acted knowing that he would use force, threats of force, and/or fraud to cause Sage to engage in sex acts in exchange for commercial gain and advantage.

99.     Taylor in fact used force, threats of force, and/or fraud to cause Sage to engage in sex acts for commercial gain and advantage.

100.    In exchange for performing sex acts, Taylor gave Sage professional opportunities, and/or management services, and/or photography services, and/or gifts and other forms of financial support.

101.    Taylor's conduct affected interstate commerce, including, but not limited to, because Taylor enticed Sage to cross state lines by using threats, intimidation, and the pretense that he would help further her career and professional development, in exchange for engaging in sex acts.

102.    As result of Taylor's conduct, Sage suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

103.    Taylor's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Sage's rights.

104.    Sage claims compensatory and punitive damages herein.

105.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## SECOND CAUSE OF ACTION

### Violation of 18 U.S.C. § 1595(a)
*(Gina Menichino Against Taylor Button)*

106.    Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

107.    Taylor recruited and enticed Gina to begin a sexual and/or professional relationship with him based on the false promise that he would aid her career and professional development.

108.    Taylor acted knowing that he would use force, threats of force, and/or fraud to cause Gina to engage in sex acts in exchange for commercial gain and advantage.

109.    Taylor in fact used force, threats of force, and/or fraud to cause Gina to engage in sex acts for commercial gain and advantage.

110.    In exchange for performing sex acts, Taylor gave Gina professional opportunities, and/or choreography services, and/or management services, and/or gifts and other forms of financial support.

111.    Taylor's conduct affected interstate commerce, including, but not limited to, because Taylor enticed Gina to send visual depictions of Gina engaging in sexually explicit conduct as defined by federal child pornography laws across state lines under the pretense that he would help further her career and professional development.

112.    As result of Taylor's conduct, Gina suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

113.    Taylor's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

114.    Gina claims compensatory and punitive damages herein.

115.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### THIRD CAUSE OF ACTION

**BATTERY**
*(Gina Menichino Against Taylor)*

116.   Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

117.   Taylor intended to commit and committed acts of unwanted contact with Gina.

118.   Taylor committed unwanted contact with Gina in a harmful and offensive manner, including but not limited to by inflicting juvenile sexual abuse against Gina.

119.   Among other batteries, Taylor sexually abused Gina without her consent, without equality, and as a result of coercion.

120.   Taylor exploited his position of authority to intimidate, overwhelm, and subdue Gina.  Any objections to his conduct were met with retaliation.

121.   Taylor abused his position of power and authority over Gina, who was in no position to reject his sexual advances due to her age and vulnerability.

122.   Taylor's batteries on Gina caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

123.   Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

124.   Gina claims compensatory and punitive damages herein.

125.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### FOURTH CAUSE OF ACTION

**ASSAULT**
*(Gina Menichino Against Taylor Button)*

126.   Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

127. Taylor intentionally attempted, threatened, and committed harmful and offensive contacts against Gina, including but not limited to inflicting juvenile sexual abuse against Gina.

128. Taylor's conduct placed Gina in reasonable apprehension of bodily harm.

129. Taylor's assaults on Gina caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

130. Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

131. Gina claims compensatory and punitive damages herein.

132. The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

**FIFTH CAUSE OF ACTION**

**FALSE IMPRISONMENT**
*(Gina Menichino Against Taylor Button)*

133. Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

134. Taylor intentionally confined Gina, including but not limited to trapping her in private rooms in the dance studio.

135. Taylor used physical power and an unequal power dynamic to intimidate, overwhelm, and subdue Gina. Any objections to his conduct were met with retaliation.

136. Taylor abused his position of power and authority over Gina, who was in no position to reject his sexual advances due to her age and vulnerability.

137. Gina was conscious of the confinement.

138. Gina did not consent to the confinement.

139. Taylor's conduct caused Gina to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

140. Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

141. Gina claims compensatory and punitive damages herein.

15
COMPLAINT

142.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## SIXTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(Gina Menichino Against Taylor Button)*

143.   Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

144.   Taylor's conduct was extreme and outrageous and intentionally caused severe emotional distress to Gina.

145.   Taylor's conduct exceeded all possible bounds of decency.

146.   Taylor acted with the intent and knowledge that Gina suffered emotional distress due to his coercive conduct.

147.   Taylor's conduct caused Gina to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

148.   Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

149.   Gina claims compensatory and punitive damages herein.

150.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## SEVENTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY
*(Gina Menichino Against Taylor Button)*

151.   Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

152.   Taylor and Gina's relationship was confidential and fiduciary in nature.

153.   Taylor assumed control and responsibility of Gina.  Taylor utilized the special, teacher-student relationship to gain Gina's trust, and to exert superiority and influence over Gina.

154. Gina in fact placed trust, confidence, and reliance on Taylor.

155. Taylor owed Gina fiduciary duties.

156. Taylor breached his fiduciary duties, including but not limited to by inflicting juvenile sexual abuse against Gina, and by soliciting sexually explicit images and photos of Gina.

157. Taylor's conduct proximately caused Gina to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

158. Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

159. Gina claims compensatory and punitive damages herein.

160. The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF 18 U.S.C.A. §§ 2255, 2252
*(Gina Menichino Against Taylor Button)*

161. Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

162. Taylor knowingly solicited, promoted, viewed, possessed, received, and/or transported sexually explicit images and videos of Gina.

163. Taylor used, persuaded, induced, and/or enticed Gina to send him photos and videos that included the lascivious exhibition of her genitalia and pubic areas and included images of herself engaging in sexually explicit conduct including touching herself sexually and simulating sexual intercourse.

164. Taylor intended for Gina to engage in the sexually explicit conduct he requested her to photograph or video-record.

165. Gina was a minor at all relevant times.

166. Taylor took these actions knowing that Gina was a minor.

167.    Gina sent the images and videos in response to Taylor's demands.

168.    The images and videos were of Gina as a minor and were visual depictions of Gina engaging in sexually explicit conduct as defined by federal child pornography laws.

169.    The images and videos were sent using a means of interstate commerce and/or had been shipped or transported in or affecting interstate commerce.

170.    Taylor's conduct caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

171.    Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

172.    Gina seeks all available relief including claiming compensatory and punitive damages herein.

173.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## <u>REQUEST FOR RELIEF</u>

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendant, awarding compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby request a trial by jury on all causes of action asserted within this pleading.

Dated:  July 28, 2021                    Respectfully Submitted,


**BOIES SCHILLER FLEXNER LLP**


/s/ Richard J. Pocker
Richard J. Pocker (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: 702.382.7300
Facsimile: 702.382.2755
rpocker@bsfllp.com

Sigrid S. McCawley (*pro hac vice* pending)
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: 954.356.0011
smccawley@bsfllp.com

Sabina Mariella (*pro hac vice* pending)
Lindsey Ruff (*pro hac vice* pending)
55 Hudson Yards
New York, NY 10001
Telephone: 212.446.2300
smariella@bsfllp.com
lruff@bsfllp.com

*Counsel for Plaintiffs Sage Humphries and Gina Menichino*

19
COMPLAINT