BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: 702.382.7300
Facsimile: 702.382.2755
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
SIGRID S. MCCAWLEY (admitted *pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: 954.356.0011
smccawley@bsfllp.com

BOIES SCHILLER FLEXNER LLP
SABINA MARIELLA (admitted *pro hac vice*)
LINDSEY RUFF (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: 212.446.2300
smariella@bsfllp.com
lruff@bsfllp.com

*Attorneys for Plaintiffs Sage Humphries,*
*Gina Menichino, RoseMarie DeAngelo,*
*Danielle Gutierrez, and Jane Doe 100*

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| SAGE HUMPHRIES, GINA MENICHINO, ROSEMARIE DeANGELO, DANIELLE GUTIERREZ, and JANE DOE 100, <br><br> Plaintiffs, <br><br> vs. <br><br> MITCHELL TAYLOR BUTTON and DUSTY BUTTON, <br><br> Defendants. | Case Number: 2:21-cv-01412-APG-VCF <br><br> **AMENDED COMPLAINT** <br> **JURY DEMAND** |

Plaintiffs Sage Humphries, Gina Menichino, RoseMarie ("Rosie") DeAngelo, Danielle

Gutierrez, and Jane Doe 100 (together, "Plaintiffs"), for their Complaint against Defendants

1
AMENDED COMPLAINT

Mitchell Taylor Button ("Taylor Button") and Dusty Button (together, "Defendants" or "the Buttons"), allege as follows:

## INTRODUCTION

1.      This Amended Complaint is filed as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("[A]n amended complaint supersedes the original" rendering a motion to dismiss the original complaint "moot").

2.      This case is about a couple who has exploited their position of power and influence in the dance world to sexually abuse young dancers across the country.

3.      Young dancers are uniquely susceptible to sexual abuse.  Dance training is characterized by physical intimacy and unequal power dynamics between students and teachers, which helps contribute to a pattern of exploitation and silence.

4.      A culture of harassment and abuse permeates the dance world at all levels, including the most prestigious dance institutions.  Wendy Whelan, a former ballerina for the New York City Ballet, has observed, "[i]t can feel particularly risky — both emotionally and career wise — to be a whistle-blower within our field . . . We aren't encouraged to use our voice to expose the dark side of what is also truly a magical industry for the sake of hurting our father-figure teachers."

5.      Another former ballerina, Alexandra Waterbury, told the New York Times, "[e]very time I see a little girl in a tutu or with her hair in a bun on her way to ballet class, all I can think is that she should run in the other direction, because no one will protect her, like no one protected me."

6.      Taylor Button and his wife, Dusty Button (together, "the Buttons"), are well-known members of the dance community who have been perpetuating this legacy of exploitation by inflicting an intentional combination of emotional control, financial manipulation, and sexual abuse against young dancers across the country since as early as 2007, when Taylor Button began abusing underage dancers as a dance instructor in Florida.

AMENDED COMPLAINT

7.    As alleged further herein, the Buttons abuse their positions of power and prestige in the dance community to garner the loyalty and trust of young dancers.  The Buttons then exploit those relationships to coerce sexual acts by means of force and fraud.

8.    The Buttons continue to enjoy fame and success in the dance community and regularly interact with young children through their positions as choreographers, instructors, and/or photographers.

## PARTIES

9.    Sage Humphries is an individual who resides and is domiciled in Melrose, Massachusetts.  During the events described below, Sage resided in Somerville, Massachusetts.

10.    Gina Menichino is an individual who resides and is domiciled in Union City, New Jersey.  During the events described below, Gina resided in Tampa, Florida.

11.    Rosie DeAngelo is an individual who resides and is domiciled in New York, NY. During the events described below, Rosie resided in Wesley Chapel, Florida.

12.    Danielle Gutierrez is an individual who resides and is domiciled in Odessa, Florida. During the events described below, Danielle resided in Tampa, Florida.

13.    Jane Doe 100 is an individual who resides and is domiciled in Bedford, New Hampshire.  During the events described below, Jane 100 resided in Bedford, New Hampshire.

14.    Defendant Taylor Button is an individual who resides and is domiciled in Las Vegas, Nevada.  During the events described below, Taylor resided in Tampa, Florida and Somerville, Massachusetts.  Taylor Button goes by several aliases, including "Mitchell Moore," "Taylor Moore," and "Mitchell Button."

15.    Defendant Dusty Button is an individual who is domiciled in Las Vegas, Nevada. During the events described below, Dusty resided in Somerville, Massachusetts.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiffs' rights under 18 U.S.C. § 1591, 1595, *et seq.*

17.     The Court has supplemental jurisdiction over Plaintiffs' related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

18.     This Court also has diversity jurisdiction over this dispute pursuant to 28 U.S.C. §1332, as there is complete diversity among Plaintiffs, citizens of Massachusetts, New Jersey, New York, Florida, and New Hampshire, and Defendants, citizens of Nevada, and the amount in controversy exceeds the sum or value of $75,000.00 excluding interests and costs.

19.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because the Defendants reside in this district.

20.     The Court has general personal jurisdiction over Defendants as they are residents of this State.

## FACTUAL BACKGROUND

**I.     Taylor Button Exploited his Position of Power at Centerstage Dance Academy to Groom and Abuse his Students, including Gina Menichino.**

21.     Taylor Button became a dance teacher at Centerstage Dance Academy ("Centerstage") in Tampa, Florida in approximately 2006.  At this time, Taylor went by the name Taylor Moore.

22.     At Centerstage, Taylor taught dance to girls as young as ten years old.

23.     Taylor sexually abused at least five of his students.  Taylor's abuse involved, among other things, forcefully performing oral sex and requiring it to be performed on him.

24.     For example, Taylor sexually abused one minor child who was a student in his class for a period of three years, beginning when she was 13 years old.  In addition to other actions undertaken to groom the minor child, Taylor wrote this child a love letter.  In pertinent part the letter says,

"God sent you to make to make up for my lack of family."

"I could never love again so much as I love you, where you end and I begin is like a river flowing through.  Take my heart, take my soul, I need them no more, if never again they fall upon the one I so adore."

"You're beautiful inside and out, and are going to be so great as you grow.  Never forget that no matter what, I'll never love you less than I do today."

25.     Taylor forcefully performed oral sex on that minor child and forced her to perform oral sex on him.  Among other tactics, Taylor used his position of power and authority over that child to force her to comply with his sexual demands.  For instance, Taylor would reward that child with special professional opportunities—including traveling to out-of-state dance conventions—to reward her obedience.  Conversely, Taylor would retaliate against that child and threaten to hurt her dance career if she refused his advances.

26.     Gina Menichino took dance lessons from Taylor.

27.     Gina and other Centerstage students looked up to Taylor because he was a talented dance instructor and well-connected in the dance industry.

28.     Taylor took a special interest in Gina and would single her out for special attention and opportunities in dance class, such as allowing her to assistant teach his dance classes.

29.     Taylor required all students to wear only sports bras and "booty shorts" to his dance classes.  Taylor would compliment Gina's body and appearance.  Taylor also became physically affectionate with Gina.

30.     Gina aspired to dance professionally, and she was flattered that Taylor took an interest and saw potential in her.  Taylor promised that if she trusted him and followed his direction, he would help her become a successful dancer.

31.     Taylor made special efforts to isolate Gina and confine her in spaces which he controlled.  For example, Taylor scheduled rehearsals for Gina's dance solos to be late at night when no one else was in the dance studio.

32.     During one such rehearsal, Taylor cornered Gina in a private dance studio and kissed her.

33.     Taylor socialized with many of his students outside of dance class.

34.     On one such occasion in 2010, when Gina was 13 years old, Taylor was watching a movie with several of his dance students, including Gina.

35.     Gina and Taylor sat on the couch sharing a blanket.  Taylor then touched Gina's leg and eventually began rubbing her vagina without her consent.

AMENDED COMPLAINT

36.     Later that evening, in a further effort to groom Gina for abuse, Taylor and Gina exchanged text messages.  Taylor told Gina that when he touched her he could feel she was "wet" and that he wanted to touch her again.

37.     On a second occasion in 2010, when Gina was 13 years old, Gina and Taylor were again watching a movie with other girls from the dance studio and sharing a blanket. Taylor again began rubbing Gina's vagina and penetrated her with his hand.  Taylor then grabbed Gina's hand and forced her to touch his penis.

38.     On another occasion, Taylor texted Gina a photo of himself with no shirt on, flexing his muscles in the mirror.  Taylor coerced Gina into sending him photos of herself without clothes on.

