Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
Alex J. Shepard, NV Bar No. 13582
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Telephone: 702-420-2001
Email: ecf@randazza.com

Attorneys for Defendants
Mitchell Taylor Button and Dusty Button

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SAGE HUMPHRIES, GINA MENICHINO, ROSEMARIE DeANGELO, DANIELLE GUTIERREZ, and JANE DOE 100, JULIET DOHERTY, and JANE DOE 200<br><br>Plaintiffs/Counterclaim-Defendants,<br><br>v.<br><br>MITCHELL TAYLOR BUTTON and DUSTY BUTTON<br><br>Defendants/ Counterclaim Plaintiffs / Third Party Plaintiffs,<br><br>v.<br><br>MICHAEL S. HUMPHRIES, MICAH L. HUMPHRIES, ANTHONY GIOVANNI DEANE, DARYL ALLAN KATZ, and CHASE FINLAY,<br><br>Third Party Defendants. | Case No. 2:21-cv-01412-ART-EJY<br><br>**DEFENDANTS' VERIFIED THIRD PARTY COMPLAINT AND COUNTERCLAIM** |

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

RANDAZZA | LEGAL GROUP

## DEFENDANTS' VERIFIED THIRD PARTY COMPLAINT AND COUNTERCLAIM

For their Third Party Complaint and Counterclaim[1] against Counterclaim Defendants Sage Humphries, Gina Menichino, Rosemarie DeAngelo, Danielle Gutierrez, Jane Doe 100, Juliet Doherty, and Jane Doe 200 (collectively, "Counter Defendants") and Third Party Defendants Michael S. Humphries, Micah L. Humphries, Anthony Giovanni Deane, Daryl Allan Katz, and Chase Finlay (collectively, "Third Party Defendants"), Counterclaim Plaintiffs Mitchell Taylor Button and Dusty Button (collectively, "Counterclaimants") hereby allege as follows:

## INTRODUCTION

For decades, Dusty Button's reputation was beyond reproach as a world-renowned ballerina, who, with her husband Mitchell Taylor Button, helped teach the art of ballet to thousands of students from all backgrounds.

In an instant, however, someone with an agenda went on the attack, and the Buttons found themselves facing outlandish accusations akin to the Satanic Panic. These accusations chiefly came from the embittered or manipulated imagination of Counter Defendant Sage Humphries who, in league with her abusive and manipulative parents, fabricated accounts of abuse and shopped them to the press in order to gain her own spotlight of attention and false victimhood to further her floundering dance career. Counter Defendant Humphries did so with the aid of Third Party Defendants Michael and Micah L. Humphries, who carried a grudge against the Buttons for unsuccessfully encouraging their daughter to break the pall of manipulation and abuse with which they controlled Sage for years.

Counter Defendants Gina Menichino, Rosemarie DeAngelo, Danielle Gutierrez, Jane Doe 100, Juliet Doherty, and Jane Doe 200 soon followed suit, seeing an opening which would allow them to extort money from the Buttons and to advance their careers by attaching their name to the

---

[1]    Although a counterclaim is typically asserted in an answer, Fed. R. Civ. P. 13 allows a counterclaim to be asserted in any pleading. Here, Defendants are asserting a third party complaint, which is recognized as a proper pleading under Fed. R. Civ. P. 7. Because Counterclaimants' Motion to Dismiss remains pending, this is filed as a separate pleading in the interest of reaching a just, speedy, and inexpensive determination of this action. *See* Fed. R. Civ. P. 1.

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

#MeToo circuit. The difference is, these additions to the circuit are lying. Their stories are fabrications, and in some cases they are literally impossible, so long as the space-time continuum remains intact.

The truth is much different story, and perhaps one that is less interesting to the sleazy tabloid press, which has printed every accusation verbatim – acting more as stenographers than reporters. Of course, the Counter Defendants banked on that happening. While most of the Counter Defendants had little to do with the Buttons, Sage Humphries was someone that Dusty and Mitchell knew very well. The Buttons met Sage after she asked them for advice in growing her social media presence, as she saw that they had been quite successful in that regard. Sage eventually befriended the Buttons. Despite their attempts to support Sage and lead her to personal and artistic fulfillment, Sage often charted her own course, making her own poor risky and drug-addled decisions which are unsurprisingly absent from her complaint.

To the extent that Sage Humphries claims she was abused and sex trafficked, the Buttons agree – however, this abuse and trafficking was not at their hands, but at the hands of a series of older men. If Sage is truly the damaged flower she claims to be, the price should be paid – but it should be paid by those who actually engaged in illegal acts with her.

For instance, Sage Humphries engaged in a romantic and sexual relationship with Third Party Defendant Anthony Giovanni Deane while Sage was underage.

