UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SAGE HUMPHRIES, GINA MENICHINO,
ROSEMARIE DeANGELO, DANIELLE
GUTIERREZ, JANE DOE 100, JULIET
DOHERTY, and JANE DOE 200

Plaintiffs,

v.

MITCHELL TAYLOR BUTTON and DUSTY
BUTTON,

Defendants.

Case No. 2:21-cv-01412-ART-EJY

**ORDER**

Before the Court is Plaintiff Sage Humphries' Motion for Sanctions Regarding Unlawfully Obtained Information (the "Sanctions Motion").  ECF No. 77.[1]  The Court reviewed the Sanctions Motion, Defendants' Opposition (ECF No. 85), and Plaintiff's Reply (ECF No. 89).  The Court has also considered Plaintiff's Motion to Supplement the Sanctions Motion.  ECF No. 91.

I.      **RELEVANT BACKGROUND**

The instant litigation commenced in July 2021 when Plaintiffs Sage Humphries and Gina Menichino filed suit against Defendant Mitchell Taylor Button alleging violations of federal and state law.  ECF No. 1 at 12-18.  Since its inception, the case has been active with numerous motions filed and various parties entering and exiting the litigation, including the addition of Dusty Button as a Defendant.  ECF No. 18.  For purposes of addressing the Sanctions Motion, the Court does not recite an extended history of the litigation or the current case status.

A.      Humphries' Sanctions Motion.

The Sanctions Motion revolves around two abuse prevention orders issued on August 15, 2017 by the Boston Municipal Court Department of the Trial Court.  ECF Nos. 77-3, 77-4.  The Boston Court Orders required Defendants to:

---

[1]      The Sanctions Motion contains several attachments one of which is Exhibit G (FUS).  ECF No. 77-8.  Filed simultaneously with the Sanctions Motion was a Motion to Seal a Document in Support of Motion for Sanctions.  ECF No. 78.  The Motion to Seal seeks to seal Exhibit G.  ECF No. 79.  The Court granted the Motion to Seal at ECF No. 84.

> "[S]urrender any and all personal information to the Boston Police Department pertaining to [Plaintiff Sage Humphries], including electronically stored information, and is not to publish such information."

*Id.* at 2.  In addition, the Boston Court reinforced its warning to Defendants of the consequences of any violation of its order:

> The defendants are to surrender any and all personal information to the Boston Police Department -- fine if you gave it to Attorney Melcher -- pertaining to the plaintiff, including electrically stored information, and that any such information is not to be published in any way at all.  I hope your clients heard me loud and clear…  If there is any -- if there is any violation of any part of the order, including that part of the order, your clients will not like the results.  I don't want to sound antagonistic or threatening when I put it in that -- in those terms; I do want your clients to understand the seriousness with which the Court takes the entire order, including the provisions that I've set out…

ECF No. 77-2 at 65-66.

Humphries alleges that in the course of this litigation, Defendants repeatedly violated the Boston Court Orders by using and disseminating a digital copy of Humphries' iPhone and its data.  ECF No. 77 at 9.  First, Humphries contends Defendants included text messages in court filings that could only have come from a copy of Humphries' iPhone that Defendants impermissibly possess.[2]  *Id.*  Second, Humphries asserts Defendants sent text messages to a third party in which they acknowledged the source of the messages was a copy of Humphries' iPhone.  *Id.* at 9-10.  Third, Humphries generally contend that a large portion of the documents turned over by Defendants in discovery come from her iPhone.  *Id.* at 10.  Finally, Humphries accuses Defendants of improperly disseminating retained electronic information to the press over the course of the litigation.  *Id.*

Humphries argues that throughout the litigation she has "put Defendants on clear notice" that their actions were in violation of the Boston Court Orders.  *Id.*  She stated this contention (1) in her Motion to Dismiss Defendants' Counterclaims (ECF No. 61); (2) in her counsel's August 12, 2022 letter to Defendants' counsel explaining the violations of the Boston Court Orders and requesting Defendants cease disseminating information obtained from their impermissible possession of a copy of her iPhone (ECF No. 77-9); and (3) on August 31, 2022 at a meet and confer as well as during

---

[2]    Humphries asserts the text messages—communication between Humphries and multiple third parties—is irrelevant to the instant litigation and meant solely as a distraction from pending legal issues.  ECF No. 77 at 9.

1    the week that followed in which the parties communicated regarding Defendants' refusal to change

2    strategy relating to their possession of the iPhone (ECF No. 77-11).  *Id.* at 10-11.

