UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SAGE HUMPHRIES, GINA MENICHINO,
ROSEMARIE DeANGELO, DANIELLE
GUTIERREZ, JANE DOE 100, JULIET
DOHERTY, and JANE DOE 200

        Plaintiffs,

        v.

MITCHELL TAYLOR BUTTON and DUSTY
BUTTON,

        Defendants.

Case No. 2:21-cv-01412-ART-EJY

**ORDER**

Pending before the Court is Defendants' Motion to Compel Production of Documents. ECF No. 252. The portion of the Motion the Court is able to clearly decipher focuses on assertions of privilege and work product protections applied to communications between Plaintiffs, communications with Ms. Humphries Massachusetts counsel, and communications among Plaintiff Sage Humphries, her parents, and her counsel.[1] Plaintiffs oppose Defendants' Motion arguing all assertions of privilege and work product protection are proper.[2]

**I.    Sage Humphries and the Attorney-Client Privilege**.

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. U.S.*, 524 U.S. 399, 403 (1998). The main purpose of the

---

[1] On pages 11-12 of Defendants' Motion there is a long list of requests for production of documents apparently propounded by Defendants on Plaintiffs. ECF No. 252 at 11-12. The Court is unsure whether Defendants seek to compel production of documents responsive to all or any of these requests. However, the sheer number of requests evidences overbreadth and burdensomeness. More importantly, in the absences of specifics—that is, what each request seeks and what response was given—the Court has no way to determine if any individual request appearing in the list requires Plaintiffs to respond in a manner other than that which was already have. Local Rule 26-6(b) states: "All motions to compel discovery or for a protective order must set forth in full the text of the discovery originally sought and any response to it." Defendants did not provide this information to the Court. The Court is not required to go on a mission to hunt for the evidence that would support Defendants' Motion. *Shaffer v. R.J. Reynolds Tobacco Company*, 860 F.Supp.2d 991, 997 (D. Ariz. 2012) (the district court is not "required to engage in a hunt and peck exercise to ferret out potentially relevant and necessary" evidence). The Court declines to grant the Motion to Compel to the extent it seeks production of documents related to the list provided on pages 11 and 12 of Defendants' Motion.
[2] Plaintiffs also argue Defendants failed to meet and confer regarding the privilege log and Defendants failure to properly identify documents they seek produced. At this stage of the proceedings, the Court chooses to resolve the instant Motion on the merits rather than return it to the parties for a meet and confer.

1    privilege is "to encourage full and frank communication between attorneys and their clients and

2    thereby promote broader public interests in the observance of law and the administration of justice."

3    *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The privilege extends to "confidential

4    disclosures made by a client to an attorney in order to obtain legal advice ... as well as an attorney's

5    advice in response to such disclosures."  *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir.1996).  Because

6    it impedes "the full and free discovery of the truth, the attorney-client privilege is strictly construed"

7    and "'applies only where necessary to achieve its purpose.'"  *United States v. Talao*, 222 F.3d 1133,

8    1140 (9th Cir. 2000) (quoting *Weil v. Investment/IndicatorsResearch and Management, Inc.*, 647

9    F.2d 18, 24 (9th Cir. 1981) and *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

10          The application of the attorney-client privilege "does not turn on whether an attorney

11   continues to represent a client.  In fact, the privilege continues even after the attorney ends her

12   representation of the client."  *U.S. v. Posin*, 996 F.2d 1229, n.2 (Table) (9th Cir. 1993).  "The

13   existence of an attorney-client relationship and privilege is not dependent on the client paying the

14   attorney.  The relationship and the privilege may exist even though the attorney's fees are paid by a

15   third person."  *Dole v. Milonas*, 889 F.2d 885, 888 n.5 (9th Cir. 1989) *citing In re Shargel*, 742 F.2d

16   61, 64-65 (2d Cir. 1984) (additional citation omitted).

