UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SAGE HUMPHRIES, GINA MENICHINO, ROSEMARIE DeANGELO, DANIELLE GUTIERREZ, JANE DOE 1, AND JANE DOE 2 | Case No. 2:21-cv-01412-ART-EJY |
| | ORDER |
| Plaintiffs, | |
| v. | |
| MITCHELL TAYLOR BUTTON and DUSTY BUTTON, | |
| Defendants. | |

This case concerns multiple allegations of sexual abuse and Defendants' counterclaims for defamation, abuse of process, and civil conspiracy. Before the Court are Defendants' Motion to Dismiss (ECF No. 231) and Motions to Supplement (ECF Nos. 241, 312), in addition to Plaintiffs' Motion to Dismiss (ECF No. 248).[1]

## I.    BACKGROUND

The Court reviews the relevant history in this case. Plaintiffs filed this action on July 28, 2021. (ECF No. 1.) On July 8, 2022, Defendants first filed a Third Party Complaint and Counterclaims. (ECF No. 54.) Defendants brought counterclaims for abuse of process against Sage Humphries ("Humphries"), Gina Menichino ("Menichino"), Rosemarie DeAngelo ("DeAngelo"), Danielle Gutierrez ("Gutierrez"), Jane Doe 1, Juliet Doherty ("Doherty"), and Jane Doe 2, civil conspiracy against Humphries, Menichino, DeAngelo, Gutierrez, Jane Doe 1, Doherty, Jane Doe 2, and Michael and Micah Humphries, equitable contribution against Anthony Giovanni Deane ("Deane"), Daryl Allan Katz ("Katz"), and Chase

---

[1] The Court will address the other pending motions in a separate order

1

Finlay ("Finlay"), and defamation per se against Humphries for statements she made to Good Morning America and Boston Magazine. (*Id.* at 16-21.) On August 12, 2022, Defendants amended their counterclaims; they maintained their defamation claim against Humphries. (ECF No. 67 at 16-18.)

Plaintiffs filed a Motion to Dismiss the Counterclaims. (ECF No. 69.) On February 2, 2023, the Court heard oral arguments on multiple motions but deferred ruling on the motion to dismiss the defamation claim against Humphries. (ECF No. 130.) In a separate order, the Court denied the motion to dismiss the defamation counterclaim because factual issues precluded finding that Humphries' statements were protected based on the fair reporting privilege or Nevada's anti-SLAPP statute. (ECF No. 131 at 1-2.)

Plaintiffs filed a Third Amended Complaint on June 20, 2023. (ECF No. 188.) Defendants filed a Motion to Dismiss the Third Amended Complaint with Counterclaims on August 23, 2023. (ECF No. 231.) Defendants added various counterclaims in this motion, including 1) amending their defamation claim against Humphries to include statements she allegedly made to Cosmopolitan Magazine on April 5, 2022, Pointe Magazine on December 1, 2021, the New York Times on July 27, 2021, and on her social media on May 13, 2021; 2) adding defamation claims against Gutierrez, DeAngelo, Menichino for statements they allegedly made on their social media and to Cosmopolitan Magazine on April 5, 2022; and 3) adding a defamation claim against Jane Doe 1 for alleged statements she made to the Daily Mail on September 29, 2021 and to CNN on September 30, 2021. (*Id.* at 57-74.) Defendants also filed two Motions to Supplement their Motion to Dismiss on September 5, 2023 and February 29, 2024. (ECF Nos. 241, 312.)

On September 14, 2023, Plaintiffs filed a Motion to Dismiss Defendants' Counterclaims. (ECF No. 248.) Plaintiffs argue that 1) Defendants' new claims of conspiracy, abuse of process, and defamation against Menichino, DeAngelo,

Guttierez, and Jane Doe 1 are waived compulsory counterclaims, 2) Defendants failed to seek leave of the court before asserting their new counterclaims; 3) the abuse of process and conspiracy claims fail as a matter of law; and the defamation claims fail because the statements to the New York Times are barred by the statute of limitations, the other statements are protected by Nevada's anti-SLAPP statute and the fair report privilege, and Defendants failed to allege actual malice. *Id.*

## II.    LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Furthermore, filings by pro se parties are to be liberally construed, especially in civil rights cases. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("[W]e continue to construe pro se filings liberally when evaluating them under Iqbal.").

