Mitchell Taylor Button
(*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
(310)-499-8702
Desmodynamica@gmail.com

Dusty Button
(*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
(310)-499-8930
Worldofdusty@gmail.com

X ___ FILED        ___ RECEIVED
___ ENTERED      ___ SERVED ON

01/09/2025

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SAGE HUMPHRIES, GINA MENICHINO, ROSEMARIE DEANGELO, DANIELLE GUTIERREZ, JANE DOE 1 AND JANE DOE 2 <br><br> PLAINTIFFS, <br><br> V. <br><br> MITCHELL TAYLOR BUTTON AND DUSTY BUTTON <br><br><br> DEFENDANTS | CASE: 2:21-CV-01412-ART-EJY <br><br> **[REDACTED]** DEFENDANTS MOTION FOR SUMMARY JUDGMENT AGAINST SAGE HUMPHRIES, GINA MENICHINO, ROSEMARIE DEANGELO, DANIELLE GUTIERREZ, JANE DOE 1 AND JANE DOE 2 |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………………9

INTRODUCTION………………………………………………..9,10,11,12,13,14,15,16

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED…16

STATEMENT OF FACTS……………………………………………………………...19

I.    Sage Humphries…………………………………………………………19

    a.  Sage Humphries is the Ex-Girlfriend of Defendants, Dusty and Taylor Button, a Substantiated Foundational and Imperative Fact that She Admitted Was Intentionally and Strategically Omitted in All Three of Amended Complaints…………………………………………………………..20,21

    b.  Sage Humphries Signed a Fraudulent Restraining Order Against Her Will in Order to Secure Her Freedom from the Wrongful Imprisonment of Her Parents Who Wrote the Order After Kidnapping Her and Trafficking Her to California Against Her Will Where They Forced Her to End the Consensual Relationship that She Created with Defendants ……………………………………21,22,23

    c.  Sage Humphries Knowingly Filed Over Eight Different False Police Reports, Which Were Withheld from The Massachusetts Court Hearings and District Court of Nevada Proceedings……………………………………………23,24

        1.  Sage Humphries Lied About the Defendants Stalking Her in Order to Obtain Permanent Abuse Prevention Orders Ex-Parte in 2018, Which the Defendants Were Unaware of Until 2022 in this Proceeding…………………………………………………………..24,25

2.   Sage Humphries Knew the Defendants Never Possessed Firearms but Lied to the Court and to the Police to Obtain Permanent Abuse Prevention Orders Ex-Parte in 2018 and Which Resulted in the Defendants' Apartment Being Raided by Law Enforcement......25,26

3.   Sage Humphries Admitted the Restraining Orders Were Only to Prevent the Defendants from "Blackmailing" Her with the Screenshots She Forgot She Asked Defendants If She Could Willingly Upload on the Defendants' Hard Drive in 2017, Proving Her illegal Sexual Relations and Prostitution with Daryl Katz, Jared Longhitano and Other Powerful Men...................................................................26,27

d.   The Massachusetts Appeal..................................................27

e.   Sage Humphries Stalked the Defendants in August of 2020.............27,28

f.   Sage Humphries' Nevada Complaint....................................28

II.   Gina Menichino...................................................................29

a.   Gina Menichino Filed a False Police Incident Report in 2018.............29,30

b.   Evidence Proves that Ms. Menichino Had a Delusional Obsession with Mr. Button.......................................................................31,32

c.   Gina Menichino's Expert Analysis Contradicts Her Claims..............32,33

III.   Danielle Gutierrez.........................................................33,34,35

1.   Statute of Limitations................................................35,36

a.   Ms. Gutierrez Stated She Hoped the Defendant Would Die..............35,36

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

b.  Social Media Messages and Therapy Records Prove Ms. Gutierrez Created a

False Narrative and was Never Abused by Her Ex-Boyfriend, Mr. Button Ms.

Gutierrez Knowingly Filed a False Police Incident Report in 2018………..36

c.  Danielle Gutierrez's Expert Analysis Contradicts Her Claims……………..36

IV.  Rosemarie DeAngelo………………………………………………………………36

1.  Statute of Limitations and False Testimony to the Police……36,37,38

a.  It is Proven Through Therapy Records That Ms. DeAngelo was Never

Abused……………………………………………………………………………..38,39

V.  Jane Doe 2………………………………………………………………………39,40

1.  Statute of Limitations and False Testimony to the Police………..40,41

a.  Jane Doe 2' s Expert Analysis Contradicts Her Claims…………………41,42

VI.  Jane Doe 1……………………………………………………………………..42,43

a.  The Substantial Evidentiary Record Confirms that it is Factually Impossible

for Jane Doe 1 to have been Sexually Assaulted by the Defendants……..43,44

VII.  Chitra Raghavan's Expert Report Should Be Stricken as Plaintiffs Intentionally

Withheld Evidence and the Record as a Whole, Thus Rendering Her Incapable of

Formulating an Impartial and Unbiased Assessment……………………………44

VIII.  Defendants' Counterclaim…………………………………………………….47,48

a.  Counterclaimants are Not Public Figures or Limited-Purpose Public

Figures……………………………………………………………………………..48

b.  Counter Defendants Published Statements of Fact, Not Opinion…48,49,50,51

c.  Counter Defendants Published Unprivileged Statements to Third Parties..51,52

IX.  Summary Judgment Standard……………………………………………………52,53

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

X.    Legal Argument……………………………………………………53,54

    a.    Plaintiffs' Claims Fails as a Matter of Law Including Due to Fraud on the

    Court……………………………………………………………54,55,56

    b.    Plaintiffs' Claims Fail – Statute of Limitations……………………….56

    c.    Plaintiffs' Intentional Infliction of Emotional Distress Fails as a Matter of

    Law…………………………………………………………………56,57

XI.    Summary Judgment Is Proper on All Claims as Plaintiffs Cannot Show A Genuine

    Dispute Of Material Fact As A Result Of Their Own Repeated Instances Of

    Perjury…………………………………………………………………...57,58,59

CONCLUSION………………………………………………………………59

CERTIFICATE OF SERVICE………………………………………………60

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES

2

Cases:

3

Anderson, 477 U.S. at 248………………………………………………………53,58

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986)………52

5

Aldabe, 81 Nev. at 285, 402 P.2d at 37 (holding "[w]hen [NRCP] 56…………………..53,58

6

Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000…………………………………………56

7

Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v.

8

Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)…………………………………………58

9

Dredge Corp. v. Husite Co., 78 Nev. 69, 89, 369 P.2d 686, 687 (1962)……………………52

10

Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998)……………………………..57

11

Leonard v. Gittere, No. 2:99-cv-0360-MMD-DJA, 2020 U.S. Dist. LEXIS 84791, at *24 (D.

12

Nev. May 14, 2020……………………………………………………………………..55

13

Olivero v. Lowe, 995 P.2d 1023, 1025 (Nev. 2000)…………………………………………57

14

Smith, 953 F.3d at 588 (quoting Holland v. Florida, 560 U.S. 631, 634 (2010)……………55

15

Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting United States v. Marcello,

16

212 F.3d 1005, 1010 (7th Cir. 2000))………………………………………………………..55

17

Pegasus, 118 Nev. at 722, 57 P.3d at 92……………………………………………………..49

18

CCSD v. Virtual Educ. Software, Inc., 125 Nev. 374, 385, 213 P.3d 496, 503 (2009)….47,50

19

K-Mart Corp. v. Washington, 109 Nev. 1180, 1192, 866 P.2d 274, 282 (1993)…………..47,50

20

Lubin v. Kunin, 117 Nev. 107, 111, 17 P.3d 422, 425 (2001)…………………………….47,50

21

Nevada Independent Broadcasting Corp. v. Allen, 99 Nev. 404, 410, 664 P.2d 337, 341

22

(1983)………………………………………………………………………………………47,50

23

Wynn v. Assoc. Press, 136 Nev. 611, 613, 475 P.3d 44, 47 (Nev. 2020)……………………50

24

25

26

27

28

Shapiro, 389 P.3d at 269………………………………………………………………51

Sahara Gaming Corp. v. Culinary Workers Union Local 226, 115 Nev. 212, 215, 984 P.2d

164, 166……………………………………………………………………………..51

Pope v. Motel 6, 121 Nev. 307, 317, 114 P.3d 277, 284 (2005)…………………………51

Boesiger v. Desert Appraisals, LLC, 135 Nev. 192, 194, 444 P.3d 436, 438-39 (2019)

(quoting Celotex Corp. v Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986))…………………………………………………………………………52,59

Valley Bank v. Marble, 105 Nev. 366, 367, 775 P.2d 1278, 1282 (1989); SEC v. Seaboard

Corp., 677 F.2d 1301, 1306 (9th Cir. 1982)…………………………………………52

Hoopes v. Hammargren, 102 Nev. 425, 429, 725 P.2d 238, 241 (1986); Adickes v. S.H. Kress

& Co., 398 U.S. 144, 157 (1970)……………………………………………………53

Siragusa v. Brown, 114 Nev. 1384, 971 P.2d 801 (1998)……………………………53

Cleveland v. Policy Mgt. Sys. Corp., 526 U.S. 795, 806, 119 S.Ct. 1597, 1603 (1999)…….53

Smith v. Danis, 953 F.3d 582, 592 (9th Cir. 2020)…………………………………54

Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)………………………………55

**<u>DEFENDANT/COUNTERCLAIMANTS' MITCHELL TAYLOR BUTTON AND</u>**

**<u>DUSTY BUTTON'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS</u>**

**<u>SAGE HUMPHRIES, GINA MENICHINO, ROSEMARIE DEANGELO, DANIELLE</u>**

**<u>GUTIERREZ, JANE DOE 1 AND JANE DOE 2'S CLAIMS AGAINST DEFENDANTS</u>**

**<u>MITCHELL TAYLOR BUTTON AND DUSTY BUTTON</u>**

*Pro se* Defendants/Counterclaimants, Mitchell Taylor Button and Dusty Button, respectfully submit their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 ("Motion"). This Motion is made and based upon the papers, pleadings, and records on file herein, the Memorandum of Points and Authorities set forth below, the Declaration of Mitchell Taylor Button and the Declaration of Dusty Button attached hereto as Exhibit A ("Taylor Button's Decl."; and "Dusty Button's Decl."), and any Oral Argument presented to this Court.

Dated this 6th day of January, 2025,

_____

Mitchell Taylor Button

(*Pro se*)

_____

Dusty Button

(*Pro se*)

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Desperate for their two minutes of fame in the midst of the MeToo and Cancel Culture movements, the women in this litigation *immediately* took the opportunity to garner mass media attention from *anyone* who would pay them attention, including *every social media platform[1]*, major news network and press who would publish their false accusations including but not limited to the New York Times[2], Vogue Magazine, Cosmopolitan Magazine, the Washington Post, CNN, Fox News, the Daily Mail, Boston Magazine, Boston Globe and other various well-known publishing companies and media outlets including television interviews with networks such as Good Morning America[3], to *completely defame and destroy* the lives of the Defendants *prior* to them even being served in order to gain an unfair advantage in litigation and to bias *any* potential juror; this led to the Defendants losing their counsel, their home, careers, reputations, bank accounts, assets and any ability to generate money at all, much less to fund their litigation, rendering them "*pro se*" against the largest and **most corrupt** law firm in the country… Boies Schiller & Flexner. It has been nearly two years since the Buttons have been able to keep the Plaintiffs' focus on their own

---

[1] Three months prior to Plaintiffs filing this lawsuit, on May 13th, 2021, Ms. Humphries conspired with her friends Hannah Stolrow and Madison Breshears, (@realworldballerina), to defame Defendants; Defendants hired Marc Randazza to file a defamation suit but did not know the true identity of the account @realworldballerina and before Defendants could file suit, this lawsuit was filed; Exhibit 16; Defendants filed lawsuits against Ms. Breshears - Southern District Court of New York – 1:24-cv-03757-MKV and Ms. Stolrow - Southern District Court of California and Ms. Humphries' parents and "therapist", 8:24-cv-01730-JVS-DFM.

[2] Plaintiffs and their counsel published interviews prior to the Defendants even being served or even having knowledge of this litigation as they unethically played to the media, to ensure bias in the public opinion and in the Court room as it undoubtedly prejudiced Defendants by swaying the opinion of any potential juror. Plaintiffs completely destroyed the Defendants' livelihoods, careers, reputations and any ability to work due to the horrendous (false) allegations attached to their name in a defamatory global media campaign against them. Defendants are suing the Plaintiffs' attorneys for defamation, conspiracy, fraud and other claims – Button et al v. McCawley (Sigrid McCawley), 0:24-cv-60911-DSL Southern District Court of Florida and Button et al v. the New York Times Company – (Sabina Mariella and Lindsey Ruff), 1:24-cv-05888-MKV in the Southern District Court of New York.

[3] See generally, ECF No. 191, 231, 241, 319,

claims and instead, they have been litigating against the attorneys from BSF, their manipulative tactics, the concealment of Ms. Humphries' and Daryl Katz's sexual relationship[4], (which resulted in the Defendants' home being broken into and a nineteen year felon threatening their lives to protect Daryl Katz[5], stating to "drop the claims against Katz, or else", resulting in the FBI contacting the Defendants regarding Katz and Pellicano), false accusations that Defendants stole[6] Sage Humphries' iPhone and data, (which BSF tried to convince the Court was stolen in order to make it inadmissible, as they have done in other cases)[7], and YouTube videos which contained evidence exposing their clients as frauds, but which the Defendants did not create[8]. The Plaintiffs and their counsel have gotten away with everything, they even convinced this Court to sanction the Defendants for "violating" a Massachusetts Court Order prior to that Court ordering that they in fact, ***did not violate*** that order at all but only *after this Court ordered the Defendants to destroy the data the Plaintiffs convinced this Court was stolen* prior to their own client admitting it was not and that the only reason for the abuse prevention orders were to conceal her prostitution with Daryl Katz as she

---

[4] It should be noted that this Court sealed important documents pertaining to Daryl Katz prior to Defendants even replying to that Motion, the Court later stated it never did that and later stated that Daryl Katz was "gone" from this litigation and could not be discussed in the depositions, prejudicing the Defendants as the sole reason, (as admitted by Sage Humphries) for the restraining orders was to conceal her prostitution with Daryl Katz.
[5] Exhibit 28
[6] McCawley and counsel stated the Defendants "stole" the data exposing Sage Humphries and her relationship with Defendants, including that she was their ex-girlfriend which was intentionally omitted from the complaint to create a different narrative, one with a more shocking headline; the Plaintiffs later "backtracked" their statement after multiple arguments and motions, and then rehashed the argument which had already been defeated by their own client in her deposition; in the Massachusetts Appeals Court as Sabina Mariella stated the Defendants once again, "stole" their clients' data, knowing they did not however, it is unsurprising as Sabina Mariella also stated in that same hearing that "lying to the Court is not fraud on the Court". Exhibit 13, 25
[7] See ECF No. 275 / Exhibit 25 pg. 9
[8] Humphries filed contempt of Court in Boston and made the same argument, that the Defendants "stole" her data and made YouTube videos about her and others which contained evidence against her but the Court ruled there was no violation and that the YouTube videos did not even contain any photos or videos from the data she admittedly uploaded herself onto the Defendants hard drive in 2017. The Court ruled the Defendants were not in contempt, ECF No. 104, 109, 112; however, it was too late and this Court had already "believed" the attorneys from BSF that the data was stolen and that the Defendants should destroy that evidence. *This* Court found also found the YouTube videos to be "harassing" and intimidating though they only contained evidence proving the Plaintiffs to be the liars they are – Exhibit 39

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

stated she was afraid the Defendants would "blackmail her"[9]. Plaintiffs *have not even litigated* the allegations in their complaint since the Defendants filed their first counterclaim; Plaintiff Humphries even "abruptly ended" her interview when the Defendants' counterclaim was filed and BSF PR person Dawn Schneider[10] contacted Gretchen Voss, (who was interviewing Ms. Humphries), to state they were not happy with the direction of the interview[11]. From that moment, the Plaintiffs' only mission was to convince the Court that data proving the Plaintiffs were liars, "**must be destroyed**" and to *only* litigate matters which distract this court from the fraud they have committed. This Court has allowed that weaponization *even after* Defendants proved this litigation was a conspiracy[12] against them from the onset, as it ***chose not to*** believe the Defendants' **evidence** over the word of the attorneys from BSF[13]. *Pro se* Defendants have persevered through it all; and that is, because the Defendants have the one thing on their side the Plaintiffs do not, and that is the **truth**. Plaintiffs' goal was simple – gain as much attention as possible in hopes that the Buttons would be cancelled. It worked. Now, *four years later*, the attention is on the lies of the Plaintiffs and the corruption of the BSF firm as the Buttons have never changed their story from the onset, and have proven that they have been telling the truth all along. Every single allegation of sexual assault against them has been orchestrated by the Plaintiffs, Micah and Michael Humphries, Gianna Zinovoy and Caitlin Grooms, (non-parties from the same dance studio, Centerstage, bitter that Mr. Button left the studio in 2010, never spoke to them again and married the woman they all wished to be). These non-parties also filed false police reports with the Hillsborough County

---

[9] Exhibit 14
[10] Dawn Schneider is also being sued by the Defendants in the Southern District Court of New York – 1:24-cv-05888-MKV and is known for her unethical tactics – seen here: article pillow talk
[11] Exhibit 45
[12] ECF No. 350; 276,279, 290, 320, 363, 364, 365
[13] The Court previously stated that it "doubts an attorney from Boies Schiller would stand up in the Court room and lie to [her] – see Aug 1st, 2023 hr. tr. Pg. 56

Sheriff's Dept at the same time as the Plaintiffs, and at the same time Ms. Humphries received her permanent abuse prevention orders, in order to "verify" their complaint by stating police reports were merely "filed", as part of their plan to garner fame and extort the Buttons out of money. These Plaintiffs *have admittedly* stalked and harassed Defendants **for years** without the Defendants *ever even knowing*. Defendants refused to meet any of the Plaintiffs' demands and remain steadfast in exposing these people for who they really are, con artists and criminal cohorts. At their depositions, each Plaintiff *admitted* they were not stopped by either Defendant from coming forward. Plaintiffs from Centerstage admitted they had not even spoken to Mr. Button since the latest 2010 and in some cases 2007[14], further proving their tolling **must not be allowed**. Plaintiffs also stated they were upset that Mr. Button either, "blocked them", "disappeared", "never spoke to them again", and/or "married Dusty"[15], further proving the Plaintiffs' allegations are fabricated stories out of spite. ***Ms. Menichino even admitted*** to being obsessed with Mr. Button on numerous occasions including that she stated in her session with expert witness, Chitra Raghavan, that she believed she, (at the age of thirteen), and Mr. Button were "in love" and she was "devastated" when he left. This is just one example of Ms. Menichino's delusional fantasy and that these fabricated stories of abuse were solely meant for the press. ***Ms. Humphries*** is caught in a web so tangled she cannot escape it and her attorneys, are aiding her; as seen further herein, *all of the evidence* against Ms. Humphries proves that the fraud she committed in 2017 to obtain abuse prevention orders against the Defendants was meant to force the Defendants to destroy the evidence against her as they mistakenly believed the Defendants erased any history of their relationship with Ms. Humphries; they did not and were never ordered to do so. Ms. Humphries and her parents,

---

[14] Exhibits from ECF 231 and Supplements 241/ 319
[15] See ECF No. 34, 35

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

mistakenly believed the order of the Boston Municipal Court and stated Defendants were meant to destroy the evidence against her, which is why they were so confident in filing this lawsuit under the false belief that the Defendants would not be able to defend themselves. The Plaintiffs have used those orders as grounds to state that "another Court" found reason that Ms. Humphries needed abuse prevention orders and that her allegations "must be true" if "another court" granted her protection from the Defendants[16].What they did not foresee was the Defendants' filing a motion to vacate those orders due to fraud on the court[17], fraud the Defendants were unaware of at the time the orders were granted, (ex-parte, without the ability to defend themselves against the lies that were told to the Court in order to obtain them); in fact, during the Oral Argument to vacate those orders on October 8th, 2024, the Justices even asked, "how are [Ms. Humphries and counsel], using the orders against [Dusty and Taylor] in Nevada, and Ms. Button answered, "they are using this to state that her allegations, "must be true"" etc[18]. *JD1*[19] is the outlier, a mentally unwell and delusional woman the **Defendants have never met**. At her first deposition[20], she stated, "I don't recall" 157 times, "I do not

---

[16]Plaintiffs continuously cite the Boston Municipal Court Orders that the Judge "fully credited" Sage Humphries' testimony though the Court neglected to view any exhibits presented by the Defendants The reasons Ms. Humphries' testimony was "fully credited" was because none of the exhibits were viewed by the Judge, and the attorney for Ms. Humphries lied to the Court on numerous occasions; see generally ECF No. 372 the Defendants are suing Ms. Melcher in the District Court of Massachusetts for fraud and have already filed a BAR complaint against her in Massachusetts. Ironically, when the Defendants subpoenaed Ms. Melcher, as it is proven that Sage Humphries was forced to see her (see exhibit forced to see an attorney), and the attorney-client privilege was breached by Sage Humphries' parents – furthermore, upon subpoenaing Ms. Melcher, the Defendants were shocked that she claimed privilege with Jane Doe 1, the woman they have never met but worked at the same hair salon in Boston which Sage Humphries was sponsored by; the Defendants no know that Jane Doe1 could have only received Sage Humprhies' affidavit from 2017 Boston Municpal Court Proceedings from Maura Melcher prior to plagiarizing it as the allegations are so eerily similar but factually impossible that privilege between Sage Humphries' Boston attorney and a woman the Defendants have never met only makes logical sense that the conspiracy against them regarding this woman is true and that Ms. Melcher has played a large role in this fraud Jane Doe 1 committed agains them.
[17] Exhibits 1-5
[18] Exhibit 13
[19] JD1 = Jane Doe 1
[20] Defendants are prevented from even obtaining JD1's second deposition transcript after paying for it prior to her deposition

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

recall" 4 times, "I don't know" 25 times, "I do not know" 1 time, "I don't remember" 13

times and "I won't answer" twice. When JD1 did provide specific details, her testimony

proved to be *completely fabricated* without any evidentiary support[21], (as there can be none).

Specifically, JD1 stated in both depositions that Katherine Thonis[22], (her "therapist"), would

be able to corroborate her story since she was the "first person she told"[23] of the alleged rape

however, when Defendants called Ms. Thonis on the phone, (a legally recorded call as the

Plaintiffs are in a one-party consent state), Ms. Thonis stated she had "no idea what the

Defendants were talking about". JD1 stated in both of her depositions that she still continues

to have sessions with Ms. Thonis[24], but Ms. Thonis stated her sessions with JD1 were, "a long

time ago". Defendants submitted this call to the Court and twice, (*even after* the Court ruled

the Defendants were not harassing any witnesses, as the Plaintiffs claimed), the Plaintiffs

attempted to convince the Court that Defendants' phone calls to witnesses were intimidating

and criminal. The Court denied their allegations and Ms. McCawley doubled down in open

court by stating, "but if you listen to the recorded call"…, (as if she could convince the Court

to change their decision), the Court ultimately ruled that Defendants were appropriate and

"ended the call amicably". Not only is JD1's complaint a literal factual impossibility, but JD1

has failed to produce any evidence to support her claims, (she cannot), and even her own

word has proven to be inconsistent and outright perjurious including because the Defendants

have never met Jane Doe 1. The *only* therapy record JD1 even produced which states she was

"sexually assaulted at age 15", was from a therapy session just one week after the New York

---

[21] See generally ECF No. 185, 192 and Exhibit 20
[22] Defendants are suing Ms. Thonis in the District Court of New Hampshire for negligence, knowing her client was mentally unstable and that she in fact, never met the Defendants – see case 1:24-cv-00220-SM-AJ
[23] Deposition of JD1 – Exhibit 20
[24] See Exhibit 16

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Times article was published[25]; and states a year which is *not even* the year she alleged she was raped. Summary judgment is proper and should be granted in favor of the Buttons on all of the Plaintiffs' claims in order to finally put this disgusting weaponization of the justice system to an end and to allow to restore the public's faith in the justice system. The Plaintiffs played a "numbers" game with women who were hungry for fame and fortune, knowing their false allegations would be more believable if there were more of them, which is why the Plaintiffs were (admittedly), coerced[26] into litigation months after each other, rendering four complaints. Attorneys from BSF contacted each and every Plaintiff aside from JD1 to coerce them into joining the lawsuit as the women from Centerstage have been conspiring against Mr. Button for over a decade, *without the Defendants even knowing*. Plaintiffs' stories have changed so many times, they do not remember their own lies including that they *do not even know* what is written in the complaint. Plaintiffs are not invested in this lawsuit and in fact, in each of the Plaintiffs depositions, Mr. Button asked the Plaintiffs if they would be willing to file a criminal police report[27] against him immediately after the deposition[28], and they stated they "trusted their attorneys", proving their desire for fortune.

The Plaintiffs' claims are *so clearly based on fraudulent activity* that no reasonable jury could find in their favor, and this court should dismiss this case without going

---

[25] Exhibit 11
[26] Exhibit 27
[27] Defendants have spoken to the Hillsborough County Sherriff's Department to press charges against these women from Florida including the two non-parties who filed false police reports against Taylor Button, all with provenly false allegations and have spoken to the Sergeant of the HCSO Special Victims Section, Bradford Sutter and sent the Plaintiffs' and non-parties' reports from all years and are currently speaking with the State Attorney to get justice for these false allegations. Though Defendants are speaking with them, the Defendants make it known to this Court that they are victims here, not the Plaintiffs. The Defendants even had to ask permission from the Court to share the deposition transcripts to law enforcement, (ECF No), to prove the contradicting allegations and perjury; the Court *shockingly* denied the request and stated they needed permission from BSF to provide those transcripts to law enforcement; the *only* reason the Defendants even filed the motion with the Court was to avoid being sanctioned, again, by this Court in merely seeking justice for these false allegations which destroyed their lives.
[28] See exhibits 6-11

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

to trial because the fraudulent nature of the claims is legally undeniable. Courts often emphasize the high burden of proof required to establish fraud, typically requiring "clear and convincing evidence," which can make it difficult to survive a summary judgment motion when the evidence is weak or ambiguous; *this case* meets the high burden of proving that the Plaintiffs' have committed fraud on the Court and that none of their allegations ever occurred. The Plaintiffs have ***no evidence*** to corroborate their claims and in fact, *do not even know* what has been produced in discovery, what their attorneys have provided in discovery on their behalf, (in some cases blank documents[29] to fulfill discovery obligations), what the Defendants requested for production, how much they are suing the Defendants for, the consequence for malicious prosecution, what the Counterclaim against them says, what their own complaints say, consequence to filing false police reports, have not heard any of the recorded phone calls with witnesses and other discovery they are completely shielded from by BSF in order for them to not understand the gravity of what they have done. The Court should note that the fourteen hours of deposition which the Defendants submitted to, it was made clear that the Plaintiffs and their counsel had no intention of discussing any of their claims, as they spent all fourteen hours discussing irrelevant topics in order to strategically dance around the fact that any question asked about their allegations would only hurt their position[30].

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED**

---

[29] ECF No. 275, 231, 241, 319, 185, 192 and Exhibit 11

[30] As an aside, The Plaintiffs' counsel allowed their clients to "observe" Defendant Taylor Button's deposition and the conduct was absolutely unacceptable, consisting of laughing by the women, sharing essential oils, texting back and forth "under the table" and talking during the Defendants' deposition which entirely frustrated the deposition[30]; even Sabina Mariella laughed during the deposition which is entirely inappropriate, (see deposition, are you laughing?); also, JD1 was the only Plaintiff who did not appear in New York to "observe" Mr. Button's deposition. The Defendant even corrected Ms. McCawley on a Court order she attempted to manipulate. it is almost certain that the Plaintiffs will *not even use* the Defendants' deposition transcripts in their Summary Judgment motion because those depositions hurt their case[30].

Defendants respectfully ask the Court to grant their Motion for Summary Judgment as the Plaintiffs' claims fail as a matter of law for multiple reasons. *First,* all of the Plaintiffs' claims are time-barred[31] and **must not be tolled.** Each and every Plaintiff admitted that there was no extraordinary circumstance that prevented them from filing this lawsuit and in the cases of Ms. Gutierrez, Ms. Menichino, Ms. DeAngelo and JD2[32], they each admitted they had not even spoken to Mr. Button since the latest, 2010, (sixteen years ago today and nearly twelve years prior to the filing of this complaint). Regarding Ms. Humphries, it is undisputed that she has committed fraud on the Court in two states, waived monetary damages when obtaining fraudulent abuse prevention orders against the Defendants in 2017, made permanent in 2018 through fraud and forged documents and did not speak to the Defendants after July 18th, 2017. The **Defendants have never met JD1** and therefore, could not have prevented her from coming forward. After nearly four years, none of the Plaintiffs provided evidence or testimony which corroborates their claims that an extraordinary circumstance stood in their way and in some instances, the Plaintiffs did come forward in 2018 by filing false police reports which were all cleared and unfounded, thereby proving that they were in fact, not afraid to come forward and that neither Defendant prevented them from

---

[31] Defendants analyze the state claims under Nevada law for the purposes of this Motion. However, Defendants maintain that Plaintiffs cannot establish personal jurisdiction over Defendants in this Court as neither Defendant in this matter are Nevada residents and never were, and hence Nevada law does not apply to the state claims. The Defendants have always been residents of South Carolina and therefore, Defendants also maintain that Plaintiffs improperly brought this matter in this venue. See *Vacation Village, Inc. v. Clark County, 497 F.3d 902, 913 (9th Cir. 2007).* Defendants' position is further addressed in their Motion to Dismiss the Third Amended Complaint for Lack of Personal Jurisdiction and for Improper Venue. The Court denied the Defendants' Motion to Dismiss based on lack of personal jurisdiction and improper venue citing the argument was waived however, on Aug. 1st, 2023 Honorable Judge Youchah stated to the Defendants that they must reply to the Third Amended Complaint as a "brand new complaint" (see Aug. 1st, 2023 hr. tr. Pg); therefore, although the Defendants were represented by counsel in the previous Motion to Dismiss, the Defendants appropriately responded to Plaintiffs' Third Amended Complaint with a "brand new" response to that "brand new complaint" which contained the argument regarding Lack of Jurisdiction and Improper Venue. Additionally, Sage Humphries' parents were dismissed from this action as third-party Defendants on February 2nd, 2023 for the same lack of personal jurisdiction; Defendants maintain that this argument applies as they have never been residents of Nevada ECF No. 231
[32] JD2 = Jane Doe 2

doing so. *Second*, the factual merits of Plaintiffs' claims fail as a matter of law due to fraudulent misrepresentations; after nearly four years, not a single Plaintiffs has provided any evidence to support their claims and in fact, the Plaintiffs have contradicted their own claims. There is no issue of fact that Defendants ***did not rape*** any of these women or sexually assault them. Moreover, there is no evidence that the Plaintiffs' claims for intentional infliction of emotional distress were caused by Defendants or that Plaintiffs actually suffered damages as a result. The only medical records produced by the Plaintiffs begin in do not state any of the allegations in the complaint. Plaintiffs have actually used other instances of abuse, adultery, depression and self-harm from others and blamed the Defendants. There is not one shred of evidence proving the Plaintiffs claims and should the Court grant any of the Plaintiffs' requests for relief, the Court would be granting that relief on perjurious statements rather than factual material evidence provided by the Defendants. In fact, *every* Plaintiff has had an alleged abusive relationship with a partner that is entirely unrelated to the Defendants and in some cases, there were even domestic violence reports filed with law enforcement as JD1 stated her ex-boyfriend "slammed her head into a wall"[33]; not a single Plaintiff filed any lawsuit against those allegedly abusive partners proving this can only be described as an extortive money grab and desperate attempt at garnering the fame the Plaintiffs desired but could not achieve on their own. *Third*, Plaintiffs and their counsel committed fraud on the Court, lied to law enforcement and committed the criminal act of perjury by *knowingly* filing false police incident reports, providing law enforcement with *knowingly* false testimony[34], and

---

[33] See Plaintiffs' second deposition transcript of JD1 at Exhibit 11 and therapy records of Plaintiffs admitting they were abused by other parties but not the Defendants, yet, none of the Plaintiffs filed a lawsuit against those abusive parties, only Defendants, who have never abused any of these women at all.

[34] Defendants have contacted ALL law enforcement agencies associated with the Plaintiffs' false incident reports and have in fact, contacted various other departments to press charges against the Plaintiffs and other third parties for knowingly filing false police incident reports and using those reports as leverage to state reports "were filed", while simultaneously withholding the contents of those reports in order to obtain abuse prevention orders

lying under oath. Plaintiffs provided *nothing* in discovery to support their false claims and instead, provided conclusory statements and hearsay from third-parties who also committed crimes against them. This Court previously stated Defendants' evidence "could question Plaintiffs' credibility", "impeach their testimony" and was "better suited for summary judgments". The entirety of this lawsuit is founded on fraud committed by Ms. Humphries. These women deserve to be prosecuted for the crimes they committed and for wasting this Court's resources for *nearly four years*, deterring real victims from coming forward. There is no cause of action asserted by the Plaintiffs which will prevail at trial. Plaintiffs should be charged for perjury and obstruction of justice in this Court upon the conclusion of this case.

## **STATEMENT OF FACTS**

I.    Sage Humphries

Sage Humphries has perjured herself for seven years[35] after initiating an open consensual dating relationship with the Defendants, (who had never been in such a relationship, and never were again), in 2017. The relationship lasted for four months, (two of which were long distance after Ms. Humphries was kidnapped and trafficked back to her parents' home) by her parents. She destroyed the lives of Defendants who, at the time of the relationship, did nothing more than love and care for her. As unconventional as the relationship was, Ms. Humphries was never abused or harmed in any way[36]. Defendants, on

---

against them in 2017 and 2018 which is now under advisement after the Defendants filed to vacate those orders, after receiving discovery in this litigation which proved that fraud was committed. The Plaintiffs use those abuse prevention orders which obtained under false pretenses, as a foundation here to convince the Court that the allegations against them "must be true" because a Court granted abuse prevention orders; as will be stated further herein, those orders were admittedly obtained to conceal evidence of Sage Humphries' sexual relationship with Daryl Katz, (information which Defendants never knew they had), as Ms. Humphries was afraid the Defendants, "would blackmail" her – see Exhibit 28.

[35] See Exhibits 1 and 5, Massachusetts Appeal Brief and Volume 4 of Exhibits; the Defendants cannot fit all of their argument regarding Sage Humphries due to page limits and respectfully ask the Court to view Exhibits 1 through 5 and 6, to fully examine Ms. Humphries' fraud on the Court and lies to law enforcement.

[36] Ms. Humphries even stated she was not forced, threatened or under duress during her relationship.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

the other hand, were abused by Ms. Humphries as she used them and made them believe she truly cared while simultaneously, scheming against. Every part of her testimony has been refuted by her own contradictions[37] and Defendants' evidence. Ms. Humphries must be held accountable and the Court should grant Defendants' summary judgment against her.

      a.   <u>Sage Humphries is the Ex-Girlfriend of Defendants, Dusty and Taylor Button, a Substantiated Foundational and Imperative Fact that She Admitted Was Intentionally and Strategically Omitted in All Three of Amended Complaints</u>

Sage Humphries is admittedly Defendants' ex-girlfriend, an imperative fact intentionally omitted from her complaint[38]. The actions and statements made by Ms. Humphries over the last seven years, (particularly in the last four), proves Ms. Humphries is a pathological liar. Plaintiff and her counsel lied about her age, her relationship with Defendants and the events which took place during that relationship including but not limited to fabricating crimes against them which the Defendants never committed such as, stalking her[39], selling illegal firearms[40], possessing IED's, hand grenades and "over 50 guns"[41], raping her[42], kidnapping her and even threatening to kill her. Since these allegations were made, every single one of them has been proven false. Ms. Humphries has admitted to stalking the Defendants at their home in California[43] for the purpose of stating she "saw them" in 2020 and "had a panic attack"; only for Defendants to prove Ms. Humphries a liar again, as they

---

[37] See ECF No. 221, 192
[38] Exhibits 1-6
[39] See Massachusetts Appeals Brief Exhibit 4, Vol. III pgs. 98,99; Exhibit 5, Vol IV. Pgs. 80-91; Exhibit 17 – phone call with non-party Jordan Brown regarding the use of her sister's name who Sage stated Defendants "used" to stalk her; exhibit 5 pg. 167 at 7 (2018 affidavit of Sage Humphries, unsigned, unwitnessed).
[40] See pgs. 32 and 33 of Exhibit 1 (Mass. Appeals Brief); Exhibit 5 pgs. 87, 100-104, 88-91 and Exhibit 6 "Sage"
[41] See Exhibit 5; pg. 176, false 911 call exhibit 18, Exhibit 1 pg. 11 and 12 and Exhibit 5 pg. 17 section D
[42] Exhibit 5 pg. 17 Section I, "Did **not** cause me to engage in sexual relations by force, threat or duress" (Massachusetts abuse prevention orders)
[43] Exhibit 22

were not even in town, (six hours away), for a commercial photo shoot for Pelican on the date she stated she saw them. The narrative Ms. Humphries created could not be further from the truth, as the Court has seen. Ms. Humphries is a devious, sexually charged woman, with an agenda; who for a brief moment in time, strayed from that agenda until she was forced back into her old ways, made to believe the relationship with the Defendants was something other than what it truly was[44]. Ms. Humphries and her counsel intentionally withheld the truth because Ms. Humphries believed the Massachusetts Court had ordered the Buttons to erase any history of her relationship[45] with them, when they did not[46].

b. <u>Sage Humphries Signed a Fraudulent Restraining Order Against Her Will in Order to Secure Her Freedom from the Wrongful Imprisonment of Her Parents Who Wrote the Order After Kidnapping Her and Trafficking Her to California Against Her Will Where They Forced Her to End the Consensual Relationship that She Created with Defendants</u>

Ms. Humphries continuously professed her love for both Defendants[47] *even after* the relationship abruptly ended when Ms. Humphries' parents staged her kidnapping from Boston, MA[48], convinced the Boston Ballet to fire Ms. Button, (after creating a false narrative of abuse)[49], took her driver's license, phone, bank account and car keys away[50] and trafficked her back to California. Ms. Humphries continued to pursue the Defendants by

---

[44] See generally Exhibit 6
[45] See Exhibit 14.1; Sigrid McCawley letter addressed to Defendants' former counsel, stating Defendants were ordered by the Court to "destroy" evidence; see exhibit 2, Vol. 2 pg. 15 sections I and G
[46] See generally Exhibit 3; pgs. 4-108 (transcript of Judge Lyons in Boston Municipal Court) and pgs. 39,40
[47] See ECF No. 231 / 234 (redacted), supplement, 2nd supplement and exhibit 6
[48] See Exhibit 12, Exhibit 5, Exhibit 1, ECF No. 231 Exhibits 1-31
[49] Exhibit 12
[50] See exhibit 6 pg. 33

secretly messaging[51] from her parents'[52] phones and begging the Defendants for help[53] and to call the police[54]. Following Ms. Humphries' kidnapping, she proceeded to pursue the Defendants by using her younger brother's phone[55] via Snapchat while the Defendants were in Australia[56]. Throughout the summer of 2017 she played both sides, to appease her parents while simultaneously telling the Defendants she was desperate for help and to "come save her"[57]. The Plaintiff warned the Defendants her parents were "recruiting people from their past", that she was going to fake a break up with them to "make them believe" she ended the relationship but that she "wants [taylor and dusty]" and to "not believe a word [she] said" on the voicemail she would leave regarding the "fake break up"[58]. On July 10th, she did just that. Following the fake break up, Ms. Humphries still continued to speak to Defendants including by telling them that her parents were forcing her to sign restraining orders against them[59], and if she did not, she would not be allowed go back to Boston[60]. Ms. Humphries has made a slew of false accusations against the Defendants including on July 22nd, 2017, (just four days after her final message to Defendants, ending the relationship), she filed a false police report with the Orange County Sheriffs' Dept[61] which was concluded as unfounded based on the interview and contradicting statements of Sage, herself[62]. Following this report, Ms.

---

[51] See exhibit 1 pgs. 11-17
[52] See exhibit 6
[53] See exhibit 6
[54] Exhibit 5, Vol. 3 pgs. 36-40, 106-109, 127-138, 144-175 and ECF Nos 219, and Exhibit 4 pg. 116, Declaration of Rich Costa, Exhibit 6 and 21, Exhibit 15.1 phone call with Bryce Jackson Lee, 15.2 Call with Hannah Bettes, ECF No. 318 – Exhibit 4, 110 - 124
[55] See exhibit 3 pgs. 39 -41
[56] See ECF 219, 231, 241, 319 and exhibits, Exhibit 4 pgs. 127-139
[57] See exhibit 6, pgs 18, 21
[58] Exhibit 6 – pgs. 32-43 and Exhibit 19.1 (voicemail from Humphries "fake break up) and ECF No. 308 Ex. D
[59] Exhibit 6 – pgs. 28
[60] See exhibit 6 pg. 28 and 29, see exhibit 5 pg. 23, Boston Court transcript; and Exhibit 6 pg.
[61] See Exhibit 6 pg. 4
[62] See Deposition of Sage Humphries – exhibit 6 pg. 63 and 64 – see ECF 240 and 241 Defendants' Motion for Sanctions and Motion to Supplement ECF No. 231 – Exhibit 31

Humphries then filed abuse prevention orders, under false pretenses[63] and stated in her abuse prevention orders that she was never forced, threatened or under duress during her relationship with the Defendants, including during sexual relations. At the hearing in 2017, the Judge refused to look at any of the Defendants' exhibits and instead, relied on perjurious statements made by Humphries, further contradicted by her statements made four years later. Ms. Humphries intentionally withheld police reports from the Court which contradicted her testimony in prior years and forged documents including her 209A and supporting affidavits which were presented to the Court in 2017 and 2018 in order to secure a favorable outcome. Defendants were not given notice of the 2018 hearing and as a result, the Judge again, accredited her perjurious testimony and false allegations of stalking and selling illegal firearms in California, (all proven unfounded). If the withheld reports had been presented to the Court in 2017 and 2018, the outcomes of the decisions would certainly have been different as the reports show the true nature of events which took place. Were it not for Nevada discovery, Defendants would have never known the extent of the fraud committed by Sage. As stated, numerous times in the record, Ms. Humphries was never forced, threatened or under duress during the time of her relationship with Defendants[64] and her complaint is fraud.

   c.   Sage Humphries Knowingly Filed Over Eight Different False Police Reports, Which Were Withheld from The Massachusetts Court Hearings and District Court of Nevada Proceedings

   All of Sage Humphries' affidavits, testimony, false police reports and pleadings contradict each other. The Defendants had *no idea* that Ms. Humphries filed all of

---

[63] Exhibit 1 – Boston Appellate Court brief which describes and points to every statement made which was a lie under oath prior to her deposition by Sage Humphries including the corresponding exhibits to prevent this Court from viewing more than one exhibit twice and to make it easier to follow.
[64] Sage admitted this to be true; seen verbatim through ECF No. 355 exhibit A, ECF No. 333; 318 pgs 19-22

these false reports against them until this litigation discovery began and even received the

latest report, (which they found by calling the Somerville Police Department records

department) in December of 2024, which the Plaintiffs withheld. Defendants spoke to

Detective Sgt. Mike Perrone and Devin Schneider to receive these reports and continue

speaking to them to press charges against Ms. Humphries and her family for perjury and for

knowingly filing false police reports[65].

1. <u>Sage Humphries Lied About the Defendants Stalking Her in Order to</u>
   <u>Obtain Permanent Abuse Prevention Orders Ex-Parte in 2018, Which</u>
   <u>the Defendants Were Unaware of Until 2022 in this Proceeding</u>

As stated, *supra*, Ms. Humphries forged documents and committed fraud on

the court when providing them as evidence to obtain her permanent abuse prevention order in

2018 at an ex-parte hearing with the Defendants unable to defend themselves[66]. Within that

hearing she alleged stalking by a third-party, Kennedy Brown[67], that Defendants were selling

illegal firearms in California, and that there were "other victims" of the Defendants. Later,

Defendants discovered two of those "victims" Sage spoke of were Lena Mathews[68] and Juliet

Doherty, (former Plaintiff who voluntarily withdrew, just one day after the Defendants

requested her admissions) on February 24th, 2023. Sigrid McCawley and her associates used

Lena Mathews in their original complaint when they stated there were other "young girls" the

Defendants "victimized". The Defendants have never "victimized" anyone, and as seen

through Lena Mathews's messages with Defendants, Sage lied about the nature of the

relationship between them, (Lena Mathews was a child who assisted various teachers at a

---

[65] Exhibit 24
[66] See Exhibit 1 – pgs. 29,30 and Exhibit 3 pgs. 87-90 (transcript of the Boston Municipal Court)
[67] See Exhibit 17 – phone call with Kennedy Brown's sister
[68] Exhibit 23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

dance convention, Bella Moxi, which employed Dusty Button to teach ballet classes). Sage Humphries stated the nature of Lena's relationship with Defendants was described as "odd" by Lena's father, but as seen, Lena Mathews clearly stated, **"I had NO clue my name was being used in this way. Neither myself or my father have never said anything bad about either of you, especially concerning anything physically. Our relationship was completely professional, and I have always looked up to both of you. I'm so sorry you're being caught in these heinous lies. I would gladly go on record stating how our relationship was nothing but positive. [heart emoji]. Thank you for informing me of this."** Once again, Sage Humphries lied and her counsel aided her. Sigrid McCawley stated she did "hours of research" prior to filing this complaint but it only took one message from the Defendants to Lena to receive a response disproving Humphries and her co-plaintiffs' allegations, thereby rendering Defendants' Motion for Rule 11 Sanctions against the Plaintiffs warranted and they should be sanctioned for filing a false and frivolous complaint.

        2.  <u>Sage Humphries Knew the Defendants Never Possessed Firearms but Lied to the Court and to the Police to Obtain Permanent Abuse Prevention Orders Ex-Parte in 2018 and Which Resulted in the Defendants' Apartment Being Raided by Law Enforcement</u>

Sage Humphries knew the Defendants did not possess firearms. She played with the airsoft toys inside the Defendants' apartment and even did a photo shoot with them just two days prior to her kidnapping[69]. Ms. Humphries and her family called in a false 911 call to the Somerville Police Department[70] even though Sage Humphries was present when the Defendants placed the orders for the plastic toys, received them and built the room those

---

[69] See 45 generally
[70] See Exhibit 18 and 16 (Edsall Hilty) phone calls

toys were in, in February and March of 2017[71], which caused the Defendants' apartment to be raided. Ms. Humphries lied to the Court in Boston when Defendants were not present to defend themselves, as did her counsel[72], in order to obtain her permanent abuse prevention orders, which will undoubtedly be vacated in Defendants' favor, due to fraud on the Court[73].

3. <u>Sage Humphries Admitted the Restraining Orders Were Only to Prevent the Defendants from "Blackmailing" Her with the Screenshots She Forgot She Asked Defendants If She Could Willingly Upload on the Defendants' Hard Drive in 2017, Proving Her illegal Sexual Relations and Prostitution with Daryl Katz, Jared Longhitano and Other Powerful Men</u>

This litigation exists purely as a fraudulent and malicious measure deployed by Sage Humphries to preemptively disable Defendants from seeking criminal charges against her and Daryl Katz through legal misconduct and manipulation of the District Court of Nevada leading to a shocking Court Order demanding Defendants destroy the very data that they believe proves this complaint constitutes fraud on the Court and further disproves the claims within it. The Court has sealed any documents relating to Daryl Katz, even prior to Defendants' Reply[74] and prevented them from even asking Ms. Humphries about Daryl Katz in her deposition. The Defendants were in possession of screenshots of Ms. Humphries' illegal sexual prostitution with Daryl Katz, which she uploaded on their hard drive when upgrading phones in 2017 and forgot about until this litigation. Defendants never knew they

---

[71] See ECF No. 185 Rule 11 Sanctions against Jane Doe 1 filed under seal.
[72] See Exhibit 4 pgs. 100-104 and Exhibit 5 pgs. 80-88 – see Exhibit 25
[73] See Massachusetts Appeals Court Record 2023-P-1202
[74] See ECF No. 78

possessed such evidence and now, they have been penalized, harassed, stalked and threatened over this incriminating data rather than litigating the actual allegations of the Plaintiffs[75].

### d. The Massachusetts Appeal

Defendants' Appeal for their Motion to Vacate the abuse prevention orders in Massachusetts is under review. Oral Argument was held October 8th, 2023 where Ms. Mariella argued against Defendant Dusty Button[76]. This ruling will undoubtedly end in the Defendants' favor including because the Court recognized that the abuse prevention orders were granted on false testimony, false police reports, (which were withheld from the Court because they were all unfounded), and an ex-parte hearing which Defendants were not present for in 2018, where Sage Humphries stated Defendants were selling illegal firearms in California and that they had a third-party stalk her. The Justices even asked Ms. Mariella, "hypothetically, what remedy does one have if they discover evidence of fraud five years later", and Ms. Mariella tried to avoid answering the question. Defendants intend to supplement this Motion with the Opinion of that Court, available February 15th, 2024.

### e. Sage Humphries Stalked the Defendants in August of 2020

As an aside, Sage Humphries violated her own abuse prevention order in 2020 by stalking the Defendants in California at their home address, 7950 West Sunset Blvd. Ms. Humphries already proved that she previously stalked the Defendants by providing the Boston Municipal Court the Defendants address at the 2018 permanent abuse prevention order hearing, (that they had no notice of and that was held ex-parte), Ms. Humphries admitted[77] in

---

[75] See Exhibit 28 and 25; Exhibit 1 pgs. 70-76
[76] The Defendants are waiting for the Boston Appellate Court transcript but have provided the video recording as Exhibit 13 provided on a thumb drive to the Court. Ms. Mariella replaced the Plaintiff's attorney Maura Melcher after the Defendants were successful on February 22nd, 2023, that they did not violate any Court Order and Sage Humphries' Motion for Contempt of Court was Denied
[77] See generally ECF No. 275 Defendants' reply to ECF No. 271 pgs. 10,11 and exhibit A – also see exhibit 22

her deposition that she went with her boyfriend, Zack Page[78], to the only Indian restaurant on Sunset Blvd, knowing she might see the Defendants. The restaurant was literally inside the Defendants' apartment building as seen in exhibits. The Plaintiff then lied and stated, "I was eating lunch with my boyfriend in West Hollywood, and you had stopped at a traffic light, and I had a panic attack."[79] As proven, the Defendants were not even in Los Angeles on this date, (August 7th, 2020) as Ms. Humphries provided a receipt proving Zack Page paid for lunch at this restaurant after the Defendants compelled the Plaintiffs for it, (see receipt in Exhibit 22 which states Aug. 7th, 2020 "Flavor of India). The Plaintiff has never been afraid of the Defendants because they never gave her a reason to be. Ms. Humphries chose the only restaurant she knew was located in Defendants' apartment building, of all the restaurants in West Hollywood; and in fact, this was the same month that Ms. Humphries "saw the Epstein documentary and called Sigrid McCawley", to file this lawsuit against the Defendants, and the same summer Ms. Menichino was invited to the Humphries' home in Long Beach, CA[80].

      f.  <u>Sage Humphries' Nevada Complaint</u>

      Sage Humphries' Nevada Complaint is manufactured and fraudulent. The Defendants never harmed Ms. Humphries and her fraudulent abuse prevention orders granted under false pretenses with perjurious testimony, which the Plaintiffs' will say was "fully credited", is the foundation of this conspiracy against the Defendants[81]. Defendants have proven that Ms. Humphries' complaint is an outright lie and a disgrace to true victims of abuse. Defendants ask the Court to grant their summary judgment against Ms. Humphries.

---

[78] See exhibit 45 – anonymous email received by Defendants about Zach Page and Ms. Humphries, proving her pattern of prostitution, just as she did with Daryl Katz which this Court has sealed from the public.
[79] Deposition of Sage Humphries – seen in Exhibit 22 pgs. 1-4
[80] See Deposition of Gina Menichino in Exhibit 7, https://www.bostonmagazine.com/news/2022/08/02/ballet-scandal-boston/
[81] See particularly ECF No. 219, 231, 234, 240, 243 333, 275, 376, 381 and Exhibits 1-5, and Exhibit 6

II.    <u>Gina Menichino</u>

Gina Menichino was recruited by Sage Humphries, her parents and non-party, RJ Higton[82], (Sage Humphries' brother's best friend) and former employee of the same company run by Laura Button, Dusty Button's mother. Mr. Higton was with Sage Humphries at non-party, Hannah Stolrow's house when Sage Humphries was there for a party in the summer of 2017, in California, after her parents kidnapped and trafficked her back to California. Mr. Higton was on facetime with Ms. Humphries during the forementioned party when Ms. Humphries called the Defendants from her younger brother's phone while they were in Australia[83]. Ms. Menichino visted the Humphries' home in California, prior to the filing of this lawsuit. Ms. Menichino's deposition was obstructed by the drugs she took prior to the deposition and apart from her near incoherent testimony, she only proved her perjury.

a.    <u>Gina Menichino Filed a False Police Incident Report in 2018</u>

On May 4, 2018, Ms. Menichino filed a false police incident report with the Hillsborough County Sheriff's Department[84], recruiting Ms. Gutierrez and JD2, who also made statements in her report. On September 25th, 2023, Defendants deposed Ms. Menichino where she stated under oath that she filed a police report in 2018 which resulted in a **cleared by exception** report from the Hillsborough County Sherriff's Dept. Following her disclosure, she was *not diligent* in pursuing her claims timely, as she waited three years to file her claim, **the day before her statutes expired**, on July 28th, 2021.

---

[82] See Deposition of Gina and Sage with RJ and Defendants' Motion to Reconsider Motion to Compel ECF No. 320 – pgs. 11-19 and 320 (as a whole)
[83] Exhibits 1-5; Exhibit 30 filed with the Court
[84] See generally, Exhibit 31 (Hillsborough County Police Reports / Communications between Defendants and HCSO regarding pressing charges against the Plaintiffs in Florida for false police reports

Deposition of Ms. Menichino: **Ms. Menichino**: "Well, I first did a case in 2018. **Mr. Button**: "Okay. So you felt comfortable coming forward in 2018?" **Ms. Menichino**: "Yes." And; **Mr. Button**: "Gina, you did file your Complaint on the last day that would be possible for that statute to expire. Was this a coincidence or did you strategically plan to do so?" **Ms. Ruff**: "I'm instructing my client not to answer". Ms. Menichino was not prevented from disclosing her allegations to the police in 2018, nor was she prevented from asserting her claims in any year prior to 2018 or after her disclosure to the police. Ms. Menichino admitted the reason she was *not diligent* in filing her claims was not due to any extraordinary circumstance caused by Mr. Button. Ms. Menichino and her counsel withheld that she filed a report in 2018 to deceive the Court in believing Ms. Menichino never sought legal remedy prior to 2021. The Plaintiff **did not** act diligently in bringing her claims. She reported the allegations to the police in May of 2018 yet, did not seek counsel or assert her claims until three and a half years later and **after meeting Sage Humphries.** On August 27th, 2023 Plaintiffs' counsel produced an expert report and psychological analysis of each Plaintiff whereas, Ms. Menichino stated that in 2010, Mr. Button "disappeared" and moved to England to be with Ms. Button, (Raghavan Expert Report), further proving Defendant had **no contact** with Ms. Menichino after 2010 to prevent her from filing her claims[85]. Ms. Menichino failed to demonstrate that an extraordinary circumstance prevented her from filing her complaint prior to 2021 and in fact, proved the opposite by admitting there was disclosure to the police three years *prior* proving she was *not diligent* in pursuing her claims. Her allegations are fraudulent and the *strategic* delay in filing her claims is equally <u>unwarranted.</u>[86]

---

[85] See Exhibit 34, 35
[86] Further false testimony made by Ms. Menichino, to the Hillsborough Country Sherriff's Department in 2018 include[86]: The Defendants have since spoken to the HCSO on occasions and are still pursuing charges against these women, navigating statute of limitations in Florida for knowingly filing false police reports, (as

b. <u>Evidence Proves that Ms. Menichino Had a Delusional Obsession with Mr. Button</u>

On July 27th, 2023 Defendants received disturbing discovery from Plaintiffs which included an email from Gina Menichino to another party showing her deranged obsession with who Defendants presumed to be Mr. Button (as he is not named in the email). Menichino states, "i did have a crush on him at first", "it never got too got too intense, he moved away before anything could really continue.", "he was the first man i submitted to" "i think the bdsm attracts me because ultimately of him. in a way i think it could fill what me and him never finished". Ms. Menichino also stated "My issue was the emotional attachment that fucked me mentally more than anything." Through her therapy records and messages provided by third-parties, Gina Menichino has a pattern of dating older men including when she was underage but it has nothing to do with Mr. Button. Ms. Menichino created a disgusting and sexually deranged fantasy that never came to fruition and even admits nothing "continued" after having a crush on him. While Mr. Button was never aware of this, when Ms. Menichino was asked about the forementioned email in her deposition the Plaintiff stated: "but I didn't say your name", so while the Defendants believe she was discussing Mr. Button, (otherwise they do not know why this discovery was provided), Ms. Menichino was once again, unaware of the discovery submitted on her behalf and then denied it was Mr. Button she was speaking of at all. When Mr. Button asked Ms. Menichino how exactly she "submitted" to him, (as alleged in the forementioned email), she stated the following: Mr. Button: "Can you please tell me exactly how you submitted to me?" Menichino: "Okay. I was – because I was so young, the grooming started really young and I was caught up in this

---

seen in Exhibit 7 communications). The Defendants were entirely unaware of these reports until 2022 but are doing everything they can in seeking legal recourse against these horrendously false allegations.

pattern being groomed by you and manipulated and coerced and eventually led to rape." Mr. Button: "So you're saying that I raped you?" Menichino: "Yes". Ms. Menichino did not allege Mr. Button raped her in her complaint, proving yet again, another fabricated story. Ms. Menichino also stated the following: Mr. Button: "When did you first tell your mother I had raped you?" Menichino: "Oh, I just remember it all coming out about six months after you fled to London". Mr. Button: "When you say fled, can you tell me what you mean by that?" Menichino: "Ran off". Ms. Menichino is only citing what her attorneys wrote for her when they stated Mr. Button "fled to London"; Ms. Menichino never stated in her statements to the police that she was raped, and did not allege that in her complaint; this is another perjured statement by the Plaintiff that proves she is knowingly making false statements, just as she has done so in the media. Mr. Button: "Have I ever coerced you to send naked photos of yourself to me?" Menichino: "No". This statement proves again, Ms. Menichino is a liar.[87]

      c.   Gina Menichino's Expert Analysis Contradicts Her Claims

      As previously stated, Plaintiffs' counsel produced an expert report and psychological analysis whereas, Ms. Menichino stated that in 2010, Mr. Button "disappeared" and moved to England to be with Ms. Button, (Raghavan Expert Report), proving Defendant had **no contact** with Ms. Menichino after 2010 to prevent her from filing her claims in 2018 or in 2021. Ms. Menichino also makes a variety of claims in her expert testimony including her delusion that she believed she was "in love" with Mr. Button. Ms. Menichino also stated that Mr. Button controlled her social media but then proceeded to state that she was not allowed to have social media at the time she alleged he controlled it[88].

---

[87] See ECF No. 221 TAC – at 31. "Taylor coerced Gina into sending him photos of herself without clothes on." See exhibit 7 – Deposition of Gina Menichino
[88] ECF No. 221 at 39, "Over time, Taylor became increasingly controlling. For example, Taylor instructed Gina to isolate herself from her family and from certain friends, he exerted control over Gina's text messages and

1

2     III.     <u>Danielle Gutierrez</u>

3              Like Sage Humphries, Ms. Gutierrez intentionally omitted from her complaint

4     that she dated Mr. Button until the end of her complaint where she stated, Taylor "broke up"

5     with her. Ms. Gutierrez's entire complaint is contradicted by production submitted by the

6     Plaintiff. Even Ms. Gutierrez's therapy records from 2011 focus on her theory that Mr. Button

7     cheated on her "like he did with other girls" and that he even was physical by "elbowing her".

8     Not one time does Ms. Gutierrez state the outrageous allegations she states in her complaint

9     even in a year much closer to her break up with Mr. Button. There was no "dragging by the

10    hair" or "punching in the stomach" or mention of killing her family anywhere in her multiple

11    therapy records or police reports because none of these events occurred. Ms. Gutierrez made a

12    point to falsely allege that Mr. Button was "abusive" but neglected to state any of the abuse

13    stated in the complaint on any occasion prior. She even lied multiple times when questioned

14    about the alleged "elbowing" in her deposition and her allegations that Mr. Button threatened

15    to kill her with a knife. Though that allegation is untrue in its entirety, Ms. Gutierrez took the

16    opportunity to embellish even that lie by stating Mr. Button "threatened to shoot her" when

17    she tried to break up with him[89], which is not anywhere in her complaint. Ms. Gutierrez stated

18    in her own therapy records that she was the one who, "[had] difficulty controlling her temper"

19    as Defendants have previously stated when she lost her temper and attacked Mr. Button when

20    he asked her to leave his apartment or he would call the police[90] after she attacked him. Ms.

21    Gutierrez's even created an outlandish allegation that Mr. Button had sex with a stripper on a

22

23

24

25    ────────────────────

26    social media posts, and he instructed Gina how to dress and style her hair outside of dance class." Vs. Exhibit 7 –
      deposition "Did I ever control your social media?" Menichino: "social media wasn't around when we were in a
27    relationship. If it was around, I guess it was really new. But, I mean, it wasn't really controlled, no".
      [89] See Exhibit 8 generally, which shows evidence of all of the forementioned lies.
28    [90] See Declaration of Dusty Button – Exhibit 33

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

plane when they were going to Mexico, an allegation related to her current husband, as she stated in her therapy records that Mr. Gutierrez was texting prostitutes and that he cheated on her[91]. Ms. Gutierrez, like her co-plaintiffs has fabricated *knowingly false* allegations against Mr. Button and the Defendants' summary judgment against her should be granted.

### 1.  Statute of Limitations and False Testimony to the Police

In 2018, Ms. Gutierrez made false statements to the Hillsborough County Sheriff's Dept. in conjunction with JD2, who also made statements in the report filed by Ms. Menichino. On September 25th, 2023, Defendants deposed Ms. Gutierrez whereas, she stated under oath that she filed a police report in 2018[92]. Ms. Gutierrez contradicted her assertions of fear stating "I mean, me speaking up at all you stopped me from doing because I was in fear of you"[93] yet, followed that statement by admitting she disclosed her allegations to law enforcement in 2018. Her assertion of "fear" of Mr. Button, which she alleges prevented her from filing her claims, cannot be used as grounds for equitable tolling or estoppel as she disclosed her allegations to law enforcement in 2018[94]. Ms. Gutierrez was not prevented from disclosing her allegations to the police in 2018, nor was she prevented from asserting her claims in any year prior to 2018 or after her disclosure to the police in 2018 was made. Ms. Gutierrez admitted the reason she was not diligent in filing her claims was not due to any extraordinary circumstance caused by Mr. Button, negating the grounds for equitable tolling and estoppel which are asserted in her complaint. Ms. Gutierrez did not act diligently in

---

[91] See Exhibit 8
[92] Statements from Ms. Gutierrez to the police – Exhibit 31
[93] See ECF No. 231, 241, 319
[94] See deposition of Danielle Gutierrez - Deposition of Ms. Gutierrez: - Mr. Button: "I'm just going to ask, did I stop you after 2018 from filing this lawsuit in any way?" Ms. Gutierrez: "I mean, me speaking up at all you stopped me from doing because I was in fear of you." Mr. Button: "So how did you then speak up in 2018 when you spoke to the police at Hillsborough? Ms. Gutierrez: "So that original complaint was brought up by somebody else and they contacted me to add information into it. So I didn't pursue that on my own. Mr. Button: "But I didn't stop you from pursuing that, right?".

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

bringing her claims. She reported the allegations to the police in 2018 yet did not seek counsel or assert her claims until three and a half years later. Within Danielle's statements to the police, she stated, "Taylor took [Dusty's] last name when they got married", "Taylor blocked [her] and all the other girls from the studio"[95], (further committing fraud by filing a deceptive pleading that Mr. Button's name was an alias), admitting she was aware of the underlying facts while knowingly filing a deceptive pleading including by admitting that she has not spoken to Mr. Button for *fourteen years*. On August 27th, 2023 Plaintiffs' counsel produced an expert report and psychological analysis whereas, Ms. Gutierrez stated in 2010, Mr. Button "cut all contact with her"[96], proving Defendant had no contact with Ms. Gutierrez after 2010 to prevent her from filing her claims in any year. Ms. Gutierrez failed to demonstrate an extraordinary circumstance prevented her from filing her complaint and in fact, proved the opposite by admitting there was disclosure to the police three and a half years prior. Ms. Gutierrez's allegations claiming the delay in filing was due to "fear" of Mr. Button are simply, untrue[97] and therefore, her statutes ***must not be tolled***.

    a.   <u>Ms. Gutierrez Stated She Hoped the Defendant Would Die</u>

        Ms. Gutierrez's therapy notes and messages to third-parties focus on a scorned woman's feelings pertaining to a "break-up" rather than the alleged abuse stated in her complaint. Ms. Gutierrez wished ill will on Mr. Button by stating, "he [Mitchell Taylor Button], will die alone", contradicting her claim that Mr. Button "broke up with her" by stating, "I pushed him out"[98]. Ms. Gutierrez was in therapy prior to her relationship with Mr. Button for a number of issues unrelated to Mr. Button but continued once her relationship

---

[95] See Exhibit 31
[96] Exhibit 34
[97] See also ECF No. 231, 241, 319
[98] Exhibit 8

with him ended. Ms. Gutierrez's own therapy records defeat her allegations and directly

contradict her already exaggerated and vindictive claims in this litigation.

      b.  Social Media Messages and Therapy Records Prove Ms. Gutierrez Created a

           False Narrative and was Never Abused by Her Ex-Boyfriend, Mr. Button

      On February 1st, 2023, Plaintiffs provided discovery which included

contradicting evidence from Ms. Gutierrez including a message provided to a third party

which stated, "worst I got from him was that he gave me a bloody lip from elbowing me.[99]"

Ms. Gutierrez's claims do not simply state that she had a "bloody lip" from an elbow. In fact,

on July 27th, 2023 Defendants finally received Ms. Gutierrez's therapy records stating the

following: " Ms. Gutierrez's vengeful behavior is largely directed toward Ms. Button in

production provided as she believed Mr. Button "cheated on her" with Ms. Button rather than

alleging Mr. Button was abusive[100]. None of the absurd allegations made in Ms. Gutierrez's

complaint were ever mentioned in her therapy records or to the police. There is no mention of

the allegations in her complaint anywhere in the record.

      c.  Danielle Gutierrez's Expert Analysis Contradicts Her Claims

      As stated, *supra,* Danielle Gutierrez stated in her session with Ms. Raghavan

that in 2010, Mr. Button "cut all contact with her", proving Defendant had no contact with

Ms. Gutierrez after 2010 to prevent her from filing her claims at any time.

    IV.  Rosie DeAngelo

---

[99] Exhibit 8

[100] ECF No. 221 at 76 -79; "On one occasion, during Danielle's freshman year of college, Danielle and Taylor got into an argument. Taylor became enraged and dragged Danielle across the room by her hair. 77.From that point forward, Taylor physically abused Danielle at least three times a week, including by punching and kicking Danielle in the stomach, and squeezing Danielle until she could not breathe and her nose bled. Taylor also put the knife against his own throat and wrist and told Danielle he would Danielle tried to escape. Taylor then pinned Danielle against the wall and told her she could not leave, trapping her in his apartment. Taylor pulled out a knife and put it to Danielle's throat. 79.Taylor also put the knife against his own throat and wrist and told Danielle he would kill himself and Danielle's family in front of Danielle if she ever tried to leave him."

Ms. DeAngelo has invalidated her own complaint on a number of occasions including but not limited to producing therapy records which directly prove she was never sexually assaulted including because every therapy record prior to Ms. DeAngelo being interviewed by Ms. Raghavan, states she was not sexually assaulted or abused in any way.

1.    Statute of Limitations and False Testimony to the Police

On September 25th, 2023, Defendants deposed Ms. DeAngelo where she stated under oath, Mr. Button had not spoken to her since either 2007 or 2008[101]. Ms. DeAngelo's assertions that Mr. Button made statements to her that stopped her from asserting her claims before 2021 remain undemonstrated by Ms. DeAngelo after nearly four years, (as these events never occurred). Deposition of Ms. DeAngelo: **Mr. Button**: […] Did I ever in any way coerce you to not come forward about the things that you claim I did to you? **Ms**. **DeAngelo**: "Yes." **Mr**. **Button**: "How?" **Ms**. **DeAngelo**: "I was a child and I was told by someone in a position of power that I trusted, i.e., you, that there was nothing illegal about what was happening. In that way I was pressured, again, by a person in a position of power that I trusted to not say anything; that there was nothing to say, that there was nothing to report." **Mr**. **Button**: "Okay. "And what year did I tell you this?" **Ms**. **DeAngelo**: "It was when I was a student at Center Stage. So it would have to have been around 2007-2008, I believe. **Mr**. **Button**: "Okay. After that, I never communicated these orders to you again following your time at Center Stage?" **Ms**. **DeAngelo**: I don't remember you saying it again after I was no longer a student, no."[102]

Ms. DeAngelo was not prevented from asserting her claims in any year prior to 2021. In addition to Ms. DeAngelo's therapy records stating she was never sexually assaulted,

---

[101] See Exhibit 9
[102] Exhibit 9, ECF 231 / 234, 241 and 312 and Exhibits attached including Exhibit 41

as late as 2017[103], she admitted the reason she was *not diligent* in filing her claims was not due to any extraordinary circumstance caused by Mr. Button, negating the grounds for equitable tolling or estoppel which are asserted in her complaint. Ms. DeAngelo only repeats what her attorneys wrote for her and there is no actual substance to her statements. Ms. DeAngelo **did not** act diligently in bringing her claims and she did not bring forth her claims for *fourteen years*. On August 27th, 2023 Plaintiffs' counsel produced an expert report and psychological analysis where Ms. DeAngelo stated that in 2008, Mr. Button "blocked her from his phone"[104] proving Defendant had no contact with Ms. DeAngelo to prevent her from filing her claims in 2021. Ms. DeAngelo fails to demonstrate that an extraordinary circumstance prevented her from filing her complaint prior to 2021. In addition to her allegations being fraudulent the delay in filing her claims is <u>not</u> <u>warranted</u> including because Ms. DeAngelo has admittedly, *not even spoken* to the Defendant since 2007.

    a. <u>Rosemarie DeAngelo's Expert Analysis Contradicts Her Claims</u>

        Rosemarie DeAngelo stated that in 2008, Mr. Button "blocked her from his phone"[105] proving Defendant had no contact with Ms. DeAngelo to prevent her from filing her claims in 2021. Ms. DeAngelo's therapy session with Ms. Raghavan is provided in Defendants' exhibits but again, the Plaintiffs only provided her with the depositions of two non-parties who have also committed the crime of perjury and who the Defendants are in contact with the HCSO regarding pressing charges against them and Jane Doe 1's Rule 11 Opposition in this lawsuit. Ms. DeAngelo even admitted to joining this lawsuit after seeing it in the New York Times[106]. Ms. DeAngelo's claims are fabricated and she has not provided

---

[103] Exhibit 9
[104] Exhibit 35
[105] Exhibit 35
[106] See Deposition Transcript of Rosemarie DeAngelo – Exhibit 9

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

any evidence to support her claims or her claim of intentional infliction of emotional distress. The Court should grant Defendants' summary judgment against Ms. DeAngelo.

V.    Jane Doe 2

There are a number of factual issues with JD2's fabricated complaint but particularly her timeline including that she alleges she was molested by her "dance teacher" at three different ages, 15, 16 and 17. Her complaint states, "At one such occasion around **2006**, when Jane Doe 2 was a minor, several Centerstage dancers were having a sleepover and began watching a scary moving in the living room.[107], (making her sixteen); her therapy record prior to Ms. Raghavan's report stated she was molested at fifteen[108] , (similar to JD1 who alleges also alleged she was fifteen in a year she could not have been fifteen in, just like JD2), and in her report from Ms. Raghavan she stated she was allegedly sexually abused at ages 16 or 17[109] but at 16 and 17, the years would have been 2007 and 2008. Mr. Button's first check from Centerstage Dance Academy is dated Oct. 6th, 2006 when he was not a permanent teacher for the studio and still lived in Charlotte, NC, as seen on the 1099 in Exhibit 37 for the year 2006[110]. The Defendant taught a workshop at Centerstage and received a payment of $1000, a much higher price than the regular fee for teaching a class or choreographing a solo. Mr. Button did not teach at Centerstage again until June 18th, 2007 and then August 23rd, 2007 and did not become a frequent teacher at the studio until September of 2007 after he moved to Florida. JD2 refused to name a time, day or date her events occurred after four years but it is clear from the record that JD2's allegations are fabricated[111]. JD2's

---

[107] See TAC ECF No 221 at 99
[108] Exhibit 9
[109] Exhibit 3
[110] See Exhibit 37 pg. 88
[111] See ECF No. 231, 234, 241, 319

complaint she also stated "Taylor's special attention and professional support were conditioned on Jane Doe 2 obeying his demands" but then when asked in her deposition about this she stated the Defendant never demanded anything from her; Mr. Button: "Did I ever demand anything of you?", JD2: "Demand of me? No". JD2's allegations are fabricated a malicious and the Court should grant Defendants' Summary Judgment against JD2.

### 1. <u>Statute of Limitations and False Testimony to the Police</u>

In 2018, JD2[112] provided false testimony to the Hillsborough County Sheriff's Department[113] in conjunction with Ms. Gutierrez, both which were included in Ms. Menichino's report. On September 25th, 2023, Defendants deposed JD2 whereas, she stated under oath that she filed a police report in 2018, she was "afraid to file her report" but still filed it. Her assertion that "fear" of Mr. Button prevented her from filing her claims cannot be used as grounds for equitable tolling or estoppel as she disclosed her allegations to law enforcement in 2018.[114] As shown through deposition transcript, JD2 admitted she made statements to the police and was not prevented from disclosing her allegations in 2018, nor was she prevented from asserting her claims in any year prior to 2018 or after her disclosure to the police in 2018 however, Plaintiff JD2 and her counsel lied to the Court by intentionally filing a deceptive pleading, to mislead this Court by stating Jane Doe 2 "did not report the sexual abuse or pursue legal remedies" until her complaint was filed on December 13th,

---

[112] JD2 = Jane Doe 2
[113] See HCSO report – Exhibit 31
[114] Deposition of JD2: Mr. Button: "Were you afraid to file your police report in 2018?" - Doe 2: "I was afraid to, yes." - Mr. Button: "But nothing stopped you from doing so?" - Doe 2: "Well, I had the help of an organization that walked me through the process". - Mr. Button: "Do you still have that help with them today?" - Doe 2: "No, I don't communicate with them anymore." And; Mr. Button: "With that help from YPA, would you not have been able to file a civil litigation against me?" Doe 2: "I was not ready to" Mr. Button: "Why weren't you ready to?" Doe 2: "I was psychologically not ready to".

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

2021[115]. JD2's statements to the police included, "In 2010 or 2011, Taylor left the country and blocked everyone", admitting that Mr. Button has not had contact with her for *fourteen years*. Plaintiffs committed fraud on the Court by willfully misleading the Court to believe that JD2 did not seek legal remedies until she filed her complaint in 2021, but it is clear from the record, this is false and her statutes ***must not be tolled***. JD2 ***admitted*** the reason she was not diligent in filing her claims was not due to any extraordinary circumstance caused by Mr. Button therefore, negating the grounds for equitable tolling or estoppel, which are asserted in her complaint[116]. "Equitable tolling applies when the claimant has demonstrated diligence."[117] JD2 did not act diligently in bringing her claims. She reported the allegations to the police in 2018 yet did not seek counsel or assert her claims until three and a half years later after being coerced[118] to do so.[119] JD2 failed to demonstrate that an extraordinary circumstance prevented her from filing her complaint prior to 2021 and in fact, proved the opposite by admitting in her deposition that there was disclosure to the police three and a half years prior to filing her complaint, proving she was not diligent in pursuing her claims once disclosure was made to the police. JD2's allegations are fraudulent and malicious and the delay in filing her claims by asserting "fear" of Mr. Button is simply, untrue.

a. <u>Jane Doe 2' s Expert Analysis Contradicts Her Claims</u>

---

[115] ECF No. 221 at 119 "Jane Doe 2 did not report the sexual abuse or pursue legal remedies until the amended complaint was filed in this action as a direct and proximate result of Taylor's control, deception, manipulation, and threats, and the affirmative steps that he took during the abuse in order to prevent her from reporting his misconduct."
[116] ECF No 221 pg14 at 118.
[117] (See Masco, 127 Nev. At 739, 265 P.3d at 672)
[118] See Exhibit 27
[119] (See *Cf. City of N. Las Vegas, 127 Nev. At 640-41, 261 P.3d at 1077* – (determining that the claimant exercised diligence where he asserted his claims less than two months after discovering the facts underlying the claims).

As previously stated, JD2 has contradicted her entire complaint, because it is false in its entirety and she cannot keep up with the lies[120]. *Even in* Ms. Raghavan's report, (where she was only given two depositions of non-parties from the same dance studio, who also filed false police reports in 2018, which Defendants are in contact with the HSBO about), JD2 contradicts her complaint by stating, "TB **demanded** that she keep the assault a secret", after stating he never demanded anything from her. JD2 also stated that she was successful in her career which entirely contradicts her complaint stating her career has suffered. JD2's complaint is frivolous and the Defendants should be granted summary judgment against her.

VI.    Jane Doe 1

**Defendants have never met Jane Doe 1**. The Plaintiff has committed multiple crimes against the Defendants including by *knowingly* providing false statements to the Department of Justice and Homeland Security[121] and committing the criminal act of perjury. There is *not one material fact* that JD1 produced, which corroborates her claims, (as none exist). When JD1 joined this litigation and plagiarized Sage Humphries' complaint and 2017 Massachusetts affidavit, she neglected to cross reference the affidavit and complaint she plagiarized[122], thus rendering *all* of her allegations a legal impossibility, which she plagiarized

---

[120] To save space, Defendants have provided JD2's contradictions in her expert report – Exhibit 35
[121] Homeland Security refused Defendants' subpoena; Defendants called Special Agent Evan Picariello, who was only discovered after the Defendants filed a police report against themselves and Ms. Thonis with the Bedford, NH police department and spoke to Detective Amy Champagne to seek help in obtaining any information about this woman they have never met and the "investigation" BSF initiated when they contacted Homeland Security about the Defendants. Special Agent Picariello refused to answer any questions and even refused to question the Defendant when she asked why they never contacted them to question them; his report stated that it looked as though "it appears the Buttons were looking for any information about the Plaintiffs in an effort to clear their names"; which was only discovered because the Defendants requested any and all police reports from the Bedford, NH police department which named JD1 and all they received was a report showing they filed a report on themselves and Ms. Thonis, (for not reporting an alleged rape, as required by NH state law), and because Detective Amy Champagne put two and two together, remembering the "Button" sir name and Picariello's communications with her. The "investigation" resulted in nothing but the Defendants are seeking consequences to the actions of BSF and their client, JD1. See Exhibit 36.1 – calls to SA Picariello and Champagne
[122] Exhibit 11, ECF No 252, 275

and could have only ever possibly been connected to the year 2017, when JD1 would have been twenty years old; this is the result of incompetence proven by litigating a complaint absent of a year it could have taken place but present only with a "belief" that the allegations took place in 2014 or 2015; neither of which JD1 would have been fifteen years old as stated in her therapy records[123], some *five years* after she claims her allegations took place, when she would have been seventeen. Combatting allegations from a total stranger, that are all *entirely impossible* to have ever taken place in reality, outside JD1's delusional fantasies has absorbed roughly **seventy-five** percent of Defendants' money and time, (thus prejudicing them in this litigation), which would have been better spent disproving facts of those Plaintiffs[124], they have actually had the displeasure of meeting. Every motion Defendants have filed in this litigation should be heavily reconsidered once JD1's inevitable dismissal takes place[125].

        a.    <u>The Substantial Evidentiary Record Confirms that it is Factually Impossible for Jane Doe 1 to have been Sexually Assaulted by the Defendants</u>

        Defendants have provided irrefutable proof that Jane Doe 1's allegations are not only untrue but impossible[126]. Jane Doe has provided blank documents in this case, and does not even know what her attorneys have provided and manipulated on her behalf. As stated, the Plaintiff stated she was raped in three different years, in a building that did not exist at the time of her alleged year of 2014, (in her complaint), with firearms the Defendants did not own, while stating the Defendants were married when they were not, stated she followed an Instagram account that did not exist in the year she stated she followed it, was not

---

[123] See Exhibit 11
[124] Defendants still do not have JD1's second deposition transcript in their possession and as of writing this motion the Court denied their request, again, (ECF No. 440).
[125] See generally ECF No. 185, Exhibit 11
[126] See ECF No. 185, Exhibit 11

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

a fan of Dusty's while simultaneously stating she was "enamored" by her. The Defendants have provided Jane Doe 1's deposition to speak for itself as Exhibit 42 but ask that the Court takes note that JD1 refuses to name or describe anything written by her attorneys in her complaint. Even the details that JD1 could recall were subsequently proven to be lies and entirely contradict her complaint. JD1 even made erroneous statements not relevant to her complaint that were lies such as stating ████████████████████████████████ ████ the Defendants contacted that middle school and the teacher did not even work there at the time alleged by the Plaintiff[127]. JD1 admitted she never took class at Boston Ballet and her therapy records prove that she was never sexually abused at all, much less by the Plaintiffs; JD1 was ████████████████ for plagiarism, ████████████ due to plagiarism and even stated her therapist Katherine Thonis was the first person she told about her alleged assault, to which the therapist completely denied[128]. Jane Doe 1 admitted she pretended to attempt ████ for attention one singular time in years that predate her allegations against Defendants where she alleges, she attempted ████████ a result of those allegations; an impossibility as the only time she claims to have attempted ████ took place years prior to the years she alleges she met the Defendants[129]. Opposite of her claims, JD1 engaged in ████████████ acts well before the fabricated assault[130]. For the purposes of the limited space here, the Defendants cannot state every lie made by the Plaintiff and respectfully ask the Court to please examine the record as a whole; the Defendants have never met this woman and their motion for summary judgment against her should be granted.

---

[127] See Exhibit 11 – JD1 stated her affair with her science teacher in a year the teacher did not even teach at that school
[128] One of these admissions is stated in JD1's second deposition transcript
[129] See exhibit 11; ECF 231, 234, 185, 241, 319, 275, 281
[130] Exhibit 11

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

2

VII.    Chitra Raghavan's Expert Report Should Be Stricken as Plaintiffs Intentionally

3

Withheld Evidence and the Record as a Whole, Rendering Her Incapable of

4

Formulating an Impartial, and Unbiased Assessment

5

        Defendants previously addressed this issue when Defendants received Ms.

6

Raghavan's assessments of Plaintiffs in August of 2023. While the Defendants have no

7

dispute with a party using an expert witness, the assessment of the Plaintiffs was completely

8

biased, (Ms. Raghavan has worked with associates from BSF on other cases), as the Plaintiffs'

9

counsel *only* provided her with limited documents supporting their client's false allegations,

10

thereby withholding the record as a whole from Ms. Raghavan which would have allowed her

11

make a proper assessment of the Plaintiffs. Plaintiffs *did not even* provide Ms. Raghavan with

12

any of the evidence that the Defendants provided them which contradict their clients' claims,

13

including contradicting therapy records, evidence showing the building Jane Doe 1 alleges she

14

was raped in did not exist in 2014 or any other information from the Defendants' Rule 11

15

motions against Ms. Humphries[131] and JD1, proving the allegations impossible. They also

16

neglected to provide text messages and emails proving the Florida women's claims to be false

17

in their entirety[132]. All of these documents should have been provided as they would

18

undoubtedly changed the outcome of the assessment. For example, while the Defendants are

19

fully capable of proving, (with evidence), they have never met JD1, (including by giving

20

photo and video evidence from nearly every day of their life since 2011, proving JD1 was

21

never in that life), Plaintiffs *refuse* to name any exact time, date, day, season, month or year

22

23

24

25

26

27

28

---

[131] The Plaintiffs did not provide Ms. Raghavan with *any* of the evidence against Ms. Humphries which entirely refutes her allegations.

[132] Plaintiffs provided Ms. Raghavan with the false police incident reports to Hillsborough County Sherriff's Dept. but did not provide her with any of the factual information from the Defendants or their clients' therapy records or deposition testimony which entirely contradict the statements made to the police, to Ms. Raghavan.

that they allege these allegations took place, which in turn, strips the Defendants' capability of showing the court where they were and what they were doing at the time JD1 claims her allegations occurred, including the exact state of Defendants' homes at that time because they know if they were to choose specific date and/or time the Defendants could show it never took place.[133] Plaintiffs are forcing the Defendants to prove a negative which is impossible so instead, Defendants provided evidence that it could not have taken place on any of the dates and years from 2011 until now, which included half a million files, (too many to provide the court), as well as full walk through videos of all of their homes on various dates throughout those years to verify the home JD1 described did not even exist until 2017, rendering an impossibility that she was ever inside that home she described, much less ever been raped in. The *only* document the Plaintiffs provided to the Court which they allege proves JD1 met the Defendants was a document showing Urbanity, (the school JD1 attended in the summer), rented studio space at Boston Ballet on two occasions in 2014, a document the Defendants subpoenaed from Urbanity. That document states that the company members of urbanity took class at Boston Ballet on two occasions but as **admitted** in JD1's deposition[134], she was not in Urbanity's company and was only a student, i.e. *did not take class at Boston Ballet* because she was not a company member[135]. This manipulation *entirely prejudices* the Defendants and Ms. Raghavan's reports should be stricken. Defendants do not dispute the use of Ms. Raghavan's services but the reports are biased for each Plaintiff because she did not view *all* the evidence in the record which would have significantly changed the outcome; in the alternative, each Plaintiff should "redo" their evaluations and Plaintiffs should resubmit those

---

[133] To further the conspiracy against the Defendants, Boston Ballet, (Defendants former employer), refused to provide Dusty with all of her performance videos from 2014 to prove where she was on each performance
[134] Exhibit 11
[135] None of that evidence was provided to Ms. Raghavan.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

reports if they choose to use them[136]. The court should not rely on these fabricated reports; as regardless of the accolades Ms. Raghavan ensures are posted in her report and the case law cited; the allegations are false and the Plaintiffs withheld documents to ensure their narrative was "supported" by an "expert", who relied on already proven to be perjurious testimony. It is a biased opinion and the reports should be stricken.

VIII.    <u>Defendants' Counterclaim</u>

The Counter-Defendants and their counsel created the aforementioned public controversy by garnering mass media attention and making inflammatory statements. A claim for relief for defamation requires the plaintiff to demonstrate a false and defamatory statement; an unprivileged publication to a third person; fault, amounting to at least negligence; and actual or presumed damages. *CCSD v. Virtual Educ. Software, Inc*., 125 Nev. 374, 385, 213 P.3d 496, 503 (2009) (citations and quotations omitted). "However, if the defamatory communication imputes 'a person's lack of fitness for trade, business, or profession,' or tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed." Id. (quoting K-Mart Corp. v. Washington, 109 Nev. 1180, 1192, 866 P.2d 274, 282 "A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt." *Lubin v. Kunin*, 117 Nev. 107, 111, 17 P.3d 422, 425 (2001) (citations omitted). "Whether a statement is defamatory is generally a question of law." Id. Statements of opinion are not actionable. Nevada Independent Broadcasting Corp. v. Allen,

---

[136] It should also be noted that the therapy records provided by Ms. Raghavan are the first reports which the Plaintiffs state any of these claims to their "therapist", only after this litigation began and nearly two years later which, as seen, the stories of the Plaintiffs have been continuously fabricated over time and Ms. Raghavan's report proves that anyone can fabricate a story to a therapist, as none of these allegations were ever mentioned to any of the Plaintiffs' therapists in all of the records provided from 2012 until now.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

99 Nev. 404, 410, 664 P.2d 337, 341 (1983). Here, the Plaintiffs made false and defamatory statements of fact to a public forum, where the Counterclaimants did not inject themselves into any issue regarding sexual abuse of any kind and accused the Counterclaimants of a crime and/or sexual misconduct. Therefore, the Counterclaimants are entitled to Summary Judgment on their claims of defamation *per se*.[137]

      a.  <u>Counterclaimants are Not Public Figures or Limited-Purpose Public Figures</u>

      As already Ordered by this Court[138], the Counterclaimants are not public figures or limited purpose public figures as stated at ECF No. 379: "…the Court finds that Plaintiffs' allegations fail to show that Defendants voluntarily inserted themselves into a prominent role in the public issue of sexual abuse in the dance industry simply by being a famous dancer or married to a famous dancer. Similarly, to find that Defendants voluntarily inserted themselves into this issue of public concern by allegedly committing acts of sexual abuse would require courts to find that all people with some fame accused of a crime are necessarily limited purpose public figures. Because the Court concludes that Defendants are not limited purpose public figures, they were not required to allege actual malice in their defamation claims. Thus, the Court will deny Plaintiffs' motion to dismiss on this basis".

      b.  <u>Counter Defendants are at Fault for Publishing Statements of Fact, Not Opinion</u>

---

[137] The detailed allegations of defamation per se are outlined in ECF No. 231, 241, 319

[138] This Court has already issued an order denying the Plaintiffs' Motion to Dismiss the Defendants' counterclaims including on the grounds that the Defendants are not public figures or even limited public figures. The Defendants have never injected themselves into any issue of public concern much less any topic such as sexual abuse or form of abuse. Here, the Defendants were simply falsely accused of the allegations in the complaint but otherwise, played no part in a public controversy; as the Court has already stated, there are fact-intensive issues underlying the statements made by the Plaintiffs, the Defendants agree as the "facts" of the Plaintiffs' claims are lies and therefore, even the complaint itself is defamatory, (though protected by privilege).

1    Already Ordered by this Court, the underlying issues of the statements made to

2  the media by the Plaintiffs are fact-intensive. The Defendants point to the fact that the

3  complaint itself is defamatory because the Plaintiffs' claims are false in their entirety

4  however, the statements made to the media and to the public were 1) not a restatement of the

5  complaint, 2) are unprotected by free speech and 3) not protected by Nevada's anti-SLAPP.

6  Although SB 286 broadens NRS 41.637 from just protecting good faith communication in

7  furtherance of the right to petition, to also include "the right to free speech in direct

8  connection with an issue of public concern", Defendants are not public figures[139]; therefore, in

9  addition to the Court's Order[140], the matter is not of public concern and the statements made

10  are not absolute truth.[141] The Plaintiffs *knew* their statements were false and still made them

11  and therefore, the Plaintiffs' statements, are not protected by any privilege or Nevada's anti-

12  SLAPP law. The statements reported to the media and the press by the Plaintiffs and the

13  falsity of the allegations are a crucial factor in determining their liability; and the Plaintiffs are

14  liable because their own complaints are untrue, therefore, the statements made to the media

15  and posted on social media, (resulting in the destruction of the Defendants' livelihoods,

16  careers and reputations) constitute defamation *per se*. Furthermore, the statements made by

17  Plaintiffs were not *only* intended for parties interested in this case as the Plaintiffs' waged a

18  defamatory global media campaign against the Defendants which destroyed everything they

19  ever worked for. This was intentional and done so in conspiracy with the attorneys from BSF,

---

[139] Although Plaintiffs are not public figures or limited-purpose public figures, and thus do not have to establish malice, they have provided ample evidence that Defendants knew the falsity of the statements they published or demonstrated reckless disregard for the truth, thus demonstrating malice. See Pegasus, 118 Nev. at 722, 57 P.3d at 92 ("[A]ctual malice is proven when a statement is published with knowledge that it was false or with reckless disregard for its veracity.")

[140] ECF No. 379

[141] SB 286 adds a fourth definition for the expanded types of protected conduct including any "communication made in direct connection with an issue of public interest in a place open to the public or in a public forum," **so long as the statement is truthful or made without knowledge of falsehood.**

49
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

their PR person Dawn Schneider[142] and former associate Demetri Blaisdell[143], (attorney for Julia Jacobs who wrote the first defamatory article in the New York Times *prior* to the Defendants being served). Moreover, a claim for relief for defamation requires the plaintiff to demonstrate a false and defamatory statement; an unprivileged publication to a third person; fault, amounting to at least negligence; and actual or presumed damages. CCSD v. Virtual Educ. Software, Inc., 125 Nev. 374, 385, 213 P.3d 496, 503 (2009) (citations and quotations omitted). "However, if the defamatory communication imputes 'a person's lack of fitness for trade, business, or profession,' or tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed." Id. (quoting K-Mart Corp. v. Washington, 109 Nev. 1180, 1192, 866 P.2d 274, 282 (1993). "A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt." Lubin v. Kunin, 117 Nev. 107, 111, 17 P.3d 422, 425 (2001) (citations omitted). "Whether a statement is defamatory is generally a question of law." Id. Statements of opinion are not actionable. Nevada Independent Broadcasting Corp. v. Allen, 99 Nev. 404, 410, 664 P.2d 337, 341 (1983). Here, the Defendants have proven each and every element to meet the standard required. *Finally*, as already stated in the Order of this Court; "[…] factual issues prevent the Court from concluding that the fair reporting privilege applies to Plaintiffs' statements. See Restatement (Second) of Torts, § 611 cmt. c. (stating, "A person cannot confer [the fair reporting] privilege upon himself"); *Wynn v. Assoc. Press*, 136 Nev. 611, 613, 475 P.3d 44, 47 (Nev. 2020) (citing § 611 of the Second Restatement of Torts and applying summary judgment standard in

---

[142] Dawn Schneider is married to a New York Times journalist, Joe Nocera

[143] Demetri Blaisdell is also being sued by the Defendants in the Southern District Court of New York for conspiracy, fraudulent misrepresentations and other claims with Sabina Mariella and Lindsey Ruff – 1:24-cv-05888-MKV – Button et al v. the New York Times Company et al.

deciding whether statements were privileged); *Shapiro*, 389 P.3d at 269 (observing that the analysis of whether statements are privileged "is a case-specific, fact-intensive inquiry that must focus on and balance the underlying principles of the privilege"). Thus, the Court will deny Plaintiffs' motion to dismiss with regards to the fair reporting privilege". The Defendants undoubtedly agree with the Orders of this Court as Plaintiffs' allegations are false in their entirety[144]. The Plaintiffs have not, (because they cannot), presented any material fact, much less a genuine one, to prove their allegations are true, because they are not. The Defendants remain steadfast is using an absolute truth defense to their claims and additionally, provide factual material evidence that the fact-intensive issues underlying the Plaintiffs' claims are proven false and without merit, thereby constituting defamation *per se* in regard to all of Plaintiffs' statements made to the media.

  c. <u>Counter Defendants Published Unprivileged Statements to Third Parties</u>

   It is undisputed that Defendants made the defamatory statements. By making the statements to the media, the press, third-parties, various news outlets, business associates, sponsors of the Defendants and business affiliates, (including during the interviews that were later posted on the Plaintiffs' social media pages, Defendants have published the statements to third parties. See, e.g., Sahara Gaming Corp. v. Culinary Workers Union Local 226, 115 Nev. 212, 215, 984 P.2d 164, 166 ("The law has long recognized a special privilege of absolute immunity from defamation given to the news media and the general public to report newsworthy evens in judicial proceedings."); Pope v. Motel 6, 121 Nev. 307, 317, 114 P.3d

---

[144] The only reason this lawsuit was published worldwide was due to the Plaintiffs' counsel's eagerness to promote another "Epstein and Maxwell" case, including by using their connections with the New York Times and other media outlets, (such as Amy Robach from Good Morning America who interview Hunter Biden, former associate of BSF), to interview Sage Humphries, creating a defamatory mass media blitz against the Defendants prior to them ever being served or issued a summons – see ECF No. The Defendants even sought a protective order against Ms. McCawley and her associates because of this, but it was denied – see ECF No.

277, 284 (2005) (concluding that a qualified privilege applies to statements made to police in aid of law enforcement). Defendants published the statements to third parties without privilege and the Court should grant summary judgment in favor of Counterclaimants[145].

IX.    SUMMARY JUDGMENT STANDARD

"Summary judgment is an important procedural tool by which 'factually insufficient claims or defenses [may] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources.'" *Boesiger v. Desert Appraisals*, LLC, 135 Nev. 192, 194, 444 P.3d 436, 438-39 (2019) (quoting Celotex Corp. v Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). When considering a Motion for Summary Judgment, the Court must perform "the threshold inquiry of determining whether there is a need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986) (emphasis added). Moreover, the purpose of summary judgment proceedings is to pierce the pleadings and to test whether there are no issues of material fact, such that a party is entitled to a judgment as a matter of law. See *Dredge Corp. v. Husite Co.*, 78 Nev. 69, 89, 369 P.2d 686, 687 (1962). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. Valley Bank v. Marble, 105 Nev. 366, 367, 775 P.2d 1278, 1282 (1989); SEC v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982)[146]. The burden for demonstrating the absence of a genuine issue of material fact lies with the moving party, and the material lodged by the

---

[145] The statements at issue are all addressed in ECF No, 231, 241, 319

[146] The only "different versions of the truth" that exist are those of the Plaintiff' perjurious statements, proven perjurious by the Defendants' evidence against them; therefore, there is no dispute of material fact left for a jury.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

moving party must be viewed in the light most favorable to the nonmoving party. Hoopes v. Hammargren, 102 Nev. 425, 429, 725 P.2d 238, 241 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "[A] genuine issue of material fact may not be created by conflicting sworn statements." Aldabe v. Adams, 81 Nev. 280, 282, 402 P.2d 34, 35 (1965), overruled on other grounds by Siragusa v. Brown, 114 Nev. 1384, 971 P.2d 801 (1998). "When [NRCP] 56 speaks of a 'genuine' issue of material fact, it does so with the adversary system in mind. The word 'genuine' has moral overtones. We do not take it to mean a fabricated issue." Aldabe, 81 Nev.at 285,402 P.2dat37. [A]party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . ." Cleveland v. Policy Mgt. Sys. Corp., 526 U.S. 795, 806, 119 S.Ct. 1597, 1603 (1999). A material fact will only be "genuine," "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477U.S.at248 (emphasis added). The Jury could not return a verdict for the Plaintiffs in their favor.

X.    LEGAL ARGUMENT

a.    Plaintiffs' Claims Fail as a Matter of Law Including Due to Fraud on the Court

*All* of the Plaintiffs' claims fail as a matter of law. It is undisputed that their claims are untimely and that they have committed fraud on the Court including the criminal acts of perjury, all of which entitle the Defendants to summary judgment in their favor. *Even if* the Plaintiffs' claims were timely, (*they are not*), the Defendants can prove by the preponderance of the evidence that the Plaintiffs have committed fraud on the Court, that their claims are *knowingly* false and that a verdict would not be in their favor should this matter go to trial. Plaintiffs *even admitted* that they have *no evidence* to substantiate their claims, including that ***none*** of the Plaintiffs were stopped by either Defendant from coming forward.

Plaintiffs rely solely on their own deposition testimony already proven to be perjurious[147]. The Plaintiffs *never produced* **any proof** of emotional distress experienced as required under Nevada law. In fact, in every therapy record produced by the Plaintiffs, they **verified they were never sexually abused at all**; these records span from the years prior to their allegations until the week the complaint was filed. There is no mention of the Defendants' names one singular time in the Plaintiffs' therapy records aside from JD1's therapy notes from August 3rd, 2021[148], just *one week after* she admittedly read the New York Times[149] article about the Defendants. In fact, the Plaintiffs produced a number of documents including text messages and admissions through deposition testimony which entirely contradict their allegations and **prove** that their claims as a whole are deliberately untrue.

   b.  Plaintiffs' Claims Fail – Statute of Limitations

         Given that the Plaintiffs have admitted the statutes of limitation have expired with regard to the majority of their common law claims, they ask this Court to equitably toll the applicable statutes of limitation. Equitable tolling "operates apart from any statutory provision." *Smith v. Danis, 953 F.3d 582, 592 (9th Cir. 2020).* This Court's authority to toll

---

[147] As a separate matter, Plaintiffs' discovery was *completely void of any material evidence* to support their allegations, (as none can exist) and in fact, consisted of evidence which proved that Sage Humphries, (as well as her co-plaintiffs) committed fraud on the Court beginning in 2017[147]. Plaintiffs did not produce *any material fact* which would prove their allegations to be true, (they are not) and they would undoubtedly lose at trial. The preponderance of evidence lies with Defendants, as the Defendants produced *over half a million files* to the Plaintiffs in discovery which prove the Plaintiffs' allegations are knowingly fraudulent.

[148] Exhibit 11

[149] The Defendants filed a lawsuit on July 29th, 2024 against the New York Times Company and other third parties in the Southern District Court of New York, (1:24-CV-05888-MKV), including against the Plaintiffs' counsel, Sabina Mariella, Lindsey Ruff, Demetri Blaisdell (former attorney with BSF, now attorney for the New York Times representing the journalist of the defamatory New York Times article), David McCraw, (New York Times attorney), Julia Jacobs, (journalist who wrote the defamatory article about the Defendants), and Dawn Schneider, former PR person for Boies Schiller Flexner who facilitated the interview with BSF, the New York Times Company and the Plaintiffs prior to the Defendants even being served with the lawsuit and before the Complaint was even filed. This is Boies Schiller Flexner's modus operandi and their reach is far beyond that of the Defendants however, the Defendants appropriately filed suit against them for their conspiracy, unethical play to the media, destruction to Defendants' careers, defamation and other various claims. Additionally, the Defendants filed a defamation suit against Sigrid McCawley in the Southern District Court of Florida – 0:24-CV-60911-DSL – Button et al v. McCawley.

an applicable statute of limitations "comes not from any statute but instead from [the] exercise of '[t]he judicial Power ... extending to all Cases, in Law and Equity, arising under th[e] Constitution, [and] the Laws of the United States.'" Id. (quoting U.S. Const. Art. III, § 2.). Equitable tolling is "unavailable in most cases," *Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999),* and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule[.]" *Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000)*)). When a Plaintiff asks a Court to equitably toll the statute of limitations, she bears the burden of establishing two elements: (1) *that she has been pursuing her rights diligently*; and (2) *that some extraordinary circumstance stood in her way and prevented timely filing*. See *Smith, 953 F.3d at 588 (quoting Holland v. Florida, 560 U.S. 631, 634 (2010)*. With regard to the first factor, the litigant must show that she "has been reasonably diligent in pursuing [her] rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing [her] claim in federal court." *Smith, 953 F.3d at 598-99.* It "is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy [her] extraordinary circumstances, [s]he must also be diligent in actively pursuing [her] rights." Id. at 599. Further, the litigant "must demonstrate a causal relationship between the extraordinary circumstances and the lateness of [their] filing." *Leonard v. Gittere, No. 2:99-cv-0360-MMD-DJA, 2020 U.S. Dist. LEXIS 84791,* at *24 (D. Nev. May 14, 2020). In multiple jurisdictions, assertions of emotional trauma as the basis for equitable tolling have failed. In the Second Circuit, the court held that a litigant's "conclusory and vague claim, without a particular description of how [the litigant's] condition adversely affected [their] capacity to function generally or in relationship to the pursuit of [their] rights, is manifestly

insufficient to justify any further inquiry into tolling." *Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000)*. In this case, (to the extent that some of the Plaintiffs *allege* they were minors when the *alleged* conduct occurred), the applicable statutes of limitation were tolled until they reached the age of majority. When they reached eighteen, or the age of majority, the applicable statutes of limitation *ceased to toll and expired* unless Plaintiffs can articulate a justifiable reason why the applicable statutes of limitation should have been tolled for longer. **None of these Plaintiffs** can do so and failed to meet the burden of proof that would constitute tolling. For all of the reasons stated, it is undisputed there is no genuine issue of material fact regarding the statute of limitations including because Plaintiffs admitted Defendants did not prevent them from coming forward timely.

<u>Plaintiffs' Claims Fail – Lack of Damages</u>

Plaintiffs failed to establish that they experienced economic loss. In fact, Plaintiffs' expert deliberately never addressed the loss of revenue or profits that Plaintiffs allegedly experienced. She only limited her opinion to projected losses because Plaintiffs' income *significantly increased* after Defendants' alleged actions. Defendants respectfully request this Court grant their Motion for Summary Judgment as the Plaintiffs fail to prove that there is any disputed fact.

c.    <u>Plaintiffs' Intentional Infliction of Emotional Distress Fails as a Matter of Law</u>

Plaintiffs' claims of Intentional Infliction of Emotional Distress also fails as a matter of law. To establish this cause of action for intentional infliction of emotional distress under Nevada law, a plaintiff must establish that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended or recklessly disregarded the causing of emotional distress; (3) the plaintiff actually suffered severe or extreme emotional distress; and

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(4) the defendant's conduct actually or proximately caused the distress. Olivero v. Lowe, 995 P.2d 1023, 1025 (Nev. 2000). "Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998). There is no statement or material fact in any of the Plaintiffs' interrogatories, admissions or production which contains any specific evidence that Plaintiffs suffered emotional distress. The only relied on "proof" by the Plaintiffs is that the "other parties who have stated they were abused corroborate the other claims"; in other words, the Plaintiffs rely on hearsay, which has been proven false by Defendants' documented evidence.[150] There is no genuine issue of material fact, and the court should grant Defendants' motion for summary judgment as to Plaintiffs' claim for intentional infliction of emotional distress. Plaintiffs failed to show any proof of damages. No reasonable jury could find that Defendants committed any act of sexual assault towards Plaintiffs rendering their claim of intentional infliction of emotional distress void; therefore, the court should grant Defendants' Motion for Summary Judgment as to this cause of action.

XI.     <u>Summary Judgment Is Proper on All Claims as Plaintiffs Cannot Show a Genuine Dispute of Material Fact as a Result of Their Own Repeated Instances of Perjury</u>

Plaintiffs' self-serving, perjurious, and contradicted testimonies should operate to bar their recovery on every claim set forth in their Complaints. Based on the extent of the Plaintiffs' perjury and JD1's incredible inability to remember anything about the event apart from her attorneys wrote for her, the Court need not accept any statement offered by Plaintiffs as true in this matter. When a Court is faced with only evidence that is "uncorroborated and

---

[150] Even Sigrid McCawley and her client Sage lied about non-party Lena Mathews when they stated she was a "victim", as she admitted in her own words those statements were nothing but lies and she was never a victim. The Plaintiffs have already proven their only source of "evidence" is their own perjurious testimony.

self-serving," a "genuine issue" of fact precluding summary judgment does not exist. *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996). (holding that testimony that is contradicted by other sworn statements and evidence "does not present 'a sufficient disagreement to require submission to a jury.'")). In this case, nearly every aspect of the Plaintiffs' testimonies has been exposed as false. On top of it all, the Plaintiffs, (particularly JD1) have zero real memory of any aspect of the alleged assaults or the events leading up to it apart from their allegations that coincidentally mirror the written version of events by their attorneys and JD1's mirrored allegations her co-conspirator Sage Humphries made. The Plaintiffs' record of perjury and amnesia cannot create a genuine issue of material fact that would preclude summary judgment in this case. In stark contrast, the Defendants testified that they have never met JD1, let alone sexually assaulted her and proved the others' allegations to be false with material evidence. The plaintiffs failed to present a single shred of evidence supporting their claims in this matter. Their repeated perjury coupled with the overwhelming evidence refuting their claims far remove this case from the realm of "he said, she said." Plaintiffs' perjurious testimony, which serves as the *only* support for their claims in this case, is entirely incredible and should be summarily disregarded by the Court. It is well established in Nevada that there is no genuine issue of fact when a party completely fabricates an issue as Plaintiffs have done. See *Aldabe, 81 Nev*. at 285, 402 P.2d at 37 (holding "[w]hen [NRCP] 56 speaks of a 'genuine' issue of material fact, it does so with the adversary system in mind. The word 'genuine' has moral overtones. We do not take it to mean a fabricated issue"); see also Anderson, 477 U.S. at 248. Based on the actual and significant evidentiary record, the Defendants did not rape anyone or sexually assault them and their moving target story does

not create a genuine issue where a reasonable jury would return a verdict in [their] favor. The Plaintiffs, in some cases, allowed their criminal cohorts to persuade them to pursue legal action against the Defendants in 2021. In the *four years* since, Plaintiffs have not been able to drum up a single piece of corroborating evidence; Even after filing their complaints, over the last four years, Plaintiffs have produced ***no evidence*** to support their claims apart from their own false testimony. "Such baseless and demonstrably false claims based on nothing more than the word of a party who has shown time and time again to be untruthful would turn summary judgment principles on their head". See Boesiger, 135 Nev., at 194, 444 P.3d at 438-439 ("Summary judgment is an important procedural tool by which 'factually insufficient claims or defenses [may] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources.'") (quoting Celotex Corp. v Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). As such, summary judgment ***must be granted*** as to each of Plaintiffs' claims.

## CONCLUSION

Based on the foregoing, the Buttons respectfully request this Court GRANT summary judgment on all of the Plaintiffs' claims in their favor including their claims of defamation *per se* against the Plaintiffs.


Respectfully dated this 6th day of January, 2025,


Mitchell Taylor Button and Dusty Button
*(Pro se)*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed with

LV_public_docketing@nvdcourts.gov on January 6th, 2025 and served on all parties via

email.

Dated this 6th day of January, 2025,

Mitchell Taylor Button and Dusty Button

(*Pro se*)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT