EXHIBIT 2

MASSACHUSETTS APPEALS BRIEF VOL. I

# VOL. I

Mitchell Taylor Moore
(*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
(310)-499-8702
Desmodynamica@gmail.com

Dusty Button
(*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
(310)-499-8930
Worldofdusty@gmail.com

**COMMONWEALTH OF MASSACHUSETTS**

**APPEALS COURT**

| | |
|---|---|
| M.T.M and D.B | **Docket No. 2023-P-1202** |
| **Appellants,** | |
| v. | **APPELLANTS'** |
| | **RECORD OF APPENDIX** |
| S.H | **VOLUME I OF IV** |
| **Appellee.** | |

APPELLANTS' RECORD OF APPENDIX VOLUME III OF IV

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

Document Name                                                          Start Page #

**VOLUME I**

Docket entries and filings in the lower Court in chronological order

Trial Court Docket                                                             9

Appellant D.B Motion to Vacate                                          18

Appellant M.T.M Motion to Vacate                                      23

Supporting Affidavit of M.T.M and D.B                               28

Appellee's Opposition to Defendants' Motions to Vacate          38

Appellants' Response to Appellee's Opposition                       60

Judge Tracy Lyons order dated 03/10/2023                           93

Judge Steven M. Key's order dated 05/22/2023                     96

Appellants' Joint Notice of Appeal                                      102

**VOLUME II**

Transcripts relied upon for this appeal

Judge Lyons transcript dated 02/02/23                                  4

Judge Key transcript dated 03/27/23                                   109

**VOLUME III**

Appellants' presented exhibits to the lower Court

Orange County Sherriff Department Incident Report May 28th, 2017          7

APPELLANTS' RECORD OF APPENDIX VOLUME III OF IV

Orange County Sherriff Department Incident Report July 22nd, 2017                8

2017 transcript excerpt from Appellee's testimony                9

2017 Affidavit of S.H                10

Nevada District Court filing                13

Appellants letter to Sabina Mariella and Boies Schiller Flexner LLC                16

Photos of airsoft parts and photography props for marketing                19

Photos of Appellants at their home in Los Angeles, hand making garments for

their clothing brand in February 2018                27

Photo of Appellants clothing brand Haytmayl inspired by overcoming online

bullying and harassment                29

Font design references for Appellants' company brand Haytmayl                30

2017 transcript excerpt from Appellee's testimony                35

Text message from S.H to Appellant M.T.M                36

Text messages from S.H from her mother's phone post-kidnapping                37

Sage Humphries' Complaint in the Nevada District Court                41

Excerpt from Appellee's interview with the Boston Magazine                45

Screen shot from Appellee's interview with Good Morning America                46

Appellee's online harassment toward Appellants in 2021                47

Transcript of phone call with Jordyn Brown                50

APPELLANTS' RECORD OF APPENDIX VOLUME III OF IV

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Appellants Objection to sanctions in Nevada District Court January 2023    52

Nevada Court Order    69

Article Cover regarding Daryl Katz, Appellee and hit man Anthony Pellicano, hired to silence Defendants    70

Letter from Appellants' former Nevada counsel to Daryl Katz attorney regarding Appellants counterclaim and Daryl Katz' listed as a third-party with Appellants' declarations    71

Melrose Police Department incident report and photo dated 08/13/2018    87

Photos of airsoft parts and props used for marketing    89

Snapchat message from S.H to M.T.M on July 7, 2017    92

Excerpts from Appellee's testimony in 2017    94

Melrose Police Department incident report dated 06/11/2018    97

Messages between Jordyn Brown and Appellants    98

Photo of S.H with airsoft props    100

Photos receipts of airsoft props    101

Photo of S.H with airsoft props    104

Photo of S.H making fun of therapy    105

Snapchat from S.H to Appellants dated July 7, 2017    106

Snapchat from S.H to Appellants dated July 14, 2017    107

APPELLANTS' RECORD OF APPENDIX VOLUME III OF IV

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Text messages between S.H and her mother received through Nevada discovery litigation                                                                                                    108

Declaration of Laura Button                                                                       110

Declaration of Rich Costa                                                                          116

Declaration of Eric Cheney                                                                        118

Declaration of Taylor Mosher                                                                    121

Excerpt from Appellee's testimony in 2017                                                124

"Fake break-up" voicemail left by S.H to Appellants                                125

Excerpt from Appellee's testimony in 2017                                                126

Snapchat messages from S.H to Appellee warning Appellants about the "fake break-up" voicemail she would be leaving                                                     127

Text message from Appellee's father to Appellants dated May 28th 2017     139

Email from Appellant D.B's former employer Birmingham Royal Ballet     140

Appellee's online harassment toward Appellants in 2017                          141

Various snapchat messages from S.H following her kidnapping to Appellants in June and July 2017 from her younger brother's phone                                    143

Text messages from S.H to Appellants during the course of their dating relationship in April and May of 2017                                                                163

Photo of Appellee with Appellants during their dating relationship in 2017     170

Text messages from S.H to Appellants during their relationship in 2017     171

APPELLANTS' RECORD OF APPENDIX VOLUME III OF IV

1

False police report filed by S.H parents in 2017 with Somerville Police Dept 176

2

**VOLUME IV**

3

4

Appellee's presented exhibits to the lower Court

5

Judge McKenna transcript dated 08/15/2017                                          4

6

7

2017 Affidavit of S.H                                                              73

8

Trial Court Docket APO issuance 2017                                               76

9

10

Judge McKenna Extension hearing transcript dated 08/14/2018                        80

11

Trial Court Docket APO permanent Order 2018                                        91

12

13

Appellants' court filing in Nevada District Court re: 2022 Counterclaim            95

14

Nevada District Court Order re: Sanctions                                          116

15

16

Declaration of D.B in the Nevada District Court                                    127

17

Declaration of M.T.M in the Nevada District Court                                  130

18

19

Daily Mail article dated 09/07/2022                                                133

20

Appellee's 2018 affidavit                                                          166

21

22

Photos of Kennedy Brown's message to S.H                                           172

23

Photo of Appellant M.T.M previous Instagram account                                174

24

25

Photo of Appellants' clothing brand Haytmayl                                       175

26

27

28

APPELLANTS' RECORD OF APPENDIX VOLUME III OF IV

Dated this 25th day of January, 2024,

_____

Mitchell Taylor Moore and Dusty Button

(*Pro se*)

APPELLANTS' RECORD OF APPENDIX VOLUME I OF IV

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 1 of 2 | DOCKET NO. 1701 RO 181 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

Plaintiff's Name **Sage Humphries**

**D E F T. I N F O.**

Defendant's Name & Address
**Mitchell Taylor Moore**
**445 Artisan Way**
**# 531**
**Somerville, Ma.**

Alias, if any

| Date of Birth | | |
|---|---|---|
| | Sex ☐ M ☐ F | Place of Birth |
| SS # (Last four digits only) XXX-XX- | Daytime Ph # ( ) | |
| | Cell Phone # ( ) | |

Boston Municipal Court Department
Central Division
Edward W. Brooke Courthouse
24 New Chardon Street
Boston, MA 02114

**VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE** punishable by imprisonment or fine or both.

**A. THE COURT HAS ISSUED THE FOLLOWING ORDERS TO THE DEFENDANT:** *(only those items checked shall apply)*

☐ This Order was issued without advance notice because the Court determined that there is a substantial likelihood of immediate danger of abuse.
☐ This Order was communicated by telephone from the Judge named below to: Police Dept. _____ Police Officer _____

☒ 1. **YOU ARE ORDERED NOT TO ABUSE THE PLAINTIFF** by harming, threatening or attempting to harm the Plaintiff physically or by placing the Plaintiff in fear of imminent serious physical harm, or by using force, threat or duress to make the Plaintiff engage in sexual relations.

☒ 2. **YOU ARE ORDERED NOT TO CONTACT THE PLAINTIFF,** in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least **150** yards from the Plaintiff even if the Plaintiff seems to allow or request contact. The only exceptions to this order are: a) contact as permitted in Sections 8, 9, 10 and 11 below; or b) by sending the Plaintiff, by mail, by sheriff or by other authorized officer, copies of papers filed with the court when that is required by statute or court rule.

☒ 3. **YOU ARE ORDERED TO IMMEDIATELY LEAVE AND STAY AWAY FROM THE PLAINTIFF'S RESIDENCE,** except as permitted in Sections 8 and 10 below, located at **Wherever that may be** or wherever else you may have reason to know the Plaintiff may reside. The Court also **ORDERS** you (a) to surrender any keys to that residence to the Police; (b) not to damage any belongings of the Plaintiff or any other occupant; (c) not to shut off or cause to be shut off any utilities or mail delivery to the Plaintiff; and (d) not to interfere in any way with the Plaintiff's right to possess that residence, except by appropriate legal proceedings.
☒ If this box is checked, the Court also **ORDERS** you to immediately leave and remain away from the entire apartment building or other multiple family dwelling in which the Plaintiff's residence is located.

☒ 4a. **YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S WORKPLACE** located at **19 Clarendon St. Bos.**
☐ 4b. **YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S SCHOOL** located at **The entire building**
☐ 5a. **THE COURT ORDERS** that the Plaintiff's residential address not appear on the order.
☐ 5b. **THE COURT ORDERS** that the Plaintiff's workplace address not appear on the order.
☐ 5c. **THE COURT ORDERS** that the Plaintiff's school address not appear on the order.
☐ 6. **CUSTODY OF THE FOLLOWING CHILDREN IS AWARDED TO THE PLAINTIFF:**

| N A M E | | A G E | | N A M E | | A G E |
|---|---|---|---|---|---|---|
| | | | | | | |

☐ 7. **YOU ARE ORDERED NOT TO CONTACT THE CHILDREN LISTED ABOVE OR ANY CHILDREN IN THE PLAINTIFF'S CUSTODY LISTED BELOW,** either in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least _____ yards away from them unless you receive written permission from the Court to do otherwise.
☐ You are also ordered to stay away from the following school(s), day care(s), other: _____

| N A M E | | A G E | | N A M E | | A G E |
|---|---|---|---|---|---|---|
| | | | | | | |

☐ 8. **VISITATION WITH THE CHILDREN LISTED IN SECTION 6 IS PERMITTED ONLY AS FOLLOWS (may be ordered by Probate and Family Court only):**

☐ Visitation is only allowed if supervised and in the presence of _____ (name) at the following times _____ to be paid for by _____ (name)
☐ Transportation of children to and from this visitation is to be done by _____ (name) (third party), and not by you.
☐ You may only contact the Plaintiff to arrange this visitation. Contact may be made only by ☐ phone, ☐ e-mail, ☐ text, ☐ other _____

☐ 9. **YOU ARE ORDERED TO PAY SUPPORT IN THE FOLLOWING MANNER:**
☐ $_____ child support per _____ [week/month] by income withholding through the Department of Revenue. Defendant shall send payments to DOR at P.O. Box 55144, Boston, MA 02205-5144 until employer deductions begin.
☐ $_____ child support per _____ [week/month] directly to the Plaintiff by mailing payments to _____
☐ $_____ support for the Plaintiff per _____ [week/month] directly to the Plaintiff by mailing payments to _____
☐ Other orders:

☐ 10. **YOU MAY PICK UP YOUR PERSONAL BELONGINGS** in the company of police at a time agreed to by the Plaintiff.
☐ 11. **YOU ARE ORDERED TO COMPENSATE THE PLAINTIFF** for $_____ in losses suffered as a direct result of the abuse, to be paid in full on or before _____, 20__ ☐ by mailing directly to the Plaintiff ☐ through the Probation Office of this Court.

☒ 12. **THERE IS A SUBSTANTIAL LIKELIHOOD OF IMMEDIATE DANGER OF ABUSE. YOU ARE ORDERED TO IMMEDIATELY SURRENDER** to the **Boston** Police Department or to the police officer serving this order all guns, ammunition, gun licenses and FID cards. Your license to carry a gun, if any, and your FID card, if any, are suspended immediately. **Bos. Pol. Dept.**
- You must immediately surrender the items listed above, and also comply with all other Orders in this case.
- Subject to certain exceptions, purchase and/or possession of a firearm and/or ammunition while this order is in effect is a federal crime. 18 U.S.C. §§ 922(g)(8) and 925.

☐ 13. **ON THE NEXT SCHEDULED HEARING DATE,** the Court will hear testimony and other evidence regarding Section 9 of this order, which involves support for the Plaintiff and/or the minor children. You are hereby ordered to bring with you to the next scheduled hearing date any financial records in your possession (including your most recent tax return and your last four paystubs) that provide evidence of your current income.

☒ 14. **YOU ARE ALSO ORDERED** to surrender any + all personal information pertaining to P, including electronically stored information + is not publish such in...

The Plaintiff must appear at scheduled hearings, or this Order will expire. This Defendant may appear, with or without attorney, to oppose any extension or modification of this Order. If the Defendant does not appear, the Order may be extended or modified as determined by the Judge. For good cause, either the Plaintiff or the Defendant may request the Court to modify this Order before its scheduled expiration date.

FA-2 (1/12)                                                **COURT COPY**

9

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 2 of 2 | DOCKET NO. 17 01 RO 181 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

☐ **15.** Police reports are on file at the_____ Police Department.

☐ **16.** OUTSTANDING WARRANTS FOR THE DEFENDANT'S ARREST:

None per CARI _____ (DOCKET #s) _____ None per CARI (PCF #)

to _____

☐ **17.** An imminent threat of bodily injury exists to the Plaintiff. Notice issued to_____ Police
Department(s) by ☐ telephone ☐ other_____

**B. NOTICE TO LAW ENFORCEMENT**

☐ 1. An appropriate law enforcement officer shall serve upon the Defendant in hand a copy of the Complaint and a certified copy of this Order (and Summons), and make return of service to this Court. If this box is checked ☐, the following alternative service may instead be made, but only if the officer is unable to deliver such copies in hand to the Defendant:_____

☐ 2. Defendant Information Form accompanies this Order.

☐ 3. Defendant has been served in hand by the Court's designee: Name_____ Date_____

| DATE OF ORDER 8.1.17 | TIME OF ORDER 10:38 ☒A.M. ☐P.M. | EXPIRATION DATE OF ORDER 8.15.17 at 4 P.M. | SIGNATURE OF JUDGE / PRINT/TYPE NAME OF JUDGE |
|---|---|---|---|

The above and any subsequent Orders expire on the expiration dates indicated. Hearings on whether to continue and/or modify Orders will be held on dates and times indicated. In the event the Court is closed on the date the Order is to expire, the Order shall remain in full force and effect and the Hearing shall be continued until the next Court business date.

NEXT HEARING DATE 8.15.17 at 9:00 ☒A.M. ☐P.M. Courtroom ~c~

☒ **C. MODIFICATION/EXTENSION**

☒ This order was issued after a hearing at which the Plaintiff ☒ appeared ☐ did not appear and the Defendant ☒ appeared ☐ did not appear.

The Court has ORDERED that the prior order issued 8.1, 20 17 be MODIFIED as follows:

_____
_____
_____

☒ The expiration date of this order has been EXTENDED (See Below) ☐ OTHER MODIFICATION(S) _____

☒ Firearm surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: 8.15.17 | EXPIRATION DATE OF ORDER: 8.14.18 at 4 P.M. | SIGNATURE OF JUDGE / PRINT/TYPE NAME OF JUDGE |
|---|---|---|

| TIME OF MODIFICATION: 12:10 ☐A.M. ☒P.M. | NEXT HEARING DATE: 8.14.18 at 9:00 ☒A.M. ☐P.M. Courtroom ~c~ |
|---|---|

☐ **D. MODIFICATION/EXTENSION**

☐ This order was issued after a hearing at which the Plaintiff ☐ appeared ☐ did not appear and the Defendant ☐ appeared ☐ did not appear.

The Court has ORDERED that the prior order issued _____, 20____ be MODIFIED as follows::

_____
_____
_____
_____

☐ The expiration date of this order has been EXTENDED (See Below) ☐ OTHER MODIFICATION(S) _____

☐ Firearm surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: | EXPIRATION DATE OF ORDER: at 4 P.M. | SIGNATURE OF JUDGE / PRINT/TYPE NAME OF JUDGE |
|---|---|---|

| TIME OF MODIFICATION: ☐A.M. ☐P.M. | NEXT HEARING DATE: _____ at _____ ☐A.M. ☐P.M. Courtroom _____ |
|---|---|

☐ **E. PRIOR COURT ORDER TERMINATED**

This Court's prior Order is terminated. Law enforcement agencies shall destroy all records of such Order.

☐ TERMINATED AT PLAINTIFF'S REQUEST.

| SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE | DATE OF ORDER | TIME OF ORDER | ☐A.M. ☐P.M. |
|---|---|---|---|

| WITNESS - FIRST OR CHIEF JUSTICE | A true copy, attest (Asst.) Clerk-Magistrate/ (Asst.) Register of Probate |
|---|---|

FA-2A (5/15)

**COURT COPY**

10

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 1 of 2 | DOCKET NO. 1701 RO 181 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

Plaintiff's Name: Sage Humphries

Defendant's Name & Address: Mitchell Taylor Meore
445 Artisan Way
# 531
Somerville, Ma.

Alias, if any:

Date of Birth:

Sex: ☐ M ☐ F    Place of Birth:

SS # (Last four digits only): XXX-XX-

Daytime Ph # ( )

Cell Phone # ( )

Boston Municipal Court Department
Central Division
Edward W. Brooke Courthouse
24 New Chardon Street
Boston, MA 02114

**VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE** punishable by imprisonment or fine or both.

**A. THE COURT HAS ISSUED THE FOLLOWING ORDERS TO THE DEFENDANT:** (only those items checked shall apply)

☒ This Order was issued without advance notice because the Court determined that there is a substantial likelihood of immediate danger of abuse.

☐ This Order was communicated by telephone from the Judge named below to: Police Dept._____ Police Officer_____

☒ 1. YOU ARE ORDERED NOT TO ABUSE THE PLAINTIFF by harming, threatening or attempting to harm the Plaintiff physically or by placing the Plaintiff in fear of imminent serious physical harm, or by using force, threat or duress to make the Plaintiff engage in sexual relations.

☒ 2. YOU ARE ORDERED NOT TO CONTACT THE PLAINTIFF, in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least **150** yards from the Plaintiff even if the Plaintiff seems to allow or request contact. The only exceptions to this order are: a) contact as permitted in Sections 8, 9, 10 and 11 below; or b) by sending the Plaintiff, by mail, by sheriff or by other authorized officer, copies of papers filed with the court when that is required by statute or court rule.

☒ 3. YOU ARE ORDERED TO IMMEDIATELY LEAVE AND STAY AWAY FROM THE PLAINTIFF'S RESIDENCE, except as permitted in Sections 8 and 10 below, located at **Wherever that may be** or wherever else you may have reason to know the Plaintiff may reside. The Court also ORDERS you (a) to surrender any keys to that residence to the Police; (b) not to damage any belongings of the Plaintiff or any other occupant, (c) not to shut off or cause to be shut off any utilities or mail delivery to the Plaintiff; and (d) not to interfere in any way with the Plaintiff's right to possess that residence, except by appropriate legal proceedings.

☒ If this box is checked, the Court also ORDERS you to immediately leave and remain away from the entire apartment building or other multiple family dwelling in which the Plaintiff's residence is located.

☒ 4a. YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S WORKPLACE located at **19 Clarendon St. Bos.**
☐ 4b. YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S SCHOOL located at **The Entire building**
☐ 5a. THE COURT ORDERS that the Plaintiff's residential address not appear on the order.
☐ 5b. THE COURT ORDERS that the Plaintiff's workplace address not appear on the order.
☐ 5c. THE COURT ORDERS that the Plaintiff's school address not appear on the order.
☐ 6. CUSTODY OF THE FOLLOWING CHILDREN IS AWARDED TO THE PLAINTIFF:

| N A M E | | A G E | | N A M E | | A G E | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

☐ 7. YOU ARE ORDERED NOT TO CONTACT THE CHILDREN LISTED ABOVE OR ANY CHILDREN IN THE PLAINTIFF'S CUSTODY LISTED BELOW, either in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least _____ yards away from them unless you receive written permission from the Court to do otherwise.
☐ You are also ordered to stay away from the following school(s), day care(s), other: _____

| N A M E | | A G E | | N A M E | | A G E | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

☐ 8. VISITATION WITH THE CHILDREN LISTED IN SECTION 6 IS PERMITTED ONLY AS FOLLOWS (may be ordered by Probate and Family Court only):

_____

☐ Visitation is only allowed if supervised and in the presence of _____ (name) at the following times _____
to be paid for by _____ (name)
☐ Transportation of children to and from this visitation is to be done by _____ (name) (third party), and not by you.
☐ You may only contact the Plaintiff to arrange this visitation. Contact may be made only by ☐ phone, ☐ e-mail, ☐ text, ☐ other _____

☐ 9. YOU ARE ORDERED TO PAY SUPPORT IN THE FOLLOWING MANNER:
☐ $_____ child support per _____ [week/month] by income withholding through the Department of Revenue. Defendant shall send payments to DOR at P.O. Box 55144, Boston, MA 02205-5144 until employer deductions begin.
☐ $_____ child support per _____ [week/month] directly to the Plaintiff by mailing payments to _____.
☐ $_____ support for the Plaintiff per _____ [week/month] directly to the Plaintiff by mailing payments to _____
☐ Other orders _____

☐ 10. YOU MAY PICK UP YOUR PERSONAL BELONGINGS in the company of police at a time agreed to by the Plaintiff.
☐ 11. YOU ARE ORDERED TO COMPENSATE THE PLAINTIFF for $_____ in losses suffered as a direct result of the abuse, to be paid in full on or before _____, 20___ ☐ by mailing directly to the Plaintiff ☐ through the Probation Office of this Court.

☒ 12. THERE IS A SUBSTANTIAL LIKELIHOOD OF IMMEDIATE DANGER OF ABUSE. YOU ARE ORDERED TO IMMEDIATELY SURRENDER to the **Boston** Police Department or to the police officer serving this order all guns, ammunition, gun licenses and FID cards. Your license to carry a gun, if any, and your FID card, if any, are suspended immediately. **Bos. Pol. Dept.**
• You must immediately surrender the items listed above, and also comply with all other Orders in this case.
• Subject to certain exceptions, purchase and/or possession of a firearm and/or ammunition while this order is in effect is a federal crime. 18 U.S.C. §§ 922(g)(8) and 925.

☐ 13. ON THE NEXT SCHEDULED HEARING DATE, the Court will hear testimony and other evidence regarding Section 9 of this order, which involves support for the Plaintiff and/or minor children. You are hereby ordered to bring with you to the next scheduled hearing date any financial records in your possession (including your most recent tax return and your last four paystubs) that provide evidence of your current income.

☒ 14. YOU ARE ALSO ORDERED **to surrender any + all personal information pertaining to P, including electronically stored information is not to publish such in**

The Plaintiff must appear at scheduled hearings, or this Order will expire. The Defendant may appear, with or without attorney, to oppose any extension or modification of this Order. If the Defendant does not appear, the Order may be extended or modified as determined by the Judge. For good cause, either the Plaintiff or the Defendant may request the Court to modify this Order before its scheduled expiration date.

FA-2 (1/12)

**COURT COPY**

11

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 2 of 2 | DOCKET NO. 1701 R0 181 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

☐ 15. Police reports are on file at the _____ Police Department.

☐ 16. OUTSTANDING WARRANTS FOR THE DEFENDANT'S ARREST:
None per CARI _____ (DOCKET #s) _____ None per CARI (PCF #)
to _____

☐ 17. An imminent threat of bodily injury exists to the Plaintiff. Notice issued to _____ Police Department(s) by ☐ telephone ☐ other _____.

**B. NOTICE TO LAW ENFORCEMENT**

☐ 1. An appropriate law enforcement officer shall serve upon the Defendant in hand a copy of the Complaint and a certified copy of this Order (and Summons), and make return of service to this Court. If this box is checked ☐, the following alternative service may instead be made, but only if the officer is unable to deliver such copies in hand to the Defendant: _____

☐ 2. Defendant Information Form accompanies this Order.

☐ 3. Defendant has been served in hand by the Court's designee: Name _____ Date _____

| DATE OF ORDER 8.1.17 | TIME OF ORDER 10:38 ☒ A.M. ☐ P.M. | EXPIRATION DATE OF ORDER 8-15-17 at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE |
|---|---|---|---|

The above and any subsequent Orders expire on the expiration dates indicated. Hearings on whether to continue and/or modify Orders will be held on dates and times indicated. In the event the Court is closed on the date the Order is to expire, the Order shall remain in full force and effect and the Hearing shall be continued until the next Court business date.

NEXT HEARING DATE 8-15-17 at 9:00 ☒ A.M. ☐ P.M. Courtroom C

**☒ C. MODIFICATION/EXTENSION**

☒ This order was issued after a hearing at which the Plaintiff ☒ appeared ☐ did not appear and the Defendant ☒ appeared ☐ did not appear. The Court has **ORDERED** that the prior order issued 8 - 1 , 20 17 be **MODIFIED** as follows:

_____
_____
_____
_____

☒ The expiration date of this order has been **EXTENDED** (See Below) ☐ **OTHER MODIFICATION(S)** _____

☒ **Firearm** surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: 8-15-17 | EXPIRATION DATE OF ORDER: 8-14-18 at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE |
|---|---|---|
| TIME OF MODIFICATION 12:10 ☐ A.M. ☒ P.M. | NEXT HEARING DATE: 8-14-18 at 9:00 ☒ A.M. ☐ P.M. Courtroom C | |

**☐ D. MODIFICATION/EXTENSION**

☐ This order was issued after a hearing at which the Plaintiff ☐ appeared ☐ did not appear and the Defendant ☐ appeared ☐ did not appear. The Court has **ORDERED** that the prior order issued _____, 20 _____ be **MODIFIED** as follows::

_____
_____
_____
_____
_____

☐ The expiration date of this order has been **EXTENDED** (See Below) ☐ **OTHER MODIFICATION(S)** _____

☐ **Firearm** surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: | EXPIRATION DATE OF ORDER: at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE |
|---|---|---|
| TIME OF MODIFICATION: ☐ A.M. ☐ P.M. | NEXT HEARING DATE: _____ at _____ ☐ A.M. ☐ P.M. Courtroom _____ | |

**☐ E. PRIOR COURT ORDER TERMINATED**

This Court's prior Order is terminated. Law enforcement agencies shall destroy all records of such Order.

☐ TERMINATED AT PLAINTIFF'S REQUEST.

| SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE | DATE OF ORDER | TIME OF ORDER | ☐ A.M. ☐ P.M. |
|---|---|---|---|

| WITNESS - FIRST OR CHIEF JUSTICE | A true copy, attest (Asst.) Clerk-Magistrate/ (Asst.) Register of Probate |
|---|---|

FA-2A (5/15)

**COURT COPY**

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 1 of 2 | DOCKET NO. 1701 RO 182 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

Plaintiff's Name: Sayre Humphries

Boston Municipal Court Department
Central Division
Edward W. Brooke Courthouse
24 New Chardon Street
Boston, MA 02114

Defendant's Name & Address: DUSTY BUTTON 445 ARTISAN WAY APT 531 SOMERVILLE MA

Alias, if any:

Date of Birth: 6-6-89
Sex: M / F
Place of Birth:

SS # (Last four digits only): XXX-XX-

Daytime Ph # (

Cell Phone # 617 501-622

**VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE** punishable by imprisonment or fine or both.

**A. THE COURT HAS ISSUED THE FOLLOWING ORDERS TO THE DEFENDANT:** *(only those items checked shall apply)*

☒ This Order was issued without advance notice because the Court determined that there is a substantial likelihood of immediate danger of abuse.
☐ This Order was communicated by telephone from the Judge named below to: Police Dept._____ Police Officer._____

☒ 1. **YOU ARE ORDERED NOT TO ABUSE THE PLAINTIFF** by harming, threatening or attempting to harm the Plaintiff physically or by placing the Plaintiff in fear of imminent serious physical harm, or by using force, threat or duress to make the Plaintiff engage in sexual relations.

☒ 2. **YOU ARE ORDERED NOT TO CONTACT THE PLAINTIFF,** in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least **150** yards from the Plaintiff even if the Plaintiff seems to allow or request contact. The only exceptions to this order are: a) contact as permitted in Sections 8, 9, 10 and 11 below; or b) by sending the Plaintiff, by mail, by sheriff or by other authorized officer, copies of papers filed with the court when that is required by statute or court rule.

☒ 3. **YOU ARE ORDERED TO IMMEDIATELY LEAVE AND STAY AWAY FROM THE PLAINTIFF'S RESIDENCE,** except as permitted in Sections 8 and 10 below, located at _Wherever that may be._ _____ or wherever else you may have reason to know the Plaintiff may reside. The Court also **ORDERS** you (a) to surrender any keys to that residence to the Police; (b) not to damage any belongings of the Plaintiff or any other occupant; (c) not to shut off or cause to be shut off any utilities or mail delivery to the Plaintiff; and (d) not to interfere in any way with the Plaintiff's right to possess that residence, except by appropriate legal proceedings.

   ☒ **If this box is checked, the Court also ORDERS** you to immediately leave and remain away from the entire apartment building or other multiple family dwelling in which the Plaintiff's residence is located.

☒ 4a. **YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S WORKPLACE** located at _19 Clarendon St. Bos._
☐ 4b. **YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S SCHOOL** located at _The entire building_
☒ 5a. **THE COURT ORDERS** that the Plaintiff's residential address not appear on the order.
☐ 5b. **THE COURT ORDERS** that the Plaintiff's workplace address not appear on the order.
☐ 5c. **THE COURT ORDERS** that the Plaintiff's school address not appear on the order.
☐ 6. **CUSTODY OF THE FOLLOWING CHILDREN IS AWARDED TO THE PLAINTIFF:**

| NAME | | AGE | | NAME | | AGE |
|---|---|---|---|---|---|---|
| | | | | | | |

☐ 7. **YOU ARE ORDERED NOT TO CONTACT THE CHILDREN LISTED ABOVE OR ANY CHILDREN IN THE PLAINTIFF'S CUSTODY LISTED BELOW,** either in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least _____ yards away from them unless you receive written permission from the Court to do otherwise.
   ☐ You are also ordered to stay away from the following school(s), day care(s), other: _____

| NAME | | AGE | | NAME | | AGE |
|---|---|---|---|---|---|---|
| | | | | | | |

☐ 8. **VISITATION WITH THE CHILDREN LISTED IN SECTION 6 IS PERMITTED ONLY AS FOLLOWS (may be ordered by Probate and Family Court only):**

   ☐ Visitation is only allowed if supervised and in the presence of _____ (name) at the following times _____ to be paid for by _____ (name) (third party), and not by you.
   ☐ Transportation of children to and from this visitation is to be done by _____ (name)
   ☐ You may only contact the Plaintiff to arrange this visitation. Contact may be made only by ☐ phone, ☐ e-mail, ☐ text, ☐ other _____

☐ 9. **YOU ARE ORDERED TO PAY SUPPORT IN THE FOLLOWING MANNER:**
   ☐ $_____ child support per _____ [week/month] by income withholding through the Department of Revenue. Defendant shall send payments to DOR at P.O. Box 55144, Boston, MA 02205-5144 until employer deductions begin.
   ☐ $_____ child support per _____ [week/month] directly to the Plaintiff by mailing payments to _____
   ☐ $_____ support for the Plaintiff per _____ [week/month] directly to the Plaintiff by mailing payments to _____
   ☐ Other orders: _____

☐ 10. **YOU MAY PICK UP YOUR PERSONAL BELONGINGS** in the company of police at a time agreed to by the Plaintiff.
☐ 11. **YOU ARE ORDERED TO COMPENSATE THE PLAINTIFF** for $_____ in losses suffered as a direct result of the abuse, to be paid in full on or before _____, 20____. ☐ by mailing directly to the Plaintiff ☐ through the Probation Office of this Court.

☒ 12. **THERE IS A SUBSTANTIAL LIKELIHOOD OF IMMEDIATE DANGER OF ABUSE. YOU ARE ORDERED TO IMMEDIATELY SURRENDER** to the _Boston_ Police Department or to the police officer serving this order all guns, ammunition, gun licenses and FID cards. Your license to carry a gun, if any, and your FID card, if any, are suspended immediately. _Bos. Pol. Dept._
   • You must immediately surrender the items listed above, and also comply with all other Orders in this case.
   • Subject to certain exceptions, purchase and/or possession of a firearm or ammunition while this order is in effect is a federal crime. 18 U.S.C. §§ 922(g)(8) and 925.

☐ 13. **ON THE NEXT SCHEDULED HEARING DATE,** the Court will hear testimony and other evidence regarding Section 9 of this order, which involves support for the Plaintiff and/or the minor children. You are hereby ordered to bring with you to the next scheduled hearing date any financial records in your possession (including your most recent tax return and your last four paystubs) that provide evidence of your current income.

☒ 14. **YOU ARE ALSO ORDERED** to surrender any + all personal information pertaining to P, including electronically stored information + is not to publish such info.

The Plaintiff must appear at scheduled hearings, or this Order will expire. The Defendant may appear, with or without attorney, to oppose any extension or modification of this Order. If the Defendant does not appear, the Order may be extended or modified as determined by the Judge. For good cause, either the Plaintiff or the Defendant may request the Court to modify this Order before its scheduled expiration date.

FA-2 (1/12)

13

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 2 of 2 | DOCKET NO. 170cR0 182 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

☐ **15.** Police reports are on file at the _____ Police Department.

☐ **16.** OUTSTANDING WARRANTS FOR THE DEFENDANT'S ARREST:

None per CARI _____ (DOCKET #s) _____ None per CARI (PCF #)

to _____

☐ **17.** An imminent threat of bodily injury exists to the Plaintiff. Notice issued to _____ Police Department(s) by ☐ telephone ☐ other _____ .

**B. NOTICE TO LAW ENFORCEMENT**

☐ 1. An appropriate law enforcement officer shall serve upon the Defendant in hand a copy of the Complaint and a certified copy of this Order (and Summons), and make return of service to this Court. If this box is checked ☐, the following alternative service may instead be made, but only if the officer is unable to deliver such copies in hand to the Defendant: _____
☐ 2. Defendant Information Form accompanies this Order.
☐ 3. Defendant has been served in hand by the Court's designee:  Name _____ Date _____

| DATE OF ORDER 8·1·17 | TIME OF ORDER 10:44 ☑ A.M. ☐ P.M. | EXPIRATION DATE OF ORDER 8·15·17 at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE |
|---|---|---|---|

The above and any subsequent Orders expire on the expiration dates indicated. Hearings on whether to continue and/or modify Orders will be held on dates and times indicated. In the event the Court is closed on the date the Order is to expire, the Order shall remain in full force and effect and the Hearing shall be continued until the next Court business date.

NEXT HEARING DATE 8·15·17 at 9:00 ☑ A.M. ☐ P.M.    Courtroom "C"

☑ **C. MODIFICATION/EXTENSION**

☑ This order was issued after a hearing at which the Plaintiff ☑ appeared ☐ did not appear and the Defendant ☑ appeared ☐ did not appear.
The Court has ORDERED that the prior order issued  8·1·17 , 20_____  be MODIFIED as follows:

_____
_____
_____
_____

☑ The expiration date of this order has been EXTENDED  (See Below) ☐ OTHER MODIFICATION(S) _____

☑ Firearm surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: 8·15·17 | EXPIRATION DATE OF ORDER: 8·14·18 at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE |
|---|---|---|

TIME OF MODIFICATION: 12:10 ☐ A.M. ☑ P.M.    NEXT HEARING DATE: 8·14·18 at 9:00 ☑ A.M. ☐ P.M. Courtroom "C"

☐ **D. MODIFICATION/EXTENSION**

☐ This order was issued after a hearing at which the Plaintiff ☐ appeared ☐ did not appear and the Defendant ☐ appeared ☐ did not appear.
The Court has ORDERED that the prior order issued _____ , 20_____  be MODIFIED as follows::

_____
_____
_____
_____
_____

☐ The expiration date of this order has been EXTENDED  (See Below) ☐ OTHER MODIFICATION(S) _____

☐ Firearm surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: | EXPIRATION DATE OF ORDER: at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE |
|---|---|---|

TIME OF MODIFICATION: _____ ☐ A.M. ☐ P.M.    NEXT HEARING DATE: _____ at _____ ☐ A.M. ☐ P.M. Courtroom _____

☐ **E. PRIOR COURT ORDER TERMINATED**

This Court's prior Order is terminated. Law enforcement agencies shall destroy all records of such Order.
☐ TERMINATED AT PLAINTIFF'S REQUEST.

| SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE | DATE OF ORDER | TIME OF ORDER | ☐ A.M. ☐ P.M. |
|---|---|---|---|

| WITNESS - FIRST OR CHIEF JUSTICE | A true copy, attest (Asst.) Clerk-Magistrate/ (Asst.) Register of Probate |
|---|---|

FA-2A (5/15)

**COURT COPY**

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 1 of 2 | DOCKET NO. 1701 RO 182 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

**Plaintiff's Name** Sage Humphries

**Name & Address Of Court**
Boston Municipal Court Department
Central Division
Edward W. Brooke Courthouse
24 New Chardon Street
Boston, MA 02114

D E F T.
I N F O.

**Defendant's Name & Address**
DUSTY BUTTON
445 ARTISAN WAY
APT 531
SOMERVILLE MA

**Alias, if any**

Date of Birth 6-6-89    Sex ☐ M  ☒ F    Place of Birth

SS # (Last four digits only) XXX-XX-    Daytime Ph # ( )

Cell Phone # 617 501-622

**VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE** punishable by imprisonment or fine or both.

**A. THE COURT HAS ISSUED THE FOLLOWING ORDERS TO THE DEFENDANT:** (only those items checked shall apply)

☐ This Order was issued without advance notice because the Court determined that there is a substantial likelihood of immediate danger of abuse.

☐ This Order was communicated by telephone from the Judge named below to: Police Dept._____ Police Officer_____

☒ 1. **YOU ARE ORDERED NOT TO ABUSE THE PLAINTIFF** by harming, threatening or attempting to harm the Plaintiff physically or by placing the Plaintiff in fear of imminent serious physical harm, or by using force, threat or duress to make the Plaintiff engage in sexual relations.

☒ 2. **YOU ARE ORDERED NOT TO CONTACT THE PLAINTIFF,** in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least 150 yards from the Plaintiff even if the Plaintiff seems to allow or request contact. The only exceptions to this order are: a) contact as permitted in Sections 8, 9, 10 and 11 below; or b) by sending the Plaintiff, by mail, by sheriff or by other authorized officer, copies of papers filed with the court when that is required by statute or court rule.

☒ 3. **YOU ARE ORDERED TO IMMEDIATELY LEAVE AND STAY AWAY FROM THE PLAINTIFF'S RESIDENCE,** except as permitted in Sections 8 and 10 below, located at Wherever that may be._____ or wherever else you may have reason to know the Plaintiff may reside. The Court also **ORDERS** you (a) to surrender any keys to that residence to the Police; (b) not to damage any belongings of the Plaintiff or any other occupant; (c) not to shut off or cause to be shut off any utilities or mail delivery to the Plaintiff; and (d) not to interfere in any way with the Plaintiff's right to possess that residence, except by appropriate legal proceedings.

☒ If this box is checked, the Court also **ORDERS** you to immediately leave and remain away from the entire apartment building or other multiple family dwelling in which the Plaintiff's residence is located.

☒ 4a. **YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S WORKPLACE** located at 19 Clarendon ST. Bos. The Entire building.

☐ 4b. **YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S SCHOOL** located at _____

☒ 5a. **THE COURT ORDERS** that the Plaintiff's residential address not appear on the order.

☐ 5b. **THE COURT ORDERS** that the Plaintiff's workplace address not appear on the order.

☐ 5c. **THE COURT ORDERS** that the Plaintiff's school address not appear on the order.

☐ 6. **CUSTODY OF THE FOLLOWING CHILDREN IS AWARDED TO THE PLAINTIFF:**

| N A M E | A G E | N A M E | A G E |
|---|---|---|---|
| | | | |

☐ 7. **YOU ARE ORDERED NOT TO CONTACT THE CHILDREN LISTED ABOVE OR ANY CHILDREN IN THE PLAINTIFF'S CUSTODY LISTED BELOW,** either in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least _____ yards away from them unless you receive written permission from the Court to do so otherwise.

☐ You are also ordered to stay away from the following school(s), day care(s), other: _____

| N A M E | A G E | N A M E | A G E |
|---|---|---|---|
| | | | |

☐ 8. **VISITATION WITH THE CHILDREN LISTED IN SECTION 6 IS PERMITTED ONLY AS FOLLOWS (may be ordered by Probate and Family Court only):**

☐ Visitation is only allowed if supervised and in the presence of _____ (name) at the following times _____ to be paid for by _____ (name)

☐ Transportation of children to and from this visitation is to be done by _____ (name) (third party), and not by you.

☐ You may only contact the Plaintiff to arrange this visitation. Contact may be made only by ☐ phone, ☐ e-mail, ☐ text, ☐ other _____

☐ 9. **YOU ARE ORDERED TO PAY SUPPORT IN THE FOLLOWING MANNER:**

☐ $_____ child support per _____ [week/month] by income withholding through the Department of Revenue. Defendant shall send payments to DOR at P.O. Box 55144, Boston, MA 02205-5144 until employer deductions begin.

☐ $_____ child support per _____ [week/month] directly to the Plaintiff by mailing payments to _____

☐ $_____ support for the Plaintiff per _____ [week/month] directly to the Plaintiff by mailing payments to _____

☐ Other orders: _____

☐ 10. **YOU MAY PICK UP YOUR PERSONAL BELONGINGS** in the company of police at a time agreed to by the Plaintiff.

☐ 11. **YOU ARE ORDERED TO COMPENSATE THE PLAINTIFF** for $_____ in losses suffered as a direct result of the abuse, to be paid in full on or before _____, 20____ ☐ by mailing directly to the Plaintiff ☐ through the Probation Office of this Court.

☒ 12. **THERE IS A SUBSTANTIAL LIKELIHOOD OF IMMEDIATE DANGER OF ABUSE. YOU ARE ORDERED TO IMMEDIATELY SURRENDER** to the Boston Police Department or to the police officer serving this order all guns, ammunition, gun licenses and FID cards. Your license to carry a gun, if any, and your FID card, if any, are suspended immediately. Bos. Pol. Dept.

• You must immediately surrender the items listed above, and also comply with all other Orders in this case.

• Subject to certain exceptions, purchase and/or possession of a firearm and/or ammunition while this order is in effect is a federal crime. 18 U.S.C. §§ 922(g)(8) and 925.

☐ 13. **ON THE NEXT SCHEDULED HEARING DATE,** the Court will hear testimony and other evidence regarding Section 9 of this order, which involves support for the Plaintiff and/or the minor children. You are hereby ordered to bring with you to the next scheduled hearing date any financial records in your possession (including your most recent tax return and your last four paystubs) that provide evidence of your current income.

☒ 14. **YOU ARE ALSO ORDERED** D in to surrender any & all personal information pertaining to P. including ELECTRONICALLY stored information I is not to public any such info.

The Plaintiff must appear at scheduled hearings, or this Order will expire. The Defendant may appear, with or without attorney, to oppose any extension or modification of this Order. If the Defendant does not appear, the Order may be extended or modified as determined by the Judge. For good cause, either the Plaintiff or the Defendant may request the Court to modify this Order before its scheduled expiration date.

FA-2 (1/12)

| ABUSE PREVENTION ORDER<br>(G.L. c. 209A) Page 2 of 2 | DOCKET NO.<br>1701 RO 182 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

☐ 15. Police reports are on file at the _____ Police Department.

☐ 16. OUTSTANDING WARRANTS FOR THE DEFENDANT'S ARREST:
None per CARI _____ (DOCKET #s) _____ None per CARI (PCF #)
to _____

☐ 17. An imminent threat of bodily injury exists to the Plaintiff. Notice issued to _____ Police
Department(s) by ☐ telephone ☐ other _____.

**B. NOTICE TO LAW ENFORCEMENT**

☐ 1. An appropriate law enforcement officer shall serve upon the Defendant in hand a copy of the Complaint and a certified copy of this Order (and Summons), and make return of service to this Court. If this box is checked ☐, the following alternative service may instead be made, but only if the officer is unable to deliver such copies in hand to the Defendant: _____

☐ 2. Defendant Information Form accompanies this Order.

☐ 3. Defendant has been served in hand by the Court's designee:  Name _____ Date _____

| DATE OF ORDER<br>8·1·17 | TIME OF ORDER<br>10:44 ☒ A.M. ☐ P.M. | EXPIRATION DATE OF ORDER<br>8·15·17 at 4 P.M. | SIGNATURE OF JUDGE<br>PRINT/TYPE NAME OF JUDGE |
|---|---|---|---|

The above and any subsequent Orders expire on the expiration dates indicated. Hearings on whether to continue and/or modify Orders will be held on dates and times indicated. In the event the Court is closed on the date the Order is to expire, the Order shall remain in full force and effect and the Hearing shall be continued until the next Court business date.

NEXT HEARING DATE: 8·15·17 at 9:00 ☒ A.M. ☐ P.M. Courtroom "C"

**☒ C. MODIFICATION/EXTENSION**

☒ This order was issued after a hearing at which the Plaintiff ☒ appeared ☐ did not appear and the Defendant ☒ appeared ☐ did not appear.
The Court has **ORDERED** that the prior order issued  8·1·17 , 20_____ be **MODIFIED** as follows:

_____

_____

_____

☒ The expiration date of this order has been **EXTENDED** (See Below) ☐ OTHER MODIFICATION(S) _____

☒ **Firearm** surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION:<br>8·15·17 | EXPIRATION DATE OF ORDER:<br>8·14·18 at 4 P.M. | SIGNATURE OF JUDGE<br>PRINT/TYPE NAME OF JUDGE |
|---|---|---|
| TIME OF<br>MODIFICATION: 12:10 ☐ A.M. ☒ P.M. | NEXT HEARING DATE: 8·14·18 at 9:00 ☒ A.M. ☐ P.M. Courtroom "C" | |

**☐ D. MODIFICATION/EXTENSION**

☐ This order was issued after a hearing at which the Plaintiff ☐ appeared ☐ did not appear and the Defendant ☐ appeared ☐ did not appear.
The Court has **ORDERED** that the prior order issued _____, 20_____ be **MODIFIED** as follows::

_____

_____

_____

_____

☐ The expiration date of this order has been **EXTENDED** (See Below) ☐ OTHER MODIFICATION(S) _____

☐ **Firearm** surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: | EXPIRATION DATE OF ORDER:<br>at 4 P.M. | SIGNATURE OF JUDGE<br>PRINT/TYPE NAME OF JUDGE |
|---|---|---|
| TIME OF<br>MODIFICATION: ☐ A.M. ☐ P.M. | NEXT HEARING DATE: _____ at _____ ☐ A.M. ☐ P.M. Courtroom _____ | |

**☐ E. PRIOR COURT ORDER TERMINATED**

This Court's prior Order is terminated. Law enforcement agencies shall destroy all records of such Order.

☐ TERMINATED AT PLAINTIFF'S REQUEST.

| SIGNATURE OF JUDGE<br>PRINT/TYPE NAME OF JUDGE | DATE OF ORDER | TIME OF ORDER | ☐ A.M.<br>☐ P.M. |
|---|---|---|---|

| WITNESS - FIRST OR CHIEF JUSTICE | A true copy, attest (Asst.) Clerk-Magistrate/ (Asst.) Register of Probate |
|---|---|

FA-2A (5/15)

**COURT COPY**

16

**COMPLAINT FOR PROTECTION FROM ABUSE**
(G. L. c. 209A) Page 1 of 2

COURT USE ONLY – DOCKET NO. 1701 R0182

**TRIAL COURT OF MASSACHUSETTS**

A | ☒ BOSTON MUNICIPAL COURT ☐ DISTRICT COURT | ☐ PROBATE & FAMILY COURT | ☐ SUPERIOR COURT | _____ DIVISION

Name of Plaintiff *(person seeking protection)*

**Sage Humphries**

Name of Defendant *(person accused of abuse)*

**Dusty Button**
**445 Artisan Way #531**
**Somerville MA**

Defendant's Alias, if any

Sex: ☐ M ☒ F

C
☒ I am 18 or older.
☐ I am under the age of 18, and
_____
my _____ *(relationship to Plaintiff)* has filed this complaint for me.
☒ The Defendant is 18 or older.

G
The Defendant and Plaintiff:
☐ are currently married to each other
☐ were formerly married to each other
☐ are not married but we are related to each other by blood or marriage; specifically, the Defendant is my _____
☐ are the parents of one or more children
☐ are not related but live in the same household
☒ were formerly members of the same household
☒ are or were in a dating or engagement relationship.

D
To my knowledge, the Defendant possesses the following guns, firearms identification card, and/or license to carry: **has over fifty guns at home**

H
Does the Plaintiff have any children under the age of 18?
☒ No ☐ Yes
If Yes, the Plaintiff shall complete the appropriate parts of Page 2.

E
Are there any prior or pending court actions in any state or country involving the Plaintiff and the Defendant for divorce, annulment, separate support, legal separation or abuse prevention? ☒ No ☐ Yes  If Yes, give Court, type of case, date, and (if available) docket no.

I
On or about (dates) **March 2017 onward thru July 2017** I suffered abuse when the Defendant:
☒ attempted to cause me physical harm ☒ placed me in fear of imminent serious physical harm
☒ caused me physical harm ☐ ☒ caused me to engage in sexual relations by force, threat or duress

J
**THEREFORE, I ASK THE COURT:**

☒ 1. to order the Defendant to stop abusing me by harming, threatening or attempting to harm me physically, or placing me in fear of imminent serious physical harm, or by using force, threat or duress to make me engage in sexual relations.
☒ 2. to order the Defendant not to contact me, unless authorized to do so by the Court.
☒ 3a. to order the Defendant to leave and remain away from my residence: *See Plaintiff Confidential Information Form.*
If this is an apartment building or other multiple family dwelling, check here ☒
☒ 3b. to order the Defendant to leave and remain away from my workplace: *See Plaintiff Confidential Information Form.*
☐ 3c. to order the Defendant to leave and remain away from my school: *See Plaintiff Confidential Information Form.*
☒ 4a. to order that my residential address not appear on the order.
☐ 4b. to order that my workplace address not appear on the order.
☐ 4c. to order that my school address not appear on the order.
☐ 5. to order the Defendant to pay me $_____ in compensation for the following losses suffered as a direct result of the abuse:
_____
☐ 6. to order the Defendant, who has a legal obligation to do so, to pay temporary support to me.
☐ 7. to order the relief requested on Page 2 of this Complaint pertaining to my minor child or children.
☐ 8. to order the following: _____
☒ 9. to order the relief I have requested, except for temporary support for me and/or my child(ren) and for compensation for losses suffered, without advance notice to the Defendant because there is a substantial likelihood of immediate danger of abuse. I understand that if the Court issues such a temporary Order, the Court will schedule a hearing within 10 court business days to determine whether such a temporary Order should be continued, and I must appear in Court on that day if I wish the Order to be continued.

DATE **8/1/17** PLAINTIFF'S SIGNATURE X **Sage Humphries**

Please complete affidavit on reverse of this page

This is a request for a civil order to protect the Plaintiff from future abuse. The actions of the Defendant may also constitute a crime subject to criminal penalties. For information about filing a criminal complaint, you can talk with the District Attorney's Office for the location where the alleged abuse occurred.

FA-1 (05/15)

**COURT COPY**

| **DEFENDANT'S** MOTION TO MODIFY OR TERMINATE ABUSE PREVENTION ORDER | DOCKET NO. (FOR COURT USE ONLY) | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

| PLAINTIFF'S NAME | DEFENDANT'S NAME | COURT DIVISION |
|---|---|---|
| Sage Humphries | Dusty Button | BMC - Central Division |

Dusty Button _____, **Defendant** in the above entitled matter, respectfully moves that this court

☐ modify or ☑ terminate the abuse prevention order issued pursuant to G.L. c. 209A.

In support of this request, the **Defendant** states:   Beyond any reasonable doubt and verifiable with an immense abundance of hard evidence, this 209A was illegally obtained and granted under false pretences of perjury in 2017 as well as 2018. Plaintiff Sage Humphries committed mulitple acts of fraud including fraud on the Court, as well as Massachusetts General laws Chapter 269, section 13A, knowingly filing false police reports. Their numerous false police reports were withheld from the Court both years in order to intentionally hide the evidence that would defeat the request of this 209A. Not only was Ms. Humphries forced to file under duress but the responding Officers, unlike Judge McKenna, investigated the claims by reviewing ALL evidence and conducting a private interview with Ms. Humphries to conclude each time that the calls and claims were all unfounded and "there was no threat of imminent danger or bodily harm." Through a current open investigation, law enforcement has verified that Ms. Humphries criminally obtained this order to which Defendants are seeking charges. (PLEASE SEE CONTINUED AFFIDAVIT ON THE FOLLOWING PAGES).

Signed under the penalties of perjury.

Signature of Defendant _____

---

This motion must be scheduled for a hearing in court **AND** a copy of this motion and the hearing date must be mailed to the Plaintiff at least ten days before the hearing.

- The Defendant must ask the court how to schedule the hearing
- In some courts the date for the hearing is chosen by the court and the court sends notice to the Plaintiff
- In other courts the Defendant (the person filing the motion to modify or terminate) must get a date for a hearing from the court and mail the motion and notice of the date to the Plaintiff
- Please fill out the hearing information below and check the correct box

**NOTICE OF HEARING:**   This motion will be heard at the _____ court located at _____
                                                                                                                (city/town)

on _____ at_____ .
      (month/day/year)              (time of hearing)

**CHECK ONE**:     ☐ The Defendant has obtained the date of the hearing and is mailing notice to the Plaintiff.
                              ☐ The Court has scheduled a hearing and has notified both parties by mail.

---

**The motion is:**       ☐ **ALLOWED**          ☐ **DENIED**

_____
_____
_____

| SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE | DATE OF ORDER | TIME OF ORDER | ☐ A.M. ☐ P.M. |
|---|---|---|---|

| WITNESS - FIRST OR CHIEF JUSTICE | A true copy, attest (Asst.) Clerk-Magistrate/ (Asst.) Register of Probate |
|---|---|

FA-14 (1/12)

**COURT COPY**

18

(CONTINUED FROM FRONT PAGE)

Apart from the crimes Plaintiff Sage Humphries committed to obtain this order, Defendants submitted thousands of pieces of evidence that would have proven beyond a reasonable doubt that the requirements for this 209A order were not met, yet none of this evidence was allowed as an exhibit and not a single piece of this evidence was viewed by Judge McKenna in 2017 or 2018 as he stated "He was not convinced by a preponderance of evidence but that Sage Humphries' testimony was enough", suppressing Defendants rights to a fair judicial procedure.

To further defame the Defendants, in July of 2021, Ms. Humphries altered her original affidavit from 2017 and is currently using this illegally obtained 209A as the foundation for her equally unethical and fraudulent $150,000,000.00 lawsuit against Defendants.

We are meant to believe that we are protected by a judicial system that upholds law and order and ensures justice is served on those who commit crimes rather than on those who have not only done no wrong but provide that very Court with evidence to substantiate their innocence. The injustice that has been served on Defendants by the Court is lost in the shadow of the injustices that the wrongfully granted 209A has assisted in being served on Defendants in the five years following.

Sage Humphries requested Defendants call the police and "send help" to "save her" after being kidnapped and trafficked by her parents, as an adult. Sage Humphries also contacted Defendants multiple times to inform them that she was being wrongfully imprisoned, that her parents had shut down her bank account, stripped her of her driver's license, and destroyed her cell phone and any ability to communicate with the outside world. Ms. Humphries informed Defendants that she was being forced into exorcisms to which Judge McKenna heard himself, her commit perjury on the stand. Ms. Humphries also informed Defendants that her father "an attorney", had written a restraining order filled with lies and would force her to sign it in order to allow her to return to her life in Boston and job at Boston Ballet. Furthermore, Sage Humphries apologized to Defendants stating that "her parents were trying to destroy Defendants' lives" as well as warning them that she will be leaving a "fake break up voicemail" in order to trick her parents into allowing her to return to her home in Boston as she sent another text stating she "just needed to make them think she was ending it", referring to the relationship with Defendants.

Ms. Humphries had been present during Defendants time constructing their photography room and was fully aware that all of the alleged "illegal automatic weapons" were in fact, plastic toys, as she assisted in the shopping for these photography props and also played with them, as seen in exhibits. Defendants understand that Ms. Humphries father being an attorney provided the Humphries with an unfair advantage which most

19

likely led to a biased hearing that was predetermined prior to the hearing itself however; Defendants believe in their constitutional rights and the responsibility for the justice system to rectify its mistakes.

While Defendants live a very conservative lifestyle and regret letting Ms. Humphries infiltrate their marriage, Defendants admit having an open relationship with Ms. Humphries was an unconventional weak point in their life however; an unconventional relationship is certainly not grounds for an unconstitutionally granted 209A. Ms. Humphries was never under duress, threatened or forced to do anything against her will during her time in the relationship with Defendants however, it was duress and threat of imminent danger from her parents that led her to obtaining this order. The Orange County Sheriff's Department confirmed through a private interview with Ms. Humphries in July of 2017 (three weeks prior to the 209A hearing and just four days after her last message to Defendants) that she was never in any imminent danger and could have walked away from the relationship at any time if she had chosen to based on the Officers' viewing of ALL communications between Plaintiff and Defendants. That very report was one of many withheld from the Court in 2017 as it verified through a "preponderance of evidence" that there was never a justification for this order.

Ms. Humphries continued to pursue and contact Defendants secretly from her brothers' phone after being kidnapped from Boston by her parents and taken back to California where her father stated to Police that she was not allowed to use the phone unless he is watching her while she uses it. Defendants never once initiated contact with Ms. Humphries following her kidnapping however, Defendants made certain to document and record one hundred percent of communications initiated by Plaintiff up to three and a half weeks before the hearing when Ms. Humphries informed Defendants that her mother had discovered that she was still communicating with Defendants and that her parents were "freaking out" and would be forcing her to sign a request for a restraining order. As verified by attached communications, Ms. Humphries was nothing other than happy, healthy and safe in the two-month relationship with Defendants… that is until her family intervened and forced her to comply with their demands or be stripped of all of her civil liberties. During Ms. Humphries' testimony in 2017 she was asked by Defendants counsel in regards to one of her text messages she sent to Defendants in July of 2017 stating she was "distraught". She was asked what she meant by that message to which she stated "I was in a rock and a hard place." "I didn't know how to handle everyone disapproving of the relationship". "I had to make a decision". When Defendants counsel responded and asked, "What was the decision?", Ms. Humphries replied and stated "to either end the relationship (with Defendants) or continue being in the relationship (with Defendants) and jeopardize my family, my friends, my career, everything I've ever known".

Defendants were not aware of their right and ability to appeal this order and were informed by counsel that the Judge had made his decision prior to the hearing and that

resisting was futile. Defendants were not aware of a continuation hearing the following year in 2018 however, through the discovery process during their current litigation they have obtained an immense amount of new evidence that verifies once more, that the Court was manipulated by fraud in both 2017 and 2018. In 2018, Ms. Humphries provided the Court with a photograph taken prior to the 2017 hearing in Boston of toys (that were proven in the 2017 hearing to be toys) while committing perjury and lying to the Court by claiming that this photo was current, taken in California, and that the Defendants were violating the 209A and selling illegal firearms in California. Ms. Humphries committed perjury a second time by telling the Court that Defendants had a secret company and had sent a secret employee "personal assistant" to find her. In the hours preceding the 2018 hearing, Ms. Humphries attempted once more to obtain Police reports that she could use to manipulate the Court into granting this order to be permanent. Ms. Humphries filed two more false Police reports and once again, responding Officers investigated her claims and ruled the reports to be baseless and unfounded hence her once again withholding these reports from the Court in 2018 which made no difference as Judge McKenna once again, gave Ms. Humphries what she asked for without "any preponderance of evidence" or verification of her claims not viewing any reports and merely stating his "opinion" that he thought her claims "in his humble opinion" were violations of the 209A even though law enforcement confirmed they were not (as they never happened) . Ms. Humphries used this report to destroy Defendants' careers and lives prior to leading a Global media campaign that has itself contradicted both of her affidavits each year for the 209A. This media campaign has stripped Defendants of not only their constitutional rights but many civil liberties that they should be afforded, in fact, this 209A assisted Ms. Humphries in the role she has played in the hiring of known felon and convict Anthony Pellicano who was recently released from prison for his many crimes. Mr. Pellicano was hired to silence Defendants in their current litigation, a litigation that was only brought forth with confidence as Ms. Humphries believed that all of the evidence that disproves her claims had been destroyed per request of the Court in 2017. Ms. Humphries was mistaken and has spent the last twelve months attempting to manipulate the Nevada District Court into destroying this evidence.

This 209A was the sole catalyst that led to the destruction of two innocent lives, two lives that worked their lifetime to benefit society, inspire and protect those around them. In fact, when a male dancer placed a hidden camera in the women and childrens dressing room at Boston Ballet, Defendants (one of which was the star of Boston Ballet at that time) spent days tracking down the Detective in charge of the case and the months following, personally advocating for the victims that were forced to sign NDAs and too scared to testify against the perpetrator. Boston Ballet withheld the camera from police until Defendants sent police to retrieve it prior to Defendants refusing to sign the NDA, which itself served as a catalyst assisting Ms. Humphries parents in their manipulation of Boston Ballet to fire Defendant, Dusty Button.

While Ms. Humphries has made certain that this case is extremely complex, Defendants ascertain that their defense is extremely simple. Defendants Dusty Button and Taylor Button respectfully and formally request the Court take this Motion to Vacate into consideration and allow them the opportunity to properly and fairly defend themselves by accepting the evidence that disproves every claim brought forth to obtain this order.

Defendants declare under oath, that they have NO desire to ever hear Ms. Humphries name, see or speak to her ever again and while they are in the process of filing restraining orders against her parents, they seek the ability to file one against Ms. Humphries as well. Defendants relocated to the furthest point away from Plaintiff within the United States as possible and had finally recovered from the trauma that she inflicted in their lives until Ms. Humphries reinitiated the conflict by filing this lawsuit in July of 2021, although in 2017 and 2018 she opted out of the request for damages on the 209A paperwork. This 209A should have never been granted had the hearing not been biased and followed legal protocol. Therefore, Defendants humbly request this order be vacated.

Attached to this declaration are some of the MANY exhibits and new evidence showing the numerous contradictions, manipulative tactics and disregard for previously entered exhibits. While there are many more documents that can be viewed as proof, Defendants have attached what they believe to showcase the most obvious instances of fraud.

Signed under oath,

_____

Dusty Button

22

| **DEFENDANT'S MOTION TO MODIFY OR TERMINATE ABUSE PREVENTION ORDER** | DOCKET NO. (FOR COURT USE ONLY) | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

| PLAINTIFF'S NAME | DEFENDANT'S NAME | COURT DIVISION |
|---|---|---|
| Sage Humphries | Mitchell Taylor Moore | BMC - Central Division |

Mitchell Taylor Moore (Button) _____, **Defendant** in the above entitled matter, respectfully moves that this court

☐ modify or ☑ terminate the abuse prevention order issued pursuant to G.L. c. 209A.

In support of this request, the **Defendant** states:   Beyond any reasonable doubt and verifiable with an immense abundance of hard evidence, this 209A was illegally obtained and granted under false pretences of perjury in 2017 as well as 2018. Plaintiff Sage Humphries committed mulitple acts of fraud including fraud on the Court, as well as Massachusetts General laws Chapter 269, section 13A, knowingly filing false police reports. Their numerous false police reports were withheld from the Court both years  in order to intentionally hide the evidence that would defeat the request of this 209A. Not only was Ms. Humphries forced to file under duress but the responding Officers, unlike Judge McKenna, investigated the claims by reviewing ALL evidence and conducting a private interview with Ms. Humphries to conclude each time that the calls and claims were all unfounded and "there was no threat of imminent danger or bodily harm." Through a current open investigation, law enforcement has verified that Ms. Humphries criminally obtained this order to which Defendants are seeking charges. (PLEASE SEE CONTINUED AFFIDAVIT ON THE FOLLOWING PAGES).

Signed under the penalties of perjury.

_____          ████████████████
Signature of Defendant                                            Date

This motion must be scheduled for a hearing in court **AND** a copy of this motion and the hearing date must be mailed to the Plaintiff at least ten days before the hearing.

- The Defendant must ask the court how to schedule the hearing
- In some courts the date for the hearing is chosen by the court and the court sends notice to the Plaintiff
- In other courts the Defendant (the person filing the motion to modify or terminate) must get a date for a hearing from the court and mail the motion and notice of the date to the Plaintiff
- Please fill out the hearing information below and check the correct box

**NOTICE OF HEARING:**  This motion will be heard at the _____ court located at _____
                                                                                                                                         (city/town)

                          on _____ at _____ .
                                (month/day/year)            (time of hearing)

**CHECK ONE:**       ☐ The Defendant has obtained the date of the hearing and is mailing notice to the Plaintiff.
                                  ☐ The Court has scheduled a hearing and has notified both parties by mail.

**The motion is:**       ☐ **ALLOWED**             ☐ **DENIED**

_____
_____
_____

| SIGNATURE OF JUDGE
PRINT/TYPE NAME OF JUDGE | DATE OF ORDER | TIME OF ORDER ☐ A.M.  ☐ P.M. |
|---|---|---|
| WITNESS - FIRST OR CHIEF JUSTICE | A true copy, attest (Asst.) Clerk-Magistrate/ (Asst.) Register of Probate | |

FA-14 (1/12)

**COURT COPY**

23

(CONTINUED FROM FRONT PAGE)

Apart from the crimes Plaintiff Sage Humphries committed to obtain this order, Defendants submitted thousands of pieces of evidence that would have proven beyond a reasonable doubt that the requirements for this 209A order were not met, yet none of this evidence was allowed as an exhibit and not a single piece of this evidence was viewed by Judge McKenna in 2017 or 2018 as he stated "He was not convinced by a preponderance of evidence but that Sage Humphries' testimony was enough", suppressing Defendants rights to a fair judicial procedure.

To further defame the Defendants, in July of 2021, Ms. Humphries altered her original affidavit from 2017 and is currently using this illegally obtained 209A as the foundation for her equally unethical and fraudulent $150,000,000.00 lawsuit against Defendants.

We are meant to believe that we are protected by a judicial system that upholds law and order and ensures justice is served on those who commit crimes rather than on those who have not only done no wrong but provide that very Court with evidence to substantiate their innocence. The injustice that has been served on Defendants by the Court is lost in the shadow of the injustices that the wrongfully granted 209A has assisted in being served on Defendants in the five years following.

Sage Humphries requested Defendants call the police and "send help" to "save her" after being kidnapped and trafficked by her parents, as an adult. Sage Humphries also contacted Defendants multiple times to inform them that she was being wrongfully imprisoned, that her parents had shut down her bank account, stripped her of her driver's license, and destroyed her cell phone and any ability to communicate with the outside world. Ms. Humphries informed Defendants that she was being forced into exorcisms to which Judge McKenna heard himself, her commit perjury on the stand. Ms. Humphries also informed Defendants that her father "an attorney", had written a restraining order filled with lies and would force her to sign it in order to allow her to return to her life in Boston and job at Boston Ballet. Furthermore, Sage Humphries apologized to Defendants stating that "her parents were trying to destroy Defendants' lives" as well as warning them that she will be leaving a "fake break up voicemail" in order to trick her parents into allowing her to return to her home in Boston as she sent another text stating she "just needed to make them think she was ending it", referring to the relationship with Defendants.

Ms. Humphries had been present during Defendants time constructing their photography room and was fully aware that all of the alleged "illegal automatic weapons" were in fact, plastic toys, as she assisted in the shopping for these photography props and also played with them, as seen in exhibits. Defendants understand that Ms. Humphries father being an attorney provided the Humphries with an unfair advantage which most

likely led to a biased hearing that was predetermined prior to the hearing itself however; Defendants believe in their constitutional rights and the responsibility for the justice system to rectify its mistakes.

While Defendants live a very conservative lifestyle and regret letting Ms. Humphries infiltrate their marriage, Defendants admit having an open relationship with Ms. Humphries was an unconventional weak point in their life however; an unconventional relationship is certainly not grounds for an unconstitutionally granted 209A. Ms. Humphries was never under duress, threatened or forced to do anything against her will during her time in the relationship with Defendants however, it was duress and threat of imminent danger from her parents that led her to obtaining this order. The Orange County Sheriff's Department confirmed through a private interview with Ms. Humphries in July of 2017 (three weeks prior to the 209A hearing and just four days after her last message to Defendants) that she was never in any imminent danger and could have walked away from the relationship at any time if she had chosen to based on the Officers' viewing of ALL communications between Plaintiff and Defendants. That very report was one of many withheld from the Court in 2017 as it verified through a "preponderance of evidence" that there was never a justification for this order.

Ms. Humphries continued to pursue and contact Defendants secretly from her brothers' phone after being kidnapped from Boston by her parents and taken back to California where her father stated to Police that she was not allowed to use the phone unless he is watching her while she uses it. Defendants never once initiated contact with Ms. Humphries following her kidnapping however, Defendants made certain to document and record one hundred percent of communications initiated by Plaintiff up to three and a half weeks before the hearing when Ms. Humphries informed Defendants that her mother had discovered that she was still communicating with Defendants and that her parents were "freaking out" and would be forcing her to sign a request for a restraining order. As verified by attached communications, Ms. Humphries was nothing other than happy, healthy and safe in the two-month relationship with Defendants… that is until her family intervened and forced her to comply with their demands or be stripped of all of her civil liberties. During Ms. Humphries' testimony in 2017 she was asked by Defendants counsel in regards to one of her text messages she sent to Defendants in July of 2017 stating she was "distraught". She was asked what she meant by that message to which she stated "I was in a rock and a hard place." "I didn't know how to handle everyone disapproving of the relationship". "I had to make a decision". When Defendants counsel responded and asked, "What was the decision?", Ms. Humphries replied and stated "to either end the relationship (with Defendants) or continue being in the relationship (with Defendants) and jeopardize my family, my friends, my career, everything I've ever known".

Defendants were not aware of their right and ability to appeal this order and were informed by counsel that the Judge had made his decision prior to the hearing and that

resisting was futile. Defendants were not aware of a continuation hearing the following year in 2018 however, through the discovery process during their current litigation they have obtained an immense amount of new evidence that verifies once more, that the Court was manipulated by fraud in both 2017 and 2018. In 2018, Ms. Humphries provided the Court with a photograph taken prior to the 2017 hearing in Boston of toys (that were proven in the 2017 hearing to be toys) while committing perjury and lying to the Court by claiming that this photo was current, taken in California, and that the Defendants were violating the 209A and selling illegal firearms in California. Ms. Humphries committed perjury a second time by telling the Court that Defendants had a secret company and had sent a secret employee "personal assistant" to find her. In the hours preceding the 2018 hearing, Ms. Humphries attempted once more to obtain Police reports that she could use to manipulate the Court into granting this order to be permanent. Ms. Humphries filed two more false Police reports and once again, responding Officers investigated her claims and ruled the reports to be baseless and unfounded hence her once again withholding these reports from the Court in 2018 which made no difference as Judge McKenna once again, gave Ms. Humphries what she asked for without "any preponderance of evidence" or verification of her claims not viewing any reports and merely stating his "opinion" that he thought her claims "in his humble opinion" were violations of the 209A even though law enforcement confirmed they were not (as they never happened) . Ms. Humphries used this report to destroy Defendants' careers and lives prior to leading a Global media campaign that has itself contradicted both of her affidavits each year for the 209A. This media campaign has stripped Defendants of not only their constitutional rights but many civil liberties that they should be afforded, in fact, this 209A assisted Ms. Humphries in the role she has played in the hiring of known felon and convict Anthony Pellicano who was recently released from prison for his many crimes. Mr. Pellicano was hired to silence Defendants in their current litigation, a litigation that was only brought forth with confidence as Ms. Humphries believed that all of the evidence that disproves her claims had been destroyed per request of the Court in 2017. Ms. Humphries was mistaken and has spent the last twelve months attempting to manipulate the Nevada District Court into destroying this evidence.

This 209A was the sole catalyst that led to the destruction of two innocent lives, two lives that worked their lifetime to benefit society, inspire and protect those around them. In fact, when a male dancer placed a hidden camera in the women and childrens dressing room at Boston Ballet, Defendants (one of which was the star of Boston Ballet at that time) spent days tracking down the Detective in charge of the case and the months following, personally advocating for the victims that were forced to sign NDAs and too scared to testify against the perpetrator. Boston Ballet withheld the camera from police until Defendants sent police to retrieve it prior to Defendants refusing to sign the NDA, which itself served as a catalyst assisting Ms. Humphries parents in their manipulation of Boston Ballet to fire Defendant, Dusty Button.

While Ms. Humphries has made certain that this case is extremely complex, Defendants ascertain that their defense is extremely simple. Defendants Dusty Button and Taylor Button respectfully and formally request the Court take this Motion to Vacate into consideration and allow them the opportunity to properly and fairly defend themselves by accepting the evidence that disproves every claim brought forth to obtain this order.

Defendants declare under oath, that they have NO desire to ever hear Ms. Humphries name, see or speak to her ever again and while they are in the process of filing restraining orders against her parents, they seek the ability to file one against Ms. Humphries as well. Defendants relocated to the furthest point away from Plaintiff within the United States as possible and had finally recovered from the trauma that she inflicted in their lives until Ms. Humphries reinitiated the conflict by filing this lawsuit in July of 2021, although in 2017 and 2018 she opted out of the request for damages on the 209A paperwork. This 209A should have never been granted had the hearing not been biased and followed legal protocol. Therefore, Defendants humbly request this order be vacated.

Attached to this declaration are some of the MANY exhibits and new evidence showing the numerous contradictions, manipulative tactics and disregard for previously entered exhibits. While there are many more documents that can be viewed as proof, Defendants have attached what they believe to showcase the most obvious instances of fraud.


Signed under oath,

_____
Mitchell Taylor Moore (Button)

**AFFIDAVIT OF MITCHELL MOORE AND DUSTY BUTTON**

**DOCKET: 1701RO181 & 1701RO182**

**SAGE HUMPHRIES V. DUSTY BUTTON and MITCHELL MOORE**

We, the Defendants, Mitchell Moore and Dusty Button, are over 18 years of age and have never been convicted of a crime involving fraud, dishonesty or any other crime of any kind. We declare all evidence submitted, this affidavit and the exhibits presented with our Motion to Vacate to be genuine, accurate, correct and true under the penalty of perjury. We file this affidavit in support of the injustice we are seeking to rectify in the granting of an Abuse Prevention Order for Sage Nicole Humphries in 2017, renewed and made permanent in 2018 without our knowledge, in our absence, as well as the absence of any representing Counsel for us in 2018. Sage Humphries and her Counsel Maura Melcher used fraudulent claims, perjury, withheld police reports and false testimony resulting in fraud on the Court.

We will do our best to summarize an extremely complex history of events to respect the Courts time but apologize that even when summarized, there is a lot of data to process.

We met Sage Humphries in December of 2016 as she was coworker of Dusty Button at Boston Ballet. The three of us shared many interests so Sage asked us to hang out once we returned to Boston from the trip we took to Mammoth Mountain California in January of 2017. Once back to Boston Sage invited Dusty Button to lunch during their break between shifts at work. Dusty obliged and their friendship began. Sage shared with Dusty that Micah Humphries (Sage's mother), had been intervening in her relationship with her long-time boyfriend Anthony Giovanni Deane but that Sage was still seeing this boyfriend unknown to her mother. Sage asked Dusty to guess how old her boyfriend was (Sage, being 19 years old at this time) then proceeded to tell Dusty that he was 34 years of age. Weeks later, Sage informed Dusty that her mother had visited with Anthony to shut down their relationship and was flying to Boston to "take control of Sage", then informed Dusty that she had lied about his age and that he was actually 42 years of age and that she had been dating him since she was 17.  Sage's mother ultimately prevailed and ended Sage's relationship with Anthony which left Sage very upset so she asked Dusty one evening if she could come to their home to take her mind off of being upset. Dusty obliged and Sage came to our home where we played video games, watched movies and created funny Snapchat videos.

Over the coming months Sage's visits to our home became more and more frequent until she ultimately began keeping belongings there and sleeping at our home more than she was sleeping at her own. During this span of time Sage informed us that she had been in a threesome with a couple in Florida when her mother sent her there from New York City for a "fresh start" and "rehab" to help with her marijuana addiction.

Soon, Sage began entering our bedroom as the nights would come to an end where she would ask if she could watch TV with us in our bed instead of going to her home or going to sleep and thus, she slowly transitioned into sleeping in our bed rather than at her own home or on

our sofa. One evening Sage told Mitchell that she "wishes Dusty would want to have a threesome" as she continued to blur the line dividing friendship and a relationship of a sexual nature. As time progressed, so did the friendship. One day, Sage and Mitchell escorted Dusty to an MRI appointment in Longwood and once there, Sage and Mitchell went to sit together at a sushi restaurant waiting for Dusty to finish her appointment. At this restaurant Mitchell excused himself from the table and walked downstairs to the basement of the restaurant to use the restroom.  As Mitchell exited the restroom, he saw Sage had followed him downstairs, assuming she did so to use the restroom as well, he walked past her only for her to grab him, pull him close to her and kiss him; (*see exhibit 1.E.11)*, thus initiating the first contact of sexual nature with either of us.

Following this incident, the three continued to spend all of their time together and as Mitchell's birthday approached on April 16th of 2017 Sage's mother, Micah Humphries, asked the three of them to fly to her home in Long Beach, California to celebrate Mitchell's birthday and the Easter holiday. The three flew to the Humphries home in Long Beach where they shared a bed together in Sage's parent's home. On Mitchell's birthday they celebrated all together with her family and Sage asked her parents if the three of them could go stay in her father's beach front law office in Seal Beach for the night to get some breathing room. That evening Sage Humphries and her brother Michael Humphries told us they wanted to get liquid THC and cannabis infused gummies from their neighbor (as they were frequent users of these products), proceeded to do so and the four of us sat on the beach for a while and talked until Michael went back to his parent's house.

Later that night as the three of us were sitting on the pull-out bed in her father's office Sage asked if they would want to do a "massage train" where each person sits in front of one another and massages the person in front of them. During this massage Sage (sitting in front) turned to Dusty (sitting in the middle) and after a short time of eye contact held Dusty's face with her left hand and kissed her. While kissing Dusty, Sage reached back with her right hand and grabbed Mitchell's hand pulling it forward and placing it on herself.  Following this initiation, we continued to have our first three-way sexual encounter. We woke the following morning and as we all three lay together (unclothed), were shocked when the door opened and Sage's father Michael Humphries entered the room to witness us together. Sage's father (Michael Humphries), simply proceeded to tell Sage not to forget she had a dental appointment at 10:30AM to which she said she will get dressed and get going. As we left the office Michael Humphries approached our vehicle and advised us of a great breakfast place just down the street from his law office and said that he would see us later in the day at their house.  Sage texted us while in her dental appointment stating "It's an Easter miracle" referring to her father's acceptance of our relationship; (*see exhibit 1.E.9)*.

When we left this appointment with Sage, we drove to Eric Cheney's shop where we stored our Ferrari collection (*reference testimony by witness Eric Cheney and exhibits 1.E.4 and 1.E.5)*.  Sage had been asking to see and ride in one of our Ferraris, so while in town we obliged and took her to the shop where they were. While at this shop, Mitchell's friends asked about our relationship having seen how close the three of us were on social media posts. The three of us looked at each other and laughed as Sage told Eric that we were in a relationship and had just

had a threesome at her father's office. Sage was extremely affectionate with us at the shop while in front of the people who worked at this shop.

We spent our last day celebrating with her family before flying home where Sage stated "best weekend ever" on video; (*reference exhibit 15.Q*). Once we returned to Boston it was clear that the friendship had transitioned into a consensual (though unconventional), loving relationship of a sexual nature and Sage began staying at our apartment and sleeping in our bed almost every night, rarely going back to her own home though there were times we went all went to her apartment as well.

Sage's mother flew to Boston and stayed with the three of us and raved about our home and how amazing it was. For the next month, we spent all of our time together creating memories that were blissful and happy; (*reference exhibits 1.E.12, 12.A and 13.A-F*). Over this time, it became clear that the relationship Sage shared with her mother was extremely unhealthy and controlling, so much so, that her mother began shaming her for not following her orders including what Sage should post on Instagram, what her weight should be, who she should be networking with and overall pushing an unhealthy mentality for Sage to live (*see exhibit 12.B*). Upon our observation during the time of our friendship and relationship with Sage, she was extremely unhappy and conflicted in regards to her relationship with her mother and was longing to get out from under her control as an adult woman.

With a trip to Australia on our horizon Sage asked her mother, though she was an adult, if she could go on this trip with us as a vacation, so we offered to get her work while in Australia to counterbalance the expense of the trip, as that was the reason we were invited to Australia. Prior to this invite, Sage's mother sent a text message to the three of us discussing Sage's desire to move in with us (*reference exhibit 14.B.*), and it seemed fairly normal to invite her since we all wanted to spend time together however, once her mother found out about her plans to not spend her summer at home with her parents, she immediately began a campaign against our relationship in an attempt to tighten her grip of control on Sage's life; (*see exhibits 14.A and 11.A*).

Eventually Micah and Michael Humphries realized that their adult daughter was capable of making her own decisions and as this was unacceptable, they began their campaign to destroy our lives, beginning with false allegations and defamatory statements to Boston Ballet which resulted in Dusty Button's (their star dancer) contract being prematurely terminated without cause. Sage, very upset that she would not see Dusty at work every day and totally clueless that her mother was responsible for this, went with Dusty to collect her belongings from work.

The next weekend Sage's parents, following a warning that they would be flying into Boston to collect Sage's belongings now that she had moved in with us, arrived and informed Sage that her grandfather had hours to live and she must return home with them to spend his last moments with him. Sage told her parents she would book her ticket and fly there on her own merit when all along Sage's grandfather was not passing away that weekend nor was this statement true, but her parents were not happy with her traveling on her own accord. The following day, Sage and Mitchell went on a date to a movie while Dusty was away teaching for a studio and afterwards Sage left our home and went to work.  Dusty received a call a short while

later from Sage while teaching, Sage was screaming and violently crying begging for Dusty to send help to save her as her parents had forced her into a car and were kidnapping her, stating that they were taking her to the airport and they wouldn't let her go. Sage begged Dusty to "wait for her" and told her that she loved her, screaming "Please don't leave me!" into the phone but as she desperately tried to ask for help her mother (as she admitted in Boston Magazine) snatched the phone out of her hand and according to Sage, threw the phone out of the window.

According to the Humphries' own admissions, they hatched a plan with Boston Ballet staff to forcibly remove Sage from the Boston Opera House as they forced her into a car and rushed to the airport where they held her against her will as they booked a ticket for the three of them to return to California. They admitted to forcing her through security as she kicked and screamed and ultimately onto the plane where she cried for the entire trip to Colorado then on to Long Beach, kicking the seats in front of her resulting in her parent's lying to the airline staff stating that she was on drugs and this was an intervention.

While literally defining kidnapping, wrongful imprisonment and human trafficking, her parents succeeded when they closed her bank account, took her driver's license, held her captive and didn't allow her to communicate with the outside world and ultimately, according to Sage, forced her into therapy using her own money from her bank account where she was forced to have exorcisms; (*reference exhibits 11.A, 11.B.1, 11.B.2, 11.C and 15.A – N*).  Forty-eight hours prior to this kidnapping, Sage Humphries and I (Dusty Button) both did a photoshoot inside of our home (designed for promotional purposes for various companies as we both were heavy on social media and marketing with well-known corporations and global brands) and part of that shoot was inside of our actual photo studio, which was inspired by James Bond films and showcased battery-operated plastic toy guns displayed on the walls; (*reference exhibits H.1 and H.2*). Sage often played with these toys and the three of them often shot cans inside of the apartment with these plastic bb's (*reference exhibits 1.B.4, 1.B.5 and 1.H*). Sage was present as Mitchell constructed this room in February of 2017 and her mother was present in this room upon its completion, all parties were fully aware that these toys were for display and photography purposes only.

Seventy-two hours following Sage Humphries' kidnapping we received a call from our friends in the Somerville Police Department that our home had been raided by the Police while we were away staying at the Intercontinental Seaport to get our minds off of the trauma that had just taken place. While at this hotel we called our close friend Taylor Mosher (*reference declaration of Taylor Mosher exhibit 9*) due to his ties with the California Sherriff's, to ask if he could speak to one of them to get advice on how we should proceed, considering the last communication we had with Sage was her desperately asking for us to send help and verbally confirming a kidnapping (*reference exhibit 15.P*).  During this stay, Sage's father (Michael Humphries) reached out to us and informed us that he had drafted restraining orders and that they would be filed (*reference exhibit 11.A*). He also informed us that "his daughter no longer wished to speak to them" all while his daughter was desperately trying to secure methods to communicate with us without her father's knowledge so we were fully aware that this was not the sentiment of Sage, rather one of a controlling father who refused to let his daughter speak for herself.

After this stay at the hotel, we went to the station near our home in Assembly Square to view this report, only to find out that a false police report had been made from Micah Humphries' phone number claiming that we had over 30 automatic machine guns, land mines and hand grenades but that the caller wanted to remain anonymous (*reference exhibit 1.B.2*) The police entered our home and after a full inspection signed off that this call was in fact false and baseless (*reference exhibit 1.B.2*).

Aside from terminating the career Dusty spent her entire life building, this was the second offense against us by Micah and Michael Humphries, not including the kidnapping, trafficking and imprisonment of their daughter Sage. Days later, after not hearing from Sage after her mother took her phone and while in the car with our friend and witness Rich Costa, (*see exhibit 7, declaration of Rich Costa*), we received a phone call from a 909-area code (*reference exhibit T – call on May 27th at 11:43pm EST*). Afraid for the well-being of Sage, we answered this call on speaker so that our witness could hear the call if it was Sage or anyone related to Sage and to our surprise it ***was*** Sage on the other end of the line. Sage, desperately crying out for Dusty was obviously under duress and scared. Sage begged Dusty to "wait for her" and stated numerous times that she loved her then asked if Mitchell was there as well - Dusty told her yes and Sage, desperate again told Mitchell that she loved him and to please wait for her. She continued to tell us that her parents had forced her into therapy (*reference exhibit 1.J.1, 1.J.2, 1.J.2. and 1.J.3*) and forced her to have exorcisms (*reference exhibit 1.G.3*). She told them that they shut her bank account down (*reference exhibit 15.L*) and took her license, as well as any ability from her to communicate with anyone (*reference exhibit 1.A.1*) and that the phone she was calling from belonged to a stranger and she was in the bathroom of a Mexican restaurant. She told the us that she had to go but to please answer any call that we get from unknown numbers especially with California area codes because she would try to get access to someone else's phone in the coming days. We finished the call by asking her if she needed us to call the Police or if she needed help - she said that yes, she needed help and to please send someone (*reference exhibits 1.J.3*).

Defendants boxed up Sage's belongings and mailed them back to California following her father's threats and understanding that as a lawyer himself, he had an unfair advantage with utilizing the tools of the judicial system that would not be afforded to lay men. This resulted in $750.00 of transport fees we had to pay to send back Sage's property. As we prepared for our trip to Australia according to schedule, Sage began texting us from her parent's phones without their knowledge. She notified us that they allowed her to use their phones for music as she hid in the back floorboard of their SUV on a road trip and that she would delete all of the messages she sent to us so that her parents would not see them. In these texts, she asked us to tell her that we loved her and told us once again, she needed help (*reference again, exhibits 1.J.1, 1.J.2, 1.J.2. and 1.J.3)*. She asked us to wait for her and later sent us love songs that she wrote and performed for us (*reference exhibits 1.K.6*). She left us numerous voice messages (*reference all exhibits in 1.K.7*) declaring her love for us, stating how much she missed us and asking us to please answer her calls (*reference exhibits 15.D, 15.F, 15.G, 15.J and 15.M*). Note, we *never once* initiated contact with Sage Humphries following her kidnapping and we never have to date nor would we **ever** have any desire to do so in the future.

All contact made following Sage's abduction was initiated by her and without her parent's knowledge. While we were in Australia, Sage sent us a message from her Snapchat account informing us that she had taken her younger brother's phone while everyone was sleeping and downloaded Snapchat to message us but would delete the app every night after she finished using it so no one would know she was communicating with us. Sage often used Snapchat to message her ex-boyfriend prior to meeting us for the same reasons, to conceal her relationship with him from her unapproving parents.

Amongst the many messages we received from Sage after she was taken, she informed us that her parents had written restraining orders, (just as her father had threatened us with; (*reference exhibit 11.A*) and would force her to sign it in order for her to secure her release from their captivity and return to Boston (*reference exhibits 1.A.2 and 15.N*) that if she did that we could be together again once she gets back to Boston (*reference exhibits 1.K.5).* We informed Sage that her father could lose his license to practice law if he **forces** her to sign a restraining order, that he wrote under duress and that it would be illegal (*reference exhibit 1*). Sage apologized for her parents "fucking up our lives" (*reference exhibit 15.M*) and said her parents forced her to talk to a lawyer but that she got upset and left (*reference exhibit 1.A.2*). Later, Sage informed us that her parents had discovered she had been communicating with us and they wanted her to call and break up with us because they "wanted her out of the threesome" (*reference all exhibits in 1.K.5*).

At that point, Sage told us she needed to be more careful about when she used her brother's phone because she wanted to talk to us but did not want her parents to find out. Her parents once more, found out she was communicating to which Sage sent a message stating her parents were "freaking out" and she was "distraught" (*reference exhibits 1.G.1*). Following that day, Sage told us that she would need to call our phone to leave a "fake voicemail" but "not to listen to it", to "delete it immediately" and "don't believe a word I say" in order for her parents to verbally hear her "break up" with us and allow her to return to Boston (though she was an adult).

The day following her warning us about this fake voicemail she proceeded to leave that fake voicemail though after doing so, Sage continued her communications, professions of love and affection to us, as if nothing had changed in regards to her relationship with us; (*reference exhibits 15.A, 15.B, 15.C, 15.D, 15.E, 15.F, 15.G, 15.H, 15.I, 15.J*), telling us constantly that she was in love with both of us to which we reciprocated. We were always under the impression that Sage **really** needed help once she was kidnapped based on what she was communicating to us and that she needed us to be the people to get the help she was asking for. We had no idea that Sage was telling her parents a totally different story, one that would allow her to get back to her life in Boston and one that would lead to this APO being granted under false pretenses and ultimately, five years later, would *lead the world to believe we raped at gunpoint.*

As the communication continued over the summer, Sage was ultimately found out once more by her family and was forced to send a text to us on July 18th 2017 stating, "I am no longer your **girlfriend**" (*reference exhibit 15.O*). After this message, we never once received communication from Sage again and upon our return from Australia, we received a call from our

friends at the Police department in Somerville, MA. We went to the station and there we were served with the very restraining orders Sage Humphries' father had threatened us with.

Sage Humphries' affidavit leading to the restraining order in 2017, as well as the one in 2018 were not witnessed or notarized, nor was the affidavit in 2018 even signed at all (*see exhibits 1 and 4*). In 2017, Sage opted to state on her APO form that our relationship was consensual and that she was never under duress, threatened or forced to do anything in our relationship. Furthermore, though Sage was fully aware that the airsoft toys in our apartment were plastic props (*reference again exhibits 1.H.1, 1.H.2 and 1.B.4*), ESPECIALLY after her family had our home raided and violated, she **still** proceeded to falsely claim to the Court that we had now FIFTY (thirty stated on the 911 call) automatic machine guns, land mines and hand grenades.

This statement was knowingly false, yet was utilized to convince the Court there was fear of imminent danger, though there was no preponderance of evidence. To add to the fraud at hand, Sage's parents called in **another** false police report in California, just four days after Sage Humphries last communication with us, and three weeks before the restraining order hearing, where they told police that Mitchell had **raped** their daughter and that we were planning to come kidnap their daughter (not knowing their daughter had actually asked us to call the police to save her). The Police, seeing that Sage was under influence of her parents, interviewed her privately and gained access to all of her communications with us where they were told the truth and they witnessed for themselves the evidence that was withheld from the Court during the restraining order that verified beyond any doubt that there was no imminent danger, there had been no occurrence of rape and that our relationship was consensual (*reference police report in exhibit 1.C.1*). The Police wrote that the claims were unfounded, that there was no fear of imminent danger and noted that there had been MANY attempts and similar calls from that home regarding this matter prior to their response to this one and ALL of them were unfounded. Sage and her attorney Maura Melcher withheld this Police incident report from the Court in the 2017 hearing as they knew that if she had presented it, the Judge could not have granted the order, as it contradicted Sage's entire narrative, there was no preponderance of evidence and the Police verified through EVIDENCE there was no fear of imminent danger. Sage did however inform the Court she **had filed** a Police report to raise more suspicion, yet she neglected to provide that report in the hearing (*reference exhibits 1.C.2 and 1.C.3*).

We have provided over 5,000 documents that have disproved EVERY claim made by Sage Humphries beyond ANY DOUBT to her opposing counsel and to the Court on the day of the 2017 hearing but the book of evidence, as well as the five 8GB thumb drives were never once opened, glanced at, accepted into an exhibit or considered in the slightest, in fact the Honorable Judge merely stated that he had no need for preponderance of evidence and was satisfied by Ms. Humphries testimony alone though she brought **no** evidence.

Ms. Humphries admitted to lying on the stand in 2017 and the evidence we presented, if had been considered, would have verified that every claim she made in her testimony and affidavit were all untrue, just as it is now. The fact of the matter is that this affidavit in 2017 was not written by Sage Humphries, it was written by her parents and she was **forced** (as she admitted to us) to sign it under duress or face the consequence of her family stripping her of her

career, freedom and civil rights because they did not approve her relationship with us (*reference 1.G.2 and 1.I.4*). This order was invalid from its onset though we were unaware of an ability to file an appeal as we had no guidance and no experience in the legal system prior to this date.

Sage's parents sent this restraining order to all of our employers, sponsors, friends and anyone else they could strip from our lives in an attempt to derail any progress we could make when leaving Boston. Due to the destruction of our lives, we immediately began packing up to leave Boston for California where we had worked and stored many vehicles for a decade as soon as we returned from Australia, prior to the restraining order hearing and were fully moved shortly after the hearing (*reference exhibits 4.D.A, 4.D.B, 4.D.C and 4.D.D*).

With this traumatizing injustice behind us and desire to forget all of it, we began rebuilding our lives in Los Angeles, until a Sheriff banged on our door one year later to serve us with a newly permanent restraining order following a hearing that we had no knowledge of, no legal representation at and no understanding of. Once more, having not known of any ability to appeal in 2017 we understood that we could do nothing to defend ourselves, as this order was clearly granted through a biased opinion rather than through a preponderance of evidence, which only we possessed. It wasn't until 2021 that we learned that the fraud on the Court Sage Humphries had committed in 2017 had only amplified in 2018 and that fraud resulted in the granting of the permanent order.

Sage Humphries, once again filed a false Police report hoping to utilize it to convince the Court to make the order permanent, just one day prior to the hearing in 2018. Sage used a photo from 2017, taken in Boston of the airsoft toys that she herself possessed receipts for (*see exhibit 1.H.2*) and lied to the Police again, not only stating that this photo was taken in California in 2018, but that Mitchell was **selling** illegal firearms in California. She also told the Police that we had created a secret company, hired a woman named Kennedy Brown (*see exhibits T, and 4.C*) as a secret employee to find Sage's home address so that we could come stalk her. The fact here is that Sage knew Kennedy long before she knew either of us and she knew that Kennedy was not our employee and that the company Kennedy's sister owned was in no way associated to us yet she used their names and their brand to fraudulently make this report (*see exhibit 1.D.1 and 4.B.1*). Sage knew that the toys she claimed Mitchell was selling in California were not firearms and that the photo was a year old and taken in Boston as noted on the image she provided to the Court.

The Police signed off that there had been no violation to the Abuse Prevention Order but Sage just "wanted it on record for the Court" and ONCE AGAIN Sage Humphries withheld this report from the Court the following day in her hearing however, she and her attorney lied to the Judge and informed him that the Police were investigating the violation and would get back to them soon, though they knew the report had in fact been closed (*see exhibit 1.D.1, 4.B, and 4.B.1*). Sage informed the Judge that we were selling illegal firearms in California and that we had sent a secret employee to stalk her. Though untrue and Police reports stated differently, the Judge decided in his "humble opinion" that these were violations and that he would therefore, grant this order as permanent with no evidence, no Defendants or counsel for us present and merely with Sage Humphries' word.

35

We recently informed Kennedy Brown of her name being fraudulently utilized in Sage's Police report and filings in order to circumvent the legal system and obtain this wrongfully granted order. To our surprise, were informed by Kennedy Browns sister that in 2022, Sage approached Kennedy stating that she was unhappy at Boston Ballet and asking her what she thought about Sage leaving Boston to come work at Nashville Ballet with Kennedy (*reference exhibit R*). Of course, it goes without saying that it would make no sense for Sage Humphries to seek out employment at Kennedy's company if she ever truly believed that Kennedy was our employee and was sent specifically to stalk Sage, as that would have of course, rendered Sage wanting to be as far away from Kennedy as possible. If there was ever fear of imminent danger, why would Sage then purposefully place herself directly in front of the very thing that she claimed to be "dangerous", a person she used to get her permanent restraining order. Kennedy was shocked and appalled to hear of Sage's misuse of her name and is currently seeking legal recourse against Sage Humphries for using her name and company to obtain fraudulent police reports and restraining orders against us.

There was never fear of imminent danger by Sage Humphries during the time we were together, nor was there any threat of imminent danger by us. There was never ANY form of abuse present in our relationship with Sage Humphries and the relationship from its onset until its forced demise was filed with real affection and happiness from all of us. In fact, the ONLY abuse ever witnessed during the entirety of the relationship was the abuse Sage suffered at the hands of her parents and her father's abuse of power through his license to practice law. There were NEVER ANY firearms inside of our home and Sage, her parents and her counsel all possessed then and possess now the receipts to prove that all of these photography props were merely plastic toys. The record reflects numerous lies while under oath by Sage Humphries during the two Abuse Prevention Order hearings rendering any testimony she may present to the Court in this hearing, to be entirely not credible. It is clear that Sage Humphries does not respect the judicial system or its process and believes that there are no consequences for her many infractions.  Unfortunately, we have witnessed her "act" on numerous occasions now but all of these "acts" using the Court room as her stage came then and will come now without ANY evidence to substantiate her claims. We ask the Court respectfully to consider all of the evidence we have provided, as well as our in-depth testimony to vacate this restraining order so that we may once again begin to rebuild the lives that she destroyed.

We declare beyond any doubt that EVERY statement Sage has filed in her affidavits as well as EVERY statement she made in her testimony in 2017 and 2018 were entirely false and are all proven to be perjury by the evidence that we have provided in our filings. Her attempt to block this rectification of the injustice we have suffered comes with testimony but that testimony comes with NO credibility considering she does not take her oath seriously enough to speak truth, even if that truth defeats the narrative she was brainwashed to believe in and forced to repeat in order to gain this order initially.

We do not live in Massachusetts nor do we live in California and have no intent to visit either state ANY TIME in the future, so while this order was wrongfully granted to start with, it is entirely unnecessary even if it had been granted based on truth rather than lies, which it was not.  We wish to forget about Sage Humphries entirely and never think of her again, much less contact her as she has done nothing but completely and utterly destroy us, (with no remorse) and

everything we have ever worked for. Her family's attack on our lives has yielded the hiring of Anthony Pellicano, a 17-year felon hired for a fortune to "silence us" which resulted in the breaking and entering of our home as well as serious physical threats to our well-being.  We have lived in fear for the last year following the hiring of this hit man, so if a restraining order were to be validated for any party, it should be validated for us, as we are the only party who has suffered trauma at the hands of another.

Sage Humphries was once very much loved and adored by both of us and at one point in time we admit that we would have done anything for her but this destruction and chaos that Sage brought into our lives was completely unfounded with disgusting allegations brought forth to push a false narrative due to others not approving of her relationship with us, to make it seem as though the reality of our relationship never took place and that she was a "victim". We want nothing more than to forget Sage Humphries **ever** existed in our lives as her destruction of our lives was not worth the love we once had for her.

We declare under penalty of perjury that the foregoing is true and correct.

Executed on March, 21st 2023

Dusty Button and Mitchell Moore

37

# Commonwealth of Massachusetts
## PROBATE AND FAMILY COURT DEPARTMENT

**BOSTON MUNICIPAL DIVISION**          **DOCKET #1701RO-181, 1701RO-182**

SAGE HUMPHRIES,

PLAINTIFF

v.

DUSTY BUTTON & MITCHELL TAYLOR
MOORE,

DEFENDANT

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO VACATE
## PERMANENT ABUSE PREVENTION ORDERS

### I.    INTRODUCTION

NOW COMES the Plaintiff who opposes the Defendants' Motion to Vacate the 209A
Abuse Prevention Orders. As reasons wherefore, Plaintiff states the following:

In 2017, Plaintiff Sage Humphries obtained abuse prevention orders against Defendants
Dusty Button and Mitchell Taylor Button. After a hearing at which all parties were present and
represented by counsel, had the opportunity to testify and submit evidence, and at which Plaintiff
was cross examined by Defendants' counsel, the Honorable Robert J. McKenna stated that he
"fully credited the plaintiff's testimony" and was "satisfied **beyond a reasonable doubt**, if this
were a criminal case" that Plaintiff's relationship with Defendants' "was a relationship that, once
again, over time, morphed into one of fear, isolation, and abuse of the plaintiff" and that "**in every
regard, in every way, meets the requirements of and the definition of abuse**" under
Massachusetts law. Ex. A at 61:2–62:3 (emphasis added). Judge McKenna then made the orders

permanent after Plaintiff submitted additional evidence of her reasonable fear of Defendants at a 2018 extension hearing.

In an effort to further their abuse of Plaintiff and intimidate and harass her, Defendants now improperly seek to reopen the abuse prevention order proceedings, arguing that Plaintiff's permanent abuse prevention orders should be vacated in part by falsely claiming that the orders were "fraudulently obtained." As this Court well knows, a permanent abuse protection order should rarely ever be set aside. *Cordelia v. Stevens*, 95 Mass. App. Ct. 635, 639 (2019); *see also Mitchell v. Mitchell*, 62 Mass. App. Ct. 769, 781 (2005) (an abuse prevention order "should be set aside only in the most serious of circumstances"). Here there is absolutely no valid basis to disturb the necessary, permanent abuse prevention orders Plaintiff obtained after full and fair hearings.

Not only is the crux of Defendants' argument a disagreement with Judge McKenna's factual findings, their argument is improper on a motion to vacate. They should instead be proving with clear and convincing evidence that the abuse prevention orders are no longer equitable because a change of circumstances has occurred, not arguing that Judge McKenna's original factual findings were wrong or "fraudulent."

At the time of the abuse prevention order proceedings, Defendants were represented by capable counsel who had every opportunity to raise arguments before the Court, as described below. Defendants' six-year stale complaint before this Court is that they contend Judge McKenna should have ruled in their favor because Defendants falsely contend that their abuse of Plaintiff was "romantic" and "consensual." But Defendants had the opportunity to raise such an argument before Judge McKenna in opposing the abuse prevention orders and they did, in fact, do so. Defendants were represented by able counsel during the abuse prevention order proceedings, submitted a written opposition attaching exhibits of their counsel's own choosing, attended the

2

39

initial hearing with their counsel, cross examined Plaintiff, and voluntarily chose not to testify themselves or to introduce additional evidence. The 2017 abuse prevention orders, which were hand served on Defendants in open court, stated the date of the next extension hearing. Defendants who, again, were represented by counsel, chose not to attend the extension hearing in 2018, when Judge Mckenna made the orders permanent based on additional evidence Plaintiff presented. Defendants have thus already had the opportunity to present any evidence, testimony, and argument about the merits of Plaintiff's claims of fear and cannot revisit the issuance of the underlying abuse prevention orders.

Not only did Defendants have a full and fair opportunity to present evidence to Judge McKenna, but they also could have appealed the permanent abuse prevention orders. Indeed, Defendants' arguments about the nature of their relationship with Plaintiff and how Judge McKenna weighed the evidence may have been appropriate for an appeal, but those arguments are not relevant under the standard this Court must apply when assessing whether an abuse prevention order should be vacated. Despite their arguments, Defendants, who were, again, represented by able counsel during the abuse prevention order proceedings, could have appealed the abuse prevention orders. Defendants did not appeal the abuse prevention orders and they cannot try to vacate the abuse prevention orders using arguments that are appropriate *solely* in an appeal.

Finally, under the totality of circumstances test and given the factors this Court applies in analyzing a motion to vacate an abuse prevention order, the Defendants cannot meet their burden of proving by clear and convincing evidence that, as a result of a significant change in circumstances, Plaintiff no longer has a reasonable fear of imminent serious physical harm. Both this Court and a federal court have found that Defendants willfully violated the abuse prevention orders. And Defendants have not "moved on" from Plaintiff and, in fact, continue to show extreme

3

hostility towards her. The Parties are also in ongoing litigation born of the same facts in the U.S. District Court of Nevada, a litigation that has become increasingly hostile. Finally, Defendants have not demonstrated in any manner that they have rehabilitated and moved on from their history of domestic abuse and retaliation against Plaintiff; they have only demonstrated the opposite.

**II.     STATEMENT OF THE CASE**

Plaintiff and Defendants have an extensive history that began in January 2017 when Plaintiff met Defendant Dusty Button ("Dusty") at the Boston Ballet. At this time, Plaintiff was 19, had just left a year-long relationship, and relocated from California to Massachusetts to pursue her dancing career. Dusty was 27 and Defendant Mitchell Taylor Moore ("Taylor") was 32 when the Parties met.  Not long after Plaintiff first met Defendants, Defendants began insisting that Plaintiff sleep at their place, controlling Plaintiff's social media platforms under the guise of "building her career," and isolating her from her friends and family.

Plaintiff's relationship with Defendants became abusive. Taylor began to sexually abuse Plaintiff, and Defendants quickly became increasingly insistent that Plaintiff perform acts and behave in ways that she neither felt comfortable with nor consented to. Defendants preyed on Plaintiff's age and aloneness in a new city to manipulate her and abuse her. In addition to the physical abuse and physically coercive nature of the relationship, Defendants greatly controlled Plaintiff's communications and invaded her privacy by accessing her phone contents and retaining the contents of her phone. Eventually, Plaintiff's parents flew to Boston and were able to remove her from her abusive and dangerous relationship with Defendants.

Because of Defendants' behavior, Plaintiff met her burden pursuant to G.L.c. 209A §4 and demonstrated a "substantial likelihood of immediate danger of abuse" and obtained temporary abuse prevention orders on or about August 1, 2017. Plaintiff returned for a hearing on August 15,

4

41

2017 to extend the abuse prevention orders for a year. At the 2017 hearing, Plaintiff submitted an affidavit and testified in support of her position. Ex. A; *see also* Ex. B. Defendants submitted a written opposition attaching exhibits prior to the hearing. Ex. A at 56:6–13 (Defendants' counsel describing written opposition and exhibits). In addition, during the hearing, Plaintiff testified under oath and was subject to cross examination by Defendants' counsel (and re-cross). Ex. A at 11–54 (examination of Plaintiff). Defendants were themselves present at that hearing, but voluntarily chose not to testify. Ex. A at 3 (noting Defendants' presence); *id.* at 6–8 (sidebar with the Court at which Defendants' counsels states he discussed Defendants' option to testify with them).

The evidence Plaintiff submitted to the Court during the 2017 hearing detailed the abuse she suffered at the hands of Defendants, including their harassing and stalking behavior after she moved out of their home in Boston. *See* Ex. B (2017 affidavit); Ex. A at 11–54 (Plaintiff's examination). Plaintiff testified about Defendants' protracted pattern of abuse against her, including sexual abuse. *See id.* Plaintiff testified that Taylor's sexual assaults "became a nightly ritual; Dusty would, 'fall asleep,' and he would begin to touch me." Ex. B at 1. At the 2017 hearing, Plaintiff described under oath specific instances in which Defendants threatened her friends and family in order to control her. Ex. A at 44:14–45:6. Plaintiff also testified that Taylor sent her a series of messages which said he "wanted to stage a kidnapping; wanted to not tell me the time or place; throw me in the back of his car; take me to a warehouse; suspend me from the ceiling; ***[expletive] me until I'm uncomfortable; and choke me until I pass out with a rag." Ex. A at 26:13–18.

At that hearing, the Court found that Plaintiff had again met her burden pursuant to G.L.c. 209A §3 by proving by a preponderance of the evidence that she reasonably feared imminent and

5

serious physical harm. Judge McKenna also observed during the hearing that the nature of the abuse "warrants the issuance of criminal complaints, if not indictments against [the Defendants]" and emphasized that counsel for Defendants advise Defendants that anything said at the civil hearing could be used against them in a criminal matter. Ex. A at 6:9-7:18. Judge McKenna fully credited Plaintiff's affidavit and sworn, live testimony and ended the hearing stating,

> I listened carefully to your questioning. I listened carefully to the plaintiff's answers. And I read with great care the very compelling affidavit that the plaintiff submitted when plaintiff and counsel were before me ten days ago. I fully credited the allegations in those – in the – in the affidavit. And I fully credited the plaintiff's testimony here today. I'm satisfied, not by a preponderance of the evidence, *I'm satisfied beyond a reasonable doubt*, if this were a criminal case, that the facts demonstrate that the parties engaged in an emotionally charged and unconventional relationship that, over time, became one in which the defendants became the dominant and controlling participants. *It was a relationship that, once again, over time, morphed into one of fear, isolation, and abuse of the plaintiff. Abuse that in every regard, in every way, meets the requirements of and the definition of abuse in General Laws Chapter 209A of our state.* It's for those reasons that I have extended the order for a period of one year.

*Id.* at 61:2–62:3 (emphasis added).

During the 2017 hearing and in her supporting affidavit, Plaintiff also expressed concern that Defendants had downloaded a digital copy of her private information from her cell phone, and that they could search through that information, including her text messages. Ex. B at 2 (2017 affidavit). Specifically, Plaintiff explained in her affidavit that under the guise of helping with her career, Taylor "took ownership of my Instagram, while simultaneously downloading all of my email, phone, and iCloud [sic] information." *Id.* at 1.

In response to Plaintiff's specific concern about Defendants having access to her electronically stored information, the Court checked a box on the abuse prevention order forms (Box 14) indicating that it would impose additional requirements on Defendants aside from simply staying away from Plaintiff, stating that Defendants were to "surrender any and all personal information to the Boston Police Department pertaining to [Sage], including electronically stored

6

43

information, and is not to publish such information." Ex. C (August 15, 2017 order as to Dusty Button); Ex. D (August 15, 2017 order as to Taylor Button). The Court reiterated this part of its order at the hearing, stating very clearly to Defendants' counsel in the presence of Defendants that "[t]he defendants are to surrender any and all personal information to the Boston Police Department – fine if [they] gave it to [Sage's attorney] – pertaining to the plaintiff, including electronically stored information, and that any such information is not to be published in any way at all. I hope your clients heard me loud and clear." Ex. A at 64:10-16.

Significantly, the Court made a point of ensuring that Defendants understood the meaning of the orders being entered against them, giving specific attention to the provision regarding surrendering personal information relating to Plaintiff. The court stated that it wanted Defendants "to hear it from me here today so if there is any allegation that pertains to No. 14 it will be back in front of me." *Id.* at 64:6-9. Critically, the court stated on the record, with Defendants present, "I do want [defendants] to understand the seriousness with which the Court takes the entire order, including the provisions that I've set out in box No. 14." *Id.* at 65:2-5.

At the conclusion of the hearing, Judge McKenna stated that the abuse prevention orders would be extended for a year and a further hearing would be held on August 14, 2018, at 9:00 a.m. Ex. A at 65:22–24 ("There will be a further hearing on this matter on August 14, 2018, at 9 a.m. in Courtroom C."). The Parties were served with the copies of the abuse prevention orders in the courtroom, and the abuse prevention orders also stated that another hearing would be held on August 14, 2018. Ex. A at 65:25–66:2; Ex. C (August 15, 2017 order as to Dusty Button stating, "NEXT HEARING DATE: 8·14·18 at 9:00"); Ex. D (August 15, 2017 order as to Taylor Button stating, "NEXT HEARING DATE: 8·14·18 at 9:00").

7

On August 14, 2018, Defendants did not appear for the extension hearing, despite receiving notice of the hearing date, and the abuse prevention orders were extended permanently. Ex. E at 7:10–11:9 (extending order permanently, noting Defendants' non-appearance, and noting that Defendants were present at the prior 2017 hearing), Ex. F (permanent abuse prevention order as to Dusty Button), Ex. G (permanent abuse prevention order as to Taylor Button). The Judge permanently extended the abuse prevention orders based upon the facts of the case and two subsequent violations of the orders that occurred since the 2017 court date, which Plaintiff submitted evidence of, and Defendants failed to refute by not appearing or submitting evidence. Ex. E at 7–8; Ex. M (Plaintiff's 2018 affidavit regarding Defendants' violations).

In 2021, Plaintiff and several other women who Defendants abused—some of whom Defendant Taylor Button abused when they were children and he was their dance teacher—filed a civil lawsuit against Defendants in federal court in the District of Nevada to compensate them for the abuse Defendants inflicted on them. *Humphries et al v. Button*, No. 21-cv-1412 (D. Nev.) (the "Nevada Litigation"). Defendants have been incredibly hostile in the Nevada Litigation—as just one example, in 2022, Defendants (through counsel) attempted to implead Plaintiffs' parents, calling Plaintiff "drug-addled," "sexual[ly] promiscu[ous]," and a "prostitute," and alleging that Plaintiffs' parents sex trafficked their daughter. *See e.g.*, Ex. H ¶¶ 30, 31, 35, 42(b), and 42(i). The Nevada Court ultimately dismissed Plaintiff's parents from the case. The Nevada Litigation has also demonstrated Defendants' willful disobedience of the abuse prevention orders. For example, Plaintiff sought sanctions against Defendants because, among other things, they attached to a public filing electronically stored information from Plaintiff's iPhone that Judge McKenna ordered them to surrender and not to publish. In December 2022, the Court in the Nevada Litigation sanctioned Defendants for continuing to possess electronically stored information from

8

Plaintiff's iPhone in violation of this Court's orders and then attempting to use that information against Plaintiff in the Nevada Litigation, and found Defendants' disclosure of the electronically stored information to be willful. Ex. I at 7–9.

Defendants' willful violations of the permanent abuse prevention orders and the orders' crucial role in creating protection between the Plaintiff and Defendants demonstrates why the Court should not vacate the permanent abuse prevention orders. Defendants have not met their burden by proving by *clear and convincing* evidence that the abuse prevention orders are no longer equitable because there has been a significant change in circumstances and the protected party no longer has a reasonable fear of imminent serious physical harm. Conversely, Defendants have violated the abuse prevention orders and no significant change in circumstances has occurred – the Parties are involved in litigation born from the same facts that led to the abuse prevention orders in the first place, Defendants have not "moved on" because they remain emotionally connected to Plaintiff and continue to, at the very least, amplify their grievances against Plaintiff, and Defendants have failed to provide any evidence demonstrating that they have moved beyond their histories of abuse. Applying the totality of the circumstances, Defendants have failed to demonstrate that Plaintiff no longer has a reasonable fear of imminent serious physical harm, and vacating the abuse prevention orders is not appropriate at this time.

**III.    LEGAL STANDARD**

A permanent abuse prevention order "should be set aside only in the most extraordinary circumstances." *Mitchell v*, 62 Mass. App. Ct. at 781. "[W]here a defendant seeks to terminate an abuse prevention order, the defendant must prove by clear and convincing evidence that the protected party no longer has a reasonable fear of imminent serious physical harm from the defendant, and that continuation of the order would therefore not be equitable." *MacDonald v.*

9

*Caruso*, 467 Mass. 382, 389 (2014).   The burden is on the defendant to demonstrate that a significant change in circumstances has occurred, and "a plaintiff shoulders **no burden** at a termination hearing and is entitled to rest on the finality of the order." *Id.* at 391 (emphasis added). The reason for this high burden is because "[w]here the [abuse prevention] order is permanent, as it is here, a defendant has been found at least twice (here, three times) to pose a reasonable threat of imminent serious physical harm to the plaintiff, and the judge who issued the permanent order found (at least implicitly) that the defendant poses a permanent threat to the safety of the plaintiff." *Id.* at 389–90.   Finally, a motion to terminate an abuse prevention order "is not a motion to reconsider the entry of a final order, and does not provide the defendant an opportunity to challenge the underlying basis for the order or to obtain relief from errors correctable on appeal." *Id.* at 388.

IV.    **DEFENDANTS' ARGUMENTS ARE AN IMPROPER ATTEMPT TO RELITIGATE THE MERITS OF THE PERMANENT ABUSE PREVENTION ORDERS.**

Defendants' Motion to Vacate the abuse prevention orders improperly focuses on whether or not the Court should have granted the permanent abuse prevention orders—an argument that Defendants should have raised on appeal, not by means of a motion to vacate. Defendants' Motion mostly describes in generalities how they believe that the abuse prevention orders were fraudulently obtained, rather than why they can meet their high burden of demonstrating that a change in circumstances has occurred justifying vacating the abuse prevention orders. Binding precedent makes clear why Defendants' attacks on the abuse prevention orders themselves are not appropriate.   But even if the Court were to consider Defendants' arguments, Defendants cannot demonstrate that the abuse prevention orders were illegally obtained.

10

a. <u>This Court Should Not Consider Defendants' Argument That The Abuse Prevention Orders Were Illegally Obtained on a Motion to Vacate.</u>

The Supreme Judicial Court of Massachusetts has held that a motion to terminate an abuse prevention order "is not a motion to reconsider the entry of a final order, and **does not provide the defendant an opportunity to challenge the underlying basis for the order or to obtain relief from errors correctable on appeal**." *MacDonald*, 467 Mass. at 388 (emphasis added); *see also B.S. v. L.C.*, 95 Mass. App. Ct. 1117, 1118 (2019) (affirming denial of motion to vacate because defendant was challenging the legal and evidentiary basis of the original order and extensions). Furthermore, in *MacDonald*, the Supreme Judicial Court made clear that "[w]here . . . the defendant does not challenge on direct appeal the entry of a permanent abuse prevention order under G. L. c. 209A, it becomes a final equitable order." *Id.* at 387. Procedurally, Massachusetts courts have held that "review of orders pursuant to G. L. c. 209A should not be initiated by petition under G. L. c. 211 § 3, but rather by the filing of an appeal in the Appeals Court." *Zullo v. Goguen*, 423 Mass. 679, 681 (1996).

Defendants argue in part that when the abuse prevention orders were originally obtained, the presiding judge – Judge McKenna – refused to admit their evidence and that "beyond any reasonable doubt with an immense abundance of hard evidence, this 209A was illegally obtained and granted under the false pretences [sic] of perjury in 2017 and 2018." Essentially, Defendants are requesting that the original entry of the permanent abuse prevention orders be reconsidered because they do not believe Judge McKenna should have credited Plaintiff's testimony. But vacating permanent abuse prevention orders on this basis would go against precedent in the Commonwealth. *See MacDonald*, 467 Mass. at 388. Defendants should have appealed the permanent abuse prevention orders if they believed that Judge McKenna should not have credited Plaintiff's testimony and if they had evidence to prove that she did not reasonably fear them. As

11

the Supreme Judicial Court made clear in *MacDonald*, Defendants' arguments are not appropriate on a Motion to Vacate and Defendants cannot revisit appealable issues <u>five years</u> after the permanent abuse prevention orders were issued. *See also Quirk v. Coolen*, 89 Mass. App. Ct. 1113, 1116 (2016) (holding that Defendant's motion to vacate challenging the underlying issuance of the abuse prevention order could not serve as a substitute for an appeal nine months after the order issued).

Acknowledging their own failure to appeal, Defendants state that they were "not aware of their right and ability to appeal this order and were informed by counsel that the Judge had made his decision prior to the hearing and that resisting was futile." Motion to Vacate at 3-4. The Court should reject this argument as both untrue and irrelevant. First, Defendants *were* aware of their right to appeal the permanent abuse prevention orders and have acknowledged this on several occasions. In declarations submitted in the Nevada Litigation, Defendants both explicitly stated "we did not intend to fight the Abuse Prevention Order." *See* Ex. J at 3 (Declaration of Mitchell Taylor Button); Ex. K at 3 (Declaration of Dusty Button). Similarly, in a Daily Mail article published September 7, 2022, the Defendants stated in reference to the abuse prevention order that "[w]e never appealed the order because we never wanted to see her face again or anyone related to her." Ex. L at 13.

Second, Defendants were represented by counsel, Kevin Mahoney, during the abuse prevention order proceedings. Ex. A at 1. Defendants' counsel would have understood that any notice of appeal would have to be filed within a clerk of the lower court within thirty (30) days of the entry of the order. *See* Mass. R. App. P. 4(a)(1). Defendants should raise any grievance about not being advised of their right to appeal with their former counsel rather than attempting to reopen prior proceedings at which they had a full and fair opportunity to present any evidence they

12

49

possessed in support of their position. Due to Judge McKenna's factual findings about Plaintiff's credibility and allegations, his observations that the allegations were so serious that criminal action was entirely appropriate, and his reminder that any testimony Defendants gave could have been used against them in a criminal proceeding, it is understandable why Defendants did not appeal. But to allow Defendants to upend the permanent abuse prevention orders now simply because they are *pro se* and have a different legal strategy than their strategy when they had counsel would set a precedent that would upend the legal system—any litigant could simply fire their attorneys, claim *pro se* status, and demand a second bite at the apple for any legal issues finally resolved by the Court that they failed to appeal through counsel.

Finally, even if Defendants had not been represented by counsel at the time of the permanent abuse prevention orders, their *pro se* status would not have excused their failure to file an appeal or provided them with another opportunity to reopen the proceedings. It is well settled that "[a] *pro se* litigant is bound by the same rules of procedure as litigants with counsel." *International Fid. Ins. Co. v. Wilson*, 443 N.E.2d 1308 (Mass. 1983). The fact that a Defendant appears "pro se does not excuse the failure to file the claim of appeal within the applicable time period." *Kellermann v. Kellermann*, 458 N.E.2d 1196, 1198 (Mass. 1984).

b. Even if Defendants' Arguments are Credited, Their Arguments are Undermined by the Prior Proceedings and Misstate the Relevant Standards.

Even if the Court were to consider Defendants' arguments as to why the abuse prevention orders should have never been granted—it should not—those arguments are meritless. Defendants generally argue that "Ms. Humphries was never under duress, threatened or forced to do anything against her will during her time in the relationship with Defendants..." Motion to Vacate at 3. However, this is an *improper characterization* of the standard this Court applies in issuing abuse prevention orders. To obtain relief under Mass. G. L. c. 209(a), a Plaintiff must show "by a

13

preponderance of the evidence, that the defendant has caused or attempted to cause physical harm, committed a sexual assault, or placed the plaintiff in reasonable fear of imminent physical harm." *MacDonald*, 467 Mass. at 386.

Here, Plaintiff met her burden of showing by a preponderance of the evidence that Defendants sexually assaulted her and that she was placed in reasonable fear of imminent physical harm. Plaintiff provided affidavits to the Court at the initial hearings and when she sought a permanent extension of the abuse prevention orders. *See generally* Ex. A; Ex. B; Ex. M. At the hearing on August 15, 2017, Plaintiff testified that Mr. Button "[told] me that he wanted to stage a kidnapping; wanted to not tell me the time or place; throw me in the back of his car; take me to a warehouse; suspend me from the ceiling; fuck me until I'm uncomfortable; and choke me until I pass out with a rag." Ex. A at 26. Plaintiff also testified at the same hearing, "I'm very afraid because they have a very violent and angry nature." *Id*. at 44. Defendants' counsel cross examined Plaintiff extensively about her allegations. *Id*. at 11–54 (examination of Plaintiff).

Judge McKenna credited Plaintiff's testimony. *Id*. at 61:11–12 ("I fully credited the plaintiff's testimony here today."). Plaintiff's testimony fully supported a finding that her fear of imminent harm by the Defendants was reasonable, and the issuance of the abuse prevention orders was well within Judge McKenna's discretion as the fact finder who evaluated the evidence. Judge McKenna stated that not only were civil abuse prevention orders appropriate and necessary, but criminal complaints and even indictments would be appropriate as well:

> I'm satisfied, not by a preponderance of the evidence, I'm satisfied beyond a reasonable doubt, if this were a criminal case, that the facts demonstrate that the parties engaged in an emotionally charged and unconventional relationship that, over time, became one in which the defendants became the dominant and controlling participants. It was a relationship that, once again, over time, morphed into one of fear, isolation, and abuse of the plaintiff. Abuse that in every regard, in every way, meets the requirements of and definition of abuse in General Laws Chapter 209A.

14

51

Ex. A at 61:2–62:3. Then, at the 2018 extension hearing, Plaintiff presented evidence that Defendants had violated the abuse prevention orders, which Judge McKenna also credited. Ex. E at 5–6; Ex. M. If Defendants now contend that they did not in fact violate the abuse prevention orders between the 2017 and 2018 hearings, that ship has sailed – Defendants voluntarily decided not to appear at that hearing or to refute Plaintiff's evidence, as they were made aware of the date of the next hearing in open court. Ex. A at 65:22–24 ("There will be a further hearing on this matter on August 14, 2018, at 9 a.m. in Courtroom C."); *see also* Ex. C (August 15, 2017 order as to Dusty Button stating, "NEXT HEARING DATE: 8·14·18 at 9:00"); Ex. D (August 15, 2017 order as to Taylor Button stating, "NEXT HEARING DATE: 8·14·18 at 9:00"). Judge McKenna found that permanent protection was necessary, and Defendants failed to appeal.

Judge McKenna found that Plaintiff met her burden on *three* separate occasions that an abuse prevention order was appropriate because she was placed in reasonable fear of imminent harm. Whether Defendants believe Plaintiff was not under duress, was forced to do things against her will, or was compelled by her parents to apply for the abuse prevention orders is irrelevant to the determination of whether the abuse prevention orders were properly issued based upon Plaintiff's testimony and the Court's findings. The abuse prevention orders were properly issued and, crucially, Defendants waived their opportunity to appeal them.

Defendants also claim that the evidence they submitted to Judge McKenna was not "allowed as an exhibit and not a single piece of this evidence was viewed by Judge McKenna." But Judge McKenna made clear that he considered all documents submitted by Defendants prior to the 2017 hearing, including the written opposition and exhibits Defendants' counsel submitted. *See, e.g.,* Ex. A at 18:4–11. Further, Defendants' counsel cross examined Plaintiff on the stand with many of those documents. For example, Defendants' counsel asked Plaintiff questions under

15

oath about the very July 2017 Orange County police report that Defendants claim was "withheld from the Court"—a publicly available document Defendants could have obtained through a public records request and submitted prior to the next hearing in 2018. Ex. A at 30:21–31:25. Defendants' counsel also introduced many of the messages between the parties that Defendants reference in their motion at the hearing, and counsel examined Plaintiff about them. *See, e.g., id.* at 14:24–15:2, 18:3–24:19. Defendants point to nothing in the record suggesting that Judge McKenna did not allow them to submit evidence, and any grievance with Defendants' prior counsel as to what he did or did not submit to Judge McKenna should be addressed with Defendants' prior counsel. As to the 2018 extension hearing, Defendants voluntarily chose not to attend or to submit evidence, and cannot now claim unfairness. If they had attended the hearing, they would have been present when Plaintiff's counsel described the 2018 police report to the Melrose Police Department that they now claim was "withheld" from them. Ex. E at 5:20–6:5. Defendants' arguments about the fairness of the abuse prevention order proceedings are meritless.

Finally, Defendants attempt to falsely characterize the original abuse prevention order proceedings as "fraudulent." But to demonstrate entitlement to relief under a fraud on the court theory, Defendant must demonstrate "clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Caisey v. Hewitt*, 91 Mass. App. Ct. 1102, 1103 (2017) (unpublished) (quoting *Commissioner of Probation v. Adams*, 65 Mass. App. Ct. 725, 729-730 (2006)). Here, Defendants merely use the phrase "fraud on the court" and disagree with how Judge McKenna weighed the evidence before him—they have not demonstrated that some

16

unconscionable scheme has occurred. *See Caisey*, 91 Mass. App. Ct. at 1103 (finding that the fraud on the court allegation was "fleeting").

### V.    DEFENDANTS CANNOT MEET THEIR BURDEN OF PROVING A CHANGE IN CIRCUMSTANCES JUSTIFYING A MOTION TO VACATE.

As explained above, it is Defendants' burden to demonstrate that a significant change in circumstances has occurred in order to justify vacating the permanent abuse prevention orders. *MacDonald*, 467 Mass. at 391. At this stage, Plaintiff bears *no burden* and need not reprove her reasonable fear of harm, as Judge McKenna found that she met that burden on three occasions and Defendants chose not to appeal.

As to Defendants' burden, "[t]he significant change in circumstances must involve more than the mere passage of time, because a judge who issues a permanent order knows that time will pass. Compliance by the defendant with the order is also not sufficient alone to constitute a significant change in circumstances, because a judge who issues a permanent order is entitled to expect that the defendant will comply with the order." *MacDonald*, 467 Mass. at 388–89. This Court applies a totality of the circumstances test to determine whether the Plaintiff is no longer in reasonable fear of imminent harm and vacating the abuse prevention order is appropriate. *Id.* at 389. When the abuse prevention order is permanent, "a judge who issued the permanent order found (at least implicitly) that the Defendant poses a permanent threat to the safety of the plaintiff." *Id.* at 389-390. And, "the only relevant issue is the safety of the Plaintiff." *Id.* at 392. "The fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for… allowing an order to… be vacated." Mass. G. L. c. 209A § 3.

Defendants have submitted ***no evidence*** demonstrating that a significant change in circumstances has occurred and they have not met their burden of showing that under the clear and convincing evidence standard the permanent abuse prevention orders are no longer equitable. For

17

example, Defendants have not shown that they have moved on from the abuse by adhering to the abuse prevention orders and producing other evidence such as an affidavit describing how they have moved on from their abuse. *MacDonald*, 467 Mass. at 393 (affirming denial of motion to vacate because defendant needed to demonstrate "that he has 'moved on' from his history of domestic abuse and retaliation" and failed to submit "an affidavit from the chief of police or the keeper of the records of his city in Utah attesting that the police had no record of any allegations of domestic abuse" or criminal offender record information); *L.L. v. M.M.*, 95 Mass. App. Ct. 18, 23 (2019) (affirming denial of motion to vacate where defendant provided criminal records, but did not produce an affidavit from local police or his current wife demonstrating that he had moved on from his history of abuse).

Nor have Defendants shown that they have "moved on" with their lives, which Defendants must show to demonstrate that a change of circumstances has occurred justifying vacating the permanent abuse prevention orders. Moving on requires more than going about life and may include moving on from a history of domestic abuse and retaliation. *MacDonald* 467 Mass. at 393. Defendants have provided no evidence supporting a finding that they have "moved on" from Plaintiff and their history of domestic abuse and retaliation. The parties remain intertwined in litigation born of these same facts. Defendants have given media interviews and amplified content about how Plaintiff has wronged them, and have made egregious and aggressive allegations against her in the media and in the Nevada Litigation. *See* Ex. H, Ex. L.

Indeed, although plaintiff bears no burden to prove ongoing fear of Defendants, Defendants' conduct has shown that the permanent abuse prevention orders are still necessary. There have been alleged and actual violations of the abuse prevention orders – this Court found that the Defendants violated the abuse prevention orders twice between 2017 and 2018 (Ex. E at

18

9:1–6) and the Court in the Nevada Litigation found that Defendants violated the abuse prevention orders in 2022 (Ex. I at 6–10). Defendants' noncompliance with the permanent abuse prevention orders should be *de facto* proof that a change in circumstances has *not* occurred, and the permanent abuse prevention orders remain necessary to protect Plaintiff from Defendants. *See MacDonald* 467 Mass. at 391; *see also L.L.*, 95 Mass. App. Ct. at 24 (court took notice of repeated violations of abuse prevention order and affirmed lower court's decision not to vacate abuse prevention order despite the parties having no contact for fifteen years, defendant residing in Nevada, and submitting criminal record information). Further, Defendants themselves write that they would like to obtain a restraining order against Plaintiff and her parents, undercutting any argument that protection is no longer necessary and that the parties have all moved on. Motion to Vacate at 5.

The fact that Defendants have relocated to Nevada is irrelevant because geographic proximity is only one factor to be considered under the totality of the circumstances test, Defendants have not moved on from Plaintiff, and the fact that Plaintiff and Defendants work in generally the same industry (ballet) makes it likely that their paths could cross again in the future. *See, e.g., A.F. v. B.Z.*, 95 Mass. App. Ct. 1121, 1122 (2019) (unpublished) (affirming denial of motion to vacate where defendant relocated to Tennessee and remarried, but the court found that the defendant was still emotionally connected to Massachusetts and it was likely that the parties' paths would cross again); *L.L.*, 95 Mass. App. Ct. at 24 (affirming denial of motion to vacate despite the parties having no contact for fifteen years, defendant residing in Nevada, and submitting criminal record information).

Further, the abuse prevention orders included a requirement that Defendants surrender "any and all personal information pertaining to [Plaintiff] to the Boston Police Department, including electronically stored information, and is not to publish such information." Ex. A at 64:10-64:18;

19

Ex. C at ¶ 14; Ex. D at ¶ 14. Geographic distance has not and will not protect Plaintiff from Defendants' publications of harmful material, which the permanent abuse prevention orders were in part meant to prevent for the remainder of Plaintiff's life. The federal court in the Nevada Litigation unequivocally held that the Defendants violated the abuse prevention orders by publishing electronically stored information pertaining to Plaintiff that was not surrendered in the public record. Ex. I at 8-10. Plaintiff's ongoing reasonable fear of imminent harm is bolstered by Defendants repeated flagrant disregard of the abuse prevention orders and their willingness to publish and/or amplify content about their grievances against Plaintiff, and their extreme hostility towards Plaintiff in the Nevada Litigation.

Defendants have not raised any arguments this Court can consider on a motion to vacate but, even if they had, Defendants cannot demonstrate with clear and convincing evidence that the abuse prevention orders are inequitable because a change in circumstances has occurred.

### III. CONCLUSION

Defendants' arguments in their motion to vacate are solely appropriate for an appeal that they have long since waived—Defendants improperly seek to re-litigate the issuance of the abuse prevention orders now arguing that the permanent abuse prevention orders were fraudulently obtained (five years after the fact and something that their counsel surely would have raised if he believed a fraud on the court had indeed occurred). Plaintiff met her burden on *three* occasions by demonstrating by a preponderance of the evidence that she had been abused and was in reasonable fear of imminent harm. To revisit the original issuance would not only contradict established case law, it would improperly shift the burden from Defendants back to Plaintiff.

Under the appropriate standard applied to a motion to vacate, Defendants cannot demonstrate that they have met their burden of proving, with clear and convincing evidence, that

20

abuse prevention orders are inequitable – the Parties are intertwined in hostile litigation,
Defendants and Plaintiff occupy the same world of ballet, and Defendants continue to publish and
openly discuss their grievances against Plaintiff. Hostility between the Parties continues and
Defendants cannot, in any sense, show that they have "moved on."

   For the foregoing reasons, vacating the permanent abuse prevention orders would not be
appropriate or equitable at this time.


Dated: March 21, 2023      Respectfully submitted.

              Sage Humphries,
              By Plaintiff's Attorney,

              *Maura Melcher*

              Maura Melcher
              Melcher Law PC
              800 Hingham Street, Suite 200N
              Rockland, MA 02370
              BBO: #686234
              Phone: (617) 485-0859
              maura@abostonlawyer.com

              Sabina Mariella (admitted *pro hac vice*)
              Boies Schiller Flexner LLP
              55 Hudson Yards
              New York, NY 10001
              Phone: 212.446.2300
              smariella@bsfllp.com

21

## CERTIFICATE OF SERVICE

**The undersigned hereby certifies** that a true copy of the enclosed Opposition to Defendants'
Motion to Vacate the Abuse Prevention Orders and Accompanying Exhibits was this day served
upon Defendants Dusty Button and Mitchell Taylor Moore via email at
desmodynamica@gmail.com and worldofdusty@gmail.com. The Plaintiff has requested that this
Motion be marked up to be heard on the Motion to Vacate Hearing on March 27, 2023.

Signed under the penalties of perjury.

Dated: March 21, 2023

Maura Melcher (EM)

Maura Melcher, Esq.

22

59

Mitchell Taylor Button
5664 Deer Creek Falls Ct.
Las Vegas, NV 89118
Telephone: 310. 499. 8702
Desmodynamica@gmail.com

Dusty Button
5664 Deer Creek Falls Ct.
Las Vegas, NV 89118
Telephone: 310. 499. 8930
Worldofdusty@gmail.com

**COMMONWEALTH OF MASSACHUSETTS**

**PROBATE AND FAMILY COURT DEPARTMENT**

**SUFFOLK, SS.            DOCKET #1701RO181, 1701RO182**

SAGE HUMPHRIES,

       Plaintiff,

v.

MITCHELL TAYLOR MOORE AND DUSTY
BUTTON,

       Defendants.

**DEFENDANTS RESPONSE TO
PLAINTIFFS' OPPOSITION PURSUANT
TO THEIR MOTION TO VACATE**

       Defendants have already filed their affidavit and exhibits in support of their

Motion to Vacate however; Defendants file this brief response with exhibits in addition as a

reply to Plaintiffs' opposition so that all references to both Defendant's Motion to Vacate and

Plaintiff's opposition can be properly discussed on March 27th.

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE -
1

**PRELIMINARY STATEMENT**

Plaintiff's counsel argues numerous irrelevant points in their opposition deferring the fraud Defendants have so clearly pointed out to them, including those that have already been heard and ordered by the Boston Municipal Court just three weeks ago, (*reference exhibit 1*). Once again, the reputation of both Boies Schiller Flexner and Maura Melcher precedes them as they continue to manipulate the Court and hypocritically attempt to relitigate issues that have been ordered in Boston and ruled moot in Nevada (*reference exhibits 1 and 2*), though Nevada litigation is **not relevant in any way to this hearing**. In fact, Plaintiffs *Pro Hac Vice* counsel is now opposing her own arguments in Nevada by involving herself in this very Motion filed by Defendants, as Plaintiff stated in Nevada, Plaintiff was not in a relationship with Defendants at all. Moving forward, this hearing is solely for a Motion to Vacate with claims of fraud on the court in 2017 and 2018 in which Nevada counsel was not involved in whatsoever at that time, hence their admission for *pro hac vice* being the very scheme in which they claim is not taking place, to use the Court systems against one another confirming they should not be present in this hearing at all, as the fraud Defendants raise from 2017 and 2018 is solely against Ms. Humphries and Ms. Melcher.

On February 22nd Honorable Judge Lyons heard Plaintiff's argument regarding Complaint of Contempt however, due to Plaintiff not meeting the burden and only providing "beliefs", there was no contempt found (*once again reference exhibit 1*). During this hearing on February 22nd, 2017 Honorable Judge Lyons informed Defendants after reading Defendants Motion to Vacate to make sure they provided the Court and Plaintiff's counsel with *all* exhibits they wish to present for their Motion to Vacate on March 27th, especially as there were mentions of false police reports and withholding of information (*reference Defendants Motion to Vacate*

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 2

*exhibits 1B.1.2, 1B.1.3, 1.C.1, 1.C.2, 1.C.3, 1.D.1, 3.C,4.B, 4.B.1, 4.C, E.A, R*). To be as brief as possible and not take more of the Court's time, Defendants will respond to the important facts Plaintiff's opposition so it may be argued properly at the hearing.

## ARGUMENT

Plaintiff's counsel argues in their opposition (*Page 10, IV*), "*Defendants' Motion to Vacate the abuse prevention orders improperly focuses on whether or not the Court should have granted the permanent abuse prevention orders-an argument that Defendants should have raised on appeal, not by means of a motion to vacate. Defendants' Motion mostly describes in generalities how they believe that the abuse prevention orders were fraudulently obtained, rather than why they can meet their high burden of demonstrating that a change in circumstances has occurred justifying vacating the abuse prevention orders. Binding precedent makes clear why Defendants' attacks on the abuse prevention orders themselves are not appropriate. But even if the Court were to consider Defendants' arguments, Defendants cannot demonstrate that the abuse prevention orders were illegally obtained.*"

Defendant's Motion to Vacate the abuse prevention orders *properly* focuses on **all** aspects of why these orders were wrongfully granted, the fraud on the court that led to the orders being granted, as well as the fact that Defendants were not afforded the opportunity to defend themselves in 2018 when the order was made permanent, (as noticed by Honorable Judge Lyons in the February 22nd hearing) stating, "I believe all parties have the right to be heard" after seeing that the Defendants were not properly heard prior to this hearing. Sage Humphries committed perjury, (reference Defendant's Motion to Vacate exhibit *1.C.1, 1.C.2, D.1, 1.E.1, 1.E.2, 1.E.3, 1.G.1, 1.G.2, 1.G.3, 1.I.2, 1.I.3, 1.I.4, 1.I.5, 1.J.1, 1.J.2, 1.J.3, 4.B, 4.B.1, 4.C, 4.D.A, 4.D.B,*

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 3

*4.B.C, 4.D.D, 4.E.A, 4.F, E.A, S. 1-8, R*) and not only withheld information and reports from the Court but merely "mentioned" Police reports that were inaccurate from what was truly filed and her Counsel actually walked her into the Melrose Police station to assist this fraud (*reference Defendant's Motion to Vacate exhibit 3.C*). The withheld Police reports would have additionally proven beyond any reasonable doubt that the requirements of a 209A were NEVER met in 2017 nor in 2018.

In regards to a change in circumstances (*Page 10, IV of Plaintiffs opposition*), Sage Humphries *mentioned* "claims" of Police reports being filed in Court both in 2017 and 2018 yet, she withheld the actual Police reports both years from the Court.  It is outrageous for Plaintiff's counsel to place responsibility on Defendants to hunt down a Police incident report in California that they knew nothing about until after the 2017 hearing when Ms. Humphries could have presented this report to the Court herself. The reason Ms. Humphries did not bring that report to Court, printed for the Court to see is due to that very report *contradicting her entire narrative she created against Defendants.*

Plaintiff's counsel state Defendants could have accessed these public reports for an appeal. This is completely ridiculous and Defendants should not in any way have had the burden of retrieving a public Police report they did not know existed until *after* the hearing in 2017, when that should have been presented to the Court by Sage Humphries, as the burden was hers to prove. Ms. Humphries happily bragged about "filing a report" in Orange County, CA during her testimony in 2017, merely mentioning a "number" of a report she filed, (*reference Defendant's Motion to Vacate exhibit 1.C.1*) but failed to even mention what the report said or contained because she knew it would have hurt her narrative she was desperately trying to create. Ms. Humphries was asked about the Orange County Police incident report while under oath in

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 4

2017, (*reference Defendants Motion to Vacate exhibits 1.C.2 and 1.C.3*), but she made zero *good-faith* effort to even print out or show the report in Court.

As stated, Ms. Humphries lied numerous times under oath and based on Defendant's relationship with Ms. Humphries at the time and Defendants new understanding that she had lied to them as well (*reference Defendants Motion to Vacate exhibits 1.E.8, 1.E.10, 1.E.11, 1.E.12, 1.G.1, 1.G.2, 1.G.3, 1.K.1, 1.K.2, 1.K.3, 1.K.4, 1.K.5, 1.K.6, 1.K.7, 12.A, 12.B, 13.A-F, 15.A-O, 15.Q, T)* , they would not have believed without proof and evidence that Ms. Humphries even filed any reports at all as it seemed to be her standard procedure at that point in time to lie. In fact, Defendants **were not made aware of this report** or ***any of the five*** Police incident reports until the Nevada litigation discovery process began in 2022.

In reference to Plaintiff's claims that the circumstances have not changed, that is incorrect. The circumstances have **absolutely changed** and the circumstances of this withheld evidence has also changed. Now that Defendants have obtained multiple Police incident reports and spoken first-hand to officers in regards to these reports, they have proven to the Court in their filings that these reports would have led to the denial of these orders if they hadn't been withheld in 2017 and 2018. Not only have the circumstances significantly changed but in regards to the circumstances concerning the Plaintiff herself, the circumstances in 2017 and 2018 were that every word she stated in her testimony under oath was a lie, all claims she stated in her affidavits were lies, her purpose of filing this order and claim that it was her decision to do so were lies and due to the fact that she continues to perjure herself today with those same lies, will tell the court and anyone else witnessing this injustice that *her* circumstances have in fact remained the same.

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 5

The main argument is that this Abuse Prevention Order was granted due to fraud on the court, false testimony under oath, fraudulent affidavits and the withholding of evidence but the most relevant fact is just as prominent today as it was in 2017, that t**here was never any form of abuse** to prevent **nor was there any risk of imminent danger,** also shown in Police reports by officers, or evidence that would convince any unbiased court that this order is valid.

Plaintiff's Counsel continues to state case law though no case has ever remotely resembled this case at hand. These references are not relevant as the circumstances do not correlate or relate to the reasoning behind decisions made in these referenced cases whatsoever. Defendants have been put in a position that renders this case highly unusual, leaving the necessity of this case law referenced below for vacating an abuse prevention order, useless, as it is impossible to compare a case that is in no way, shape or form similar in the slightest.

Plaintiffs state in their opposition (*page 11 a.*) "*The Supreme Judicial Court of Massachusetts has held that a motion to terminate an abuse prevention order "is not a motion to reconsider the entry of a final order, and does not provide the defendant an opportunity to challenge the underlying basis for the order or to obtain relief from errors correctable on appeal." MacDonald, 467 Mass. at 388 (emphasis added); see also B.S. v. L. C., 95 Mass. App. Ct. 1117, 1118 (2019) (affirming denial of motion to vacate because defendant was challenging the legal and evidentiary basis of the original order and extensions). Furthermore, in MacDonald, the Supreme Judicial Court made clear that "[w]here ... the defendant does not challenge on direct appeal the entry of a permanent abuse prevention order under G. L. c. 209A, it becomes a final equitable order." Id. at 387. Procedurally, Massachusetts courts have held that "review of orders pursuant to G. L. c. 209A should not be initiated by petition under G. L. c.*

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 6

*211 § 3, but rather by the filing of an appeal in the Appeals Court." Zullo v. Goguen, 423 Mass. 679,681 (1996).*

Defendants understand Plaintiff's counsel must dedicate their entire defense to quoting case law from literally *any* case aside from the one that they are present in the Court room to litigate, in order to distract the Court from the fact that they are guilty of committing fraud on the court and more so, of the unethical violations to their oath to the bar association (*reference exhibit 3, defendants courtesy warning to Plaintiff's counsel*), through their extremely unprofessional misconduct. Plaintiff's counsel possessed in 2017 and 2018 *all* evidence that disproved all of Sage Humphries' claims that led to this 209A as well as the evidence that Sage Humphries was forced to sign this order against her will *(reference Defendants Motion to Vacate exhibit 1.A.2)*, therefore voiding its authenticity so they, like the court in 2017, have a duty to consider this evidence rather than avoiding it by litigating irrelevant case law.

Defendants attempted to provide the court with evidence in 2017 but Judge McKenna made it clear that he had made his decision based on Sage Humphries testimony alone and "did not need a preponderance of evidence" so that evidence was not accepted as an exhibit.  In 2018, Defendants were not aware of a hearing nor did they receive a summons or have legal representation present and were not notified by prior counsel, so once again they were not afforded the right to a fair hearing. Defendants are certain that if they were as educated at manipulation and deception as Sage Humphries and her counsel, they could easily provide case law for dozens of irrelevant cases that verify in past times that they have in fact, in any venue committed fraud but even then, they would focus on the evidence rather than hearsay.

Plaintiff's counsel once again bring up Nevada litigation in a Court where it is not relevant considering this is an entirely different state and matter prior to Nevada representation

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 7

via their admission for *pro hac vice* and reminding Plaintiff's counsel that this hearing is for Defendants Motion to Vacate based on fraud on the Court however, Plaintiffs continue to state, (*page 12 and 13 of Plaintiff's opposition*), "*In declarations submitted in the Nevada Litigation, Defendants both explicitly stated "we did not intend to fight the Abuse Prevention Order." See Ex. J at 3 (Declaration of Mitchell Taylor Button); Ex. K at 3 (Declaration of Dusty Button). Similarly, in a Daily Mail article published September 7, 2022, the Defendants stated in reference to the abuse prevention order that "[w]e never appealed the order because we never wanted to see her face again or anyone related to her." Ex.Lat 13. Second, Defendants were represented by counsel, Kevin Mahoney, during the abuse prevention order proceedings. Ex. A at 1. Defendants' counsel would have understood that any notice of appeal would have to be filed within a clerk of the lower court within thirty (30) days of the entry of the order. See Mass. R. App. P. 4(a)(l). Defendants should raise any grievance about not being advised of their right to appeal with their former counsel rather than attempting* to *reopen prior proceedings at which they had a full and fair opportunity to present any evidence they possessed in support of their position.*"

In response to these statements, Defendants were not informed of any ability to appeal an order nor were they notified of a hearing in 2018.  In fact, Defendants were told by their own counsel following the 2017 hearing that there was no use in fighting because "Judge McKenna had made his decision prior to ever entering the court room and hearing the case".  Defendants were told that once an order is granted in Boston, there is nothing that can be done and that it's best if they go back to California and forget about the hearing that had just taken place and about Ms. Humphries.

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 8

Plaintiffs also state in their opposition (*page 13*), "*Due to Judge McKenna's factual findings about Plaintiffs credibility and allegations, his observations that the allegations were so serious that criminal action was entirely appropriate, and his reminder that any testimony Defendants gave could have been used against them in a criminal proceeding, it is understandable why Defendants did not appeal.*"

In response to this, Defendants state that Judge McKenna had absolutely **no factual findings** (*reference exhibit 2.A),* as of course **factual** findings would require evidence and proof to render them **factual** rather than the testimony alone which of course rendered any findings merely **hearsay**. Judge McKenna could not have possibly **observed** anything, as the only evidence present in the Court room was Defendant's own and he did not view it. Defendants did not appeal because they were not aware that an appeal was possible however, Defendants had hoped that Sage Humphries and her supportive Judge McKenna **would** attempt to press charges because it is abundantly clear that in **criminal** court **evidence** is not ignored, rather it is required and this requirement would therefore clear Defendant's names of all false allegations Sage Humphries has made against them, as she abused the civil judicial process. In fact, all law enforcement Sage filed incident reports with ruled her claims unfounded every single time.

Plaintiff's Counsel state in their opposition (*Page 13*), "*any litigant could simply fire their attorneys, claim pro se status, and demand a second bite at the apple for any legal issues finally resolved by the Court that they failed to appeal through counsel.*" Defendants do not argue this point. This is true, which is why Defendants stand here today "biting that apple".

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 9

1    (*Page 14 of Plaintiff's opposition*) states "*Here, Plaintiff met her burden of*

2  *showing by a preponderance of the evidence that Defendants sexually assaulted her and that she*

3  *was placed in reasonable fear of imminent physical harm. Plaintiff provided affidavits to the*

4  *Court at the initial hearings and when she sought a permanent extension of the abuse prevention*

5  *orders,"* however, here, Plaintiff met **no burden** and showed **no evidence** (though she could

6  have used her police reports), much less **a preponderance of evidence** (that is required for the

7  granting of a 209A), In fact, Ms. Humphries withheld evidence that would verify to the Court

8  that Defendants did **none** of the things that she claimed to the Court. Plaintiff did provide

9  affidavits and to date, all affidavits that she has provided to the Court are entirely false (proven

10  by Defendants), and therefore she is guilty of perjury.

11    Furthermore, Judge McKenna himself stated (per Court transcript) that he was

12  "satisfied **NOT** by the preponderance of evidence" (*reference Defendant's Motion to Vacate*

13  *exhibit 2.A, 5.A, 5.B*).  On February 22nd, Honorable Judge Lyons stated that in **her** Court room

14  she requires **evidence** to pass any judgement so Defendants understand that Sage Humphries and

15  her counsel must resort to unethical tactics in an attempt to manipulate the Court rather than

16  providing evidence but of course evidence cannot exist for events which never took place.

17    In Plaintiff's opposition (*page 15*) they state "*Then, at the 2018 extension*

18  *hearing, Plaintiff presented evidence that Defendants had violated the abuse prevention orders,*

19  *which Judge McKenna also credited. Ex. E at 5-6; Ex. M. If Defendants now contend that they*

20  *did not in fact violate the abuse prevention orders between the 2017 and 2018 hearings, that ship*

21  *has sailed - Defendants voluntarily decided not to appear at that hearing or to refute Plaintiffs*

22  *evidence, as they were made aware of the date of the next hearing in open court*".

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 10

At the 2018 extension hearing, Plaintiff and Plaintiff's counsel merely presented fabricated and fraudulent statements, per transcript (*reference Defendants Motion to Vacate exhibits 3.A, 3.B, 3.C, 3.D, 1.G.1, 1.G.2, 1.G.3, I. 1-5*). While Plaintiff and Plaintiff's counsel state that she presented evidence that Defendants had violated the abuse prevention orders, this is also a lie, all while they were **withholding** genuine evidence in the form of her false police report that verified there had been **NO** violation. In addition to there being no violation, Maura Melcher states the Police were going to "get back" to her regarding the violation, this is false (see Defendants Motion to Vacate exhibit 3.C and D.1, 4.B, 4.B.1). In regards to both "violations" (*see Defendants Motion to Vacate exhibits D.1, 4.B, 4.B.1, 3.C and Ms. Humphries' affidavit from 2018 exhibit 4 – page 1.2)* and concerning Judge McKenna's statements regarding these false statements (5.A, 5.B). In addition to these false statements, Defendants make it known to Court that not only was there no violation in regards to the incident report about "guns", there were no "guns" and this is one of many false reports concerning this topic (*see false report in Defendants Motion to Vacate exhibits D.1 and new exhibit 4 here for comparison*). The Court will notice in all of these exhibits that there are NO triggers nor are there any TRIGGER HOLES where one could ever exist on the props that Sage Humphries falsely claimed to be firearms. Considering a "fire" arm requires a trigger to "fire" and these props are solid blocks with no internal mechanisms capable and absolutely no way to ever fire anything they are nothing more than aesthetic paperweights so this claim, like all other claims asserted by Plaintiff is once again not only entirely false, but KNOWINGLY false. The Court will also notice the date the photos were taken (Aug. 25th, 2017), the date Ms. Humphries family stalked Defendant on social media and sent the photo, (Oct. 30th 2017) and the report filed regarding this photo reported **eight months later** (Aug 13th 2018), the NIGHT before the restraining order

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE -
11

renewal. The motive here is very clear as Ms. Humphries could have reported this as soon as she was aware of the photo if she truly thought this to be true (but she did not.)

Furthermore, Judge McKenna stated in "his humble opinion" that these fabrications were violations yet verified neither claim (*see again Defendants Motion to Vacate exhibit 5.A and 5.B*). Defendants were unaware of this 2018 hearing but have refuted Plaintiff's claims from the onset of Ms. Humphries and Ms. Melcher's fraud.  In regards to Plaintiff's "evidence", Defendants have provided testimony from the people whose names Plaintiff fraudulently used at this hearing in 2018 as well as fraudulently used in Police reports, that certify Ms. Humphries allegations in 2018 were false.

Sage Humphries also claimed in 2018 that Defendants had created a "secret company" and hired a "secret employee" by the name of Kennedy Brown.  Sage Humphries also claimed that this company was called Black Swan Brand, was ran out of Los Angeles and that Defendants sent Kennedy to "find her" so that they could stalk her.  Kennedy Brown was unaware that her name was used to obtain this fraudulent order until this year and has provided a declaration in support of Defendants that verifies this claim was entirely false (reference exhibits).  Kennedy Brown certifies that Black Swan Brand is her sister Jordan Brown's company and that it has never had anything to do with Defendants.  Kennedy also certifies that she contacted Sage in the hopes of sending her free clothing to use as promotion for her family business and that she was never aware of Sage's relationship with Defendants (*reference Defendants Motion to Vacate exhibit 4.C, R and exhibits here - audio file transcript 5 and audio file 5.1*).  Furthermore, Kennedy declared that Sage Humphries approached her just last year in 2022, seeking work and asking about possibly coming to work for the company she worked for. The Court must wonder **WHY** and **HOW** a Plaintiff who truly believes their own testimony,

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 12

71

could seek out someone they once claimed to be stalking them on behalf of Defendants, in order

to potentially move across the country to share a work environment with that very person.  The

second piece of fabricated evidence Sage claimed to be a violation, while withholding the Police

report that verified it was NOT a violation (*see Defendants Motion to Vacate exhibit D.1*), where

the office states "I explained to Sage and Maura that this did not seem to meet any violations

criteria" yet they wanted to report the message from Kennedy anyway.

Plaintiff's counsel states "*Judge McKenna found that Plaintiff met her burden on three separate occasions that an abuse prevention order was appropriate because she was placed in reasonable fear of imminent harm. Whether Defendants believe Plaintiff was not under duress, was forced to do things against her will, or was compelled by her parents to apply for the abuse prevention orders is irrelevant to the determination of whether the abuse prevention orders were properly issued based upon Plaintiffs testimony and the Court's findings. The abuse prevention orders were properly issued and, crucially, Defendants waived their opportunity to appeal them.*"

Judge McKenna found that Plaintiff met her burden of proof, all while viewing no

actual proof but rather accepting another false testimony as proof and granting the order

accordingly.  While Defendants were not afforded the opportunity to defend these false

allegations in either instance, they have provided the Court with exhibits that verify these claims

were false.  In fact, Plaintiff has known Kennedy Brown, the woman she claimed to have been

"secretly employed" by Defendants for years, prior to ever meeting Defendants, so she was fully

aware that this claim was false and considering she and her counsel possessed ALL receipts (as

seen in Defendants Motion to Vacate exhibits *H, H1 AND H2*) for the promotional props she

claimed to be firearms, she was fully aware that they, nor anything else in Defendant's

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE -
13

possession were firearms.  The abuse prevention order was **improperly** issued and Defendants have never waived any right, nor were they ever made aware of many of the rights they have discovered by firing their previous counsel and representing themselves.

Plaintiff's counsel state (*on page 16 of their opposition*), "*For example, Defendants' counsel asked Plaintiff questions under oath about the very July 2017 Orange County police report that Defendants claim was "withheld from the Court"-a publicly available document Defendants could have obtained through a public records request and submitted prior to the next hearing in 2018.*"

Sage Humphries does not take the Court nor her duty to tell the truth seriously when speaking under oath and considering Defendants have now proven that **every** claim she has made while speaking under oath has been false, Defendants would have no reason to ever believe that she had filed **any** police reports. The claim that Defendants continue to assert this report was "withheld from the Court", is a **factual** claim and the transcript reflects that (*see again exhibits from Defendants Motion to Vacate 1.C.1, 1.C.2 and 1.C.3*) instead, Plaintiffs question **why** Defendants did not actively hunt down potential Police reports. The Court would be better satisfied to ask **why anyone** claiming they were in need of an Abuse Prevention Order and had filed Police reports to support that claim, would **withhold** those very reports from the Court if there were any merit to them or the claims that came along with them.

Plaintiff's counsel states (*Page 16 of their opposition*), "*Defendants point to nothing in the record suggesting that Judge McKenna did not allow them to submit evidence, and any grievance with Defendants' prior counsel as to what he did or did not submit to Judge McKenna should be addressed with Defendants' prior counsel.*"

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 14

1    The lack of an exhibit on behalf of Defendants is as admissible as the presence of
2    one, considering the record itself reflects that Defendants presented their evidence in Court that
3    day and that Maura Melcher, Plaintiff's counsel, kept her copy of this evidence (*reference exhibit*
4    *6*).  Defendants have declared their presentation under oath and unlike Plaintiff, their claims
5    made under oath all come with evidence to prove them, so their credibility is unquestionable.
6    Defendants have no grievance that need be addressed aside from the parasite that is a wrongfully
7    granted Abuse Prevention Order currently attached to their lives but any grievance related to the
8    fraud that led to these orders can be addressed through the evidence that Defendants have now
9    been so fortunate to provide to a Court that is **willing to view them**.
10
11    In Plaintiff's opposition, (*page 17*) they state "*As to the 2018 extension hearing,*
12    *Defendants voluntarily chose not to attend or to submit evidence, and cannot now claim*
13    *unfairness. If they had attended the hearing, they would have been present when Plaintiffs*
14    *counsel described the 2018 police report to the Melrose Police Department that they now claim*
15    *was "withheld" from them"*
16
17    Defendants were not afforded any opportunity to **choose** not to attend this hearing
18    as Defendants were never aware that this hearing was taking place.  It is a civil right to be
19    afforded the right to a "fair" trial for every American and considering we had no knowledge of
20    this hearing, no legal representation and no ability to speak on our own behalf, that hearing could
21    in no way be considered "fair". Considering the 2017 hearing was biased, due to fraud by
22    multiple parties, Defendants are certain that if they had been informed of this hearing and their
23    ability to dismiss this wrongfully granted order, that the case would have once again been
24    decided prior to Judge McKenna ever entering the Court room and that any evidence Defendants
25    attempted to present would have been ignored once more.
26
27    DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE -
28    15

74

Plaintiff's counsel state on (*page 16*) "*Finally, Defendants attempt to falsely characterize the original abuse prevention order proceedings as "fraudulent." But to demonstrate entitlement to relief under a fraud on the court theory, Defendant must demonstrate "clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."*

It is true that Defendants do characterize the original abuse prevention order proceedings as fraudulent and that evidence has now been provided.

Plaintiffs argue again (*page 16 and 17 in their opposition*), "*Here, Defendants merely use the phrase "fraud on the court" and disagree with how Judge McKenna weighed the evidence before him-they have not demonstrated that some unconscionable scheme has occurred."*

Defendants could not possibly disagree with how Judge McKenna "weighed the evidence" considering Judge McKenna **had no evidence to weigh**, since he refused to view Defendant's evidence and Plaintiff provided none of her own.

(*Referencing page 17 in Plaintiff's opposition*), "*When the abuse prevention order is permanent, "a judge who issued the permanent order found (at least implicitly) that the Defendant poses a permanent threat to the safety of the plaintiff." Id. at 389-390. And, "the only relevant issue is the safety of the Plaintiff." Id. at 392. "The fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for ... allowing an order to ... be vacated."*

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 16

75

The Judge found, what he believed, without **ANY PREPONDERANCE OF EVIDENCE** to be a threat *while ignoring* the **PREPONDERANCE OF EVIDENCE** that would have proven otherwise. If the only relevant issue is the safety of the Plaintiff, then this order should have never been granted, considering the communications prior to the granting of it prove that there was never fear present in the relationship (*reference Defendants Motion to Vacate exhibits 1.E.4-12, 13.A-F and 15.A-F*) and that the only fear was the fear Plaintiff Sage Humphries felt from her parents as they wrote this order and forced her to sign it while holding her captive (*reference exhibits 7 in this response and Defendants Motion to Vacate exhibits 1.A.1, 1.A.2, 1.K.1, 1.K.5, 12.A, 12.B, 14.A, 14.B, 15.A, 15.C, 15.D, 15.J, 15.M, 15.N. T and Rich Costa's declaration exhibit 7*).  The Court's gracious acceptance of Defendant's evidence proves, after 6 years of this order destroying Defendant's lives, that the requirements of a 209A were never met in 2017 or in 2018.

Plaintiff's Counsel argue (*page 17 and 18 of their opposition*), "*Defendants have submitted no evidence demonstrating that a significant change in circumstances has occurred and they have not met their burden of showing that under the clear and convincing evidence standard the permanent abuse prevention orders are no longer equitable. For example, Defendants have not shown that they have moved on from the abuse by adhering to the abuse prevention orders and producing other evidence such as an affidavit describing how they have moved on from their abuse.*"

Defendants have in fact submitted 350 pages of "evidence" and in this evidence is proof that Defendants have "moved on", in fact, Defendants moved on as soon as Plaintiff Sage Humphries was kidnapped by her parents and wrongfully imprisoned against her will which is why Defendants **NEVER ONCE** initiated contact with Ms. Humphries following this

traumatizing experience and had forgotten about her existence until they were served with a permanent restraining order in 2018. Aside from moving on, Defendants had moved out of the state this order was issued in prior to this order being granted (*reference Defendant's Motion to Vacate exhibit F, 15.N and exhibit 6 declarations by Eric Cheney and 7 declarations by Taylor Mosher*) and do not reside in any state relative to Plaintiff, nor will they ever have plans of visiting **ANY** state she resides in now or in the future.

Following Sage's kidnapping and captivity at the hands of her parents (*reference exhibit 7*), she on her own free will, continuously initiated contact with Defendants, as Defendants were 7,000 miles away in Australia (*see exhibits in Defendants Motion to Vacate 15.A-O*), for the months prior to Plaintiff being forced to sign this order, an order she herself warned Defendants that she would **be FORCED TO SIGN AGAINST HER WILL IN ORDER TO SECURE HER RELEASE FROM CAPTIVITY WHERE SHE WOULD WANT TO ONCE AGAIN BE WITH DEFENDANTS** (*reference again Defendants Motion to Vacate exhibits 1.A.1 and 1.A.2*). If Defendants were to produce an affidavit "describing how they have moved on from their abuse" they would be perjuring themselves, just as Plaintiff has done with all of her affidavits because Defendants cannot move on from their **abuse** if they have **NEVER ABUSED ANYONE**.

Plaintiffs mention in (*Page 18 of their opposition*) "*Nor have Defendants shown that they have "moved on" with their lives, which Defendants must show to demonstrate that a change of circumstances has occurred justifying vacating the permanent abuse prevention orders.*"

Defendants moved on with their lives prior to the granting of the first order in 2017 as they began careers in a new state, in new industries entirely unrelated to the

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE -
18

Plaintiff.  Those new lives and new careers however have now been destroyed and stripped of

due to these wrongfully granted orders and Plaintiff's obsessive media campaign against

Defendants, rendering Defendants homeless and without ANY career to speak of so while living

thousands of miles from Plaintiff, with no home or jobs and no will to ever work in their

previous industries again. The Court can see that it would be impossible for Defendants to

possibly "move on" any further. Defendants would like to make it known to the Court that it is

Plaintiff Sage Humphries who has not "moved on" (as she filed a civil lawsuit against

Defendants out of nowhere in 2021 after years of no contact) with claims opposing everything

she stated in the 2017 restraining order hearing (hence the contradicting information for counsel

from Nevada) (*reference exhibit 8*), and furthermore, as the exhibits Defendants have provided

will reflect, Plaintiff has made it her sole mission to assure that she is connected to Defendants

on every page of Google results when searching any of their names individually, by placing

herself in civil litigation in Nevada for the last two years assuring that she orbits their lives and in

countless printed publications as well as a televised Good Morning America interview focused

solely on Defendants (*reference exhibit 9*).  Defendants assert that if they never heard Plaintiff's

name again, it would be too soon, and they wish more than anything to never hear of her or think

of her again…Defendants could not possibly be far enough from Plaintiff for their liking while

remaining on this planet.

       Plaintiff's counsel continues to state (*Page 18*) "*Defendants have provided no*

*evidence supporting a finding that they have "moved on" from Plaintiff and their history of*

*domestic abuse and retaliation. The parties remain intertwined in litigation born of these same*

*facts. Defendants have given media interviews and amplified content about how Plaintiff has*

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE -
19

1  *wronged them, and have made egregious and aggressive allegations against her in the media*

2  *and in the Nevada Litigation."*

3      Defendants cannot provide evidence of "moving on from their history of domestic

4  abuse and retaliation" as **DEFENDANTS HAVE NEVER HAD A HISTORY OF**

5  **DOMESTIC ABUSE OR RETALIATION** however, Defendants find it ironic that Plaintiff

6  and her counsel speak of evidence when they have provided none to substantiate any claim they

7  have made to the Court.  Defendant's however have provided an abundance of evidence that they

8  have moved on from Plaintiff, including the evidence provided to Judge Lyons that disproved

9  they had violated the wrongfully granted order in the hearing on February 22nd, 2018…a hearing

10 that Defendants would have rather not been summoned to considering they had "moved on" and

11 had done no wrong but a hearing that Plaintiff clearly felt the need to bring to fruition on false

12 pretenses.

13      Plaintiffs state (*on page 18 of their opposition*) *"Indeed, although plaintiff bears*

14 *no burden to prove ongoing fear of Defendants, Defendants' conduct has shown that the*

15 *permanent abuse prevention orders are still necessary".*  The Plaintiff did bear a burden to prove

16 fear of Defendants to meet the requirements of a 209A to which **she did not**, hence why we are

17 present in this hearing for our Motion to Vacate.  Defendant's conduct has only shown that

18 Plaintiff should be criminally charged for the **many violations** she has "achieved" in order to be

19 granted this Abuse Prevention Order while suffering no abuse. Defendants have been in contact

20 with all Police departments regarding these false Police reports and have been advised how to

21 proceed as filing outside of either of these litigations as these reports were false.

22

23

24

25

26

27

28 DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE -
   20

As stated by The 193rd General Court of The Commonwealth of Massachusetts (Part IV Title I Chapter 269 - Section 13A: False reports to police officers; "*Whoever intentionally and knowingly makes or causes to be made a false report of a crime to police officers shall be punished by a fine of not less than one hundred nor more than five hundred dollars or by imprisonment in a jail or house of correction for not more than one year, or both.*" California Law states*; (Penal Code 148.5 PC prohibits you from making a false police report of a crime. False reporting is only a crime if the person making the report knows it to be false. The offense is punishable by up to 6 months in jail.)* Defendants plan to pursue this against Ms. Humphries and her parents in both states.

Plaintiff once again asserts baseless claims of Defendant's contact while providing the court with no evidence proving these claims, nor has she provided ANY evidence to prove ANY claims on any facet of this unnecessarily complex circus of process.

Plaintiffs assert in their opposition (*page 19*) "*This Court found that the Defendants violated the abuse prevention orders twice between 2017 and 2018 and the Court in the Nevada Litigation found that Defendants violated the abuse prevention orders in 2022*".

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 21

1       This Court found Defendants violated the order in 2018, based on and through

2   Plaintiff's submission of knowingly fraudulent evidence however, a Courts wrongful decision to

3   grant an order without requirements of a preponderance of evidence ever being met, does not

4   undercut any filing that any other Honorable Judge deems necessary just like the filing for this

5   Motion to Vacate being heard by the Honorable Judge Lyons who fortunately for the innocent,

6   actually requires evidence in her Court room, as all Court rooms should. Defendants have once

7   again obtained new evidence creating an extreme change in Circumstances including but not

8   limited to all Police reports and the phone call with Jordan Brown this week, Kennedy Brown

9   (whos' name was used in Sage Humphries' false police report and affidavit to obtain her

10  permanent restraining order in 2018), sister confirming Sage's claims were fraudulent (*see*

11  *exhibit 10 and separate audio file 10.1*). Not only did Ms. Melcher lie in her statements to the

12  Court regarding these two Police reports in 2018 but Ms. Humphries committed multiple

13  (punishable) crimes by filing these knowingly false Police reports that Defendants only received

14  through Civil litigation in Nevada, as they were withheld in 2017 and 2018. By Plaintiff's

15  Counsel stating Defendant's should have found reports they were not aware of and with no

16  information to get these reports (incident numbers etc.), it only shows their guilt and admission

17  that they did not show these reports to the Court for a reason, therefore withholding them

18  (*reference Defendants Motion to Vacate exhibit 1.C.2*)

19

20      Plaintiffs also assert in their opposition (*Page 19*) "*Further, Defendants*

21  *themselves write that they would like to obtain a restraining order against Plaintiff and her*

22  *parents, undercutting any argument that protection is no longer necessary and that the parties*

23  *have all moved on.*"

24  DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE -
    22

Plaintiff is directly responsible for the hiring of a convicted felon "hitman" to threaten Defendant's lives and "silence" them to "suppress their evidence" at any costs (*reference exhibit 12*), so after their home was broken into in an attempt to scare them into not continuing with their Motion to Vacate this order, any Court could understand why Defendants fear imminent danger. This Abuse Prevention Order was never requested by Plaintiff to "prevent abuse", in fact it was requested to suppress incriminating evidence that exposes Daryl Katz, owner of the Edmonton Oilers (*reference Defendants Motion to Vacate exhibit S8*) and employer of aforementioned "hitman" Anthony Pellicano, and Sage Humphries for illegal prostitution (*reference exhibit 12*). Mr. Katz is notorious for this behavior and due to this powerful connection, absurd wealth and ability to suppress media it is this data that brought this restraining order about because Plaintiff Sage Humphries and Daryl Katz knew that they could not unconstitutionally suppress data that Plaintiff willingly uploaded to Defendant's hard drive during their relationship (*see Defendants Motion to Vacate exhibits S. 1-7*), so claiming abuse with an oddly stipulated addendum was their weapon of choice. Mr. Katz has been successful at silencing his other victims as well as having these exhibits sealed in Nevada, and Anthony Pellicano has notoriously been successful at silencing the elites of the world but Defendants find it totally unnecessary to see their lives destroyed due to the unconscionable sexual proclivities of Plaintiff Humphries and Mr. Katz. Sage Humphries' mother, Micah Humphries personally delivered Sage to Mr. Katz home in Malibu which implicates her in that crime and further explains more of her motivation to "force" Sage to sign the abuse prevention order against her will (a signature that was not witnessed in 2017 and also a signature that was not present in 2018 on her affidavits); (*reference Defendants Motion to Vacate exhibits 1 and 4, 4.A*).

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 23

Plaintiff states in their opposition (*page 20*), "*The fact that Defendants have relocated to Nevada is irrelevant because geographic proximity is only one factor to be considered under the totality of the circumstances test, Defendants have not moved on from Plaintiff, and the fact that Plaintiff and Defendants work in generally the same industry (ballet) makes it likely that their paths could cross again in the future.*"

Defendants **have not worked** in Plaintiff's industry since 2017 but most recently in addition to that, Defendants have **not "worked"** period since 2021 (especially in the same industry) and will **NEVER again** no matter the circumstance **EVER** return to their previous industries again after their good names were destroyed by these wrongfully granted orders.  Defendants have been unemployed since 2021 (*reference exhibits 9*) and no amount of money in the world could convince them to return to industries that support someone as evil as they believe Plaintiff Humphries to believe.  Defendant's paths will NEVER cross again and furthermore Defendants could not stomach even being present in the same state as Plaintiff after what she has done to them and their livelihoods.  **There is no corner in the world that Defendants could place themselves in to feel they are far enough from Plaintiff Humphries**.

Plaintiff's counsel states in their opposition (*Page 20*) "*Geographic distance has not and will not protect Plaintiff from Defendants' publications of harmful material, which the permanent abuse prevention orders were in part meant to prevent for the remainder of Plaintiffs life.*"

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 24

It is disrespectful of the Court for Plaintiff Humphries to attempt to relitigate a false and baseless claim that the Court has already ruled on.  This claim, like EVERY other claim Plaintiff and her counsel have made is baseless and this one in particular has already been ruled against.  Defendants do find Plaintiff's admission that material published is "harmful" however considering that this of course would mean that she does in fact seek to "hide" data rather than to "prevent abuse" which is not what is required by a 209A.

Plaintiffs reassert their irrelevant and already ruled on claims yet, again in their opposition (*page 20*), "*The Defendants violated the abuse prevention orders by publishing electronically stored information pertaining to Plaintiff that was not surrendered in the public record. Plaintiffs ongoing reasonable fear of imminent harm is bolstered by Defendants repeated flagrant disregard of the abuse prevention orders and their willingness to publish and/or amplify content about their grievances against Plaintiff, and their extreme hostility towards Plaintiff in the Nevada Litigation.*"

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 25

The Honorable Judge Lyons ruled that Defendants did not violate the abuse prevention order on March 10th, 2023 (*as seen again in exhibit 1*) rendering this claim not only disrespectful to the Court but also irrelevant. The Nevada litigation is also once again irrelevant however, Defendants objected to sanction filed by Plaintiff regarding this order as the Nevada Court was also manipulated by Plaintiff's counsel as they manipulated the order stated by Boston Municipal Court, leading the Nevada court to believe something entirely false. This objection is to be heard on April 5th but of course Plaintiffs only attached partial information for this court to again manipulate the court (*see exhibit 11*). Defendants ask **once again**, that if Plaintiff is to make baseless allegations to the Court of any sort, that she provides evidence to **prove** these claims unlike the absence and withholding of evidence she presented in 2017 and 2018.

In Plaintiffs opposition (*page 20*) "*Defendants improperly seek to re-litigate the issuance of the abuse prevention orders now arguing that the permanent abuse prevention orders were fraudulently obtained (five years after the fact and something that their counsel surely would have raised if he believed a fraud on the court had indeed occurred).*"

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 26

1          Defendants PROPERLY seek to litigate the issuance of the abuse prevention

2   order **for the first time** now, not to re-litigate, considering they were restrained from their ability

3   to properly litigate it in 2017 and 2018.  **As Honorable Judge Lyons stated** in the February 22nd

4   hearing, there is no need for "beliefs" in the Court, rather facts provable by evidence, so

5   Plaintiff's counsel should refrain from the hearsay that is assuming what Defendant's previous

6   counsel "surely" would have raised if he "believed" a fraud on the court had

7   occurred.  Furthermore, Defendants fired their previous counsel and stated to the court on

8   February 22nd that they believe they were misrepresented in 2017, so they have no need for

9   misrepresented beliefs when they themselves lived their truth and can speak it better than any

10  other.

11

12         Plaintiff also states in her opposition (*Page 21*) "*The Parties are intertwined in

13  hostile litigation, Defendants and Plaintiff occupy the same world of ballet, and Defendants

14  continue to publish and openly discuss their grievances against Plaintiff. Hostility between the

15  Parties continues and Defendants cannot, in any sense, show that they have "moved on."*

16

17         Defendants feel no hostility toward Plaintiff or her counsel but are not surprised

18  to read that Plaintiff and her counsel feel hostile toward them. Defendants do not occupy any

19  professional world, certainly not the world of ballet and Defendant Dusty Button has not

20  occupied that particular world since 2017 after Sage Humphries made certain that her career in

21  ballet was destroyed forever.  Plaintiff's counsel is once again attempting to relitigate the issue

22  that Judge Lyons has already ruled on by falsely claiming again that Defendants have

23  "published" grievances, but once again they have provided no exhibit to prove this claim.

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 27

Defendants main concern is that Plaintiff's *pro hac vice* counsel from Boies Schiller Flexner (made notorious for bullying and intimidating witnesses of their client Harvey Weinstein as well as suppressing the media in that case, as well as the case of Theranos where their leader David Boies sat on the board) will go to great lengths of unethical behavior in order to suppress the truth.

Finally, referring to Plaintiff's exhibits (*M. 3 – 10*) please (*reference here Defendants exhibit 4*) and Defendants Motion to Vacate exhibits (*exhibit 4.C, 4.D.A, 4.D.B 4.D.D, R, 6, 8, and exhibit in this response 10 and 10.1(audio file separate)*. Every single one of her claims are disproven here with exhibits either in this filing or in the Motion to Vacate exhibits provided by Defendants.

Regarding the Brand created by Defendants "Haytmayl" Plaintiff has been fully aware since she first falsely claimed the Instagram account @HaytMayl to have been created by Defendants solely to harass her, that this account was actually created as a clothing brand (reference exhibit), ironically inspired by being resilient to internet bullying, harassment and "hate mail" received, much like the internet bullying, harassment and "hate mail" that defendants have received due to the defamatory actions taken by Plaintiff (*see exhibit 5*) showcase the first merchandise ( with date stamp ) created to sell through this online brand as well as date stamped graphic logo font options (*see exhibit 5*) when Defendants were originally debating the marketing direction of this brand…they also show footage of Defendants working in their garage at 7950 W Sunset Blvd to finish hand-made garments that would then soon be launched on this brand's Instagram account. The profile stating "coming soon but not soon enough" is pretty straight forward as the brand was not yet ready to launch but Defendants were eager to share

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 28

what they had been working on. Plaintiff twisted this into a bizarre claim just as she did with Kennedy Brown (*exhibit 10 here and Defendants Motion to Vacate exhibit 4.C*) claiming she was reaching out to get her address for Defendants. That said, this brand was short lived and the irony only grew more enormous considering Plaintiff, Plaintiff's family and Plaintiff's friends all began a campaign of aggressive and foul harassment and bullying to that account prior to it ever being afforded the chance to succeed, so the account and the brand Defendants had worked hard on were voided, similar to how the fraudulent restraining order against Defendants should be voided.

In regards to the locations Plaintiff claims Defendants moved to, to "keep tabs" on her, it is yet another ridiculous claim. Defendants mention this in their Motion to Vacate with exhibits so will not discuss it further here however, please reference in Defendants Motion to Vacate exhibits (4.D.A, 4.D.B, 4.D.C, 4.D.D and 9) in regards to disproving this claim as well.

## **CONCLUSION**

*Pro se* Defendants are not proficient in case law and even less familiar with the referenced cases by Plaintiff's counsel, all of which are seemingly irrelevant to Defendant's Motion to Vacate but it seems that Plaintiff and Plaintiff's counsel are not familiar with **any truth;** Defendants will reference what may be the only similar case to date and seemingly the only one outside of this motion that would be relevant.

In the Santa Fe District Court Case of *Nestler v. Letterman* (*D-101-CV-2005-02772*), television star David Letterman suffered the same injustice (similar to what Defendants suffered) when he was served with an Abuse Prevention Order following a false affidavit filed by a woman he had never met before.  This wrongfully granted restraining order directly led to

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 29

David Letterman being sued very publicly with the restraining order, serving as the foundation of that lawsuit, **exactly** how Sage Humphries' restraining order served as the foundation for her $131,000,000.00 lawsuit against Defendants in Nevada.  Though the restraining order in the case mentioned above was granted without any preponderance of evidence, it, and the lawsuit that it supported, were both overturned and dismissed following Letterman's filings.  Nestler, who was delusional, claimed that Letterman had sent her subliminal messages that he wished to marry her using code words while filming his episodes, similar to Sage Humphries' claims that Defendant Dusty Button spoke to her in "code" during her interview in Australia ciphering that her code translated that Defendants were "coming to kidnap her".  Furthermore, in the case of Letterman, Nestler claimed that the torture she suffered from Letterman's online and televised "harassment" had driven her to bankruptcy and that the "mental cruelty" she suffered at his hand resulted in sleep deprivation.  Just as Sage Humphries was able to convince the Court into suppressing the data that incriminates her (even though that data was by law property of Defendants), Colleen Nestler was able to convince the Santa Fe District Court to restrain David Letterman from "thinking of Colleen Nestler" and to "release her from the mental harassment and hammering" that was his unrelated television show.  While Colleen Nestler claimed she had sent many letters to David Letterman and his employers, these letters nor any other evidence to prove her claims were ever produced for the Court just as **no evidence** has ever been produced to any attorney or to any court **anywhere** to prove by any preponderance of evidence (as a 209A requires), to warrant the granting of these Abuse Prevention Orders.  Colleen Nestler was **never** affiliated in any capacity with David Letterman and Defendants have never been affiliated in any capacity with abuse that was **never** suffered by Sage Humphries but the exonerating evidence Defendants have presented to the Court far outweigh the evidence required by Sante Fe District Court to

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 30

overturn the wrongfully granted restraining order they initially issued against David Letterman. While the delusions and false testimony mirror one another between Defendant's case and those of (*Nestler v. Letterman*) the Court should question **why** either Abuse Prevention Order was granted but should be even more suspicious of **why** Sage Humphries affidavit from 2017 was not witnessed, her affidavit from 2018 was not signed, nor was the affidavit that she presented to Defendants or to the Court during her hearing on February, 22nd signed.  Even Colleen Nestler was able to have her perjured affidavit witnessed but Defendants remind the Court of the evidence they have provided proving Plaintiff Humphries warned them that her parents had written her affidavit and restraining order and **forced her to sign them in order to secure her release from their wrongful imprisonment** which would verify why her affidavits were never signed or witnessed leading to the granting of this order, and order that should be vacated just as the fraudulent order was in the case of *Nestler v. Letterman*.

Defendants were relieved and grateful to argue their Motion in an unbiased court room against counsel with ethical boundaries, so they ask all counsel to refrain from injecting more baseless claims into the Court as they continue their media campaign against Defendants so that the court is capable of focusing on **this** case rather than drowning it in the sea of baseless claims that they navigate like "judicial pirates".

In summary Defendants request this Motion to Vacate be granted as this order was wrongfully granted based on fraud on the court, newly discovered evidence and a change of circumstances especially regarding the uncovering of multiple police reports NOT submitted to the court. The order was unnecessary and was not used to prevent abuse as seen by all exhibits in Defendants' Motion to Vacate and exhibits, rather it was used as a tool to destroy our lives.

DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE - 31

1    Paragraph 14 of the 209A is not by any means an order that would require a 209A considering it

2    is merely about data and not abuse.

3         Defendants would not have been as affected by a no contact order considering

4    they wish to never have contact with Plaintiff again and would like a no contact order of their

5    own against Ms. Humphries, however this abuse prevention order being granted after no abuse

6    and no fear of danger, wrongfully limits the free lives that Defendants deserve to live and is

7

8    responsible for **hundreds** of thousands of dollars in lost revenue as well as Defendants

9    reputations. Defendants are appalled at Sage Humphries' actions, as both Defendants have either

10   lived through horrific abuse themselves or have direct family members that have endured abuse.

11   Sage Humphries' "story" is one of fraud that will affect **real** victims from coming forward and

12

13   that is something that is truly horrific.

14        Defendants ask the Court to kindly consider the preponderance of evidence they

15   have been presented with and conclude that the Defendants testimony is not only proven true but

16   is backed by evidence, while anything aside from that testimony is propaganda driven by fraud

17

18   and destruction. We thank the Court for their time, attention and allowing Defendants to be fairly

19   heard.

20        Dated this 23rd day of March,

21        Respectfully,

22        _____

23        Mitchell Moore and Dusty Button (*Pro Se*)

24

25        CERTIFICATE OF SERVICE

26        Defendants HEREBY CERTIFY that on March 23rd 2023, we emailed the

27   foregoing document with the Clerk of the Court using bmccentral@jud.state.ma.us . This

28   DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE -
     32

1    document and its exhibits were sent to Plaintiff Sage Humphries' counsel

2    emily@abostonlawer.com .

3                              Dated this 23rd day of March, 2023

4

5

6                              Mitchell Moore and Dusty Button

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   DEFENDANTS RESPONSE TO PLAINTIFFS' OPPOSITION PURSUANT TO THEIR MOTION TO VACATE -
     33



**COMMONWEALTH OF MASSACHUSETTS**
~~PROBATE AND FAMILY~~ BOSTON MUNICIPAL COURT DEPARTMENT

SUFFOLK, SS.                    DOCKET #1701RO-181, 170RO-182

SAGE HUMPHRIES,

                                        Plaintiff,

DUSTY BUTTON & MITCHELL TAYLOR
MOORE,

                                        Defendants.

### COMPLAINT FOR CONTEMPT

Pursuant to Rule 65.3 of the Massachusetts Rules of Civil Procedure, Plaintiff Sage Humphries, by and through her undersigned attorney, hereby requests that this Court issue a summons pursuant to Rule 65.3(d), enforce abuse prevention orders entered on August 14, 2018, and hold Defendants in contempt for violating those abuse prevention orders. The grounds for this complaint arise out of the above-captioned proceedings.

### NATURE OF THE ACTION

1.  On August 14, 2018, this Court entered two permanent abuse prevention orders (the "Abuse Prevention Orders") against Defendants Dusty Button ("Dusty") and Mitchell Taylor Button ("Taylor").

2.  The Abuse Prevention Orders made clear that Defendants, who manipulated, controlled, and abused Plaintiff, were to surrender all electronically stored information relating to Plaintiff to the Boston Police Department or Plaintiff's lawyer. The Abuse Prevention Orders

1

*(handwritten marginalia, left margin, read bottom to top:)* March 10, 2023 — after a full hearing review, the Court finds the plaintiff did not meet the burden under the clear + convincing evidence standard. The Court also finds the information contained in the released articles were already in the public domain i.e. news clips, newspaper, public documents, information, i.e. text, the defendant did not approve to originate nor did not violate

*(handwritten marginalia, top:)* However, without a forensic analysis and comprehension, ... report, the Court can not determine who produced or published the video on line. Therefore, the matter is denied.



| NOTICE TO THE PARTIES | DOCKET NUMBER 1701RO000182 | Trial Court of Massachusetts BMC Department |
|---|---|---|

CASE NAME    Humphries, Sage N vs. Button, Dusty

| ATTORNEY (OR PRO SE PARTY) TO WHOM THIS COPY OF NOTICE IS ISSUED | COURT NAME & ADDRESS |
|---|---|
| File Copy | BMC Central 24 New Chardon Street, 6th Floor Boston, MA 02114 |

**TO THE PARTIES TO THIS CASE:**

The enclosed indicates the Court's action in this matter.

Court Findings on Complaint for Contempt:

"After a full hearing and review, Court finds the plaintiff did not meet the burden under the clear and convincing evidence standard... Therefore, the motion is denied. "

Lyons J.

| DATE ISSUED | CLERK-MAGISTRATE/ASST. CLERK |
|---|---|
| March 10, 2023 | Daniel J Hogan |

015                        www.mass.gov/courts                        Date/Time Printed: 03-10-2023 16:02:01



| NOTICE TO THE PARTIES | DOCKET NUMBER 1701RO000181 | Trial Court of Massachusetts BMC Department |
|---|---|---|

CASE NAME  Humphries, Sage vs. Moore, Mitchell Taylor

| ATTORNEY (OR PRO SE PARTY) TO WHOM THIS COPY OF NOTICE IS ISSUED | COURT NAME & ADDRESS |
|---|---|
| File Copy | BMC Central<br>24 New Chardon Street, 6th Floor<br>Boston, MA 02114 |

**TO THE PARTIES TO THIS CASE:**

The enclosed indicates the Court's action in this matter.

Court Findings on Complaint for Contempt:

"After a full hearing and review, Court finds the plaintiff did not meet the burden under the clear and convincing evidence standard... Therefore, the motion is denied. "

Lyons J.

| DATE ISSUED | CLERK-MAGISTRATE/ASST. CLERK |
|---|---|
| March 10, 2023 | Daniel J Hogan |

015    www.mass.gov/courts    Date/Time Printed: 03-10-2023 16:02:59

95

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    BOSTON MUNICIPAL COURT
                                               CENTRAL DIVISION
                                               DOCKET NOS. 1701RO000181 &
                                               1701RO000182

SAGE HUMPHRIES,
Plaintiff,

v.

MITCHELL MOORE and
DUSTY BUTTON,
Defendants.

## MEMORANDUM REGARDING DEFENDANTS
## MOTION TO VACATE PERMANENT RESTRAINING ORDER

Nearly five years after this Court granted Sage Humphries (Humphries) a permanent

Abuse Prevention Order (Order) against Mitchell Moore (Moore) and Dusty Button (Button)

(Collectively the Defendants), the Defendants ask this Court to vacate that Order.  As grounds

for their request, the Defendants argue 1) they did not receive notice of hearing at which the

Order was made permanent;  and 2) Humphries committed fraud upon the Court.  In support of

their motion, the Defendants have submitted two binders of materials containing nearly two

hundred pages of pictures, text messages, emails, affidavits, police reports and selective pages of

what seems to be a transcript of the initial two-party hearing.[1]  For the reasons stated *infra*, the

Defendants' Motion to Vacate is **DENIED**.

### BACKGROUND

On August 1, 2017, Humphries filed a complaint in this Court requesting an emergency

restraining order against the Defendants.  The request for an emergency order was allowed as to

both Defendants and the matter was scheduled for a two-party hearing.  On August 15, 2017,

---

[1] Subsequent to the hearing regarding the Defendants' Motion to Vacate, the Defendants submitted an Emergency Motion to Supplement their Motion to Vacate that was denied.

1

both parties appeared represented by Counsel. Humphries was the only party to testify at the hearing. The Defendants' counsel cross-examined her and present argument as to why the Order should not issue. The judge concluded there was "more than clear and convincing evidence" to justify the extension of the Order and extended the expiration date to August 14, 2018. The parties were informed in court by the Clerk that the Orders were extended. The Clerk also announced that the next hearing date would be August 14, 2018 at 9:00 a.m. In addition, the Clerk noted that the parties were being served in hand by the Court officer. The next hearing date was also hand written on the Order.

On August 14, 2018, Humphries appeared at the courthouse unrepresented. The Defendants did not appear. Humphries filed an affidavit asserting additional allegations relating to the Defendants' conduct and requested the Order be made permanent. After hearing from her, the judge made the order permanent.

Humphries filed a civil action against the Defendants in the United States District Court in Nevada.[2] In response to Humphries' discovery requests in that case, the Defendants produced a number of documents, including text messages and other data, that came from Humphries iPhone which the Defendants asserted Humphries uploaded onto an external hard drive before the commencement of the litigation and the issuance of the Order. They asserted they believed they turned everything over that was covered by the Order but did not realize they had a backup copy of the material until they began searching for and preserving evidence for the civil case. These "newly" discovered copies were filed with the Court which made them available to the public. The Daily Mail, a news media outlet with an online publication, obtained access to the court filings and used them in an online story featuring Button. (Exhibit 1). Humphries filed a

---

[2] There are 6 plaintiffs total; 2 of them are unnamed.

2

motion for sanctions in the Nevada litigation for the alleged violation of the Order.  The Nevada

court ordered the Defendants to surrender the items to Humphries' counsel and ordered them to

pay counsel's fees.  (Exhibit 2).

     In January of this year, a YouTube® subscriber identified as Fletcher Reede[3] posted a

two-part video series titled "The Real Sage Humphries" containing pictures, letters, messages,

invoices and commentary asserting that Humphries is a liar[4] and portraying the Defendants as

victims.  (Exhibit 3).

## DISCUSSION

### A. LACK OF NOTICE

     I do not find the Defendants' claim that they did not receive notice of the August 14,

2018 hearing credible.  All three parties were present for the evidentiary hearing on August 15,

2017.  After the judge notified the parties that he was issuing the Order, the Clerk read into the

records that the order would remain in effect for one year and announced there would be a

further hearing regarding the Orders on the August 14, 2018 at 9:00 a.m. in Courtroom C.

Additionally, the date, time and location of the next hearing is clearly written in Section C of the

respective Orders.  There is no doubt the Defendants were informed of the next hearing date and

I have no doubt, for whatever reasons, they chose not to appear.[5]  "A party may not 'shut his

eyes to the means of knowledge which he knows are at hand, and thereby escape the

consequences which would flow from the notice if it had actually been received.'"

*Commonwealth v. Delaney*, 425 Mass. 587, 592 (1997) quoting *Commonwealth v. Olivo*, 369

---

[3] Fletcher Reede is the main character from the Movie "Liar Liar" who is a pathological liar cursed with the inability
to lie.
[4] Some of the screenshots from the YouTube® video are similar to those contained among the two hundred pages of
material provided by the Defendants.
[5] In the Daily Mail article, the reported noted that the Defendants admitted "they didn't fight the Boston court's
decision despite having …a 1,200-page binder of texts, love notes and songs demonstrating the abuse was
fabricated." (Ex. 1, p.17).

3

Mass. 62, 69 (1975); *see NLRB v. Local 3, Bloomingdale Dist. 65, Retail, Wholesale & Dep't Store Union*, 216 F.2d 285, 288 (2d Cir.1954). The Defendants had notice of the next hearing date and chose not to appear at their own peril.

### B. FRAUD ON THE COURT

The Defendants' fraud on the court allegation would be more intriguing if there were credible evidence that there was fraud. A party commits fraud on the court when the party "tampers with the fair administration of justice by deceiving 'the institutions set up to protect and safeguard the public' or otherwise using or undermining the integrity of the judicial process." *Rockdale Management Co., Inc. v. Shawmut Bank, N.A.*, 418 Mass. 596, 598 (1994) quoting *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944). The complaining party must establish by clear and convincing evidence that the opposing party intentionally "set in motion some unconscionable scheme calculated to interfere the judicial system's ability to impartially adjudicate a matter by improperly influencing the prior or unfairly hampering presentation the opposing party's claim or defense." *Rockdale Management Co., Inc.*, *supra* quoting *Aoude v. Mobile Oil Corp.*, 892 F.2d 1115, 2118 (1st Cir. 1989); *see B.C. v. F.C.*, 90 Mass. App. Ct. 345, 348-49 (2016).

In making their fraud on the court case, the Defendants raise facts and issues that were either addressed or should have been addressed at the original hearing. They present written messages between the parties and pictures evidencing the apparent amorous nature of the relationship between the parties. Humphries was cross examined on these issues by the Defendants' attorney at the two-party hearing. The Defendants presented documents showing that the purported firearms in his home were toys, not real. This also was addressed in the two-party hearing. Humphries acknowledged that the purported firearms were toys. However, she

4

also testified that Mitchell told her that the toys could be modified so as to become real. This testimony went uncontradicted.

Raising the claim of fraud on the court does not give a party the opportunity to relitigate issues that were presented to the original factfinder. That factfinder found Humphries to be credible and made his decision to issue the order with that in mind.

### C. MOTION TO VACATE STANDARD

A motion to vacate the issuance of a permanent order is not a motion to reconsider the entry of a final order and does not provide the defendant an opportunity to challenge the underlying basis for the order or to obtain relief from errors correctable on appeal. *MacDonald v. Caruso*, 467 Mass. 382, 388 (2014). A defendant moving to do as much must prove by clear and convincing evidence that **there** has been "a significant change in circumstances since the order was issued such that the protected party no longer has a reasonable fear of imminent serious physical harm from the defendant, and that continuation of the order would therefore not be equitable. *Id*, at 389-90. Looking at the totality of the circumstances, there must be a showing that the plaintiff, without the protection of an order of abuse prevention, would no longer reasonably fear imminent serious physical harm from the defendant." *Id*, at 390-91. The passage of time or compliance with the order by themselves is not sufficient. *Id* at 388.

The Defendants' decision to file the digital materials found in response to Humphries' discovery request with the Nevada Court thereby making them available to the public along with the fortuitous use of some of that material in an online article in which the Defendants defend themselves causes me pause and wonder whether the Defendants were fortuitous in finding this material or if it was an intentional act on their part. Combine this with the videos posted on YouTube®, blatantly hostile towards Humphries, by someone using a fictitious name clearly

5

100

siding with the Defendants and using materials similar to those provided by the Defendants in this motion vacate convinces me that the Defendants have not met their burden of establishing that Humphries no longer has a fear for her safety. Quite the opposite. The materials presented convince me that such an order remains necessary.

The Defendants' request that the permanent orders be vacated is **DENIED**.

Date:  May 22, 2023

The Honorable Steven M. Key
Associate Justice
Boston Municipal Court

6

Dusty Button
310 – 499 – 8930
Worldofdusty@gmail.com

Mitchell Taylor Button
310 – 499 – 8702
Desmodynamica@gmail.com

# COMMONWEALTH OF MASSACHUSETTS

## PROBATE AND FAMILY COURT DEPARTMENT

**SUFFOLK, SS.**        **DOCKET #1701RO181, 1701RO182**

SAGE HUMPHRIES,

    Plaintiff,

vs.

MITCHELL TAYLOR MOORE AND
DUSTY BUTTON,

    Defendants

**JOINT NOTICE OF APPEAL**

    Notice is hereby given that Dusty Button and Mitchell Taylor Moore (together, Defendants), appeal the order of Judge Steven M. Key of Boston Municipal Court (Central Division) entered on the 22nd day of May, 2023, denying Defendant's motion to vacate Plaintiff Sage Humphries' permanent Abuse Prevention Order.

JOINT NOTICE OF APPEAL - 1

102

**CAUSE FOR APPEAL**

(1) Defendants filed to vacate Plaintiff Sage Humphries' permanent restraining order (that was wrongfully issued by Judge Robert McKenna) in 2018 **due to fraud on the Court** including that the requirements for a 209A were not met, (this can be proven should a Judge actually hear Defendants argument, as they were the party that filed the motion to vacate), whereas Judge Steven M. Key **did not allow Defendants to be heard regarding the fraud on the Court** and which Judge Lyons validated. (2) Defendants were **instructed by Judge Key not to speak** upon the fraud on the Court, this decision created **severe bias** (3) Defendants did not receive a fair hearing due to **violation of due process**. (4) The Judge's order is not consistent with the facts or evidence. (5) The Judge made it clear that he did not understand the factual basis behind Defendant's argument (6) The Judge did not determine which facts were relevant or true and did not make an independent assessment of facts presented by Defendants. (7) The Judge denied Defendant's motion to supplement important factual evidence. (8) The Judge infringed on Defendant's constitutional rights.

Defendants will be ordering the transcript from the hearing following this Notice, as well as paying the filing fee with the Appellate Court and filing a brief to the Appellate Court timely.

**CERTIFICATE OF SERVICE**

Defendants hereby certify they filed this notice with bmccentral@jud.state.ma.us and have provided all parties involved with this notice to appeal via email at maura@abostonlawyer.com .

Dated this 11th day of June, 2023

Dusty Button and Mitchell Taylor Moore
(*Pro Se*)

JOINT NOTICE OF APPEAL - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOINT NOTICE OF APPEAL - 3