EXHIBIT 5

MASSACHUSETTS APPEALS COURT VOL IV

# VOL. IV

Mitchell Taylor Moore
(*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
(310)-499-8702
Desmodynamica@gmail.com

Dusty Button
(*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
(310)-499-8930
Worldofdusty@gmail.com

**COMMONWEALTH OF MASSACHUSETTS**

**APPEALS COURT**

| | |
|---|---|
| M.T.M and D.B<br><br>        **Appellants,**<br><br>    v.<br><br>S.H<br><br>        **Appellee.** | **Docket No. 2023-P-1202**<br><br>**APPELLANTS'**<br>**RECORD OF APPENDIX**<br>**VOLUME IV OF IV** |

# TABLE OF CONTENTS

Document Name                                                    Start Page #

## VOLUME IV

Appellee's presented exhibits to the lower Court

| | |
|---|---|
| Judge McKenna transcript dated 08/15/2017 | 4 |
| 2017 Affidavit of S.H | 73 |
| Trial Court Docket APO issuance 2017 | 76 |
| Judge McKenna Extension hearing transcript dated 08/14/2018 | 80 |
| Trial Court Docket APO permanent Order 2018 | 91 |
| Appellants' court filing in Nevada District Court re: 2022 Counterclaim | 95 |
| Nevada District Court Order re: Sanctions | 116 |
| Declaration of D.B in the Nevada District Court | 127 |
| Declaration of M.T.M in the Nevada District Court | 130 |
| Daily Mail article dated 09/07/2022 | 133 |
| Appellee's 2018 affidavit | 166 |
| Photos of Kennedy Brown's message to S.H | 172 |
| Photo of Appellant M.T.M previous Instagram account | 174 |
| Photo of Appellants' clothing brand Haytmayl | 175 |

1-1

```
                                      Volume: 1
                                      Pages: 1-98
                                      Exhibits: See Index

          COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                  MUNICIPAL COURT DEPARTMENT
                             OF THE TRIAL COURT

******************************
SAGE HUMPHRIES              *
vs.                         *   Docket No. 1701RO000181
MITCHELL TAYLOR MOORE       *
******************************
******************************
SAGE HUMPHRIES              *
vs.                         *   Docket No. 1701RO000182
DUSTY BUTTON                *
******************************

              RE: EXTENSION HEARING
                  TRIAL DAY 1
       BEFORE THE HONORABLE ROBERT J. MCKENNA, JR.

APPEARANCES:

For the Plaintiff:
Melcher Law P.C.
By: Maura Melcher, Esquire
800 Hingham Street - Suite 200N
Rockland, Massachusetts 02370
617.485.0859

For the Defendant:
Mahoney Criminal Defense Group
By: Kevin J. Mahoney, Esquire
545 Concord Avenue
Cambridge, Massachusetts 02138
617.492.0055

                             Edward W. Brooke Courthouse
                             Boston, Massachusetts
                             Courtroom C
                             August 15, 2017

Court Transcriber:  Lisa Marie Phipps, Certified Shorthand
Reporter, Registered Professional Reporter, Certified
Realtime Reporter
```

**LMP**

*Serving:  Massachusetts  Rhode Island*
*Connecticut  New Hampshire*
*LMPREPORTING@GMAIL.COM*
*(508) 641-5801*

1-2

I N D E X

WITNESS:          DIRECT   CROSS    REDIRECT    RECROSS

SAGE HUMPHRIES
(By Mr. Mahoney)           11                    49
(By Ms. Melcher)                    43

EXHIBITS:

FOR IDENTIFICATION:

Reporter's Note: No audible marking of exhibits.

**LMP Court Reporting   -   (508) 641-5801**

5

1-3

```
 1              P R O C E E D I N G S
 2      (Court called to order.)
 3      (Defendants present.)
 4      (10:07 a.m.)
 5              THE CLERK:  Sage Nicole Humphries vs.
 6      Mitchell Taylor Moore and Sage Nicole Humphries
 7      vs. Dusty Button.
 8              Your Honor, the parties's counsels
 9      indicate these matters can be heard at the same
10      time.
11              THE COURT:  All right.  Is that agreeable
12      to everybody?
13              MR. MAHONEY:  That's agreeable to the
14      defense, Judge.
15              THE CLERK:  And the defendants filed an
16      opposition in court this morning.
17              THE COURT:  All right.
18              Well, I issued the original order.  I
19      don't have to reread the affidavit.  I have a
20      complete memory of it.
21              Is there anything you wanted to add,
22      counsel?
23              MS. MELCHER:  I just wanted to add that
24      there was -- when Ms. Humphries finally broke
25      this relationship off -- and she's not denying
```

6

```
 1   that she was in the relationship, and I know my
 2   Brother will perhaps say that she said she loved
 3   them and whatever, all the things that would go
 4   on in a relationship went on in a relationship.
 5            But when Ms. Humphries --
 6            THE COURT:  Let me say -- let me say
 7   this --
 8            MS. MELCHER:  Yes.
 9            THE COURT:  -- about that.
10            I understand that relationships can have
11   a mixed bag.
12            MS. MELCHER:  Certainly.
13            THE COURT:  I also understand that in
14   that mixed bag there might have been abuse.
15            MS. MELCHER:  Correct.
16            THE COURT:  Is there anything else you
17   wanted to comment?
18            MS. MELCHER:  Just -- just prior to her
19   breaking off the relationship, Mr. Taylor --
20   Taylor Moore -- Mr. Moore -- told Ms. Humphries
21   it was one of his desires to -- and she kind of
22   relayed it in her affidavit -- tie her up in a
23   warehouse, choke her until she passed out.  You
24   know the details.
25            After that, I don't know that this was
```

1  clear in the affidavit, Ms. Humphries broke off

2  the relationship, and Ms. Button let her know,

3  I did an interview on-line, I did an interview

4  with a magazine, you really need to see the

5  interview.

6        When he she went to watch the interview,

7  in the interview, Ms. Button says, well, we are

8  moving to California -- which is where Sage had

9  retreated to -- we are moving to California and

10  we've already got the warehouse, it's all set up

11  and ready to go.

12        That was a definite implied threat to

13  her, knowing what Mr. Moore had said about the

14  warehouse.

15        Also, in his -- their opposition memo

16  today, they clearly state, We haven't been to

17  California since April, we haven't been there.

18  We -- we didn't come and stalk her.

19        I have photos here today, your Honor,

20  that are dated and time stamped July 26, of

21  Ms. Button standing on Melrose Avenue, of her

22  standing outside a We Burger in California, and I

23  have a couple other ones as well, that clearly

24  show they were in California.

25        They went there for the purpose of

1    stalking her.

2         I also have some text messages that show

3    some correspondence between them and a friend of

4    Ms. Humphries where they ask her to go over to

5    the house and keep an eye on her.

6         THE COURT:  Let me see the lawyers up

7    here, please.

8       (Sidebar as follows:

9         THE COURT:  You can do whatever you think

10   you need to do for your clients, obviously.

11        But my observation here is -- and I had

12   the -- counsel and her client put in touch with,

13   I believe, the ad -- the advocates from the

14   Suffolk County District Attorney's office, and

15   I'm not telling you anything you don't know, but

16   just in case you don't know, anything they say

17   here today is going to be said under the pains

18   and penalty of perjury, and it's also going to be

19   recorded.

20        And if criminal charges arise out of

21   what -- out of the affidavit as to what I saw, it

22   was credible, highly volatile, and described not

23   simply a factual situation that would warrant the

24   issue of or issuance of the -- of the -- of the

25   restraining order or would warrant the issuance

1    of (inaudible).

2         At the very least --

3         MR. MAHONEY:  I'm sorry, I didn't hear

4    the last part of that sentence, Judge.

5         THE COURT:  The factual -- the factual --

6    the factual basis that I read, I fully credit.

7         It highly warrants the issuance of a

8    civil restraining order but it also warrants the

9    issuance of at least criminal complaints, if not

10   indictments against your clients.

11        Now, having said all that, as I said, I

12   made those rulings without having heard from your

13   clients, right?

14        I'd be very happy to hear from them; but

15   if the DA's office is involved and they are going

16   to be over here and they are going to get the

17   tapes and anything they say can be used against

18   them in the upcoming proceeding.

19        What's your -- what's your desire?

20        MR. MAHONEY:  Judge, I did speak with

21   them --

22        THE COURT:  Yeah.

23        MR. MAHONEY:  -- this morning, and I also

24   spoke with them, I believe, last week.

25        I explained to them that there were

1    allegations present in the affidavit of

2    Ms. Humphries that could lead to criminal

3    charges.

4           And, as I said, I went over that again

5    with them this morning.  I explained that the

6    proceeding would be recorded and that these

7    statements -- that any statements they made this

8    morning could be used against them.  They said

9    that they wanted to proceed.

10          But I would ask you perhaps for two

11   minutes to go back outside with them and perhaps

12   emphasize that.

13          THE COURT:  Two minutes.

14          MR. MAHONEY:  Thank you, Judge.

15          THE COURT:  You did both.  Where's the

16   other file?

17          Wasn't there a -- wasn't there a third?

18          MS. MELCHER:  No.

19          Just her and her boyfriend over here.

20          THE COURT:  I thought there was -- okay.

21          MS. MELCHER:  Yeah, her father.

22          THE COURT:  Okay.  All right.  If you

23   need five, we'll give you five.

24          MR. MAHONEY:  Thank you, Judge.

25   (Sidebar ends.)

1          THE COURT:  Your attorney's going to take

2    you outside into a conference room and have a

3    discussion with you.

4          I think it might be a discussion that

5    you've already had with him.

6          This time I would ask that you listen

7    real, real closely as to what the attorney is

8    going to say to you.  Okay?

9          MR. MOORE:  Yes, your Honor.

10         THE COURT:  Further call.

11         MR. MAHONEY:  Thank you, Judge.

12         THE CLERK:  Second call.

13         THE CLERK:  These matters will be called

14    again.

15    (10:13 a.m. court in recess.)

16    (11:00 a.m. court resumes.)

17         THE CLERK:  Sage Nicole Humphries vs.

18    Dusty Button, Sage Nicole Humphries vs Mitchell

19    Taylor Moore.

20         THE COURT:  Just let counsel speak to her

21    client for a moment.

22         Are you all set?

23         MS. MELCHER:  Can I have one more moment?

24         THE COURT:  Sure.

25         Take your time.

```
 1            (Pause.)
 2            MS. MELCHER:  All set, your Honor.
 3            Thank you.
 4            THE COURT:  All right.  Ma'am, do you
 5       want to take the stand over here, please?
 6            Marco, do you want to swear in the
 7       witness, please?
 8            THE CLERK:  Yes, your Honor.
 9            Can you please raise your are right hand?
10            Do you solemnly swear to tell the truth,
11       the whole truth, and nothing but the truth, so
12       help you God?
13            THE WITNESS:  Yes.
14                 SAGE HUMPHRIES, SWORN
15            THE CLERK:  And can you introduce
16       yourself for the record, please?
17            THE WITNESS:  My name is Sage Humphries.
18            THE CLERK:  Okay.  Thank you.
19            THE COURT:  Ms. Humphries, please be
20       seated.
21            Get comfortable.
22            And Attorney Melcher, if you wish
23       to -- if you wish to consult with your attorney
24       at any time, she may do so.
25            THE WITNESS:  Thank you.
```

LMP Court Reporting   -   (508) 641-5801

1-11

1           MS. MELCHER:  Okay, Judge?

2           THE COURT:  Yeah, go right ahead.

3           Mr. Mahoney, (inaudible).

4           MS. MELCHER:  And I wasn't sure if I

5     should just -- we want to rest on this as our

6     case in chief, so I can have her (inaudible).

7           THE COURT:  (Indiscernible).

8           As I said, when Mr. Mahoney wishes to

9     cross-examine I'll hear that.

10          MS. MELCHER:  Okay.

11          THE COURT:  And, obviously, if there is

12    anything on redirect.

13          MS. MELCHER:  Certainly.

14          THE COURT:  You'll have an opportunity,

15    as I said at the sidebar.

16          And, ma'am, if you wish to consult with

17    your attorney during the cross-examination or at

18    any time, just let us know and you can do so.

19    Okay?

20          THE WITNESS:  Okay, thank you.

21          THE COURT:  Mr. Mahoney.

22          MR. MAHONEY:  Thank you, Judge.

23                 CROSS-EXAMINATION

24    BY MR. MAHONEY:

25    Q.  Good morning, Ms. Humphries.

1-12

1    A.    Good morning.

2    Q.    I'm Attorney Kevin Mahoney, I represent

3    Dusty Button and her husband, Taylor Button.

4              You submitted, in support of the

5    applications for the restraining orders that you

6    are seeking, an affidavit; is that correct?

7    A.    That's correct.

8    Q.    And this affidavit is signed August 1, 2017;

9    is that correct?

10   A.    That's correct.

11   Q.    Is that the day that you prepared the

12   affidavit?

13   A.    No, that's not.

14   Q.    Can you tell me when you prepared the

15   affidavit?

16   A.    I prepared the affidavit on a -- I believe it

17   was a Saturday after the Wednesday when I had

18   sent the message saying that this was final.

19   This was over.

20              It was only, you know, three to four days

21   after I sent the final message.

22   Q.    So would that be around -- if I'm not

23   mistaken, you sent the message ending the

24   relationship with Mr. and Mrs. Button on July 18;

25   is that correct?

1    A.    Yes, that's correct.

2    Q.    And on -- so within a few days of sending

3    that messaging, you prepared this affidavit?

4    A.    Yes, that's correct.

5    Q.    And you've reviewed this affidavit?

6    A.    I have read it, and I actually wrote it.

7    Q.    Okay.  And everything in the affidavit is

8    accurate; is that correct?

9    A.    That's correct.

10   Q.    To the best of your recollection?

11   A.    Yes.

12   Q.    Okay.  You were in a relationship with

13   Mr. and Mrs. Button --

14   A.    Yes.

15   Q.    -- is that correct?

16          You met my client, Dusty Button, at the

17   Boston Ballet?

18   A.    Yes.

19   Q.    And she was one of the top dancers at the

20   Boston Ballet?

21   A.    Yes.

22   Q.    And within the ballet community certainly

23   well-known, perhaps even around the world?

24   A.    Yes.  Certainly.

25   Q.    And you were a relatively new dancer?

1   A.   It was my first season; and I was in the
2   second company, not even the main company.
3   Q.   And the two of you became friends?
4   A.   Yes.  We became friends in January.
5   Q.   Okay.  And eventually she introduced you to
6   her husband; is that correct?
7   A.   Yes.
8   Q.   And the three of you began -- became friends?
9   A.   Yes.
10  Q.   And isn't it true that sometime in March,
11  2017, Ms. Button went away on a business trip?
12  A.   Yes.
13  Q.   And isn't it true that while she was away on
14  and that business trip you slept with my client's
15  husband, Mr. Button?
16  A.   That's true.
17  Q.   And when Ms. Button returned from her
18  business trip, you didn't tell her that you had
19  been sleeping with her husband, did you?
20  A.   He told me not to.
21  Q.   But you didn't --
22  A.   No, I did not.
23  Q.   -- tell Ms. Button?
24       Okay.  And you've described her, if I'm
25  not mistaken, in some of these text messages, as

1-15

1    your best friend?

2    A.   That's true.

3    Q.   Now, Mr. and Mrs. Button traveled with you

4    out to California in April of 2017?

5    A.   Yes.

6    Q.   And at that point the relationship was

7    evolving; the relationship that you had with

8    these two individuals?

9    A.   Yes.

10   Q.   And you stayed, as I understand it, at your

11   father's beach house in California?

12   A.   We were staying at my parents's house, but

13   the last night they insisted that we stayed at

14   the beach house alone.

15   Q.   Who insisted?

16   A.   Dusty and Taylor.

17           They did not want to spend another night

18   at my parents's house.  They wanted us to be

19   alone.

20   Q.   Okay.  Now, at some point your parents

21   learned of the nature of the relationship that

22   you were maintaining with Mr. and Mrs. Button?

23   A.   My parents were unaware of the sexual

24   relationship.  They were unaware that we were

25   even in a relationship.  They simply thought that

1-16

1    we were friends.
2    Q.   But eventually they learned more about the
3    relationship?
4    A.   It wasn't until I came home in May.
5    Q.   Well, let's talk about that, Ms. Humphries.
6             Your mother indicated to you on May 17,
7    2017, that she was coming to Boston from
8    California to bring you home?
9    A.   On May 17th?
10   Q.   May 17th.
11   A.   No, that's not true.
12   Q.   Didn't she arrive in Boston on May 25th?
13   A.   Yes.
14            She arrived in Boston on May 24th to show
15   up at my last show with the second company.
16   Q.   And just before you were set to perform, she
17   took you out of the show; is that correct?
18   A.   On May 25th before I was -- I completed the
19   show on the 24th.  My parents were at the show.
20            And then on the 25th, before my Sleeping
21   Beauty show, they wanted to take me home to see
22   my dying grandfather.
23   Q.   And so you left rather abruptly?
24   A.   Yes.
25            But it was already discussed with the

1    faculty at the Ballet, and they were happy to
2    release me to go see my grandfather.
3    Q.   And didn't you inform Ms. Button -- excuse
4    me -- that your parents had confiscated your
5    cell phone as they were taking you out of Boston?
6    A.   As I was leaving Boston in the car.  I was on
7    the phone with Dusty.
8         She was telling me not to get on the plane
9    so my parents did take my cell phone from me
10   because I was being yelled at to not get on the
11   plane, yes.
12   Q.   And -- and you did not get that cell phone
13   back until July 3, 2017; is that correct?
14   A.   I didn't get the cell phone back on July 3rd.
15        I had -- I was using my little brother's
16   cell phone for the time being because my phone
17   was still -- you know, had photos and whatnot.
18   Q.   My mistake.
19        It was either July 6th or July 7th --
20   A.   No.
21   Q.   -- that your parents gave you back your cell
22   phone?
23   A.   I didn't get my cell phone back then.
24   Q.   Didn't you write a communication to Mr. and
25   Mrs. Button, or Mr. Button, on July 7th?

1-18

```
 1    A.  Yes, I did.  But that was on my brother's
 2    phone.
 3    Q.  And this was a message in which --
 4         MR. MAHONEY:  May I approach, Judge, to
 5    show the message so that she understands what I'm
 6    referring to?
 7         THE COURT:  Just make sure you show
 8    Attorney Melcher, if she hasn't seen it.
 9         MR. MAHONEY:  Okay.
10         (Pause.)
11         MR. MAHONEY:  That's Exhibit 3.
12         MS. MELCHER:  I got it.  Thanks.
13         MR. MAHONEY:  May I approach, Judge?
14    BY MR. MAHONEY:
15    Q.  Do you recognize what's depicted on this
16    page?
17    A.  Yes.
18    Q.  Have you had an opportunity to read the
19    entire message?
20    A.  One second.
21         Yes, I recognize that.
22    Q.  Is that a message that you sent to
23    Mr. Button?
24    A.  Yes.
25    Q.  Is that correct?
```

1          And it's dated July 7, 2017, at 7:32 a.m.?

2    A.   Yes, that's correct.

3    Q.   So you wrote to -- to Mr. Button, Tay -- and

4    I'm assuming Tay is referring to Taylor; is that

5    correct?

6    A.   That's correct.

7    Q.   Okay.  My parents are freaking out.

8         You wrote that?

9    A.   Yes.  They had learned that we were still

10   communicating.

11   Q.   What you wrote is, they heard my song and

12   immediately jumped to the conclusion we have been

13   communicating?

14   A.   Yes.

15   Q.   Had your parents told you not to communicate

16   with the Buttons?

17   A.   They certainly did.

18   Q.   And to continue with this message --

19        MS. MELCHER:  Objection, your Honor.

20        Is this a question?

21   BY MR. MAHONEY:

22   Q.   They --

23        MR. MAHONEY:  I can phase it in the form

24   of a question.

25        THE COURT:  As to the form (inaudible).

1-20

1    BY MR. MAHONEY:

2    Q.    When you wrote the next line, They want to

3    take everything away from me, what were you

4    referring to?

5    A.    I was referring to my, you know, supposed

6    relationship with them, but that was it.

7    Q.    And you wrote, I am distraught.

8            What did you mean by that?

9    A.    I'm -- I was distraught because I was kind of

10   in a rock and a hard place.

11           I didn't know how to get out of the

12   relationship.

13           I also didn't know how to, you know,

14   handle everybody talking to me about the

15   relationship, not approving of the relationship.

16           It was -- I was in a distraught scenario

17   where a lot of pressure was put on me to make a

18   decision.

19   Q.    Make a decision to do what, Ms. Humphries?

20   A.    To either end the relationship or, you know,

21   continue with it and risk my job, family,

22   friends, everything that I ever knew.

23   Q.    So on July 7th, would it be fair to say

24   that you had not made a decision yet as to

25   whether or not you were going to end the

1   relationship with --

2   A.   Yes, that's true.

3   Q.   -- with Mr. and Mrs. Button?

4        But it's also true you hadn't seen them in

5   at least a month and a half, correct?

6   A.   Yes.

7   Q.   And you continued to communicate with them

8   through Snapchat; is that correct?

9   A.   Yes.

10  Q.   And you sent them messages on July 7th,

11  another message on July 7th; messages on

12  July 8th; is that correct?

13  A.   Yes.

14  Q.   And you sent messages all the way up until

15  July 14th; isn't that correct?

16  A.   Ah...

17  Q.   To either Mr. Button or Mrs. -- or Ms.

18  Button?

19  A.   What day was July 14th?

20       Do you know what day of the week that was?

21  Q.   Friday.

22  A.   So a week after that text that you read me.

23  Q.   Okay.  So on --

24  A.   I suppose I ended the relationship the next

25  week.

1    Q.   Do you recall on July 9, 2017, sending them

2    a -- and by "them," I'm referring to Dusty and

3    Taylor -- a Snapchat that states -- what shows a

4    photograph of you with the caption, I want you

5    all the time?

6    A.   Yes.

7    Q.   So you did send that Snapchat?

8    A.   Yes.

9    Q.   So you didn't want to end the relationship on

10   July 9th?

11   A.   I believe the time of that message was very

12   early in the morning.

13        I believe it was while it was nighttime.

14   Everyone was asleep.

15        I believe later that day I made a call on

16   July 9th -- I think that that's the date -- and I

17   left a voicemail saying that I wanted to end the

18   relationship.

19        But that would -- that would have been at

20   nighttime.

21   Q.   So, if I understand you correct, on July 9th

22   you sent this photograph captioned, I want you

23   all the time, and then the following day you

24   left a -- you sent them another message within

25   which you broke up with them and ended the

1-23

1    relationship; is that correct?

2    A.   I ended the relationship, actually, not on

3    that day.

4            It was -- it was -- when I really ended

5    the relationship was through the Snapchat

6    message.

7            On the specific date, I would have to

8    double check on, but this --

9    Q.   But you -- you left them a voicemail on

10   July 10 --

11   A.   Yes.

12   Q.   -- 2017 --

13   A.   Yes.

14   Q.   -- in which you communicated your desire to

15   end the relationship --

16   A.   Yes.

17   Q.   -- is that correct?

18   A.   Yes.  That is correct.

19   Q.   Okay.  Now, you then sent a Snapchat to, I

20   believe, Taylor with a photograph of you

21   captioned, Call me, love.

22           And that was dated July 13, 2017?

23   A.   Yes.

24   Q.   Okay.  Why would you -- why would you send

25   him a message saying, Call me, love?

1-24

1  A.  Before I left the voicemail on July 10th, I

2  had told them that I was going to leave a

3  voicemail because I still wasn't sure if I wanted

4  to end the relationship or not.

5      But at the time I just needed at least on

6  the other side of things to -- to make it, you

7  know -- they didn't want me to leave the

8  voicemail.

9      They told me, don't leave the voicemail.

10 They said, I beg you not to leave the voicemail.

11     And I left it anyways regardless of what

12 they said.  I meant it.  But I still didn't know

13 how to end the relationship.

14     I was still under their manipulation and

15 control and it was scary.  I didn't know how to

16 end this properly.

17     So I still was caught up in, you know, the

18 hope that maybe this was a real relationship.  To

19 answer your question.

20 Q.  So when you left the voicemail on July 10th

21 for -- was that -- did you leave it with -- on

22 Taylor's?

23 A.  On Taylor's phone.

24 Q.  Okay.  Was that genuine, were you

25 legitimately trying to break up with them on July

1    10th?

2    A.   Yes, I was.

3         They had sent messages in the previous

4    days that were quite terrifying.

5         And when all of that was going through my

6    mind when I had the decision whether or not to

7    leave the voicemail, I ultimately decided that I

8    wanted to take the first step in regaining my

9    freedom back.

10        And that was the first step.

11   Q.   Isn't it true that you had sent them a

12   message through Snapchat informing them that on

13   July 10th you would leave them a fake voicemail

14   breaking up with them in order to satisfy your

15   parents?

16   A.   I said it would be fake.

17   Q.   So you said -- you indicated to the Buttons

18   that this message that you would be sending or

19   leaving on -- on July 10th would, in fact, be a

20   fake message?

21   A.   Even if it was to be a fake message, they

22   didn't want me to send it, regardless.

23   Q.   Okay.  But you warned them ahead of time

24   you'd be leaving a fake message; is that correct?

25   A.   I did.

1-26

1    Q.   Okay.  Now, you just testified to -- they had

2    communicated something to you that was -- was

3    terrifying sometime around the July 8, 9, 10,

4    timeframe; is that correct?  Is that the correct

5    time frame?

6    A.   Yes.

7    Q.   Okay.  What were those terrifying messages?

8    A.   It was a message from Taylor telling me

9    that -- you know, I asked if there was anything

10    that he would want to try?

11         I didn't know where he would go with the

12    conversation, but he proceeded by telling me that

13    he wanted to stage a kidnapping; wanted to not

14    tell me the time or place; throw me in the back

15    of his car; take me to a warehouse; suspend me

16    from the ceiling; fuck me until I'm

17    uncomfortable; and choke me until I pass out with

18    a rag.

19         And Dusty had also told me that she

20    watched me sleep and just -- that was just a

21    couple of the messages that I never, you know,

22    vocalized it to them, but absolutely terrified me

23    and I didn't know how to handle it.

24    Q.   And how did Mr. Button communicate --

25    A.   Through Snapchat.

1-27

```
 1   Q.   -- that message?
 2        With regard to --
 3   A.   But he told me to delete it.
 4   Q.   Let me -- let me finish the question, so that
 5   the transcript makes sense.
 6        What you just referred to -- him
 7   kidnapping you, putting you in a trunk,
 8   suspending you from a ceiling of a warehouse --
 9   do you remember the date that he -- that he left
10   that -- or communicated that to you?
11   A.   I believe that it was maybe -- it was either
12   July 7th or 8th, around -- around that time
13   period.
14   Q.   And how did he communicate it to you?
15   A.   Through Snapchat.
16   Q.   Through Snapchat.
17        And that was terrifying, was it not?
18   A.   Absolutely.
19   Q.   Okay.  So you made a copy of it so you could
20   provide it to the Court?
21   A.   No, because he had told me to delete the
22   message.
23        On Snapchat he only saved the messages
24   that would, you know, create a different
25   conversation than what was actually going on.
```

1    Q.  Did you -- were you in fear that he would

2    carry out on the threat of kidnapping you and

3    suspending you from the ceiling and everything

4    else that you had mentioned?

5         Did you gave a legitimate fear?

6    A.  I was in legitimate fear, and my fear

7    increased when -- after I completely broke it off

8    with them, Dusty had an interview that came out

9    saying that, you know, they were moving to

10   California; they had a warehouse ready.

11        That's not normal things that you say in

12   an interview.

13   Q.  Okay.  So -- so, I'm -- I'm -- why did you

14   delete the message then?

15   A.  Because I was told to.  I was ordered to.

16   Q.  Well, he -- wasn't on the other side of the

17   country?

18   A.  They still could --

19   Q.  Or in Australia?

20   A.  -- invoked fear in me from the other side of

21   the country.

22   Q.  Okay.  All right.  Let's -- let's go now --

23   we'll go to July 14 --

24   A.  Okay.

25   Q.  -- 2017.

1-29

1          You left the following message, did you

2     not, Taylor, good morning, darling.  There is

3     nothing in this world I want more than to wake up

4     in your arms, turn over and kiss your face.

5          You are such an honest love and have such

6     a beautiful heart.  I value it more than gold.

7          I hope you wake up in good spirits and

8     family with you today.

9          Did you write that to him?

10    A.   Yes.

11    Q.   And this was approximately six days after you

12    are saying that he sent you this terrifying

13    Snapchat message?

14    A.   I chose to ignore a lot of things that scared

15    me because I didn't really know how on earth I

16    was going to get out of the situation.

17          But I still -- I was still scared that --

18    I don't -- I don't -- I was scared that, you

19    know, me directly ending the relationship that

20    there would be backlash, hate, I didn't -- I

21    didn't know.

22          I wasn't at the place yet where I realized

23    exactly what was going on.

24    Q.   With regard to the message that you were

25    referring back to on July 8, the warehouse, did

1-30

1    you inform anybody during that time frame that
2    Mr. Button had sent you that message?
3    A.    I informed my therapist, Katherine -- she's
4    sitting back there -- I told her on the day that
5    I left the voicemail what he had told me.
6            And she's a fair witness of how scared I
7    was that night.
8    Q.    Okay.  Can you -- can you be more specific
9    with regard to the date because I wasn't able to
10   follow it?
11   A.    The date that I left the voicemail --
12   Q.    Correct.
13   A.    On Taylor's phone?
14   Q.    -- was that July 10th or was that July --
15   A.    That was July 10th.
16   Q.    Okay.
17   A.    That was July 10th.
18            I had told her how scared I was.  I had
19   told her what he had said, and we both feared for
20   my life.
21   Q.    Now, you feared for your life, so I am
22   assuming then that you went to the police?
23   A.    Yes, I did.
24   Q.    In California?
25   A.    It wasn't until after I sent the last

1    Snapchat; but, yes, I did go to the police.

2    Q.   And you reported what?

3    A.   I reported that there was an imminent threat

4    of me potentially being kidnapped; that they were

5    coming to LA.  That this was serious.  They said

6    that they had a warehouse ready.

7    Q.   And who did you speak with?

8    A.   I spoke with the Orange County Sheriff

9    Department.

10   Q.   And anybody in particular?

11   A.   I have the information on my phone but not

12   currently with me right now.

13   Q.   Did this conversation you had -- with the

14   Orange County Sheriff's Department; is that

15   correct --

16   A.   Yes.

17   Q.   -- was that reduced to writing?

18        Is there a report?

19   A.   There is a report.  There's a number.

20   Q.   That memorializes your allegations?

21   A.   Yes.

22   Q.   Do you have that with you today in court?

23   A.   I have the number, but...

24   Q.   The number of what?

25   A.   The number of the police report.

1-32

1        I have another police report from the
2   Boston PD as well, if you need to see that, which
3   I talk about the incident.
4   Q.   On your application for the protective
5   orders, you referenced the gun collection of
6   Mr. Button; is that correct?
7   A.   Yes.
8   Q.   You wrote that he had more than 50 guns; is
9   that correct?
10  A.   It was just an estimate but...
11  Q.   Isn't he a photographer?
12  A.   Yes.
13  Q.   Doesn't he also have a collection of bicycles
14  on the wall?
15  A.   He has a very obsessive personality.  He
16  collects a lot of things.
17  Q.   Doesn't he use -- doesn't his apartment, that
18  he shares with Ms. Button, does that double as
19  his photography studio?
20  A.   Sometimes.
21  Q.   Okay.  And aren't those guns fakes, just
22  replicas?
23  A.   He bragged to me that he could interchange
24  the guns, that they could be fake; they could be
25  real.

1          I mean, he kind of sold it as if they were
2    all real but they certainly -- you know, some of
3    them could be real.  I believe that some of them
4    are real.
5    Q.  Did you have anything to do with the
6    Somerville Police Department showing up at his
7    house --
8    A.  Absolutely not.
9    Q.  -- with regun [sic] to a report -- with
10   regard to a report that there were guns in the --
11   in the apartment?
12   A.  Absolutely not.
13   Q.  Do you know who did?
14   A.  I do not.  It was no one that I know.
15   Q.  Are you aware of what happened as a result of
16   the investigation by the Somerville Police
17   Department?
18   A.  No.
19   Q.  You -- it's my understanding that you are
20   claiming in late July 2017 the Buttons were in
21   California; is that correct?
22   A.  Yes.
23   Q.  Isn't it true that they were in Australia
24   from June 22, 2017, to July 21, 2017?
25   A.  That's correct.

1-34

1    Q.   Okay.  Isn't it true that after that they

2    were in Las Vegas?

3    A.   Yes.

4    Q.   Now, you're claiming, as I understand it,

5    that they were stalking you in California later

6    that month?

7    A.   I have photo evidence of them being in

8    California on July 26th.

9         They knew that I was going to be recording

10   up in Beverly Hills, and they actually posted

11   pictures on the same street as me.  It was no

12   coincidence.

13   Q.   And how would they know that you were on the

14   same street?

15   A.   Because I'm sure that they had access to my

16   Instagram account and -- not directly, you know,

17   they were blocked, but through, you know, a third

18   party, another source that would be keeping tabs

19   on my Instagram account.  I had posted the studio

20   that I was at.  I posted where I was.

21        And they followed back with posting

22   pictures of them on the exact same street.  It

23   just seems a little...

24   Q.   But you just testified you had blocked them

25   from your Instagram account, correct?

1-35

1    A.   They were blocked.

2    Q.   And when did you block them?

3    A.   They were blocked on May 25th.

4    Q.   May 25th.  Okay.

5         Did anything -- I'm referring back again

6    to the Snapchat message that you sent on

7    July 14th which was to Taylor.

8         Did anything additional happen between the

9    message you sent on July 14th and your decision

10   on July 18 to end the relationship?

11   A.   Did anything additional happen on my part

12   or...

13   Q.   Or anything happen with the context of the

14   relationship that showed you -- that --

15   A.   Of course.

16   Q.   -- that persuaded you to take that course?

17   A.   Of course.

18        Angry, angry text messages.  They were

19   angry that I had left the voicemail.

20        They, you know, made me feel bad about the

21   producer that I was working with.

22        Made me feel bad about wanting to spend

23   time with my friends.

24        They made me feel bad about having a good

25   time on the Fourth of July.

1-36

```
 1           They made me feel bad about, you know,
 2    even ever wanting to talk to my ex-boyfriend, who
 3    they hated.  They made me feel bad about
 4    everything.
 5           So I -- I eventually got sick of it.
 6    Q.   How did they communicate this anger?
 7    A.   This is all through Snapchat.
 8    Q.   And you have copies of any of these
 9    Snapchat --
10    A.   Of course, the Snapchats are --
11    Q.   -- communications?
12    A.   -- you know, either deleted or they're saved
13    in the archives of the Snapchats.
14    Q.   Do you have any of them?
15    A.   I do not.  And the only Snapchats that were
16    saved were on their side.
17           They only saved messages that were, you
18    know, happy or -- they only saved things saying,
19    you know, I love you or -- they never saved any
20    of the actual arguments that would transpire or
21    any of the, you know, firey words that they would
22    say or come back to me with.
23    Q.   So between July 14th and July 18th they isn't
24    you a series of angry Snapchat messages; is that
25    correct?
```

1-37

1    A.    Absolutely.

2    Q.    And you deleted them; is that correct?

3    A.    Well, Snapchat is an App that instantly

4    deletes your messages if you don't purposefully

5    save them.

6    Q.    Okay.  Why didn't you purposefully save them?

7    A.    Because I wasn't -- I -- I was, first of all,

8    told to delete them.  They would specifically say

9    in their messages, delete after I send.  Delete

10   after I send.

11          And, you know, them saving the messages,

12   clearly, they wanted to prove that the

13   relationship was real.

14          But if they really wanted an accurate

15   statement, they would have saved all the messages

16   instead of just a couple.

17   Q.    In your affidavit you state that

18   Mr. and Mrs. Button constantly supplied you --

19   with your words -- a bounty of alcohol and

20   marijuana.

21   A.    Yes.

22   Q.    Had you ever tried marijuana before --

23   A.    Yes.

24   Q.    -- becoming friends with Mr. --

25   A.    Yes.

1-38

1    Q.    -- and Mrs. Button?

2         Okay.  Isn't it true that you had used it

3    quite frequently; in fact, you were a heavy user

4    of marijuana?

5    A.    I enjoyed using marijuana.

6    Q.    Prior to meeting the Buttons?

7    A.    Prior to meeting the Buttons.

8    Q.    In fact, you were a heavy user of -- of

9    marijuana?

10   A.    Well, I would argue that I certainly wasn't

11   as heavy as a user as I became once they started

12   buying $500 worth of marijuana and supplying me

13   with wax pens and buying 30 pieces of glass and

14   pipes to smoke it out of.

15        And they provided -- you know, it wasn't

16   just the marijuana.

17        When I first became friends with them,

18   maybe it was a gram, but it certainly wasn't $500

19   worth of marijuana to keep a stash of so we would

20   never run out.

21        I was not that frequent of a user.  I

22   mean, I enjoyed it, but I certainly didn't buy

23   30 different pipes or go to an actual weed store

24   and purchase a bong.

25        And I didn't have those things.  I wasn't

1-39

1    that kind of a user.  But they turned me into

2    that kind of a user.

3    Q.   Well, hadn't you been treated previously by a

4    psychologist, or a therapist, for your addiction

5    to marijuana?

6    A.   No.

7         MR. MAHONEY:  Do you have that...

8         I think I have it.  Yes.

9    BY MR. MAHONEY:

10   Q.   Do you know a Dr. Keston (phonetic)?

11   A.   Yes.

12   Q.   And who is that?

13   A.   She's my ballet sponsor.

14   Q.   Isn't it true that she helped you with your

15   marijuana problem at some point?

16   A.   When I was relocating from living in New York

17   when I was seven -- I was 16 going on 17 -- I

18   wanted to get a fresh start from the city that

19   was, obviously, a high -- high-paced lifestyle,

20   and I wanted to go and start training with a --

21   with a clear mind that I wanted to, you know,

22   have a fresh start, and she facilitated me coming

23   to Sarasota, Florida, and starting, you know, my

24   fresh start.

25        But she never counseled me when it comes

1-40

1    to drugs.  She -- she didn't really have to.

2           It was my decision to -- to have a fresh

3    start and go and start training in Sarasota.

4    Q.  So, Ms. Humphries, you made a number of

5    allegations here today and in your affidavit.

6           Do you have any proof, do you possess any

7    proof that anything you've said today or in your

8    affidavit is actually true?

9    A.  Well, I have proof that they were in LA.  I

10   have, you know, pictured evidence of me drinking

11   and smoking with them in our apartments.

12          I have, you know -- I have pictures and

13   text messages of them telling me not to talk to

14   my family.

15          They have text messages from me stealing

16   from the Boston Ballet.

17          Text messages saying that, you know, I --

18   I should make sure not to, you know, look high

19   when I go to work, because they had given me the

20   wax pen.

21          I have text messages --

22   Q.  I'm sorry, the wax what?

23   A.  The wax pen.  It's a pen that contains THC

24   wax.

25          But I have text messages of them telling

1-41

1    me not to talk to certain people; telling me not

2    to talk to my dad.

3    Q.   May I -- may I interrupt you, Ms. Humphries?

4    A.   Of course.

5    Q.   Where are those text messages?

6    A.   They're saved on my phone.

7    Q.   And you didn't reproduce them for

8    introduction to the Court today?

9    A.   They are -- they are -- they are here.  You

10   can see them, if you would like.  They're on my

11   phone.

12   Q.   But there was -- you made no effort to

13   reproduce them so they could be introduced into

14   evidence?

15   A.   They weren't printed out.

16        I mean, I think that the nature of

17   everything that happened to me speaks for

18   itself.

19   Q.   So we have no proof then what you are

20   testifying to is true?

21   A.   You are free to look through my phone, if you

22   so desire and look at the pictures and text

23   messages.

24   Q.   Did you tell Ms. Button in one of your

25   original conversations after your parents had

1-42

```
1    come to Boston and were taking you back to
2    California, did you tell them that your parents
3    were taking you back to California to have an
4    exorcism?
5    A.   I did not tell them that I was having an
6    exorcism.
7         I told them that in the airport my mom had
8    placed hands-on me and was praying for me; and I
9    was exaggerating, you know, what had happened.
10        But I certainly never said that I was
11   going to get an exorcism.
12        But I may have just exaggerated that, you
13   know, it was somewhat like an exorcism.
14        She just was praying for me.  There's
15   nothing wrong with that.
16   Q.   So you're capable of exaggeration?
17   A.   I would say that I am -- you know, the things
18   that I would say in messages to them were for the
19   purpose of appeasing them.  No other purpose.
20        It was -- it was fear.  I said things out
21   of, you know, wanting to just make everything
22   okay.
23        I don't like confrontation.  They know I
24   don't like confrontation.
25        But I certainly will stand up for myself
```

1-43

1    in saying that a lot of the messages that I sent

2    were because I was in fear of them.

3            MR. MAHONEY:  Okay.  I don't have

4    anything further, Judge.

5            THE COURT:  Any redirect, Attorney

6    Melcher?

7            MS. MELCHER:  Very briefly.

8            THE COURT:  Go right ahead.

9                    REDIRECT EXAMINATION

10   BY MS. MELCHER:

11   Q.   Sage, when you were speaking with my Brother

12   here you mentioned that the Buttons did come to

13   California.

14           I'd like to just show you a picture.

15           And can you tell me if you recognize it?

16           Can you tell me what that is?

17   A.   Yes.

18           That is a store called American Vintage on

19   Melrose Avenue on July 26th.

20   Q.   And where was that picture taken?

21           Where did that picture come from?

22   A.   That picture came from a story, a Snap -- an

23   Instagram story from Dusty's Instagram.  She

24   tagged her husband in it.  And --

25   Q.   Is there any indication on that picture that

1-44

1    it comes from Ms. Button?

2    A.   Yes.

3         It's her Instagram handle.  It says,

4    @DustyButton.  And it also says @buttonbuilt

5    (phonetic) which is his Instagram handle.

6         MS. MELCHER:  Okay.  Thank you, your

7    Honor.

8         Your Honor, I'd like to introduce this,

9    if you'd like to see it.

10        MR. MAHONEY:  I don't have any objection,

11   Judge, if she wants to show you that.

12        MS. MELCHER:  If he wants it.  It's

13   showing the date they were in California.

14   BY MS. MELCHER:

15   Q.  Are you afraid of the Buttons today,

16   Ms. Humphries?

17   A.  Yes.

18   Q.  Are you afraid -- could you tell me -- could

19   you expand on that, what are you afraid of?

20   A.  I'm afraid because they have a very violent

21   and angry nature.

22        When consulting with my friend Hannah

23   before they asked her to come stalk my house

24   they mentioned, you know, that if they ever saw

25   Anthony, they would slash his throat.

1-45

1       They told me that they would beat up my
2   dad if they ever were in California; that I
3   wouldn't want to see what it would look like;
4   based on Taylor's comment with the kidnapping and
5   tying -- choking me until I pass out.  Of course,
6   I'm scared.
7   Q.   Okay.  And I know that co-counsel brought to
8   light a lot of the texts that you sent, certainly
9   there in the beginning of July.
10       Were you conflicted in July about
11   (inaudible)?
12   A.   I was -- I was terribly conflicted in July.
13   I think that it was -- it was a realizations.
14       I was realizing, you know, how in jeopardy
15   I was with my career at the Boston Ballet.
16       I had realized that so many things had
17   slipped away.  My friendships had slipped away.
18   I wasn't able to talk to my family; people I
19   enjoyed spending time with.
20       I was realizing that, you know, I had a
21   life before I met them.  That was taken away.
22       I was just realizing certain things
23   honestly about myself; and through their text
24   messages, I was realizing things about them,
25   too.

1-46

1          And I was conflicted on how to handle

2     it because they have a way of making you feel

3     like -- like your opinions aren't right.

4          You can't really argue anything because

5     they will immediately, you know, bite back by

6     saying that, you know, they're right and nothing

7     you could say could possibly be right.

8          So I was conflicted about even bringing up

9     that I had doubts because they wouldn't have been

10    handled so nicely, if you know what I mean.

11    Q.   And how old were you when you moved to

12    Boston?

13    A.   I was 18 years old when I moved to Boston.

14    Q.   And do you know the ages of Mr. Button -- Mr.

15    and Mrs. Button?

16    A.   Dusty is currently 28, and Taylor is 33.

17    Q.   Did you recognize this picture?

18    A.   Yes, I do.

19          That's from her Instagram.

20    Q.   Can you tell me what that picture details?

21          What's shown in that picture?

22    A.   That picture is taken from their gun room.

23    She is lying on the couch in front of their guns

24    in the gun room.

25    Q.   With the gun collection?

1-47

1    A.   The gun collection.

2    Q.   Were there any other weapons in that room?

3    A.   Yes.

4         There were knives, grenades, ammo.

5    Q.   Okay.

6    A.   And handguns as well other than these rifles

7    that you see.

8    Q.   Okay.  I'd like to just introduce this as an

9    exhibit.

10        My Brother has a copy.

11        THE COURT:  Any objection, Mr. Maloney?

12        MR. MAHONEY:  I have no objection,

13   Judge.

14   BY MS. MELCHER:

15   Q.   And one last thing.

16        Do you recognize this image?

17   A.   Yes, I do.

18   Q.   And can you tell me what's depicted in that

19   image?

20   A.   There is a handgun, and there is an extremely

21   scary looking knife.

22   Q.   And is somebody holding those?

23   A.   Taylor is holding his knives and his guns.

24   Q.   Okay.  And where was that image posted?

25   A.   That image was posted on his Instagram.  In

1-48

1    their house.

2    Q.   Okay.  And did you read the message that goes

3    along with that image?

4    A.   I don't always carry a knife but when I do, I

5    prefer to carry one that makes my sidearm, a .48,

6    look like a namby-pamby little bitch.  Yeah.

7    Q.   How did that message make you feel?

8    A.   Intimidated.

9    Q.   And that's -- I'd like to introduce this just

10   to show to the judge.

11        MR. MAHONEY:  I don't have any objection,

12   Judge.

13        MS. MELCHER:  That's from Ms. Button's

14   account.

15        THE WITNESS:  That's from Taylor's

16   account.

17        THE COURT:  What's the basis of the

18   objection?

19        MR. MAHONEY:  No, I said, Judge, I have

20   no objection.

21        THE COURT:  Oh, no, objection.  I'm

22   sorry.

23        Okay.

24        MS. MELCHER:  I rest my case.  Thank you.

25        THE COURT:  Anything further, Mr.

```
 1    Mahoney?
 2            MR. MAHONEY:  Very briefly, Judge.
 3            May I approach the witness?
 4                    RECROSS-EXAMINATION
 5    BY MR. MAHONEY:
 6    Q.   I'd like to place before you a document.
 7            Do you recognize what's depicted on that
 8    exhibit?
 9    A.   Yes.
10    Q.   And what is that?
11    A.   It's me in bed at -- very late at night
12    sending a picture.
13    Q.   And who did you send the picture to?
14    A.   Either -- I believe it was Taylor.
15    Q.   And do you know the date that you sent it?
16    A.   July 9th.
17    Q.   And do you know how -- and how is the
18    image -- is there a caption with that image?
19    A.   Yes, there is.
20    Q.   And what does it say?
21    A.   Come get me, please.  I need to be in your
22    arms.
23    Q.   And you believe you sent this to Taylor; is
24    that correct?
25    A.   I believe so.
```

1          MR. MAHONEY:  Judge, I'd like to

2     introduce this as an exhibit, please.

3          MS. MELCHER:  No objection, your Honor.

4          THE COURT:  All right.

5     BY MR. MAHONEY:

6     Q.  Ms. Humphries, through your counsel you just

7     introduced some evidence that you have maintained

8     on your cell phone, is that correct, with regard

9     to the location of Mr. and Mrs. Button in late

10    July of 2017; is that correct?

11    A.   That's correct.

12    Q.   The locations in California?

13    A.   Yes, that's correct.

14    Q.   Which apparent -- which as I understand from

15    your testimony, you observed on their Instagram

16    or which -- whose Instagram, was it Dusty's or

17    was it Taylor's?

18    A.   I -- I didn't personally observe, because,

19    like I told you, they were blocked from my

20    Instagram.

21          My friend Hannah, who they asked to come

22    stalk my house, has an Instagram page that she

23    was able to go on their Instagram and look at

24    their story and screenshot a message that they

25    posted on their story.

1-51

1    Q.   And you keep saying that they told Hannah to

2    stalk your house.

3         What's Hannah's last name?

4    A.   Hannah Stalrow (phonetic).

5    Q.   Storow?

6    A.   Stalrow.

7    Q.   Okay.  And weren't the -- wasn't Dusty Button

8    communicating with Hannah through text messaging?

9    A.   The only time that Dusty communicated with

10   Hannah was after she didn't want to stalk my

11   house, and she told them that she wouldn't, Dusty

12   said that she didn't understand.

13   Q.   Weren't they not communicating about text

14   message?

15   A.   Taylor called my friend Hannah.  They talked

16   for 45 minutes on the phone.

17   Q.   And do you know what -- according to Hannah,

18   do you know what that conversation entailed?

19   A.    It entailed them saying that they were, you

20   know, scared; that they needed me; that they

21   wanted her to come and park out of side of my

22   house.  Count the cars in my driveway.  See if I

23   was home.

24         They said that, you know, they would slash

25   Anthony's throat, which is my ex-boyfriend, if

1-52

```
 1    they ever saw him.
 2           They said that my parents kidnapped me.
 3           They said that she needed to help them get
 4    me a fake phone -- or not a fake phone but a
 5    disposable phone so that I could call them on,
 6    and that they said that -- they actually wanted
 7    her to drive me to Boston from southern
 8    California.
 9           And she, granted, lives an hour away, so
10    even driving to my house was a long drive for
11    her.
12           She was manipulated into doing all of
13    those things.
14    Q.  And she still drove to your house after this
15    conversation with Ms. Button?
16    A.  She didn't know the context but, yes.
17    Q.  Okay.  So she heard all of these issues that
18    you -- that you just referred to, and she still,
19    on their behalf, on Dusty's behalf, went to your
20    house?
21    A.  She was under the impression that, you know,
22    we were in a relationship.
23           I had told her prior to me leaving Boston
24    that there was a lot of fighting.  I didn't know
25    how to handle it.
```

1-53

1        But that was all that she -- that was the
2    last that she heard of our relationship.
3        And then they called her; and, when she
4    didn't comply with what they wanted her to do,
5    they immediately blocked her on social media.
6    They blocked her boyfriend.
7        It was -- that's really -- you know, she
8    didn't understand the other side of the story.
9        She hadn't talked to my parents.  She
10   hadn't talked to me in a couple of days.
11   Q.   Okay.  Your attorney just asked you if you
12   are currently afraid of the Buttons, and you gave
13   an answer, correct?
14   A.   Yes.
15   Q.   Okay.  Now, isn't it true -- don't you know
16   that they are moving from Boston; aren't you
17   aware of that?
18   A.   They've said that they are moving from Boston
19   so many times that I really don't know what to
20   believe.
21   Q.   Okay.  But isn't it your understanding they
22   are moving to Texas?
23   A.   They actually -- you know, in an interview
24   they said they were moving to California.
25        They've said they might move to Texas.

```
1              They said they are leaving in a couple of
2       days, but they don't leave.
3              It's...
4       Q.  Okay.
5              MR. MAHONEY:  I have nothing further,
6       Judge.
7              Thank you.
8              THE COURT:  All right.
9              MS. MELCHER:  Thank you, your Honor.
10             All set.
11             THE COURT:  Mr. Mahoney, I'll hear from
12      you, and then I'll hear from Attorney Melcher.
13      Michael.
14             MR. MAHONEY:  Judge, may I introduce an
15      incident report from the Somerville Police
16      Department dated 5/28/2017.
17             THE COURT:  Excuse me.  Can the -- can
18      the witness step down now?
19             MR. MAHONEY:  Oh, yes.
20             THE COURT:  You may step down.
21      (Witness excused.)
22             MS. MELCHER:  Have I seen this?
23             MR. MAHONEY:  I don't think so.  I don't
24      think I included it.
25             Any objections?
```

1-55

1          MS. MELCHER:  No.

2          THE COURT:  Is this an exhibit?

3          MR. MAHONEY:  Yes, please.

4          Judge, with regard to -- I am sure you

5     are well aware of the standard to issue a

6     restraining order, a preponderance of the

7     evidence.

8          Here's the problem with -- with the

9     allegations.

10          The allegations, as you read the

11     affidavit of Ms. Humphries, and you -- certainly

12     as you listen to her testify, the allegations are

13     horrifying.  Those are horrifying allegations.

14          Being locked, kidnapped, locked in the

15     trunk, suspended from a warehouse ceiling and

16     raped.

17          Those are horrifying, horrifying,

18     horrifying allegations.

19          And Ms. Humphries claims that there were

20     a number of Instagram or Snapchat messages that

21     were sent by Mr. Taylor.

22          And -- but where are they?  Where are the

23     reports to the California Police Department, the

24     sheriff's department that she referred to?

25          Where -- where is -- where is that

1-56

1    report?

2            Where is any of the messages, Judge?

3            There are no messages.  There's

4    absolutely, positively nothing to corroborate

5    Ms. Humphries.  Nothing at all.

6            And -- and here's the thing.  I submitted

7    an opposition in which I attached a number of

8    exhibits, and I tried to keep this manageable

9    because I know the Court has -- that your time is

10   valuable, Judge, and, you know, there's only so

11   much you can read in a period of time before

12   making a decision.

13           But those messages if you read them,

14   Judge -- and there's plenty of text messages

15   introduced as exhibits in there, Judge -- you

16   know, there isn't an unkind word in any text

17   message, Instagram message, Snapchat message from

18   Dusty Button or Taylor Button.

19           All the messages, all the text

20   messages -- now you -- Ms. Humphries can say --

21   she can say, Well, you know, they told me to

22   delete, all the Snapchat and Instagram, and I

23   followed their instructions; I followed their

24   orders, but where are -- where are the missing

25   text messages then?

1-57

1          Why are all the text messages present?

2          Why would they use just one communication

3     medium to communicate these threats, and then all

4     the other text messages that I've introduced for

5     you -- and we have plenty more, if I Court wants

6     to see them -- are all loving or, at worst,

7     benign.

8          There's not a nasty text message going

9     back and forth between them, and there are

10    thousands of text messages.

11         So one would have to believe that my

12    clients have some incredible dark side,

13    incredible violent side.

14         Well, if they do have that, Judge,

15    where's -- where's the evidence?

16         How come they've never been accused of a

17    crime before?

18         Why have they never been charged with a

19    crime before?

20         You know, I've -- I introduced that

21    incident report.

22         The police went to the Button's home.

23    They looked at the gun collection.

24         They had been given the call about the

25    gun collection.  They went and examined it; they

1    are all fake guns.

2         I introduced as part of my exhibits in

3    the opposition, Judge, the -- the evidence of the

4    purchases of these replicas.

5         They are obvious that they are replicas

6    to anybody who knows anything about guns.

7         So I would ask you, Judge, to deny the

8    restraining orders.

9         Ms. Humphries has done nothing to

10   corroborate any of her allegations.

11        In fact, if we were to believe her, she's

12   testifying she destroyed all of the evidence.

13        Thank you.

14        THE COURT:  All right.

15        Thank you, Mr. Mahoney.

16        Attorney Melcher.

17        MS. MELCHER:  Your Honor, my client

18   speaks to his clients' dark side and there's no

19   evidence.

20        I certainly submitted evidence indicating

21   a dark side.  There's their room full of

22   weapons -- whether they be real or not, they

23   claimed that they were real.

24        They -- Ms. Humphries took those photos

25   to the California police, who verified that some

1    were real and some were fake.

2           There's evidence, I introduced, of Mr.

3    Taylor holding this knife -- this large knife and

4    a gun saying, I don't always carry a knife but

5    when I do, I want to carry one that makes my

6    sidearm look like a little -- and I'm not going

7    to use the curse word, but certainly we've

8    submitted some evidence of their dark side.

9           I just want to tell you house Instagram

10   works because my Brother sort of misstated it.

11          What happens on Instagram, it's -- you

12   send a message, and the message automatically

13   deletes.

14          MS. HUMPHRIES:  Snapchat.

15          MS. MELCHER:  Or Snapchat, excuse me.

16   They send the message and it automatically

17   deletes.

18          So it's not a case of my client

19   destroying evidence or deleting messages.  It's

20   how it works.  It designed for people who don't

21   want to leave a history of messages.  That's why

22   it's used.  You send your message and it

23   automatically deletes.

24          There's cases now, I believe, where

25   people are trying to subpoena the original

1-60

1  messages from Snapchat, but I still don't know
2  how that's all working out.
3      But those -- that -- that Snapchat
4  service was used for a specific reason and that's
5  because messages don't save.
6      He says that there's no evidence here.  I
7  would say that my client is evidence.
8      My client's testimony is evidence; her
9  affidavit is evidence of what she went through,
10  of the things that they threatened her with in
11  such graphic, disgusting, depraved detail.
12      This is an adult male, 33 years old, and
13  she was 18 years old when she moved to Boston to
14  work for the Boston Ballet.  She's 19 now.
15      I would ask your Honor certainly to
16  extend this restraining order for at least a
17  year.
18      I think it's -- we've definitely
19  introduced evidence that she's in fear of -- that
20  it's certainly reasonable -- of imminent harm.
21      That they are capable of carrying out
22  that threat.  And that the restraining order
23  needs to be in place.
24      Thank you.
25      THE COURT:  All right.  Thank you,

1-61

1    Attorney Melcher.

2            Nothing fell on deaf ears, Mr. Mahoney.

3    I listened carefully to your questioning.

4            I listened carefully to the plaintiff's

5    answers.

6            And I read with great care the very

7    compelling affidavit that the plaintiff submitted

8    when plaintiff and counsel were before me ten

9    days ago.

10            I fully credited the allegations in

11    those -- in the -- in the affidavit.  And I fully

12    credited the plaintiff's testimony here today.

13            I'm satisfied, not by a preponderance of

14    the evidence, I'm satisfied beyond a reasonable

15    doubt, if this were a criminal case, that the

16    facts demonstrate that the parties engaged in an

17    emotionally charged and unconventional

18    relationship that, over time, became one in which

19    the defendants became the dominant and

20    controlling participants.

21            It was a relationship that, once again,

22    over time, morphed into one of fear, isolation,

23    and abuse of the plaintiff.

24            Abuse that in every regard, in every way,

25    meets the requirements of and the definition of

1    abuse in General Laws Chapter 209A of our state.

2         It's for those reasons that I have

3    extended the order for a period of one year.

4         If you and your clients would remain here

5    in the courtroom, Diane is going to make copies

6    of the order.

7         She will serve your clients.

8         And then, as soon as Attorney Melcher and

9    her client have left the premises, your clients

10   can leave at that time.

11        MR. MAHONEY:  That will be fine, Judge.

12        May I address one part of the order

13   that --

14        THE COURT:  Go right ahead.

15        MR. MAHONEY:  -- I hadn't noticed until,

16   I think, on Thursday.

17        There were certain personal digital-type

18   evidence that the Court was ordering my clients

19   to return or turn over to Ms. Humphries.

20        I wanted for the record -- I wanted the

21   record to reflect that I provided counsel for

22   Ms. Humphries with a -- with what I understand to

23   be a hard drive containing the information that

24   Ms. Humphries wanted back.

25        I have -- I have not viewed it.  I am not

1-63

1    very technologically savvy, but it's my

2    understanding that that hard drive contains the

3    information they were looking for.

4              MS. MELCHER:  When my Brother handed it

5    to me, he said it was partial of the information

6    that I was looking for.

7              I believe you said that.  So I just want

8    to make sure it's --

9              MR. MAHONEY:  I don't -- I don't believe

10   I used the word "partial."

11             I think that -- it's my understanding

12   that the information that your client is seeking

13   is contained on that hard drive.

14             That's may --

15             MS. MELCHER:  Okay.

16             MR. MAHONEY:  -- my understanding.

17             MS. MELCHER:  Okay.  Thank you.

18             THE COURT:  Are you satisfied with --

19   with that, Attorney Melcher?

20             MS. MELCHER:  I don't believe that there

21   is any way that we can really verify it.

22             I'd like that the order reflect that

23   nothing be posted on-line ad infinitum related to

24   Ms. Humphries.

25             THE COURT:  All right.  I do have it at

1-64

1    the end of No. 14.

2              Let me read this into the record.  I want

3    your client -- I'm sure you've been over

4    everything with a fine tooth -- as you are in the

5    other cases that you have appeared in front of me

6    very thorough, Mr. Mahoney -- but I want your

7    clients to hear it from me here today so if there

8    is any allegation that pertains to No. 14 it will

9    be back in front of me.

10             The defendants are to surrender any and

11   all personal information to the Boston Police

12   Department -- fine if you gave it to Attorney

13   Melcher -- pertaining to the plaintiff, including

14   electrically stored information, and that any

15   such information is not to be published in any

16   way at all.

17             I hope your clients heard me loud and

18   clear.

19             MR. MAHONEY:  I have instructed them,

20   Judge.

21             THE COURT:  If there is any -- if there

22   is any violation of any part of the order,

23   including that part of the order, your clients

24   will not like the results.

25             I don't want to sound antagonistic or

1-65

1    threatening when I put it in that -- in those

2    terms; I do want your clients to understand the

3    seriousness with which the Court takes the entire

4    order, including the provisions that I've set out

5    in box No. 14.

6            MR. MAHONEY:  Thank you, Judge.

7            THE COURT:  All right.  Thank you, all.

8            MS. MELCHER:  Thank you, your Honor.

9            THE COURT:  Michael.

10           THE CLERK:  On Docket No. 2017RO01181,

11   Sage Nicole Humphries vs. Mitchell Taylor Moore,

12   the Court has extended the abuse prevention

13   order.

14           That order will expire on August 14,

15   2018.

16           There will be a further hearing on this

17   matter on August 14, '18, at 9:00 a.m.

18           And on Docket No. 2017RO01182, Sage

19   Nicole Humphries vs. Dusty Button, that order's

20   been extended -- extended to August 14, 2018, and

21   expires at 4 p.m.

22           There will be a further hearing on this

23   matter on August 14, 2018, at 9 a.m. in

24   Courtroom C.

25           The parties can stand by.  We will give

1   you copies of the order which will be served by

2   the court officer.

3          THE COURT:  I know there's at least one

4   other person here.

5          I'm be coming right back.  I'll be right

6   with you momentarily, ma'am.

7          Mr. Mahoney, as usual, I know you didn't

8   get what you were looking for, but it was good to

9   see you again, sir.

10          MR. MAHONEY:  Nice to see you, Judge.

11   Thank you.

12   (12:01 p.m. court in recess.)

13

14

15

16

17

18

19

20

21

22

23

24

25



**The Commonwealth of Massachusetts**
**OFFICE OF COURT MANAGEMENT, Transcription Services**

**AUDIO ASSESSMENT FORM**

---

*For court transcribers: Complete this assessment form for each volume of transcript produced, and include it at the back of every original and copy transcript with the certificate page, word index, and CD PDF transcript.*

---

**TODAY'S DATE:** 8/30/2022                    **TRANSCRIBER NAME:** Lisa Phipps

**CASE NAME:** HUMPHRIES V. MOORE,  HUMPHRIES V. BUTTON

**DOCKET NUMBER:** 1701RO000181

**RECORDING DATE:** 8/14/2018          **TRANSCRIPT VOLUME:** 1 OF 1

(Circle one) TYPE:  CD  TAPE QUALITY: EXCELLENT GOOD FAIR POOR

(Circle all that apply) ISSUES (include time stamp):

    background noise XXX                time stamp:_____
    low audio XXXXXXXXXXXXXXXXXXX       _____
    low audio at sidebar               _____
    simultaneous speech                _____
    speaking away of microphone        _____
    other:_____          time stamp:_____
    _____       _____
    _____       _____
    _____       _____

COMMENTS: No log notes, spellings, exhibit list, or speaker IDs provided.

1-68

C E R T I F I C A T E


       I, LISA MARIE PHIPPS, AN APPROVED COURT
TRANSCRIBER, DO HEREBY CERTIFY THAT THE FOREGOING IS A
TRUE AND ACCURATE TRANSCRIPT FROM THE AUDIO RECORDING
PROVIDED TO ME OF THE PROCEEDINGS IN THE MATTER OF
HUMPHRIES V. MOORE and HUMPHRIES V. BUTTON HELD ON
AUGUST 15, 2017.

    I, LISA MARIE PHIPPS, FURTHER CERTIFY THAT THE
FOREGOING IS IN COMPLIANCE WITH THE ADMINISTRATIVE
OFFICE OF THE TRIAL COURT DIRECTIVE ON TRANSCRIPT
FORMAT.

       I, LISA MARIE PHIPPS, FURTHER CERTIFY THAT
I NEITHER AM COUNSEL FOR, RELATED TO, NOR EMPLOYED BY
ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING
WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR
OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.



/s/ _Lisa Marie Phipps_____
NAME OF THE APPROVED COURT TRANSCRIBER
PROCEEDINGS RECORDED BY FTR AUDIO RECORDING
TRANSCRIPT PRODUCED STENOGRAPHICALLY FROM COMPUTER


August 30, 2022
DATE


LMP Court Reporting
347 Eliot Street
Ashland, Massachusetts 01721
BUSINESS ADDRESS


(508) 641-5801
BUSINESS TELEPHONE


lmpreporting@gmail.com
EMAIL ADDRESS

71



Mitchell Taylor Moore
(*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
(310)-499-8702
Desmodynamica@gmail.com

Dusty Button
(*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
(310)-499-8930
Worldofdusty@gmail.com

**COMMONWEALTH OF MASSACHUSETTS**

**APPEALS COURT**

M.T.M and D.B

      **Appellants,**

    v.

S.H

      **Appellee.**

**Docket No. 2023-P-1202**

**APPELLANTS'
RECORD OF APPENDIX
VOLUME IV OF IV**

1

APPELLANTS' RECORD OF APPENDIX VOLUME IV OF IV

*17·01·RO·181*

## AFFIDAVIT OF SAGE HUMPHRIES

On or about August 16, 2016, at age 18, I moved away from my family from Southern California to dance under contract with the Ballet. I moved into an apartment in the city with another dancer who eventually moved out in December 2016.

In January of 2017, I became friends with Dusty Button, who was at the time, a veteran principal dancer with the Ballet; 27 years old and married to Mitchell Taylor Moore, aka Taylor Button, 32 years old.

After ending a year-long relationship I had been in with another man from California, I began spending all of my free time with Dusty and/or Taylor. After only a couple weeks of friendship, I was convinced to spend more nights at Dusty and Taylor's apartment (45 minutes away in Somerville), than at my own apartment that was within walking distance of the Ballet.

In the months to follow, Dusty and Taylor would constantly supply me with a bounty of alcohol and Marijuana. Taylor claimed he wanted to, "help," me with my career, like he did his wife's, and soon took ownership of my Instagram, while simultaneously downloading all of my email, phone, and Icloud information.

Taylor soon began to dictate what I could and could not post. Dusty and Taylor began to seriously influence my opinions of those around me, my values, and my beliefs. I was soon discouraged from having any personal relationship with my family members, close friends and even colleagues at the ballet.

In the beginning of March 2017, Taylor began to come on to me very strongly. He told me that he wanted to be closer to me on a physical level although he was married to Dusty. He craved touch, and platonic friendship was not enough for him. I told him that Dusty was my best friend and that I felt uncomfortable with any romantic involvement. After I had made my position clear, he told me he would, "honor my request," because he wanted to be in my life. However, it became apparent to me that he would not honor my request.

Taylor began to touch me underneath the covers when the three of us would go to bed. I felt completely frozen because his wife was laying on the other side of him and I couldn't make a sound. This became a nightly ritual; Dusty would, "fall asleep," and he would begin to touch me.

He soon took it further, seizing an opportunity while Dusty was on a business trip, to begin having sexual relations with me. He told me to, "trust him," because he knew what he was doing. I felt extraordinarily guilty because Dusty was not aware of what was happening. However, Taylor would assure me that Dusty was, "OK," with the situation and would actually welcome it.

At the end of April 2017, Dusty and Taylor said I was their "girlfriend" and started to push odd sexual acts on me. Dusty and Taylor would constantly supply me with a bounty of alcohol and Marijuana. If I didn't want to drink, Taylor would say he would "funnell" drinks down my throat. I was officially their property, and they could order me around as they pleased.

73

*(7 9/ Ro / 8/)*

If there was an argument; Dusty and Taylor manipulated me into believing that their marriage depended upon me and without me they would get a divorce. I soon found myself in a situation that I could no longer control and I was under the influence of their mind control, drugs and alcohol constantly.

There was one instance at the end of April 2017 where Dusty and Taylor blindfolded me with a latex mask, tied me to their living room table, and had sex right next to me. I felt used and helpless as I was unable to move, speak or see.

Shortly after there was another instance when Dusty and Taylor had gotten in a fight about me. I tried to take a shower by myself in an attempt to unwind from the verbal abuse and chaos I had just witnessed. Taylor came into the shower, bent me over and forced himself on me. I went limp, started crying and felt used and abused in that moment.

On or about May 22, 2017, Dusty Button was terminated from the Ballet company. My parents had become very concerned about me as they recognized my attitude had changed and I was no longer making decisions for myself. On May 24, 2017, my parents arrived in Boston to see me but Taylor and Dusty did not tolerate me spending any time with my parents.

On May 25, my parents showed up at the Ballet to help me get away from Dusty and Taylor because they were no longer allowed at the ballet and I would be alone. I remember going to the airport and Dusty yelling at me on the phone and ordering me not to get on any plane with my parents. Taylor was also yelling for me to read the plane tickets to see when they were purchased and to verify a return flight or else I couldn't get on a plane with my parents.

On May 25, 2017, I flew home to Southern California with my parents and I have not returned to Boston.

Taylor has verbally threatened many times to hurt anyone that got in the way of anything he loved. He threatened to slash my ex-boyfriend's throat. He threatened to beat up my father. I believe Taylor deleted messages from my phone by remote access from May 25 to around May 27, 2017.

On May 27, 2017, Taylor and Dusty began to search for friends that I may have in Southern California and even asked one friend to drive many miles to my parent's home to stalk me because I had been, "Kidnaped." My friend watched my home for Taylor and Dusty, but soon saw the deception and shared the information with me and my parents.

I know Taylor and Dusty traveled from Boston to Los Angeles after my last day in Boston, May 25, 2017, to stalk me.

I now know that Taylor had downloaded all of my private electronic information on my cell phone and that he could actually remotely search my cell phone and my accounts.

(701 ro 181)                                         3

I believe that Taylor deleted information from my phone the day my parents took me home from Boston. I believe that Taylor and Dusty then flew to Southern California themselves in an attempt to get me. My parents called 911 in Southern California and officers responded.

I know that Taylor and Dusty wanted to take me out of the country this summer and had every detail planned for my life. They told me that a life with them would be full of freedom, but I now realize that it was just the opposite.

I know Taylor and Dusty have a violent side to them and that their apartment in Boston has multiple semi automatic weapons and hand guns hanging in their gun room. Taylor has bragged often to me that he can interchange the parts of these guns. Taylor also has many knives.

In the beginning of July, 2017, Taylor has threatened to kidnap me, throw me in the back of his car, take me to a rented warehouse that he got in advance, suspend me from the ceiling, fuck me until I was uncomfortable, and put a cloth over my mouth to make me pass out.

On or about July 18 or 19th, Dusty appeared in an interview that was previously recorded of her in Australia a few weeks prior where she said the "warehouse" is in place. Dusty communicated to me before I viewed the video that she wore a special shirt for me and I think she wanted me to be intimidated by the subliminal message. Dusty and Taylor enjoy using social media to harass and intimidate whenever possible.

From July 25 thru July 27, 2017, Dusty and Taylor have been in Los Angeles stalking me.

I believe Dusty and Taylor would lash out and try to harm me or my family, if any of us were to be in contact with them.

I plan to return to Boston Ballet to dance, but I do not want to put my safety at risk, as well as those around me.

I also since learned, that I am not the only young dancer who has been victimized by Taylor and Dusty; and that the methods in which they lured me in seems to be a pattern.

I declare under penalty of perjury that all statements of fact made above are true to the best of my knowledge.

Dated: 8-1-17          Plaintiff's Signature: _____

Witnessed by: _____    Print name of witness: _____

| ABUSE PREVENTION ORDER<br>(G.L. c. 209A) Page 1 of 2 | DOCKET NO.<br>1701 RO 182 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

Plaintiff's Name
_Saye Humphries_

Name & Address Of Court
Boston Municipal Court Department
Central Division
Edward W. Brooke Courthouse
24 New Chardon Street
Boston, MA 02114

D
E
F
T
.

I
N
F
O
.

Defendant's Name & Address
DUSTY BUTTON
445 ARTISAN WAY
APT 531
Somerville MA

Alias, if any

Date of Birth 6-6-89   Sex ☐ M ☑ F   Place of Birth

SS # (Last four digits only) XXX-XX-

Daytime Ph # ( )

Cell Phone # 617 501-622

## **VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE** punishable by imprisonment or fine or both.

**A. THE COURT HAS ISSUED THE FOLLOWING ORDERS TO THE DEFENDANT:** (only those items checked shall apply)

☑ This Order was issued without advance notice because the Court determined that there is a substantial likelihood of immediate danger of abuse.

☐ This Order was communicated by telephone from the Judge named below to: Police Dept._____ Police Officer_____

☑ **1. YOU ARE ORDERED NOT TO ABUSE THE PLAINTIFF** by harming, threatening or attempting to harm the Plaintiff physically or by placing the Plaintiff in fear of imminent serious physical harm, or by using force, threat or duress to make the Plaintiff engage in sexual relations.

☑ **2. YOU ARE ORDERED NOT TO CONTACT THE PLAINTIFF,** in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least _150_ yards from the Plaintiff even if the Plaintiff seems to allow or request contact. The only exceptions to this order are: a) contact as permitted in Sections 8, 9, 10 and 11 below; or b) by sending the Plaintiff, by mail, by sheriff or by other authorized officer, copies of papers filed with the court when that is required by statute or court rule.

☑ **3. YOU ARE ORDERED TO IMMEDIATELY LEAVE AND STAY AWAY FROM THE PLAINTIFF'S RESIDENCE,** except as permitted in Sections 8 and 10 below, located at _Wherever that may be_____ or wherever else you may have reason to know the Plaintiff may reside. The Court also ORDERS you (a) to surrender any keys to that residence to the Police; (b) not to damage any belongings of the Plaintiff or any other occupant; (c) not to shut off or cause to be shut off any utilities or mail delivery to the Plaintiff; and (d) not to interfere in any way with the Plaintiff's right to possess that residence, except by appropriate legal proceedings.

   ☑ **If this box is checked, the Court also ORDERS** you to immediately leave and remain away from the entire apartment building or other multiple family dwelling in which the Plaintiff's residence is located.

☑ **4a. YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S WORKPLACE** located at _9 Clarendon St. Bos._
☑ **4b. YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S SCHOOL** located at _The entire building._
☑ **5a. THE COURT ORDERS** that the Plaintiff's residential address not appear on the order.
☐ **5b. THE COURT ORDERS** that the Plaintiff's workplace address not appear on the order.
☐ **5c. THE COURT ORDERS** that the Plaintiff's school address not appear on the order.
☐ **6. CUSTODY OF THE FOLLOWING CHILDREN IS AWARDED TO THE PLAINTIFF:**

| N A M E | | A G E | N A M E | | A G E | | A G E |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

☐ **7. YOU ARE ORDERED NOT TO CONTACT THE CHILDREN LISTED ABOVE OR ANY CHILDREN IN THE PLAINTIFF'S CUSTODY LISTED BELOW,** either in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least _____ yards away from them unless you receive written permission from the Court to do otherwise.
   ☐ You are also ordered to stay away from the following school(s), day care(s), other: _____

| N A M E | | A G E | N A M E | | A G E | | A G E |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

☐ **8. VISITATION WITH THE CHILDREN LISTED IN SECTION 6 IS PERMITTED ONLY AS FOLLOWS** (may be ordered by Probate and Family Court only):
_____
   ☐ Visitation is only allowed if supervised and in the presence of _____ (name) at the following times _____
   _____ to be paid for by _____ (name) _____ (name)
   ☐ Transportation of children to and from this visitation is to be done by _____ (name) (third party), and not by you.
   ☐ You may only contact the Plaintiff to arrange this visitation. Contact may be made only by ☐ phone, ☐ e-mail, ☐ text, ☐ other _____

☐ **9. YOU ARE ORDERED TO PAY SUPPORT IN THE FOLLOWING MANNER:**
   ☐ $_____ child support per _____ [week/month] by income withholding through the Department of Revenue. Defendant shall send payments to DOR at P.O. Box 55144, Boston, MA 02205-5144 until employer deductions begin.
   ☐ $_____ child support per _____ [week/month] directly to the Plaintiff by mailing payments to _____
   ☐ $_____ support for the Plaintiff per _____ [week/month] directly to the Plaintiff by mailing payments to _____
   ☐ Other orders: _____

☐ **10. YOU MAY PICK UP YOUR PERSONAL BELONGINGS** in the company of police at a time agreed to by the Plaintiff.

☐ **11. YOU ARE ORDERED TO COMPENSATE THE PLAINTIFF** for $_____ in losses suffered as a direct result of the abuse, to be paid in full on or before _____, 20___ ☐ by mailing directly to the Plaintiff ☐ through the Probation Office of this Court.

☑ **12. THERE IS A SUBSTANTIAL LIKELIHOOD OF IMMEDIATE DANGER OF ABUSE. YOU ARE ORDERED TO IMMEDIATELY SURRENDER** to the _Boston_ Police Department or to the police officer serving this order all guns, ammunition, gun licenses and FID cards. Your license to carry a gun, if any, and your FID card, if any, are suspended immediately. _Bos. Pol. Dept._
   • You must immediately surrender the items listed above, and also comply with all other Orders in this case.
   • Subject to certain exceptions, purchase and/or possession of a firearm and/or ammunition while this order is in effect is a federal crime. 18 U.S.C. §§ 922(g)(8) and 925.

☐ **13. ON THE NEXT SCHEDULED HEARING DATE,** the Court will hear testimony and other evidence regarding Section 9 of this order, which involves support for the Plaintiff and/or the minor children. You are hereby ordered to bring with you to the next scheduled hearing date any financial records in your possession (including your most recent tax return and your last four paystubs) that provide evidence of your current income.

☑ **14. YOU ARE ALSO ORDERED** _Dis to surrender any + all personal information pertaining to F including Electronically Stored information + is not to public any such info_

The Plaintiff must appear at scheduled hearings, or this Order will expire. The Defendant may appear, with or without attorney, to oppose any extension or modification of this Order. If the Defendant does not appear, the Order may be extended or modified as determined by the Judge. For good cause, either the Plaintiff or the Defendant may request the Court to modify this Order before its scheduled expiration date.

FA-2 (1/12)

76

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 2 of 2 | DOCKET NO. *170CR0 182* | TRIAL COURT OF MASSACHUSETTS |
| --- | --- | --- |

☐ 15. Police reports are on file at the _____ Police Department.

☐ 16. OUTSTANDING WARRANTS FOR THE DEFENDANT'S ARREST:
*None per CARI* _____ (DOCKET #s) _____ *None per CARI* ___ (PCF #)
to _____

☐ 17. An imminent threat of bodily injury exists to the Plaintiff. Notice issued to _____ Police Department(s) by ☐ telephone ☐ other _____

**B. NOTICE TO LAW ENFORCEMENT**

☐ 1. An appropriate law enforcement officer shall serve upon the Defendant in hand a copy of the Complaint and a certified copy of this Order (and Summons), and make return of service to this Court. If this box is checked ☐, the following alternative service may instead be made, but only if the officer is unable to deliver such copies in hand to the Defendant: _____

☐ 2. Defendant Information Form accompanies this Order.

☐ 3. Defendant has been served in hand by the Court's designee: Name _____ Date _____

| DATE OF ORDER *8·1·17* | TIME OF ORDER *10:44* ☒ A.M. ☐ P.M. | EXPIRATION DATE OF ORDER *8·15·17* at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE *McKenna* |
| --- | --- | --- | --- |

The above and any subsequent Orders expire on the expiration dates indicated. Hearings on whether to continue and/or modify Orders will be held on dates and times indicated. In the event the Court is closed on the date the Order is to expire, the Order shall remain in full force and effect and the Hearing shall be continued until the next Court business date.

NEXT HEARING DATE: *8·15·17* at *9:00* ☒ A.M. ☐ P.M. Courtroom *"C"*

**☒ C. MODIFICATION/EXTENSION**

☒ This order was issued after a hearing at which the Plaintiff ☒ appeared ☐ did not appear and the Defendant ☒ appeared ☐ did not appear.

The Court has **ORDERED** that the prior order issued *8·1·17*, 20___ be **MODIFIED** as follows: _____

☒ The expiration date of this order has been **EXTENDED** (See Below) ☐ **OTHER MODIFICATION(S)** _____

☒ **Firearm** surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: *8·15·17* | EXPIRATION DATE OF ORDER: *8·14·18* at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE *McKenna* |
| --- | --- | --- |
| TIME OF MODIFICATION: *12:10* ☐ A.M. ☒ P.M. | NEXT HEARING DATE: *8·14·18* at *9:00* ☒ A.M. ☐ P.M. Courtroom *"C"* | |

**D. MODIFICATION/EXTENSION**

☐ This order was issued after a hearing at which the Plaintiff ☐ appeared ☐ did not appear and the Defendant ☐ appeared ☐ did not appear.

The Court has **ORDERED** that the prior order issued _____, 20___ be **MODIFIED** as follows:: _____

☐ The expiration date of this order has been **EXTENDED** (See Below) ☐ **OTHER MODIFICATION(S)** _____

☐ **Firearm** surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: | EXPIRATION DATE OF ORDER: at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE |
| --- | --- | --- |
| TIME OF MODIFICATION: _____ ☐ A.M. ☐ P.M. | NEXT HEARING DATE: _____ at _____ ☐ A.M. ☐ P.M. Courtroom _____ | |

**☐ E. PRIOR COURT ORDER TERMINATED**

This Court's prior Order is terminated. Law enforcement agencies shall destroy all records of such Order.

☐ TERMINATED AT PLAINTIFF'S REQUEST.

| SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE | DATE OF ORDER | TIME OF ORDER ☐ A.M. ☐ P.M. |
| --- | --- | --- |
| WITNESS - FIRST OR CHIEF JUSTICE | A true copy, attest (Asst.) Clerk-Magistrate/ (Asst.) Register of Probate | |

FA-2A (5/15)

**COURT COPY**

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 1 of 2 | DOCKET NO. 1701 RO 181 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

Plaintiff's Name: _Sage Humphries_

D E F T. I N F O.

Defendant's Name & Address: _Mitchell Taylor Meore_
_445 Artisan Way_
_#531_
_Somerville, Ma._

Alias, if any:

Date of Birth:

Sex: ☐ M ☐ F    Place of Birth:

SS # (Last four digits only): XXX-XX-___

Daytime Ph # (   )

Cell Phone # (   )

Name & Address of Court:
Boston Municipal Court Department
Central Division
Edward W. Brooke Courthouse
24 New Chardon Street,
Boston, MA 02114

**VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE** punishable by imprisonment or fine or both.

**A. THE COURT HAS ISSUED THE FOLLOWING ORDERS TO THE DEFENDANT:** *(only those items checked shall apply)*

☒ This Order was issued without advance notice because the Court determined that there is a substantial likelihood of immediate danger of abuse.

☐ This Order was communicated by telephone from the Judge named below to: Police Dept._____ Police Officer_____

☒ **1. YOU ARE ORDERED NOT TO ABUSE THE PLAINTIFF** by harming, threatening or attempting to harm the Plaintiff physically or by placing the Plaintiff in fear of imminent serious physical harm, or by using force, threat or duress to make the Plaintiff engage in sexual relations.

☒ **2. YOU ARE ORDERED NOT TO CONTACT THE PLAINTIFF,** in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least **150** yards from the Plaintiff even if the Plaintiff seems to allow or request contact. The only exceptions to this order are: a) contact as permitted in Sections 8, 9, 10 and 11 below; or b) by sending the Plaintiff, by mail, by sheriff or by other authorized officer, copies of papers filed with the court when that is required by statute or court rule.

☒ **3. YOU ARE ORDERED TO IMMEDIATELY LEAVE AND STAY AWAY FROM THE PLAINTIFF'S RESIDENCE,** except as permitted in Sections 8 and below, located at _Wherever that may be_ or wherever else you may have reason to know the Plaintiff may reside. The Court also **ORDERS** you (a) to surrender any keys to that residence to the Police; (b) not to damage any belongings of the Plaintiff or any other occupant; (c) not to shut off or cause to be shut off any utilities or mail delivery to the Plaintiff; and (d) not to interfere in any way with Plaintiff's right to possess that residence, except by appropriate legal proceedings.

☒ **If this box is checked, the Court also ORDERS** you to immediately leave and remain away from the entire apartment building or other multiple family dwelling in which the Plaintiff's residence is located.

☒ **4a. YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S WORKPLACE** located at _19 Clarendon St. Bos._

☒ **4b. YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S SCHOOL** located at _The Entire building_

☐ **5a. THE COURT ORDERS** that the Plaintiff's residential address not appear on the order.

☐ **5b. THE COURT ORDERS** that the Plaintiff's workplace address not appear on the order.

☐ **5c. THE COURT ORDERS** that the Plaintiff's school address not appear on the order.

☐ **6. CUSTODY OF THE FOLLOWING CHILDREN IS AWARDED TO THE PLAINTIFF:**

| NAME | AGE | NAME | AGE |
|---|---|---|---|
| | | | |
| | | | |

☐ **7. YOU ARE ORDERED NOT TO CONTACT THE CHILDREN LISTED ABOVE OR ANY CHILDREN IN THE PLAINTIFF'S CUSTODY LISTED BELOW,** either in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least _____ yards from them unless you receive written permission from the Court to do otherwise.

☐ You are also ordered to stay away from the following school(s), day care(s), other: _____

| NAME | AGE | NAME | AGE |
|---|---|---|---|
| | | | |
| | | | |

☐ **8. VISITATION WITH THE CHILDREN LISTED IN SECTION 6 IS PERMITTED ONLY AS FOLLOWS** (may be ordered by Probate and Family Court only

_____

☐ Visitation is only allowed if supervised and in the presence of _____ (name) at the following times _____ to be paid for by _____ (name)

☐ Transportation of children to and from this visitation is to be done by _____ (name) (third party), and not by you.

☐ You may only contact the Plaintiff to arrange this visitation. Contact may be made only by ☐ phone, ☐ e-mail, ☐ text, ☐ other _____

☐ **9. YOU ARE ORDERED TO PAY SUPPORT IN THE FOLLOWING MANNER:**
☐ $_____ child support per ____ [week/month] by income withholding through the Department of Revenue. Defendant shall send payments to DOR P.O. Box 55144, Boston, MA 02205-5144 until employer deductions begin.
☐ $_____ child support per ____ [week/month] directly to the Plaintiff by mailing payments to _____
☐ $_____ support for _____ per ____ [week/month] directly to the Plaintiff by mailing payments to _____
☐ Other orders: _____

☐ **10. YOU MAY PICK UP YOUR PERSONAL BELONGINGS** in the company of police at a time agreed to by the Plaintiff.

☐ **11. YOU ARE ORDERED TO COMPENSATE THE PLAINTIFF** for $_____ in losses suffered as a direct result of the abuse, to be paid in full on or before _____, 20___ ☐ by mailing directly to the Plaintiff ☐ through the Probation Office of this Court.

☒ **12. THERE IS A SUBSTANTIAL LIKELIHOOD OF IMMEDIATE DANGER OF ABUSE. YOU ARE ORDERED TO IMMEDIATELY SURRENDER** to _Boston_ Police Department or to the police officer serving this order all guns, ammunition, gun licenses and FID cards. Your license to carry a gun, if any, and your FID card, if any, are suspended immediately. _Bos. Pol. Dept._

• You must immediately surrender the items listed above, and also comply with all other Orders in this case.

• Subject to certain exceptions, purchase and/or possession of a firearm and/or ammunition while this order is in effect is a federal crime. 18 U.S.C. §§ 922(g)(and 925.

☐ **13. ON THE NEXT SCHEDULED HEARING DATE,** the Court will hear testimony and other evidence regarding Section 9 of this order, which involves support for Plaintiff and/or the minor children. You are hereby ordered to bring with you to the next scheduled hearing date any financial records in your possession (including your most recent tax return and your last four paystubs) that provide evidence of your current income.

☒ **14. YOU ARE ALSO ORDERED** _him to surrender any + all personal information pertaining to P, including electronically stored information is not published such_

The Plaintiff must appear at scheduled hearings, or this Order will expire. The Defendant may appear, with or without attorney, to oppose any extension or modification of this Order. If the Defendant does not appear, the Order may be extended or modified as deemed by the judge. For good cause, either the Plaintiff or the Defendant may request the Court to modify this Order before its scheduled expiration date.

FA-2 (1/12)

**COURT COPY**

| ABUSE PREVENTION ORDER<br>(G.L. c. 209A) Page 2 of 2 | DOCKET NO.<br>17 01 RO 181 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

☐ 15. Police reports are on file at the_____Police Department.

☐ 16. OUTSTANDING WARRANTS FOR THE DEFENDANT'S ARREST:
None per CARI _____(DOCKET #s) _____ None per CARI _____ (PCF #)
to _____

☐ 17. An imminent threat of bodily injury exists to the Plaintiff. Notice issued to_____Police
Department(s) by ☐ telephone ☐ other_____

**B. NOTICE TO LAW ENFORCEMENT**

☐ 1. An appropriate law enforcement officer shall serve upon the Defendant in hand a copy of the Complaint and a certified copy of this Order (and Summons), and make return of service to this Court. If this box is checked ☐, the following alternative service may instead be made, but only if the officer is unable to deliver such copies in hand to the Defendant:_____

☐ 2. Defendant Information Form accompanies this Order.

☐ 3. Defendant has been served in hand by the Court's designee:  Name_____

| DATE OF ORDER<br>8·1·17 | TIME OF ORDER<br>10:38 ☐ A.M.<br>☐ P.M. | EXPIRATION DATE OF ORDER<br>8·15·17 at 4 PM. | SIGNATURE OF JUDGE<br>PRINT/TYPE NAME OF JUDGE<br>_M X anno | Date |
|---|---|---|---|---|

The above and any subsequent Orders expire on the expiration dates indicated. Hearings on whether to continue and/or modify Orders will be held on dates and times indicated. In the event the Court is closed on the date the Order is to expire, the Order shall remain in full force and effect and the Hearing shall be continued until the next Court business date.

NEXT HEARING DATE 8·15·17
at 9:00 ☐ A.M. ☐ P.M.    Courtroom _C_

**☒ C. MODIFICATION/EXTENSION**

☒ This order was issued after a hearing at which the Plaintiff ☒ appeared ☐ did not appear and the Defendant ☒ appeared ☐ did not appear.
The Court has **ORDERED** that the prior order issued _8·1_, 20_17_ be **MODIFIED** as follows:

_____
_____
_____
_____

☒ The expiration date of this order has been **EXTENDED** (See Below) ☐ **OTHER MODIFICATION(S)** _____

☒ **Firearm** surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION:<br>8·15·17 | EXPIRATION DATE OF ORDER:<br>8·14·18 at 4 PM. | SIGNATURE OF JUDGE<br>PRINT/TYPE NAME OF JUDGE<br>_M X anno |
|---|---|---|

TIME OF MODIFICATION: _12:10_ ☐ A.M. ☒ P.M.    NEXT HEARING DATE: 8·14·18 at 9:00 ☒ A.M. ☐ P.M. Courtroom _C_

**☐ D. MODIFICATION/EXTENSION**

☐ This order was issued after a hearing at which the Plaintiff ☐ appeared ☐ did not appear and the Defendant ☐ appeared ☐ did not appear.
The Court has **ORDERED** that the prior order issued _____, 20_____ be **MODIFIED** as follows::

_____
_____
_____
_____

☐ The expiration date of this order has been **EXTENDED** (See Below) ☐ **OTHER MODIFICATION(S)**

☐ **Firearm** surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: | EXPIRATION DATE OF ORDER:<br>at 4 P.M. | SIGNATURE OF JUDGE<br>PRINT/TYPE NAME OF JUDGE |
|---|---|---|

TIME OF MODIFICATION: _____ ☐ A.M. ☐ P.M.    NEXT HEARING DATE: _____ at _____ ☐ A.M. ☐ P.M. Courtroom

**☐ E. PRIOR COURT ORDER TERMINATED**

This Court's prior Order is terminated. Law enforcement agencies shall destroy all records of such Order.
☐ TERMINATED AT PLAINTIFF'S REQUEST.

| SIGNATURE OF JUDGE<br>PRINT/TYPE NAME OF JUDGE | DATE OF ORDER | TIME OF ORDER ☐ A.M.<br>☐ P.M. |
|---|---|---|
| WITNESS - FIRST OR CHIEF JUSTICE | A true copy, attest (Asst.) Clerk-Magistrate/ (Asst.) Register of Probate | |

FA-2A (5/15)

COURT COPY

```
                                                          1-1


                                      Volume: 1
                                      Pages: 1-17
                                      Exhibits: See Index


                    COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                      MUNICIPAL COURT DEPARTMENT
                                  OF THE TRIAL COURT

******************************
SAGE HUMPHRIES               *
vs.                          *    Docket No. 1701RO000181
MITCHELL TAYLOR MOORE        *
******************************
******************************
SAGE HUMPHRIES,              *
vs.                          *    Docket No. 1701RO000182
DUSTY BUTTON                 *
******************************

                RE: EXTENSION HEARING
                    TRIAL DAY 1
          BEFORE THE HONORABLE ROBERT J. MCKENNA, JR.

APPEARANCES:

For the Plaintiff:
Melcher Law P.C.
By: Maura Melcher, Esquire
800 Hingham Street - Suite 200N
Rockland, Massachusetts 02370
617.485.0859

For the Defendant:
(No information on docket.)


                            Edward W. Brooke Courthouse
                            Boston, Massachusetts
                            Courtroom C
                            August 14, 2018

Court Transcriber:  Lisa Marie Phipps, Certified Shorthand
Reporter, Registered Professional Reporter, Certified
Realtime Reporter
```

*LMP*

*Serving:  Massachusetts   Rhode Island*
*Connecticut   New Hampshire*
*LMPREPORTING@GMAIL.COM*
*(508) 641-5801*

1-2

I N D E X

WITNESS:

(None.)


EXHIBITS:

(None.)


FOR IDENTIFICATION:

(None.)

81

```
 1                P R O C E E D I N G S

 2    (Court called to order.)

 3    (9:51 a.m.)

 4         THE CLERK:  Calling the matter of

 5   Sage Nicole Humphries vs. Mitchell Taylor Moore

 6   and Sage Nicole Humphries versus -- do you want

 7   me to call them separately, Judge, or --

 8         THE COURT:  (Inaudible.)

 9         THE CLERK:  -- and Sage Nicole Humphries

10   vs. Dusty Button.

11         Ma'am, please raise your right hand.

12   State your name for the record.

13         MS. HUMPHRIES:  Sage Humphries.

14         THE CLERK:  Do you solemnly swear that

15   the testimony you are about to give in the matter

16   now in hearing will be the truth, the whole

17   truth, and nothing but the truth, so help you

18   God?

19         MS. HUMPHRIES:  I do.

20         THE CLERK:  Thank you.

21             SAGE HUMPHRIES, SWORN

22         THE CLERK:  And your name for the record?

23         MS. MELCHER:  Maura Melcher for Sage

24   Humphries.

25         THE COURT:  Good morning.
```

LMP Court Reporting   -   (508) 641-5801

1-4

1          Why don't you have a seat, ma'am, I'll be
2     right with you.
3          I take it you are asking that the order
4     be extended for a year?
5          MS. MELCHER:  Actually, yes, your Honor,
6     extended for a year.
7          Also, if it -- if there's any chance of
8     it being extended permanently, I don't know, if
9     you recall, your Honor, you sat in on this last
10    year and there was a -- it's a (indiscernible)
11    set of circumstances.
12         The Buttons, the couple, defendants, were
13    in their thirties.
14         Ms. Sage Humphries came to Boston to work
15    for the Boston Ballet when she was under age,
16    17 years old, and they basically -- Dusty Button
17    was a senior ballerina.
18         The couple took her under their wing.
19    They feed her drugs and basically --
20         THE COURT:  Some -- some days I don't
21    remember what I had for breakfast, but this one I
22    remember.
23         MS. MELCHER:  Yeah.
24         It was very -- not to go into all those
25    details again --

**LMP Court Reporting  -  (508) 641-5801**

83

1-5

```
 1          THE COURT:  Yeah.
 2          MS. MELCHER:  -- but since that time,
 3     Mr. -- Mr. Moore has put weapons on the internet
 4     for sale, violating the restraining order.
 5          They've had their personal assistant --
 6          THE COURT:  Has that been reported to the
 7     police?
 8          MS. MELCHER:  That was reported to the
 9     police.
10          Their personal assistant reached out to
11     ask her for her address.  She gave a
12     (indiscernible), address because it was under the
13     guise of sending some products, the products
14     never arrived.
15          She contacted her again -- the
16     assistant -- and said, Oh, I really need your
17     address again.
18          And so at that time she said this is
19     fishy.
20          THE COURT:  Has that been reported?
21          MS. MELCHER:  Yeah.
22          They said it wasn't a violation.
23          THE COURT:  Who?
24          MS. MELCHER:  The clerk magistrate of
25     Melrose Police Department.
```

1-6

```
 1          THE COURT:  On both of those?
 2          MS. MELCHER:  No.
 3          The second I reported it just recently,
 4    and they said it looks to be a violation, and
 5    they were going to get back to me.
 6          THE COURT:  Okay.  Why don't you have a
 7    seat.
 8          I'll be right with you.  Okay?
 9          MS. MELCHER:  I did -- one -- one other
10    thing, your Honor, if it's possible, I wanted to
11    add the other two addresses of the Boston Ballet
12    to the order, if it's possible?
13          THE COURT:  Yeah, right.  Well, I want to
14    put in any and all addresses for the Boston
15    Ballet.
16          MS. MELCHER:  Okay.
17          THE CLERK:  Judge, we haven't received
18    anything back as far as service.
19          (Pause.)
20          THE COURT:  Here you go, Diane.
21          THE CLERK:  Thank you.
22          In the matter of --
23          THE COURT:  I'm deleting -- I'm sorry, I
24    knew I was missing something.  Just give me one
25    second.  I forgot the other order.
```

1-7

1          (Pause.)

2          THE COURT:  Here you go.

3          (Pause.)

4          MS. MELCHER:  Your Honor, my client was

5     requesting permission to speak with her for one

6     minute.

7          Is that -- would that be acceptable?

8          THE COURT:  That's really not necessary.

9          MS. MELCHER:  Thank you.

10          THE CLERK:  In the matter of

11     Sage Nicole Humphries v Mitchell Taylor Moore,

12     Docket No. 1701RO181, after a hearing in which

13     the plaintiff appeared and the defendant did not

14     appear and was present on August 15 of '17, the

15     defendants are to stay away from all addresses of

16     Boston Ballet, including 539 Washington Street,

17     Boston, and 153 Needham Street, Newton, Mass.,

18     and the entire premises of each of these

19     addresses, as well as 19 Clarendon Street in

20     Boston and the entire building of that as well.

21          This order is extended permanently.

22          On Docket No. 1701RO182, after a hearing,

23     this order is extended permanently.

24          This order, the plaintiff appearing and

25     the defendant not appear, but the defendant being

**LMP Court Reporting  -  (508) 641-5801**

86

1-8

```
 1   present on the August 15, '17 date, the
 2   defendants are to stay away from all addresses of
 3   Boston Ballet, including 539 Washington Street,
 4   Boston, and 153 Needham Street, Newton, Mass.,
 5   the entire premises of each of these addresses,
 6   as well as the entire building on 19 Clarendon
 7   Street in Boston.
 8           Just have a seat, and we'll give you
 9   copies of yours.
10           THE COURT:  All right.  Counsel, thank
11   you.
12           I take it that you are all set, no
13   questions?
14           MS. MELCHER:  Correct, your Honor.
15           Thank you.
16           THE COURT:  All right.  I wish you
17   good luck, young lady, I hope this works out for
18   you.
19           MS. HUMPHRIES:  Thank you so much.
20           THE COURT:  And the other matter's -- so
21   we are clear on the record, obviously, the first
22   of the two, in my opinion, is a violation of the
23   order.
24           The second, also, in my humble opinion,
25   is also a violation of the order.
```

1-9

1        And there is a solid basis for the
2   evidence that I heard a year ago, as well as the
3   evidence that I heard here today of the -- what I
4   would consider to be two violations of the order.
5        And the order should be a permanent
6   order.
7            MS. MELCHER:  Thank you, your Honor.
8            MS. HUMPHRIES:  Thank you.
9            THE COURT:  Counsel, if you would, just
10  give Diana a moment or two, she'll have copies
11  for your client.
12           MS. MELCHER:  Yeah.  I'm going to -- I'll
13  sit right back there.
14           UNIDENTIFIED SPEAKER:  (Inaudible) right
15  back.
16           MS. MELCHER:  Okay.
17  (10:09 a.m. court in recess.)
18
19
20
21
22
23
24
25



**The Commonwealth of Massachusetts**
**OFFICE OF COURT MANAGEMENT, Transcription Services**

<u>**AUDIO ASSESSMENT FORM**</u>

---

*For court transcribers:* *Complete this assessment form for each volume of transcript produced, and include it at the back of every original and copy transcript with the certificate page, word index, and CD PDF transcript.*

---

**TODAY'S DATE:** 8/30/2022          **TRANSCRIBER NAME:** Lisa Phipps

**CASE NAME:** HUMPHRIES V. MOORE,  HUMPHRIES V. BUTTON

**DOCKET NUMBER:** 1701RO000181

**RECORDING DATE:** 8/14/2018          **TRANSCRIPT VOLUME:** 1 OF 1

(Circle one) TYPE:  CD  TAPE QUALITY: EXCELLENT GOOD FAIR (POOR)

(Circle all that apply) ISSUES (include time stamp):

```
   background noise XXXXXXXX          time stamp:_____
   low audio XXXXXXX                  _____
   low audio at sidebar               _____
   simultaneous speech                _____
   speaking away of microphone        _____
   other:_____          time stamp:_____
   _____       _____
   _____       _____
   _____       _____
```

COMMENTS: No log notes, spellings, or speaker IDs provided.

1-11

C E R T I F I C A T E

I, LISA MARIE PHIPPS, AN APPROVED COURT
TRANSCRIBER, DO HEREBY CERTIFY THAT THE FOREGOING IS A
TRUE AND ACCURATE TRANSCRIPT FROM THE AUDIO RECORDING
PROVIDED TO ME OF THE PROCEEDINGS IN THE MATTER OF
HUMPHRIES V. MOORE and HUMPHRIES V. BUTTON HELD ON
AUGUST 14, 2018.

I, LISA MARIE PHIPPS, FURTHER CERTIFY THAT
THE FOREGOING IS IN COMPLIANCE WITH THE ADMINISTRATIVE
OFFICE OF THE TRIAL COURT DIRECTIVE ON TRANSCRIPT
FORMAT.

I, LISA MARIE PHIPPS, FURTHER CERTIFY THAT
I NEITHER AM COUNSEL FOR, RELATED TO, NOR EMPLOYED BY
ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING
WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR
OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.


/s/ _Lisa Marie Phipps_____
NAME OF THE APPROVED COURT TRANSCRIBER
PROCEEDINGS RECORDED BY FTR AUDIO RECORDING
TRANSCRIPT PRODUCED STENOGRAPHICALLY FROM COMPUTER


August 30, 2022
DATE


LMP Court Reporting
347 Eliot Street
Ashland, Massachusetts 01721
BUSINESS ADDRESS


(508) 641-5801
BUSINESS TELEPHONE


lmpreporting@gmail.com
EMAIL ADDRESS


**LMP Court Reporting   -   (508) 641-5801**

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 1 of 2 | DOCKET NO. 1701 RO 182 | TRIAL COURT OF MASSACHUSETTS |

Plaintiff's Name: *Sage Humphries*

Defendant's Name & Address: *DUSTY BUTTON  445 ARTISAN WAY  APT 531  SOMERVILLE MA*

Alias, if any:

Name & Address of Court:
Boston Municipal Court Department
Central Division
Edward W. Brooke Courthouse
24 New Chardon Street
Boston, MA 02114

Date of Birth: *6-6-89*   Sex: ☐ M ☒ F   Place of Birth:
SS # (Last four digits only): XXX-XX-
Daytime Ph # (
Cell Phone # *617 501-6222*

**VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE** punishable by imprisonment or fine or both.

**A. THE COURT HAS ISSUED THE FOLLOWING ORDERS TO THE DEFENDANT:** (only those items checked shall apply)
☐ This Order was issued without advance notice because the Court determined that there is a substantial likelihood of immediate danger of abuse.
☐ This Order was communicated by telephone from the Judge named here: Police Dept. _____ Police Officer _____

☒ **1. YOU ARE ORDERED NOT TO ABUSE THE PLAINTIFF** by harming, threatening or attempting to harm the Plaintiff physically or by placing the Plaintiff in fear of imminent serious physical harm, or by using force, threat or duress to make the Plaintiff engage in sexual relations.

☒ **2. YOU ARE ORDERED NOT TO CONTACT THE PLAINTIFF**, in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least *150* yards from the Plaintiff even if the Plaintiff seems to allow or request contact. The only exceptions to this order are: a) contact as permitted in Sections 8, 9, 10 and 11 below; or b) by sending the Plaintiff, by mail, by sheriff or by other authorized officer, copies of papers filed with the court when that is required by statute or court rule.

☒ **3. YOU ARE ORDERED TO IMMEDIATELY LEAVE AND STAY AWAY FROM THE PLAINTIFF'S RESIDENCE**, except as permitted in Sections 8 and 10 below, located at *Wherever that may be.* or wherever else you may have reason to know the Plaintiff may reside. The Court also **ORDERS** you (a) to surrender any keys to that residence to the Police; (b) not to damage any belongings of the Plaintiff or any other occupant; (c) not to shut off or cause to be shut off any utilities or mail delivery to the Plaintiff; and (d) not to interfere in any way with the Plaintiff's right to possess that residence, except by appropriate legal proceedings.
☒ If this box is checked, the Court also **ORDERS** you to immediately leave and remain away from the entire apartment building or other multiple family dwelling in which the Plaintiff's residence is located.

☒ **4a. YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S WORKPLACE** located at *19 Clarendon St. Bos.*
☐ **4b. YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S SCHOOL** located at *The entire building*
☒ **5a. THE COURT ORDERS** that the Plaintiff's residential address not appear on the order.
☐ **5b. THE COURT ORDERS** that the Plaintiff's workplace address not appear on the order.
☐ **5c. THE COURT ORDERS** that the Plaintiff's school address not appear on the order.
☐ **6. CUSTODY OF THE FOLLOWING CHILDREN IS AWARDED TO THE PLAINTIFF:**

| NAME | AGE | NAME | AGE | NAME | AGE |
|---|---|---|---|---|---|
| | | | | | |

☐ **7. YOU ARE ORDERED NOT TO CONTACT THE CHILDREN LISTED ABOVE OR ANY CHILDREN IN THE PLAINTIFF'S CUSTODY LISTED BELOW**, either in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least _____ yards away from them unless you receive written permission from the Court to do otherwise.
☐ You are also ordered to stay away from the following school(s), day care(s), other: _____

| NAME | AGE | NAME | AGE | NAME | AGE |
|---|---|---|---|---|---|
| | | | | | |

☐ **8. VISITATION WITH THE CHILDREN LISTED IN SECTION 6 IS PERMITTED ONLY AS FOLLOWS** (may be ordered by Probate and Family Court only):
☐ Visitation is only allowed if supervised and in the presence of _____ (name) at the following times _____ to be paid for by _____ (name)
☐ Transportation of children to and from this visitation is to be done by _____ (name) (third party), and not by you.
☐ You may only contact the Plaintiff to arrange this visitation. Contact may be made only by ☐ phone, ☐ e-mail, ☐ text, ☐ other _____

☐ **9. YOU ARE ORDERED TO PAY SUPPORT IN THE FOLLOWING MANNER:**
☐ $_____ child support per _____ [week/month] by income withholding through the Department of Revenue. Defendant shall send payments to DOR, P.O. Box 55144, Boston, MA 02205-5144 until employer deductions begin.
☐ $_____ child support per _____ [week/month] directly to the Plaintiff by mailing payments to _____
☐ $_____ support for the Plaintiff per _____ [week/month] directly to the Plaintiff by mailing payments to _____
☐ Other orders: _____

☐ **10. YOU MAY PICK UP YOUR PERSONAL BELONGINGS** in the company of police at a time agreed to by the Plaintiff.

☐ **11. YOU ARE ORDERED TO COMPENSATE THE PLAINTIFF** for $_____ in losses suffered as a direct result of the abuse, to be paid in full on or before _____, 20___ ☐ by mailing directly to the Plaintiff ☐ through the Probation Office of this Court.

☒ **12. THERE IS A SUBSTANTIAL LIKELIHOOD OF IMMEDIATE DANGER OF ABUSE, YOU ARE ORDERED TO IMMEDIATELY SURRENDER** to the *Boston* Police Department or to the police officer serving this order all guns, ammunition, gun licenses and FID cards. Your license to carry a gun, if any, and your FID card, if any, are suspended immediately. *Bos. Pol. Dept.*
• You must immediately surrender the items listed above, and also comply with all other Orders in this case.
• Subject to certain exceptions, purchase and/or possession of a firearm and/or ammunition while this order is in effect is a federal crime. 18 U.S.C. §§ 922(g)(8) and 925.

☐ **13. ON THE NEXT SCHEDULED HEARING DATE**, the Court will hear testimony and other evidence regarding Section 9 of this order, which involves support for the Plaintiff and/or the minor children. You are hereby ordered to bring with you to the next scheduled hearing date any financial records in your possession (including your most recent tax return and your last four paystubs) that provide evidence of your current income.

☒ **14. YOU ARE ALSO ORDERED** *to surrender any all passwords + information pertaining to such dance academy stored information + is not to publicly speak*

The Plaintiff must appear at scheduled hearings, or this Order will expire. This Order may be extended or modified by order of the Judge. For more details, see the reverse.

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 2 of 2 | DOCKET NO. 170CRO182 | TRIAL COURT OF MASSACHUSETTS |

**15.** Police reports are on file at the _____ Police Department.

**16.** OUTSTANDING WARRANTS FOR THE DEFENDANT'S ARREST:
None per CART _____ (DOCKET #s) _____ None per CART (PCF #)
to _____

**17.** An imminent threat of bodily injury exists to the Plaintiff. Notice issued to _____ Police Department(s) by ☐ telephone ☐ other _____

## B. NOTICE TO LAW ENFORCEMENT

**1.** An appropriate law enforcement officer shall serve upon the Defendant in hand a copy of the Complaint and a certified copy of this Order (and Summons), and make return of service to this Court. If this box is checked ☐, the following alternative service may instead be made, but only if the officer is unable to deliver such copies in hand to the Defendant: _____

**2.** Defendant Information Form accompanies this Order.

**3.** Defendant has been served in hand by the Court's designee:   Name _____

| DATE OF ORDER 8.1.17 | TIME OF ORDER 10:44 ☐ A.M. ☑ P.M. | EXPIRATION DATE OF ORDER 8.15.17 at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE M. Terrna | Date |

The above and any subsequent Orders expire on the expiration dates indicated. Hearings on whether to continue and/or modify Orders will be held on dates and times indicated. In the event the Court is closed on the date the Order is to expire, the Order shall remain in full force and effect and the Hearing shall be continued until the next Court business date.

NEXT HEARING DATE 8.15.17 at 9:00 ☑ A.M. ☐ P.M.   Courtroom "C"

## C. MODIFICATION/EXTENSION

☑ This order was issued after a hearing at which the Plaintiff ☑ appeared ☐ did not appear and the Defendant ☑ appeared ☐ did not appear.

The Court has **ORDERED** that the prior order issued 8.1.17, 20___ be MODIFIED as follows:

_____

☑ The expiration date of this order has been **EXTENDED** (See Below) ☐ **OTHER MODIFICATION(S)**

☑ Firearm surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: 8.15.17 | EXPIRATION DATE OF ORDER: 8.14.18 at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE M. Terrna |
| TIME OF MODIFICATION: 12:10 ☐ A.M. ☑ P.M. | NEXT HEARING DATE: 8.14.18 at 9:00 ☑ A.M. ☐ P.M. Courtroom "C" | |

## D. MODIFICATION/EXTENSION

☑ This order was issued after a hearing at which the Plaintiff ☑ appeared ☐ did not appear and the Defendant ☐ appeared ☑ did not appear.

The Court has **ORDERED** that the prior order issued 8.15, 20 17 be MODIFIED as follows::

Re present at 8.15.17

D/e are to S/A from all addresses of Boston Ballet including 539 Washington Street Boston + 53 Needham Street, Newton, MA — The Entire premises of each address.

☑ The expiration date of this order has been **EXTENDED** (See Below) ☐ **OTHER MODIFICATION(S)**

☑ Firearm surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: 8.14.18 | EXPIRATION DATE OF ORDER: PERMANENT at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE M. Terrna |
| TIME OF MODIFICATION: 10:00 ☑ A.M. ☐ P.M. | NEXT HEARING DATE: Permanent at ___ ☐ A.M. ☐ P.M. Courtroom | |

## E. PRIOR COURT ORDER TERMINATED

☐ This Court's prior Order is terminated. Law enforcement agencies shall destroy all records of such Order.

☐ TERMINATED AT PLAINTIFF'S REQUEST.

| SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE | DATE OF ORDER | TIME OF ORDER ☐ A.M. ☐ P.M. |
| WITNESS - FIRST OR CHIEF JUSTICE | A true copy, attest (Asst.) Clerk-Magistrate/ (Asst.) Register of Probate | |

FA-2A (6/15)

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 1 of 2 | DOCKET NO. 1701 RO 181 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

Plaintiff's Name
Sage Humphries

Boston Municipal Court Department
Central Division
Edward W. Brooke Courthouse
24 New Chardon Street
Boston, MA 02114

Defendant's Name & Address
Mitchell Taylor Moore
445 Artisan Way
#531
Somerville, Ma.

| Alias, if any | | |
|---|---|---|
| Date of Birth | Sex ☐ M ☐ F | Place of Birth |
| SS # (Last four digits only) XXX-XX- | Daytime Ph # ( ) | |
| | Cell Phone # ( ) | |

**VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE** punishable by imprisonment or fine or both.

**A. THE COURT HAS ISSUED THE FOLLOWING ORDERS TO THE DEFENDANT:** (only those items checked shall apply)

☐ This Order was issued without advance notice because the Court determined that there is a substantial likelihood of immediate danger of abuse.

☐ This Order was communicated by telephone from the Judge named below to: Police Dept. _____ Police Officer _____

☐ **1. YOU ARE ORDERED NOT TO ABUSE THE PLAINTIFF** by harming, threatening or attempting to harm the Plaintiff physically or by placing the Plaintiff in fear of imminent serious physical harm, or by using force, threat or duress to make the Plaintiff engage in involuntary sexual relations.

☐ **2. YOU ARE ORDERED NOT TO CONTACT THE PLAINTIFF,** in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least **150** yards from the Plaintiff even if the Plaintiff seems to allow or request contact. The only exceptions to this order are: a) contact as permitted in Sections 8, 9, 10 and 11 below; or b) by sending the Plaintiff, by mail, by sheriff or by other authorized officer, copies of papers filed with the court when that is required by statute or court rule.

☐ **3. YOU ARE ORDERED TO IMMEDIATELY LEAVE AND STAY AWAY FROM THE PLAINTIFF'S RESIDENCE,** except as permitted in Sections 8 and 10 below, located at _wherever that may be_ _____ or wherever else you may have reason to know the Plaintiff may reside. The Court also ORDERS you (a) to surrender any keys to that residence to the Police; (b) not to damage any belongings of the Plaintiff or any other occupant; (c) not to shut off or cause to be shut off any utilities or mail delivery to the Plaintiff; and (d) not to interfere in any way with the Plaintiff's right to possess that residence, except by appropriate legal proceedings.

☐ If this box is checked, the Court also ORDERS you to immediately leave and remain away from the entire apartment building or other multiple family dwelling in which the Plaintiff's residence is located.

☒ **4a. YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S WORKPLACE** located at _19 Clarendon St. Bos._
☐ **4b. YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S SCHOOL** located at _The entire building_
☐ **5a. THE COURT ORDERS** that the Plaintiff's residential address not appear on the order.
☐ **5b. THE COURT ORDERS** that the Plaintiff's workplace address not appear on the order.
☐ **5c. THE COURT ORDERS** that the Plaintiff's school address not appear on the order.
☐ **6. CUSTODY OF THE FOLLOWING CHILDREN IS AWARDED TO THE PLAINTIFF:**

| N A M E | | A G E | | N A M E | | A G E | | N A M E | | A G E |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |

☐ **7. YOU ARE ORDERED NOT TO CONTACT THE CHILDREN LISTED ABOVE OR ANY CHILDREN IN THE PLAINTIFF'S CUSTODY LISTED BELOW,** either in person, by telephone, in writing, electronically or otherwise, either directly or through someone else, and to stay at least _____ yards away from them unless you receive written permission from the Court to do otherwise.
☐ You are also ordered to stay away from the following school(s), day care(s), other: _____

| N A M E | | A G E | | N A M E | | A G E | | N A M E | | A G E |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |

☐ **8. VISITATION WITH THE CHILDREN LISTED IN SECTION 6 IS PERMITTED ONLY AS FOLLOWS (may be ordered by Probate and Family Court only):** _____
☐ Visitation is only allowed if supervised and in the presence of _____ (name) at the following times _____
☐ Transportation of children to and from this visitation is to be done by _____ to be paid for by _____ (name)
☐ You may only contact the Plaintiff to arrange this visitation. Contact may be made by ☐ phone, ☐ e-mail, ☐ text, ☐ other _____ (name) (third party), and not by you.

☐ **9. YOU ARE ORDERED TO PAY SUPPORT IN THE FOLLOWING MANNER:**
☐ $_____ child support per _____ [week/month] by income withholding through the Department of Revenue. Defendant shall send payments to DOR at P.O. Box 55144, Boston, MA 02205-5144 until employer deductions begin.
☐ $_____ child support per _____ [week/month] directly to the Plaintiff by mailing payments to _____
☐ $_____ support for the Plaintiff per _____ [week/month] directly to the Plaintiff by mailing payments to _____
☐ Other orders: _____

☐ **10. YOU MAY PICK UP YOUR PERSONAL BELONGINGS** in the company of police at a time agreed to by the Plaintiff.
☐ **11. YOU ARE ORDERED TO COMPENSATE THE PLAINTIFF** for $_____ in losses suffered as a direct result of the abuse, to be paid in full on or before _____, 20____ ☐ by mailing directly to the Plaintiff ☐ through the Probation Office of this Court.

☒ **12. THERE IS A SUBSTANTIAL LIKELIHOOD OF IMMEDIATE DANGER OF ABUSE. YOU ARE ORDERED TO IMMEDIATELY SURRENDER** to the _Boston_ Police Department or to the police officer serving this order all guns, ammunition, gun licenses and FID cards. Your _Bos. Pol. Dept._ license to carry a gun, if any, and your FID card, if any, are suspended immediately.
  • You must immediately surrender the items listed above, and also comply with all other Orders in this case.
  • Subject to certain exceptions, purchase and/or possession of a firearm and/or ammunition while this order is in effect is a federal crime. 18 U.S.C. §§ 922(g)(8) and 925.

☐ **13. ON THE NEXT SCHEDULED HEARING DATE,** the Court will hear testimony and other evidence regarding Section 9 of this order, which involves support for the Plaintiff and/or the minor children. You are hereby ordered to bring with you to the next scheduled hearing date any financial records in your possession (including your most recent tax return and your last four paystubs) that provide evidence of your current income.

☒ **14. YOU ARE ALSO ORDERED** D is to surrender any & all personal information pertaining to P. including electronically stored information & any & all such in...

Plaintiff must appear at scheduled hearings of this Order will expire. The Defendant may appear, with or without attorney, to oppose any extension or modification of this Order. If the Defendant does not appear, the Order may be extended or modified as determined by the Judge. For good cause, either the Plaintiff or the Defendant may request the Court to modify this Order. The Court has discretion to grant or deny such a request.

| ABUSE PREVENTION ORDER (G.L. c. 209A) Page 2 of 2 | DOCKET NO. 1701 Ro 181 | TRIAL COURT OF MASSACHUSETTS |
|---|---|---|

- Police reports are on file at the_____Police Department.
☐ 16. OUTSTANDING WARRANTS FOR THE DEFENDANT'S ARREST:
None per CARI
to_____(DOCKET #s)    None per CARI    (PCF #)
Department(s) by ☐ telephone ☐ other_____Police

☐ 17. An imminent threat of bodily injury exists to the Plaintiff. Notice issued to_____

**B. NOTICE TO LAW ENFORCEMENT**
☐ 1. An appropriate law enforcement officer shall serve upon the Defendant in hand a copy of the Complaint and a certified copy of this Order (and Summons), and make return of service to this Court. If this box is checked ☐, the following alternative service may instead be made, but only if the officer is unable to deliver such copies in hand to the Defendant:_____
☐ 2. Defendant Information Form accompanies this Order.
☐ 3. Defendant has been served in hand by the Court's designee:   Name_____

| DATE OF ORDER 8.1.17 | TIME OF ORDER 10:38 ☒ A.M. ☐ P.M. | EXPIRATION DATE OF ORDER 8.15.17 at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE | Date |
|---|---|---|---|---|

The above and any subsequent Orders expire on the expiration dates indicated. Hearings on whether to continue and/or modify Orders will be held on dates and times indicated. In the event the Court is closed on the date the Order is to expire, the Order shall remain in full force and effect and the Hearing shall be continued until the next Court business date.

NEXT HEARING DATE 8·15·17 at 9:00 ☒ A.M. ☐ P.M.  Courtroom ―C―

☒ **C. MODIFICATION/EXTENSION**
☒ This order was issued after a hearing at which the Plaintiff ☒ appeared ☐ did not appear and the Defendant ☒ appeared ☐ did not appear.
The Court has ORDERED that the prior order issued 8 - 1, 20 17 be MODIFIED as follows:

_____
_____
_____

☒ The expiration date of this order has been EXTENDED (See Below) ☐ OTHER MODIFICATION(S)

☒ Firearm surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: 8·15·17 | EXPIRATION DATE OF ORDER: 8·14·18 at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE |
|---|---|---|
| TIME OF MODIFICATION: 12:10 ☐ A.M. ☒ P.M. | NEXT HEARING DATE: 8·14·18 at 9:00 ☒ A.M. ☐ P.M. Courtroom ―C― | |

☒ **D. MODIFICATION/EXTENSION**
☒ This order was issued after a hearing at which the Plaintiff ☒ appeared ☐ did not appear and the Defendant ☐ appeared ☒ did not appear.
The Court has ORDERED that the prior order issued 8·15, 20 17 be MODIFIED as follows::  Re present on 8·15·18

Dianne to S/A from all addresses of Boston Ballet include - 529 Washington Street, Boston and 453 Needham Street, Newton, MA - The entire premises of each address.

☒ The expiration date of this order has been EXTENDED (See Below) ☐ OTHER MODIFICATION(S)

☒ Firearm surrender order continued. The items surrendered under paragraph 12 will NOT be returned since doing so would present a likelihood of abuse to the Plaintiff.

| DATE OF THIS MODIFICATION: 8·14·18 | EXPIRATION DATE OF ORDER: PERMANENT at 4 P.M. | SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE |
|---|---|---|
| TIME OF MODIFICATION: 10:00 ☒ A.M. ☐ P.M. | NEXT HEARING DATE: Permanent at ☐ A.M. ☐ P.M. Courtroom | |

☐ **E. PRIOR COURT ORDER TERMINATED**
☐ This Court's prior Order is terminated. Law enforcement agencies shall destroy all records of such Order.
☐ TERMINATED AT PLAINTIFF'S REQUEST.

| SIGNATURE OF JUDGE PRINT/TYPE NAME OF JUDGE | DATE OF ORDER | TIME OF ORDER ☐ A.M. ☐ P.M. |
|---|---|---|
| WITNESS - FIRST OR CHIEF JUSTICE | A true copy, attest (Asst.) Clerk-Magistrate/ (Asst.) Register of Probate | |

FA-2A (5/15)



1    Marc J. Randazza, NV Bar No. 12265
     Ronald D. Green, NV Bar No. 7360
2    Alex J. Shepard, NV Bar No. 13582
     RANDAZZA LEGAL GROUP, PLLC
3    2764 Lake Sahara Drive, Suite 109
     Las Vegas, Nevada 89117
4    Telephone: 702-420-2001
     Email: ecf@randazza.com
5
6    Attorneys for Defendants
     Mitchell Taylor Button and Dusty Button
7

8                      UNITED STATES DISTRICT COURT

9                          DISTRICT OF NEVADA

10   GINA MENICHINO, ROSEMARIE              Case No. 2:21-cv-01412-ART-EJY
11   DeANGELO, DANIELLE GUTIERREZ,
     and JANE DOE 100, JULIET DOHERTY,
12   and JANE DOE 200
                                            DEFENDANTS' AMENDED
13            Plaintiffs,                    VERIFIED THIRD PARTY COMPLAINT
                                            AND COUNTERCLAIM
14       and,

15   SAGE HUMPHRIES,

16            Plaintiff/
              Counterclaim-Defendant,
17
     v.
18
19   MITCHELL TAYLOR BUTTON and
     DUSTY BUTTON
20
              Defendants/
21            Counterclaim Plaintiffs /
              Third Party Plaintiffs,
22
23       v.

24   MICHAEL S. HUMPHRIES, and MICAH
     L. HUMPHRIES,
25
              Third Party Defendants.
26
27

                                 - 1 -
                Defendants' Amended Third Party Complaint and Counterclaim
                            2:21-cv-01412-ART-EJY

                                            Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

1   **DEFENDANTS' VERIFIED THIRD PARTY COMPLAINT AND COUNTERCLAIM**

2       For their Third Party Complaint and Counterclaim[1] against Counterclaim Defendant Sage

3   Humphries ("Counter Defendant") and Third Party Defendants Michael S. Humphries and Micah

4   L. Humphries (collectively, "Third Party Defendants"), Counterclaim Plaintiffs Mitchell Taylor

5   Button and Dusty Button (collectively, "Counterclaimants") hereby allege as follows:

6                   **INTRODUCTION**

7       For decades, Dusty Button's reputation was beyond reproach as a world-renowned

8   ballerina, who, with her husband Mitchell Taylor Button, helped teach the art of ballet to thousands

9   of students from all backgrounds.

10      In an instant, however, someone with an agenda went on the attack, and the Buttons found

11  themselves facing outlandish accusations akin to the Satanic Panic. These accusations chiefly came

12  from the embittered or manipulated imagination of Counter Defendant Sage Humphries who, in

13  league with her abusive and manipulative parents, fabricated accounts of abuse and shopped them

14  to the press in order to gain her own spotlight of attention and false victimhood to further her

15  floundering dance career. Counter Defendant Humphries did so with the aid of Third Party

16  Defendants Michael and Micah L. Humphries, who carried a grudge against the Buttons for

17  unsuccessfully encouraging their daughter to break the pall of manipulation and abuse with which

18  they controlled Sage for years.

19      Plaintiffs Gina Menichino, Rosemarie DeAngelo, Danielle Gutierrez, Jane Doe 100, Juliet

20  Doherty, and Jane Doe 200 soon followed suit, seeing an opening which would allow them to

21  extort money from the Buttons and to advance their careers by attaching their name to the #MeToo

22  circuit. The difference is, these additions to the circuit are lying. Their stories are fabrications, and

23  in some cases they are literally impossible, so long as the space-time continuum remains intact.

24  ───────────────

25      [1] Although a counterclaim is typically asserted in an answer, Fed. R. Civ. P. 13 allows a counterclaim to be asserted in any pleading. Here, Defendants are asserting a third party complaint,

26  which is recognized as a proper pleading under Fed. R. Civ. P. 7. Because Counterclaimants' Motion to Dismiss remains pending, this is filed as a separate pleading in the interest of reaching

27  a just, speedy, and inexpensive determination of this action. *See* Fed. R. Civ. P. 1.

- 2 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

1    The truth is much different story, and perhaps one that is less interesting to the sleazy

2    tabloid press, which has printed every accusation verbatim – acting more as stenographers than

3    reporters. Of course, the Plaintiffs banked on that happening. While most of the Plaintiffs had little

4    to do with the Buttons, Sage Humphries was someone that Dusty and Mitchell knew very well.

5    The Buttons met Sage after she asked them for advice in growing her social media presence, as

6    she saw that they had been quite successful in that regard. Sage eventually befriended the Buttons.

7    Despite their attempts to support Sage and lead her to personal and artistic fulfillment, Sage often

8    charted her own course, making her own poor risky and drug-addled decisions which are

9    unsurprisingly absent from her complaint.

10    To the extent that Sage Humphries claims she was abused and sex trafficked, the Buttons

11    agree – however, this abuse and trafficking was not at their hands, but at the hands of a series of

12    older men. If Sage is truly the damaged flower she claims to be, the price should be paid – but it

13    should be paid by those who actually engaged in illegal and harmful acts with her.

14    For instance, Billionaire Daryl Allan Katz paid Sage at least $75,000.00 for her sexual

15    favors. Humphries was literally a prostitute to a billionaire, and her mother encouraged and

16    assisted in trafficking her to Katz.

17    Chase Finlay was a fellow dancer whose engagement was broken off after his fiancé

18    learned he was involved in a romantic and sexual relationship with Sage.

19    These names are surprisingly absent from Sage' tale of abuse and harm, however, because

20    her true aim was never to tell the truth, or to rectify any perceived harm – it was, and is, to punish

21    the Buttons and push her agenda in front of any news camera that she can find.

22    The Buttons never assaulted anyone. They never "groomed" anyone. It is with deep regret

23    that the Buttons file these counterclaims in order to clear their names and seek justice for the harm

24    that they have suffered. And, to the extent that there was damage here, they seek contribution from

25    the Third Party Defendants.

26

27

- 3 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and there is complete diversity of citizenship between the parties. This Court additionally possesses supplemental jurisdiction over Counterclaimants' claims pursuant to 28 U.S.C. § 1367, as the Court has original jurisdiction over Plaintiffs' claims.

2.      Venue is proper in this district because Counterclaimants reside in this judicial district and are already Defendants to this lawsuit. The Plaintiffs have consented to this jurisdiction and venue.

**THE PARTIES**

3.      Counterclaimant Mitchell Button is an individual residing in Las Vegas, Nevada and is a designer and builder of custom automobiles since 2010. Prior to that, Mitchell was a dance instructor at a small studio. Mitchell is the husband of Defendant Dusty Button.

4.      Counterclaimant Dusty Button is an individual residing in Las Vegas, Nevada and a renowned ballerina. Dusty is the wife of Defendant Mitchell Button.

5.      Upon information and belief, Counter Defendant Sage Humphries is an individual residing in the Commonwealth of Massachusetts.

6.      Upon information and belief, Third Party Defendant Michael S. Humphries is an individual residing in Los Alamitos, California.

7.      Upon information and belief, Third Party Defendant Micah L. Humphries is an individual residing in Los Alamitos, California.

**FACTUAL BACKGROUND**

8.      Counterclaimant Dusty Button is one of the world's preeminent ballet dancers who trained at the Jacqueline Kennedy Onassis School at the American Ballet Theater in New York.

9.      In 2008, she joined the Royal Ballet School in London.

10.     However, Dusty is best known for her work with the Boston Ballet, which she joined in 2012. One year later, in 2013, the Boston Ballet promoted her to soloist. In 2014, it promoted her to principal.

- 4 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

1    11.    Counterclaimant Mitchell Button was a dance instructor from 2007 until 2010 when

2    he moved to London, England to be with Counterclaimant Dusty Button.

3    12.    The Buttons are very prominent figures within the dance community. Dusty had a

4    significant social media presence with hundreds of thousands of Instagram followers and was

5    signed by Red Bull as its first ballet-athlete. She has additionally been featured in mainstream

6    publications, such as Glamour, and dance publications, such as Pointe Magazine, Dance Spirit

7    Magazine, and Dance Informa.

8    13.    In addition to his work designing and building custom automobiles, Mitchell helps

9    Dusty manage her career.

10    14.    Dusty's success and prominence in the dance community has encouraged the filing

11    of false claims against the Buttons, such as the ones detailed in this Counterclaim.

12    15.    The Buttons' prominence and success in the ballet world has caused false claims to

13    be asserted against them, in particular, those in this lawsuit.

14    16.    The initial Complaint in this case was filed on July 28, 2021 in the U.S. District

15    Court for the District of Nevada and featured two Plaintiffs, Sage Humphries and Gina Menichino,

16    and only one Defendant, Mitchell Button.

17    17.    Sage danced with Dusty at The Boston Ballet, and Menichino trained with Mitchell

18    at Centerstage Dance Academy in Tampa, Florida.

19    18.    After being served with the Complaint, Mitchell filed a Motion to Dismiss with this

20    Court on September 9, 2021. Rather than respond to the Motion, these Plaintiffs filed an Amended

21    Complaint on September 23, 2021, adding Rosemarie DeAngelo, Danielle Gutierrez, and Jane Doe

22    100 as Plaintiffs. The Amended Complaint additionally added Dusty Button as a Defendant.

23    19.    DeAngelo and Gutierrez were trained by Mitchell at Centerstage Dance Academy.

24    Jane Doe 100 allegedly danced for Urbanity Dance, which rented space from the Boston Ballet,

25    where Dusty was a principal dancer.

26

27

- 5 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

99

20.     On December 13, 2021, Plaintiffs filed their Second Amended Complaint, adding two new Plaintiffs to the Complaint, Juliet Doherty and Jane Doe 200. Mitchell Button and Dusty Button were still the only named Defendants.

21.     Doherty danced at the Panama Ballet Festival at the same time Dusty danced at the festival as its main guest star, while Jane Doe 200 was allegedly trained by Mitchell at Centerstage Dance Academy.

22.     All three iterations of the Complaint filed by Plaintiffs contain salacious and untrue allegations about Mitchell and Dusty Button, falsely accusing them of multiple sexual offenses against underage girls under their tutelage.

23.     The false accusations made by each Plaintiff to this lawsuit are readily available in the Second Amended Complaint that they filed and need not be repeated here. These allegations were not made against the Buttons because they were true. In fact, the Buttons never engaged in the conduct that Plaintiffs accuse them of committing, and they never abused any of the students entrusted to them in any way.

24.     Rather, Plaintiffs filed this case for the specific purpose of destroying the reputations of Dusty in the dance world and Mitchell in the car industry.

25.     Plaintiffs intended to, and have, utilized the media to assist them in their desire to destroy Counterclaimants' reputations. Thus far, prominent articles about this Nevada federal case have appeared in, among other publications, the Boston Globe, the New York Times, the Washington Post, CNN, Business Insider, and People Magazine.

26.     None of the so-called "reporters" writing about the case have approached these fantastic tales with the slightest bit of skepticism. The Buttons have not spoken to the press. Meanwhile, the Plaintiffs have made sure to dutifully feed their lies to the press in an effort to try this matter in the press, rather than in a court of law.

27.     In fact, Plaintiffs informed the media of this lawsuit before Defendants were even aware that they had been sued. Thus far, Plaintiffs' false allegations against the Buttons have had

- 6 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

1    the desired effect. Their reputations in the dance world, and the world-at-large, have been unjustly

2    ruined.

3    ***Sage Humphries***

4    28.    The Buttons freely admit to having a sexual relationship with Sage Humphries.

5    Specifically, the Buttons had a *consensual* sexual relationship with Plaintiff Sage Humphries after

6    she had reached the age of majority – *a sexual relationship that Sage Humphries initiated*.

7    29.    The Buttons admit that accepting the sexual overtures from Sage Humphries was

8    an act of poor judgment, but this was not readily apparent at the time. Nevertheless, there is nothing

9    illegal nor tortious about an adult woman propositioning the Buttons and the Buttons accepting

10    her request to have sex with her.

11    30.    Sage grew up with hyper-controlling conservative parents, Michael and Micah

12    Humphries. Sage therefore sought excitement in drug use and sexual promiscuity – something that

13    left her controlling parents perplexed and horrified.

14    31.    Michael and Micah Humphries sent Sage to Florida to dry out from her drug use

15    before she met the Buttons.

16    32.    After the Buttons met Sage Humphries, Sage' parents insisted that their daughter

17    live with the Buttons in order to reduce their expenses.

18    33.    Sage told the Buttons that her parents relied upon the Buttons for financial stability.

19    34.    Moreover, Sage Humphries later told Dusty Button that Sage' mother insisted that

20    her daughter befriend Dusty because Dusty was famous and had a large number of Instagram

21    followers. Sage' mother additionally expressed how impressed she was with the Buttons' home

22    when she visited it while her daughter was staying there.

23    35.    In hindsight, it was clear that Micah Humphries was "casing" the Buttons as a mark

24    for her next grift – a grifting pattern that had included trafficking her own daughter to a billionaire

25    (Katz) for financial gain.

26    36.    After Sage Humphries moved in with the Buttons, she almost immediately began

27    expressing her desire to have sexual relations with Mitchell and Dusty Button at the same time.

- 7 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

101

37.     On information and belief, Sage's advances were made with the advice, consent, and prodding of at least her mother, who assisted Sage in laundering her prostitution fees paid to her by Mr. Katz.

38.     The Buttons eventually acquiesced to Sage's advances and began a consensual "throuple" sexual relationship with Sage Humphries after Sage moved in with them. Their relationship was loving and supportive. *See, e.g.,* screenshots of video taken of Sage, Dusty, and Mitchell, ECF No. 54-2; photos of Sage with the Buttons, ECF No. 54-3; card written by Sage to Dusty, ECF No. 54-4. In fact, this relationship came about only after Sage's mother suggested that Sage move in with the Buttons to relieve Sage's parents from the obligation of paying for Sage's rent.

39.     The relationship between Sage and the Buttons appeared, at the time, to be one of mutual love, affection, and respect. Sage frequently expressed this love to the Buttons, telling them that they were the "loves of [her] life," and that she is "so in love with [both of them]." *See, e.g.,* Messages from Sage Humphries to the Buttons, ECF No. 54-5.

40.     Sage' parents were aware that the Buttons were involved in a consensual sexual relationship with their daughter and initially welcomed that relationship, as they saw it as advantageous to Sage' dance career and her ability to benefit in a pecuniary way.

41.     On at least one occasion, Sage' father walked in on the Buttons and his daughter engaging in consensual sexual relations at Sage' parents' house and said nothing other than to remind Sage that she had a dentist appointment. Later that night, Sage's entire family went out to dinner with the Buttons to celebrate Mitch's birthday. *See* Photograph, ECF No. 54-6.

42.     While Sage' parents did not seem to be concerned that their daughter was engaged in a consensual relationship with Dusty and Mitchell Button, they behaved in a manner that the Buttons sometimes found alarming. For instance, the Buttons witnessed the following while they knew Sage Humphries:

    a.     After Sage Humphries' mother, Micah Humphries, spent the night at the Buttons' Boston home, Micah filed a false police report against the Buttons, with the

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

preposterous allegation that they had hand grenades, land mines, and illegal firearms in their home, when they did not. Micah lied to the police, telling them that she was a neighbor who could see into the Buttons' apartment. The Buttons learned that the bizarre false report had been made by Micah because her telephone number was used to place the report.

b.    At age 18, Sage received at least $75,000.00 as compensation for being a prostitute for Daryl Katz, a well-known billionaire, who was 53 years old at the time. *See* Sage Humphries texts with Daryl Katz, ECF No. 54-7.

c.    Sage announced her plans to elope with Anthony Giovanni Deane, her 48-year-old boyfriend, when she was approximately 18 years old.

d.    Sage dated Chase Finlay, who she knew to be engaged with another woman.

e.    Sage Humphries' parents forced her to leave a fake "break up" voicemail for the Buttons. However, before Sage sent it, she informed the Buttons that her mother was forcing her to do it and to disregard its contents. *See, e.g.,* Messages from Sage Humphries to the Buttons, ECF No. 54-8.

f.    Sage Humphries' parents physically removed Sage Humphries from the Buttons' home against Sage's will. While doing so, they took and destroyed her driver's license and cellular phone, according to Sage herself.

g.    Later, Sage pleaded with the Buttons to come to her parents' house to "save" her from them. *See* Messages from Sage Humphries to the Buttons, ECF Nos. 54-8, 54-9, 54-10, 54-11, & 54-12. She told the Buttons that she intended to leave her family, and that her dad was "fucking up [her] money." *See* Messages from Sage Humphries to the Buttons, ECF No. 54-13.

h.    Her parents forced Sage into therapy, even though she clearly did not take it seriously or feel that she needed therapy and prodded her into speaking with an attorney to pursue spurious legal claims. *See, e.g.,* Message from Sage Humphries to the Buttons, ECF No. 54-14; Snapchat photo from Sage to the Buttons laughing about being in therapy, ECF No. 54-15.

- 9 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

i.  Sage Humphries bragged about meeting celebrities and fashion industry people and how they all wanted to "hook up" with her. In her fantasy world, partially created by her parents, who assisted in sex trafficking her, this was a reasonable belief.

43.  Sage's parents have a history of threatening Sage Humphries's romantic partners and tampering with her significant others.

44.  Eventually, Sage' parents kidnapped Sage, brought her back to California, and called in a false police tip, which caused the Buttons' home to be entered and searched by the police while they were away.[2] Sage's parents took away her phone and her car keys, and would not let her leave work. *See, e.g.,* Message from Sage Humphries to Dusty and Mitchell, ECF No. 54-16. Sage explained to the Buttons that her parents "know exactly how to crush anything I build up," and that she is "not a child, and ultimately [she] will do what [she] want[s]." *See* Message from Sage to the Buttons, ECF No. 54-17.

45.  After Sage Humphries's parents forced her away from the Buttons, Sage found ways to communicate with the Buttons that her mother could not trace. Specifically, because Sage's parents had taken away her mobile phone, she would communicate with the Buttons from her younger brothers' phone and from Sage's mother's phone, and would delete the messages after she sent them. Sage had previously bragged about this sort of creative work-around by referring to herself as "#SchemingSage". *See* ECF No. 54-18. Sage sent messages to the Buttons professing her continued love for them and begging them to help her escape her parents' clutches. *See, e.g.,* ECF No. 54-5. She even wrote and recorded songs about her love for the Buttons during this time. *See, e.g.,* lyrical transcription of "Don't Ever Leave Me," a song written by Sage for Dusty, ECF

---

[2]  Micah Humphries placed a telephone call to the Boston Police Department claiming that the Buttons' apartment contained dangerous weapons, specifically: 50 illegal automatic weapons, landmines, and hand grenades. None of this was true, and Micah knew that this was not true. She told the police that she was the Buttons' neighbor and could see into their apartment. The Buttons' apartment did not contain weapons or firearms of any kind. The only things close to a firearm in the Buttons' home were hobby airsoft guns, which they used for photography. The Buttons' dog walker let the police into the apartment, and the Buttons later confirmed that the telephone number that had called in the false report matched that of Micah Humphries.

- 10 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

1  No. 54-19; *see also* lyrical transcription of "Mr. Ferrari," a song written by Sage for Mitchell, ECF

2  No. 54-20. She sent messages to Mitchell telling him "I'm yours," and asking him to "[f]ucking

3  claim me." *See* Messages from Sage Humphries to Mitchell, ECF No. 54-21.

4      46.    However, it became clear that Sage was actually working with her parents to either

5  profit from or destroy the reputations of the Buttons.

6      47.    For some time, the Humphries spread false rumors about the Buttons in an attempt

7  to ruin their reputations.

8      48.    When the false rumors were unsuccessful in gaining the desired effect, they decided

9  to file this case and to use the press's coverage of this case to enflame opinion against Mitchell

10  Button and Dusty Button in retaliation for the Buttons' relationship with Sage Humphries.

11      49.    To that end, Sage has gone on a media blitz, telling her false tales of sexual assault

12  to anyone who will listen.

13      50.    On or about May 27, 2022, Sage appeared on a pre-taped segment of the nationally-

14  broadcast television show Good Morning America ("GMA").

15      51.    On the GMA segment, Sage Humphries made multiple false and defamatory

16  statements, alleging that Mitchell sexually assaulted her.

17      52.    Specifically, when asked "At what point do you say that the direction turned sexual

18  – it was totally a normal night?", Sage responded:

19      [Mitchell] suggested that we all watch a movie together. [The Buttons] thought we
        should all have one big group sleepover and bring the mattress out into the living
20      room. I thought again that that was uncomfortable, so we just hung out we watched
        a movie and Dusty had fallen asleep. I was falling asleep and when I was falling
21      asleep that was the first time that [Mitchell] violated me. And, you think that you're
        going to know to scream or to get up or to make a loud noise or do anything to stop
22      it from happening, but I just froze and my body just tightened and I just waited for
        it to be over.
23

24      53.    The events, which flatly accuse Mitchell of sexually assaulting Sage, are untrue.

25  Mitchell never assaulted Sage. The sexual conduct was initiated by Sage.

26      54.    When she made these statements, Sage had actual knowledge that her allegations

27  of Mitchell sexually assaulting her were false. She knew that she initiated this sexual conduct with

- 11 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

1  Mitchell and that she consented to it. She knew that Mitchell did not sexually assault her or engage

2  in any kind of non-consensual sexual conduct with her.

3  ***Juliet Doherty***

4  55.    At one point, Sage Humphries told the Buttons that Juliet Doherty, a dancer the

5  Buttons were aware of but did not know, was her "rival" and that she did not like Doherty.

6  56.    Dusty and Doherty each performed at a gala in Panama where Dusty was the guest

7  of honor. During their time in Panama, Doherty constantly flirted with Dusty, who did not

8  reciprocate.

9  57.    After discovering that the Buttons were staying for extra days at the hotel as a guest

10  of the host of the gala, Doherty told them that she wanted to stay with them in Panama for a few

11  extra days, which she did.

12  58.    While staying with the Buttons in Panama, Doherty continued her flirtations with

13  Dusty and often walked around while only wearing a towel.

14  59.    At an afterparty at the pool where Doherty claims her false allegations against the

15  Buttons occurred, Doherty propositioned Dusty, who refused. Doherty continued to follow Dusty

16  around the party, making Dusty uncomfortable and causing her to excuse herself to the restroom.

17  Doherty, who was over 21 years old at the time, also continued to consume alcohol and became

18  extremely drunk.

19  60.    At one point, Doherty was in a restroom at the pool area, where she got sick from

20  the alcohol and began throwing up. Dusty made sure that she was okay on multiple occasions.

21  Contrary to Doherty's allegations, the Buttons simply made sure she was okay. Nothing else

22  occurred that, or any other, night.

23  61.    Following the pool party where Doherty became drunk, Doherty continued to spend

24  time with the Buttons, and even travelled to an island in Panama with them. *See* Photos Taken

25  After the Pool Party, ECF No. 54-22.

26  62.    After the Buttons left Panama, they decided not to see, speak with, or communicate

27  with Doherty again in any way. However, Doherty continued to message them on social media.

- 12 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

RANDAZZA | LEGAL GROUP

63.     Upon information and belief, Doherty maintains a grudge against the Buttons for rejecting her advances, causing her to join the instant lawsuit and make false claims about what happened with the Buttons in Panama.

### Gina Menichino, Rosemarie DeAngelo, Danielle Gutierrez, and Jane Doe 200

64.     Menichino, DeAngelo, Gutierrez, and Jane Doe 200 appear to have been close friends since childhood. They grew up dancing together and were instructed by Mitchell.

65.     DeAngelo dated one of Mitchell Button's best friends when Mitchell was a youth.

66.     Menichino was not as talented as DeAngelo and Gutierrez and grew bitter that she was not able to spend more time with or receive as much attention from Mitchell.

67.     Menichino was additionally very bitter that Mitchell had not chosen her to be his personal assistant. She continued to text and to attempt to communicate with Mitchell after he moved to London to be with, and marry, Dusty.

68.     Gutierrez is "the woman scorned" in this matter – she was Mitchell's girlfriend for about one and one-half years. Mitchell ended their relationship when he moved to London to be with, and marry, Dusty. This resulted in Gutierrez lashing out against and attacking Mitchell. In fact, Mitchell maintains a scar on his stomach from her attack.

69.     Jane Doe 200 frequently discussed her attraction to Mitchell during the time he instructed the students at Centerstage, and openly fantasized about the "things [she] wanted to do to [Mitchell]." She had a falling out with Gutierrez after she and Mitchell began dating, but repaired her relationship with DeAngelo, Menichino, Gutierrez after Mitchell and Dusty began their relationship and moved to London together. Jane Doe 200 was bitter about Mitchell's relationship with Gutierrez and grew even more jaded when Mitchell began dating Dusty.

70.     DeAngelo, Menichino, Gutierrez, and Jane Doe 200 became even better friends after Mitchell moved to London for Dusty. Upon information and belief, these four Plaintiffs are participating in this lawsuit to ruin the reputations of the Buttons because of these perceived slights.

---

- 13 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

***Jane Doe 100***

71.     Defendants do not know Jane Doe 100. They have never seen, spoken to, taught, or met Jane Doe 100. In fact, they had never even heard of Jane Doe 100 until she became a plaintiff in this lawsuit. They have been informed of her actual name and have searched diligently for any indication at any time ever that they may have encountered her – and are unable to come up with even a sign that they have met her, much less had any sexual contact with her.

72.     Jane Doe 100's claims are not only implausible and untrue, but they are also impossible, as the timeline required for Jane Doe's allegations to be true is inconsistent with facts known to the Counterclaimants, including the fact that the building Jane Doe 100 claims to have been assaulted in would not have actually existed at the time of the alleged assault.

73.     Upon information and belief, Jane Doe 100 is, or was at one time, a close acquaintance of at least one of the Plaintiffs.

74.     Upon information and belief, one of more of the Plaintiffs encouraged Jane Doe 100 to levy false claims against Counterclaimants in an effort to lend needed credibility to their frivolous stories.

75.     As a result, Jane Doe 100 fabricated an account of assault for the purposes of leveraging the frivolous allegations into a monetary settlement and to harm Counterclaimants' reputation.

***This Lawsuit***

76.     These Plaintiffs only filed this case to ensure that the Buttons were covered extensively by the media and to ruin the reputations that they had built from spending years in the ballet and automotive industries.

77.     Most major media publications, including but not limited to, the New York Times, the Washington Post, and the Boston Globe, were aware of this case before the Buttons were aware of it.

78.     In order to further smear the Buttons' reputations, Plaintiffs included allegations from anonymous and unnamed third parties. These allegations were cleverly designed so that

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

1  nobody could reasonably refute them – after all, if one is accused by an unnamed, anonymous

2  party, it brings us into "proving a negative" territory.

3      79.    The Plaintiffs wrote up a false narrative, with false accusations, slapped it on

4  pleading paper, and sent it to the press. A mere "press release" might not have the same litigation

5  privilege as the "creative defamation" in this case. The press, all too happy to smear the Buttons'

6  reputation for clicks and kicks can rely on it and claim the fair report privilege.

7      80.    Given the decision in *St. Amant v. Thompson*, these lazy stenographers who call

8  themselves "journalists" are under no legal obligation to seek the truth, and in fact can consciously

9  avoid the truth if it fits their narrative. This, however, does not make it right.

10                    **CLAIMS FOR RELIEF**

11                  **FIRST CLAIM FOR RELIEF**
                      **Equitable Contribution**
12        **(Against Michael S. Humphries and Micah L. Humphries)**

13      81.    Counterclaimants reallege the allegations of the preceding paragraphs as if set forth

14  fully herein.

15      82.    Upon information and belief, Third Party Defendant Michael S. Humphries was

16  aware of the sexual abuse and sex trafficking engaged in by third parties against his daughter,

17  Plaintiff Sage Humphries, and encouraged and ratified Sage's conduct in furtherance of such abuse

18  and trafficking, which caused Sage harm.

19      83.    Upon information and belief, Third Party Defendant Micah L. Humphries was

20  aware of the sexual abuse and sex trafficking engaged in by third parties against her daughter,

21  Plaintiff Sage Humphries, and encouraged and ratified Sage's conduct in furtherance of such abuse

22  and trafficking, which caused Sage harm.

23      84.    Upon information and belief, Third Party Defendants Michael S. Humphries and

24  Micah L. Humphries used their positions of authority over Sage to pressure and encourage Sage

25  to engage in risky encounters with other men which they knew would put Sage in a position of

26

27

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

1  being sexually abused or sex trafficked, and which actually caused Sage to be sexually abused and

2  sex trafficked.

3      85.    Upon information and belief, Third Party Defendants Michael S. Humphries and

4  Micah L. Humphries did so because they believed that they could benefit financially through

5  Sage's sexual abuse and sex trafficking.

6      86.    In her Complaint against Counterclaimants, Plaintiff Humphries asserts that she

7  suffered damages including deprivation of income and benefits, loss of employment opportunities,

8  severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of

9  enjoyment of life, and damage to her reputation and career as a result of the Counterclaimants'

10  alleged actions and seeks an award of compensatory and punitive damages against

11  Counterclaimants.

12      87.    While Counterclaimants deny Sage's allegations, any actual injuries Sage has

13  sustained as alleged in her Complaint were jointly and/or severally caused by the actions of Third

14  Party Defendants Michael S. Humphries and Micah L. Humphries.

15      88.    Accordingly, Third Party Defendants Michael S. Humphries and Micah L.

16  Humphries are liable to Counterclaimants for equitable contribution

17              **SECOND CLAIM FOR RELIEF**
                   **Defamation Per Se**
18                  **(Against Humphries)**

19      89.    Counterclaimants reallege the allegations of the preceding paragraphs as if set forth

20  fully herein.

21      90.    Counterclaim Defendant Sage Humphries published false and defamatory

22  statements of and concerning Counterclaimant Mitchell Taylor Button as identified herein to third

23  parties – namely to journalists and television outlets.

24      91.    Counterclaim Defendant Sage Humphries's false and defamatory statements were

25  published to third parties without privilege.

26

27

- 16 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

110

92.    The gist of Counterclaim Defendant Sage Humphries's false and defamatory statements is that Counterclaimant Mitchell Taylor Button sexually assaulted Sage Humphries one night while watching a movie after Dusty Button had fallen asleep.

93.    She made these statements to multiple journalists, the identities of whom will be explored in discovery.

94.    She for certain made defamatory statements, on camera, on or about May 27, 2022 on Good Morning America.

95.    Upon information and belief, between April 11, 2022 and July 7, 2022, she additionally made defamatory statements to Gretchen Voss, a journalist with Boston Magazine. These statements and the Buttons' response to each of the allegations are filed at ECF Nos. 54-23 & 54-24.

96.    The factual statements alleged to support the defamatory gist of Counterclaim Defendant Sage Humphries's statements are false and defamatory.

97.    Counterclaim Defendant Sage Humphries published the false and defamatory statements with actual malice.

98.    Counterclaimant Mitchell Taylor Button is not a public figure.

99.    At the time Counterclaim Defendant Sage Humphries published her false statement, Sage had actual knowledge that her statements were false or had reckless disregard for their falsity because she had no objectively reasonable basis for believing her statements were true.

100.    In publishing the false and defamatory statements, Counterclaim Defendant Sage Humphries knowingly and intentionally misrepresented the truth and manufactured false information out of whole cloth.

101.    Counterclaim Defendant Sage Humphries's false and defamatory statements constitute slander *per se* in that they tend to injure Counterclaimant Mitchell Taylor Button in his trade, business, or profession, and they accuse Mitchell of serious illegal conduct.

102.    The subject of Counterclaim Defendant Sage Humphries's statements was no more than an issue of public curiosity.

- 17 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

103.    Counterclaim Defendant Sage Humphries's statements were of concern only to her and a small, specific audience.

104.    Counterclaim Defendant Sage Humphries's asserted public interest of informing the public about her false story of sexual assault has only remote proximity to the content of her complained-of statements.

105.    Counterclaim Defendant Sage Humphries published her statements solely as part of a private controversy with Counterclaimant Mitchell Taylor Button.

106.    In addition to being false, the information Counterclaim Defendant Sage Humphries published was of a private nature and did not become of interest to the public merely by her making the statements to a journalist.

107.    Damages to Counterclaimant Mitchell Taylor Button are presumed by law since the defamation is *per se*.

108.    Counterclaim Defendant Sage Humphries's conduct was willful and intentional.

109.    Counterclaimant Mitchell Taylor Button is entitled to an award of punitive damages to punish Counterclaim Defendant Sage Humphries for her unlawful conduct and to deter her from repeating such misconduct in the future.

110.    As a direct and proximate result of Counterclaim Defendant Sage Humphries's actions, Counterclaimant Mitchell Taylor Button suffered negative consequences including loss of employment opportunities and mental anguish.

111.    As a direct and proximate result of Counterclaim Defendant Sage Humphries's actions, Counterclaimant Mitchell Taylor Button has incurred attorneys' fees and costs for the protection of his interests.

112.    As a direct and proximate result of Counterclaim Defendant Sage Humphries's actions, Counterclaimant Mitchell Taylor Button has been injured in an amount exceeding $75,000.00.

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

**JURY DEMAND**

Defendants/Counterclaimants Mitchell Button and Dusty Button demand a jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants/Counterclaimants Mitchell Button and Dusty Button hereby pray that this Court enter judgment as follows:

A.    Entering judgment for Defendants on all claims made against them in the Second Amended Complaint;

B.    Entering an Order directing that Plaintiffs pay Defendants' reasonable attorneys' fees and costs pursuant to any applicable law;

C.    For actual damages in an amount to be proven at trial;

D.    For punitive damages in an amount to be proven at trial;

E.    For costs of suit;

F.    For pre-judgment and post-judgment interest on the foregoing sums;

G.    For such other and further relief as the Court deems proper; and

H.    That Counter Defendant be jointly and severally liable for any damages award, where applicable.

Dated: August 12, 2022.          Respectfully Submitted,

/s/ Alex J. Shepard
Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
Alex J. Shepard, NV Bar No. 13582
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

Attorneys for Defendants
Mitchell Taylor Button and Dusty Button

- 19 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

RANDAZZA | LEGAL GROUP

1    Case No. 2:21-cv-01412-APG-VCF

2    **VERIFICATION**

3        I, Mitchell Taylor Button, am a Counterclaimant and Third Party Plaintiff in the above-

4    captioned matter. I have reviewed the foregoing allegations in this Amended Verified Third Party

5    Complaint and Counterclaim, and I hereby declare under the penalty of perjury that the foregoing

6    allegations are true and correct to the best of my knowledge and understanding.

7        Dated: _08 / 12 / 2022_____.

8    _____

9    Mitchell Taylor Button

10

11

12    Case No. 2:21-cv-01412-APG-VCF

13    **VERIFICATION**

14        I, Dusty Button, am a Counterclaimant and Third Party Plaintiff in the above-captioned

15    matter. I have reviewed the foregoing allegations in this Amended Verified Third Party Complaint

16    and Counterclaim, and I hereby declare under the penalty of perjury that the foregoing allegations

17    are true and correct to the best of my knowledge and understanding.

18        Dated: _08 / 12 / 2022_____.

19

20    _____

21    Dusty Button

22

23

24

25

26

27

- 20 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

Case No. 2:21-cv-01412-APG-VCF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 12, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Alex J. Shepard
Alex J. Shepard

- 21 -
Defendants' Amended Third Party Complaint and Counterclaim
2:21-cv-01412-ART-EJY

Doc ID: 5f09174155aba80a318bc4052f1c329c231ebe3a

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SAGE HUMPHRIES, GINA MENICHINO, ROSEMARIE DeANGELO, DANIELLE GUTIERREZ, JANE DOE 100, JULIET DOHERTY, and JANE DOE 200 | Case No. 2:21-cv-01412-ART-EJY |
| Plaintiffs, | **ORDER** |
| v. | |
| MITCHELL TAYLOR BUTTON and DUSTY BUTTON, | |
| Defendants. | |

Before the Court is Plaintiff Sage Humphries' Motion for Sanctions Regarding Unlawfully Obtained Information (the "Sanctions Motion"). ECF No. 77.[1] The Court reviewed the Sanctions Motion, Defendants' Opposition (ECF No. 85), and Plaintiff's Reply (ECF No. 89). The Court has also considered Plaintiff's Motion to Supplement the Sanctions Motion. ECF No. 91.

**I.      RELEVANT BACKGROUND**

The instant litigation commenced in July 2021 when Plaintiffs Sage Humphries and Gina Menichino filed suit against Defendant Mitchell Taylor Button alleging violations of federal and state law. ECF No. 1 at 12-18. Since its inception, the case has been active with numerous motions filed and various parties entering and exiting the litigation, including the addition of Dusty Button as a Defendant. ECF No. 18. For purposes of addressing the Sanctions Motion, the Court does not recite an extended history of the litigation or the current case status.

A.      Humphries' Sanctions Motion.

The Sanctions Motion revolves around two abuse prevention orders issued on August 15, 2017 by the Boston Municipal Court Department of the Trial Court. ECF Nos. 77-3, 77-4. The Boston Court Orders required Defendants to:

---

[1]      The Sanctions Motion contains several attachments one of which is Exhibit G (FUS). ECF No. 77-8. Filed simultaneously with the Sanctions Motion was a Motion to Seal a Document in Support of Motion for Sanctions. ECF No. 78. The Motion to Seal seeks to seal Exhibit G. ECF No. 79. The Court granted the Motion to Seal at ECF No. 84.

"[S]urrender any and all personal information to the Boston Police Department pertaining to [Plaintiff Sage Humphries], including electronically stored information, and is not to publish such information."

*Id.* at 2.  In addition, the Boston Court reinforced its warning to Defendants of the consequences of any violation of its order:

> The defendants are to surrender any and all personal information to the Boston Police Department -- fine if you gave it to Attorney Melcher -- pertaining to the plaintiff, including electrically stored information, and that any such information is not to be published in any way at all.  I hope your clients heard me loud and clear… If there is any -- if there is any violation of any part of the order, including that part of the order, your clients will not like the results.  I don't want to sound antagonistic or threatening when I put it in that -- in those terms; I do want your clients to understand the seriousness with which the Court takes the entire order, including the provisions that I've set out…

ECF No. 77-2 at 65-66.

Humphries alleges that in the course of this litigation, Defendants repeatedly violated the Boston Court Orders by using and disseminating a digital copy of Humphries' iPhone and its data. ECF No. 77 at 9.  First, Humphries contends Defendants included text messages in court filings that could only have come from a copy of Humphries' iPhone that Defendants impermissibly possess.[2] *Id.*  Second, Humphries asserts Defendants sent text messages to a third party in which they acknowledged the source of the messages was a copy of Humphries' iPhone.  *Id.* at 9-10.  Third, Humphries generally contend that a large portion of the documents turned over by Defendants in discovery come from her iPhone.  *Id.* at 10.  Finally, Humphries accuses Defendants of improperly disseminating retained electronic information to the press over the course of the litigation.  *Id.*

Humphries argues that throughout the litigation she has "put Defendants on clear notice" that their actions were in violation of the Boston Court Orders.  *Id.*  She stated this contention (1) in her Motion to Dismiss Defendants' Counterclaims (ECF No. 61); (2) in her counsel's August 12, 2022 letter to Defendants' counsel explaining the violations of the Boston Court Orders and requesting Defendants cease disseminating information obtained from their impermissible possession of a copy of her iPhone (ECF No. 77-9); and (3) on August 31, 2022 at a meet and confer as well as during

---

[2]    Humphries asserts the text messages—communication between Humphries and multiple third parties—is irrelevant to the instant litigation and meant solely as a distraction from pending legal issues.  ECF No. 77 at 9.

the week that followed in which the parties communicated regarding Defendants' refusal to change strategy relating to their possession of the iPhone (ECF No. 77-11). *Id.* at 10-11.

Humphries cites controlling case law in support of her argument that the Court possesses inherent authority to issue sanctions for litigation misconduct specifically when a party has, in bad faith, violated a court order. *Id.* at 11 *citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002). Humphries contends Defendants have displayed a "brazen" flouting of the Boston Court Orders and that their bad faith conduct necessitates the imposition of sanctions. *Id.* at 12. Humphries argues even if the Court were to find that Defendants' conduct was not initially in bad faith, their actions have become willful as Humphries has repeatedly alerted Defendants that their actions are in violation of the Boston Court Orders to no avail. *Id.* at 12-13. She further argues Defendants' conduct has spiraled into harassment as the pictures leaked to the press have nothing to do with this litigation and are intended to cause her shame and mental torment. *Id.* at 13.

As a result of Defendants' misconduct, Humphries requests a Court order requiring Defendants to delete the copy of Humphries' iPhone and any of her personal data currently in their possession, and to cease publication of such information in this litigation. *Id.* at 14. In addition, Humphries requests an award of attorneys' fees and costs relating to the Sanctions Motion. *Id.*

B.    Defendants' Opposition.

Defendants oppose the Sanctions Motion arguing they are preserving evidence discovered in their possession after this litigation commenced (something they are required to do), and that evidence was produced in response to Humphries' discovery requests. ECF No. 85 at 2. Defendants argue the Sanctions Motion is brought as a ploy to prevent Defendants from presenting exculpatory evidence supporting their theory of the case, and the true motive behind the Sanctions Motion is the evolving narrative in the press. *Id.* Specifically, Defendants argue the nature of the evidence contained on the backup copy of Humphries' iPhone demonstrates Humphries was in a romantic and consensual relationship with Defendants and not the coercive, illegal relationship asserted in Humphries' pleadings. *Id.* at 3-4.

Defendants argue Humphries uploaded the backup copy of her iPhone onto an external hard drive belonging to Defendants long before this litigation commenced. *Id.* at 3. Defendants contend they did not realize they were in possession of the backup copy until they began searching for and preserving evidence related to this case. *Id.* Defendants assert that after the state court in Boston issued its Orders, they turned over everything they knew they had at that time to Humphries' counsel. *Id.* at 4. During discovery in this case, Defendants responded to a broad request for documents that included some of the documents Humphries now contends are covered by the Boston Court Orders. *Id.* Defendants accuse Humphries of trying to have it both ways: demanding broad swaths of discovery while seeking to deprive Defendants of the ability to adequately defend themselves. *Id.* at 5.

Defendants dispute Humphries' interpretation of the Boston Court Orders arguing nothing in the text of the Orders prevents them from retaining a copy of the evidence they currently possess. *Id.* Defendants take issue with Humphries' request that this Court order the destruction of the material currently in their possession when the state court in Boston did not order destruction, but "surrender" of the materials. *Id.* at 6. Defendants argue if they had destroyed the evidence at issue, they would be subject to sanctions for spoliation of relevant evidence. *Id.* at 9. In addition, Defendants argue that the evidence they possessed is relevant to claims made in this litigation by third parties and that they are legally prohibited from destroying such evidence. *Id.*

Defendants point to hypocrisy on Humphries' part. *Id.* at 10. Defendants ask the open question of why Humphries has not produced this exculpatory information to Defendants as she should have the original iPhone and its related information in her possession. *Id.* Relying on the doctrine of unclean hands, Defendants allege that Humphries' hands are "utterly filthy" as they aver she has not turned over any of the information that she now asks Defendants to destroy. *Id.* at 10-11.

Defendants further dispute that they are in any way responsible for the Daily Mail's use of photographs. *Id.* at 12. Defendants repeat the assertions that they were under a legal obligation to produce the documents in discovery, and the fact that the Daily Mail obtained and published information contained in a public court filing is not Defendants' fault. *Id.* at 12-13.

Finally, Defendants argue this Court is not the proper forum to consider the kind of motion that Humphries brings. *Id.* at 7. Defendants contend that the state court in Boston is the only court with jurisdiction to interpret and enforce its orders and, by extension, to hear this Motion. *Id.* Defendants invoke the *Younger* abstention doctrine arguing the facts of this case satisfy the four criteria of the *Younger* test.[3] Defendants state: "(1) the Boston Municipal Court proceedings are ongoing as the last orders by that court is continuing in nature, (2) the application of the Abuse Prevention Order is an important state interest, (3) either party could proceed to enforce or object to the Abuse Prevention Order in the state court, and (4) an order from this Court finding the state court's order defective would have the effect of enjoining that court's enforcement of its own order." *Id.* at 7-8. Defendants ask this Court to abstain from hearing and deciding the Sanctions Motion. *Id.* at 8.

      C.    <u>Humphries' Reply</u>.

Humphries disputes Defendants' assertion that she is asking for the "permanent destruction of any relevant evidence." ECF No. 89 at 4. Instead, Humphries counters she is only trying to prevent additional public dissemination of irrelevant and sensitive information. *Id.* at 4-5. Humphries contends Defendants' idea that the word "surrender" somehow did not require them to turn over all electronically stored information in their possession is illogical. *Id.* at 6. Humphries questions why, if Defendants sought to obtain communications between Humphries and her purported sexual partners, Defendants have not served the appropriate discovery requests on Humphries. *Id.* at 8-9. Humphries speculates the reason Defendants have not done so is because they already have the information they need and/or want in their possession. *Id.* at 9, n.1. Humphries argues that Defendants have weaponized the simple process of filing public court documents to shame and intimidate Humphries throughout the litigation. *Id.* at 9.

Humphries questions why—if Defendants are being truthful in their assertions that they did not know they possessed the backup copy of the iPhone until the commencement of this litigation—

---

[3]      Defendants cite Ninth Circuit guidance regarding the four factors to be considered in a *Younger* abstention analysis: "[A] district court must abstain from adjudicating an issue in a civil action where the state proceedings: (1) are ongoing; (2) implicate important state interests; (3) provide an adequate opportunity to raise federal questions; and (4) the federal court action would enjoin the proceeding, or have the practical effect of doing so." *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 882 (9th Cir. 2011).

they did not alert Humphries' counsel to this revelation and discuss next steps. *Id.* at 10. Humphries states "Defendants surely knew once they discovered the copy of Sage's iPhone backup that their continued possession of that backup might violate the Boston Court's clear order." *Id.* Humphries lambasts Defendants saying that they took no precautionary measures; rather, they published the materials they knew they were not entitled to retain. *Id.* Humphries also questions the "unclean hands" argument made by Defendants pointing out they have never asked for many of the materials that are at issue here. *Id.* at 10-11.

Finally, Humphries argues this Court has jurisdiction to grant the relief sought. *Id.* at 11. Humphries contends she is not seeking the imposition of criminal penalties or civil contempt upon Defendants; instead, she is asking the Court to use its inherent powers to ensure the litigation proceeds in a good faith manner that does not serve as a tool to undermine Humphries' privacy rights. *Id.* Humphries also disputes the applicability of the *Younger* doctrine. *Id.* Humphries argues (1) there is no ongoing litigation in the state court in Boston, (2) there is no important state interest at stake since this dispute is between private citizens, and (3) the state court in Boston is not impeded in any way from performing its judicial functions. *Id.* at 11-12.

## II.    DISCUSSION

### A.    This Court Has Jurisdiction Over the Sanctions Motion.

Courts within the Ninth Circuit are empowered to take judicial notice of proceedings in other courts that are "within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal citations and quotation marks omitted). Federal Rule of Evidence 201 allows district courts to judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. It is a general rule that most matters involved in the discovery process are "left to the sound discretion of the district judge." *Asea, Inc. v. Southern Pacific Transportation Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981) (citation omitted); *DFR Apparel Co., Inc. v. Triple Seven Promotional Products, Inc.*, Case No. 2:11–cv–01406–APG–CWH, 2014 WL 1268689, at *1 (D.

Nev. Mar. 26, 2014) ("Courts have broad discretionary power to control discovery …."), *citing Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 2014).

Here, the Boston Court Orders have a direct and substantial correlation to the matters at issue in the Sanctions Motion as well as this litigation. Under its well-established power to oversee discovery, the Court takes judicial notice of the Orders issued by the Boston Municipal Court and finds the scope of the Court's jurisdiction encompasses the narrow form of relief sought by Humphries.

Further, *Younger* abstention is inapplicable. The Ninth Circuit instructs federal courts are forbidden "from unduly interfering with pending state court proceedings that implicate 'important state interests.'" *Potrero Hills Landfill, Inc.*, 657 F.3d at 881 *citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). A review of the four requirements that must be met, reveal no basis for abstention. There is nothing filed with this Court demonstrating Boston Municipal Court proceeding be presently ongoing (albeit Humphries states she "intends to enforce her rights under the abuse prevention orders in Massachusetts …" (ECF No. 89 at 11)). The issues presented in this case are not state interest, but even if they are, the Boston state court proceedings do not provide an adequate opportunity to raise federal questions as the matter in that court was far more limited than what is presently alleged. Finally, nothing in this federal court action will enjoin the Boston Court proceeding or have the practical effect of doing so. In sum, the Court concludes that *Younger* abstention is not warranted here.

  B. <u>Defendants' Disclosure of Documents on Humphries' iPhone Was a Willful Violation of the Boston Municipal Court Orders</u>.

The Supreme Court in *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), delivered the definitive summary of the bases on which a federal court may levy sanctions under its inherent power. The Court reiterated the federal courts' inherent power to levy sanctions, including attorneys' fees, for "willful disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *Id.* at 766 (internal quotation marks and citations omitted). A district court's inherent power to levy sanctions is "both broader and narrower than other means of imposing sanctions." *Chambers*, 501 U.S. at 32.

The content and meaning of the Boston Court Orders are clear. Defendants were instructed to "surrender any and all personal information to the Boston Police Department pertaining to [Humphries], including electronically stored information, and … not to publish such information." ECF No. 77-3 at 2.[4] The state court reiterated its Order stating that "any such information is not to be published in any way at all." ECF No. 77-2 at 65-66. The Court finds no ambiguity in the meaning of these statements.

Defendants claim they dutifully complied with the Boston Orders as they turned over everything they had that was encompassed by the Orders to Humphries' state court counsel. ECF No. 85 at 4. Defendants contend they did not realize the information that is the subject of the instant Sanctions Motion was in their possession until the commencement of this litigation and upon their searching for and gathering of evidence that might be needed. *Id.* at 3. Defendants assert the copy of Humphries' iPhone in Defendants' possession was uploaded by Humphries prior to the unraveling of the relationship between Humphries and Defendants. *Id.*

The Court does not agree with Defendants' arguments. First, that Humphries allegedly downloaded the content of her iPhone onto a hard drive belonging to Defendants before the Boston Municipal Court issued its Orders is irrelevant to compliance with those Orders. There is nothing in the plain text of the Orders (or that may be implied from the text) that refers to an exception for information voluntarily provided by Humphries at any time, let alone before the Orders were issued. Second, Defendants' argument that the Boston Court Orders "[do] not prohibit the Buttons from possessing a copy of the documents" is unpersuasive. *Id.* at 5. The text of the Orders demonstrates retention of Humphries' iPhone or its contents would violate those Orders. Indeed, a contrary interpretation would defeat the intended purpose of an abuse prevention order.

Third, Defendants point to the legal duty for a party both before and during pending litigation to preserve evidence. *Id.* at 8 *citing Patton v. Wal-Mart Stores, Inc.*, Case No. 2:12-cv-02142-GMN-VCF, 2013 WL 6158467, at *6 (D. Nev. Nov. 20, 2013). The Court does not dispute the duty to preserve evidence; however, that duty does not excuse Defendants' actions in this litigation.

---

[4]    The state court also permitted the material at issue to be handed over to Humphries' state court counsel. ECF No. 77-2 at 65-66.

Defendants state they discovered their possession of materials at issue after this litigation started and did not disclose documents until they were requested by Humphries. *Id.* at 9. But the Boston Court Orders did not cease to be effective once this litigation commenced. That is, upon discovery of the materials, Defendants should have contacted Humphries (through counsel) to discuss the discovery and potential surrender of the materials with provision for appropriate future use in this litigation. If agreement could not be reached, the assistance of the Court should have been sought. However, there is no basis for simply ignoring the Boston Court Orders. This principle applies equally to Defendants' arguments that the information relates to claims made by third parties. *Id.* at 9-10. Nothing in the Boston Court Orders made an exception for any future hypothetical litigation.

Fourth, Defendants' arguments that Humphries exhibited bad faith and unclean hands in discovery are not germane to the instant Sanctions Motion. *Id.* at 10-12. If Defendants believe that Humphries is acting in bad faith, Defendants should seek relief from the Court. Fifth, Defendants' dispute over how certain information wound up in the hands of certain press outlets is irrelevant. *Id.* at 12-13. Defendants acknowledge they filed material on the public docket that was covered by the Orders issued by the Boston Municipal Court. *Id.* at 13.

Despite all of the above, the Court does share Defendants' concerns regarding Humphries' request for an order requiring "Defendants to delete Sage's iPhone backup (and any other personal data of Sage's they illegally possess) and not to publish or use such information, including in this litigation, including at trial." ECF No. 77 at 14. Indeed, in her Reply, Humphries seems to retreat and agree that "permanent destruction of any relevant evidence" is not required. ECF No. 89 at 4. Instead, she asks "that only relevant materials are produced in this action and that only non-confidential materials are subject to public disclosure." *Id.* at 4, 8.

The Court finds there is nothing in the Orders issued by the Boston Municipal Court requiring the material at issue is to be destroyed. Further, Defendants indicate that their theory of the case will require the use of information and documents at issue. ECF No. 85 at 3-4. However, Defendants' cannot continue possession of the materials. The Boston Court Orders are clear that these materials are not to be in Defendants' possession. Because the Boston Municipal Court is entitled to preclusive effect under Massachusetts law, the Court will not allow the relitigation of the issue decided through

this proceeding. *See Southeast Resource Recovery Facility Authority v. Montenay International Corp.*, 973 F.2d 711, 714 (9th Cir. 1992). This decision "is mandated by the fundamental purposes of the full faith and credit statute, the promotion of comity and the conservation of judicial resources." *Id. citing Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 84 (1984); *Allen v. McCurry*, 449 U.S. 90, 95–96 (1990) *citing Worldwide Church of God v. McNair*, 805 F.2d 888, 890-92 (9th Cir. 1986).

Based on the foregoing, the Court finds Defendants must turn over all materials in their possession, custody or control, including electronically stored information, that relates in any way to the materials addressed by the Boston Court Orders. The delivery of materials must be to Humphries' current counsel within thirty (30) days of the date of this Order. No copies shall be retained by Defendants. No use of the materials, if any, in the future is to be filed on the docket of this case unless under seal. No other publication of such materials is to occur unless permitted by Court order. Defendants may, however, as they deem appropriate, seek production of information and materials they previously turned over or that is turned over in accordance with this Order for use in defense of the claims asserted. Such production must be made under a strict confidentiality order. Use of the materials must comply with this Order. If production is objected to, the parties may bring the issue to the Court for resolution. Indeed, discovery closes on March 29, 2023. ECF No. 96 at 1. This gives the parties ample time to continue the discovery process and, if necessary, bring disputes regarding the use of documents and information to the Court's attention.

### III.    ORDER

IT IS HEREBY ORDERED that Plaintiff Sage Humphries' Motion for Sanctions Regarding Unlawfully Obtained Information (ECF No. 77) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendants must within thirty (30) days of the date of this Order deliver to Humphries' current counsel all materials in their possession, custody or control, including electronically stored information, that relates in any way to the materials addressed by the Boston Court Orders. No copies of such information is to be retained by Defendants. No use of the materials, if any, in the future is to be filed on the docket of this case unless under seal. No other publication of such materials is to occur unless permitted by Court order.

IT IS FURTHER ORDERED that Defendants' surrender of all materials to Humphries' counsel does not preclude future use of such information in Defendants' defense of this action; provided, however, that use must either be agreed upon or approved by the Court.

IT IS FURTHER ORDERED that Humphries' counsel's request for an award of fees and costs associated with bringing the Sanctions Motion is GRANTED.

IT IS FURTHER ORDERED that Humphries' counsel must submit a memorandum of fees and costs associated with bringing the Sanctions Motion detailing the activities, hours spent (in tenths of hours), and the rate charged by each attorney and non-attorney who worked on the Motion and related filings. Appropriate redactions from billing records for attorney client privilege and/or work product may be made for the public filing with non-redacted copies of such records filed under seal. Humphries' counsel shall submit its memorandum within fourteen (14) days of this Order. Defendants have 14 days to file a response, if any is desired. No reply shall be permitted.

IT IS FURTHER ORDERED that Plaintiff Sage Humphries' Motion to Supplement Motion for Sanctions (ECF No. 91) is DENIED as moot.

DATED this 1st day of December, 2022.


_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

1  Marc J. Randazza, NV Bar No. 12265
   Ronald D. Green, NV Bar No. 7360
2  Alex J. Shepard, NV Bar No. 13582
   RANDAZZA LEGAL GROUP, PLLC
3  2764 Lake Sahara Drive, Suite 109
   Las Vegas, Nevada 89117
4  Telephone: 702-420-2001
   Email: ecf@randazza.com
5
6  Attorneys for Defendants
   Mitchell Taylor Button and Dusty Button
7

8                  UNITED STATES DISTRICT COURT

9                       DISTRICT OF NEVADA

10 GINA MENICHINO, ROSEMARIE            Case No. 2:21-cv-01412-ART-EJY
   DeANGELO, DANIELLE GUTIERREZ,
11 JANE DOE 100, JULIET DOHERTY, and
   JANE DOE 200
12                                             DECLARATION OF
13         Plaintiffs,                     MITCHELL TAYLOR BUTTON

14     and,

15 SAGE HUMPHRIES,

16         Plaintiff/
17         Counterclaim Defendant,

18     v.

19 MITCHELL TAYLOR BUTTON, and
   DUSTY BUTTON,
20
           Defendants/
21         Counterclaim Plaintiffs /
           Third Party Plaintiffs,
22
23     v.

24 MICHAEL S. HUMPHRIES, and
   MICAH L. HUMPHRIES,
25
26         Third Party Defendants.

27

                              - 1 -
                 Declaration of Mitchell Taylor Button
                     2:21-cv-01412-APG-EJY

Doc ID: 349665086f47bfcdcf028e8c22e80004abe9c1aa

## DECLARATION OF MITCHELL TAYLOR BUTTON

I, Mitchell Taylor Button, declare:

1.    I am over the age of 18 years and am fully competent to make this Declaration. The facts set forth in this Declaration are within my personal knowledge and are true and correct to the best of my knowledge and belief.

2.    I am a Defendant, Counterclaim Plaintiff, and Third Party Plaintiff in the above-captioned action.

3.    I was first served with process in this case on July 29, 2021. This was the first time we understood that Plaintiff Sage Humphries ("Sage") wished to sue us for damages, considering that Sage did not seek any damages at the time she sought abuse prevention orders against us.

4.    Immediately thereafter, we began searching our records, hard drives, computers, electronic devices, and files for any documents which would be relevant in the case. We preserved any potentially relevant documents. We understood that we had a duty to do this.

5.    During that search, my husband and I discovered that we had in our possession an iPhone backup of Sage Humphries's phone on one of our disused external hard drives.

6.    The backup was created by Sage herself; Sage was 7 days late returning her old device, causing the service provider to charge her account over $1,000. It became urgent, then, for her to save her data and return the old phone to remedy the charge on the account.

7.    Sage uploaded her iPhone backup to our personal hard drive in order to preserve the content from her phone before she returned it to her service provider upon receiving her upgrade.

8.    Sage never asked that we delete the iPhone backup data until after this case began.

9.    In 2017, Sage, with the help of her parents, commenced proceedings in Boston Municipal Court seeking an Abuse Prevention Order against Dusty and me.

10.    I believe that these proceedings were primarily instigated by Sage's parents to ensure that Sage could never speak to us again.

- 2 -
Declaration of Mitchell Taylor Button
2:21-cv-01412-APG-EJY

Doc ID: 349665086f47bfcdcf028e8c22e80004abe9c1aa

11.    By that point, we were frustrated with how our relationship with Sage ended, and with the accusations Sage's parents made against us. We particularly felt this way because Sage's parents' false claims were directly contradicted by Sage's actions in continuing to communicate with us after her parents had kidnapped her. We did not intend to fight the Abuse Prevention Order, and only participated to the extent necessary to try to clear our names of any allegations of wrongdoing.

12.    The Boston Municipal Court ordered that we surrender all documents in our possession relating to Sage; we understood this to mean that we had to provide them with copies of everything we held.

13.    We provided a copy of all of the documents relating to Sage which we knew to be in our possession on a hard drive to our attorney, who provided them to Sage's attorney. Based upon the court's written order and what the judge stated in the hearing, we believed that this meant that we had complied completely with the court's requirements.

14.    I have reviewed the Daily Mail article which was attached to Sage's Motion for Sanctions. While we did speak with that reporter prior to the article being published, we did not provide him with copies of any of the pictures or documents from Sage's iPhone backup. I believe that the author obtained those images from this Court's public docket or from other news articles.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  10 / 06 / 2022  .

_____
Mitchell Taylor Button

- 3 -
Declaration of Mitchell Taylor Button
2:21-cv-01412-APG-EJY

Doc ID: 349665086f47bfcdcf028e8c22e80004abe9c1aa

1  Marc J. Randazza, NV Bar No. 12265
   Ronald D. Green, NV Bar No. 7360
2  Alex J. Shepard, NV Bar No. 13582
   RANDAZZA LEGAL GROUP, PLLC
3  2764 Lake Sahara Drive, Suite 109
   Las Vegas, Nevada 89117
4  Telephone: 702-420-2001
   Email: ecf@randazza.com
5
6  Attorneys for Defendants
   Mitchell Taylor Button and Dusty Button
7

8                    **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

10   GINA MENICHINO, ROSEMARIE              Case No. 2:21-cv-01412-ART-EJY
11   DeANGELO, DANIELLE GUTIERREZ,
     JANE DOE 100, JULIET DOHERTY, and
12   JANE DOE 200
13             Plaintiffs,                  **DECLARATION OF**
                                            **DUSTY BUTTON**
14      and,

15   SAGE HUMPHRIES,

16             Plaintiff/
17             Counterclaim Defendant,

18      v.

19   MITCHELL TAYLOR BUTTON, and
     DUSTY BUTTON,
20
21             Defendants/
               Counterclaim Plaintiffs /
22             Third Party Plaintiffs,

23      v.

24   MICHAEL S. HUMPHRIES, and
     MICAH L. HUMPHRIES,
25
26             Third Party Defendants.

27

- 1 -
Declaration of Dusty Button
2:21-cv-01412-APG-EJY

Doc ID: 44abf23be835ced086f52d26eba60e1266d6c5e0

**DECLARATION OF DUSTY BUTTON**

I, Dusty Button, declare:

1.     I am over the age of 18 years and am fully competent to make this Declaration. The facts set forth in this Declaration are within my personal knowledge and are true and correct to the best of my knowledge and belief.

2.     I am a Defendant, Counterclaim Plaintiff, and Third Party Plaintiff in the above-captioned action.

3.     Mitchell was first served with process in this case on July 29, 2021. This was the first time we understood that Plaintiff Sage Humphries ("Sage") wished to sue us for damages, considering that Sage did not seek any damages at the time she sought abuse prevention orders against us.

4.     Immediately thereafter, we began searching our records, hard drives, computers, electronic devices, and files for any documents which would be relevant in the case. We preserved any potentially relevant documents. We understood that we had a duty to do this.

5.     During that search, my husband and I discovered that we had in our possession an iPhone backup of Sage Humphries's phone on one of our disused external hard drives.

6.     The backup was created by Sage herself; Sage was 7 days late returning her old device, causing the service provider to charge her account over $1,000. It became urgent, then, for her to save her data and return the old phone to remedy the charge on the account.

7.     Sage uploaded her iPhone backup to our personal hard drive in order to preserve the content from her phone before she returned it to her service provider upon receiving her upgrade.

8.     Sage never asked that we delete the iPhone backup data until after this case began.

9.     In 2017, Sage, with the help of her parents, commenced proceedings in Boston Municipal Court seeking an Abuse Prevention Order against Mitchell and me.

10.     I believe that these proceedings were primarily instigated by Sage's parents to ensure that Sage could never speak to us again.

- 2 -
Declaration of Dusty Button
2:21-cv-01412-APG-EJY

Doc ID: 44abf23be835ced086f52d26eba60e1266d6c5e0

11.    By that point, we were frustrated with how our relationship with Sage ended, and with the accusations Sage's parents made against us. We particularly felt this way because Sage's parents' false claims were directly contradicted by Sage's actions in continuing to communicate with us after her parents had kidnapped her. We did not intend to fight the Abuse Prevention Order, and only participated to the extent necessary to try to clear our names of any allegations of wrongdoing.

12.    The Boston Municipal Court ordered that we surrender all documents in our possession relating to Sage; we understood this to mean that we had to provide them with copies of everything we held.

13.    We provided a copy of all of the documents relating to Sage which we knew to be in our possession on a hard drive to our attorney, who provided them to Sage's attorney. Based upon the court's written order and what the judge stated in the hearing, we believed that this meant that we had complied completely with the court's requirements.

14.    I have reviewed the Daily Mail article which was attached to Sage's Motion for Sanctions. While we did speak with that reporter prior to the article being published, we did not provide him with copies of any of the pictures or documents from Sage's iPhone backup. I believe that the author obtained those images from this Court's public docket or from other news articles.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 10 / 06 / 2022            .

_____
Dusty Button

- 3 -
Declaration of Dusty Button
2:21-cv-01412-APG-EJY

Doc ID: 44abf23be835ced086f52d26eba60e1266d6c5e0

RANDAZZA | LEGAL GROUP

3/21/23, 8:52 AM                    Boston ballerina Dusty Button breaks her silence to deny sex assault allegations | Daily Mail Online

**Privacy Policy** | **Feedback**    f **Follow 22.1M**                    **Tuesday, Mar 21st 2023** 7AM **40°F**    10AM **42°F**    **5-Day Forecast**

# Daily Mail
### .com

| Home | U.K. | Politics | Sports | Showbiz | Australia | Femail | Health | Science | Money | Video | Travel | Shop |

Breaking News    Russia-Ukraine    US Economy    Joe Biden    Donald Trump    Bryan Kohberger    Prince Harry    World News    Most read                    Login

ADVERTISEMENT

# EXCLUSIVE: Prima ballerina turned pariah Dusty Button, who is accused of grooming and sexually abusing young dancers with her husband, breaks her silence to blast 'victim' Sage Humphries as a liar - with photos and texts proving they were in a 'throuple'

○ Site ○ Web  [ Enter your search ]

ADVERTISEMENT

- Boston prima ballerina Dusty Button, 33, was accused last year of sexual abuse along with her husband Mitchell Button, 37
- Seven women have come forward since July 2021 to level detailed allegations of assault, sex trafficking and even child rape
- Dusty is now breaking her silence to blast her accusers as fame-hungry liars - telling DailyMail.com: 'I've done nothing wrong'
- 'It's disgusting, the allegations make zero sense. All I've ever done is try to protect kids in this industry,' she says
- Sage Humphries, 24, claims she was coerced into becoming a sex slave for the pair who wrapped her in spandex and violated her with sex toys
- Dusty says she and Mitchell were in a consensual 'throuple' with Humphries, providing photos and texts, and labels her 'ballet's own Amber Heard'
- Mitchell Button says their lives have 'flatlined' with sponsors, friends and business partners shunning them

By BEN ASHFORD FOR DAILYMAIL.COM

**PUBLISHED:** 11:25 EDT, 7 September 2022 | **UPDATED:** 12:01 EDT, 7 September 2022

**39**
View comments

FEMAIL TODAY

▶ **Taylor Swift leaves fans in awe as she DIVES head first into the stage and 'swims' during the first performances of her Eras tour**

https://www.dailymail.co.uk/news/article-11174203/Boston-ballerina-Dusty-Button-breaks-silence-deny-sex-assault-allegations.html                    1/49

3/21/23, 8:53 AM                    Boston ballerina Dusty Button breaks her silence to deny sex assault allegations | Daily Mail Online

She is the prima ballerina turned pariah accused of grooming and sexually abusing a string of young proteges in the dance world's answer to #MeToo.

But Dusty Button, one-time poster girl of the Boston Ballet and social media sensation, has broken her year-long silence to blast her accusers as fame-hungry liars - telling DailyMail.com in an exclusive interview: 'I've done nothing wrong.'

Seven women have come forward since July 2021 to level detailed allegations of assault, sex trafficking and even child rape at Button, 33, and her husband Mitchell Button, 37.

▶

The bombshell complaint depicts star-struck young performers seduced by promises of fame and career advancement only to find their lives and finances controlled by the 'seasoned predators'.

Sage Humphries, a 24-year-old dancer for the Boston Ballet and the most prominent accuser, claims she was coerced into becoming a virtual sex slave for the pair whose kinky appetites included wrapping her in spandex and violating her with sex toys.

Another woman, a minor at the time, alleges she was drugged and raped at gunpoint in a room filled with guns. An ex-girlfriend recalls Mitchell, a former dance instructor, placing a knife to her throat and threatening a man with an AK-47.

Their complaint - spanning 71 pages in a complaint filed last December in Nevada - are as harrowing as they are unthinkable in the demure, bunned-up world of ballet.

**EXCLUSIVE**  **Katie Holmes' daughter Suri, 16, is already applying to college - but dad Tom Cruise WON'T get a say in where she goes because 'he has no part in her life'**

▶ **Padma Lakshmi, 52, and her daughter Krishna Thea Lakshmi-Dell coordinate in LBDs for the 11th Annual Blossom Ball in NYC**

▶ **Pamela Anderson, 55, flashes her toned legs in a mini skirt as she supports Shawn Mendes, 24, at the launch of his Tommy Hilfiger collab**

▶ **Kanye West, 45, joins 'wife' Bianca Censori, 28, for a church service in LA - after not being charged for 'throwing' a female photographer's cellphone**

▶ **Activewear or loungewear? Try BOTH! The best-selling joggers on Amazon are available in dozens of great colors and prints - and they're now marked down with prices starting at just $15**
SHOPPING

ADVERTISEMENT



▶ **Inside Amanda Bynes' spiral from romcom queen to psych hold: How she ended up roaming streets naked after struggle with substance abuse**

▶ **The die-hard support system behind Bruce Willis' health battles: Inside the actor's blended family as his ex-wife Demi Moore AND spouse Emma come together**

▶ **Princess of Wales recycles her white $2.4k Alexander McQueen blazer to meet the business taskforce**

134

3/21/23, 8:53 AM                    Boston ballerina Dusty Button breaks her silence to deny sex assault allegations | Daily Mail Online

backing her Early
Years campaign

EXCLUSIVE   'Prince
Andrew just wanted
out.' How the Duke of
York went from
stonewalling to
reaching reported
$12million settlement
with Virginia Roberts

Nicole Scherzinger
shows off her incredible
figure in a pink bikini
top and black bottoms
as she poses beside
beau Thom Evans in
Australia

ADVERTISEMENT

**Boston prima ballerina Dusty Button, 33, was accused last year of sexual abuse along with her husband Mitchell Button, 37**

'Changed my life!' This
TikTok viral sleep spray
formulated with
melatonin and lavender
and chamomile oils has
helped millions sleep
better - and it's less
than $6
SHOPPING

'Trust me, don't even do
it': Blac Chyna issues
warning over 'crazy'
facial fillers as she
returns to get them

135

**Seven women have come forward since July 2021 to level detailed allegations of assault, sex trafficking and even child rape, including dancer Sage Humphries (pictured)**

dissolved amid MAJOR body make-under

Everything YOU need to know about Succession's final season: NOLA OJOMU reveals wildest fan theories about fake scenes, who dies and more

Keanu Reeves honors late Lance Reddick with a blue ribbon at John Wick: Chapter 4 premiere in LA alongside Natalia Tena and Rina Sawayama

Emotional Martina Navratilova admits adoption plans with her wife have been 'put on hold' after cancer battle - as she reveals she's had the all clear

Meryl Streep's girls! Grace Gummer and sister Louisa Jacobson twin in black at Succession premiere... after star welcomed baby with Mark Ronson

Bruce Willis is seen with all five of his daughters as well as his ex-wife Demi Moore and current wife Emma during his 68th birthday celebration

Yeah baby! Alexander Skarsgard CONFIRMS he welcomed his first child with girlfriend Tuva Novotny as he attends Succession season four premiere

Nicholas Cage quaffs blood cocktails, delivers zany one-liners and is burnt to a crisp in Dracula adaptation with Nicholas Hoult in new Renfield teaser

Florence Pugh reveals being paired with Andrew Garfield as Oscar presenters was an 'accident'... with the stars now in talks to star in a new movie

ADVERTISEMENT

**Ashley Roberts looks glamorous in a sparkling pink dress as she lounges on a boat and enjoys a night out in snaps from her recent Dubai trip**

**Make-up free Sophie Turner wraps up in a patchwork leather jacket as she joins husband Joe Jonas for a romantic alfresco lunch in New York City**

**Who is Bruce Willis' wife of 14 years Emma Heming? A look into the 44-year-old model's life as she celebrates her Die Hard actor husband's 68th birthday**

**'Notice a difference after just one use!' Boasting millions of TikTok reviews, the slimming 'V-line' mask can reduce the size of your chin and smooth your neck while reducing jowls - for just $10**
SHOPPING

**Bill and Ted's Alex Winter supports his former comedy co-star Keanu Reeves at the Los Angeles premiere of John Wick: Chapter 4**

**BFFs on tour! Ben Affleck and Matt Damon step out together in NYC ahead of the**

**Photos show Humphries with the Buttons. The Buttons say the relationship with consensual and loving. Humphries claimed she had come under the couple's spell after she joined Boston Ballet as an apprentice in 2016**

**Sage Humphries and Mitchell Button are pictured cuddling in bed together. Mitchell alleges that it was Humphries who hinted to him in a text that she wanted a threesome with Dusty and it was Humphries who initiated their first sexual encounter by suggesting the trio should try a 'massage chain'**

▶ release of their new Nike film Air

▶ Britney Spears rocks VERY low-rise short shorts and skimpy crop top in latest dancing video... and writes rant about her 'f***ing beautiful life'

▶ Sexual abuse and bullying over her sexuality: A look at Ruby Rose's troubled childhood - after she vanished on 'traumatic' 37th birthday

▶ Who are Bruce Willis' five daughters? From movie star to musician - as family come together to celebrate his birthday after dementia diagnosis

▶ Jeff Goldblum, 70, looks effortlessly stylish in a black leather jacket while taking a stroll in Beverly Hills with his wife Emilie Livingston, 40

ADVERTISEMENT

**Dusty is now breaking her year-long silence to blast her accusers as fame-hungry liars - telling DailyMail.com: 'I've done nothing wrong'**

They are also completely false, Dusty and Mitchell tell DailyMail.com in an explosive riposte in which they compare the $133 million lawsuit to Johnny Depp's years-long battle to clear his name - and label Humphries 'ballet's own Amber Heard.'

'The first time any of this was mentioned I was in the middle of teaching 250 children. With the language they used, they wanted people to believe that I raped children,' says Dusty.

'It's disgusting, the allegations make zero sense. All I've ever done is try to protect kids in this industry. I know 100 percent that we've never done anything wrong.'

Mitchell, Dusty's husband of seven years and one-time manager, says their lives have 'flatlined' with sponsors, friends and business partners shunning them after the story broke last summer.

'The headlines were like a dagger to the back,' he says. 'Minor raped at gunpoint by a famous ballerina and her husband. Every media outlet in the world would pick that up, why wouldn't they?

- Florence Pugh, 27, heaps praise on her ex-boyfriend Zach Braff, 47, while revealing hilarious text he sent her before Jimmy Fallon appearance

- Donald Glover's awkward one-night stand was recreated in Swarm with Rory Culkin's full-frontal nude scene

- David Beckham cuts a glum figure as he watches son Romeo crash out of London Senior Cup quarter-final

- Want smoother skin without the needles? This popular anti-aging cream contains an ingredient touted as a natural alternative to Botox - and it's now reduced to just $10
SHOPPING

- Ed Sheeran breaks down as he speaks about wife Cherry Seaborn's health and the death of best friend Jamal Edwards in first look at documentary

- 'I'm starting work again next week': Sam Neill, 75, reveals he's been remission for eight months after chemotherapy for blood cancer

- Body doubles for two VERY A-list actors shoot scenes for Apple TV+ thriller Wolves... but can YOU guess who they're standing in for?

- Brian Cox poses with wife Nicole Ansari-Cox at Succession season four premiere as she shows her support for Iranian woman with activist sash

- Florence Pugh dares to bare in flirty necktie top as she brings her parents and grandmother to NYC screening of A Good Person

- Jamie Foxx 'calls police after he's targeted for £33,000 in elaborate scam while filming Cameron Diaz comeback movie Back In Action'

'Look at Amber Heard. She was recorded and proven in court to have abused Johnny Depp multiple times while he didn't reciprocate. But somehow she's a victim still and everyone will band behind her because she's a female.

'And that's kind of where we're at now. It's just about trying to survive. Both of us would have taken our own lives months into this if we weren't together. It feels like you're drowning and someone's got their boot on your face.'

With 300,000 Instagram followers and a brand ambassador role with Red Bull – the first ever for a ballerina-athlete - Dusty was among the most idolized dancers on the planet until last summer.



**Dusty and Mitchell compare their $133 million lawsuit to Johnny Depp's years-long battle to clear his name - and label Humphries 'ballet's own Amber Heard'**

Her path to greatness was atypical in the regimented ballet world. While her rivals had trained from a young age and attended prestigious, pricey schools, Dusty didn't start classes until she was 10 or 11.

When she earned a scholarship to the storied Royal Ballet School in London, her family, friends and church congregation in Myrtle Beach, South Carolina raised funds for her to go.

In 2012 Dusty won a spot at the renowned Boston Ballet despite auditioning in basketball shoes and sweatpants. Within two years she was principal ballerina with a huge following on Instagram, showcasing dazzling routines to hip hop music.

'It ruffled a few feathers, that's for sure. I think that explains a lot of this,' she reflects.

▶ **Getting stuck in! Duke of Edinburgh shows off his DIY skills as he uses a power drill and plants a tree during a visit to Farnham Riverside**

▶ **Casablanca chic! Queen Máxima of the Netherlands stuns in colourful dress as she visits the Moroccan city**

▶ **Troubled Star Wars Ewok Paul Grant, 56, was pictured snorting coke in 2014 after blowing his fortune on booze and prostitutes - as tributes flood in**

▶ **'I never believed I could sleep this well!' Shoppers say consuming Persian Saffron in a sleep gummy 20 minutes before bed 'worked miracles' (and it's scientifically proven too)**

▶ **Lilly Becker looks effortlessly chic in a white tweed jacket as she giggles and smokes a cigarette with a pal after enjoying a lavish meal in Mayfair**

ADVERTISEMENT

**Boston Ballet dancer Sage Humphries (left) and professional dancer Gina Menichino (right) together filed the lawsuit against Mitchell Button in July 2021, naming Dusty as a co-conspirator**

▶ 'It was funny!' Adam Sandler reveals he didn't think Chris Rock went too far with his jokes about Will and Jada Pinkett Smith in his comedy special

▶ Hilary Duff enjoys a day at Disneyland with her two eldest children to celebrate her son Luca's 11th birthday in adorable new snaps

▶ Amanda Bynes 'placed on psychiatric hold after being found roaming the streets naked and alone' - after troubled actress pulled out of public appearance

▶ Where's Melinda? Married At First Sight's Layton spotted with friends in Bondi and his bride is nowhere to be seen

▶ Ben Affleck and Matt Damon are a dapper duo as they join their costar Viola Davis for a screening of Air in New York City

▶ John Wick: Chapter 4 becomes highest-rated installment in Keanu Reeves' blockbuster franchise as critics praise the film as one of the greatest action movies of all time

▶ Cyndi Lauper shares intimate photos from her first week in Australia as she gets a manicure while touring the country supporting Rod Stewart

▶ Toni Collette reveals why she finds filming sex scenes uncomfortable following split with husband David Galafassi

▶ Clean up on a GREAT deal! This popular Bissell vacuum with over 62,000 five-star ratings offers three functions in one - and it costs just $33.95!
SHOPPING

▶ Luke Combs and wife Nicole are expecting baby number TWO later this year in the fall: 'Joining the 2 under 2 club!'

**Dusty, Mitchell and Sage Humphries are pictured together. Dusty says her sole focus for now is poring over the thousands of texts, photos and documents she says will disprove her accusers**

ADVERTISEMENT

**Among the thousands of photos Dusty says are evidence to disprove her accusers is a pictured of Humphries and Dusty sharing an intimate moment. Mitchell and Dusty allegedly promised to mentor then 19-year-old Humphries and make her a social media star**

▶ **Jeremy Strong shrugs off being branded 'f*cking annoying' by Brian Cox over his method acting on set... as they share a hug and a laugh at Succession season four premiere**

▶ **The Bachelor: Zach Shallcross' promise of a 'no sex' Fantasy Suite backfires as one more woman is eliminated before the Season 27 finale**

▶ **The Isley Brothers lawsuit: Ronald Isley accused of cutting older brother Rudolph Isley out of legendary musical group's profits**

▶ **Sarah Snook is pregnant! Succession star confirms she's expecting first child as she debuts bump at show's season four premiere**

▶ **1000-Lb Sisters star Amy Slaton files for divorce from estranged husband Michael Halterman less than a year after welcoming their second child**

▶ **Gene Simmons and Shannon Tweed are**

accompanied by their children and son-in-law while attending the Los Angeles premiere of John Wick: Chapter Four

'People can see themselves in a piece like this': Great Expectations actor hits back at claims casting people of color in period dramas is 'woke'

The Voice: Cait Martin, 32, gets a FOUR-CHAIR TURN with her powerful performance of Harry Styles' As It Was... but picks Kelly Clarkson

'This is pain relief gold in a jar': More than 80,000 Amazon shoppers swear by this $15 muscle relief cream packed with healing natural ingredients and say it works 'miracles' - save 20% now

'Not cheapo jewelry': Bethenny Frankel puts her impressive bikini body on display and shows off her $90K watch in TikTok video

ADVERTISEMENT

Sage Humphries is seen kissing Mitchell on the cheek and cuddling up to him. The Buttons claim they were in a consensual 'throuple' with Humphries

Humphries' parents Micah and Michael are pictured with Dusty, Mitchell, Sage and friends.The Buttons say the true culprits are Sage's 'hyper controlling and conservative' parents who resented their daughter being involved in a 'throuple' and pressed her to pursue false legal claims

► Melanie Griffith, 65, looks stylish in a turtleneck sweater and denim jeans while shopping for a new pair of shoes in Beverly Hills

► Jennifer Hudson puts comfort first as she arrives to Jimmy Kimmel Live in mini dress and purple SLIPPERS

► Sam Neill left mortified by resurfaced James Bond screen test after he unsuccessfully auditioned for the role of 007: 'It's cruel to play that'

► Kendall Jenner sizzles in a figure-hugging red minidress in the latest Messika 2023 brand campaign alongside Elvis star Alton Mason

► RHOBH's Kyle Richards hides slender frame in hoodie and sweatpants as she accessorizes with $20K Hermes bag and $820 Hermes sneakers... after denying using Ozempic

► Former Married At First Sight producer reveals the only sure-fire way to become famous on the show - and how much is really edited

► This Succession schmuck's a softie at heart! Kieran Culkin sweetly kisses his wife Jazz Charton at premiere of fourth season in New York City

► Hot new couple alert! Sean Penn's ex-wife Leila George cuddles with Animal Kingdom co-star Ben Robson on a beach in Sydney

► Say goodbye to hidden charges and overdraft fees and hello to rewards! Plus this convenient cash card gives you pre-sale access to Drake tickets 48 HOURS before general release

► Jewel talks about her abusive father, poverty

**Snapchat photos from Humphries sent to Dusty show her sending loving messages. 'Come get me baby...I need to be in your arms,' one reads**

The first two accusers, Sage Humphries and Gina Menichino, 26, filed suit against Mitchell, who helped manage his wife's social media as well as his own successful business making custom built trucks and Ferraris.

Mitchell had levied his 'power and influence in the dance world to sexually abuse young dancers across the country', according to the civil action, which named Dusty a 'non-party co-conspirator.'

Menichino claimed Mitchell targeted her when she attended his dance classes in Tampa, Florida, as a 13-year-old girl, befriending her before sending her sexually explicit texts and videos.

The then-25-year-old instructor joined students for sleepovers and sexually abused Menichino under a blanket in one of two alleged attacks in 2010, according to the suit filed in Nevada, where the Buttons now live in a gated community close to the Las Vegas strip.

Humphries claimed she had come under the couple's spell after she joined Boston Ballet as an apprentice in 2016. Mitchell and Dusty, who worked there until May 2017, allegedly promised to mentor the then 19-year-old and make her a social media star.

According to her filing, Humphries handed control of her apps, texts and

emails to Mitchell and began sleeping in the Buttons' apartment and styling her clothes and hair to match Dusty.

**Dusty is pictured in Boston Ballet's production of William Forsythe's The Second Detail**

▶ stricken childhood and scheming mother who stole millions from her as she offers app for troubled teens

ADVERTISEMENT

The Orange County, California, native claims she was ordered to cut off her family as the friendship descended into emotional manipulation and sexual abuse.

On one occasion she alleges she was forced to wear a spandex suit covering her entire body, including her eyes and mouth, and was led to a room with an 'arsenal of guns hanging on the walls' where she was tied up and molested.

If Humphries tried to break away or disobey the Buttons 'they would threaten to revoke their financial support and sabotage her career.'

After her parents intervened and forced her to return to California, Humphries obtained an abuse prevention order against Dusty and Mitchell in August 2017.

The Buttons claim they didn't fight the Boston court's decision despite having what they describe as a 1,200 page binder of texts, love notes and songs demonstrating the abuse was fabricated.

They admit they were in a three-way tryst – a throuple – with Humphries but deny doing anything wrong.

▶ Pedro Pascal dashes down sidewalk in vintage Lakers T-shirt... after premiere of season three of The Mandalorian

▶ Jourdan Dunn flashes her VERY toned abs in a striped crop top as she attends the launch of Shawn Mendes' range with Tommy Hilfiger in London

▶ Olivia Culpo showcases her toned arms in sleeveless black gown at the Endometriosis Foundation of America's Blossom Ball in NYC

▶ Lala Kent ditches the glam for make-up free outing in LA... after explosive new Vanderpump Rules trailer gives sneak peek into THAT 'Scandoval' saga

▶ Florence Pugh rocks a leggy black minidress

**and matching chic coat in NYC... after ex Zach Braff met her parents and grandmother for dinner**

**Vanderpump Rules vet Brittany Cartwright puts on a busty display in corset top as she steps out in NYC with husband Jax Taylor**

**Nick Cannon calls ex-wife Mariah Carey 'a gift from God' as father of 12 hints the legendary songstress may be the love of his life... after having children with five other women**

**Tamar Braxton says Kandi Burruss 'wants to deflect and condone' husband Todd Tucker's 'abusive and disrespectful' behavior as she opens up on bad blood with pair**

**Why Tiger Lily Hutchence has 'no interest' in becoming a famous singer despite releasing debut album - as new doc about her late parents opens old wounds**

**Jennifer Lopez and Ben Affleck DROP OUT of escrow on stunning $64M Pacific Palisades love nest... marking third home they have pulled plug on in months**

ADVERTISEMENT

3/21/23, 8:53 AM                    Boston ballerina Dusty Button breaks her silence to deny sex assault allegations | Daily Mail Online

**Snapchat messages between Humphries and Dusty are shown. Mitchell says, 'You can see from the texts on all three ends that it was a loving, caring relationship. And yes, it's weird. We agree it's weird. We slipped up in that one moment in our lives and it's the biggest mistake we ever made'**

Camila Cabello shares a set of selfies in a vintage varsity jacket as she enjoys ice cream: 'Very yummy'

Hugh Grant returns to the red carpet after THAT Oscars interview as he joins Chris Pine and Regé-Jean Page at Berlin premiere of Dungeons & Dragons: Honor Among Thieves

Joy-Anna Duggar, 35, reveals her decision to finally wear PANTS after years of being told they were 'immodest' came after she 'prayed and studied scripture to 'feel OK' about it

Zendaya reveals her gold signet ring engraved with boyfriend Tom Holland's initials while enjoying a manicure

Rod Stewart, 78, gives fans an update on his health and tour after being forced to cancel a show in Australia due to illness

Matt Damon gets a new tattoo with a connection to his late father Kent from celebrity tattoo artist Daniel Winter

Ted Lasso's Jason Sudeikis fields question from 'Trent Crimm of The Independent' about 2026 World Cup during White House press briefing

Vanderpump Rules EXPLOSIVE mid-season trailer: New footage details Tom Sandoval's 'full blown love affair' with Raquel Leviss' and Ariana Madix wishing DEATH upon him

147

**A handwritten card from Humphries to Dusty is signed 'Sagey' with a heart. It appears Humphries is professing her love and apologizing to Dusty**

► Chris Hemsworth and Elsa Pataky throw a sweet birthday party for their nine-year-old twin sons at their $30m Byron Bay mansion in Australia

► Disruptive reporter derails White House briefing with Ted Lasso cast: Karine Jean-Pierre rips into correspondent for interrupting her in front of Jason Sudeikis and co-stars

ADVERTISEMENT

► The Weeknd settles copyright infringement lawsuit over Call Out My Name... after making Spotify history with 100 million monthly listeners

► 90210 reunion! Jennie Garth poses with co-star Tori Spelling and more in 90s Con post... and defends Shannen Doherty's absence from her snaps

► Fifi Box sparks rumours she's set to star on the new season of I'm A Celebrity... Get Me Out Of Here! as she prepares to depart on a 'work trip'

148

3/21/23, 8:53 AM                    Boston ballerina Dusty Button breaks her silence to deny sex assault allegations | Daily Mail Online



**The Buttons say they have a trove of texts in which Humphries professed her love for them, even after her parents had taken her back to California and made her undergo therapy**

▶ **Kelly Osbourne shows off her purple hair in new glam photos... just four months after giving birth to her son Sidney with Slipknot DJ Sid Wilson**

▶ **Succession's Nicholas Braun 'sobbed' saying goodbye to co-star Matthew Macfadyen after filming on final season concluded**

▶ **Emily Ratajkowski rocks pixie cut for fashion spread... after celebrating her son Sylvester's second birthday**

▶ **Gwyneth Paltrow expected to take the stand in $300,000 civil lawsuit over 2016 ski crash which left Utah optometrist, 72, with brain injury and four broken ribs**

▶ **Wendy Williams 'seen drinking on raucous NYC night out' - five months after troubled star left rehab stint and amid ongoing health battles**

▶ **Paul Grant death: Actor who played an Ewok in Star Wars passes away at age 56 after collapsing outside King's Cross station in London**

▶ **Andy Kaufman to be inducted into WWE Hall of Fame 2023... 40 years after World Intergender Wrestling Champion's iconic feud with Jerry Lawler**

ADVERTISEMENT

149

3/21/23, 8:53 AM                          Boston ballerina Dusty Button breaks her silence to deny sex assault allegations | Daily Mail Online



**A text message from Humphries to Dusty and Mitchell (who she refers to as Taylor). 'Sage infiltrated our relationship, tried to take over Dusty's life and in doing so destroyed both of us,' Mitchell says**

'You can see from the texts on all three ends that it was a loving, caring relationship. And yes, it's weird. We agree it's weird. We slipped up in that one moment in our lives and it's the biggest mistake we ever made,' says Mitchell.

'We never appealed the order because we never wanted to see her face again or anyone related to her. There we were thinking it was done but apparently she ran out of money and here she is wanting more from us.'

If those allegations weren't damaging enough, by December 2021 five more plaintiffs had been added to the complaint filed by prominent attorney Sigrid McCawley, who represents victims of Jeffrey Epstein and Ghislaine Maxwell.

Dusty was named a co-defendant and the couple were accused of everything from false imprisonment and sex trafficking to assault and battery, with each plaintiff demanding $15.5 million for emotional and physical injuries.

Three more students had come forward with lurid accounts of Mitchell's tenure at the Centerstage Dance Academy, including Danielle Gutierrez, who said she began a relationship with Mitchell at age 17.

When she tried to flee his apartment he 'pulled out a knife and put it to Danielle's throat,' the suit alleges. 'On another occasion, Taylor pulled an AK-47 on another man in front of Danielle'.

Jane Doe 100, an anonymous accuser, claimed Dusty befriended and gushed about her 'enormous potential' when her dance company rented studio space from the

▶ **Charmed reunion! Shannen Doherty, Rose McGowan and Holly Marie Combs attend 90s Con as Alyssa Milano says seeing trio together makes her 'happy'**

▶ **A plot twist to rival Succession! Rupert Murdoch, 92, and new fiancee, 66, say their romance is a 'gift from God'... but ALISON BOSHOFF asks: Will his kids see it same way?**

▶ **Alexa Chung cuts a fashionable figure in a cream blazer and low-cut pinstripe shirt as she attends London launch of Shawn Mendes' collaboration with Tommy Hilfiger**

▶ **Marvel Studios executive Victoria Alonso departs studio after 17 years in surprise move**

▶ **Kenny Doughty announces he's made 'difficult decision' to leave ITV's Vera after eight years as D.S. Aiden Healy**

▶ **Troubled Ruby Rose remerges on her 'traumatic' 37th birthday after she sparked fears with farewell note saying 'it has never been a celebration'**

▶ **Eva Longoria draws the ire of former Young and the Restless co-star Eric Braeden after revealing she kept her soap opera profession a secret at her 9-5 job**

▶ **Natalia Dyer appears to have suffered an injury as she walks with the help of crutches and has a bruise on her forehead while out in NYC**

150

Boston Ballet in 2014.

A minor at the time, she describes a brutal sexual attack that took place on a mattress in a room 'with an arsenal of guns hanging on the wall'.

Dusty held the youngster down and took videos and pictures while Mitchell raped her, according to the complaint. 'At one point, Dusty had a gun in her hand,' it states.

▶ EDEN CONFIDENTIAL: While Mick, 79, rocks on, daughter Jade Jagger, 51, packs in her day job as she gives up designing fine jewelry

EXCLUSIVE   'He was afraid Melania would dump him.' Donald Trump paid off Stormy to prevent his wife from finding out details of cheating claims

ADVERTISEMENT

▶ ALISON BOSHOFF: How Victoria Beckham got the last laugh on fashion industry snobs (yes, that means you Kate and Stella) to finally turn a profit

▶ 'WHY did nobody warn me about Rory Culkin's penis?' Amazon Prime viewers are left up in arms over raunchy NUDE scene in new thriller Swarm

▶ Tejano musician Fito Olivares dead at 75: The star, who was known for the songs Juana La Cubana and El Chicle, was battling cancer

3/21/23, 8:53 AM                    Boston ballerina Dusty Button breaks her silence to deny sex assault allegations | Daily Mail Online

▸ **She is the daughter of one of Hollywood biggest comedians and calls Jennifer Aniston a pal. Can you name this teen who has already appeared in 20 of her dad's films?**

▸ **Lucas Hedges and Mike Faist to star in the heartbreaking tale of two gay cowboys when they take Brokeback Mountain to the London stage**

▸ **Karrueche Tran releases a braid of her hair into the ocean along with a portion of her father Devon's ashes: 'I feel so free and I honestly love it'**

▸ **Zendaya's 'image architect' Law Roach DENIES claims he 'body shamed' client Priyanka Chopra for not being 'sample sized'**

▸ **'I have known how to maintain my happiness': Gerard Pique insists he is happy with the 'changes' in his life after ending 11-year marriage to Shakira**

▸ **No drama here! Zach Braff meets up with ex-girlfriend Florence Pugh's parents and grandmother for dinner in New York City**

▸ **Madonna reveals she is joining forces with producer Max Martin as she shares snap of them brainstorming in the recording studio**

ADVERTISEMENT

152

**Dusty held Jane Doe 100, an anonymous accuser, down and took videos and pictures while Mitchell raped her, according to the complaint. 'At one point, Dusty had a gun in her hand,' it states**

▶ 'The bionic times have arrived!' Whoopi Goldberg ditches her glasses after undergoing pioneering lens surgery

▶ Paul Walker's daughter Meadow Walker shares snaps from Costa Rican getaway with pals

▶ She's a Prince fan! Kate Hudson cuts a casual figure in a Purple Rain T-shirt, plaid slacks and combat boots... as she prepares to launch her singing career

▶ Julia Fox DENIES she used weight loss drug Ozempic when losing 15lbs during her romance with Kanye West: 'I would never do that'

EXCLUSIVE  Cameron Diaz, 50, likely WON'T ever do another movie after beleaguered Jamie Foxx film - because she 'hates the drama' of Hollywood

▶ Reese Witherspoon vs lookalike daughter Ava: Mom, 46, and mini-me, 23, take to Instagram on SAME day to model purses (though one costs A LOT more than the other)

▶ 'You can't be more blessed': Orlando Bloom says his 'biggest fan' is fiancé Katy Perry as he heaps praise on daughter Daisy Dove, two - who is 'growing fast'

▶ Kissing courtside! LA Lakers owner Jeanie Buss, 61, smooches her Jerry Maguire actor fiancé Jay Mohr, 52, while at a basketball game

3/21/23, 8:53 AM                     Boston ballerina Dusty Button breaks her silence to deny sex assault allegations | Daily Mail Online

▸ **Will Smith visits ancient Saudi Arabian city of AlUla for inaugural Camel Cup to support friend Swizz Beatz... as Chris Rock continues to ridicule him**

▸ **Kendall Jenner shows off her natural beauty as she hugs a Marc Jacobs bag in a new image from the spring campaign**

ADVERTISEMENT

▸ **Vanderpump Rules star Ariana Madix makes first public appearance since longtime partner Tom Sandoval's cheating scandal with fellow castmate Raquel Leviss**

▸ **'I dreaded falling in love - but I knew this would be my last': Billionaire media mogul Rupert Murdoch, 92, reveals he is ENGAGED to Ann Lesley Smith, 66**

▸ **'Morning cuddles!' Victoria Beckham shares cute snap of husband David lavishing their pet dog Simba with attention as the family relax at home**

154

3/21/23, 8:53 AM                    Boston ballerina Dusty Button breaks her silence to deny sex assault allegations | Daily Mail Online

▸ Kylie Minogue, 54, is
the epitome of chic in
an oversized baby blue
trouser suit and black
vest as she attends
German trade fair in
Dusseldorf

▸ Latto reveals she was
arrested for bringing a
LOADED GUN in her
Birkin to an airport
ahead of a private jet
flight

▸ 'She's been making
terrible decisions
lately!' Chloe Bailey
criticized for graphic
sex scene in Swarm
after collaboration with
convicted domestic
abuser Chris Brown

▸ How Rupert Murdoch's
fiancee Ann Lesley
Smith, 66, found religion
after being driven to
brink of suicide by
divorce from her
'abusive' first husband

▸ Dove Cameron models
a long black coat and
thin sunglasses as she
promotes season two of
Schmigadoon! in New
York City

▸ Rachel Zegler defends
Shazam: Fury Of The
Gods against
'senselessly mean
criticism'... despite
saying she took role
because she 'needed a
job'

▸ Blac Chyna's extreme
surgery makeunder
after finding God: How
Rob Kardashian's ex
quit $240M Only Fans
and removed all
implants and fillers

ADVERTISEMENT

**After failing to get the case dismissed under the statute of limitations, the Buttons filed a counterclaim for defamation in July which was every bit as incendiary as the initial complaint**

If the twisted scenes and guns described by Humphries and Jane Doe 100 are eerily similar, that's because the accusers are parroting one another's false claims, the Buttons say. And any guns they supposedly possessed were just toys and props they used for photoshoots.

'The dance world is extremely small so a lot of studios and dancers know one another,' says Dusty.

'It's gone from Sage to the people that have jumped on the bandwagon. One of these people is his ex-girlfriend, I think three or four of these people are from his old studio. It seems like it's a lot of #metoo, a lot of vendettas - a lot of we're going to get money, we're not famous enough.'

Mitchell points to a recent interview Humphries gave to Boston Magazine revealing she reached out to Florida-based McCawley in the summer of 2020 after watching a docuseries on Epstein's crimes.

▶ Julianne Hough is back! The star is 'stepping in to co-host' Dancing With The Stars with Alfonso Ribeiro.... after Tyra Banks revealed she was leaving

▶ Heidi Klum, 49, goes braless in a sheer cream top as she poses for Vogue Greece's fourth anniversary cover

▶ Get Out director Jordan Peele sets release date for hotly-anticipated fourth film - with movie set to face off against Avatar 3 and Sonic the Hedgehog 3

▶ Chilli, 52, reveals she would 'have to be married first' before starting a family with Matthew Lawrence, 43... after he said kids were 'the game plan'

▶ Ben Affleck keeps it casual cool as he is joined by BFF Matt Damon for GMA interview in NYC on promotional trail for their film Air

▶ 'I love the John Wick world': Keanu Reeves shares how is one of his favorite characters to play as he plugs fourth installment of the action film

▶ 'There are times when I don't want to be famous': Kendall Jenner reflects on life in the spotlight as she stuns in dramatic Vogue Italia shots

▶ 'Love you and love our family': Demi Moore wishes Bruce Willis a happy 68th birthday with sweet clip of their entire family singing

Molly Shannon, 58, puts on a leggy display as

'It just so happens to be the same lawyer mentioned in the documentary. They have tried to make Dusty out to be Ghislaine Maxwell. It's crazy,' he says.

Pressed as to why so many women from his past have come forward, Mitchell responds: '$130 million dollars seems like a pretty good motivation. If you spent a year in the dance community, you would see it's a strange cult-like mentality.'

After failing to get the case dismissed under the statute of limitations the Buttons filed a counterclaim for defamation in July which was every bit as incendiary, the couple's attorney Marc Randazza describing the accusations as 'outlandish ... akin to a satanic panic.'

The plaintiffs conspired to 'extort money from the Buttons and to advance their careers by attaching their name to the #MeToo circuit,' thundered Randazza.

Gutierrez was a 'woman scorned' who had physically lashed out at Mitchell when he left her for Dusty. Jane Doe 100, the couple insist, is someone 'they have never seen, spoken to, taught, or met'.

As for Humphries, they claim the true culprits are her 'hyper controlling and conservative' parents Micah and Michael Humphries who resented their daughter being involved in a 'throuple' and pressed her to pursue false legal claims.

**The Buttons' counterclaim lists a number of influential, older men whom they claim paid Humphries for 'sexual favors' - most notably Daryl Katz, the 61-year-old billionaire owner of the Edmonton Oilers NHL team (pictured)**

she praises her A Good Person co-star Florence Pugh on GMA: 'She's such a powerhouse'

Khloe Kardashian's cheating ex Tristan spotted hugging mystery woman who looks just like her after cringe-worthy gushing post on his birthday

'We are focusing on healing for everyone involved:' Def Leppard drummer Rick Allen, 59, breaks silence after being 'beaten up by 19-year-old spring breaker'

Fears for Ruby Rose as she vanishes on 'traumatic' birthday and leaves a worrying farewell note on Instagram

This Saved By The Bell star looks unrecognisable 30 years after the show ended - but can YOU guess who it is?

'It seemed improbable and unlikely!' Sir Patrick Stewart admits he nearly turned down iconic Star Trek role as he had 'theatre commitments'

Princess Diana's niece Lady Amelia kicks off her South Africa wedding celebrations with a glamorous pool party - but will her father attend after missing her sister Kitty's wedding?

Dungeons & Dragons: Honor Among Thieves co-stars Hugh Grant and Chris Pine step out for dinner together in Berlin

Olivia Wilde sizzles in a barely-there black bikini as she goofs around with her friend Molly Howard on the beach

Drew Barrymore bares shoulders in lacy black gown as Idina Menzel rocks a striped dress at Mark Twain Prize For

3/21/23, 8:53 AM                    Boston ballerina Dusty Button breaks her silence to deny sex assault allegations | Daily Mail Online

▶ American Humor gala in Washington, D.C.

▶ 'I wish you a life of happiness!' Harry Styles helps a THIRD fan propose to their girlfriend as Love On Tour arrives in Singapore

▶ 'I wanted to be judged on my own merits': Andrew Lloyd Webber's composer son Nicholas dropped his last name to make his own way in theatre - as cancer battle is revealed

▶ ABC frontman Martin Fry reveals he turned down the chance to write Top Gun soundtrack because he didn't think the film would be a big hit

▶ Suki Waterhouse and beau Robert Pattinson keep a low profile as they head to dinner in Chile following her performance at the Lollapalooza Festival

▶ 'It's a treasured memory from this whole experience': Jason Sudeikis admits there were 'a lot of tears' during the last day of Ted Lasso filming

▶ Rita Ora flashes her washboard abs in a tiny blue bikini as she poses for a slew of sizzling beach snaps in Dubai

▶ Home and Away star Georgie Parker shares future career plans after revealing her departure from long-running soap

▶ Nicki Minaj scores back-to-back number one debuts on Hot Rap Songs Chart with new single Red Ruby Da Sleeze

▶ New mum Nicole Williams multitasks as she breast pumps while eating ramen in her PJs and admits 'pretty sure that just turned some sicko on'

3/21/23, 8:53 AM                    Boston ballerina Dusty Button breaks her silence to deny sex assault allegations | Daily Mail Online

▶ Step aside, North! Kim
and Kanye's son Saint
West, 7, upstages his
TikTok famous sister
and earns a legion of
fans with his adorable
antics on soccer tour

▶ Mean Girls author
Rosalind Wiseman
SLAMS Tina Fey while
considering LEGAL
action against
Paramount Studios for
withholding revenue

▶ Paris Hilton reveals
how Demi Lovato's
documentary inspired
her to write a memoir: 'I
was stunned by how
courageous she was'

▶ 'I'm yours forever':
Pregnant Jessie J
shares baby scan while
gushing over unborn
son and boyfriend
Chanan Safir Colman in
Mother's Day post

▶ Larsa Pippen, 48,
shows off her hourglass
curves in racy halter
bodysuit as she and
toyboy lover Marcus
Jordan, 32, enjoy dinner
date in LA

▶ Jennifer Aniston and
Drew Barrymore join
forces to support rom-
com pal Adam Sandler
as he's honored with
the Mark Twain Prize

▶ Pregnant Kaley Cuoco
shares snap of growing
bump and reveals her
mother's frustration
over baby name

▶ Heather Rae Young
snuggles with newborn
baby boy Tristan after
giving him a bath in
adorable new photos:
'Loving every moment
with our baby'

▶ Madonna reveals her
five simple 'house rules'
for her six kids to
follow: 'Be happy with
what you have'

▶ Taylor Swift holds a
glowing golf club as she
puts on an amazing
visual show during
opening weekend of her
Eras tour in Arizona

▶ Chrissy Teigen plants a
sweet kiss on baby girl

**Texts between Katz and Humphries are shown. Katz has denied any wrongdoing and says his dealings with Humphries were 'business related'. His name remains in the suit but he's no longer a third-party defendant**

The Buttons' counterclaim also lists a number of influential, older men whom they claim paid Humphries for 'sexual favors' - most notably Daryl Katz, the 61-year-old billionaire owner of the Edmonton Oilers NHL team.

https://www.dailymail.co.uk/news/article-11174203/Boston-ballerina-Dusty-Button-breaks-silence-deny-sex-assault-allegations.html                    27/49

It alleges that Micah Humphries knew her daughter was 'literally a prostitute to a billionaire' but encouraged it.

'If Sage is truly the damaged flower she claims to be, the price should be paid - but it should be paid by those who actually engaged in illegal acts with her,' the filing states.

Randazza later filed an amended complaint striking the suggestion Humphries was underage when Katz allegedly paid her $75,000, blaming a mix-up over her date of birth.

Katz has denied any wrongdoing and says his dealings with Humphries were 'business related'. His name remains in the suit but he's no longer a third-party defendant.

According to a report in Variety, he's hired Anthony Pelicano, a former private investigator turned 'crisis management' specialist, to try to have the allegations dismissed with prejudice so they can't be revived.

The intervention of Pelicano, who spent 16 years in federal prison for wiretapping, racketeering, fraud and conspiracy pours yet more fuel on the powder keg case that, as it stands, is headed towards jury trial at the US District Court for Nevada.

Lawyers for the seven accusers did not respond to requests for comment.

But in a July 29 response to their counterclaim, McCawley wrote: '[Mitchell] Taylor Button and Dusty Button are seasoned predators, manipulators, and criminals.

'Together, they carried out a years-long scheme to exploit their positions of power and prestige in the dance world to sexually abuse young dancers across the country. Accordingly, seven of those dancers initiated this lawsuit to obtain justice for the abuse and trauma inflicted on them.

'In response, Taylor and Dusty went on the offensive and filed counterclaims against Plaintiffs, calling the underage victims jealous liars, shaming them for past relationships, and dragging five non-parties into this lawsuit with no legal basis to do so, including one victim's parents for merely trying to protect their daughter from their cycle of abuse.

'Their filing is a clear attempt to intimidate and silence their victims. It won't work.'

▸ Esti, three months, before receiving a smooch from her son, four, as her eldest plays with singing bowls

▸ Kendall Jenner puts on a stylish display modeling a Bottega Veneta faux fur coat amid her getaway to Paris

▸ Chris Rock says arresting Trump will 'make him more popular' and says it's 'romantic' ex-president 'paid off Stormy Daniels so Melania wouldn't find out'

▸ Katie Holmes goes incognito in a denim jacket and navy ball cap as she rides the subway in New York City for her performance in The Wanderers

▸ Larsa Pippen used to have sex 'four times a night' during marriage to ex Scottie Pippen... and confirms she'll take last name of Michael Jordan's son if they wed

▸ Alicia Silverstone is game for a Blast From The Past sequel reuniting her with Oscar winner Brendan Fraser: 'I would do anything with Brendan'

▸ Naomi Watts and boyfriend Billy Crudup share a sweet laugh on romantic Sunday stroll in New York City

▸ Kanye West is joined by his wife Bianca Censori and eldest daughter North for church service in Los Angeles

▸ You won't believe what Tabitha from Bewitched looks like now: Child star from iconic TV show is unrecognizable during appearance at Hollywood cabaret

Oprah enjoys a camel ride and twins with BFF Gayle King in candid snaps from their trip to Jordan... where they

▶ visited the site of
Jesus' baptism

▶ Delilah Belle Hamlin
parties with her famous
family as she throws a
glamorous soiree at the
Sunset Strip's iconic
Hotel Ziggy to celebrate
her new single

▶ 'I am absolutely
devastated':
Heartbroken Andrew
Lloyd Webber reveals
his eldest son Nicholas,
43, is 'critically ill' with
stomach cancer

ANYTIME,
ANYWHERE,
**Mail**Online
ON YOUR IPHONE
TRY IT FOR FREE
FOR 60 DAYS ▶

ADVERTISEMENT

**The couple now live in a gated community in Nevada, close to the Las Vegas strip**

While the ballet world holds its breath for further bombshells the Buttons are not
backing down.

'We're drowning in debt to this lawsuit. But what can you take from us that we
haven't already lost,' says Mitchell.

'We would have gone to a jury the day after this lawsuit was served because that's
exactly what we want. We want the chance to show people the truth.'

Dusty is unemployed and adamant she'll never dance again, at least professionally.
Her sole focus for now is poring over the thousands of texts, photos and documents
she says will disprove her accusers.

'I love dancing and I think that I'm good at it, but this has made me realize that I only
love the art of dancing and I despise the industry. I've never done a single thing to
deserve what they've done to me.

'The fact that we're at our lowest point and we're still fighting, this should show that we're telling the truth. If that doesn't show people that we believe in ourselves and we believe in the truth, I don't know what else will.'

## THE BUTTONS' SEVEN ACCUSERS... AND SEVEN DENIALS

### SAGE HUMPHRIES

Dusty and Mitchell Button admit they are deeply embarrassed by their three-way tryst with Humphries - but deny it was anything but consensual, supportive and 'loving'.

Humphries claims the Buttons threatened to wreck her fledgling career unless she cut off her parents and moved in with them in 2017 and submitted to their warped sexual demands.

The Buttons, however, say they have a trove of texts in which Humphries professed her love for them, even after her parents had taken her back to California and made her undergo therapy.

Humphries claims in the lawsuit the Buttons had complete control over her and isolated her from family and friends

It was Michael and Micah Humphries who pressed her to file for a protection order and then, years later, a 'spurious' civil lawsuit, the Buttons allege.

'I think she's terrified of her family and a lot of this stems from them pushing her to do something to clear her own name from doing devious sexual things and being in a threesome,' says Mitchell.

Recalling how their paths crossed, Dusty says the then-teenager sought her out when she joined the Boston Ballet in 2016 and asked if they could go for lunch, a bold move for a new recruit.

Dusty, Mitchell and Humphries all started to hang out and she became a fixture at their Boston apartment, watching movies, going to restaurants and playing mini golf.

'Her mom actually wanted her to be friends with me because I had a huge following on Instagram and Sage told me later that she wanted us to help her reach her social media account to the level that ours was at,' Dusty says.

'She started to never leave the house. Slowly the line blurred between being friends and it actually being a relationship.'

Mitchell alleges that it was Humphries who first kissed him at a Sushi restaurant; Humphries who hinted to him in a text that she wanted a threesome with Dusty; Humphries who initiated their first sexual encounter by suggesting the trio should try a 'massage chain.'

Follow
DailyMail

Follow
@dailymail

Follow
MailOnline

Subscribe
Daily Mail

Follow
DailyMail

Follow
Daily Mail

**DON'T MISS**

▸ American Idol: Katy Perry gives single mom and exotic dancer Fire Wilmore a second chance to audition in emotional cliffhanger ending

▸ Jennifer Lawrence cuts a casual figure in comfy trousers and an oversize coat alongside husband Cooke Maroney as they arrive at JFK airport in NYC

▸ Bruce Willis' wife Emma Heming reflects on feeling 'grief and sadness' on his 68th birthday following his heartbreaking dementia diagnosis

▸ Taylor Swift declares that she loves teaching 'men how to apologize' during debut concert of her Eras Tour: 'It's kind of my thing'

'Sage infiltrated our relationship, tried to take over Dusty's life and in doing so destroyed both of us,' he says.

**JULIET DOHERTY**

Juliet Doherty claims she was left 'incapacitated' after the Buttons slipped drugs into her drink at a pool party.

This left her powerless to fend off Dusty who molested her beneath the water, according to the lawsuit. Doherty says she tried to run away but slipped and fell before locking herself inside a bathroom to escape.

The Buttons insist it was Juliet who made a drunken pass at Dusty after the two dancers met at the 2018 Panama Ballet festival.

They say she harbors a grudge against the couple for refusing her advances and then blanking her when they returned to the States.

'If you were so drugged up how could you remember everything that happened that night. It makes no sense,' says Dusty.



**Juliet Doherty claims she was left 'incapacitated' after the Buttons slipped drugs into her drink at a pool party**

GINA MENICHINO, ROSIE DeANGELO, DANIELLE GUTIERREZ, JANE DOE 200

Mitchell Button's accusers include four women who attended classes at a dance studio in Tampa, Florida where he worked from 2006 to 2010.

Their suit accuses Mitchell of hugging and groping underage students at sleepover parties and coercing girls into relationships with promises of special treatment.

**Chloe Grace Moretz, 26, is effortlessly alluring in new Louis Vuitton Cottage line inspired by 'romantic countryside'**

**'The Real Million Dollar Baby': Hilary Swank shares ultrasound of one of her twins flexing its bicep as she prepares to give birth next month**

**Emily Ratajkowski and son Sly match in red outfits as she shares photos from his Paw Patrol-themed 2nd birthday party**

**Teddi Mellencamp looks sophisticated in traditional riding clothes as she shows off her equestrian skills at horse show in Southern California**

**Sarah Snook was 'very upset' that she didn't learn Succession was ending with season four until final table read: 'I felt a huge sense of loss'**

**Vanderpump Rules star Kristina Kelly, 35, welcomes first child - a baby boy named River - with beau Max Ville**

**Charlize Theron beams beside handsome male friend as she watches tennis star Carlos Alcaraz defeat Jannik Sinner at BNP Paribas Open**

**David Schwimmer reveals he's competing for his late grandmother and his 'cancer survivor' sister as he faces a kitchen dilemma on Celebrity Bake Off**

**Pirates of the karaoke! Orlando Bloom shocks revellers as he gives a surprise raspy rendition of Irish folk song on St Patrick's Day in packed British pub**

**The Kardashian curse strikes again! Kim watches Paris Saint Germain lose 2-0 - days after seeing Arsenal crash out of Europa League**

Students were ordered to wear sports bras and 'booty shorts' and Mitchell 'would yell at them and force them to do push-ups if they ever tried to cover their bodies,' it's alleged.

One plaintiff, Jane Doe 200, describes how she was 'frozen and afraid' as he kissed and molested her after watching a scary movie.

Another, Rosie DeAngelo, recalls Mitchell saying he wanted to 'bend her over' a stool and molesting her when she was a minor.



Gina Menichino, a dancer from New Jersey, was the second woman in the original lawsuit

Gina Menichino, says she was 13 when Mitchell sent her videos of himself masturbating, ordering her to delete them in case they were discovered by her parents. He molested her twice in 2010, it's alleged.

In a 2021 interview with the New York Times Menichino said she reported the abuse to police in 2018 but was told there was insufficient evidence to pursue a criminal case.

The Times article also noted the existence of a 2012 police report, shared by the plaintiffs' lawyer, detailing how a girl from the studio had come forward at the time to accuse Mitchell of abusing her 'numerous times.'

The document said the accusation lacked supporting physical evidence and no criminal charges were filed, the Times wrote.

Danielle Gutierrez says she began an exploitative relationship with Mitchell at 17 and was punched, kicked and choked as their tryst turned violent.

According to the Buttons she is a 'woman scorned' who lashed out at Mitchell because he left her for Dusty, leaving him with a scar on his stomach.

Their attorney Marc Randazza accuses these women of trying to 'extort' money from the Buttons and advance their careers by attaching their name to the #MeToo circuit.

'The difference is, these additions to the circuit are lying. Their stories are fabrications, and in some cases they are literally impossible,' he writes in court filings.

▶ Kourtney Kardashian says she got 'chills' when designing one important aspect of her 90s inspired wedding dress in flashback post

▶ 'Our bodies shut down': Ali Wong says she and co-star Steven Yeun 'broke out in hives' after filming their series Beef

▶ Bella Hadid celebrates five months of sobriety as she parties in Las Vegas in slinky black dress... after quitting alcohol because it caused her 'pain and stress'

▶ Vanderpump Rules' Katie Maloney slams ex Tom Schwartz's rumored love interest Jo Wenberg in scathing comment: 'I will light her on fire'

▶ Taylor Swift fan Emma Stone dances along to her singer pal's hits as she attends first concert of The Eras Tour in Arizona

▶ The Jonas Brothers enjoy downtime with family before they take the stage for their final sold-out show in New York

▶ Vanessa Hudgens shows off adorable his and hers fiancé glasses... after confirming engagement to pro baseball player Cole Tucker
.

▶ Sydney Sweeney puts on a busty display and shows off her toned midriff as she models a new swimsuit from her Frankies Bikinis collaboration

▶ Where is Anna Nicole Smith's daughter now? Dannielynn Birkhead, 16, enjoys a quiet life out of the spotlight - apart from special annual tribute to her mother and cute Instagram snaps

▶ 'Soccer moms for the win!' Kim Kardashian and son Saint meet legendary French striker Kylian Mbappe as their whistlestop 'football tour' continues with trip to PSG

Rosie DeAngelo (left), Danielle Gutierrez (right) came forward and filed an expanded lawsuit against Dusty and Mitchell

### JANE DOE 100

One of the more lurid allegations against the Buttons is levelled by a Jane Doe who claims she was drugged and raped in a room filled with guns.

The unidentified accuser says Dusty Button invited her for coffee and gushed about her potential after watching her rehearse at the Boston Ballet studios.

Dusty invited the budding dancer, a minor at the time, back to her apartment and plied her with alcohol laced with drugs, the suit contends.

She and Mitchell led the youngster into a room 'with an arsenal of guns hanging on the wall' and proceeded to rape her, she alleges. She claims Dusty took photos and videos and at one stage had a gun in her hand, according to the suit.

The Buttons are unequivocal in their response: It never happened. They say they have never met Jane Doe 100.

'We researched her on every social media platform for 12 hours. We had never heard her name, seen her face, heard of her, known her, met her or even passed her in the street,' Mitchell tells DailyMail.com.

'We have no idea who she is.'

**Share or comment on this article: Boston ballerina Dusty Button breaks her silence to deny sex assault allegations**



| Comments 39 Share what you think | | | Add your comment |
|---|---|---|---|

| Newest | Oldest | Best rated | Worst rated |
|---|---|---|---|

View all

The comments below have been moderated in advance.

▶ **Inside Jodie Comer's lavish 30th birthday:** Killing Eve star is treated to a flower-embellished cake as she celebrates milestone at upmarket London hotel

▶ **Jennifer Lopez shows her support for husband Ben Affleck and his new biopic film Air** by posting snaps from SXSW and raving critic reviews

▶ **Royals reimagined! TikTok artist gives Prince and Princess of Wales, Duke and Duchess of Sussex and the late Queen a 'makeover'** - and viewers are LOVING William's new look

▶ **Prince and Princess of Wales delight royal fans with heartwarming new family photos of Kate with Prince George, Princess Charlotte and Prince Louis for UK Mother's Day**

▶ **Ben Affleck talks working on back-to-back films with wife Jennifer Lopez and Matt Damon as he gushes about achieving peak happiness**

▶ **Fresh Diana controversy in The Crown as Netflix show sparks row over taste and decency as pictures show replica of mangled Mercedes**

▶ **Red carpet cringe! After Hugh Grant was slammed for his 'rude' Oscars interview a look back at other awkward award show incidents**

▶ **Plastic surgeon reveals how Kylie and Kendall Jenner's very different looks inspired the two most popular surgery trends among young women**

▶ **Keep on running! Amy Robach and T.J. Holmes pound the streets for the NYC Half Marathon after getting fit for the race with their 'active sex life'**

**Kim Kardashian shares adorable throwback photo of '1987 KK' along with uplifting message...**

# Commonwealth of Massachusetts
### THE TRIAL COURT
### PROBATE AND FAMILY COURT DEPARTMENT

**SUFFOLK DIVISION**                    DOCKET #1701RO-181, 1701RO-182

SAGE HUMPHRIES,
                             PLAINTIFF

    v.

MITCHELL TAYLOR MOORE,
DUSTY BUTTON
                             DEFENDANT



PLAINTIFF'S AFFIDAVIT IN SUPPORT OF 209A RENEWAL

I, Sage Humphries, do hereby depose and state under oath the following is true to the best of my information and belief:

1. Taylor and Dusty Button have continued to find new and creative ways to harass me through gun sales, third party contact, and strategic location.

2. On October 30th, 2017, two months after the restraining order was issued, Mitchell Taylor Moore offered guns for sale, in Boston, on his Instagram story, which was captured on video before it was deleted.

3. Shortly after that video appeared on his Instagram story, the Buttons moved to Los Angeles. They strategically relocated within blocks of three locations that I frequent every-time I'm in los Angeles; my Ex-Boyfriend (Anthony Giovanni)'s house, my modeling agency, "LA Models," and my music producer's studio, "Spitfire Studios." Dusty and Taylor had previous knowledge of my relationship with Anthony, threatening him many times; saying, "If I were to ever see Anthony again I would slit his throat." They also knew how often I was working with my music producer, and that I had just signed with LA Models.

4. These locations are in such close proximity to each other, they are separated only by a quarter of a mile of each other.

5. I believe this was a calculated choice, to continue to keep tabs on me, and make me feel unsafe in my own home town.

6. Next came a series of Social Media messages that I believe were a direct violation of my order, and an attempt to contact me and find out where I live.

166

7. On November 14th, 2017, I was contacted on Instagram by Kennedy Brown, one of Dusty's assistants, who reached out in an effort to obtain my personal, new residence. In her message she mentioned that she had her own clothing line, and she wanted to send me merchandise. She asked for my address, which I found suspicious, knowing her close relationship with the Button's. So I gave her the address of the Boston Ballet to be cautious. She thanked me and said she would send the merchandise, but I never received anything from her.

8. On March 27th, 2018, Kennedy sent me yet another message. In this message, she stated that she had, "Given Mitch Button a hoodie to give to me a while back, but didn't know if it ever gotten to me." She again asked for my address only this time I did not reply. I felt it was too coincidental that she mentioned Mitchell Button's name in the message and I was fearful that they were trying to get my new address for a second time.

9. The most troubling of all the events of the past year would have to be the multiple conversations I have had with the parents of other young girls the Button's have done this to over the course of this year. Their abusive, violent, and manipulative behavior has not and will not stop with me; the allegations from these other victims range from terror, to drugging, to rape. I have urged these other victims to come forward but they are fearful.

10. The protection from this restraining order is essential to me living a normal life without fear. Dusty and Taylor Button are vengeful people, and I sense their need for revenge. Around April, 2018, Mitchell Button And Dusty Button created an Instagram profile named, "Haytmayl." Their slogan was, "Soon but not soon enough."

11. I believe wholeheartedly that if my order were to not be renewed, that Dusty and Taylor would actively blackmail me, and release content that they have withheld from court.

12. I am asking that the court consider me a candidate for a permanent restraining order, so that I can officially put this part of my life behind me. I am still scared for my safety, and always will be unless I have permanent protection.

Signed this 14th day of August, 2018,
Respectfully Submitted,

Sage Humphries





| MAP | Person | Address | Distance From Buttons | Relationship to Sage |
|---|---|---|---|---|
| A | LA Models | 7700 Sunset Blvd., W. Hollywood | 0.34 miles | Sage's Modeling Agency |
| C | Anthony Giovanni | 1360 N Crescent Heights Blvd., W Hollywood, CA | .3 miles | Sage's boyfriend |
| B | Warren Huart | 8718 Lookout Mountain Ave., L.Angeles, CA | 3.1 Miles | Sage's music Producer |

169



spot in that "car"
the drive.

1:32 PM



**Right?**

2:00 PM

——————— Oct 30, 2017 ———————

8:04 PM



This is on Taylor's
story

8:05 PM

160 / 1

Enter message





‹  **blackswanbrand**  

Hi Sage! I would love to gift you one of our leotards. Is their a mailing address we can send to & what size would u wear?

November 14, 2017 at 6:50 PM

Hi! Yes that is so sweet of you 

November 15, 2017 at 11:54 AM

Yay! Where can we mail?

November 15, 2017 at 12:44 PM

19 Clarendon St
Boston, MA  02116
United States
Dancer Sage Humphries


 Write a message...    

172



‹                    **kennedybrown3**                    ⓘ

Yesterday at 8:00 PM

 hey girl! I started this ballet
streetwear line with my sister a while
ago and I had actually given Mitch
button a hoodie to give to you a while
back but don't know if it ever got to
you. I want to send you some merch!
what's your address?



Decline                    **Allow**

173



AT&T LTE     8:16 AM     9%

## button_built

**368** posts    **51K** followers    **596** following

Follow

**BUTTON BUILT™**
- RedBull
- Archetype
- Los Angeles
- Haytmayl 🖤 🖤
- Trailer Park Pioneer
- Overcompensationalist™
- King <——> @Dusty_Button 🖤
www.HAYTMAYL.com.SoonYetNotSoonEnough/
Followed by **bloch_eu** and **blochdanceusa**



