UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SAGE HUMPHRIES, et al.,

        Plaintiffs,

v.

MITCHELL TAYLOR BUTTON and
DUSTY BUTTON,

        Defendants.

Case No. 2:21-cv-01412-ART-EJY

**ORDER**

## I.    Background

Pending before the Court is Plaintiffs' fifth Motion seeking sanctions.  ECF No. 402; *see also* ECF Nos. 77, 120, 168, and 372.  On this occasion, Plaintiffs ask the Court to enter case terminating sanctions against Defendants.  ECF No. 402.  Much of what Plaintiffs complain about has previously been raised with the Court.  For example, Plaintiffs complain that Defendants have burdened the Court with numerous motions, disrespected the undersigned, caused one Plaintiff to withdraw from this case, and conducted ugly on-line attacks against Plaintiffs.  A review of the docket shows many of these events occurred months ago, were considered by the Court, and addressed in various Orders.  ECF Nos. 104, 162, 220, and 421.

Plaintiffs also raise new concerns including violation of the Court's Order regarding the publication and use (outside the instant litigation) of Plaintiff Sage Humphries' ("Humphries") electronically stored information ("ESI"),[1] which Order this Court entered in December 2022, and which resulted in sanctions (ECF No. 104) that were subsequently stayed until the completion of

---

[1]    On August 15, 2017, long before this lawsuit commenced, the Honorable Robert J. McKenna, Judge sitting in the Commonwealth of Massachusetts, stated: "The defendants are to surrender any and all personal information to the Boston Police Department -- fine if you gave it to Attorney Melcher -- pertaining to the plaintiff [Sage Humphries], including electrically stored information, and that any such information is not to be published in any way at all. I hope your clients heard me loud and clear."  Counsel for Defendants responded: "I have instructed them, Judge."  The Court then stated: "If there is any -- if there is any violation of any part of the order, including that part of the order, your clients will not like the results."  ECF No. 77-2 at 65.  In December 2022, this Court ordered Defendants to "turn over all materials in their possession, custody or control, including electronically stored information, that relates in any way to the materials addressed by the Boston Court Orders."  ECF No. 104 at 10.  As explained herein, Defendants clearly have not done so as they attached materials sourced from Humphries' ESI to recent lawsuits.

this litigation.  ECF No. 254.  Plaintiffs also alert the Court to recent publication of Jane Doe 1's ("JD1") confidential medical records and confidential deposition testimony.

Defendants' Response to Plaintiffs' instant Motion (ECF No. 405) predictably denies all allegations raised and claims Plaintiffs, not Defendants, have engaged in harassment and unethical behavior.  Nonetheless, Defendants admit that they have filed (1) numerous lawsuits against Plaintiffs, and Plaintiffs' (current and former) legal counsel, families, friend, and others, and (2) numerous bar complaints against Plaintiffs' counsel which they state they will continue to do.

Plaintiffs' Reply points out, *inter alia*, that Defendants do not deny they published extracts of JD1's confidential medical records in violation of this Court's Protective Order; nor do they deny the republication of Humphries' ESI, which was prohibited by this Court.  ECF No. 407.

The Court entered a Stipulated Confidentiality and Protective Order on May 31, 2022 that states, in part: "Absent an Order from a court of competent jurisdiction, Recipients of Confidential Discovery Material under this Order may use such material solely for the prosecution and defense of this action, any appeals thereto, and any alternative dispute resolution proceeding intended to resolve this action with prior express permission of the Producing Party, and not for any other purpose or in any other litigation proceeding."  ECF No. 51 ¶ 19.  Other portions of this Order are relevant to the finding herein, but are not quoted here.  The Supplemental Protective Order, entered on May 4, 2023 states: "the Stipulated Confidentiality Agreement and Protective Order at ECF No. 51 is modified such that the following materials are hereby designated as confidential, regardless of whether the following materials were previously designated as confidential, and regardless of whether they are explicitly designated as confidential in the future: (a) medical, mental health and/or other health care records; … (e) extracts and summaries of any information identified in (a)-(c)." ECF No. 166 ¶ 5.  The Supplemental Protective Order further states: "For the avoidance of doubt, no Confidential Discovery Material may be publicized on the internet "in any fashion" or "used in communications that flow through the internet," including but not limited to via text message, snapchat, Instagram, WhatsApp, YouTube, or any other social media platform."  *Id*. ¶ 14.  Finally, the Supplemental Protective Order reiterates: "Absent an Order from a court of competent jurisdiction, Recipients of Confidential Discovery Material under this Order may use such material

solely for the prosecution and defense of this action, any appeals thereto, and any alternative dispute resolution proceeding intended to resolve this action with prior express permission of the Producing Party, and not for any other purpose or in any other litigation proceeding." *Id*. ¶ 15.

## II.    Discussion

The Court's inherent power to sanction includes the authority to dismiss a case when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" or "has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 968 (9th Cir. 2006) *citing Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995). The district court is required to consider the following factors before imposing the "harsh sanction" of dismissal: "(1) the public's interest in the expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the other party; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012) (internal citation and quote marks omitted). "Only willfulness, bad faith, and fault justify terminating sanctions." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (internal citation and quote marks omitted).

When a court order is violated, "the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). The Court must also determine, "whether the discovery violations 'threaten to interfere with the rightful decision of the case.'" *Lowry v. Metro. Transit Bd. MTBS*, Case No. 09cv00882, 2013 WL 4046657, at *2 (S.D. Cal. Aug. 5, 2013) (citing *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith or fault warranting default." *Stars' Desert Inn Hotel & Country Club Inc. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997). Courts may dismiss actions by *pro se* litigants for failure to comply with court orders. *See Lowry*, 2013 WL 4046657, at *2 (finding the *pro se* litigant, "ha[d] shown a continued lack of respect for the judicial process that he himself initiated, and '[i]t is appropriate to reject lesser sanctions where

the court anticipates continued deceptive misconduct.'").  Sanctions may also be imposed on *pro se* litigants where there is evidence of bad faith due to multiple proceedings which are unreasonable and vexatious.  *Wages v. Internal Revenue Service*, 915 F.2d 1230, 1235–36 (9th Cir. 1990).

Plaintiffs ask the Court to exercise its inherent authority to enter case terminating sanctions against Defendants based on what Plaintiffs state is Defendants' egregious conduct that includes violating the Court's orders, instituting numerous lawsuits against Plaintiffs' family, friends, and counsel, on-line harassment of Plaintiffs, criminal intimidation of witnesses, burdening the Court with frivolous motions, and disrespecting the undersigned and Plaintiffs' counsel.  As described, and given the Court's deep familiarity with this case, Defendants' conduct is without doubt outside the norm of aggressive civil litigation.  What appeared to be and remains to be apparent is that Defendants' on-line campaign through YouTube videos and websites were grossly inappropriate and ultimately removed (mysteriously) after the Court made clear that if there was any evidence that Defendants were responsible for the posting, severe sanctions would follow.  ECF No. 163 at 92-93, 95.[2]  There is also no doubt that Defendants filed numerous motions—many of which were without merit—but all have been decided by the Court and no longer crowd the docket or burden Plaintiffs.  Further, Defendants proceed *in forma pauperis* and their misguided efforts to defend themselves in this case before this Court, while time consuming, has not been so egregious as to warrant case terminating sanctions.

---

[2]      During the April 5, 2023 hearing, the Court stated: "On January 15, 2023, a video was posted to the YouTube channel that includes screenshots of text messages between Mrs. -- Ms. Humphries and Daryl Katz that coincide with the [D]efendants' statements and declarations that they discovered text messages between these two individuals on their external drive or hard drive, whichever it was.  And they have -- there are also a variety of other videos that have been posted with … [Defendants] pictures, so I guess somebody else, you're saying, has done -- created all of these videos. Let me tell you now that if, in response to the subpoenas that are going out to the various social media and web sites, there is discovery that you posted, controlled, or owned these web sites, there will be serious sanctions entered by the Court.  And in the -- in the event -- in the event that you, in fact, control -- and I'm not saying you do -- control the video about Jane Doe, the video about Juliet Doherty, the two videos about Ms. Humphries, …, the video about Daryl Katz, if, in fact, you do control them, I would -- I can't order you to take them down because I don't know that you own them. But if you do control them or you do have control over them or if you did post them, whether directly or indirectly, and they don't come down and I discover that you did have control, that you did have ownership, that you did direct the posting of these, whether directly or indirectly, there will be serious sanctions entered by the Court."  The Court further stated: "With respect to the -- the web -- or what is -- Snapchat, whatever it is, the formerly known as Dusty Button account, I'll call it, again, any further threats -- and there were threats in those postings -- that are made to any witness, if they are controlled by you, done on your behalf by somebody else and it is demonstrated successfully to the Court or that you did them, there will be serious sanctions entered by the Court."

4

In contrast, Defendants' six lawsuits against Plaintiffs' current and former counsel, witnesses, and family members, and Defendants' bar complaint campaign are troubling. Defendants have the right to access the courts, but not for purposes of intimidation and harassment of current litigants, their counsel, or witnesses. Further, the use of confidential information disclosed in the course of this litigation, but filed in other cases outside of the District of Nevada, is also of serious concern. District Courts "have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (internal quotations and citations omitted). Under Rule 11 of the Federal Rules of Civil Procedure, which apply to *pro se* defendants, may be applicable when litigation is commenced for an improper purpose such as leveraging separate proceedings to embarrass, intimidate, or harass. *In re Kunstler*, 914 F.2d 505, 518-19 (9th Cir. 1990). *But see Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) (per curiam) ("Although Rule 11 applies to *pro se* plaintiffs, the court must take into account a plaintiff's *pro se* status when it determines whether the filing was reasonable.").

The Court starts its analysis of Plaintiffs' request for case terminating sanctions by applying the five factors the Ninth Circuit has identified as properly reviewed before imposing the harsh sanction of dismissal.

A.    The Public's Interest in the Expeditious Resolution of Litigation and the Public Policy Favoring Disposition of Cases on Their Merits.

"Orderly and expeditious resolution of disputes is of great importance to the rule of law ... [and b]y the same token, delay in reaching the merits ... is costly in money, memory, manageability, and confidence in the process." *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006). This standard is considered together with the "[p]ublic policy favoring disposition of cases on their merits[, which] strongly counsels against dismissal." *Id.* at 1228. These elements are opposite sides of the same coin.

Here, the parties have filed and fully briefed competing motions for summary judgment that are pending before the assigned District Judge. Entering case terminating sanctions would deprive

all parties—who have finally reached dispositive motion practice—from a decision on the merits of this dispute.  Of course, waiting for resolution of dispositive motions certainly will be a less expeditious resolution than dismissal as a sanction.  Logic, reasoning, and fundamental fairness precludes this decision maker from elevating expediency over merits.  This dispute has been litigated for four years.  Plaintiffs raised serious allegations that Defendants vehemently oppose.  Defendants have lashed out inappropriately at times, and certainly initially when the case commenced.  However, to end this case now tinges this lengthy legal process with a dispositional sanction not warranted based on expeditiousness rather than merit.

B.    The Need to Manage the Court's Docket.

This factor does not support case terminating sanctions as summary judgment motions are fully briefed and pending.  The Court's docket is not, now, burdened any more than any civil case is at this juncture of proceedings.

C.    Prejudice to the Opposing Party.

It is not too much to say that entry of case terminating sanctions would be prejudicial to Defendants.  However, case terminating sanctions are always prejudicial to the non-moving party.  The question before this Court is whether the prejudice is warranted by virtue of the bad faith or vexatious conduct of the non-moving parties in this case.  These considerations are discussed below.

D.    Additional Considerations Including the Availability of Less Drastic Sanctions.

First, the Court notes that sanctions were previously entered against Defendants.  ECF No. 104.  Defendants were also warned by the Court to focus on substance rather than *ad hominem* attacks.  *See* ECF Nos. 163 at 82, 84, 85, 89; 222 generally; 305 at 3-4; 421 at 3.  Defendants were plainly told not to disclose Humphries' ESI or other confidential information such as, but not limited to, medical records and confidential portions of Plaintiffs' deposition testimony.  ECF No. 163 at 90.[3]; ECF No. 421 at 2.  Defendants have ignored these warnings and the threat of sanctions most recently in filings of various lawsuits against Plaintiffs' families, friends, and associates.  ECF No.

---

[3]    On April 5, 2023, the Court told Defendants there was to be "[n]o publication of any materials that could only have come from … [Humphries'] iPhone, whether it is a screenshot or an actual text or anything else.  It is not to be used outside of this litigation by you and plaintiffs, attorneys, and experts.  The end. No exception.  Nothing.  No other use, no other use.  That's it.  There's nothing else to discuss about it."

402 at 10 *citing*: (i) the unsealed complaint filed by Defendants against Humphries' parents (as well as two other individuals) titled *Button et al. v. Micha Humphries et al.*, Case No. 8:24-cv-01730-JVS-DFM (C.D. Cal), ECF No. 1 at 218-219 (in which texts from Humphries' cell phone are inserted in a letter from Defendants' former counsel to counsel for Daryl Katz, an individual with whom Humphries had a personal relationship); (ii) the unsealed complaint against former Plaintiff Juliet Doherty, her mother, and a business associate titled: *Button et al. v. Doherty et al*., Case No. 1:24-cv-05026-JPC-KHP (S.D.N.Y), ECF No. 1 ¶ 232 (in which Defendants described Humphries' cell phone content—which they call her "camera roll"—containing text messages between Daryl Katz and Humphries and allege the contents proves "illegal sexual activities between the two" as well as monetary payment for the activities); (iii) the sealed complaint filed against JD1's parents, former therapist, and former counsel titled: *Buttons v. ... [JD1's Parents, Counsel, and Therapist]*, 1:24-cv-00220-SM-AJ (D. N.H.) (the "New Hampshire JD1 Parent Complaint"), also filed under seal in this proceeding at ECF No. 374, citing disclosures in ¶¶ 20, 21, 24-29, 31, 34, 84, 85, 88, 91, 156, 157; and (iv) the New Hampshire JD1 Parent Complaint at ECF No. 374 and 374-1, citing disclosures in ¶¶ 8, 17, 20 n.4, 83 n.13, 89 n.15, 91 n.17, 97 n.20, 98 n.21, 105 n.24, 108 n.25, 118, 125, 133, 137, 138 n.33, 147 n.34, 148-49, 158-59, 162, 170, 173, 361.   This conduct borders on bad faith as the Court can find no reason why Defendants would not understand the prohibition against the use of Humphries' ESI, confidential deposition testimony or confidential medical records outside of this case.

If the Court had the power to strike portions of Defendants' filings in District Courts outside of Nevada in which this information was revealed it would do so.  But, the District of Nevada cannot reach matters pending in the Central District of California, the Southern District of New York, or the District of New Hampshire.  This Court cannot require those courts to take specific action.  The Court can, and does, however, warn Defendants that if subsequent to this Order Humphries' ESI, confidential deposition testimony, or confidential medical records disclosed in this case is (1) filed in any court proceeding without first obtaining permission of the Court to do so under seal, or (2) posted by Defendants anywhere publicly on any platform, the Court will enter a recommendation

that Defendants' operative complaint and counterclaims be struck resulting in judgment for Plaintiffs. This is the last warning Defendants will receive.

With respect to the six lawsuits filed by Defendants across the country, while the Court understands Plaintiffs' argument that these are meant to intimidate witnesses, the undersigned could not find and Plaintiffs cite no authority for the proposition that case terminating sanction in this case is the proper response. In each of the cases filed, motions to dismiss and, if the defendants in those cases so choose, motions for sanctions may be filed. Abuse of process claims may be filed. Vexatious litigant motions may be filed. However, the Court finds no precedent for entering terminating sanctions in this case based on those filings especially given that all of which remain pending at this time.

Finally, and in addition to the above, the Court agrees that much of Defendants' failure to abide by Court orders regarding the use and disclosure of confidential information is inexcusable and "has rendered the litigation of this action needlessly complicated and expensive, and has unjustifiably consumed a disproportionate amount of judicial resources." *Dolzhenico v. City of Los Angeles, California*, Case No. CV 15-4581 AB (SSx), 2016 WL 10587935, at *10 (C.D. Cal. Oct. 28, 2016). The Court is frustrated by Defendants' refusal to take seriously, and therefore comply with, what the Court has plainly stated. While the Court finds this case does not (yet) qualify for terminating sanctions under the five part test identified above, nonetheless, the absence of any sanction against Defendants that is meaningfully based in particular on their failure to comply with Court orders will cause Defendants to conclude they may continue to do so without consequence. *See id*. at *11. The Court therefore exercises its inherent authority to grants sanctions in the form of attorney's fees and costs based on Defendants' failure to obey the Court's Orders regarding the use of Humphries' ESI and other confidential disclosures. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014) (internal citation omitted) (under its inherent powers, a court may impose sanctions where a party has willfully disobeyed a court order, or where the party has "acted in bad faith, vexatiously, or for oppressive reasons."); *Pitman v. Brinker International, Inc.*, 216 F.R.D. 481, 483-84 (D. Ariz 2003) ("The district court has inherent authority to impose sanctions when a party disobeys a court order.").

1

**III.    Order**

2        Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion for Case-Ending Sanctions

3  (ECF No. 402) is DENIED solely because the only relief requested is found not applicable at this

4  time.

5        IT IS FURTHER ORDERED that the Court exercises its inherent authority to sanction

6  Defendants based on their failure to comply with prior Orders clearly and unequivocally stating that

7  (1) no medical records, (2) documents marked confidential, or (3) documents derived from Sage

8  Humphries' electronically stored information, no matter in what form or format, may be used for

9  any purpose outside of this litigation without Court approval to do so.

10        IT IS FURTHER ORDERED that Plaintiffs are awarded their reasonable attorney's fees and

11  costs associated with preparing and filing the Motion for Case-Ending Sanctions and Reply in

12  support thereof as a reasonable measure of sanctions related to Defendants' violation of the Court's

13  prior orders.  The amount of these sanctions may be briefed in a memorandum filed by Plaintiffs'

14  counsel no later than fourteen (14) days after the date of this Order.  Defendants will have fourteen

15  (14) days from the date of Plaintiffs' filing to respond to the memorandum.  No reply is permitted.

16        IT IS FURTHER ORDERED that while the Court will issue an Order awarding fees, the

17  Order will be stayed until the conclusion of this litigation.

18        IT IS FURTHER ORDERED that Defendants are expressly warned that a finding of a further

19  violation of this Court's order requiring no use or disclosure of Sage Humphries' ESI or other

20  confidential documents and information outside of this case without prior Court approval will result

21  in a recommendation that the Court enter case terminating sanctions.

22        Dated this 14th day of February, 2025.

23

24

25  ELAYNA J. YOUCHAH
    UNITED STATES MAGISTRATE JUDGE

26

27

28

9