# EXHIBIT A

# RE: August 27th Order / JPTO

**From:** Lindsey Ruff <LRuff@BSFLLP.com>
**To:** DUSTY BUTTON <worldofdusty@gmail.com>
**Cc:** Ducati Dynamics <desmodynamica@gmail.com>; Sigrid McCawley <smccawley@bsfllp.com>; Sabina Mariella <SMariella@BSFLLP.com>; Julia Bevan <jbevan@bsfllp.com>
**Subject:** RE: August 27th Order / JPTO
**Date:** Friday, September 18, 2026 11:21 AM

Mr. and Mrs. Button,

We understand that Defendants consent to extending the JPTO deadline. But that is not the only relief Plaintiffs seek. Plaintiffs also request that Defendants materially narrow their exhibit list. A list of more than 2,000 exhibits is not a reasonable trial designation, nor may Defendants reserve the right to use additional materials they have not designated as exhibits. Because Defendants have refused to narrow their list, Plaintiffs will seek relief from the Court and will attach this correspondence to their filing.

As to Jane Doe 1, the issue is fully briefed, and the Court will resolve it. As to Sage's ESI, the Court has repeatedly considered and rejected the argument Defendants again raise. The Court expressly found "nothing in the plain text" of the abuse prevention orders "that refers to an exception for information voluntarily provided by Humphries." ECF No. 104 at 8. Defendants' disagreement with that ruling does not permit them to disregard it. These issues have already been litigated, and further debate by email would not be productive.

Best,

Lindsey

---

**From:** DUSTY BUTTON <worldofdusty@gmail.com>
**To:** Lindsey Ruff <LRuff@BSFLLP.com>
**Cc:** Ducati Dynamics <desmodynamica@gmail.com>; Sigrid McCawley <smccawley@bsfllp.com>; Sabina Mariella <SMariella@BSFLLP.com>; Julia Bevan <jbevan@bsfllp.com>
**Subject:** Re: August 27th Order / JPTO
**Date:** Friday, September 18, 2026 10:56 AM

Lindsey,

Your response again shows that you are not reading our emails before mischaracterizing them. Our telephone-number reference concerned the BSF portal account previously used by Defendants, not the new ShareFile link. We will use the new link.

We expressly stated that we will correct all OCR and metadata errors in the exhibit descriptions. We presently expect to use each of the approximately 2,000 listed exhibits at trial. We also explained that the 2014 materials, along with the other identified historical folders, must remain available at trial. If

BSF requires those files to be separately labeled and Bates-stamped as trial exhibits, we will do so. None of this is new discovery; Plaintiffs have possessed these materials for years despite your failure to retain all discovery we provided to you.

For five years, and in innumerable ECF filings, we have explained that Jane Doe 1 has never identified a definite date, time, location, or consistent account. We raised this issue from the beginning and later sought Rule 11 sanctions against BSF and its client for this precise reason. We will identify those filings in our opposition to the "relief" BSF now seeks.

Plaintiffs cannot create a false narrative and then expect Defendants to prove that an alleged encounter with someone they never met was impossible while preventing Defendants from showing the jury the evidence disproving any date Jane Doe 1 may eventually choose. That would deny Defendants a fair opportunity to present their defense and raise fundamental due-process concerns.

The 2014 and other folders in question have remained entirely untouched in their original hard drive location since the first time they were uploaded to your server and further more, Sigrid utilized a file from one of these folders in Taylor's deposition which confirms that the files are not corrupted and that your firm has no issue opening them. (We will provide that portion of Taylor's deposition to the Court. The only logical explanation is that there is a "new" problem on your end which you are failing to address or correct, or you have no problem opening the files at all and are once again, making a false statement in order to manipulate the Court and prevent us from having a fair trial.

We agreed to a joint stipulation provided that it accurately stated our position. BSF's refusal to do that, followed by its announcement that it will seek relief using a materially altered version of our position, makes the purpose of this correspondence apparent. BSF appears intent on attacking Defendants' conduct while withholding the facts necessary for the Court to understand why these exhibits are required.

BSF previously convinced the Court that Defendants stole data from its client, resulting in unwarranted sanctions that you have unethically used against us in other litigation, despite the later sworn admission that the data was voluntarily uploaded after your own client asked to do so. We will not permit another incomplete and misleading narrative to be presented in the same manner. If BSF files its request, attach the complete email chain. We will provide the full record, identify the prior ECF filings, and oppose the requested relief.

You asked whether Defendants would consent to joint relief extending the deadlines and addressing the exhibit designations. We agreed and offered to submit a joint stipulation because that would be the most efficient course for the Court, provided our position was stated accurately. Your refusal to proceed on that basis makes clear that you do not want the Court to receive Defendants' actual position. Instead, you intend to seek unilateral relief using a knowingly false characterization of what Defendants said and offered, just as BSF has previously presented false and misleading statements to the Court. We will place this complete exchange before the Court so there can be no misunderstanding about who attempted to resolve the issue jointly, who refused to do so, and exactly why eliminating evidence necessary to disprove whatever date Jane Doe 1 may ultimately identify would create a serious due-process issue that would inevitably become an appellate issue. We have also already addressed this issue appropriately in our request for an evidentiary hearing.

As stated, we will correct the exhibit-list issues you identified and begin uploading the files through the new ShareFile link. However, there is no issue whatsoever opening the files on our end through Google Drive and as stated in our previous email, the fact that you claim the alleged "zip files" won’t open make it clear you did not even attempt to open the files because there are no zip files and you have yet to identify files you complained would not open when we asked; furthermore, the 2000+ identified trial exhibits are appropriately Bates-stamped.

We will oppose your requested relief based on the parties’ communications over the past five years, the relevant ECF filings, and the clear statements made throughout this email chain, which your responses demonstrate have either gone unread or have been deliberately disregarded and mischaracterized.

Buttons

---

**From:** Lindsey Ruff <LRuff@bsfllp.com>
**Date:** Sep 18, 2026, 8:01 AM

Mr. and Mrs. Button,

The ShareFile link is not associated with any particular phone number, so we do not understand your reference to a different number. Regardless, here is a new link that does not require you to enter any phone number: [redacted] . Please promptly upload your trial exhibits. Please also provide a revised exhibit list with descriptions that accurately match the Bates-stamped documents. BUTTON0001 is not an isolated mismatch; the problem appears throughout the list.

To be clear, Plaintiffs are not merely requesting an extension of the JPTO deadline. Plaintiffs will ask the Court to require Defendants to materially narrow their exhibit list. More than 2,000 exhibits is not a reasonable trial designation and could not possibly be presented to the jury. Courts routinely require parties to narrow exhibit lists in less extreme circumstances.Because you have declined to narrow your list and instead indicate that you intend to add more materials, Plaintiffs will seek relief today given the impending deadline.

Nor is the issue that BSF maintained an “incomplete or inaccurate version” of the record. Each party must identify a tailored set of exhibits it reasonably anticipates introducing at trial, accurately describe those exhibits in a list provided to the opposing party and the Court, and provide the underlying materials for review. Plaintiffs did so by identifying 175 exhibits, organizing them into an exhibit list, and providing Defendants with both the list and the exhibits. Defendants have not done the same. Instead, Defendants provided an overlength set accompanied by a list that does not accurately identify the exhibits, plus thousands of additional, unidentified files that are neither Bates-stamped nor included on the exhibit list, while purporting to reserve the right to use them at trial. That is not workable, particularly with the JPTO deadline one week away.

We disagree with your characterization of the remaining issues but do not believe debating them by email would be productive.

Best,

Lindsey

---

**From:** DUSTY BUTTON <worldofdusty@gmail.com>
**To:** Lindsey Ruff <LRuff@BSFLLP.com>
**Cc:** Ducati Dynamics <desmodynamica@gmail.com>; Sigrid McCawley <smccawley@bsfllp.com>; Sabina Mariella <SMariella@BSFLLP.com>; Julia Bevan <jbevan@bsfllp.com>
**Subject:** Re: August 27th Order / JPTO
**Date:** Friday, September 18, 2026 12:24 AM

Lindsey,

We will correct the exhibit chart, including the BUTTON0001 description and any other descriptions affected by OCR or the accidental inclusion of "Get Info" metadata.

We agree to an extension, but our position must be stated clearly. We will not allow BSF to blame us for submitting evidence that Plaintiffs have already possessed for more than five years.

If the issue with the 2014 folders is that they have not been labeled as trial exhibits, we will label and Bates-stamp them. Even with an extension, however, we are not going to manually rename tens of thousands of files because OCR descriptions are imperfect or because BSF is having difficulty downloading folders previously provided to Plaintiffs.

The 2014 folders are not new. Plaintiffs already received them, and we can prove when and how they were sent. Plaintiffs have also represented that everything received from Defendants was Bates-stamped. If BSF is now claiming that Plaintiffs never received, saved, or Bates-stamped these folders, that is a serious issue we will raise with the Court.

We also have additional folders from 2012, 2013, 2015, 2016 and 2017 to upload. Altogether, this is approximately 500 gigabytes of data that Plaintiffs have previously received. We cannot afford to keep duplicate copies of that much data on multiple paid storage services, so it must be restored and uploaded in sections.

These historical folders must remain available because Jane Doe 1 has not provided a definite date, time, location, time of day, or consistent account of what she claims occurred. Defendants maintain that they have never met Jane Doe 1. We are therefore being forced to preserve years of evidence to prove that an alleged event involving a person we never met did not occur.

We may not introduce every file at trial, but we will not waive our ability to use these records if Jane Doe 1 identifies a date, changes her account, or provides testimony that makes particular records relevant.

It is unreasonable for BSF to accuse Defendants of burdening the Court when this burden exists because Plaintiffs have pursued Jane Doe 1's allegations for years without identifying when or where the alleged event supposedly occurred. BSF created this situation, and Defendants have no choice but to preserve the evidence necessary to respond to whatever version of the allegations is ultimately

presented.

We also reject your attempt to dismiss our statements as “personal attacks.” Plaintiffs previously convinced the Court that Defendants stole your client’s telephone and data. Your client later admitted under oath that she voluntarily gave the device and data to Defendants, exactly as Defendants have stated under oath since 2017.

Separately, we now have the Boston Magazine transcript. Sigrid testified under oath that [redacted] never spoke to the media, but we possess direct evidence and transcript that [redacted] did in fact, communicate with the media. That is a direct contradiction in sworn testimony, not a personal attack.

Calling these facts “personal attacks” does not answer them. It also does not change the fact that false and misleading information has been presented to the Court. If BSF files another motion containing an incomplete or inaccurate version of the record, Defendants will provide the full evidence and seek appropriate relief.

Furthermore, the Google Drive folders were not ZIP files, and they open correctly on our end. If something did not download, identify the exact folder and filename. A general claim that files only partially downloaded does not tell us what supposedly failed. We will attempt to upload everything through ShareFile. However, the BSF portal has the wrong telephone number connected to our account, so the authentication code is not being sent to us. Please correct the number or provide another working method of access. 843-360-7072 is the correct phone number as previously stated.

We addressed the separate Jane Doe 1 issue in our request for an evidentiary hearing. If BSF has other specific concerns, identify them now.

We consent to a reasonable extension. We do not consent to any statement that Defendants acted in bad faith, that previously produced evidence is new, or that Defendants are responsible for BSF’s inability to locate or download materials Plaintiffs already received years ago.

Please send the proposed stipulation.

Buttons

---

**From:** Lindsey Ruff <LRuff@BSFLLP.com>
**Date:** Sep 17, 2026, 8:14 PM

Mr. and Mrs. Button,

When we attempt to download the zips, the folders are not in their original state and are only partially downloading. Accordingly, please upload the exhibits to this Sharefile link:
[redacted]

Setting aside the inappropriate language and personal attacks in your email, your exhibit list of over 2,000 exhibits cannot possibly constitute be a good-faith identification of exhibits you reasonably anticipate introducing at trial.

Compounding the problem, you have sent thousands of additional files in the so-called “2014” folders—and indicate that you intend to provide more—that are neither Bates-stamped nor included on your exhibit list, while purporting to reserve the right to use them at trial. Moreover, your exhibit list does not match the exhibits themselves. For example, BUTTON0001 is a Facebook communication produced by Danielle, but the exhibit list describes it as “PDF / Document: Boston Magazine article/material concerning Sage Humphries allegations and Defendants.”

Plaintiffs cannot reasonably be expected to review and prepare objections to more than 2,000 exhibits in ten days, particularly when your exhibit list does not accurately identify them. The designation would also impose an unreasonable burden on the Court, which would be asked to resolve objections to thousands of exhibits. In comparable circumstances, courts have limited the number of exhibits parties may designate for trial.

Plaintiffs therefore intend to move for an order limiting Defendants’ exhibit designations, setting a deadline for Defendants to provide a narrowed and accurate exhibit list, and extending the JPTO deadline accordingly. Please advise whether Defendants consent to the requested relief.

Best,

Lindsey

---

**From:** DUSTY BUTTON <worldofdusty@gmail.com>
**To:** Lindsey Ruff <LRuff@BSFLLP.com>
**Cc:** Ducati Dynamics <desmodynamica@gmail.com>; Sigrid McCawley <smccawley@bsfllp.com>; Sabina Mariella <SMariella@BSFLLP.com>; Julia Bevan <jbevan@bsfllp.com>
**Subject:** Re: August 27th Order / JPTO
**Date:** Thursday, September 17, 2026 12:43 AM

Lindsey,

Your email disregards the instructions provided with Defendants’ production. We expressly stated that BUTTON001–BUTTON1865 were contained in two Bates-stamped PDF compilations, while BUTTON1866–BUTTON2110 were being uploaded separately as native media files in large batches.

That upload is now complete. You accessed and downloaded the folder prematurely, before the upload finished, which is why only BUTTON1878–BUTTON2110 appeared and why certain files were incomplete, corrupted, or unplayable. Delete the premature download and download the completed production before alleging any defect.

To be unequivocally clear: nothing in this production is new discovery. Every item was previously produced to Plaintiffs. These exact materials were provided through Google Drive, BSF portal links, deposition exhibits, summary-judgment filings, and exhibits filed with the Court. They have merely been reorganized and reproduced in sequential BUTTON order for trial. Plaintiffs’ failure to maintain or review materials already in their possession does not transform them into new evidence or create any obligation for Defendants to explain why they were supposedly withheld—an assertion nearly as

delusional as being paid to litigate this case for five years on behalf of a mentally ill stranger whom neither Defendant has ever met.

Defendants went considerably further than merely reorganizing the materials. We created a 2,110-entry exhibit chart identifying each trial BUTTON designation, describing the exhibit, and providing its corresponding filename or identifier. The chart preserves the original filenames where applicable and identifies the precise PDF compilation and page number for materials combined into the two Bates-stamped PDFs. This cross-reference allows Plaintiffs to match each trial designation to the exact material previously produced. The suggestion that these are unidentified "new" materials reflects a failure to review both the production and the exhibit chart.

The 2014.1, 2014.2, and 2014.3 folders are subdivisions of 2014 materials produced to Plaintiffs years ago. They are conditionally designated as potential location, metadata, impeachment, and rebuttal exhibits. Defendants are not representing that every file will be introduced at trial. The necessary subset cannot be narrowed until Jane Doe 1 identifies the date, time, location, or factual scenario she intends to claim.

As a professional courtesy—although Plaintiffs refused to extend the same courtesy by restoring our access to the previously uploaded folders—the completed folders contain:

* 2014.1: 10,001 items

* 2014.2: 263 items

* 2014.3: 14,847 items

* Final Trial Exhibits: 725 uploaded files in total, including the PDF compilations

These materials must remain available because Jane Doe 1 has never identified a reliable date, time, location, season, quarter, or other meaningful factual anchor for her allegations. Her records have implicated inconsistent years, including 2012, 2014, and 2015. The metadata establishes Defendants' location on whatever date and time she ultimately attempts to fabricate, should she actually find her way to the stand after being functionally absent from this litigation apart from a "deposition" consisting of nearly 400 "I don't recall" responses elicited with the assistance of counsel fully aware that she has never met either Defendant.

Plaintiffs cannot maintain deliberately vague and shifting allegations and then object to the evidence necessary to rebut them should Jane Doe 1's story change again under oath. Plaintiffs have received the complete folders and have notice of every file within them. Defendants expressly preserve the right to use any responsive file made relevant by Jane Doe 1's testimony or by a change in Plaintiffs' timeframe, location, or theory. Plaintiffs cannot withhold the basic facts necessary to identify a narrower subset and then argue that Defendants waived the evidence required to rebut whatever version is ultimately presented.

If any audio or video remains inaccessible after downloading the completed production, identify the exact filename, BUTTON number, error message, and specific ESI-protocol provision allegedly violated. A blanket complaint about unidentified files is inadequate, and Defendants cannot troubleshoot files downloaded before the upload was complete.

Plaintiffs requested everything relevant to Jane Doe 1 and their clients, and Defendants produced it. Defendants then incurred the expense of purchasing additional storage to provide the same materials again in an organized trial format. We are not responsible for repeatedly performing Plaintiffs' document review or compensating for counsel's failure to familiarize itself with a record Plaintiffs have possessed for years.

It is clear that you and your firm have largely checked out of this litigation despite having recruited the majority of its Plaintiffs. You nevertheless owe your clients a duty to familiarize yourselves with the discovery Defendants produced. Considering Sigrid lit this fire only to fail at the bare minimum of remembering her own Plaintiffs' names during Taylor's deposition, we are not surprised that we are again wasting time explaining the record to your firm.

Delete the incomplete download, download the completed production, and confirm receipt. Before suggesting again that any material is new, review Plaintiffs' prior productions, deposition exhibits, summary-judgment materials, and court filings. Every final trial exhibit provided here was previously produced during discovery.

As we have already explained in dozens of filings and direct emails to you, additional previously produced data folders spanning 2012, 2013, 2015, 2016, and 2017 will follow once you confirm that the current folders have been completely downloaded. Those folders serve the same purpose as 2014.1, 2014.2, and 2014.3: their metadata documents virtually every day of Defendants' lives during those years and proves that Defendants could not have met Jane Doe 1, regardless of whatever date she pulls out of her ass at trial—if she can bring herself to fabricate one.

Your refusal to restore our access to the folders previously uploaded to your server, your representations to the Court concerning those uploads, the extraordinary volume transmitted, and your present failure to recognize the same files now being reproduced strongly suggest that your firm failed to preserve or review Defendants' discovery. You apparently dismissed the significance of approximately 500,000 files without understanding that their metadata creates a digital record of our daily lives during the years when we did not know your client existed. Your failure to understand or preserve that evidence does not make it new discovery.

Defendants offered Plaintiffs the opportunity to amend their complaint and withdraw Jane Doe 1's allegations, thereby avoiding the need to prove a negative through approximately 500,000 files. Plaintiffs instead doubled down and gambled on a sociopath. This is the hand Plaintiffs chose, and it is now the hand they are being dealt.

No further back-and-forth is necessary. If Plaintiffs maintain their position, they may present it to the Court, and Defendants will respond with the complete production history and supporting documentation.

Defendants reserve all rights concerning Plaintiffs' false characterization of this production, Jane Doe 1's shifting allegations, and any attempt to exclude evidence made necessary by Plaintiffs' failure to identify a coherent timeframe.

Please advise when the downloads are complete so that Defendants may continue the uploads.

Regards,

Buttons

---

**From:** Lindsey Ruff <LRuff@bsfllp.com>
**Date:** Sep 16, 2026, 12:45 AM

Mr. and Mrs. Button,

The "Final Trial Exhibits Folder" contains only BUTTON1878 through BUTTON2110. Please advise when you will provide BUTTON001 through BUTTON1877.

The folder also contains video and audio files that we cannot play or download and that do not appear to comply with the ESI protocol. Please provide accessible, protocol-compliant copies or instructions for accessing these files.

In addition, the folder appears to contain materials that were not produced during discovery. Please confirm whether every item in the folder was previously produced. If any materials are new, please identify them by Bates number and explain why they were not produced before discovery closed.

Finally, please explain the purpose of the folders labeled "2014.1," "2014.2," and "2014.3." They appear to contain thousands of files that are not identified on Defendants' exhibit list. Please confirm whether Defendants intend to designate any of these files as trial exhibits. If so, each proposed exhibit must be distinctly marked and added to an exhibit list that permits Plaintiffs to identify and assert objections to it.

Plaintiffs reserve all rights concerning these exhibit designations, including the right to object to their volume and seek appropriate relief from the Court.

Best,

Lindsey

---

**From:** DUSTY BUTTON <worldofdusty@gmail.com>
**To:** Lindsey Ruff <LRuff@BSFLLP.com>
**Cc:** Ducati Dynamics <desmodynamica@gmail.com>; Sigrid McCawley <smccawley@bsfllp.com>; Sabina Mariella <SMariella@BSFLLP.com>; Julia Bevan <jbevan@bsfllp.com>
**Subject:** Re: August 27th Order / JPTO
**Date:** Wednesday, September 16, 2026 12:21 AM

Lindsey,

Attached is Defendants' final exhibit list. Defendants are also providing Google Drive links for the Bates-stamped exhibit production.

The exhibit list identifies Defendants' final Bates-numbered exhibits from BUTTON001 through BUTTON2110. BUTTON001through BUTTON1865 are contained in the first two Bates-stamped PDF

compilations because those materials are non-audio/non-video exhibits capable of being Bates stamped and combined in PDF format. The remaining exhibits, BUTTON1866 through BUTTON2110, are native media, image, audio, and video files being produced separately in Bates-stamped order.

Defendants have made a good-faith effort to organize, Bates stamp, and narrow the exhibit production for trial. The volume reflects the number of Plaintiffs, the number of claims and defenses at issue, Plaintiffs' own productions and allegations, the media/publication and damages evidence, and Defendants' need to preserve their ability to present a complete defense without waiving exhibits.

Because of the size of the files, Defendants will provide the remaining materials in Google Drive batches of approximately 200 GB at a time. This is a practical storage and upload limitation, not a refusal to produce. Plaintiffs already have many of these materials in other forms, and Defendants are now re-producing them in Bates-stamped order for trial. Defendants cannot afford additional storage beyond the upgraded Google Drive capacity already obtained for this production.

Defendants also cannot use Plaintiffs' upload portal because the portal has the wrong phone number on file for Defendants, which prevents access. Google Drive is therefore the practical available method for this production.

With respect to Jane Doe 1, Defendants are also identifying and uploading the 2014 folders because Plaintiffs have left Defendants no reasonable alternative. Jane Doe 1 has not identified a specific date, time, location, season, weather, time of day, or other meaningful factual anchor for her allegations. That lack of specificity creates an extraordinary and unnecessary burden on Defendants, who must be prepared to defend against whatever date, location, or factual scenario Jane Doe 1 may attempt to assert.

Defendants have attempted in good faith to narrow the materials. However, Plaintiffs cannot maintain allegations this vague while simultaneously objecting to the defense materials necessary to rebut them. The 2014 folders are being provided because Plaintiffs have placed that year at issue and because Jane Doe 1's records and assertions remain inconsistent.

Defendants further preserve the 2012, 2013, and 2015 folders in the event Jane Doe 1 identifies a different date, year, location, or timeframe at trial or in connection with the outstanding evidentiary-hearing issues.

The 2014 folders have not been Bates stamped. If Plaintiffs contend the entire 2014 folders must be Bates stamped, Plaintiffs may Bates stamp them. Defendants are not Bates stamping approximately 50,000 additional files at this time where the need for that volume is caused by Jane Doe 1's failure to provide basic identifying information. Requiring Defendants to Bates stamp that entire universe now would be unduly burdensome, disproportionate, and directly attributable to Plaintiffs' lack of specificity.

Defendants are producing and identifying these materials in good faith to preserve their rights, avoid waiver, and ensure they are not prejudiced by Plaintiffs' vague and shifting allegations from a woman they have never met. Defendants reserve all rights, objections, arguments, and remedies, including with respect to admissibility, authenticity, foundation, relevance, prejudice, and the pending evidentiary-hearing issues.

Regards,

Buttons

[redacted]

2014 folders / final trial exhibit folder

---

**From:** Lindsey Ruff <LRuff@bsfllp.com>
**Date:** Sep 14, 2026, 4:36 PM

Mr. and Mrs. Button,

Plaintiffs oppose Defendants' proposed request for separate or phased trials. Courts routinely try multiple defendants together, particularly where, as here, several of the claims arise from the same events and depend on overlapping witnesses and evidence. Separate trials would require repeated testimony and evidence, burden the parties and witnesses, and waste judicial resources. Any potential prejudice or jury confusion can be adequately addressed through limiting instructions, appropriate verdict forms, and other less burdensome measures.

If the claims against both Defendants are tried together, Plaintiffs do not object in principle to Defendants sitting together at counsel table, consulting with one another, coordinating the use of shared exhibits, or otherwise arranging their presentations efficiently, provided that Defendants' conduct is not disruptive and complies with any procedures or decorum requirements imposed by the Court. If the Court orders separate trials, however, Plaintiffs would object to Defendants coordinating their presentations in that manner. Among other concerns, it would be improper for a Defendant who is neither a party to the particular trial nor counsel of record to sit at counsel table. Plaintiffs would also object to that Defendant—who would instead be a third-party witness—remaining in the courtroom during other witnesses' testimony.

We are not sure what you mean by "avoid duplicative questioning." Plaintiffs will endeavor to present their case efficiently but reserve the right to question both Defendants concerning allegations and evidence relevant to each of them, including matters as to which their respective knowledge, conduct, or testimony may differ.

We will set forth Plaintiffs' positions in the JPTO as appropriate.

Best,

Lindsey

---

**From:** DUSTY BUTTON <worldofdusty@gmail.com>
**To:** Lindsey Ruff <LRuff@BSFLLP.com>
**Cc:** Ducati Dynamics <desmodynamica@gmail.com>; Sigrid McCawley <smccawley@bsfllp.com>; Sabina Mariella <SMariella@BSFLLP.com>; Julia Bevan <jbevan@bsfllp.com>

**Subject:** Re: August 27th Order / JPTO
**Date:** Sunday, September 13, 2026 9:21 PM

Lindsey,

As we finalize the Joint Pretrial Order, we want to bring a material trial-management issue to your attention so we can address it in the joint draft.

Defendants will include in the JPTO our position that separate trials, trial phasing, or specific trial-management procedures are necessary under Federal Rules of Civil Procedure 16, 20(b), 21, and 42(b), alongside Federal Rules of Evidence 403 and 611.

Plaintiffs have grouped six Plaintiffs and two pro se Defendants into one aggregated trial narrative, yet the claims, time periods, alleged conduct, locations, and witnesses are materially different. Specifically, Gina Menichino, Rosemarie DeAngelo, Danielle Gutiérrez, and Jane Doe 2 assert claims exclusively against Taylor, not Dusty. Dusty has never met these individuals in any relevant context, and neither Defendant has ever met Jane Doe 1. Dusty has only ever met Sage Humphries.

A single aggregated trial poses a substantial risk of unfair spillover prejudice, jury confusion, and treating the Defendants as interchangeable. We will be seeking separate trials or a phased trial structure to ensure each claim is tried on its individual merits.

Additionally, given our pro se status and the fact that this case has been litigated jointly for over five years, we are preserving our right to request specific trial-management procedures. While we fully understand that each Defendant can only legally represent themselves, we will be requesting accommodations under FRCP 16 and FRE 611 to allow us to sit together, consult, coordinate shared exhibits, and avoid duplicative questioning where the evidence overlaps or where Plaintiffs have pled allegations collectively against “the Buttons.”

Let us know whether Plaintiffs oppose these trial-management and phasing positions so we can accurately reflect your stance in the final JPTO submission.

Buttons

---

**From:** Lindsey Ruff <LRuff@BSFLLP.com>
**Date:** Sep 11, 2026, 12:13 PM

Mr. and Mrs. Button,

As to Jane Doe 1, it is not productive to continue debating this issue by email. You filed a motion on this subject, which Plaintiffs opposed. Plaintiffs’ position is set forth in their opposition brief, and the Court will decide the issue.

We appreciate your commitment to transmit your exhibit list and exhibits by September 15. Whether ten days will provide sufficient time for Plaintiffs to review the exhibits and prepare objections will depend on the volume of your submission. If that period proves unreasonable in light of the volume, Plaintiffs reserve the right to seek appropriate relief.

When Plaintiffs transmitted their portion of the JPTO, they identified each exhibit by Bates number and description and simultaneously provided a ShareFile containing the stamped exhibits, allowing Defendants to identify the exhibits and prepare objections efficiently. Plaintiffs expect Defendants to proceed similarly. As a courtesy, Plaintiffs remain willing to Bates-stamp a reasonably tailored set of Defendants' trial exhibits so that both sides can readily identify the documents designated or offered at trial.

To be clear, Plaintiffs have preserved and stored all materials produced in this action consistent with their preservation obligations. Plaintiffs do not, however, maintain a separate "production record, index, [or] folder structure" and do not understand what additional materials Defendants believe those terms encompass. We therefore consider this inquiry resolved.

Please also advise when we can expect to receive your remaining portions of the JPTO, including your deposition designations. Based on the conflicts identified by the parties, counsel, and experts, the following two-week windows remain available and may be included in the JPTO as proposed trial dates:

* May 3–14, 2027

* August 16–27, 2027

* August 23–September 3, 2027

* August 30–September 10, 2027

Best,

Lindsey

---

**From:** DUSTY BUTTON <worldofdusty@gmail.com>
**To:** Lindsey Ruff <LRuff@BSFLLP.com>
**Cc:** Ducati Dynamics <desmodynamica@gmail.com>; Sigrid McCawley <smccawley@bsfllp.com>; Sabina Mariella <SMariella@BSFLLP.com>; Julia Bevan <jbevan@bsfllp.com>
**Subject:** Re: August 27th Order / JPTO
**Date:** Thursday, September 10, 2026 10:08 PM

Lindsey,

Defendants disagree with Plaintiffs' characterization of the Jane Doe 1 issue. This is not merely a dispute over Jane Doe 1's failure to identify an exact calendar date. The Third Amended Complaint alleges that the incident occurred "in or around 2014." Her therapy records, however, contain information placing it in 2015, while other therapy records state that she was fifteen years old when it allegedly occurred, which would place it in approximately 2012.

The phrase "in or around 2014" may permit a reasonable degree of approximation, but it cannot reconcile materially conflicting accounts spanning approximately three years. Plaintiffs cannot preserve 2012, 2014, and 2015 simultaneously while requiring Defendants to prepare against every possible

timeframe.

Defendants have never met Jane Doe 1 and categorically deny that the alleged incident occurred. Defendants cannot reasonably be required to prove a negative across several different years because Plaintiffs have not identified a consistent factual account of their own claim. Plaintiffs' counsel should require Jane Doe 1 to commit to a sufficiently specific timeframe before trial. Otherwise, Plaintiffs risk presenting the jury with an allegation that conflicts with both their operative pleading and their own records.

Plaintiffs' assurance that Jane Doe 1 will not suddenly identify a date provides no meaningful protection against this prejudice. Her own records demonstrate that materially different timeframes have already been asserted. Defendants cannot reasonably be expected to rely upon an informal assurance when the existing documentary record shows that the alleged timeframe has shifted. Plaintiffs should not be permitted to preserve multiple inconsistent possibilities through the exhibit-list deadline and then select, refine, or develop a different timeframe after Defendants disclose their trial evidence.

Accordingly, Plaintiffs must identify which timeframe they actually intend to present at trial and the evidence supporting that timeframe. If Plaintiffs contend that "in or around 2014" encompasses the inconsistent references to 2012 and 2015, they should state that position expressly. Defendants should not be required to serve their exhibit list while Plaintiffs continue to preserve three materially different versions of the alleged date.

Defendants will prepare a good-faith exhibit list identifying the materials we reasonably anticipate offering at trial, including documents, audio, video, photographs, recorded calls, and impeachment or rebuttal evidence. Defendants do not intend to designate 500,000 items as affirmative trial exhibits. However, requiring Defendants to identify every record that could potentially disprove an allegation placed variously in 2012, 2014, and 2015 (potentially 2016), would effectively require precisely that kind of indiscriminate designation. Plaintiffs' failure to provide a coherent timeframe cannot fairly be converted into an unlimited trial-preparation burden for Defendants.

As to Bates stamping, Bates numbers identify particular pages or materials; they do not supply the missing date, reconcile the conflicting timeframes, determine which records may become relevant to a later-developed theory, or substitute for an organized production record. Defendants will identify documentary exhibits by existing Bates numbers where available. Audio, video, photographs, recorded calls, and other non-page materials will be identified by a sufficiently specific filename, description, or other unique designation.

Plaintiffs have also now confirmed that they do not maintain a separate organized production record, index, folder structure, or other means of identifying the materials previously produced by Defendants. Defendants will therefore proceed from the materials currently available and will serve the most organized exhibit list reasonably possible under the circumstances. Any limitation resulting from Plaintiffs' lack of an organized production record should not be attributed to Defendants.

Nevertheless, to avoid unnecessary motion practice, Defendants will compromise and serve their exhibit list by September 15, 2026. This accommodation applies only to the exhibit-list deadline. It

does not constitute agreement with Plaintiffs' position, acceptance of responsibility for the underlying uncertainty, or waiver of any objection, reservation, right to supplement, or request for relief.

Please confirm that September 15 will be a mutual exchange date and that Plaintiffs will not later rely upon a date, timeframe, or factual theory that was not disclosed before that exchange. If Plaintiffs will not provide that confirmation, Defendants will preserve the issue for resolution by the Court.

Defendants expressly reserve the right to seek leave to supplement their exhibit list, use rebuttal or impeachment materials, and request all appropriate relief if Plaintiffs attempt to narrow, alter, expand, or newly specify Jane Doe 1's alleged date, location, factual theory, or evidentiary basis after Defendants' exhibit list is served. Defendants further reserve their position that these contradictions and the resulting prejudice must be addressed by the Court before trial, rather than being permitted to emerge for the first time before the jury.

Defendants are continuing to prepare their exhibit list and deposition designations. Defendants also have the following immovable conflicts in 2027 and will be unavailable on these dates:

January 1, January 18, January 20, February 15, April 16, May 23 through June 6, June 9, June 18, July 4, August 8, September 6, October 11, November 11, November 19, November 25, and December 24, 25, 2027.

These conflicts are firm and must be treated as unavailable dates when scheduling trial and related proceedings.

Buttons

---

**From:** Lindsey Ruff <LRuff@bsfllp.com>
**Date:** Sep 10, 2026, 9:31 AM

Mr. and Mrs. Button,

We do not understand what you mean by the "organized production record." You transmitted documents to Plaintiffs through electronic communications, which you possess, and represent that you also possess the underlying documents. We have no separate production record, index, or other information concerning your productions to provide.

Jane Doe 1 testified that she does not recall the exact date of the assault. As stated in the Third Amended Complaint, to the best of her recollection, it occurred in or around 2014. You should prepare your exhibit list based on her testimony and the allegations in the operative pleading. Jane Doe 1 will not "supply a previously undisclosed date" at trial. In that hypothetical scenario, you could seek appropriate relief at that time. That hypothetical does not justify designating approximately 500,000 materials that you acknowledge you do not intend to present to the jury. Your exhibit list must be a good-faith identification of the exhibits you reasonably anticipate offering at trial, not a placeholder for an entire universe of potentially relevant documents. If you do not provide a reasonable exhibit list, Plaintiffs will seek appropriate relief.

Plaintiffs' offer to undertake the time and expense of Bates-stamping your documents is conditioned on your providing a reasonably narrowed and tailored set of documents. If you send documents for Bates-stamping by September 14, the turnaround time will depend on the size of the tranche. If you provide the number of documents, we can give you an estimate.

Similarly, whether your proposed September 16 and September 18 deadlines provide Plaintiffs sufficient time to prepare objections before the September 25 filing deadline will depend on the volume of your exhibit list and deposition designations. If Plaintiffs cannot reasonably complete their objections by September 25, they reserve the right to seek appropriate relief.

Finally, please provide your immovable conflicts for 2027 so the parties can identify potential trial dates when the parties, counsel, and experts are available.

Best,

Lindsey

---

**From:** DUSTY BUTTON <worldofdusty@gmail.com>
**To:** Lindsey Ruff <LRuff@BSFLLP.com>
**Cc:** Ducati Dynamics <desmodynamica@gmail.com>; Sigrid McCawley <smccawley@bsfllp.com>; Sabina Mariella <SMariella@BSFLLP.com>; Julia Bevan <jbevan@bsfllp.com>
**Subject:** Re: August 27th Order / JPTO
**Date:** Wednesday, September 9, 2026 8:58 PM

Lindsey,

Your response avoids the actual issue.

Defendants possess the underlying materials, but they are dispersed across numerous folders, hard drives, and historical production sets accumulated over several years. What Defendants requested was the organized production record as Plaintiffs received and maintained it—not assistance satisfying Defendants' preservation obligations.

Defendants' reference to approximately 500,000 exhibits was neither accidental nor a representation that every file would be individually presented to the jury. It explained the unavoidable consequence of Plaintiffs' refusal to identify when the Jane Doe 1 conduct allegedly occurred.

Plaintiffs have left a single allegation open across approximately three years, from 2013 through 2016. If Plaintiffs refuse to identify a date or reasonably narrow date range before exhibit lists are due, Defendants must preserve and designate the potentially responsive documentary universe at the pretrial stage rather than risk waiver of evidence that becomes relevant only after Jane Doe 1 supplies a previously undisclosed date.

Plaintiffs' objection that such a designation would be "patently unreasonable" proves Defendants' point. It would be unreasonable—but it is Plaintiffs' refusal to define their own allegation that prevents meaningful narrowing. Plaintiffs cannot keep the date open, demand that Defendants guess which evidence will be relevant, and then attempt to exclude responsive documents after Jane Doe 1 finally

commits to a date, or multiple dates, at any given time.

Defendants accept Plaintiffs' offer to Bates-stamp a narrow set of presently identified documents and will provide an initial tranche. Please confirm when the Bates-stamped documents will be returned should we provide the first set by the 14th. This clerical accommodation does not solve the Jane Doe 1 problem, constitute Defendants' final exhibit designation, or waive supplementation.

Plaintiffs must either:

Identify the date or reasonably narrow date range of the Jane Doe 1 allegation now; or agree that Defendants may supplement their exhibit list after Jane Doe 1 identifies or changes the date, timeframe, location, or material facts of her allegation.

If Plaintiffs reject both alternatives, Defendants will preserve the potentially responsive 2013–2016 materials in their pretrial designations and present the issue to the Court, including Plaintiffs' repeated refusal to provide the information necessary for reasonable narrowing.

Defendants propose serving their exhibit list by September 16 and their deposition designations, objections, and remaining JPTO portions by September 18. This affords Plaintiffs nine and seven days, respectively, before the September 25 filing deadline.

September 11 is Plaintiffs' unilateral deadline, not the Court's. Defendants do not agree that it creates a waiver or permits exclusion of evidence made relevant by Plaintiffs' later disclosure of facts they presently refuse to identify.

Please confirm Plaintiffs' position.

Buttons

---

**From:** Lindsey Ruff <LRuff@bsfllp.com>
**Date:** Sep 8, 2026, 11:47 AM

Mr. and Mrs. Button,

Plaintiffs have no obligation to reproduce Defendants' own productions to them, which Defendants were responsible for preserving. Defendants' decision to store them in temporary folders does not shift that responsibility to Plaintiffs. We have nevertheless reviewed the metadata associated with those productions in an effort to assist, but we do not see any readily identifiable way to isolate Sage's ESI from the thousands of documents Defendants produced.

As a courtesy, Plaintiffs previously provided Defendants with copies of Plaintiffs' productions. Plaintiffs have never reproduced Defendants' own productions to them. We cannot reproduce Defendants' productions wholesale because they include copies of Sage's ESI that Defendants are not permitted to possess under both Sage's applicable protective orders and this Court's sanctions orders.

We are, however, willing to work with you to address any specific documents you need. If you identify a reasonably narrow set of previously produced documents that you would like Bates-stamped, we will do so as a courtesy to facilitate efficient trial preparation.

If you cannot meet the proposed September 11 deadline for your portions of the JPTO, please advise promptly when we can expect to receive them. We need adequate time to review your submissions and prepare our objections before the September 25 filing deadline. Defendants have had months to review Plaintiffs' portion of the JPTO, which has been publicly filed on the docket. It would be unreasonable not to afford Plaintiffs sufficient time to review and respond to Defendants' portion.

We also strongly object to your suggestion that Defendants intend to designate approximately 500,000 exhibits. Such a designation would be patently unreasonable, could not realistically be presented to a jury, and would not constitute a good-faith exhibit list. If Defendants do not provide a reasonable exhibit list tailored to the evidence they actually intend to offer at trial, Plaintiffs will seek appropriate relief from the Court

Best,

Lindsey

---

**From:** DUSTY BUTTON <worldofdusty@gmail.com>
**To:** Lindsey Ruff <LRuff@BSFLLP.com>
**Cc:** Ducati Dynamics <desmodynamica@gmail.com>; Sigrid McCawley <smccawley@bsfllp.com>; Sabina Mariella <SMariella@BSFLLP.com>; Julia Bevan <jbevan@bsfllp.com>
**Subject:** Re: August 27th Order / JPTO
**Date:** Tuesday, September 8, 2026 1:47 PM

Lindsey,

Defendants are continuing to work on the JPTO materials, exhibit list, deposition designations, and objections. However, Plaintiffs' requested September 11 deadline for Defendants' exhibit list is not realistic under the present circumstances.

The Court ordered the parties to file the proposed JPTO by September 25, 2026. Plaintiffs' requested September 11 deadline is an internal deadline proposed by Plaintiffs, not a Court-ordered deadline. Defendants are working in good faith, but we cannot responsibly finalize a complete exhibit list by September 11 while Plaintiffs still have not provided access to the complete set of Defendants' prior productions, folder structures, file names, indexes, or other identifying information showing what Plaintiffs received from Defendants during this litigation.

This is especially important because Plaintiffs are asking Defendants to narrow trial exhibits while simultaneously refusing to return or identify the production universe Plaintiffs already received from Defendants. That is not workable. Defendants used temporary Google Drive folders and other transfer methods because of financial and storage limitations, and many folders had to be deleted to make room for later productions. Plaintiffs have had access to those materials. Defendants need the same record back in order to prepare the JPTO, confirm exhibit completeness, avoid accidental omissions, and respond to Plaintiffs' exhibit list and deposition designations.

Defendants will provide materials on a rolling basis as quickly as possible, including a working exhibit list and deposition designations as they are completed. But Defendants do not agree that the September 11 date can operate as a waiver deadline or as a basis for Plaintiffs to claim prejudice where Plaintiffs have not provided the requested production record and where the Court's filing deadline is September 25.

Please confirm whether Plaintiffs will provide access to the complete set of Defendants' prior productions, or at minimum a complete index/file list/folder structure identifying what Plaintiffs received from Defendants. If Plaintiffs maintain that any subset cannot be returned because of ECF Nos. 104 or 254, please identify the specific withheld materials by folder, filename, date, source, Bates number if any, and the specific order provision Plaintiffs contend prevents return.

Defendants remain willing to confer promptly and productively. We are working toward the Court's September 25 deadline, but the exhibit process needs to be handled in a way that is accurate, fair, and based on the same production record available to Plaintiffs particularly regarding Jane Doe 1 whereas, we possess nearly 500,000 files we will have no choice but to produce as exhibits should her timeline not be narrowed.

Best,

Buttons

---

**From:** DUSTY BUTTON <worldofdusty@gmail.com>
**Date:** Sep 3, 2026, 6:57 PM

Lindsey,

Defendants disagree with Plaintiffs' position that ECF Nos. 104 and 254 prevent Plaintiffs from providing access to the complete set of materials Defendants previously produced in this litigation.

ECF No. 104 expressly states that "Defendants' surrender of all materials to Humphries' counsel does not preclude future use of such information in Defendants' defense of this action; provided, however, that use must either be agreed upon or approved by the Court." ECF No. 254 stayed the sanctions/fees associated with ECF Nos. 104 and 113 until completion of the litigation. It does not eliminate Defendants' ability to seek use of relevant materials for trial-defense purposes.

Your current position is also inconsistent with your own prior conduct. Plaintiffs previously returned at least a partial set of Defendants' prior productions, including materials produced during the period when Defendants were represented by Marc Randazza, which Defendants understand included materials Plaintiffs now describe as Sage's ESI. If Plaintiffs contend they may no longer reproduce any portion of those materials, please identify what changed, which specific Court order now prohibits reproduction, and why Plaintiffs were previously able to provide those materials back to Defendants but now claim they cannot.

To be clear, Defendants are not asking Plaintiffs to Bates-stamp materials or perform extra work. We are asking you to provide a link or download access to the complete set of Defendants' productions that

you/your firm have received in this case, including productions made through prior counsel and productions made while Defendants have been pro se. Defendants used temporary Google Drive folders because of financial and storage limitations, and many folders had to be deleted to make room for later productions. Plaintiffs have had access to those materials, and Defendants now need the same production set returned so they can prepare the JPTO, exhibit list, objections, deposition designations, and trial materials.

If you contend that any specific materials cannot be returned because they constitute Sage Humphries' ESI covered by ECF No. 104, please identify those materials by folder, filename, date, source, Bates number if any, and the specific basis for withholding them. You should still provide a link to all non-ESI defense productions.

Defendants also renew their request that Plaintiffs identify the specific Jane Doe 1 trial theory and timeline Plaintiffs intend to present, including the alleged date range, location, witnesses, exhibits, and foundation Plaintiffs contend supports that claim. Defendants cannot reasonably narrow trial exhibits or objections where Plaintiffs continue to refuse to identify the actual trial theory.

This needs to be worked out productively and promptly. Plaintiffs cannot demand Defendants narrow trial exhibits while withholding the complete record of what Defendants produced and while refusing to identify which Jane Doe 1 theory Plaintiffs intend to try. If Plaintiffs maintain their position, please state that clearly so Defendants can determine whether Court intervention is necessary.

Defendants will separately provide any immovable 2027 conflicts as soon as possible.

Best,

Buttons

---

**From:** Lindsey Ruff <LRuff@bsfllp.com>
**Date:** Sep 3, 2026, 3:11 PM

Mr. and Mrs. Button,

As discussed in correspondence from September through November of last year, reproducing all material that Defendants have produced throughout this case would require us to reproduce Sage's ESI in contravention of this Court's orders, so we are unable to do so. See ECF Nos. 104, 254. That said, as a courtesy to Defendants, and to facilitate the efficient exchange and display of trial exhibits, Plaintiffs are willing to add bates-stamps to a narrower set of Defendants' documents. If you send us a narrower set of documents that you would like us to Bates stamp and confirm in writing that that the set you send does not include any of Sage's ESI, we will add bates-stamps to those documents and send them back to you.

Please also send us as soon as possible any immovable conflicts you have in 2027 so that we can identify potential trial dates on which Defendants, Plaintiffs, Plaintiffs' counsel, and Plaintiffs' experts are all available.

Best,

Lindsey

---

**From:** DUSTY BUTTON <worldofdusty@gmail.com>
**To:** Lindsey Ruff <LRuff@BSFLLP.com>
**Subject:** Re: August 27th Order / JPTO
**Date:** Wednesday, September 2, 2026 11:31 PM

We received Plaintiffs' portion of the JPTO, Plaintiffs' exhibit list, Plaintiffs' deposition designations, and the ShareFile link for Plaintiffs' exhibits.

Before Defendants can fairly finalize our exhibit list, objections, deposition designations, and JPTO sections on the schedule Plaintiffs proposed, please provide access to the complete set of materials Defendants previously produced or transmitted to Plaintiffs/your office as exhibits, potential exhibits, or trial-related materials.

To avoid confusion, we understand that materials were previously transmitted through multiple links, folders, and file-transfer methods, including materials provided while Defendants were represented by Marc Randazza and numerous Google Drive links and other productions provided after Defendants began proceeding pro se. Please provide access to the complete set of those materials as maintained by Plaintiffs/your office, including any folders, subfolders, file names, indexes, upload/download records, correspondence references, or other identifying information showing what Plaintiffs received from Defendants.

This is necessary so Defendants can confirm the complete universe of previously exchanged materials before serving our exhibit list and responding to Plaintiffs' exhibit list and deposition designations. Given the volume of materials in this case and the approaching JPTO deadlines, please provide the access links or organized copies promptly.

Defendants are reviewing Plaintiffs' materials and will continue working toward the deadlines identified in your email.

Buttons

---

**From:** Lindsey Ruff <LRuff@bsfllp.com>
**Date:** Aug 31, 2026, 7:56 AM

Mr. and Mrs. Button,

Please find attached Plaintiffs' portion of the JPTO, which was prepared pursuant to District of Nevada Local Rule 16-3(b). We left highlighted placeholders for you to complete Defendants' portions of the JPTO.

We are also attaching Plaintiffs' deposition designations. Please identify in the designated columns any objections to Plaintiffs' designations and the basis for each objection. We are also attaching Plaintiffs' exhibit list. Please similarly identify any objections to Plaintiffs' exhibits and the basis for each

objection. Pursuant to the Local Rules, please also identify any exhibits that you agree may be admitted at trial without objection. A ShareFile containing copies of Plaintiffs' exhibits is available here: [redacted]

Please send us Defendants' exhibit list as soon as possible, and no later than 9/11 (two weeks before the 9/25 filing deadline), so that Plaintiffs have sufficient time to review the exhibits and prepare any objections as required by Local Rule 16-3(b)(8)(B). Please send us Defendants' deposition designations, if any, by the same date. Note that Plaintiffs will testify live at trial, and deposition testimony that Defendants intend to use solely for impeachment need not be designated in the JPTO.

The JPTO also requires the parties to propose three potential trial dates to the Court. Accordingly, please send us as soon as possible any immovable conflicts you have in 2027 so that we can identify potential trial dates on which Defendants, Plaintiffs, Plaintiffs' counsel, and Plaintiffs' experts are all available.

Finally, please return an updated draft of the JPTO with Defendants' highlighted portions completed no later than 9/21 so that the parties have sufficient time to address any remaining issues and finalize the JPTO before the 9/25 filing deadline.

Best,

---

**From:** DUSTY BUTTON <worldofdusty@gmail.com>
**To:** Lindsey Ruff <LRuff@BSFLLP.com>; Sabina Mariella <SMariella@BSFLLP.com>; Sigrid McCawley <smccawley@bsfllp.com>
**Subject:** August 27th Order / JPTO
**Date:** Thursday, August 27, 2026 9:25 PM

BSF,

In light of the Court's August 27, 2026 Order requiring the parties to confer and file a proposed joint pretrial order by September 25, 2026, Defendants are prepared to confer regarding the JPTO.

Please send Plaintiffs' current proposed JPTO in editable Word format, including any revisions Plaintiffs intend to make to ECF No. 567, along with Plaintiffs' current witness list, exhibit list, deposition designations, and proposed stipulations.

Defendants expressly preserve all objections, including their pending Motion for Limited Jane Doe 1 Evidentiary Hearing and all objections concerning trial scope, foundation, admissibility, pseudonym procedures, and prejudice.

Given the September 25 deadline, please provide the editable materials as soon as possible so the parties can begin conferring.

Buttons