Mitchell Taylor Button
(*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
Desmodynamica@gmail.com

Dusty Button
(*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
Worldofdusty@gmail.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SAGE HUMPHRIES, GINA MENICHINO, ROSEMARIE DEANGELO, DANIELLE GUTIERREZ, JANE DOE 1 AND JANE DOE 2

PLAINTIFFS,

V.

MITCHELL TAYLOR BUTTON AND DUSTY BUTTON

DEFENDANTS

CASE: 2:21-CV-01412-ART-MDC

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO CLARIFY OR MODIFY PROTECTIVE ORDERS [REDACTED]**

Plaintiffs avoid the narrow question presented. Defendants seek prospective authorization for the Boston Municipal Court to consider Sage Humphries's certified 2023 deposition transcript and corresponding deposition video under impoundment, in camera review, or any further restriction that court imposes. Before filing this Motion, Defendants asked Plaintiffs to stipulate to that limited, restricted use. Plaintiffs refused, forcing motion practice over whether a court may confidentially review the later sworn testimony of the person who obtained its orders. Defendants submitted the transcript and excerpts in Boston under a request to impound the entire filing because they believed, at the time of submission, that this Court's prior restricted-use modification permitted that court-controlled use. The Boston court's order made clear that Boston was not among the proceedings identified in ECF No. 489 and that further authorization from this Court was required. ECF No. 612-1 at 3–4. Defendants then sought that authorization and asked Boston to hold the termination proceedings open. Defendants do not ask this Court to retroactively approve the earlier submission. They ask for narrow prospective relief so the issuing court may consider later sworn testimony under court-controlled confidentiality. The Opposition supplies accusations of harassment but no evidence of protective-order harm. Humphries submitted no declaration. Counsel's declaration establishes only procedural dates and appellate history. ECF No. 615-1 ¶¶ 3–5. It identifies no confidential fact that would become public, privilege that would be lost, testimony Humphries gave only because of the Protective Orders, or prejudice that impoundment cannot eliminate. Plaintiffs previously accepted sealed collateral use of the deposition transcripts. Their refusal here is therefore not a confidentiality position. It is a demand that Humphries's later sworn testimony remain unavailable only to the court capable of comparing it with the representations used to obtain and extend her orders. Plaintiffs may

defend those differences in Boston; they cannot convert a blanket discovery order into a device for preventing the issuing judge from seeing them. Rule 26(c) does not authorize that one-way result.

## ARGUMENT

### I. The Governing Standard Permits Restricted Use in Related Proceedings

Beckman Industries, Inc. v. International Insurance Co. rejected an "extraordinary circumstances" requirement and held that Ninth Circuit precedent "strongly favors disclosure to meet the needs of parties in pending litigation," subject to reasonable restrictions. 966 F.2d 470, 475–76 (9th Cir. 1992). Foltz v. State Farm Mutual Automobile Insurance Co. supplies the procedure: this Court makes a "rough estimate" of relevance and decides whether its protective order bars access; the collateral court decides ultimate discoverability and case-specific objections. 331 F.3d 1122, 1132–33 (9th Cir. 2003). The Boston court identified this Court's Protective Orders as the barrier to review. ECF No. 612-1 at 3–4. Defendants ask this Court to remove that barrier while preserving every legitimate confidentiality protection. Plaintiffs ask this Court to maintain the barrier precisely where the testimony may affect the merits. That is not protective-order prejudice; it is the ordinary consequence of relevant evidence reaching the proper tribunal. Reliance is also diminished because protection arose under blanket orders rather than document-specific findings. Foltz, 331 F.3d at 1133; Beckman, 966 F.2d at 476. Plaintiffs identify no safeguard Defendants refused, no restriction Boston cannot enforce, and no concrete harm that impoundment or in camera review would not prevent. On this record, continued exclusion serves no legitimate confidentiality purpose.

### II. The Prior Boston Submission Does Not Defeat Prospective Relief

Plaintiffs' sanctions accusation does not answer the modification request[1]. Defendants acknowledge that they submitted protected deposition material in Boston before obtaining an order expressly adding those proceedings to ECF No. 489. They did so with a motion to impound the entire submission, not for public dissemination, based on a good-faith but mistaken understanding that the prior authorization for restricted collateral use covered the requested court-controlled submission. The Boston court corrected that understanding by identifying Paragraphs 10 and 19 of the Protective Orders as a barrier. ECF No. 612-1 at 3–4. Defendants responded by seeking authorization here rather than treating the Boston order as permission to proceed. That sequence does not establish deliberate public dissemination, confidentiality injury, or a basis to deny prospective modification. Plaintiffs identify no resulting public disclosure and no harm that impoundment, in camera review, or an equivalent restriction cannot prevent. The Opposition also does not present a separately noticed sanctions motion establishing willfulness, prejudice, or a procedural basis for case-terminating relief. The warning quoted from ECF No. 479 underscores why Defendants now seek express authorization; it does not transform a disputed, restricted filing into a reason to prevent the Boston court from ever considering relevant testimony. Any question concerning past compliance is distinct from whether good cause supports narrowly restricted future use. The requested modification therefore should be decided under Rule 26(c), Foltz, and Beckman. It is not a request to excuse conduct, reopen an unrelated discovery dispute, or authorize public use. It is a request to define, prospectively and precisely, whether the deposition transcript and

[1]Plaintiffs' authorities are distinguishable; Tumbling concerned reopening a discovery ruling about irrelevant allegations in the same action, not restricted use in related litigation. 2010 WL 144833, at *1–3. Villery involved sensitive correctional documents and did not displace Foltz. IceMOS involved a narrowly tailored trade-secret order and a movant who failed to connect the material to the collateral claims. 2019 WL 5268872, at *3–7. Here, Defendants identify exact testimony and a pending proceeding concerning the continued necessity of the orders discussed in that testimony.

video may be presented to the issuing court under restrictions at least as protective as those previously approved for other collateral proceedings. Plaintiffs could have resolved that narrow issue by stipulation before this Motion was filed. Their refusal, followed by an accusation that Defendants are improperly burdening them through motion practice, reverses the actual sequence of events.

III. The Identified Materials Are Relevant to the Termination Proceedings

The relevance is temporal and direct. Boston heard Humphries's 2017 testimony and relied on her 2018 renewal account. In 2023, after discovery required detailed answers, she materially changed or qualified central parts of that narrative concerning post-order encounters, continued communications, the alleged kidnapping threat, the operative complaint, police reports, and how Defendants obtained her data. Those changed accounts did not exist when the orders issued. They bear not only on historical credibility, but on the factual basis asserted for continuing protection and whether present fear remains objectively reasonable. See MacDonald v. Caruso, 467 Mass. 382, 388–90 (2014). The deposition permits the issuing court to compare what Humphries presented in 2017–2018 with what she admitted under oath approximately five years later. The identified changes include:

- Humphries identified only one [redacted]
- Her admission that she [redacted]

materially conflicts with the account of continuing fear and strategic pursuit used to support permanent protection. [redacted]

- After being removed from Boston, Humphries asked Defendants to "come save" her—conduct inconsistent with the account of immediate severance from persons she then feared as abusers. [redacted]
- She placed her last communications with Defendants around July 14, after the alleged July 7 death threat. [redacted] Her later explanation that [redacted] does not erase the chronology; it creates a credibility question when compared with the account presented in Boston.
- She testified that she was [redacted] Her later claim that she [redacted], not a basis to prevent the issuing court from examining it against her earlier statements and conduct.
- After separation, she borrowed a stranger's phone specifically to contact Defendants. [redacted] She also admitted that statements she made during that call [redacted]. [redacted] Both admissions bear directly on the reliability of the contemporaneous narrative presented in support of protection.
- Her kidnapping account materially shifted under oath: she acknowledged never [redacted]
- She admitted [redacted] but conceded [redacted]

[redacted]

- She admitted [redacted] That admission directly conflicts with the characterization that Defendants originally acquired the data without her consent; her separate objection to [redacted] Regarding the operative abuse-prevention complaint, she testified: [redacted] That admission [redacted]

These examples are representative, not exhaustive. Before the deposition, Defendants' Rule 11 filings catalogued conflicts among Humphries's Boston testimony, police reports, pleadings, communications, and other evidence. Her deposition then produced additional admissions and materially altered accounts approximately five years after the Boston record was made; Defendants presented that expanded contradiction record at summary judgment. At the July 31, 2025 hearing, the Court treated credibility as a factfinder issue and questioned counsel's assertion that falsity evidence could not overlap with actual malice. July 31, 2025 Hr'g Tr. 26, 63–64. Her later explanations do not cure the differences. They confirm that the sworn account she gave five years later materially differs from the account on which Boston acted. The police-report testimony illustrates the problem. Humphries admitted that the [redacted]. The issuing court should be permitted to determine the significance of that admission together with the record already submitted there. This Court need not decide whether the admission is true, whether it changes the result, or whether any particular Boston

exhibit is admissible. No additional exhibits are necessary to decide this Motion. The precise page-and-line citations identify the protected testimony and provide the rough estimate of relevance required by Foltz. Those citations respond directly to Plaintiffs' contention that the Motion failed to establish relevance; they do not expand the category of materials requested. Defendants do not ask this Court to adjudicate Humphries's credibility or the merits of termination. If review of the complete transcript or corresponding video is necessary, Defendants will promptly submit either under seal or for in camera review.

IV. The Prior Massachusetts Proceedings Do Not Resolve This Request

The April 15, 2025 Rule 23.0 decision states that Defendants' 2023 filing was titled a motion to modify or terminate but was argued principally as a motion to vacate for fraud on the court. S.H. v. M.T.M., No. 23-P-1202, slip op. 2–7 (Mass. App. Ct. Apr. 15, 2025). It affirmed because the evidence then presented did not satisfy the clear-and-convincing fraud standard and because Humphries testified that violations continued. It did not find every disputed assertion true or adjudicate the protected 2023 deposition. Fraud on the court is not synonymous with false or inconsistent testimony; it requires a broader scheme corrupting the judicial process. M.C.D. v. D.E.D., 90 Mass. App. Ct. 337, 342–43 (2016). Commissioner of Probation v. Adams illustrates that exceptional standard through nineteen false and perjurious allegations, retaliatory use of a restraining order, false disciplinary complaints, and a larger pattern of harassment. 65 Mass. App. Ct. 725, 729–35 (2006). The appeal held only that Defendants had not proved that theory on the prior record. It did not immunize later testimony, contradictory positions, or evidence bearing on present necessity. This request does not ask either court to reverse the appeal or retry issuance on the old record. It asks the termination court to consider a new record created years later. The 2023 deposition did not

exist when the permanent orders entered, and its changed accounts are themselves post-order evidence. Massachusetts law bars termination as a substitute for an untimely appeal, but requires examination of changed circumstances, current fear, and whether continued relief remains equitable. MacDonald, 467 Mass. at 388–90; Mass. Trial Court, Guideline 6:04. A permanent order cannot be insulated from later sworn evidence merely because that evidence also exposes inconsistencies in the original narrative. The Boston judge must decide whether those later admissions undermine the asserted present need for protection.

V. The Massachusetts Court Should Determine the Effect of the Later Testimony

Plaintiffs invoke the Massachusetts orders here as support for Humphries's allegations, yet seek to prevent the issuing court from reviewing her later sworn testimony—even under impoundment—after agreeing that deposition transcripts could be used under seal in specified collateral proceedings. Opp. 5–7; ECF No. 489. No neutral confidentiality rationale explains why equally restrictive treatment is inadequate in Boston. It makes no logical sense to permit sealed use in specified proceedings while forbidding the Boston Municipal Court—the court that issued the orders—from reviewing the later deposition of the person who obtained them. The selective objection is consistent with an effort to prevent that court from comparing Humphries's later sworn testimony with the record previously presented there. Plaintiffs may contest the contradictions, offer explanations, and argue weight or admissibility in Boston. They should not be permitted to use a blanket discovery order to prevent the Boston judge from seeing the testimony altogether. Calling court-controlled review an "attack" does not establish good cause. Boston is not unrelated litigation. It involves the same witness, parties, orders, factual history, asserted post-order encounter, communications, complaint, police reports, and data dispute. Its prior merits rulings did not

consider Humphries's 2023 deposition because that testimony did not yet exist when the orders issued and remains restricted by this Court's Protective Orders. The pending motion asks whether permanent protection remains necessary now. That present-tense inquiry cannot be confined to the account accepted years earlier while later sworn testimony is withheld. Any explanation for the changes belongs before the Massachusetts judge, not behind a Nevada discovery barrier. The prior stipulation makes the contradiction unavoidable. Plaintiffs accepted sealed collateral use of all six transcripts but identify no different secret, heightened public-access risk, or restriction Boston cannot enforce. The only meaningful distinction is that Boston can evaluate Humphries's testimony against the representations supporting her orders. That is precisely why modification is warranted, not why it should be denied. The proper allocation is straightforward: this Court protects confidentiality; Massachusetts decides relevance, admissibility, credibility, and present necessity. Plaintiffs' position would instead turn a blanket discovery order into an evidentiary embargo protecting a litigant from judicial scrutiny. Foltz and Beckman do not permit that result.

VI. Plaintiffs Establish Neither Reliance Nor Prejudice

Humphries submitted no declaration that she relied on the Protective Orders when testifying. Counsel lacks personal knowledge of her state of mind and identifies no question answered only because protection existed, privilege surrendered, trade secret disclosed, or testimony lawfully withheld. ECF No. 615-1. Beckman recognizes stronger reliance where a witness surrendered a Fifth Amendment right or disclosed a trade secret; nothing comparable is shown. 966 F.2d at 475–76. ECF No. 489 did not authorize Boston use because Defendants did not include it at the time, but it disproves categorical prejudice from sealed collateral use. Plaintiffs agreed to sealed use elsewhere and offer no declaration explaining why identical

protection becomes inadequate only when the recipient is the court that issued Humphries's orders. The only concrete difference is that Boston may act on the testimony. That is an evidentiary consequence, not a confidentiality injury, and it is not good cause to suppress court-controlled review.

VII. The Requested Relief Is Prospective and Narrow

Defendants seek prospective authorization for restricted judicial use, not public disclosure or retroactive approval. The requested relief is limited to the certified Humphries deposition transcript, the identified excerpts, and the corresponding deposition video, including BUTTON1873.mp4. It excludes ESI, medical records, intimate images, and unrelated discovery. Use would be confined to Docket Nos. 1701RO000181 and 1701RO000182 under impoundment, in camera review, or an equivalent restriction imposed by either court. Defendants will resubmit the materials in whatever form either court requires and will not rely on the earlier Boston submission as authorization. These safeguards protect confidentiality while leaving relevance, admissibility, credibility, and present necessity entirely to Massachusetts.

CONCLUSION

The requested modification is necessary so the Boston Municipal Court can evaluate whether its permanent orders remain warranted in light of Humphries's later sworn testimony, which did not exist when those orders were issued. This Court need not decide the testimony's truth or effect; it need only allow the issuing court to consider it. Plaintiffs identify no confidentiality harm that impoundment or in camera review cannot prevent. A protective order should prevent improper disclosure, not prevent the issuing court from reviewing relevant evidence. The Court should authorize restricted use of Humphries's

certified deposition transcript and corresponding video in the two Boston termination proceedings, subject to any additional safeguards either court requires.

Respectfully dated this 23rd day of September, 2026

Mitchell Taylor Button and Dusty Button (pro se)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed with LV_public_docketing@nvdcourts.gov on September 23rd, 2026 and served on all parties via email.

Dated this 23rd day of September, 2026,

Mitchell Taylor Button and Dusty Button (*Pro se*)