39.     Taylor soon began regularly "sexting" Gina.  Taylor would send Gina photos and videos of himself masturbating.  Taylor instructed Gina to do the same, thus soliciting visual depictions of Gina engaging in sexually explicit conduct as defined by federal child pornography laws.

40.     In these texts, Taylor would tell Gina, in great detail, about sexual acts he wanted to perform on her, including wanting to "tie her up."  Taylor instructed Gina to do the same.

41.     Taylor instructed Gina to change his contact in her phone to a fake name and to delete all of their text exchanges every night.

42.     Taylor regularly traveled out-of-state for dance conventions, classes, and competitions, including to Virginia and North Carolina.  When Taylor traveled out-of-state, Taylor would continue to communicate with Gina, including by sending and soliciting sexually explicit photos and videos.

43.     Taylor used his position of power and authority over Gina to force her to comply with his sexual demands.  For example, Taylor would reward Gina's compliance by singling her out for professional opportunities, such as free, special solo practices and an assistant teaching position at a dance convention.  These opportunities were invaluable to Gina because she aspired to be a professional dancer.

44.     Taylor would also give Gina gifts to reward her for submitting to his demands. For example, on Gina's 14th birthday, Taylor gave Gina a teddy bear, which he sprayed with his cologne so that Gina could feel like she was "sleeping" with Taylor.  On another occasion, Taylor gave Gina a clothing gift that he purchased from an out-of-state dance convention.

45.     Conversely, if Gina resisted Taylor's advances, Taylor would retaliate against Gina with emotional abuse and/or by threatening to hurt her dance career.

46.     Over time, Taylor became increasingly controlling.  For example, Taylor instructed Gina to isolate herself from her family and from certain friends, he exerted control over Gina's text messages and social media posts, and he instructed Gina how to dress and style her hair outside of dance class.

47.     Gina has expended significant costs on therapy and suffers mental anguish, severe emotional distress, and loss of enjoyment of life as a direct and proximate result of Taylor's abuse.

48.     Gina turned 18 years old July 29, 2014.

**II.     Taylor Manipulated and Sexually Abused Another Student, Rosie DeAngelo.**

49.     Rosie also took dance lessons from Taylor at Centerstage Dance Academy when she was a minor.

50.     Taylor was physically affectionate toward Rosie and would single her out for special attention.  For example, Taylor would insist on taking Rosie on one-on-one lunch breaks from the dance studio, and he would find opportunities to caress Rosie or hold her hand when they were in private.

51.     Rosie aspired to be a professional dancer.  Given Taylor's purported connections in the dance industry and his status as her dance instructor, Taylor's approval and professional support were invaluable to Rosie.

52.     Taylor began to make sexual comments toward Rosie.  For example, Taylor choreographed a solo dance performance for Rosie where she used a stool as a prop, and Taylor told Rosie that he wanted to "bend her over" the stool and perform sexual acts on her.

53.     Taylor conditioned attention and support in dance class on Rosie's obedience with his sexually suggestive behavior.

54.     If Rosie defied Taylor's wishes or expressed discomfort with his comments and conduct, Taylor would retaliate against Rosie by, for example, refusing to speak to her, yelling at her in dance class, or moving her to the back of the stage for dance performances.

55.     Taylor would make sexual jokes in dance class, such as pantomiming sexual conduct while dancing, and if Rosie and the other dancers did not laugh, he would attempt to publicly embarrass them by, for instance, calling them "prude."

56.     Taylor would travel out-of-state for various professional dance opportunities, and he would continuously keep in contact with Rosie while traveling via cellphone and other means of electronic communication.

57.     Rosie attended social gatherings with other dancers where Taylor was present.

58.     On one such occasion, around 2007 when Rosie was a minor, Rosie attended a sleepover at a fellow dancer's house.  Taylor was present during the sleepover.

59.     Throughout the sleepover, Taylor would be physically affectionate with the young dancers.  For example, he encouraged the young dancers to lay in bed and cuddle with him.

60.     At one point, Taylor insisted that Rosie enter a private bedroom and lay on the bed with him.  Taylor closed the door, trapping Rosie in the room with him.

61.     Taylor then began kissing Rosie, touching Rosie's chest under her shirt, and rubbing Rosie's vagina without her consent.  Taylor also forced Rosie to touch his penis.

62.     Taylor instructed Rosie not to tell anyone, including her mother, about his comments and behavior that were sexual in nature.

63.     Taylor told Rosie that it was not illegal for him to perform sexual acts on her because of the size of their age difference. Taylor made this intentionally false statement to a minor in order to keep Rosie silent about the abuse.  Taylor convinced Rosie she had no legal recourse for the abuse she suffered.

64.     The shock and confusion resulting from the abuse, coupled with Taylor's authoritative demands, threats for secrecy, and manipulative assertions that his conduct was legal led Rosie to suppress the abuse and remain silent about Taylor's conduct.

65.     Rosie did not report the sexual abuse or pursue legal remedies until the original complaint was filed in this action as a direct and proximate result of Taylor's control, deception, manipulation, and threats, and the affirmative steps that he took during the abuse in order to prevent her from reporting his misconduct.

66.     Accordingly, any statute of limitations applicable to Rosie's claims, if any, is tolled.  Taylor's actions described above deprived Rosie of the opportunity to commence this lawsuit before now.

67.     Taylor is equitably estopped from asserting a statute of limitations defense as to Rosie's claims.  Allowing Taylor to do so would be unjust.  Taylor took active steps to prevent Rosie from commencing this lawsuit before now, including by intentionally lying to Rosie about the applicable law governing his conduct, willfully causing her to believe that she had no legal recourse against him.

68.     Due to her fear of Taylor, Rosie switched to a different dance studio her senior year of high school.

69.     Rosie has expended significant costs on therapy and suffers mental anguish, severe emotional distress, and loss of enjoyment of life as a direct and proximate result of Taylor's abuse.

**III.    Taylor Battered and Sexually Abused Another Student, Danielle Gutierrez.**

70.     Danielle also took dance lessons from Taylor at Centerstage Dance Academy.

71.     Taylor would be physically affectionate toward Danielle and single her out for special attention.  For example, Taylor would often cuddle, caress, and hug Danielle, and Taylor told Danielle he saw her as his "little sister."

72.     Danielle aspired to dance professionally, so she valued Taylor's approval and mentorship.

73.     Around 2007, when Danielle was 17 years old, Taylor began to make explicitly sexual comments toward Danielle.  For example, Taylor regularly told Danielle that he wanted to "take her virginity."  On one occasion, Taylor hugged Danielle and then groped her breasts.

74.     Taylor's behavior made Danielle uncomfortable, particularly given his status as her dance instructor.

75.     Taylor conditioned his professional and emotional support for Danielle on Danielle's obedience with his romantic and sexual advances.

76.     Taylor became increasingly controlling over Danielle.  For example, Taylor would become enraged if Danielle did not immediately respond to his text messages, and Taylor forbid Danielle from spending time with school friends who were not affiliated with the dance studio.  Taylor would also instruct Danielle on how to dress, and he attempted to isolate Danielle from her family.

77.     If Danielle defied Taylor's demands, Taylor would threaten to harm Danielle's professional dance career.  For example, Taylor would threaten to kick Danielle out of dances, threaten to kick Danielle out of the dance studio, and would tell Danielle she would never make it as a professional dancer.

78.     The evening of Danielle's school dance, when Danielle was 17 years old and Taylor was an adult, Taylor forced Danielle to leave early and have sex with him.  Taylor coerced Danielle into sex through intimidation, emotional abuse, and by exploiting their unequal power dynamic.

79.     Throughout the course of their relationship, Taylor would regularly travel out-of-state for dance competitions and conventions, and he would continuously text and talk to Danielle, including by sending verbally and mentally abusive messages.

80.     Danielle considered attending college out-of-state, but Taylor forced Danielle to attend college in Tampa, Florida so that she would remain close to him.

81.     Taylor became increasingly controlling.  For example, Taylor forbid Danielle from participating in her college dance program because he did not want her to dance with other

1   men.  Taylor would also instruct Danielle how to dress, and would regularly go through her

2   phone to monitor her texts and phone calls.

3       82.    Taylor also became verbally abusive toward Danielle and regularly called her

4   names, including Hispanic slurs.

5       83.    On one occasion, during Danielle's freshman year of college, Danielle and

6   Taylor got into an argument.  Taylor became enraged and dragged Danielle across the room by

7   her hair.

8       84.    From that point forward, Taylor physically abused Danielle at least three times

9   a week, including by punching and kicking Danielle in the stomach, and squeezing Danielle

10  until she could not breathe and her nose bled.

11      85.    On one occasion, Taylor and Danielle got into an argument in Taylor's apartment

12  and Danielle tried to escape.  Taylor then pinned Danielle against the wall and told her she could

13  not leave, trapping her in his apartment.  Taylor pulled out a knife and put it to Danielle's throat.

14      86.    Taylor also put the knife against his own throat and wrist and told Danielle he

15  would kill himself and Danielle's family in front of Danielle if she ever tried to leave him.

16      87.    Throughout their relationship, Taylor would coerce sex from Danielle through

17  intimidation, emotional manipulation, and verbal abuse.  For example, Taylor would tell

18  Danielle that if she did not have sex with him, he would revoke his offers of professional

19  opportunities, and she would never succeed in her career as a dancer.

20      88.    On another occasion, Taylor pulled an AK-47 on another man in front of

21  Danielle.  This experience intensified Danielle's fear of Taylor.

22      89.    Taylor would regularly yell at Danielle and call her names in public, and on

23  several occasions, bystanders attempted to intervene to help Danielle.  Taylor would become

24  belligerent and scare away these bystanders, which deepened Danielle's fear of Taylor and

25  belief that no one could help.

26      90.    Taylor and Danielle traveled together out-of-state, including to California to

27  teach at a dance studio together.  During this trip, Taylor continued his pattern of abusive

28  conduct.

91.     Taylor told Danielle that his conduct toward her was not illegal due to the size of their age difference.  Taylor made this intentionally false statement in order to keep Danielle silent about the abuse.  Taylor convinced Danielle she had no legal recourse for the abuse she suffered.

92.     Taylor also threatened to kill Danielle and her family if she ever came forward about his conduct.

93.     The trauma resulting from the abuse, coupled with Taylor's violent threats demanding secrecy, led Danielle to suppress the abuse and remain silent about Taylor's conduct.

94.     Danielle did not report the sexual and physical abuse until August 2018 as a direct and proximate result of Taylor's control, deception, manipulation, and threats, and the affirmative steps that he took during the abuse in order to prevent her from reporting his misconduct.

95.     Accordingly, any statute of limitations applicable to Danielle's claims, if any, is tolled.  Taylor's actions described above deprived Danielle of the opportunity to commence this lawsuit before now.

96.     Taylor is equitably estopped from asserting a statute of limitations defense as to Danielle's claims.  Allowing Taylor to do so would be unjust.  Taylor took active steps to prevent Danielle from commencing this lawsuit before now, including by making violent threats to harm her or her family and to ruin her career aimed at silencing her.  Taylor also actively and intentionally lied to Danielle about the applicable law governing his conduct, willfully causing her to believe that she had no legal recourse against him.

97.     During Danielle's sophomore year of college, Taylor broke up with Danielle.

98.     Danielle has expended significant costs on therapy and suffers mental anguish, severe emotional distress, and loss of enjoyment of life as a direct and proximate result of Taylor's abuse.

IV.   **Dusty Button and Taylor Button Work Together to Carry out a Campaign of Harassment and Abuse.**

99.     In December 2010, Centerstage dancers and their parents began to discuss Taylor's behavior and the rumors that he had physically abused students and engaged in sexual relationships with minors.

100.    Taylor fled to London, England.

101.    Taylor told his former students that he was moving because he wanted to marry his former girlfriend, Dusty Button, who was a student at the Royal Ballet School in London at the time.

102.    Shortly thereafter, Taylor married Dusty and took her last name.

103.    Dusty is a prominent figure in the dance community.  Dusty has over 300,000 followers on Instagram, and she has been featured in Glamour Magazine, Pointe Magazine, Dance Europe, Dance Spirit Magazine, Dance Magazine, Dance Informa, and other dance publications.  She is sponsored by Red Bull, Bloch Dancewear, and Discount Dance.

104.    Taylor holds himself out to be Dusty's manager.

105.    The Buttons work together providing, *inter alia*, career management, choreography, photography, and dance instruction services.  They have created a brand for themselves called "Button Built" and sell branded merchandise online.

106.    A substantial portion of this work involves interacting with minors.  For instance, the Buttons have been affiliated with the Showstopper, BellaMoxi, and Radix dance conventions and competitions.

107.    The Buttons exploit their proximity to and authority over minors to groom and abuse young dancers.

108.    For example, in 2015 the Buttons began a so-called "mentorship" relationship with an 11-year-old child under the pretense that they would help further her dance career.  Over the course of approximately three years, the Buttons became emotionally manipulative and controlling over the minor child's life.  For instance, the Buttons pressured the child to travel

and share a bed with them, insisted on exercising control over her social media accounts, instructed her to dress and behave in a manner similar to Dusty, and, on one occasion, Dusty insisted on performing a lengthy touching session on the child, which she called a "massage." The Buttons also attempted to isolate the child from her family, including by telling the child that her mother is unable to advance her dance career, and that she should live with the Buttons as their adopted daughter instead.  If the child or her mother defied the Buttons' wishes, the Buttons would emotionally abuse the child and threaten to cease assisting her in pursuing her professional dance aspirations.

109.   As another example, the Buttons drugged and molested another young dancer at a dance gala in Panama.

**V.**    **The Buttons Groomed and Raped Jane Doe 100.**

110.   Jane 100 met the Buttons in 2014 when she was a minor.

111.   At the time, Dusty was a ballerina with the Boston Ballet.  Jane 100 danced for a contemporary dance company that rented studio space from the Boston Ballet for rehearsals and classes.  On several occasions, Dusty observed Jane 100's dance classes.

112.   One day after Jane 100's dance class, Dusty approached Jane 100.  Dusty complimented Jane 100's dancing and told Jane 100 she had enormous potential.

113.   Jane 100 knew that Dusty was a dancer with the Boston Ballet and that Dusty had a large social media following.  Jane 100 was flattered and excited that a dancer as successful and famous as Dusty recognized Jane 100's talent.

114.   Thereafter, Dusty continued to initiate conversations with Jane 100 and compliment her dancing, thus garnering Jane 100's loyalty and trust.

115.   Dusty told Jane 100 that she should meet Dusty's husband, Taylor.  Dusty said that Taylor managed Dusty's career and social media accounts, and that he could make Jane 100 a star.

116.   Jane 100 met Dusty and Taylor for coffee.  The Buttons told Jane 100 that if she continued to spend time with them and follow their directions, they would help Jane 100 achieve her dream of becoming a professional dancer.  The Buttons promised to help Jane 100 network

in the dance industry, grow her social media following, attend prestigious dance conventions, and access other professional opportunities. These promises of professional mentorship, opportunity, and support were invaluable to Jane 100.

117.    After coffee, the Buttons instructed Jane 100 to come to the Buttons' apartment. There, the Buttons insisted that Jane 100 drink alcohol. Jane 100 became intoxicated.

118.    One evening, when Jane 100 was a minor and the Buttons were adults, the Buttons invited Jane 100 to party with them in Boston. The Buttons forced Jane 100 to drink alcohol.

119.    Jane 100 soon became incapacitated and felt she did not have control over her body. Jane 100 believes she was drugged by the Buttons.

120.    The Buttons then brought Jane 100 back to their apartment. They led Jane 100 into a room that had a mattress on the floor and an arsenal of guns hanging on the wall. The Buttons pushed Jane 100 onto the mattress.

121.    Dusty began kissing Jane 100 and touching Jane 100's body in a sexual manner. Dusty held Jane 100 down while Taylor performed oral sex on Jane 100. Jane 100 began to cry and told the Buttons to stop.

122.    Dusty continued to restrain Jane 100, and Taylor forcibly penetrated Jane 100. Jane 100 said "no" and "stop."

123.    Dusty held up her phone in a manner that indicated to Jane 100 she was recording the rape. Jane 100 believes Dusty took photos and/or videos of Taylor raping Jane 100.

124.    At one point, Dusty had a gun in her hand. Jane 100 was terrified.

125.    In the years following the rape, Jane 100 has experienced panic attacks, suicidal thoughts, and an eating disorder. Jane 100 has ceased pursuing a professional dance career.

126.    Jane 100 has expended significant costs on therapy and suffers mental anguish, severe emotional distress, deprivation of income and benefits, damage to her reputation and career, and loss of enjoyment of life as a direct and proximate result of the Buttons' abuse.

## VI.     The Buttons Manipulated and Brutalized Sage Humphries.

127.     Sage met Dusty in 2016 when they were both dancing for the Boston Ballet.  At the time, Sage was a dancer for Boston Ballet II, which is an apprenticeship program.  Dusty was a principal ballerina, which is the highest position for a dancer in the Boston Ballet.

128.     Sage also met Taylor through the Boston Ballet.  Taylor would regularly spend time at the dance studio to watch Dusty and the other dancers rehearse.

129.     Sage met the Buttons at a vulnerable period in her life.  Sage was new to Boston and did not have family or friends in the area.  Unlike many other dancers in the Boston Ballet, she did not come from a prominent ballet school and did not have any personal connections to the professional dance community.

130.     Around February 2017, Dusty initiated a friendship with Sage and invited her to come to the Buttons' apartment after rehearsal.  Sage was eager to develop a friendship with Dusty given Dusty's status in the Boston Ballet and in the dance world, and especially given Sage's lack of other friends in Boston.

131.     Dusty urged Sage to develop a friendship with Taylor.

132.     Sage soon began regularly spending time with the Buttons.

133.     The Buttons' behavior became increasingly controlling.  For instance, the Buttons would insist that Sage drink heavily when she was with them.

134.     The Buttons also began to insist that Sage sleep at their apartment on a regular basis.

135.     The Buttons instructed Sage to wear their clothes and style her hair to match Dusty's hair.

136.     Taylor told Sage that if she allowed him to control her social media, he could make her famous like Dusty.  Taylor insisted on having Sage's passwords, including access to her text messages and emails.

137.     Taylor helped grow Sage's social media following.  Taylor told Sage that he would be able to continue to help her career only if he had full control over her accounts.  Taylor took over Sage's posts, text messages, and emails.

138.    One evening, Taylor placed a mattress in the living room and insisted that Sage and the Buttons all lay on it and watch a movie, with Taylor laying in the middle.  At some point, Dusty pretended to fall asleep.  Taylor then rolled over and began to sexually assault Sage.

139.    The Buttons threatened Sage that the only way Sage could develop her dancing, singing, and acting career was if she continued to be affiliated with the Buttons.  The Buttons told Sage if she did not obey the Buttons' demands, she would never succeed professionally.

140.    The Buttons required that Sage regularly sleep at the Buttons' apartment, and Taylor continued to sexually assault Sage.

141.    Any time Sage attempted to develop other friendships and spend time apart from the Buttons, the Buttons would become enraged.  On one occasion, Sage went to lunch with a group of women.  When Sage returned to the Buttons' apartment, Taylor began screaming at her.  Sage feared for her safety.  Taylor then forced Sage to perform oral sex on him.  Sage was terrified.

142.    The Buttons continued to forbid Sage from developing other friendships, and they forbid Sage from speaking with her family.

143.    At one point, Sage had plans to travel to California to spend time with her family.  The Buttons became extremely angry at the prospect of Sage spending time away from them.  The Buttons told Sage that she must prioritize them over her family, otherwise they would ruin her dance career.  The Buttons then went with Sage to California so she could not be alone with her family.

144.    One day in California, the Buttons insisted that they leave Sage's parent's house to go to Sage's family beach house.  Sage's parents protested because they had not seen Sage in a long time and wanted to spend time with her.  The Buttons then verbally abused Sage and threatened her career success.

145.    Sage took the Buttons to the beach house.  There, Dusty began kissing Sage, and Taylor soon joined.  They told Sage, "this is what you want, we can finally be together."  Sage felt terrified and like the Buttons had complete control over her life.

146.    When they returned to Boston, the abuse intensified.  One evening, Sage went to the Buttons' apartment after rehearsal, and the apartment was completely dark.  Dusty and Taylor demanded that Sage put on a spandex suit that covered her entire body, including her mouth and eyes, and left only her nose and ears exposed.  Dusty led Sage into a room of the Buttons' apartment that had an arsenal of guns hanging on the wall.

147.    Sage told the Buttons she was scared.  They instructed her to lie down on a table, and they tied up her arms and legs so she was unable to move.  The Buttons then sexually assaulted Sage.

148.    Sage began sobbing and screaming, begging the Buttons to untie her.  The Buttons told her she was being weak and stupid.

149.    Soon thereafter, Dusty and Taylor forced Sage to have sexual intercourse with Taylor.  Dusty watched, and Sage cried the entire time.

150.    After that, the Buttons began having sex with Sage whenever they pleased.  Sometimes Taylor would penetrate Sage while she was sleeping.

151.    Taylor regularly shoved Sage to the ground or on the bed and violently penetrated her without her consent.

152.    On several occasions, Dusty held Sage down while Taylor penetrated her so that Sage could not move.

153.    During sex, the Buttons would choke, slap, and pull Sage's hair.  Sage was often left covered in bruises.

154.    The Buttons also regularly used painful sex toys on Sage and would tie Sage up in order to have sex with her.

155.    Sage never consented to these violent sex acts.

156.    By May 2017, the Buttons forced Sage to live with them full time, and she became financially dependent on them.  The Buttons did not charge Sage for rent, and they paid for her meals and other personal expenses in exchange for her compliance with their abuse.  They continued to control her social media accounts and conversations with others.

157.   Taylor told Dusty she was not allowed to sexually abuse Sage unless he were also present.

158.   On one occasion, Taylor discovered Dusty sexually abused Sage without him present, and he began to scream.  Dusty and Taylor engaged in a physical altercation, ending with Taylor striking Dusty across the face.

159.   This experience intensified Sage's fear of the Buttons.

160.   If Sage ever attempted to distance herself or disobey the Buttons, they would threaten to revoke their financial support and sabotage her career.

161.   The Buttons told Sage she was not allowed to speak to her parents without their permission.

162.   Sage's family became concerned with the lack of communication and thought that Sage was in a dangerous situation.  Sage's family flew to Boston and forced Sage to return with them to California.

163.   Once in California, the Buttons continued to contact Sage.  On one occasion, Taylor told Sage via Snapchat that he wanted to throw her in his van, tie her hands and feet, blindfold her, rent a warehouse, hang her from the ceiling, rape Sage, "and leave [her] there to die."

164.   Taylor also threatened to break into Sage's family's home, slit her dad and ex-boyfriend's throats, and beat up her mother.

165.   At the end of July 2017, Taylor and Dusty traveled to California, causing Sage extreme fear.

166.   In August 2017, Sage sought and received abuse protection orders against both Taylor and Dusty.

167.   Sage and her family expended significant costs on psychological treatment and attorneys' fees.

168.   Sage suffered and continues to suffer physical pain, mental anguish, and severe emotional distress as a direct and proximate result of the Buttons' abuse.

**FIRST CAUSE OF ACTION**

**Violation of 18 U.S.C. § 1591, 1595(a) – Sex Trafficking**
*(Sage Humphries Against Defendants)*

169.    Plaintiff Sage Humphries incorporates each and every allegation contained above as though fully set forth herein.

170.    The Buttons recruited and enticed Sage to begin a sexual and/or professional relationship with them based on the false promise that they would aid her career and professional development.

171.    The Buttons acted knowing that they would use force, threats of force, and/or fraud to cause Sage to engage in sex acts in exchange for commercial gain and advantage.

172.    The Buttons in fact used force, threats of force, and/or fraud to cause Sage to engage in sex acts for commercial gain and advantage.

173.    In exchange for performing sex acts, the Buttons gave Sage professional opportunities, and/or management services, and/or photography services, and/or gifts and other forms of financial support.

174.    The Buttons' conduct affected interstate commerce, including, but not limited to, because the Buttons enticed Sage to cross state lines with the Buttons by using threats, intimidation, and the pretense that they would help further her career and professional development, in exchange for engaging in sex acts.

175.    As result of the Buttons' conduct, Sage suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

176.    The Buttons' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Sage's rights.

177.    Sage claims compensatory and punitive damages herein.

178.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## SECOND CAUSE OF ACTION

### Violation of 18 U.S.C. § 1589, 1595(a) – Forced Labor
### *(Sage Humphries Against Defendants)*

179.   Plaintiff Sage Humphries incorporates each and every allegation contained above as though fully set forth herein.

180.   The Buttons obtained Sage's labor and services, including, but not limited to, Sage's sexual labor and services, by means of force, threats of force, physical restraint, and threats of physical restraint.

181.   The Buttons obtained Sage's labor and services, including, but not limited to, Sage's sexual labor and services, by inflicting serious harm and threatening serious harm to Sage and/or her family.  These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

182.   The Buttons obtained Sage's labor and services, including, but not limited to, Sage's sexual labor and services, by means of a scheme, plan, or pattern intended to cause Sage to believe that, if Sage did not perform such labor or services, Sage or her family would suffer serious harm or physical restraint.  These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

183.   As result of the Buttons' conduct, Sage suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

184.   The Buttons' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Sage's rights.

185.   Sage claims compensatory and punitive damages herein.

186.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

1

2

## THIRD CAUSE OF ACTION

3

**Violation of 18 U.S.C. § 1584, 1595(a) – Involuntary Servitude**
*(Sage Humphries Against the Buttons)*

4

5

     187.    Plaintiff Sage Humphries incorporates each and every allegation contained

6

above as though fully set forth herein.

7

     188.    The Buttons knowingly and willfully held Sage in involuntary servitude.

8

     189.    The Buttons held Sage in a condition of compulsory service whereby Sage was

9

compelled to provide labor and services against her will for the benefit of the Buttons.  This

10

labor and service includes, but is not limited to, sexual labor and services.

11

     190.    The Buttons obtained Sage's labor and services, including, but not limited to,

12

Sage's sexual labor and services, by means of force, threats of force, physical restraint, and

13

threats of physical restraint.

14

     191.    The Buttons obtained Sage's labor and services, including, but not limited to,

15

Sage's sexual labor and services, by inflicting serious harm and threatening serious harm to

16

Sage and/or her family.  These harms and threatened harms include, but are not limited to,

17

physical, psychological, financial, and reputational harms.

18

     192.    The Buttons obtained Sage's labor and services, including, but not limited to,

19

Sage's sexual labor and services, by means of a scheme, plan, or pattern intended to cause Sage

20

to believe that, if Sage did not perform such labor or services, Sage or her family would suffer

21

serious harm or physical restraint.  These harms and threatened harms include, but are not

22

limited to, physical, psychological, financial, and reputational harms.

23

     193.    As result of the Buttons' conduct, Sage suffered damages including deprivation

24

of income and benefits, loss of employment opportunities, severe physical and emotional

25

distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage

26

to her reputation and career.

27

     194.    The Buttons' unlawful and discriminatory actions were intentional, done with

28

malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Sage's rights.

195.     Sage claims compensatory and punitive damages herein.

196.     The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## FOURTH CAUSE OF ACTION

### Violation of 18 U.S.C. § 1591, 1595(a) – Sex Trafficking
### *(Gina Menichino Against Taylor Button)*

197.     Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

198.     Taylor recruited and enticed Gina to engage in sex acts for commercial gain and advantage while she was a minor.

199.     Taylor recruited and enticed Gina to begin a sexual and/or professional relationship with him based on the false promise that he would aid her career and professional development.

200.     Taylor acted knowing that he would use force, threats of force, and/or fraud to cause Gina to engage in sex acts in exchange for commercial gain and advantage.

201.     Taylor in fact used force, threats of force, and/or fraud to cause Gina to engage in sex acts for commercial gain and advantage.

202.     In exchange for performing sex acts, Taylor gave Gina professional opportunities, and/or choreography services, and/or management services, and/or gifts and other forms of financial support.

203.     Taylor's conduct affected interstate commerce, including, but not limited to, because Taylor enticed Gina to send visual depictions of Gina engaging in sexually explicit conduct as defined by federal child pornography laws across state lines under the pretense that he would help further her career and professional development.

204.     As result of Taylor's conduct, Gina suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress,

pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

205.   Taylor's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

206.   Gina claims compensatory and punitive damages herein.

207.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### FIFTH CAUSE OF ACTION

**Violation of 18 U.S.C. § 1589, 1595(a) – Forced Labor**
***(Gina Menichino Against Taylor Button)***

208.   Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

209.   Taylor obtained Gina's labor and services, including, but not limited to, Gina's sexual labor and services, by means of a scheme, plan, or pattern intended to cause Gina to believe that, if Gina did not perform such labor or services, Gina would suffer serious harm or physical restraint.  These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

210.   As result of Taylor's conduct, Gina suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

211.   Taylor's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

212.   Gina claims compensatory and punitive damages herein.

213.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

1
2

**SIXTH CAUSE OF ACTION**

3
4

**Violation of 18 U.S.C. § 1584, 1595(a) – Involuntary Servitude**
*(Gina Menichino Against Taylor Button)*

5
6

214.    Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

7

215.    Taylor knowingly and willfully held Gina in involuntary servitude.

8
9
10

216.    Taylor held Gina in a condition of compulsory service whereby Gina was compelled to provide labor and services against her will for the benefit of Taylor.  This labor and service includes, but is not limited to, sexual labor and services.

11
12
13
14

217.    Taylor obtained Gina's labor and services, including, but not limited to, Gina's sexual labor and services, by inflicting serious harm and threatening serious harm to Gina.  These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

15
16
17
18
19

218.    Taylor obtained Gina's labor and services, including, but not limited to, Gina's sexual labor and services, by means of a scheme, plan, or pattern intended to cause Gina to believe that, if Gina did not perform such labor or services, Gina or her family would suffer serious harm or physical restraint.  These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

20
21
22
23

219.    As result of Taylor's conduct, Gina suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

24
25

220.    Taylor's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

26

221.    Gina claims compensatory and punitive damages herein.

27
28

222.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SEVENTH CAUSE OF ACTION

### BATTERY
### *(Gina Menichino Against Taylor)*

223.   Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

224.   Taylor intended to commit and committed acts of unwanted contact with Gina.

225.   Taylor committed unwanted contact with Gina in a harmful and offensive manner, including but not limited to by inflicting juvenile sexual abuse against Gina.

226.   Among other batteries, Taylor sexually abused Gina without her consent, without equality, and as a result of coercion.

227.   Taylor exploited his position of authority to intimidate, overwhelm, and subdue Gina.  Any objections to his conduct were met with retaliation.

228.   Taylor abused his position of power and authority over Gina, who was in no position to reject his sexual advances due to her age and vulnerability.

229.   Taylor's batteries on Gina caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

230.   Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

231.   Gina claims compensatory and punitive damages herein.

232.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## EIGHTH CAUSE OF ACTION

### ASSAULT
### *(Gina Menichino Against Taylor Button)*

233.   Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

234.     Taylor intentionally attempted, threatened, and committed harmful and offensive contacts against Gina, including but not limited to inflicting juvenile sexual abuse against Gina.

235.     Taylor's conduct placed Gina in reasonable apprehension of bodily harm.

236.     Taylor's assaults on Gina caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

237.     Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

238.     Gina claims compensatory and punitive damages herein.

239.     The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## NINTH CAUSE OF ACTION

### FALSE IMPRISONMENT
### *(Gina Menichino Against Taylor Button)*

240.     Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

241.     Taylor intentionally confined Gina, including but not limited to trapping her in private rooms in the dance studio.

242.     Taylor used physical power and an unequal power dynamic to intimidate, overwhelm, and subdue Gina. Any objections to his conduct were met with retaliation.

243.     Taylor abused his position of power and authority over Gina, who was in no position to reject his sexual advances due to her age and vulnerability.

244.     Gina was conscious of the confinement.

245.     Gina did not consent to the confinement.

246.     Taylor's conduct caused Gina to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

247.     Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

248.     Gina claims compensatory and punitive damages herein.

249.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## TENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(Gina Menichino Against Taylor Button)*

250.    Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

251.    Taylor's conduct was extreme and outrageous and intentionally caused severe emotional distress to Gina.

252.    Taylor's conduct exceeded all possible bounds of decency.

253.    Taylor acted with the intent and knowledge that Gina suffered emotional distress due to his coercive conduct.

254.    Taylor's conduct caused Gina to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

255.    Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

256.    Gina claims compensatory and punitive damages herein.

257.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## ELEVENTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY
*(Gina Menichino Against Taylor Button)*

258.    Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

259.    Taylor and Gina's relationship was confidential and fiduciary in nature.

260.    Taylor assumed control and responsibility of Gina.  Taylor utilized the special, teacher-student relationship to gain Gina's trust, and to exert superiority and influence over Gina.

261.    Gina in fact placed trust, confidence, and reliance on Taylor.

262.    Taylor owed Gina fiduciary duties.

263.    Taylor breached his fiduciary duties, including but not limited to by inflicting juvenile sexual abuse against Gina, and by soliciting sexually explicit images and photos of Gina.

264.    Taylor's conduct proximately caused Gina to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

265.    Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

266.    Gina claims compensatory and punitive damages herein.

267.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## TWELFTH CAUSE OF ACTION

### VIOLATION OF 18 U.S.C. §§ 2255, 2252 – Sexual Exploitation of a Minor
*(Gina Menichino Against Taylor Button)*

268.    Plaintiff Gina Menichino incorporates each and every allegation contained above as though fully set forth herein.

269.    Taylor knowingly solicited, promoted, viewed, possessed, received, and/or transported sexually explicit images and videos of Gina.

270.    Taylor used, persuaded, induced, and/or enticed Gina to send him photos and videos that included the lascivious exhibition of her genitalia and pubic areas and included images of herself engaging in sexually explicit conduct including touching herself sexually and simulating sexual intercourse.

271.    Taylor intended for Gina to engage in the sexually explicit conduct he requested her to photograph or video-record.

272.    Gina was a minor at all relevant times.

273.    Taylor took these actions knowing that Gina was a minor.

274.    Gina sent the images and videos in response to Taylor's demands.

275.    The images and videos were of Gina as a minor and were visual depictions of Gina engaging in sexually explicit conduct as defined by federal child pornography laws.

276.    The images and videos were sent using a means of interstate commerce and/or had been shipped or transported in or affecting interstate commerce.

277.    Taylor's conduct caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

278.    Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Gina's rights.

279.    Gina seeks all available relief including claiming compensatory and punitive damages herein.

280.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## THIRTEENTH CAUSE OF ACTION

### Violation of 18 U.S.C. § 1591, 1595(a) – Sex Trafficking
*(Danielle Gutierrez Against Taylor Button)*

281.    Plaintiff Danielle Gutierrez incorporates each and every allegation contained above as though fully set forth herein.

282.    Taylor recruited and enticed Danielle to engage in sex acts for commercial gain and advantage while she was a minor.

283.    Taylor recruited and enticed Danielle to begin a sexual and/or professional relationship with him based on the false promise that he would aid her career and professional development.

284.    Taylor acted knowing that he would use force, threats of force, and/or fraud to cause Danielle to engage in sex acts in exchange for commercial gain and advantage.

285.    Taylor in fact used force, threats of force, and/or fraud to cause Danielle to engage in sex acts for commercial gain and advantage.

286.   In exchange for performing sex acts, Taylor gave Danielle professional opportunities, and/or management services, and/or photography services, and/or gifts and other forms of financial support.

287.   Taylor's conduct affected interstate commerce, including, but not limited to, because Taylor communicated with Danielle across state lines, and enticed Danielle to cross state lines, by using threats, intimidation, and the pretense that he would help further her career and professional development, in exchange for engaging in sex acts.

288.   As result of Taylor's conduct, Danielle suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

289.   Taylor's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Danielle's rights.

290.   Danielle claims compensatory and punitive damages herein.

291.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## FOURTEENTH CAUSE OF ACTION

### Violation of 18 U.S.C. § 1589, 1595(a) – Forced Labor
### *(Danielle Gutierrez Against Taylor Button)*

292.   Plaintiff Danielle Gutierrez incorporates each and every allegation contained above as though fully set forth herein.

293.   Taylor obtained Danielle's labor and services, including, but not limited to, Danielle's sexual labor and services, by means of force, threats of force, physical restraint, and threats of physical restraint.

294.   Taylor obtained Danielle's labor and services, including, but not limited to, Danielle's sexual labor and services, by inflicting serious harm and threatening serious harm to Danielle and/or her family.  These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

295.    Taylor obtained Danielle's labor and services, including, but not limited to, Danielle's sexual labor and services, by means of a scheme, plan, or pattern intended to cause Danielle to believe that, if Danielle did not perform such labor or services, Danielle or her family would suffer serious harm or physical restraint.  These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

296.    As result of Taylor's conduct, Danielle suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

297.    Taylor's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Danielle's rights.

298.    Danielle claims compensatory and punitive damages herein.

299.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## FIFTEENTH CAUSE OF ACTION
### Violation of 18 U.S.C. § 1584, 1595(a) – Involuntary Servitude
### *(Danielle Gutierrez Against Taylor Button)*

300.    Plaintiff Danielle Gutierrez incorporates each and every allegation contained above as though fully set forth herein.

301.    Taylor knowingly and willfully held Danielle in involuntary servitude.

302.    Taylor held Danielle in a condition of compulsory service whereby Danielle was compelled to provide labor and services against her will for the benefit of Taylor.  This labor and service includes, but is not limited to, sexual labor and services.

303.    Taylor obtained Danielle's labor and services, including, but not limited to, Danielle's sexual labor and services, by means of force, threats of force, physical restraint, and threats of physical restraint.

304.    Taylor obtained Danielle's labor and services, including, but not limited to, Danielle's sexual labor and services, by inflicting serious harm and threatening serious harm to

Danielle and/or her family. These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

305. Taylor obtained Danielle's labor and services, including, but not limited to, Danielle's sexual labor and services, by means of a scheme, plan, or pattern intended to cause Danielle to believe that, if Danielle did not perform such labor or services, Danielle or her family would suffer serious harm or physical restraint. These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

306. As result of Taylor's conduct, Danielle suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

307. Taylor's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Danielle's rights.

308. Danielle claims compensatory and punitive damages herein.

309. The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## SIXTEENTH CAUSE OF ACTION

### BATTERY
### *(Danielle Gutierrez Against Taylor)*

310. Plaintiff Danielle Gutierrez incorporates each and every allegation contained above as though fully set forth herein.

311. Taylor intended to commit and committed acts of unwanted contact with Danielle.

312. Taylor committed unwanted contact with Danielle in a harmful and offensive manner, including but not limited to by inflicting juvenile sexual abuse against Danielle, and by physically abusing Danielle by, among other tactics, punching, kicking, and squeezing Danielle.

313.     Among other batteries, Taylor sexually and physically abused Danielle without her consent, without equality, and as a result of coercion.

314.     Taylor used physical force and threats of physical force to commit batteries against Danielle.

315.     Taylor exploited his position of authority to intimidate, overwhelm, and subdue Danielle.  Any objections to his conduct were met with retaliation.

316.     Taylor abused his position of power and authority over Danielle, who was in no position to reject his sexual advances due to her age and vulnerability.

317.     Taylor's batteries on Danielle caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

318.     Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Danielle's rights.

319.     Danielle claims compensatory and punitive damages herein.

320.     The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.


## SEVENTEENTH CAUSE OF ACTION

### ASSAULT
### *(Danielle Gutierrez Against Taylor Button)*

321.     Plaintiff Danielle Gutierrez incorporates each and every allegation contained above as though fully set forth herein.

322.     Taylor intentionally attempted, threatened, and committed harmful and offensive contacts against Danielle, including but not limited to inflicting juvenile sexual abuse and physical abuse against Danielle.

323.     Taylor's conduct placed Danielle in reasonable apprehension of bodily harm.

324.     Taylor's assaults on Danielle caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

325.    Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Danielle's rights.

326.    Danielle claims compensatory and punitive damages herein.

327.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## EIGHTEENTH CAUSE OF ACTION

### FALSE IMPRISONMENT
*(Danielle Gutierrez Against Taylor Button)*

328.    Plaintiff Danielle Gutierrez incorporates each and every allegation contained above as though fully set forth herein.

329.    Taylor intentionally confined Danielle, including but not limited to trapping her in his apartment through physical force and threats of physical force.

330.    Taylor used physical power and an unequal power dynamic to intimidate, overwhelm, and subdue Danielle. Any objections to his conduct were met with retaliation.

331.    Taylor abused his position of power and authority over Danielle, who was in no position to reject his sexual advances due to her age and vulnerability.

332.    Danielle was conscious of the confinement.

333.    Danielle did not consent to the confinement.

334.    Taylor's conduct caused Danielle to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

335.    Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Danielle's rights.

336.    Danielle claims compensatory and punitive damages herein.

337.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## NINETEENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(Danielle Gutierrez Against Taylor Button)*

338.    Plaintiff Danielle Gutierrez incorporates each and every allegation contained above as though fully set forth herein.

339.    Taylor's conduct was extreme and outrageous and intentionally caused severe emotional distress to Danielle.

340.    Taylor's conduct exceeded all possible bounds of decency.

341.    Taylor acted with the intent and knowledge that Danielle suffered emotional distress due to his coercive and violent conduct.

342.    Taylor's conduct caused Danielle to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

343.    Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Danielle's rights.

344.    Danielle claims compensatory and punitive damages herein.

345.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## TWENTIETH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY
*(Danielle Gutierrez Against Taylor Button)*

346.    Plaintiff Danielle Gutierrez incorporates each and every allegation contained above as though fully set forth herein.

347.    Taylor and Danielle's relationship was confidential and fiduciary in nature.

348.    Taylor assumed control and responsibility of Danielle.  Taylor utilized the special, teacher-student relationship to gain Danielle's trust, and to exert superiority and influence over Danielle.

349. Danielle in fact placed trust, confidence, and reliance on Taylor.

350. Taylor owed Danielle fiduciary duties.

351. Taylor breached his fiduciary duties, including but not limited to by inflicting juvenile sexual abuse and physical abuse against Danielle.

352. Taylor's conduct proximately caused Danielle to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

353. Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Danielle's rights.

354. Danielle claims compensatory and punitive damages herein.

355. The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## TWENTY-FIRST CAUSE OF ACTION

### Violation of 18 U.S.C. § 1591, 1595(a) – Sex Trafficking
*(Rosie DeAngelo Against Taylor Button)*

356. Plaintiff Rosie DeAngelo incorporates each and every allegation contained above as though fully set forth herein.

357. Taylor recruited and enticed Rosie to engage in sex acts for commercial gain and advantage while she was a minor.

358. Taylor recruited and enticed Rosie to engage in sex acts with him based on the false promise that he would aid her career and professional development.

359. Taylor acted knowing that he would use force, threats of force, and/or fraud to cause Rosie to engage in sex acts in exchange for commercial gain and advantage.

360. Taylor in fact used force, threats of force, and/or fraud to cause Rosie to engage in sex acts for commercial gain and advantage.

361. In exchange for performing sex acts, Taylor gave Rosie professional opportunities, and/or choreography services, and/or management services.

362.    Taylor's conduct affected interstate commerce, including, but not limited to, because Taylor enticed Rosie to communicate with him in furtherance of their relationship across state lines.

363.    As result of Taylor's conduct, Rosie suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

364.    Taylor's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosie's rights.

365.    Rosie claims compensatory and punitive damages herein.

366.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## TWENTY-SECOND CAUSE OF ACTION

### Violation of 18 U.S.C. § 1589, 1595(a) – Forced Labor
### *(Rosie DeAngelo Against Taylor Button)*

367.    Plaintiff Rosie DeAngelo incorporates each and every allegation contained above as though fully set forth herein.

368.    Taylor obtained Rosie's labor and services, including, but not limited to, Rosie's sexual labor and services, by means of a scheme, plan, or pattern intended to cause Rosie to believe that, if Rosie did not perform such labor or services, Rosie would suffer serious harm or physical restraint.  These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

369.    As result of Taylor's conduct, Rosie suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

370.    Taylor's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosie's rights.

371.     Rosie claims compensatory and punitive damages herein.

372.     The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## **TWENTY-THIRD CAUSE OF ACTION**

### **Violation of 18 U.S.C. § 1584, 1595(a) – Involuntary Servitude**
### *(Rosie DeAngelo Against Taylor Button)*

373.     Plaintiff Rosie DeAngelo incorporates each and every allegation contained above as though fully set forth herein.

374.     Taylor knowingly and willfully held Rosie in involuntary servitude.

375.     Taylor held Rosie in a condition of compulsory service whereby Rosie was compelled to provide labor and services against her will for the benefit of Taylor.  This labor and service includes, but is not limited to, sexual labor and services.

376.     Taylor obtained Rosie's labor and services, including, but not limited to, Rosie's sexual labor and services, by inflicting serious harm and threatening serious harm to Rosie. These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

377.     Taylor obtained Rosie's labor and services, including, but not limited to, Rosie's sexual labor and services, by means of a scheme, plan, or pattern intended to cause Rosie to believe that, if Rosie did not perform such labor or services, Rosie or her family would suffer serious harm or physical restraint.  These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

378.     As result of Taylor's conduct, Rosie suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

379.     Taylor's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosie's rights.

380.     Rosie claims compensatory and punitive damages herein.

381.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## TWENTY-FOURTH CAUSE OF ACTION

### BATTERY
*(Rosie DeAngelo Against Taylor Button)*

382.   Plaintiff Rosie DeAngelo incorporates each and every allegation contained above as though fully set forth herein.

383.   Taylor intended to commit and committed acts of unwanted contact with Rosie.

384.   Taylor committed unwanted contact with Rosie in a harmful and offensive manner, including but not limited to by inflicting juvenile sexual abuse against Rosie.

385.   Among other batteries, Taylor sexually abused Rosie without her consent, without equality, and as a result of coercion.

386.   Taylor exploited his position of authority to intimidate, overwhelm, and subdue Rosie.  Any objections to his conduct were met with retaliation.

387.   Taylor abused his position of power and authority over Rosie, who was in no position to reject his sexual advances due to her age and vulnerability.

388.   Taylor's batteries on Rosie caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

389.   Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosie's rights.

390.   Rosie claims compensatory and punitive damages herein.

391.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## TWENTY-FIFTH CAUSE OF ACTION

### ASSAULT
*(Rosie DeAngelo Against Taylor Button)*

392.   Plaintiff Rosie DeAngelo incorporates each and every allegation contained above as though fully set forth herein.

393.   Taylor intentionally attempted, threatened, and committed harmful and offensive contacts against Rosie, including but not limited to inflicting juvenile sexual abuse against Rosie.

394.   Taylor's conduct placed Rosie in reasonable apprehension of bodily harm.

395.   Taylor's assaults on Rosie caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

396.   Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosie's rights.

397.   Rosie claims compensatory and punitive damages herein.

398.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## TWENTY-SIXTH CAUSE OF ACTION

### FALSE IMPRISONMENT
*(Rosie DeAngelo Against Taylor Button)*

399.   Plaintiff Rosie DeAngelo incorporates each and every allegation contained above as though fully set forth herein.

400.   Taylor intentionally confined Rosie, including but not limited to trapping her in a bedroom in another student's home.

401.   Taylor used physical power and an unequal power dynamic to intimidate, overwhelm, and subdue Rosie. Any objections to his conduct were met with retaliation.

402.   Taylor abused his position of power and authority over Rosie, who was in no position to reject his sexual advances due to her age and vulnerability.

403.   Rosie was conscious of the confinement.

404.   Rosie did not consent to the confinement.

405.   Taylor's conduct caused Rosie to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

406.   Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosie's rights.

407.   Rosie claims compensatory and punitive damages herein.

408.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### TWENTY-SEVENTH CAUSE OF ACTION

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
*(Rosie DeAngelo Against Taylor Button)*

409.   Plaintiff Rosie DeAngelo incorporates each and every allegation contained above as though fully set forth herein.

410.   Taylor's conduct was extreme and outrageous and intentionally caused severe emotional distress to Rosie.

411.   Taylor's conduct exceeded all possible bounds of decency.

412.   Taylor acted with the intent and knowledge that Rosie suffered emotional distress due to his coercive conduct.

413.   Taylor's conduct caused Rosie to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

414.   Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosie's rights.

415.   Rosie claims compensatory and punitive damages herein.

416.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### TWENTY-EIGHTH CAUSE OF ACTION

**BREACH OF FIDUCIARY DUTY**
*(Rosie DeAngelo Against Taylor Button)*

417.   Plaintiff Rosie DeAngelo incorporates each and every allegation contained above as though fully set forth herein.

418.   Taylor and Rosie's relationship was confidential and fiduciary in nature.

419.   Taylor assumed control and responsibility of Rosie.  Taylor utilized the special, teacher-student relationship to gain Rosie's trust, and to exert superiority and influence over Rosie.

420.   Rosie in fact placed trust, confidence, and reliance on Taylor.

421.   Taylor owed Rosie fiduciary duties.

422.   Taylor breached his fiduciary duties, including but not limited to by inflicting juvenile sexual abuse against Rosie.

423.   Taylor's conduct proximately caused Rosie to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

424.   Taylor's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Rosie's rights.

425.   Rosie claims compensatory and punitive damages herein.

426.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.


**TWENTY-NINTH CAUSE OF ACTION**

**Violation of 18 U.S.C. § 1591, 1595(a) – Sex Trafficking**
***(Jane Doe 100 Against Defendants)***

427.   Plaintiff Jane Doe 100 incorporates each and every allegation contained above as though fully set forth herein.

428.   The Buttons recruited and enticed Jane 100 to engage in sex acts for commercial gain and advantage while she was a minor.

429.   The Buttons recruited and enticed Jane 100 to begin a sexual and/or professional relationship with them based on the false promise that they would aid her career and professional development.

430.    The Buttons acted knowing that they would use force, threats of force, and/or fraud to cause Jane 100 to engage in sex acts in exchange for commercial gain and advantage.

431.    The Buttons in fact used force, threats of force, and/or fraud to cause Jane 100 to engage in sex acts for commercial gain and advantage.

432.    In exchange for performing sex acts, the Buttons promised Jane 100 professional opportunities, and/or management services, and/or other forms of financial and career support.

433.    The Buttons' conduct affected interstate commerce, including, but not limited to, because the Buttons prevented Jane 100 from returning to her home in New Hampshire by trapping Jane 100 in the Buttons' apartment in Massachusetts, where the Buttons sexually abused Jane 100.

434.    As result of the Buttons' conduct, Jane 100 suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

435.    The Buttons' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Jane 100's rights.

436.    Jane 100 claims compensatory and punitive damages herein.

437.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### THIRTIETH CAUSE OF ACTION

**Violation of 18 U.S.C. § 1589, 1595(a) – Forced Labor**
*(Jane Doe 100 Against Defendants)*

438.    Plaintiff Jane Doe 100 incorporates each and every allegation contained above as though fully set forth herein.

439.    The Buttons' obtained Jane 100's labor and services, including, but not limited to, Jane 100's sexual labor and services, by means of a scheme, plan, or pattern intended to cause Jane 100 to believe that, if Jane 100 did not perform such labor or services, Jane 100

would suffer serious harm or physical restraint.  These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

440.    As result of the Buttons' conduct, Jane 100 suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

441.    The Buttons' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Jane 100's rights.

442.    Jane 100 claims compensatory and punitive damages herein.

443.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## THIRTY-FIRST CAUSE OF ACTION

### Violation of 18 U.S.C. § 1584, 1595(a) – Involuntary Servitude
*(Jane Doe 100 Against Defendants)*

444.    Plaintiff Jane Doe 100 incorporates each and every allegation contained above as though fully set forth herein.

445.    The Buttons knowingly and willfully held Jane 100 in involuntary servitude.

446.    The Buttons held Jane 100 in a condition of compulsory service whereby Jane 100 was compelled to provide labor and services against her will for the benefit of the Buttons. This labor and service includes, but is not limited to, sexual labor and services.

447.    The Buttons obtained Jane 100's labor and services, including, but not limited to, Jane 100's sexual labor and services, by inflicting serious harm and threatening serious harm to Jane 100.   These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

448.    The Buttons obtained Jane 100's labor and services, including, but not limited to, Jane 100's sexual labor and services, by means of a scheme, plan, or pattern intended to cause Jane 100 to believe that, if Jane 100 did not perform such labor or services, Jane 100

would suffer serious harm or physical restraint. These harms and threatened harms include, but are not limited to, physical, psychological, financial, and reputational harms.

449. As result of the Buttons' conduct, Jane 100 suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

450. The Buttons' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Jane 100's rights.

451. Jane 100 claims compensatory and punitive damages herein.

452. The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## THIRTY-SECOND CAUSE OF ACTION

### BATTERY
### *(Jane Doe 100 Against Defendants)*

453. Plaintiff Jane Doe 100 incorporates each and every allegation contained above as though fully set forth herein.

454. The Buttons intended to commit and committed acts of unwanted contact with Jane 100.

455. The Buttons committed unwanted contact with Jane 100 in a harmful and offensive manner, including but not limited to by inflicting child sexual abuse against Jane 100.

456. Among other batteries, the Buttons sexually abused Jane 100 by means of physical force and emotional intimidation.

457. The Buttons exploited their position of power and trust to overwhelm and subdue Jane 100.

458. The Buttons inflicted sexual abuse against Jane 100 by, among other tactics, exploiting her age, size, vulnerability, and incapacitation.

459.    The Buttons' batteries on Jane 100 caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

460.    The Buttons' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Jane 100's rights.

461.    Jane 100 claims compensatory and punitive damages herein.

462.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### THIRTY-THIRD CAUSE OF ACTION

### ASSAULT
### *(Jane Doe 100 Against Defendants)*

463.    Plaintiff Jane Doe 100 incorporates each and every allegation contained above as though fully set forth herein.

464.    The Buttons intentionally attempted, threatened, and committed harmful and offensive contacts against Jane 100, including but not limited to inflicting juvenile sexual abuse against Jane 100.

465.    The Buttons' conduct placed Jane 100 in reasonable apprehension of bodily harm.

466.    The Buttons' assaults on Jane 100 caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

467.    The Buttons' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Jane 100's rights.

468.    Jane 100 claims compensatory and punitive damages herein.

469.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### THIRTY-FOURTH CAUSE OF ACTION

### FALSE IMPRISONMENT
### *(Jane Doe 100 Against Defendants)*

470.    Plaintiff Jane Doe 100 incorporates each and every allegation contained above as though fully set forth herein.

471.    The Buttons intentionally confined Jane 100, including but not limited to trapping her in their apartment.

472.    The Buttons used physical power, threats of force, an unequal power dynamic, and Jane 100's incapacitation and vulnerability to intimidate, overwhelm, and subdue Jane 100.

473.    Jane 100 was conscious of the confinement.

474.    Jane 100 did not consent to the confinement.

475.    The Buttons' conduct caused Jane 100 to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

476.    The Buttons' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Jane 100's rights.

477.    Jane 100 claims compensatory and punitive damages herein.

478.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### THIRTY-FIFTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *(Jane Doe 100 Against Defendants)*

479.    Plaintiff Jane Doe 100 incorporates each and every allegation contained above as though fully set forth herein.

480.    The Buttons' conduct was extreme and outrageous and intentionally caused severe emotional distress to Jane 100.

481.    The Buttons' conduct exceeded all possible bounds of decency.

482.    The Buttons acted with the intent and knowledge that Jane 100 suffered emotional distress due to their coercive conduct.

483.   The Buttons' conduct caused Jane 100 to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

484.   The Buttons' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Jane 100's rights.

485.   Jane 100 claims compensatory and punitive damages herein.

486.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## THIRTY-SIXTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY
*(Jane Doe 100 Against Defendants)*

487.   Plaintiff Jane Doe 100 incorporates each and every allegation contained above as though fully set forth herein.

488.   The Buttons' relationship with Jane 100 was confidential and fiduciary in nature.

489.   The Buttons assumed control and responsibility of Jane 100.  The Buttons' utilized the special, mentor-mentee relationship and unequal power dynamic to gain Jane 100's trust, and to exert superiority and influence over Jane 100.

490.   Jane 100 in fact placed trust, confidence, and reliance on the Buttons.

491.   The Buttons owed Jane 100 fiduciary duties.

492.   The Buttons breached their fiduciary duties, including but not limited to by inflicting child sexual abuse against Jane 100, and by staging and taking sexually explicit images and photos of Jane 100.

493.   The Buttons' conduct proximately caused Jane 100 to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

494.   The Buttons' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Jane 100's rights.

495.   Jane 100 claims compensatory and punitive damages herein.

496.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## THIRTY-SEVENTH CAUSE OF ACTION

### VIOLATION OF 18 U.S.C. §§ 2255, 2252 – Sexual Exploitation of a Minor
*(Jane Doe 100 Against Defendants)*

497.    Plaintiff Jane Doe 100 incorporates each and every allegation contained above as though fully set forth herein.

498.    The Buttons knowingly solicited, promoted, viewed, possessed, received, and/or transported sexually explicit images and videos of Jane 100.

499.    The Buttons staged and took photos and videos that included the lascivious exhibition of Jane 100's genitalia and pubic areas and included images of Jane 100 engaging in sexually explicit conduct.

500.    The Buttons intended for Jane 100 to engage in the sexually explicit conduct that they then photographed or video-recorded.

501.    Jane 100 was a minor at all relevant times.

502.    The Buttons took these actions knowing that Jane 100 was a minor.

503.    Jane 100 did not consent to the Buttons staging or taking the sexually explicit images and/or videos.

504.    The images and/or videos were of Jane 100 as a minor and were visual depictions of Jane 100 engaging in sexually explicit conduct as defined by federal child pornography laws.

505.    The images and/or videos were taken using a means of interstate commerce.

506.    The Buttons' conduct caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

507.    The Buttons' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Jane 100's rights.

508.    Jane 100 seeks all available relief including claiming compensatory and punitive damages herein.

509.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants, awarding compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

AMENDED COMPLAINT

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby request a trial by jury on all causes of action asserted within this pleading.

Dated:  September 23, 2021                    Respectfully Submitted,

**BOIES SCHILLER FLEXNER LLP**


/s/ Sigrid. S. McCawley
Sigrid S. McCawley (admitted *pro hac vice*)
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: 954.356.0011
smccawley@bsfllp.com

Richard J. Pocker (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: 702.382.7300
Facsimile: 702.382.2755
rpocker@bsfllp.com

Sabina Mariella (admitted *pro hac vice*)
Lindsey Ruff (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: 212.446.2300
smariella@bsfllp.com
lruff@bsfllp.com

*Counsel for Plaintiffs Sage Humphries, Gina Menichino, RoseMarie DeAngelo, Danielle Gutierrez, and Jane Doe 100*

AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Amended Complaint and Jury Demand was served on September 23, 2021 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.


 /s/ Shari Ginsberg
Shari Ginsberg, an Employee of
Boies Schiller Flexner LLP