Billionaire Daryl Allan Katz paid Sage at least $75,000.00 for her sexual favors while she remained underage. Humphries was literally a child prostitute to a billionaire, and her mother assisted her in laundering the money she was paid and in trafficking her to Katz.

Chase Finlay was a fellow dancer whose engagement was broken off after his fiancé learned he was involved in a romantic and sexual relationship with the then-underage Sage.

These names are surprisingly absent from Sage' tale of abuse and harm, however, because her true aim was never to tell the truth, or to rectify any perceived harm – it was, and is, to punish the Buttons and push her agenda in front of any news camera that she can find. To the extent she

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

seeks compensation for any abuse, these Third Party Defendants should be held liable and should be compelled to contribute.

The Buttons never assaulted anyone. They never "groomed" anyone. It is with deep regret that the Buttons file these counterclaims in order to clear their names and seek justice for the harm that they have suffered. And, to the extent that there was damage here, they seek contribution from the Third Party Defendants.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and there is complete diversity of citizenship between the parties. This Court additionally possesses supplemental jurisdiction over Counterclaimants' claims pursuant to 28 U.S.C. § 1367, as the Court has original jurisdiction over Counter Defendants' claims.

2.      Venue is proper in this district because Counterclaimants reside in this judicial district and are already Defendants to this lawsuit. The Counter Defendants have consented to this jurisdiction and venue.

## THE PARTIES

3.      Counterclaimant Mitchell Button is an individual residing in Las Vegas, Nevada and is a designer and builder of custom automobiles since 2010. Prior to that, Mitchell was a dance instructor at a small studio. Mitchell is the husband of Defendant Dusty Button.

4.      Counterclaimant Dusty Button is an individual residing in Las Vegas, Nevada and a renowned ballerina. Dusty is the wife of Defendant Mitchell Button.

5.      Upon information and belief, Counter Defendant Sage Humphries is an individual residing in the Commonwealth of Massachusetts.

6.      Upon information and belief, Counter Defendant Gina Menichino is an individual residing in the State of Florida.

7.      Upon information and belief, Counter Defendant Rosie DeAngelo is an individual residing in New York, NY.

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

8.     Upon information and belief, Counter Defendant Danielle Gutierrez is an individual residing in the State of Florida.

9.     Upon information and belief, Counter Defendant Jane Doe 100 is an individual residing in Bedford, New Hampshire.

10.    Upon information and belief, Counter Defendant Juliet Doherty is an individual residing in New York.

11.    Upon information and belief, Counter Defendant Jane Doe 200 is an individual residing in Tampa, Florida.

12.    Upon information and belief, Third Party Defendant Michael S. Humphries is an individual residing in Los Alamitos, California.

13.    Upon information and belief, Third Party Defendant Micah L. Humphries is an individual residing in Los Alamitos, California.

14.    Upon information and belief, Third Party Defendant Anthony Giovanni Deane is an individual residing in West Hollywood, California.

15.    Upon information and belief, Third Party Defendant Daryl Allan Katz is an individual residing in Alberta, Canada.

16.    Upon information and belief, Third Party Defendant Chase Finlay is an individual residing in Austin, Texas.

**FACTUAL BACKGROUND**

17.    Counterclaimant Dusty Button is one of the world's preeminent ballet dancers who trained at the Jacqueline Kennedy Onassis School at the American Ballet Theater in New York.

18.    In 2008, she joined the Royal Ballet School in London.

19.    However, Dusty is best known for her work with the Boston Ballet, which she joined in 2012. One year later, in 2013, the Boston Ballet promoted her to soloist. In 2014, it promoted her to principal.

20.    Counterclaimant Mitchell Button was a dance instructor from 2007 until 2010 when he moved to London, England to be with Counterclaimant Dusty Button.

Defendants' Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

21.     The Buttons are very prominent figures within the dance community. Dusty had a significant social media presence with hundreds of thousands of Instagram followers and was signed by Red Bull as its first ballet-athlete. She has additionally been featured in mainstream publications, such as Glamour, and dance publications, such as Pointe Magazine, Dance Spirit Magazine, and Dance Informa.

22.     In addition to his work designing and building custom automobiles, Mitchell helps Dusty manage her career.

23.     Dusty's success and prominence in the dance community has encouraged the filing of false claims against the Buttons, such as the ones detailed in this Counterclaim.

24.     The Buttons' prominence and success in the ballet world has caused false claims to be asserted against them, in particular, those in this lawsuit.

25.     The initial Complaint in this case was filed on July 28, 2021 in the U.S. District Court for the District of Nevada and featured two Plaintiffs/Counter Defendants, Sage Humphries and Gina Menichino, and only one Defendant/Counterclaimant, Mitchell Button.

26.     Sage danced with Dusty at The Boston Ballet, and Menichino trained with Mitchell at Centerstage Dance Academy in Tampa, Florida.

27.     After being served with the Complaint, Mitchell filed a Motion to Dismiss with this Court on September 9, 2021. Rather than respond to the Motion, these Plaintiffs/Counter Defendants filed an Amended Complaint on September 23, 2021, adding Rosemarie DeAngelo, Danielle Gutierrez, and Jane Doe 100 as Plaintiffs. The Amended Complaint additionally added Dusty Button as a Defendant.

28.     DeAngelo and Gutierrez were trained by Mitchell at Centerstage Dance Academy. Jane Doe 100 allegedly danced for Urbanity Dance, which rented space from the Boston Ballet, where Dusty was a principal dancer.

29.     On December 13, 2021, Plaintiffs/Counter Defendants filed their Second Amended Complaint, adding two new Plaintiffs to the Complaint, Juliet Doherty and Jane Doe 200. Mitchell Button and Dusty Button were still the only named Defendants.

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

30.     Doherty danced at the Panama Ballet Festival at the same time Dusty danced at the festival as its main guest star, while Jane Doe 200 was allegedly trained by Mitchell at Centerstage Dance Academy.

31.     All three iterations of the Complaint filed by Plaintiffs/Counter Defendants contain salacious and untrue allegations about Mitchell and Dusty Button, falsely accusing them of multiple sexual offenses against underage girls under their tutelage.

32.     The false accusations made by each Plaintiff/Counter Defendant to this lawsuit are readily available in the Second Amended Complaint that they filed and need not be repeated here. These allegations were not made against the Buttons because they were true. In fact, the Buttons never engaged in the conduct that Plaintiffs/Counter Defendants accuse them of committing, and they never abused any of the students entrusted to them in any way.

33.     Rather, Plaintiffs/Counter Defendants filed this case for the specific purpose of destroying the reputations of Dusty in the dance world and Mitchell in the car industry.

34.     Plaintiffs/Counter Defendants intended to, and have, utilized the media to assist them in their desire to destroy Counterclaimants' reputations. Thus far, prominent articles about this Nevada federal case have appeared in, among other publications, the Boston Globe, the New York Times, the Washington Post, CNN, Business Insider, and People Magazine.

35.     None of the so-called "reporters" writing about the case have approached these fantastic tales with the slightest bit of skepticism. The Buttons have not spoken to the press. Meanwhile, the Plaintiffs have made sure to dutifully feed their lies to the press in an effort to try this matter in the press, rather than in a court of law.

36.     In fact, Plaintiffs informed the media of this lawsuit before Defendants were even aware that they had been sued. Thus far, Counter Defendants' false allegations against the Buttons have had the desired effect. Their reputations in the dance world, and the world-at-large, have been unjustly ruined. That was the intent and effect of their abuse of process.

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

*Sage Humphries*

37.     The Buttons freely admit to having a sexual relationship with Sage Humphries. Specifically, the Buttons had a *consensual* sexual relationship with Plaintiff Sage Humphries after she had reached the age of majority – *a sexual relationship that Sage Humphries initiated*.

38.     The Buttons admit that accepting the sexual overtures from Sage Humphries was an act of poor judgment, but this was not readily apparent at the time. Nevertheless, there is nothing illegal nor tortious about an adult woman propositioning the Buttons and the Buttons accepting her request to have sex with her.

39.     Sage grew up with hyper-controlling conservative parents, Michael and Micah Humphries. Sage therefore sought excitement in drug use and sexual promiscuity – something that left her controlling parents perplexed and horrified.

40.     Michael and Micah Humphries sent Sage to Florida to dry out from her drug use before she met the Buttons.

41.     After the Buttons met Sage Humphries, Sage' parents insisted that their daughter live with the Buttons in order to reduce their expenses.

42.     Sage told the Buttons that her parents relied upon the Buttons for financial stability.

43.     Moreover, Sage Humphries later told Dusty Button that Sage' mother insisted that her daughter befriend Dusty because Dusty was famous and had a large number of Instagram followers. Sage' mother additionally expressed how impressed she was with the Buttons' home when she visited it while her daughter was staying there.

44.     In hindsight, it was clear that Micah Humphries was "casing" the Buttons as a mark for her next grift – a grifting pattern that had included trafficking her own daughter to a billionaire (Katz) for financial gain.

45.     After Sage Humphries moved in with the Buttons, she almost immediately began expressing her desire to have sexual relations with Mitchell and Dusty Button at the same time.

Defendants' Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

46.     On information and belief, Sage's advances were made with the advice, consent, and prodding of at least her mother, who assisted Sage in laundering her prostitution fees paid to her by Mr. Katz.

47.     The Buttons eventually acquiesced to Sage's advances and began a consensual "throuple" sexual relationship with Sage Humphries after Sage moved in with them. Their relationship was loving and supportive. *See, e.g.,* screenshots of video taken of Sage, Dusty, and Mitchell, attached as **Exhibit 1**; photos of Sage with the Buttons, attached as **Exhibit 2**; card written by Sage to Dusty, attached as **Exhibit 3**. In fact, this relationship came about only after Sage's mother suggested that Sage move in with the Buttons to relieve Sage's parents from the obligation of paying for Sage's rent.

48.     The relationship between Sage and the Buttons appeared, at the time, to be one of mutual love, affection, and respect. Sage frequently expressed this love to the Buttons, telling them that they were the "loves of [her] life," and that she is "so in love with [both of them]." *See, e.g.,* Messages from Sage Humphries to the Buttons, attached as **Exhibit 4**.

49.     Sage' parents were aware that the Buttons were involved in a consensual sexual relationship with their daughter and initially welcomed that relationship, as they saw it as advantageous to Sage' dance career and her ability to benefit in a pecuniary way.

50.     On at least one occasion, Sage' father walked in on the Buttons and his daughter engaging in consensual sexual relations at Sage' parents' house and said nothing other than to remind Sage that she had a dentist appointment. Later that night, Sage's entire family went out to dinner with the Buttons to celebrate Mitch's birthday. *See* Photograph, **Exhibit 5**.

51.     While Sage' parents did not seem to be concerned that their daughter was engaged in a consensual relationship with Dusty and Mitchell Button, they behaved in a manner that the Buttons sometimes found alarming. For instance, the Buttons witnessed the following while they knew Sage Humphries:

     a.     After Sage Humphries' mother, Micah Humphries, spent the night at the Buttons' Boston home, Micah filed a false police report against the Buttons, with the

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

preposterous allegation that they had hand grenades, land mines, and illegal firearms in their home, when they did not. Micah lied to the police, telling them that she was a neighbor who could see into the Buttons' apartment. The Buttons learned that the bizarre false report had been made by Micah because her telephone number was used to place the report.

b.      At age 17, Sage received at least $75,000.00 as compensation for being a prostitute for Daryl Katz, a well-known billionaire, who was 53 years old at the time. *See* Sage Humphries texts with Daryl Katz, attached as **Exhibit 6**.

c.      Sage announced her plans to elope with Anthony Giovanni Deane, her 48-year-old boyfriend, when she was 17 years old.

d.      Sage dated Chase Finlay, who she knew to be engaged with another woman, while she was still underage.

e.      Sage Humphries' parents forced her to leave a fake "break up" voicemail for the Buttons. However, before Sage sent it, she informed the Buttons that her mother was forcing her to do it and to disregard its contents. *See, e.g.,* Messages from Sage Humphries to the Buttons, attached as **Exhibit 7**.

f.      Sage Humphries' parents physically removed Sage Humphries from the Buttons' home against Sage's will. While doing so, they took and destroyed her driver's license and cellular phone, according to Sage herself.

g.      Later, Sage pleaded with the Buttons to come to her parents' house to "save" her from them. *See* Messages from Sage Humphries to the Buttons, attached as **Exhibits 7, 8, 9, 10, & 11**. She told the Buttons that she intended to leave her family, and that her dad was "fucking up [her] money." *See* Messages from Sage Humphries to the Buttons, attached as **Exhibit 12**.

h.      Her parents forced Sage into therapy, even though she clearly did not take it seriously or feel that she needed therapy and prodded her into speaking with an attorney to pursue spurious legal claims. *See, e.g.,* Message from Sage Humphries to the Buttons,

Defendants' Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

attached as **Exhibit 13**; Snapchat photo from Sage to the Buttons laughing about being in therapy, attached as **Exhibit 14**.

      i.     Sage Humphries bragged about meeting celebrities and fashion industry people and how they all wanted to "hook up" with her. In her fantasy world, partially created by her parents, who assisted in sex trafficking her, this was a reasonable belief.

52.     Sage's parents have a history of threatening Sage Humphries's romantic partners and tampering with her significant others.

53.     Eventually, Sage' parents kidnapped Sage, brought her back to California, and called in a false police tip, which caused the Buttons' home to be entered and searched by the police while they were away.[2] Sage's parents took away her phone and her car keys, and would not let her leave work. *See, e.g.,* Message from Sage Humphries to Dusty and Mitchell, attached as **Exhibit 15**. Sage explained to the Buttons that her parents "know exactly how to crush anything I build up," and that she is "not a child, and ultimately [she] will do what [she] want[s]." *See* Message from Sage to the Buttons, attached as **Exhibit 16**.

54.     After Sage Humphries's parents forced her away from the Buttons, Sage found ways to communicate with the Buttons that her mother could not trace. Specifically, because Sage's parents had taken away her mobile phone, she would communicate with the Buttons from her younger brothers' phone and from Sage's mother's phone, and would delete the messages after she sent them. Sage had previously bragged about this sort of creative work-around by referring to herself as "#SchemingSage". *See* **Exhibit 17**. Sage sent messages to the Buttons professing her continued love for them and begging them to help her escape her parents' clutches. *See, e.g.,*

---

[2]    Micah Humphries placed a telephone call to the Boston Police Department claiming that the Buttons' apartment contained dangerous weapons, specifically: 50 illegal automatic weapons, landmines, and hand grenades. None of this was true, and Micah knew that this was not true. She told the police that she was the Buttons' neighbor and could see into their apartment. The Buttons' apartment did not contain weapons or firearms of any kind. The only things close to a firearm in the Buttons' home were hobby airsoft guns, which they used for photography. The Buttons' dog walker let the police into the apartment, and the Buttons later confirmed that the telephone number that had called in the false report matched that of Micah Humphries.

Defendants' Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

**Exhibit 4**. She even wrote and recorded songs about her love for the Buttons during this time. *See, e.g.,* lyrical transcription of "Don't Ever Leave Me," a song written by Sage for Dusty, attached as **Exhibit 18**; *see also* lyrical transcription of "Mr. Ferrari," a song written by Sage for Mitchell, attached as **Exhibit 19**. She sent messages to Mitchell telling him "I'm yours," and asking him to "[f]ucking claim me." *See* Messages from Sage Humphries to Mitchell, attached as **Exhibit 20**.

55.     However, it became clear that Sage was actually working with her parents to either profit from or destroy the reputations of the Buttons.

56.     For some time, the Humphries spread false rumors about the Buttons in an attempt to ruin their reputations.

57.     When the false rumors were unsuccessful in gaining the desired effect, they decided to file this case and to use the press's coverage of this case to enflame opinion against Mitchell Button and Dusty Button in retaliation for the Buttons' relationship with Sage Humphries.

58.     To that end, Sage has gone on a media blitz, telling her false tales of sexual assault to anyone who will listen.

59.     On or about May 27, 2022, Sage appeared on a pre-taped segment of the nationally-broadcast television show Good Morning America ("GMA").

60.     On the GMA segment, Sage Humphries made multiple false and defamatory statements, alleging that Mitchell sexually assaulted her.

61.     Specifically, when asked "At what point do you say that the direction turned sexual – it was totally a normal night?", Sage responded:

> [Mitchell] suggested that we all watch a movie together. [The Buttons] thought we should all have one big group sleepover and bring the mattress out into the living room. I thought again that that was uncomfortable, so we just hung out we watched a movie and Dusty had fallen asleep. I was falling asleep and when I was falling asleep that was the first time that [Mitchell] violated me. And, you think that you're going to know to scream or to get up or to make a loud noise or do anything to stop it from happening, but I just froze and my body just tightened and I just waited for it to be over.

62.     The events, which flatly accuse Mitchell of sexually assaulting Sage, are untrue. Mitchell never assaulted Sage. The sexual conduct was initiated by Sage.

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

RANDAZZA | LEGAL GROUP

***Juliet Doherty***

63.     At one point, Sage Humphries told the Buttons that Juliet Doherty, a dancer the Buttons were aware of but did not know, was her "rival" and that she did not like Doherty.

64.     Dusty and Doherty each performed at a gala in Panama where Dusty was the guest of honor. During their time in Panama, Doherty constantly flirted with Dusty, who did not reciprocate.

65.     After discovering that the Buttons were staying for extra days at the hotel as a guest of the host of the gala, Doherty told them that she wanted to stay with them in Panama for a few extra days, which she did.

66.     While staying with the Buttons in Panama, Doherty continued her flirtations with Dusty and often walked around while only wearing a towel.

67.     At an afterparty at the pool where Doherty claims her false allegations against the Buttons occurred, Doherty propositioned Dusty, who refused. Doherty continued to follow Dusty around the party, making Dusty uncomfortable and causing her to excuse herself to the restroom. Doherty, who was over 21 years old at the time, also continued to consume alcohol and became extremely drunk.

68.     At one point, Doherty was in a restroom at the pool area, where she got sick from the alcohol and began throwing up. Dusty made sure that she was okay on multiple occasions. Contrary to Doherty's allegations, the Buttons simply made sure she was okay. Nothing else occurred that, or any other, night.

69.     Following the pool party where Doherty became drunk, Doherty continued to spend time with the Buttons, and even travelled to an island in Panama with them. *See* Photos Taken After the Pool Party, attached as **Exhibit 21**.

70.     After the Buttons left Panama, they decided not to see, speak with, or communicate with Doherty again in any way. However, Doherty continued to message them on social media.

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

71.     Upon information and belief, Doherty maintains a grudge against the Buttons for rejecting her advances, causing her to join the instant lawsuit and make false claims about what happened with the Buttons in Panama.

### *Gina Menichino, Rosemarie DeAngelo, Danielle Gutierrez, and Jane Doe 200*

72.     Menichino, DeAngelo, Gutierrez, and Jane Doe 200 appear to have been close friends since childhood. They grew up dancing together and were instructed by Mitchell.

73.     DeAngelo dated one of Mitchell Button's best friends when Mitchell was a youth.

74.     Menichino was not as talented as DeAngelo and Gutierrez and grew bitter that she was not able to spend more time with or receive as much attention from Mitchell.

75.     Menichino was additionally very bitter that Mitchell had not chosen her to be his personal assistant. She continued to text and to attempt to communicate with Mitchell after he moved to London to be with, and marry, Dusty.

76.     Gutierrez is "the woman scorned" in this matter – she was Mitchell's girlfriend for about one and one-half years. Mitchell ended their relationship when he moved to London to be with, and marry, Dusty. This resulted in Gutierrez lashing out against and attacking Mitchell. In fact, Mitchell maintains a scar on his stomach from her attack.

77.     Jane Doe 200 frequently discussed her attraction to Mitchell during the time he instructed the students at Centerstage, and openly fantasized about the "things [she] wanted to do to [Mitchell]." She had a falling out with Gutierrez after she and Mitchell began dating, but repaired her relationship with DeAngelo, Menichino, Gutierrez after Mitchell and Dusty began their relationship and moved to London together. Jane Doe 200 was bitter about Mitchell's relationship with Gutierrez and grew even more jaded when Mitchell began dating Dusty.

78.     DeAngelo, Menichino, Gutierrez, and Jane Doe 200 became even better friends after Mitchell moved to London for Dusty. Upon information and belief, these four Counter Defendants are participating in this lawsuit to ruin the reputations of the Buttons because of these perceived slights.

Defendants' Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

***Jane Doe 100***

79.      Defendants do not know Jane Doe 100. They have never seen, spoken to, taught, or met Jane Doe 100. In fact, they had never even heard of Jane Doe 100 until she became a plaintiff in this lawsuit.  They have been informed of her actual name and have searched diligently for any indication at any time ever that they may have encountered her – and are unable to come up with even a sign that they have met her, much less had any sexual contact with her.

80.      Jane Doe 100's claims are not only implausible and untrue, but they are also impossible, as the timeline required for Jane Doe's allegations to be true is inconsistent with facts known to the Counterclaimants, including the fact that the building Jane Doe 100 claims to have been assaulted in would not have actually existed at the time of the alleged assault.

81.      Upon information and belief, Jane Doe 100 is, or was at one time, a close acquaintance of at least one of the Plaintiffs.

82.      Upon information and belief, one of more of the Plaintiffs encouraged Jane Doe 100 to levy false claims against Counterclaimants in an effort to lend needed credibility to their frivolous stories.

83.      As a result, Jane Doe 100 fabricated an account of assault for the purposes of leveraging the frivolous allegations into a monetary settlement and to harm Counterclaimants' reputation.

***This Lawsuit***

84.      These Plaintiffs/Counter Defendants only filed this case to ensure that the Buttons were covered extensively by the media and to ruin the reputations that they had built from spending years in the ballet and automotive industries.

85.      Most major media publications, including but not limited to, the New York Times, the Washington Post, and the Boston Globe, were aware of this case before the Buttons were aware of it.

86.      In order to further smear the Buttons' reputations, Plaintiffs/Counter Defendants included allegations from anonymous and unnamed third parties. These allegations were cleverly

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

designed so that nobody could reasonably refute them – after all, if one is accused by an unnamed, anonymous party, it brings us into "proving a negative" territory.

87.     The Counter Defendants wrote up a false narrative, with false accusations, slapped it on pleading paper, and sent it to the press. A mere "press release" might not have the same litigation privilege as the "creative defamation" in this case. The press, all too happy to smear the Buttons' reputation for clicks and kicks can rely on it and claim the fair report privilege.

88.     Given the decision in *St. Amant v. Thompson*, these lazy stenographers who call themselves "journalists" are under no legal obligation to seek the truth, and in fact can consciously avoid the truth if it fits their narrative. This, however, does not make it right.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Abuse of Process**
**(Against Sage Humphries, Menichino, DeAngelo,**
**Gutierrez, Jane Doe 100, Doherty, and Jane Doe 200)**

89.     Counterclaimants reallege the allegations of the preceding paragraphs as if set forth fully herein.

90.     Plaintiffs/Counter Defendants Humphries, Doherty, Menichino, DeAngelo, and Gutierrez filed the initial Complaint in this matter with an ulterior motive and for an improper purpose.

91.     Specifically, they filed the Complaint (and the subsequent Amended Complaints) to titillate the media with allegations that the Buttons had been engaging in abhorrent and illegal behavior with their students and to ruin the Buttons' reputations with salacious and untrue allegations.

92.     These Plaintiffs/Counter Defendants ensured that the media had a copy of the Complaint before the Defendants/Counterclaimants were even aware that they had been sued. This constitutes a willful act in the use of process not proper in the conduct of the proceeding.

93.     Counterclaimants have been damaged in an amount to be determined at trial and irreparably harmed by the conduct of these Counter Defendants. Counter Defendants have ruined

RANDAZZA | LEGAL GROUP

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

their reputations, and Counterclaimants should be compensated for the harm they have caused through their abuse of the Court's process.

94.     Counter Defendants' conduct was willful, and Counterclaimants are entitled to an award of punitive damages and for recovery of their attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**Civil Conspiracy**
**(Against Sage Humphries, Menichino, DeAngelo, Gutierrez, Jane Doe 100,**
**Doherty, Jane Doe 200, Michael S. Humphries, and Micah L. Humphries)**

95.     Counterclaimants reallege the allegations of the preceding paragraphs as if set forth fully herein.

96.     Plaintiffs/Counter Defendants Sage Humphries, Menichino, DeAngelo, Gutierrez, Jane Doe 100, Doherty, and Jane Doe 200, and Third Party Defendants Michael S. Humphries and Micah L. Humphries agreed to conspire to ruin the Buttons' reputations through the filing of the instant lawsuit and by ensuring that the media had copies of the lawsuit before the Buttons even knew that they had been sued.

97.     The named Counter Defendants and Third Party Defendants agreed to abuse process by filing a Complaint with this Court with the sole intention of ruining the Buttons' carefully maintained reputations.

98.     Counterclaimants have been damaged in an amount to be determined at trial and irreparably harmed by the conduct of these Counter Defendants. Counter Defendants have ruined their reputations, and Counterclaimants should be compensated for the harm they have caused through their abuse of the Court's process.

99.     Counter Defendants' and Third Party Defendants' conduct was willful, and Counterclaimants are entitled to an award of punitive damages and for recovery of their attorneys' fees and costs.

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

### THIRD CLAIM FOR RELIEF
**Equitable Contribution**
**(Against Deane, Katz, and Finlay)**

100.    Counterclaimants reallege the allegations of the preceding paragraphs as if set forth fully herein.

101.    Upon information and belief, Third Party Defendant Deane engaged in sexual conduct with Plaintiff Humphries while she was a minor.

102.    Upon information and belief, Third Party Defendant Katz engaged in sexual conduct with Plaintiff Humphries while she was a minor.

103.    Upon information and belief, Third Party Defendant Finlay engaged in sexual conduct with Plaintiff Humphries while she was a minor.

104.    In her Complaint against Counterclaimants, Plaintiff Humphries asserts that she suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career as a result of the Counterclaimants' alleged actions and seeks an award of compensatory and punitive damages against Counterclaimants.

105.    While Counterclaimants deny Sage's allegations, any actual injuries Sage has sustained as alleged in her Complaint were jointly and/or severally caused by the actions of Third Party Defendants Deane, Katz, and Finlay.

106.    Accordingly, Third Party Defendants Deane, Katz, and Finlay are liable to Counterclaimants for equitable contribution in an amount proportionate to the harm they caused Plaintiff Humphries should any damages be awarded against Counterclaimants and in favor of Plaintiff Humphries.

107.    Given that these Third Party Defendants committed statutory rape and in at least Katz' case, sex trafficking, their contribution should be for 100% of any damages that Sage Humphries claims from such acts.

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

RANDAZZA | LEGAL GROUP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## FOURTH CLAIM FOR RELIEF
### Defamation Per Se
### (Against Humphries)

108.    Counterclaimants reallege the allegations of the preceding paragraphs as if set forth fully herein.

109.    Counterclaim Defendant Sage Humphries published false and defamatory statements of and concerning Counterclaimant Mitchell Taylor Button as identified herein to third parties – namely to journalists and television outlets.

110.    Counterclaim Defendant Sage Humphries's false and defamatory statements were published to third parties without privilege.

111.    The gist of Counterclaim Defendant Sage Humphries's false and defamatory statements is that Counterclaimant Mitchell Taylor Button sexually assaulted Sage Humphries one night while watching a movie after Dusty Button had fallen asleep.

112.    She made these statements to multiple journalists, the identities of whom will be explored in discovery.

113.    She for certain made defamatory statements, on camera, on or about May 27, 2022 on Good Morning America.

114.    She additionally made defamatory statements to Gretchen Voss, a journalist with Boston Magazine. These statements and the Buttons' response to each of the allegations is in **Exhibits 22 & 23**.

115.    The factual statements alleged to support the defamatory gist of Counterclaim Defendant Sage Humphries's statements are false and defamatory.

116.    Counterclaim Defendant Sage Humphries published the false and defamatory statements with actual malice.

117.    Counterclaimant Mitchell Taylor Button is not a public figure.

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

118.    At the time Counterclaim Defendant Sage Humphries published her false statement, Sage had actual knowledge that her statements were false or had reckless disregard for their falsity because she had no objectively reasonable basis for believing her statements were true.

119.    In publishing the false and defamatory statements, Counterclaim Defendant Sage Humphries knowingly and intentionally misrepresented the truth and manufactured false information out of whole cloth.

120.    Counterclaim Defendant Sage Humphries's false and defamatory statements constitute slander *per se* in that they tend to injure Counterclaimant Mitchell Taylor Button in his trade, business, or profession, and they accuse Mitchell of serious illegal conduct.

121.    The subject of Counterclaim Defendant Sage Humphries's statements was no more than an issue of public curiosity.

122.    Counterclaim Defendant Sage Humphries's statements were of concern only to her and a small, specific audience.

123.    Counterclaim Defendant Sage Humphries's asserted public interest of informing the public about her false story of sexual assault has only remote proximity to the content of her complained-of statements.

124.    Counterclaim Defendant Sage Humphries published her statements solely as part of a private controversy with Counterclaimant Mitchell Taylor Button.

125.    In addition to being false, the information Counterclaim Defendant Sage Humphries published was of a private nature and did not become of interest to the public merely by her making the statements to a journalist.

126.    Damages to Counterclaimant Mitchell Taylor Button are presumed by law since the defamation is *per se*.

127.    Counterclaim Defendant Sage Humphries's conduct was willful and intentional.

128.    Counterclaimant Mitchell Taylor Button is entitled to an award of punitive damages to punish Counterclaim Defendant Sage Humphries for her unlawful conduct and to deter her from repeating such misconduct in the future.

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

129.    As a direct and proximate result of Counterclaim Defendant Sage Humphries's actions, Counterclaimant Mitchell Taylor Button suffered negative consequences including loss of employment opportunities and mental anguish.

130.    As a direct and proximate result of Counterclaim Defendant Sage Humphries's actions, Counterclaimant Mitchell Taylor Button has incurred attorneys' fees and costs for the protection of his interests.

131.    As a direct and proximate result of Counterclaim Defendant Sage Humphries's actions, Counterclaimant Mitchell Taylor Button has been injured in an amount exceeding $75,000.00.

## **JURY DEMAND**

Defendants/Counterclaimants Mitchell Button and Dusty Button demand a jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants/Counterclaimants Mitchell Button and Dusty Button hereby pray that this Court enter judgment as follows:

A.    Entering judgment for Defendants on all claims made against them in the Second Amended Complaint;

B.    Entering an Order directing that Plaintiffs pay Defendants' reasonable attorneys' fees and costs pursuant to any applicable law;

C.    For actual damages in an amount to be proven at trial;

D.    For punitive damages in an amount to be proven at trial;

E.    For costs of suit;

F.    For pre-judgment and post-judgment interest on the foregoing sums;

G.    For such other and further relief as the Court deems proper; and

H.    That Counter Defendants be jointly and severally liable for any damages award, where applicable.

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

Dated: July 8, 2022.                    Respectfully Submitted,

                                        /s/ Marc J. Randazza
                                        Marc J. Randazza, NV Bar No. 12265
                                        Ronald D. Green, NV Bar No. 7360
                                        Alex J. Shepard, NV Bar No. 13582
                                        RANDAZZA LEGAL GROUP, PLLC
                                        2764 Lake Sahara Drive, Suite 109
                                        Las Vegas, Nevada 89117

                                        Attorneys for Defendants
                                        Mitchell Taylor Button and Dusty Button

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

Case No. 2:21-cv-01412-APG-VCF

**<u>VERIFICATION</u>**

I, Mitchell Taylor Button, am a Counterclaimant and Third Party Plaintiff in the above-captioned matter. I have reviewed the foregoing allegations in this Verified Third Party Complaint and Counterclaim, and I hereby declare under the penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Dated: 07 / 08 / 2022            .

_____

Mitchell Taylor Button

Case No. 2:21-cv-01412-APG-VCF

**<u>VERIFICATION</u>**

I, Dusty Button, am a Counterclaimant and Third Party Plaintiff in the above-captioned matter. I have reviewed the foregoing allegations in this Verified Third Party Complaint and Counterclaim, and I hereby declare under the penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Dated: 07 / 08 / 2022            .

_____

Dusty Button

Defendants' Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab

Case No. 2:21-cv-01412-APG-VCF

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on July 8, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Marc J. Randazza
Marc J. Randazza

Doc ID: e2fb56ec210c94f8d1fc9a1b8ccf249adc9a4fab