3           Humphries cites controlling case law in support of her argument that the Court possesses

4    inherent authority to issue sanctions for litigation misconduct specifically when a party has, in bad

5    faith, violated a court order.  *Id.* at 11 *citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *Fink*

6    *v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th

7    Cir. 2002).  Humphries contends Defendants have displayed a "brazen" flouting of the Boston Court

8    Orders and that their bad faith conduct necessitates the imposition of sanctions.  *Id.* at 12.  Humphries

9    argues even if the Court were to find that Defendants' conduct was not initially in bad faith, their

10   actions have become willful as Humphries has repeatedly alerted Defendants that their actions are

11   in violation of the Boston Court Orders to no avail.  *Id.* at 12-13.  She further argues Defendants'

12   conduct has spiraled into harassment as the pictures leaked to the press have nothing to do with this

13   litigation and are intended to cause her shame and mental torment.  *Id.* at 13.

14          As a result of Defendants' misconduct, Humphries requests a Court order requiring

15   Defendants to delete the copy of Humphries' iPhone and any of her personal data currently in their

16   possession, and to cease publication of such information in this litigation.  *Id.* at 14.  In addition,

17   Humphries requests an award of attorneys' fees and costs relating to the Sanctions Motion.  *Id.*

18          B.     <u>Defendants' Opposition</u>.

19          Defendants oppose the Sanctions Motion arguing they are preserving evidence discovered in

20   their possession after this litigation commenced (something they are required to do), and that

21   evidence was produced in response to Humphries' discovery requests.  ECF No. 85 at 2.  Defendants

22   argue the Sanctions Motion is brought as a ploy to prevent Defendants from presenting exculpatory

23   evidence supporting their theory of the case, and the true motive behind the Sanctions Motion is the

24   evolving narrative in the press.  *Id.*  Specifically, Defendants argue the nature of the evidence

25   contained on the backup copy of Humphries' iPhone demonstrates Humphries was in a romantic and

26   consensual relationship with Defendants and not the coercive, illegal relationship asserted in

27   Humphries' pleadings.  *Id.* at 3-4.

28

Defendants argue Humphries uploaded the backup copy of her iPhone onto an external hard drive belonging to Defendants long before this litigation commenced. *Id.* at 3. Defendants contend they did not realize they were in possession of the backup copy until they began searching for and preserving evidence related to this case. *Id.* Defendants assert that after the state court in Boston issued its Orders, they turned over everything they knew they had at that time to Humphries' counsel. *Id.* at 4. During discovery in this case, Defendants responded to a broad request for documents that included some of the documents Humphries now contends are covered by the Boston Court Orders. *Id.* Defendants accuse Humphries of trying to have it both ways: demanding broad swaths of discovery while seeking to deprive Defendants of the ability to adequately defend themselves. *Id.* at 5.

Defendants dispute Humphries' interpretation of the Boston Court Orders arguing nothing in the text of the Orders prevents them from retaining a copy of the evidence they currently possess. *Id.* Defendants take issue with Humphries' request that this Court order the destruction of the material currently in their possession when the state court in Boston did not order destruction, but "surrender" of the materials. *Id.* at 6. Defendants argue if they had destroyed the evidence at issue, they would be subject to sanctions for spoliation of relevant evidence. *Id.* at 9. In addition, Defendants argue that the evidence they possessed is relevant to claims made in this litigation by third parties and that they are legally prohibited from destroying such evidence. *Id.*

Defendants point to hypocrisy on Humphries' part. *Id.* at 10. Defendants ask the open question of why Humphries has not produced this exculpatory information to Defendants as she should have the original iPhone and its related information in her possession. *Id.* Relying on the doctrine of unclean hands, Defendants allege that Humphries' hands are "utterly filthy" as they aver she has not turned over any of the information that she now asks Defendants to destroy. *Id.* at 10-11.

Defendants further dispute that they are in any way responsible for the Daily Mail's use of photographs. *Id.* at 12. Defendants repeat the assertions that they were under a legal obligation to produce the documents in discovery, and the fact that the Daily Mail obtained and published information contained in a public court filing is not Defendants' fault. *Id.* at 12-13.

Finally, Defendants argue this Court is not the proper forum to consider the kind of motion that Humphries brings. *Id.* at 7. Defendants contend that the state court in Boston is the only court with jurisdiction to interpret and enforce its orders and, by extension, to hear this Motion. *Id.* Defendants invoke the *Younger* abstention doctrine arguing the facts of this case satisfy the four criteria of the *Younger* test.[3] Defendants state: "(1) the Boston Municipal Court proceedings are ongoing as the last orders by that court is continuing in nature, (2) the application of the Abuse Prevention Order is an important state interest, (3) either party could proceed to enforce or object to the Abuse Prevention Order in the state court, and (4) an order from this Court finding the state court's order defective would have the effect of enjoining that court's enforcement of its own order." *Id.* at 7-8. Defendants ask this Court to abstain from hearing and deciding the Sanctions Motion. *Id.* at 8.

C.   Humphries' Reply.

Humphries disputes Defendants' assertion that she is asking for the "permanent destruction of any relevant evidence." ECF No. 89 at 4. Instead, Humphries counters she is only trying to prevent additional public dissemination of irrelevant and sensitive information. *Id.* at 4-5. Humphries contends Defendants' idea that the word "surrender" somehow did not require them to turn over all electronically stored information in their possession is illogical. *Id.* at 6. Humphries questions why, if Defendants sought to obtain communications between Humphries and her purported sexual partners, Defendants have not served the appropriate discovery requests on Humphries. *Id.* at 8-9. Humphries speculates the reason Defendants have not done so is because they already have the information they need and/or want in their possession. *Id.* at 9, n.1. Humphries argues that Defendants have weaponized the simple process of filing public court documents to shame and intimidate Humphries throughout the litigation. *Id.* at 9.

Humphries questions why—if Defendants are being truthful in their assertions that they did not know they possessed the backup copy of the iPhone until the commencement of this litigation—

---

[3] Defendants cite Ninth Circuit guidance regarding the four factors to be considered in a *Younger* abstention analysis: "[A] district court must abstain from adjudicating an issue in a civil action where the state proceedings: (1) are ongoing; (2) implicate important state interests; (3) provide an adequate opportunity to raise federal questions; and (4) the federal court action would enjoin the proceeding, or have the practical effect of doing so." *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 882 (9th Cir. 2011).

they did not alert Humphries' counsel to this revelation and discuss next steps. *Id.* at 10.  Humphries states "Defendants surely knew once they discovered the copy of Sage's iPhone backup that their continued possession of that backup might violate the Boston Court's clear order." *Id.*  Humphries lambasts Defendants saying that they took no precautionary measures; rather, they published the materials they knew they were not entitled to retain. *Id.*  Humphries also questions the "unclean hands" argument made by Defendants pointing out they have never asked for many of the materials that are at issue here. *Id.* at 10-11.

Finally, Humphries argues this Court has jurisdiction to grant the relief sought. *Id.* at 11. Humphries contends she is not seeking the imposition of criminal penalties or civil contempt upon Defendants; instead, she is asking the Court to use its inherent powers to ensure the litigation proceeds in a good faith manner that does not serve as a tool to undermine Humphries' privacy rights. *Id.*  Humphries also disputes the applicability of the *Younger* doctrine. *Id.*  Humphries argues (1) there is no ongoing litigation in the state court in Boston, (2) there is no important state interest at stake since this dispute is between private citizens, and (3) the state court in Boston is not impeded in any way from performing its judicial functions. *Id.* at 11-12.

## II.   DISCUSSION

### A.   This Court Has Jurisdiction Over the Sanctions Motion.

Courts within the Ninth Circuit are empowered to take judicial notice of proceedings in other courts that are "within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal citations and quotation marks omitted).  Federal Rule of Evidence 201 allows district courts to judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.  It is a general rule that most matters involved in the discovery process are "left to the sound discretion of the district judge." *Asea, Inc. v. Southern Pacific Transportation Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981) (citation omitted); *DFR Apparel Co., Inc. v. Triple Seven Promotional Products, Inc.*, Case No. 2:11–cv–01406–APG–CWH, 2014 WL 1268689, at *1 (D.

Nev. Mar. 26, 2014) ("Courts have broad discretionary power to control discovery ...."), *citing Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 2014).

Here, the Boston Court Orders have a direct and substantial correlation to the matters at issue in the Sanctions Motion as well as this litigation.  Under its well-established power to oversee discovery, the Court takes judicial notice of the Orders issued by the Boston Municipal Court and finds the scope of the Court's jurisdiction encompasses the narrow form of relief sought by Humphries.

Further, *Younger* abstention is inapplicable.  The Ninth Circuit instructs federal courts are forbidden "from unduly interfering with pending state court proceedings that implicate 'important state interests.'" *Potrero Hills Landfill, Inc.*, 657 F.3d at 881 *citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).  A review of the four requirements that must be met, reveal no basis for abstention.  There is nothing filed with this Court demonstrating Boston Municipal Court proceeding be presently ongoing (albeit Humphries states she "intends to enforce her rights under the abuse prevention orders in Massachusetts ..." (ECF No. 89 at 11)).  The issues presented in this case are not state interest, but even if they are, the Boston state court proceedings do not provide an adequate opportunity to raise federal questions as the matter in that court was far more limited than what is presently alleged.  Finally, nothing in this federal court action will enjoin the Boston Court proceeding or have the practical effect of doing so.  In sum, the Court concludes that *Younger* abstention is not warranted here.

B.      Defendants' Disclosure of Documents on Humphries' iPhone Was a Willful Violation of the Boston Municipal Court Orders.

The Supreme Court in *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), delivered the definitive summary of the bases on which a federal court may levy sanctions under its inherent power.  The Court reiterated the federal courts' inherent power to levy sanctions, including attorneys' fees, for "willful disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons...."  *Id.* at 766 (internal quotation marks and citations omitted).  A district court's inherent power to levy sanctions is "both broader and narrower than other means of imposing sanctions."  *Chambers*, 501 U.S. at 32.

The content and meaning of the Boston Court Orders are clear.  Defendants were instructed to "surrender any and all personal information to the Boston Police Department pertaining to [Humphries], including electronically stored information, and … not to publish such information." ECF No. 77-3 at 2.[4]  The state court reiterated its Order stating that "any such information is not to be published in any way at all."  ECF No. 77-2 at 65-66.  The Court finds no ambiguity in the meaning of these statements.

Defendants claim they dutifully complied with the Boston Orders as they turned over everything they had that was encompassed by the Orders to Humphries' state court counsel.  ECF No. 85 at 4.  Defendants contend they did not realize the information that is the subject of the instant Sanctions Motion was in their possession until the commencement of this litigation and upon their searching for and gathering of evidence that might be needed.  *Id.* at 3.  Defendants assert the copy of Humphries' iPhone in Defendants' possession was uploaded by Humphries prior to the unraveling of the relationship between Humphries and Defendants.  *Id.*

The Court does not agree with Defendants' arguments.  First, that Humphries allegedly downloaded the content of her iPhone onto a hard drive belonging to Defendants before the Boston Municipal Court issued its Orders is irrelevant to compliance with those Orders.  There is nothing in the plain text of the Orders (or that may be implied from the text) that refers to an exception for information voluntarily provided by Humphries at any time, let alone before the Orders were issued. Second, Defendants' argument that the Boston Court Orders "[do] not prohibit the Buttons from possessing a copy of the documents" is unpersuasive.  *Id.* at 5.  The text of the Orders demonstrates retention of Humphries' iPhone or its contents would violate those Orders.  Indeed, a contrary interpretation would defeat the intended purpose of an abuse prevention order.

Third, Defendants point to the legal duty for a party both before and during pending litigation to preserve evidence.  *Id.* at 8 *citing Patton v. Wal-Mart Stores, Inc.*, Case No. 2:12-cv-02142-GMN-VCF, 2013 WL 6158467, at *6 (D. Nev. Nov. 20, 2013).  The Court does not dispute the duty to preserve evidence; however, that duty does not excuse Defendants' actions in this litigation.

---

[4] The state court also permitted the material at issue to be handed over to Humphries' state court counsel.  ECF No. 77-2 at 65-66.

Defendants state they discovered their possession of materials at issue after this litigation started and did not disclose documents until they were requested by Humphries. *Id.* at 9. But the Boston Court Orders did not cease to be effective once this litigation commenced. That is, upon discovery of the materials, Defendants should have contacted Humphries (through counsel) to discuss the discovery and potential surrender of the materials with provision for appropriate future use in this litigation. If agreement could not be reached, the assistance of the Court should have been sought. However, there is no basis for simply ignoring the Boston Court Orders. This principle applies equally to Defendants' arguments that the information relates to claims made by third parties. *Id.* at 9-10. Nothing in the Boston Court Orders made an exception for any future hypothetical litigation.

Fourth, Defendants' arguments that Humphries exhibited bad faith and unclean hands in discovery are not germane to the instant Sanctions Motion. *Id.* at 10-12. If Defendants believe that Humphries is acting in bad faith, Defendants should seek relief from the Court. Fifth, Defendants' dispute over how certain information wound up in the hands of certain press outlets is irrelevant. *Id.* at 12-13. Defendants acknowledge they filed material on the public docket that was covered by the Orders issued by the Boston Municipal Court. *Id.* at 13.

Despite all of the above, the Court does share Defendants' concerns regarding Humphries' request for an order requiring "Defendants to delete Sage's iPhone backup (and any other personal data of Sage's they illegally possess) and not to publish or use such information, including in this litigation, including at trial." ECF No. 77 at 14. Indeed, in her Reply, Humphries seems to retreat and agree that "permanent destruction of any relevant evidence" is not required. ECF No. 89 at 4. Instead, she asks "that only relevant materials are produced in this action and that only non-confidential materials are subject to public disclosure." *Id.* at 4, 8.

The Court finds there is nothing in the Orders issued by the Boston Municipal Court requiring the material at issue is to be destroyed. Further, Defendants indicate that their theory of the case will require the use of information and documents at issue. ECF No. 85 at 3-4. However, Defendants' cannot continue possession of the materials. The Boston Court Orders are clear that these materials are not to be in Defendants' possession. Because the Boston Municipal Court is entitled to preclusive effect under Massachusetts law, the Court will not allow the relitigation of the issue decided through

this proceeding.  *See Southeast Resource Recovery Facility Authority v. Montenay International Corp.*, 973 F.2d 711, 714 (9th Cir. 1992).  This decision "is mandated by the fundamental purposes of the full faith and credit statute, the promotion of comity and the conservation of judicial resources."  *Id. citing Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 84 (1984); *Allen v. McCurry*, 449 U.S. 90, 95–96 (1990) *citing Worldwide Church of God v. McNair*, 805 F.2d 888, 890-92 (9th Cir. 1986).

Based on the foregoing, the Court finds Defendants must turn over all materials in their possession, custody or control, including electronically stored information, that relates in any way to the materials addressed by the Boston Court Orders.  The delivery of materials must be to Humphries' current counsel within thirty (30) days of the date of this Order.  No copies shall be retained by Defendants.  No use of the materials, if any, in the future is to be filed on the docket of this case unless under seal.  No other publication of such materials is to occur unless permitted by Court order.  Defendants may, however, as they deem appropriate, seek production of information and materials they previously turned over or that is turned over in accordance with this Order for use in defense of the claims asserted.  Such production must be made under a strict confidentiality order.  Use of the materials must comply with this Order.  If production is objected to, the parties may bring the issue to the Court for resolution.  Indeed, discovery closes on March 29, 2023.  ECF No. 96 at 1. This gives the parties ample time to continue the discovery process and, if necessary, bring disputes regarding the use of documents and information to the Court's attention.

**III.   ORDER**

IT IS HEREBY ORDERED that Plaintiff Sage Humphries' Motion for Sanctions Regarding Unlawfully Obtained Information (ECF No. 77) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendants must within thirty (30) days of the date of this Order deliver to Humphries' current counsel all materials in their possession, custody or control, including electronically stored information, that relates in any way to the materials addressed by the Boston Court Orders.  No copies of such information is to be retained by Defendants.   No use of the materials, if any, in the future is to be filed on the docket of this case unless under seal.  No other publication of such materials is to occur unless permitted by Court order.

1    IT IS FURTHER ORDERED that Defendants' surrender of all materials to Humphries'

2  counsel does not preclude future use of such information in Defendants' defense of this action;

3  provided, however, that use must either be agreed upon or approved by the Court.

4    IT IS FURTHER ORDERED that Humphries' counsel's request for an award of fees and

5  costs associated with bringing the Sanctions Motion is GRANTED.

6    IT IS FURTHER ORDERED that Humphries' counsel must submit a memorandum of fees

7  and costs associated with bringing the Sanctions Motion detailing the activities, hours spent (in

8  tenths of hours), and the rate charged by each attorney and non-attorney who worked on the Motion

9  and related filings.  Appropriate redactions from billing records for attorney client privilege and/or

10  work product may be made for the public filing with non-redacted copies of such records filed under

11  seal.  Humphries' counsel shall submit its memorandum within fourteen (14) days of this Order.

12  Defendants have 14 days to file a response, if any is desired.  No reply shall be permitted.

13    IT IS FURTHER ORDERED that Plaintiff Sage Humphries' Motion to Supplement Motion

14  for Sanctions (ECF No. 91) is DENIED as moot.

15    DATED this 1st day of December, 2022.

16

17

18  ELAYNA J. YOUCHAH
19  UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28