17          With respect to communications by and to counsel on behalf of a plaintiff by a family

18   member, the Court directs Defendants to NRS 49.055, which states: "A communication is

19   'confidential' if it is not intended to be disclosed to third persons other than those to whom disclosure

20   is in furtherance of the rendition of professional legal services to the client or those reasonably

21   necessary for the transmission of the communication."  Further, in *L.M.W. v. Arizona*, Case No. CV-

22   22-0777-PHX-JAT, 2023 WL 6199713 (D. Ariz. Sept. 21, 2023), the court considered whether

23   emails in which a grandparent participated remained protected by the attorney-client privilege.  *Id*.

24   at *1.  The court held, "absent a contrary showing, we presume that when a client authorizes a parent

25   to participate in conferences with her attorney regarding the client's personal matter, and the client

26   and the parent have no adverse interest with respect to that matter, the client has a reasonable

27   expectation that the conferences will be confidential."  *Id*.  In *Kevlik v. Goldstein*, 724 F.2d 844 (1st

28   Cir. 1984) the court noted that the presence of a third party does not necessarily destroy the attorney

1   client privilege.  "The guiding principle in determining whether or not there exists a privileged

2   attorney-client relationship is the intent of the client.  The key question in determining the existence

3   of a privileged communication is 'whether the client reasonably understood the conference to be

4   confidential.'"  *Id*. at 889 *citing McCormick on Evidence*, § 91 at 189 (1972); H.J. Drinker, Legal

5   Ethics, 135 (1953) (communication remains privileged where "third party was present in such

6   capacity as to be identified with the client"); *Hearn v. Rhay*, 68 F.R.D. 574, 579 (E.D. Wash. 1975)

7   (intent of the party is determinative).  In sum, whether or not a given communication is "confidential

8   within the meaning of the privilege is determined from the perspective of the client."  *Griffith v.*

9   *Davis*, 161 F.R.D. 687, 694 (C.D. Cal. 1995).

10       Said simply, Defendants' are incorrect when they contend third parties payment of attorney

11   fees on behalf of one or more Plaintiff destroys the attorney-client privilege.  *Milonas*, 889 F.2d at

12   888 n.5.  With respect to the attorney-client relationship between Ms. Humphries and Maura

13   Melcher, the only evidence before the Court is that this relationship is ongoing.  ECF No. 269-3 ¶ 7.

14   Importantly, even if the attorney-client relationship had ended, communications relating to Ms.

15   Melcher's representation of Ms. Humphries would not lose their attorney client protection.  *Posin*,

16   996 F.2d 1229, n.2.  Finally, Ms. Humphries' parental participation in communications with her

17   counsel does not result in a waiver of privilege as the evidence shows (1) Ms. Humphries was 19

18   when Ms. Melcher was retained, (2) she was in an emotionally fragile state at the time of the

19   retention, and (3) her parents had information directly relevant to the legal representation being

20   undertaken by Ms. Melcher.  NRS 49.055; ECF No. 269-3 ¶ 7.

21       The Court finds no waiver of the attorney-client privilege based on the three arguments made

22   by Defendants in their Motion to Compel.

23   **II.     Seventeen Communications Between Plaintiffs**.

24       Defendants argue that communications between Plaintiffs prior to the filing of this litigation

25   cannot be privileged as claimed by Plaintiffs on the privilege log produced by Plaintiffs' counsel.

26   ECF No. 252 at 6.  The privilege log entry at issue states that the communications in May 2020 are

27   between two plaintiffs regarding the instant litigation.  ECF No. 271-2 at 3 (entry for Document ID

28   127864).   In response to an inquiry by Defendants, Plaintiffs explained the entry further.

1    Specifically, counsel for Plaintiffs stated that the document on the privilege log is part of a chain

2    that dates back to May 2020.  ECF No. 271 at 8.  The chain includes communication sent to Ms.

3    Humphries in September 2021, which is after this litigation commenced.  *Id*.  In an effort to resolve

4    the issue surrounding this message chain, Plaintiffs sent a redacted version of the document to

5    Defendants removing only attorney-client privilege and/or work product information.[3]  Defendants

6    do not mention this in their Motion; nor did they provide a copy of the redacted document to the

7    Court.  Plaintiffs also did not attach the redacted version of the communications to their Opposition

8    to Defendants' Motion.  Nonetheless, the explanation letter sent to Defendants by Plaintiffs' counsel

9    is provided at ECF No. 271-3.  Plaintiffs' letter confirmed: "Sage Humphries possesses no non-

10   privileged communications with Maura Melcher, and Jane Doe 1 possesses no non-privileged

11   communications with Robin Melone. … Plaintiffs have also searched for and produced all

12   communications among the Plaintiffs that (1) are in Plaintiffs' possession, custody, and control, (2)

13   concern Defendant(s) and/or the allegations at issue in this litigation, and (3) predate the filing of

14   the initial complaint."  *Id*. at 2-3.

15          The Court does not know what was and was not redacted from the communication chain

16   about which Defendants complain.  The Court has no basis to believe that any redacted portion of

17   the communication chain that started in May 2020 should have been produced.  Indeed, the Court

18   has confidence in Plaintiffs' counsel.  However, out of an abundance of caution, the Court will order

19   the communication chain to be submitted *in camera* and *under seal* for the Court's review.  The

20   submission will not be served on Defendants.  If the Court determines any portion of the

21   communication chain that has not been produced should be produced to Defendants, the Court will

22   issue an Order giving Plaintiffs time to submit written argument to the Court regarding why the

23

24   [3]      "The work product doctrine protects from discovery materials prepared by an attorney in anticipation of
     litigation." *United States v. Bergonzi*, 216 F.R.D. 487, 494 (N.D.Cal.2003) *citing Hickman v. Taylor*, 329 U.S. 495, 511
25   (1947).  The privilege is intended to preserve the privacy of attorneys' thought processes, and to prevent unnecessary
     intrusion by opposing parties and their counsel. *Id.*  The United States Supreme Court also holds "that the work product
26   doctrine applies to documents created by investigators working for attorneys, provided the documents were created in
     anticipation of litigation." *United States v. Torf*, 357 F.3d 900, 907 (9th Cir.2003).  The Ninth Circuit holds that "to
27   qualify for protection against discovery under Rule 26(b)(3), documents must have two characteristics: (1) they must be
     'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that
28   other party's representative.'" *Id. quoting In re California Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir.1989)
     (quoting Fed. R. Civ .P. 26(b)(3)).

1    portion the Court designates as produceable should remain protected.  Defendants will have an

2    opportunity to respond.  The Court will then determine whether the attorney-client privilege and/or

3    the work product doctrine applies to the redacted portion of the communication.[4]

4    **III.    Order**.

5    Based on the foregoing, IT IS HEREBY ORDERED that Defendants' Motion to Compel

6    Plaintiffs' Production of Documents (ECF No. 252) is DENIED.

7    IT IS FURTHER ORDERED that Plaintiffs **must**, no later than **February 29, 2024**, submit

8    *in camera* and *under seal*, the communication chain produced to Defendants in its unredacted form

9    together with the redacted document identifying the basis for each redaction.  The *in camera*

10   submission will not be served on Defendants.

11   The Court will review the redaction and determine if any portion of the redactions fail to

12   satisfy requirements necessary to establish work product, an attorney-client privileged

13   communication, or other bases for redaction.  Upon completion of its review, the Court will issue an

14   Order that (1) confirms all redactions were properly made, or (2) identifies redactions it believes

15   contain information that should be produced.  If the Court finds any portion of the redactions should

16   be produced, the Order will give Plaintiffs an opportunity to respond before production, if any, is to

17   be made.  Defendants will have an opportunity to oppose Plaintiffs' submission.

18   DATED this 15th day of February, 2024.

19

20   _____
     ELAYNA J. YOUCHAH
21   UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26   [4]    The Court rejects Defendants' repeated allegation of some form of conspiracy between or among Plaintiffs.
     There is no evidence to support this allegation, which Defendants assert on a recurring basis.  There is certainly no proof
27   despite Defendants' assertion to the contrary.  Indeed, it is not hard to imagine that Plaintiffs, all ballet dancers, might
     know each other and have spoken with each other about many things including, but not limited to, things that were
28   bothering them over the years preceding this litigation.  The fact that there are conversations predating this litigation
     between and among Plaintiffs, by itself, does not support the conclusion that Plaintiffs conspired against Defendants.