## III.    DISCUSSION

a.  Defendants' Motion to Dismiss

i.  Timeliness of Claims

Defendants first argue that Plaintiffs' claims are untimely. In Nevada, the

1    statute of limitations for assault, battery, false imprisonment, and intentional

2    infliction of emotional distress are two years. NRS §§ 11.190(4)(c); 11.190(4)(e).

3    The statute of limitations for breach of fiduciary duty claims is three years. *Id.* §

4    11.190(3)(d). Nevada tolls the statute of limitations until the minor reaches the

5    age of majority. *Id.* § 11.250(1). However, there is no statute of limitations for

6    actions "arising from the sexual abuse or sexual exploitation of the plaintiff which

7    occurred when the plaintiff was less than 18 years of age. NRS § 11.215.

8        The statute of limitations for sex trafficking, forced labor, and involuntary

9    servitude is either 10 years after the cause of the action arose or 10 years after

10   the alleged victim turned eighteen years of age. 18 U.S.C. §1595(c). The statute

11   of limitation for sexual exploitation of a minor is either not later than 10 years

12   after the Plaintiff reasonably discovers the basis of the violation or injury that

13   forms the basis of her claim, or 10 years after she has reached the age of majority.

14   *Id.* § 2255(b). Both the state and federal claims may be subject to equitable

15   estoppel or tolling, but their applicability "is not generally amenable to resolution

16   on a Rule 12(b)(6) motion, where review is limited to the complaint alone."

17   *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

18       The Court previously heard oral arguments on this issue in response to

19   Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. The Court

20   found that dismissal was inappropriate because the claims "could be timely

21   under the statute and/or there could be equitable doctrines that apply." (ECF No.

22   129 at 49.) Because Plaintiffs' Third Amended Complaint did not substantially

23   change their allegations, now remains an inappropriate time to resolve this "fact-

24   intensive" issue. (*Id.*) As such, the Court will deny Defendants' Motion to Dismiss

25   on this basis.

26                    ii.  Personal Jurisdiction and Venue

27       Defendants also asserted that this Court lacks personal jurisdiction and/or

28   the Court should transfer the case to a different venue. The Court finds that

Defendants have waived these arguments by not raising them sooner, since Defendants bring up these arguments for the first time after two years of litigation. *See e.g., Schnabel v. Lui*, 302 F.3d 1023, 1037 fn. 5 ("For example, when a party who has appeared only as a defendant, defends and files a counterclaim, objection to personal jurisdiction is waived.") (internal citations omitted); *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992) ("Improper venue is waived under Rule 12 only if a defendant moves to dismiss on one or more of the other grounds specified by Rule 12 while failing to raise venue in the same motion."). Because these arguments are untimely, the Court denies Defendants' Motion to Dismiss for lack of personal jurisdiction or improper venue.

iii.  Striking Statements

The Court will also deny Defendants' request for the Court to strike portions of Plaintiffs' Third Amended Complaint. "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike are "not favored" and "rarely granted." *Page v. Grandview Marketing, Inc.*, No. 2:09-cv-01150-RCJ-GWF, 2010 WL 11579616, at *1 (D. Nev. Jan. 7, 2010). "Motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Id.* at *2.

Defendants have failed to meet the high burden for granting a motion to strike. Defendants argue that the Third Amended Complaint was "written for the media" and they object to Plaintiffs not using the term "allegedly" in portions of the complaint. (ECF No. 231 at 22-24.) However, Plaintiffs are not required to use the term allegedly throughout their complaint. In addition, Defendants' general accusation that the complaint was written for the media does not justify granting the motion to strike. "[N]on-neutral allegations will invariably be found in pleadings...and are not a proper basis for a motion to strike." *Willson v. Cage*, 711 F. Supp. 1521, 1535 (N.D. Cal. 1988), *aff'd sub nom. Willson v. Hubbard*, 900

F.2d 263 (9th Cir. 1990). Because Defendants have not shown how the statements meet the criteria for granting a motion to strike or how the statements fail to relate to Plaintiffs' claims, the Court will deny the motion to strike.

### iv.  Motions to Supplement

Defendants have filed two Motions to Supplement their Motion to Dismiss. (ECF Nos. 241, 312). The Court will deny these motions as premature. These motions contain various exhibits that Defendants allege challenge the veracity of Plaintiffs' claims and provide evidence in support of their counterclaims. At the motion to dismiss stage, the Court must take as true the moving party's allegations and disregard any evidence outside of the four corners of the complaint. *See, e.g., Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("[E]xtraneous evidence should not be considered in ruling on a motion to dismiss."); *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (stating that in considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party"). As such, at this stage, the Court will assume the truth of the claims in Plaintiffs' complaint and Defendants' counterclaims, so the Court cannot consider extrinsic evidence. As the Court has previously advised, such evidence is better suited to the motion for summary judgment stage. Thus, the Court will deny both Motions to Supplement.

### b.  Plaintiffs' Motion to Dismiss Counterclaims

### i.  Timeliness

In their response to Plaintiffs' motion to dismiss Defendants' counterclaims, Defendants argue that Plaintiffs' motion is untimely because Plaintiffs could have filed their motion to dismiss with their response to Defendant's motion to dismiss. (ECF No. 265 at 5.) "A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim." FED. R. CIV. P. 12(a)(1)(B). In addition, "[a] motion asserting any of

[the FRCP 12(b)] defenses must be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). Here, Defendants filed their amended counterclaims on August 23, 2023 (ECF No. 231) and Plaintiffs filed their motion to dismiss on September 14, 2023. (ECF No. 248.) In their reply, Plaintiffs rely on the date Defendants filed a redacted version of the counterclaims, August 25, 2023, when calculating whether their motion was timely. (ECF No. 247 at 6.) While Plaintiffs' filing was untimely by a day, the court will still consider the motion to dismiss because of the confusion surrounding the filing dates and the fact that Defendants were not prejudiced by this late filing. Abuse of Process Claim

Plaintiffs argue that this Court should dismiss Defendants' abuse of process claim. "The two elements required to establish the tort of abuse of process are: (1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *Kovacs v. Acosta*, 787 P.2d 368, 369 (Nev. 1990). "[T]he claimant must provide facts, rather than conjecture, showing that the party intended to use the legal process to further an ulterior purpose." *Land Baron Inv. v. Bonnie Springs Family LP*, 356 P.3d 511, 519 (Nev. 2015) (citing *LaMantia v. Redisi*, 38 P.3d 877, 880 (Nev. 2002)). In addition, "[t]he utilized process must be judicial, as the tort protects the integrity of the court." *Id.* (internal citations omitted). Furthermore, the party cannot meet the willful act requirement by merely referencing the opposing party's filing of a complaint. *Id.* at 520.

Defendants' abuse of process claim fails as a matter of law. Defendants allege that Plaintiffs filed their complaint "to entice the media…and to ruin [their] reputations with salacious and untrue allegations." (ECF No. 231 at ¶ 302.) However, "filing a complaint does not constitute abuse of process." *Land Baron Inv.*, 356 P.3d at 520. Filing a complaint is not "a 'willful act' that would not be 'proper in the regular conduct of the proceeding.'" *Id.* (internal citation omitted).

1    Furthermore, to the extent that Defendants challenge Plaintiffs' communications
2    with the media, such conduct is not considered use of the legal process for
3    purposes of an abuse of process claim. *See, e.g., Allstate Ins. Co. v. Shah*, No.
4    2:15-cv-01786-APG-CWH, 2017 WL 1228406, at *3 n.28 (D. Nev. Mar. 31, 2017)
5    ("[C]ontacting the media does not involve using a judicial process."); *see also In*
6    *re Acacia Media Techs. Corp.*, No. C 05-01114 JW, 2005 WL 1683660, at *6 (N.D.
7    Cal. July 19, 2005) ("Statements (or misstatements) to the media...do not abuse
8    judicial process."). As such, the Court will grant Plaintiffs' motion to dismiss the
9    abuse of process counterclaim.

10                    ii.  Civil Conspiracy Claim

11           The Court will also grant Plaintiffs' motion to dismiss Defendants' civil
12    conspiracy counterclaims. Civil conspiracy claims are not standalone claims;
13    they require an underlying civil wrong. *See Sahara Gaming Corp. v. Culinary*
14    *Workers Union Local 226*, 984 P.2d 164, 168 (Nev. 1999) (dismissing civil
15    conspiracy claim because the court dismissed the underlying defamation claim).
16    Here, Defendants' civil conspiracy claims are derivative of their abuse of process
17    claim because they allege that Plaintiffs "agreed to abuse process by filing a
18    Complaint with this Court with the sole intention of ruining the Buttons' well-
19    known and respected reputations." (ECF No. 231 at ¶313.) Because the Court
20    has already dismissed the abuse of process claim, it will also dismiss the
21    derivative civil conspiracy claim.

22                    iii.  Defamation Claims

23                    1.  Statute of Limitations

24           Plaintiffs raise multiple arguments regarding Defendants' defamation
25    claims. First, Plaintiffs argue that Defendants' defamation claims based on
26    statements Humphries allegedly made to the New York Times are time barred.
27    (ECF No. 248 at 20-21.) However, in Defendants' defamation claim against
28    Humphries, they allege she made defamatory statements on multiple occasions

to different news outlets, but Plaintiffs only raise a statute of limitation issue with the alleged statements to the New York Times.[2] Because the defamation claim involves multiple events, and the Court has not yet even determined if Nevada law is the source of the statute of limitations for the claim, the Court will allow the full defamation claim to proceed.

## 2. Anti-SLAPP Statute

Plaintiffs argue that the defamation claims should be dismissed pursuant to Nevada's anti-SLAPP statute. The anti-SLAPP statute protects speakers from civil actions related to "a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS § 41.650. A "[g]ood faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" includes, as relevant here, a "[w]ritten or oral statement made in direct connection with an issue under consideration by a legislative, executive, or judicial body, or any other official proceeding authorized by law" or a "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum." NRS § 41.637(3)-(4).

The Court finds that factual issues preclude dismissing Defendants' defamation claims based on Nevada's anti-SLAPP statute. As the Court discussed in its order denying the prior motion to dismiss (ECF No. 131), these alleged statements are not protected under NRS 41.637(3) as statements made in direct connection with an issue under consideration by a judicial body because the statements were directed to the general public, not just persons having some interest in the litigation. *See Patin v. Ton Vinh Lee*, 429 P.3d 1248, 1251-52 (Nev. 2018) (upholding the district court's conclusion that a statement was not protected by NRS 41.637(3) because, *inter alia*, "the statement was not directed

---

[2] In a footnote, Plaintiffs also say that the statement posted on the Instagram account @realworldballerina are time-barred. (ECF No. 248 at 21 n.7).

to any specific person or group, let alone to someone with an interest in the litigation").[3] In addition, it is unclear at this stage whether Plaintiffs' alleged statements are protected under NRS 41.637(4) as statements made in direct connection with an issue of public interest in a public forum. See NRS 41.660(3)-(5) (explaining the procedures for seeking a special motion to dismiss pursuant to Nevada's anti-SLAPP statute); *Taylor v. Colon*, 482 P.3d 1212, 1215 (2020) (observing that Nevada's anti-SLAPP motion to dismiss functions like a summary judgment motion); *Shapiro v. Welt*, 389 P.3d 262, 268 (2017) (setting forth factors for whether a statement is made in direct connection with an issue of public interest). Because the Court cannot determine at this time whether Plaintiffs' statements are protected by Nevada's anti-SLAPP statute, it will deny Plaintiffs' motion to dismiss the defamation claims on this basis.

### 3. Fair Reporting Privilege

Plaintiffs also argue that the defamation claims should be dismissed because they are protected by the fair reporting privilege. The Court finds, as it did in its order on Plaintiffs' earlier motion to dismiss, that factual issues prevent the Court from concluding that the fair reporting privilege applies to Plaintiffs' statements. See Restatement (Second) of Torts, § 611 cmt. c. (stating, "A person cannot confer [the fair reporting] privilege upon himself"); *Wynn v. Assoc. Press*, 136 Nev. 611, 613, 475 P.3d 44, 47 (Nev. 2020) (citing § 611 of the Second Restatement of Torts and applying summary judgment standard in deciding whether statements were privileged); *Shapiro*, 389 P.3d at 269 (observing that the analysis of whether statements are privileged "is a case-specific, fact-intensive inquiry that must focus on and balance the underlying principles of the privilege"). Thus, the Court will deny Plaintiffs' motion to dismiss with regards to

---

[3] While Plaintiffs revived their argument that the statements are protected under NRS 41.637(3), they simply focus on the fact that the statements were about allegations in the lawsuit and do not address the issue of whether the statements were directed to those with an interest in the litigation.

1  the fair reporting privilege.

2  4.  Actual Malice

3  Plaintiffs assert that Defendants are limited purpose public figures in the
4  dance and automotive communities and thus they were required to, and failed
5  to, allege that Plaintiffs made their statements with actual malice. "A limited-
6  purpose public figure is a person who voluntarily injects himself or is thrust into
7  a particular public controversy or public concern, and thereby becomes a public
8  figure for a limited range of issues." *Pegasus v, Reno Newspapers, Inc.*, 57 P.3d
9  82, 91 (Nev. 2002) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)).
10  In *Pegasus*, the Nevada Supreme Court adopted the test outlined in *Gertz*, which
11  focuses on whether the people played a voluntary and prominent role in a matter
12  of public concern. *Id.* (citing *Gertz*, 418 U.S. at 351).

13  Plaintiffs cite a variety of non-controlling cases to support their argument
14  that Defendants are limited purpose public figures. (ECF No. 248 at 30.) However,
15  the Court finds these cases distinguishable and concludes that Defendants are
16  not limited purpose public figures.

17  Plaintiffs first cite *Fine v. ESPN, Inc.*, 2016 WL 6605107 (N.D.N.Y. Mar. 25,
18  2016). In that case, the Northern District of New York concluded that the wife of
19  a basketball coach was a limited purpose public figure as to statements that her
20  husband molested former ball boys. However, that case is distinguishable from
21  the present case because in *Fine*, the plaintiff bringing the defamation claim had
22  appeared on television, was a radio personality, and "leveraged her public fame"
23  to obtain positions in various youth organizations. *Fine*, 2016 WL 6605107 at *7.
24  In addition, she was actively involved in matters involving at-risk youth and had
25  even discussed on television the need to properly screen adult mentors in
26  mentoring programs. *Id.* at *8. She thus "affirmatively injected herself into the
27  public spotlight in connection with [issues concerning the basketball team and
28  organizations supporting at-risk youth]." *Id.* at *11. Furthermore, she maintained

11

regular and continuing access to the media through her regular interviews and media connections. *Id.* In contrast, Plaintiffs have failed to show that Defendants inserted themselves into the public conversation surrounding sexual abuse in the dance industry to such an extent. Instead, Plaintiffs merely state that "Defendants are limited purpose public figures because they have voluntarily injected themselves into the dance (and automotive) communities, using their own and each other's notoriety to earn income, solicit business, and garner attention from young dancers, thus assuming the risk of publicity." (ECF No. 248 at 29-30.)

The Court is similarly unpersuaded by Plaintiffs' other cited cases. For instance, Plaintiffs cite *Barry v. Time, Inc.*, 584 F. Supp. 1110, 1119 (N.D. Cal. 1984) for the idea that professional and collegiate athletes are public figures. However, that case concerned articles focusing on the University of San Francisco's investigation of charges that a player received improper payments and accused the plaintiff, his coach, of involvement in the improper payment scheme. *Barry*, 584 F. Supp. at 1112. The court noted that the coach "voluntarily accepted a position which inevitably made him the focal point of substantial media attention with regard to his team…[including his] performance in conducting the basketball program within NCAA rules." *Id.* at 1121. Thus, that case is distinguishable because the statements at issue directly related to the coach's conduct in his professional role. Here, the Court finds that Plaintiffs' allegations fail to show that Defendants voluntarily inserted themselves into a prominent role in the public issue of sexual abuse in the dance industry simply by being a famous dancer or married to a famous dancer. Similarly, to find that Defendants voluntarily inserted themselves into this issue of public concern by allegedly committing acts of sexual abuse would require courts to find that all people with some fame accused of a crime are necessarily limited purpose public figures.

Because the Court concludes that Defendants are not limited purpose public figures, they were not required to allege actual malice in their defamation claims. Thus, the Court will deny Plaintiffs' motion to dismiss on this basis.

### iv.  Compulsory Counterclaims

Plaintiffs next argue that Defendants are barred from asserting new counterclaims because they waived previously omitted compulsory counterclaims. "A pleading must state as a counterclaim any claim that-at the time of its service-the pleader has against an opposing party if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). As an initial matter, because the Court has already dismissed Defendants' civil conspiracy and abuse of process counterclaims, it will only consider this argument with regards to the new defamation counterclaims. Because the Court finds that the record is unclear as to when Defendants became aware of the facts underlying their new defamation counterclaims, and thus whether Defendants were required to bring the claims earlier, the Court will deny the motion to dismiss. Plaintiffs, if they so desire, may raise this issue again at the motion for summary judgment stage.

### v.  Seeking Leave of Court

Plaintiffs also argue that Defendants' new counterclaims are barred because Defendants failed to seek leave of Court before bringing their new counterclaims. The Court notes that Defendants are proceeding pro se, and thus the Court should liberally construe their filings. *Bleisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) (internal citations omitted). While the Court recognizes that courts in the Ninth Circuit generally "allow counterclaims without leave of court 'only when the breadth of the changes in the amended response reflect the breadth of the changes in the amended complaint,'" *Cap. One, Nat'l Assoc. v. SFR Inv. Pool 1, LLC*, No. 2:17-cv-00604-RFB-VCF, 2018 WL 11280816, at *2 (D. Nev. 0ct. 17, 2018) (cleaned up) (quoting *UDAP Indus., Inc. v. Bushwacker Backpack*

& *Supply Co.*, No. CV 16-27-BU-JCL, 2017 WL 1653260, at *3 (D. Mont. May 2, 2017)), it also notes that "[n]o appellate court has squarely addressed whether counterclaims filed in response to an amended complaint pursuant to Rule 15 must be permitted as of right." *Id.* (quoting *Sierra Dev. Co. Chartwell Advisory Grp., Ltd.*, No. 13cv602 BEN (VPC), 2016 WL 6828200, at *2 (D. Nev. Nov. 18, 2016)). Because the Court must liberally construe pro se parties' filings and the law regarding needing to seek leave of court in this situation is complicated, the Court will allow the counterclaims to proceed except for those already dismissed in this order.

## IV.    CONCLUSION

It is therefore ordered that Defendants' Motion to Dismiss (ECF No. 231), and the redacted version of the motion (ECF No. 234), are denied in full.

It is further ordered that Defendants' Motions to Supplement (ECF Nos. 241, 312) are denied. The Court also denies the redacted versions of the motions (ECF Nos. 245, 314).

It is further ordered that Plaintiffs' Motion to Dismiss (ECF No. 248) is granted in part and denied in part. The Court will dismiss Defendants' abuse of process and civil conspiracy claims. Defendants' original defamation claim against Humphries is allowed to proceed. The Court defers ruling on whether Defendants' new defamation claims are dismissed as waived compulsory counterclaims.

DATED THIS 5th day of August 2024.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE